```
1                    IN THE UNITED STATES DISTRICT COURT

2                    IN AND FOR THE DISTRICT OF DELAWARE

3                              - - -
     NIPPON SHINYAKU CO., LTD.,
4                                        :    CIVIL ACTION
                     Plaintiff,          :
5    v                                   :
                                         :
6    SAREPTA THERAPEUTICS, INC.,         :
                                         :    NO. 21-1015-LPS
7                    Defendant.
                               - - -
8
                         Wilmington, Delaware
9                     Monday, December 20, 2021
                       Telephonic Oral Argument
10
                               - - -
11
     BEFORE:       HONORABLE LEONARD P. STARK, U.S.D.C.J.
12
                               - - -
13   APPEARANCES:

14
                 MORGAN LEWIS & BOCKIUS
15               BY:  AMY M. DUDASH, ESQ.

16                   and

17               MORGAN LEWIS & BOCKIUS
                 BY:  AMANDA S. WILLIAMSON, ESQ.
18                    CHRISTOPHER J. BETTI, ESQ.
                      KRISTA V. VENEGAS, ESQ.
19                    MARIA E. DOUKAS, ESQ., and
                      ZACHARY D. MILLER, ESQ.
20                    (Chicago, Illinois)

21                      Counsel for Plaintiff

22

23                          Brian P. Gaffigan
                            Official Court Reporter
24

25
```

1    APPEARANCES:   (Continued)

2

3              MORRIS, NICHOLS, ARSHT & TUNNELL LLP
               BY:  JACK B. BLUMENFELD, ESQ.
4
                   and
5
               FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
6              BY:  CHARLES E. LIPSEY, ESQ., and
                   J. DEREK McCORQUINDALE, ESQ.
7                  (Reston, Virginia)

8                  and

9              FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
               BY:  MICHAEL J. FLIBBERT, ESQ., and
10                 AARON GLEATON CLAY, ESQ.
                   (Washington, District of Columbia)
11
                   and
12
               FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
13             BY:  ALISSA K. LIPTON, ESQ.
                   (Boston Massachusetts)
14
                        Counsel for Defendants
15

16

17

18

19

20

21

22                       - oOo -

23              P R O C E E D I N G S

24              (REPORTER'S NOTE:  The following telephonic oral

25    argument was held in chambers, beginning at 4:15 p.m.)

1              THE COURT:  Good afternoon, counsel.  This is

2    Judge Stark.  Who is there for the plaintiff, please?

3              MS. DUDASH:  Good afternoon, Your Honor.  This

4    is Amy Dudash from Morgan Lewis, the plaintiff Nippon

5    Shinyaku.  And with me on the line also from Morgan Lewis is

6    Amanda Williamson, Krista Venegas, Chris Betti, Maria Ducas,

7    and Zachary Miller.  And Ms. Williamson will be presenting

8    argument on plaintiff's behalf today.

9              THE COURT:  Okay.  Thank you.

10             And who is there for the defendant, please?

11             MR. BLUMENFELD:  Good afternoon, Your Honor.

12   It's Jack Blumenfeld from Morris Nichols for Sarepta.  We

13   have a number of people on from Finnegan Henderson firm.

14   Mike Flibbert who will be arguing for Sarepta, Charles

15   Lipsey, Aaron Clay, Derek McCorquindale, and Alissa Lipton.

16   And from Sarepta, we have Chris Burney and Jessica Driscoll.

17             THE COURT:  Okay.  Thank you, and good afternoon

18   to all of you.

19             Brian is here as my court reporter; and for the

20   record, it is our case of Nippon Shinyaku Company, Limited

21   versus Sarepta Therapeutics Inc.  It's our Civil Action No.

22   21-1015-LPS.  And we are here to hear argument on the

23   defendant's motion to dismiss and/or strike a couple of the

24   claims in the amended complaint.

25             We're going to move pretty quickly.  I have

1    allocated about 20 minutes for each side.  I do have slides

2    that the plaintiff submitted earlier today, but we'll hear

3    first from the defendant, and I believe that is

4    Mr. Flibbert, and if so, you may begin.

5            MR. FLIBBERT:  Thank you, Your Honor.  Good

6    afternoon.  Mike Flibbert from Finnegan on behalf of

7    Sarepta.

8            THE COURT:  All right.  Mr. Flibbert, let me

9    interrupt you.  It's hard to hear you.  I don't know if

10    there is some interference on your side.  Try again.

11            MR. FLIBBERT:  I'm going to try again, Your

12    Honor.

13            How am I now?

14            THE COURT:  It's not much better.  Are we on a

15    speaker perhaps?

16            MR. FLIBBERT:  How about now, Your Honor?

17            THE COURT:  That seems like it might be clearer.

18    Let's go ahead and try that.

19            MR. FLIBBERT:  Okay.  Let's try that.

20            THE COURT:  Okay.

21            MR. FLIBBERT:  Thank you, Your Honor.  I

22    apologize.

23            If I may, I'd like to start briefly it's our

24    position that Claim 2 should be dismissed under 12(b)(6).

25            Claim 2, Your Honor, of the amended complaint

1    remains facially deficient.  Nippon Shinyaku alleges in

2    paragraph 89 that it does not infringe the UWA patents

3    because they are invalid under their position citing the

4    *Commil* case.

5              Your Honor, we have shown this invalidity

6    allegation is insufficient to plead noninfringement under

7    *Commil*.  The amended complaint still doesn't identify any

8    facts regarding how Nippon Shinyaku's Viltepso product

9    allegedly doesn't meet one or more limitations of any

10   particular claim of the UWA patent unless it remains

11   facially deficient under *Princeton Digital*.

12             In their opposition brief, Nippon Shinyaku

13   appears to abandon their argument regarding the invalidity

14   allegation, and they don't respond to our point that *Commil*

15   held that invalidity and noninfringement are distinct issues

16   that should not be conflated.

17             In their brief, for the first time in their

18   opposition brief, they raise a new argument that they

19   don't directly infringe any method claim of the UWA patents

20   but, of course, the arguments that are in a brief are not

21   considered in determining the sufficiency of a complaint

22   under, for example, the *Frederico* decision of Third Circuit

23   which we cited.

24             In addition, this new method claim argument

25   only applies to one of the three UWA patents, the '827

1    patent which is Exhibit K to the original complaint, the

2    '851 patent and the '590 patent which were Exhibits I and J

3    to the original complaint, they contain no method claims, so

4    this new argument can't possibly apply to them.

5            THE COURT:  All right.  Let me stop you.  Let's

6    assume I think it's right that I agree with everything you

7    have said to this point just on the 12(b)(6).  Do you oppose

8    me giving them leave to amend?  Putting aside the subject

9    matter jurisdiction issues, which I'm sure you are going to

10   get to, is it your contention that amendment would be

11   futile?

12           MR. FLIBBERT:  We do believe in this situation

13   it is futile because even as to their one patent, the '827

14   that has method claims, there is no allegation that they

15   would not be liable for infringement of that patent under an

16   inducement theory under Section 271(b).

17           THE COURT:  Right.  But how do we know that they

18   couldn't -- you know, if they're on notice that this doesn't

19   cut it, that they couldn't add a bunch of allegations along

20   the lines you would typically see at least when trying to

21   prove noninfringement?

22           MR. FLIBBERT:  Well, I guess, you know, our only

23   response is they haven't done so even in their briefs, Your

24   Honor.  They could have, you know, they could have raised

25   it at least in their brief, and they haven't done that.

1              THE COURT:  Okay.

2              MR. FLIBBERT:  I understand it's a question of

3    Your Honor's discretion in terms of amendment.

4              THE COURT:  Okay.  Do you want to move on to

5    some of the other issues?

6              MR. FLIBBERT:  Yes, Your Honor.  So for the

7    subject matter jurisdiction, we submit that they have failed

8    to establish a case or controversy under the totality of the

9    circumstances test of *MedImmune*, and it's undisputed here

10   that when the MCA covenant term ended, Sarepta did not sue

11   Nippon Shinyaku for infringement of the UWA patents, and it

12   still has not done so.

13             Instead, Sarepta only filed IPR petitions with

14   the patent challenging the patentability of the Nippon

15   Shinyaku patents, different patents.  And Sarepta took that

16   action to protect its freedom to market its Vyondys 53 drug

17   product which is used to treat children in a particular form

18   of Duchenne muscular dystrophy.

19             Now, Nippon Shinyaku is seeking to establish

20   jurisdiction here based largely on the parties' confidential

21   business discussions under the MCA, and we have moved to

22   strike the confidential material.

23             In *SanDisk*, of course, the Federal Circuit

24   stated that to avoid the risks of a D.J. action, parties may

25   agree to a suitable confidentiality agreement.  And that is

1    precisely what the parties did here, Your Honor.  They

2    agreed to broad obligations of confidentiality and nonuse in

3    Section 2 of the MCA.

4         And the nonuse provisions of Section 2.2, for

5    example, provide that all disclosures including all

6    meetings, discussions and communications between the

7    parties in connection with the agreement and the proposed

8    transaction shall not be submitted, referenced, or otherwise

9    used against the other party in any legal action except the

10   inaction to enforce the terms of the agreement.

11        And these provisions of confidentiality and

12   nonuse of Section 2 remain fully in effect under Section 7

13   and 12 of the MCA.

14        THE COURT:  All right.  But of course -- I'm

15   sure you are getting there.  We don't have a lot of time.

16   They say is an action for enforcement.  And I think you

17   concede it is an action for enforcement at least with

18   respect to Count 1, so why aren't they right that that opens

19   the door to them using this confidential information however

20   they want in this action for enforcement?

21        MR. FLIBBERT:  Right.  For a couple of reasons,

22   Your Honor.

23        First, their breach of contract claim concerns

24   the interpretation of a forum selection clause which

25   involved entirely distinct facts from the D.J. claims.  The

1    parties' confidential communications under the MCA are

2    irrelevant to the forum selection clause issues.  And, for

3    example, the amended complaint does not substantively rely

4    on any of those confidential communications in addressing

5    the forum selection cause.

6              As you will also recall, they didn't rely on any

7    of those communications previously in their preliminary

8    injunction briefing as well when they were arguing for

9    reasonable likelihood of success.  They never referred to

10   any of those communications.  So that shows, first of all,

11   that they're irrelevant.

12             The second point is that under their position,

13   that would allow the use of this confidential information in

14   any case as long as it was contained in the same complaint

15   as the breach of contract claim, but that is not what the

16   claim language says.  This is a narrow exception that is

17   only intended to support the enforcement of contract rights

18   under the MCA.  And I think importantly, it was intended

19   to make the confidentiality and nonuse obligations more

20   enforceable, not less enforceable.  Their position would

21   essentially gut this provision and render it meaningless

22   because you could simply append a contract claim to an

23   action and avoid these protections.

24             We don't think that that is what was intended.

25   We think it was intended to make this, these obligations of

1    confidentiality and nonuse more enforceable, not less

2    enforceable.

3              They also point to Claims 2 and 3 and they

4    argued that those claims themselves are actions to enforce

5    the forum selection clause, and we disagree with that as

6    well.

7              The D.J. claim seeks highly different relief

8    from Claim 1, the breach of contract claim.  So we don't

9    think that is a reasonable argument.

10             THE COURT:  Might you -- yes.  Just might you

11   have a claim for breach of the MCA against them based on

12   what you contend is a violation of 2.2?

13             MR. FLIBBERT:  Yes, there could be.  There

14   could be possibly a breach of the MCA based on their action,

15   but that wouldn't allow them to use this information to

16   establish unrelated D.J. claims.  You know, that was not the

17   purpose of the exception.

18             The exception -- an example where the exception

19   was intended to apply would be, for example, if a party had

20   sales information that they had disclosed confidentially and

21   it was, you know, publicized, this confidential information

22   was publicized, and then a breach of contract action had to

23   be filed.  Well, of course, you would have to refer to the

24   parties exchange of confidential information in order to

25   enforce that breach.  Enforce the contract.

1            So that again is intended to strengthen the

2      confidentiality and nonuse protection, not weaken it, which

3      is what their position would essentially do.

4            THE COURT:  On the subject matter jurisdiction

5      question though, I have an independent obligation to

6      evaluate whether this court has case or controversy, has

7      subject matter jurisdiction.

8            I know the parties can't create jurisdiction

9      where it doesn't exist, but wouldn't your interpretation

10     of the MCA here potentially allow parties to destroy

11     jurisdiction where it otherwise exists?  That is, you have

12     a breach of contract claim because maybe they have misused

13     the confidential information but they put the confidential

14     information in front of me.  Let's just say for the sake of

15     argument I think it shows you are about to sue them.  You

16     know, maybe I never should have heard that but I did.  Can I

17     just ignore that because it's a violation of a contractual

18     obligation when it's a fact in front of me?

19            MR. FLIBBERT:  I think that goes right to the

20     prejudice, Your Honor.  I mean they argued they haven't been

21     prejudiced, but of course it has.  Because Your Honor now

22     has heard this information.  And, yes, essentially what

23     we're asking is for Sarepta to be placed in the position it

24     would be in but for the breach.  That the information should

25     be excised from the complaint, and Your Honor should not

1  consider it in weighing the facts and using Your Honor's

2  discretion in evaluating the D.J. question.

3          It goes right to the prejudice.  And that is

4  why there is prejudice here, because they have disclosed

5  this information.  And it's really unfair when the D.J.

6  jurisdiction issue will be evaluated in the context of

7  information that never should have been provided to the

8  Court in this briefing.

9          And that's why, you know, that's why we think it

10 is appropriate to strike the information and reevaluate the

11 D.J. jurisdiction issue without that information that should

12 not have been used that was subject to confidentiality under

13 the MCA.

14          THE COURT:  Okay.  You can move on if there is

15 anything else you wanted to cover.

16          MR. FLIBBERT:  A couple of, a couple of points,

17 Your Honor.

18          So we do believe, for example, in paragraph 2,

19 the second sentence, paragraphs 11, 78 and 91, those

20 paragraphs all directly disclose the substance of the

21 parties' discussions under the MCA and should be stricken.

22          Paragraphs 18, 85, and 98 disclose the outcome

23 of the parties' confidential negotiations, not leading to

24 the grants of the license or covenant not to sue and

25 therefore we also submit they improperly disclose the

1    substance of the negotiations.   These are not purely factual

2    statements, which is what Nippon Shinyaku argues.   These are

3    paragraphs that refer to the outcome of the negotiations and

4    should be stricken.

5             We do maintain that the pre- and the

6    post-communications should be protected under the MCA for a

7    couple of reasons:

8             One is that Section 2.2 is quite broad in its

9    language, and it's not time bound in terms of with respect

10   to the term of the MCA, and we believe that the pre- and the

11   post-communications should also have the benefit of that

12   protection.

13            But I also wanted to point out that with regard

14   to the post-MCA communications, and, for example, the email

15   from Mr. Zanca from July 6th, maybe even that should be

16   protected because if you look at the documents, they show

17   that the parties continue to treat their communications

18   after the MCA expired as confidential.

19            As an example of that, Mr. Toda, in his June

20   14th email to Mr. Zanca, said:   "Thank you for your

21   confirmation regarding confidentiality and evidentiary

22   privilege."   And there is a redaction.   Then it says, "We

23   look forward to hearing from you."

24            And we submit that his statements created an

25   expectation that Mr. Zanca's response would also be treated

1    as confidential.  So we believe that the July 6th email

2    should be treated as confidential based on the parties

3    agreement to extend this confidentiality treatment for some

4    continued discussions after the MCA tender.

5              Now, we also -- but beyond the fact that we

6    think these statements should be stricken, the pre- and

7    the post-communications, we don't think that they establish

8    D.J. jurisdiction.

9              The pre-MCA communications only establish that

10    the parties are only interested in discussing the possible

11    cross-licensing that Sarepta, and the post-MCA

12    communications similarly do not only establish jurisdiction,

13    and turning back again to this July 16th email from Mr.

14    Zanca, the email only identifies the NS patents that were

15    challenged by Sarepta in their IPR petitions filed with

16    the board.  There is no mention of the UWA patents in that

17    email.

18              Now, there is reference to other actions, but

19    those other actions could have referred to various other

20    actions, such as the EP oppositions and Japanese actions

21    that aren't mentioned in the MCA.

22              So there are other actions that the parties have

23    been discussing, European and Japanese proceedings, so it

24    is just as likely he was referring to that, and there is no

25    reference to enforcement of the UWA patent against Nippon

 1    Shinyaku in that email even if Your Honor does consider it.

 2            THE COURT:  All right.  But it seems to me

 3    that what you are arguing is a reasonable inference of

 4    the parties' course of communications but not the only

 5    reasonable inference.  Isn't it enough for the plaintiff

 6    today that I can say one might reasonably think from this

 7    course of conduct and communications that it's plausible

 8    that you were asserting your patents or that you would

 9    imminently do so?  I can't eliminate that possibility or

10    even come close to it on this record, can I?

11            MR. FLIBBERT:  Well, one other point on the

12    Zanca email.  As I said, we believe that it's not

13    appropriate to consider the outcome of these negotiations,

14    and that is really what they're seeking to do with the Zanca

15    email.  They're seeking to have Your Honor conclude that the

16    negotiations failed and therefore there was a possibility of

17    infringement litigation.

18            But again, they should not be permitted to use

19    any information to suggest that the negotiations were

20    unsuccessful, including the Zanca email.  That is precisely

21    what the parties were trying to prevent with the MCA.

22            THE COURT:  All right.

23            MR. FLIBBERT:  Now, in terms of --

24            THE COURT:  Yes, I would like to save your last

25    four minutes for rebuttal.

```
 1                    MR. FLIBBERT:  Yes, Your Honor.
 2                    THE COURT:  So let me stop you there.
 3                    MR. FLIBBERT:  Thank you very much.
 4                    THE COURT:  And I will turn to Ms. Williamson at
 5      this point.
 6                    MR. FLIBBERT:  Thank you.
 7                    MS. WILLIAMSON:  Thank you, Your Honor.  This is
 8      Amanda Williamson from Morgan Lewis on behalf of Nippon
 9      Shinyaku --
10                    THE COURT:  Good afternoon.
11                    MS. WILLIAMSON:  -- the plaintiff in this case.
12      And I would like to touch on a point that Your Honor has
13      raised.
14                    The manner in which Sarepta is seeking to
15      interpret the MCA is essentially creating a permanent
16      covenant not to bring a declaratory judgment action against
17      Nippon Shinyaku, particularly as they apply the preclusion
18      against disclosure of information to all statements before
19      the MCA was enacted and anything that occurred afterward,
20      after it clearly had terminated.
21                    Such a permanent preclusion of a declaratory
22      judgment is actually, it's inconsistent with the covenant
23      not to sue that the parties actually negotiated in Section 6
24      of the MCA which we have in Slide 7.  And in the covenant
25      not to sue, the term is expressly limited to 21 days after
```

1    the expiration of the MCA.

2         But by Sarepta's reading, we are precluded from

3    all time from alleging any facts in support of declaratory

4    judgment.

5         And just by way of an example, under this

6    reading, Sarepta could send Nippon Shinyaku a letter

7    demanding payment of $15 million and threatening to assert

8    the UWA patents tomorrow, and we still would have no

9    recourse because we would be precluded from raising those

10   facts with Your Honor.

11        We think that far exceeds any time period

12   contemplated by the parties in terms of a covenant not to

13   sue.

14        THE COURT:  Go ahead.

15        MS. WILLIAMSON:  We also, we also believe that

16   the MCA, as Your Honor raised, specifically permits the use

17   of information in an action to enforce the terms of this

18   agreement.  And there is really no dispute that Claim 1 is

19   a properly pled claim for breach of contract, and that

20   Sarepta has identified no grounds for its dismissal.

21        There is also no case law suggesting that this

22   Court can strike or disregard allegations that are properly

23   plead in the complaint when they're used to support additional

24   counts such as Counts 2 and 3.

25        We also believe that Counts 2 and 3 for

1    declaratory judgment of noninfringement and invalidity are

2    claims to enforce the terms of the MCA.  As Your Honor

3    pointed out, had we -- had Nippon Shinyaku sued in another

4    District, Sarepta would have had a claim for breach of that

5    agreement.  And we see no substantive argument as to why the

6    Counts 2 and 3 are not counts to enforce the MCA.

7              THE COURT:  Let me just ask you -- yes.  On 2.2,

8    respond to Sarepta's contention that you basically are

9    taking a narrow provision that narrowly allows some use of

10   confidential information and you are making it so broad that

11   it basically becomes a nullity.

12             While I understand you say Count 1 is properly

13   pled, I'm not clear on what would prevent you from arguing

14   that we could file even a frivolous breach of contract claim

15   and then use all the confidential information for any other

16   claim that we just want to put in the same action.  Could

17   you respond to that?

18             MR. FLIBBERT:  Sure, Your Honor.  I do think

19   that Sarepta is reading Section 2.2 far too broadly.  And

20   that I don't believe that an exception allowing these facts

21   to be plead a breach of contract claim would open up the

22   field as they have described.

23             This is -- Nippon Shinyaku's claim is not a

24   frivolous claim.  We have been before Your Honor and Your

25   Honor has disagreed with our theory is breached, but it was

1    not frivolous and not intended merely as some sort of hoax

2    to then raise additional declaratory judgment.

3           THE COURT:  Right.  But wouldn't your view -- I

4    mean we can stipulate to that for purposes of today, that's

5    fine, but wouldn't your view of 2.2 allow you to file a

6    frivolous breach of contract claim to open the door to use

7    all the confidential information in a way that clearly was

8    not intended in the MCA?

9           MS. WILLIAMSON:  Well, I don't think we would

10   ever be permitted to file a frivolous claim.  We would have

11   to have a legitimate basis to bring the claim in the first

12   place.

13          But even if Your Honor were to find that we

14   cannot rely on certain of the confidential information,

15   which we believe could only apply to what is basically

16   paragraph 11, and the subsequent MCA-related paragraphs in

17   the complaint that Sarepta has moved to strike.  Outside of

18   the direct statements from the negotiation, we believe that

19   Nippon Shinyaku has pled sufficient facts to establish

20   declaratory judgment jurisdiction.

21          THE COURT:  Okay.  Did you want to say more on

22   the jurisdictional stuff or is that it?

23          MS. WILLIAMSON:  Sure.  For the non-MCA

24   complaints, including paragraphs 15 through 21, those

25   relate to pre- and post-MCA activities and are not -- are,

1    they're sufficient to establish declaratory judgment.

2              If Your Honor would turn to Slide 5 in the

3    presentation we prepared for the Court, we have provided

4    the preamble to the MCA.  And what the preamble says very

5    clearly is that it talks about the parties wishing to enter

6    into discussions concerning the proposed transaction.

7              According to the preamble, discussions between the

8    parties before the MCA was negotiated or after it terminated

9    would not relate to this period or the contractually defined

10   proposed transaction and should not be protected by the MCA.

11             So if you turn to Slide 6 in our presentation

12   where we have Section 2.2, it sets further limits on

13   confidential information to those things being exchanged

14   between the parties made in connection with this agreement

15   and the proposed transaction.  It is our view that the

16   proposed transaction was not evaluated, did not begin

17   until the MCA was executed and was terminated on the

18   termination date of June 1st, 2021 when Sarepta refused to

19   extend the term to further negotiate under the terms of

20   the MCA.

21             So turn to Slide 11.  Paragraph 15 at -- 17 of

22   the first amended complaint alleged that by January 2020,

23   Sarepta informed Nippon Shinyaku that a license to the UWA

24   patent was necessary for Nippon Shinyaku to avoid litigation

25   regarding Viltepso.

1              This is a statement of fact, and it is a

2    statement of nonconfidential information that occurred

3    before the UWA -- I'm sorry -- before the MCA was executed.

4              These paragraphs of our complaint also summarize

5    the pre-MCA communication that were not confidential stating

6    that the parties agree to engage in negotiations concerning

7    their potential patent portfolio and that Nippon Shinyaku

8    understood that the purpose of the discussion was to avoid

9    litigation.  And as Your Honor made notice, Sarepta does not

10   dispute the veracity of Nippon Shinyaku's well-pled facts.

11             It does not state that Sarepta has no intent to

12   sue Nippon Shinyaku.  There have been two points in time

13   where Nippon Shinyaku has attempted to negotiate and enter

14   into covenants not to sue, first with the MCA in June of

15   2020 and then again in September.  And Sarepta continued to

16   withhold its agreement not to sue Nippon Shinyaku and leave

17   the continual threat of litigation over the UWA patents for

18   our client.

19             Paragraph 18, Your Honor, which is shown on

20   Slide 12, is also a statement of fact and not based on

21   communications that they -- that the parties are no longer

22   engaged in confidential discussions.

23             We really don't see how Sarepta can include the

24   termination of negotiations as a piece of confidential

25   information.  It's pretty clear that there is no longer any

1    discussion over licensing going on between the parties as

2    evidenced by a breach of contract suit and also our Nippon

3    Shinyaku complaint for patent infringement and declaratory

4    judgment.

5              With respect to Mr. Toda's email.  In that

6    exchange, Nippon Shinyaku requested that a specific post-MCA

7    offer be provided, be taken as confidential information.

8    Nippon Shinyaku's understanding was that without a specific

9    designation, the parties' communication were no longer

10   confidential because the MCA would have been no longer in

11   effect.

12             That was evidenced -- the termination of the

13   MCA and its preclusions was then subsequently evidenced when

14   Sarepta filed its seven IPR petitions, which had there been

15   an extension of any provision under the MCA, it would also

16   have also included the covenant not to sue, which clearly

17   Sarepta viewed was not in effect at that time.

18             So as for Nippon Shinyaku, Nippon Shinyaku did

19   not believe that there was any confidentiality provisions

20   that continued after the end of the MCA.

21             THE COURT:  And am I right that as long as that

22   is a reasonable interpretation of the evidence that you all

23   have put in front of me, that you did not think that the

24   confidentiality obligations continued beyond the expiration

25   of the MCA, that is all you need to prevail on the relevant

1    portions of the motion today?

2              MS. WILLIAMSON:  I'm sorry, Your Honor.  Could

3    you repeat that question?

4              THE COURT:  Sure.  I mean I'm basically asking

5    am I sitting as a fact finder on what is the right

6    interpretation of the email and the various communications

7    about confidentiality or is it enough if you just sort of

8    made a plausible, reasonable argument from that evidence?

9              MS. WILLIAMSON:  Yes, Your Honor.  Sarepta's

10   challenge is entirely facial.  They have not challenged

11   Nippon Shinyaku's interpretation of the facts as pled in

12   the complaint.

13             We believe as long as that interpretation is

14   reasonable, it properly supports declaratory judgment, and

15   Sarepta is really making no argument to the contrary.  Their

16   argument is limited to their motion to strike and your

17   ability to consider all those facts that we have pled, not

18   that those facts are incorrect or mischaracterize the

19   parties beliefs or the situation that would -- the situation

20   in suit between the parties.

21             THE COURT:  Okay.  Let's come to, I guess it's

22   Count 2, for declaratory judgment of noninfringement.

23             Have you abandoned the theory that it's

24   sufficient to say we don't infringe because the patent is

25   invalid or is that still an argument you are pressing?

1            MS. WILLIAMSON:  Your Honor, we haven't

2    abandoned that argument, but we appreciate the case law that

3    Sarepta has identified.  We believe our allegations as in

4    the first amended complaint are sufficient to put Sarepta

5    notice of our claims of infringement.

6            We also believe we have sufficiently alleged the

7    facts with respect to the indirect infringement that were

8    discussed earlier.

9            If Your Honor feels that our pleading has fallen

10    short, we would request leave to amend, and we believe we

11    could do so to sufficiently satisfy the Court.

12            THE COURT:  You cite, among others, this

13    *Rain Gutter* decision, I think it's Western District of

14    Washington, which says in effect:  When the plaintiff has

15    identified one of its products and the claim elements

16    from the asserted patents it believes are missing, the

17    noninfringement declaratory judgment claim is sufficiently

18    pled.

19            But I'm not seeing where you identify the claim

20    elements that are missing from your product.  Did I miss

21    that?

22            MS. WILLIAMSON:  No, Your Honor.  I don't think

23    we pointed to any of the specific elements.  Just the

24    general statement with respect to the product.

25            THE COURT:  And so this is an amended complaint,

1    so it's already your second try.  I recognize I have a lot

2    of discretion here, but why should I give you a third chance

3    to basically do that?

4              MS. WILLIAMSON:  Well, we believe we can correct

5    the deficiencies in the claim.  And we would respectfully

6    ask for permission to do so.

7              THE COURT:  Okay.  Is there anything else,

8    Ms. Williamson?

9              MS. WILLIAMSON:  It's also very early in the

10   case, and long before discovery has even started.  So we

11   don't feel that there would be any prejudice to Sarepta

12   for allowing us an additional attempt to amend the claim.

13             THE COURT:  All right.  Is there anything else

14   you want to add?

15             MS. WILLIAMSON:  No, that's all.  Thank you,

16   Your Honor.

17             THE COURT:  Thank you.

18             Mr. Flibbert, back to you.

19             MR. FLIBBERT:  Thank you, Your Honor.

20             With regard to the exception, again I just

21   wanted to emphasize that Nippon Shinyaku has never used any

22   of the confidential information that they support in the

23   complaint.  They never used that to support the forum

24   selection clause argument.  There is nothing in the amended

25   complaint that refers to any of that information in

1    connection about the forum selection issue.

2            And during the briefing on the preliminary

3    injunction issue, we never referred to any of that issue.

4    So we believe it is simply irrelevant to Claim 1, and it's

5    not been used to support Claim 1.

6            We also, you know, we disagree with their

7    argument that we're asking for incredibly broad

8    interpretation or that it goes beyond the claim language.

9    The plain language really shows this is a narrow exception

10   that is intended to support and strengthen the contract

11   rights that are set forth in Section 2.2.  It's intended to

12   make the confidentiality and nonuse obligations more

13   enforceable, more legally enforceable, not less enforceable

14   which is what they are trying to do.

15           In terms of the pre- and the post-MCA

16   communications, there is no allegation -- we agree we have

17   to, we're looking at this on the face of the pleadings, but

18   there is no allegation that Sarepta ever raised the UWA

19   patents specifically either before or after the MCA.

20           So they talk about at their own subjective fear

21   about the UWA patents but that is insufficient under the

22   case law.  What is relevant is whether Sarepta affirmatively

23   raised the UWA patents with them, and I don't believe they

24   actually have any allegations that Sarepta specifically

25   referred the UWA patents either pre- or post-MCA.

1          We DO believe obviously the discussions before

2     the MCA should be stricken, but there is no, I don't

3     believe, any UWA patents on the pre- and post-MCA.

4          On the covenant not to sue issue, we cited

5     the *Microsoft vs. DataTern* case from the Federal Circuit

6     which held that, "Decline to grant the covenant to sue is

7     not sufficient to create an actual controversy because

8     the patentee has no obligation to make a definitive

9     determination at the time and place of the competitor's

10    choosing, that it will never bring infringement suits.  And

11    I don't believe they responded to that case.

12         In terms of their other obligation with regard

13    to the alleged targeting of the UWA claims of their product,

14    in paragraph 14, the very next sentence in that allegation,

15    in that paragraph acknowledges that the UWA patents cover

16    Sarepta's product, the Vyondys 53 product, and therefore it

17    is logical for Sarepta to list those patents in the Orange

18    Book to protect its own product.

19         So again, just looking at the face of this

20    complaint, if the confidential information is removed, as we

21    believe it should be, we don't think there will be

22    sufficient pleading facts -- pled facts to establish a case

23    or controversy at that point.

24         So that's in terms of the -- and I guess there

25    is a finding on the D.J. issue.  There was again a reference

1    to paragraph 18.  As I said, we disagree that that is a

2    factual statement.  That paragraph expressly refers to the

3    outcome of the negotiation which should not be disclosed.

4              Just as if, for example, Your Honor were to --

5    you know, if someone were to tell you what was the outcome

6    of a confidential mediation, you wouldn't expect that that

7    would be disclosed to you; right?  So it's similar to that.

8    The outcome of the negotiation should not have been

9    disclosed in the amended complaint.

10             THE COURT:  Okay.  I'm going to have to stop you

11   there.  Your time is up.  But thank you very much,

12   Mr. Flibbert and Ms. Williamson, for the helpful argument.

13             MR. FLIBBERT:  Thank you.

14             THE COURT:  I'm going to give you my decision

15   now on the motion.  It's Sarepta's motion to strike and

16   dismiss relating to Claims 2 and 3 of the amended complaint

17   by Nippon Shinyaku who I may refer to as "NS" as I go along.

18             The motion is granted in part and denied in

19   part.  And I'll have to explain to what extent each of those

20   is applicable, and I will aim to do so as I go through.

21             First, on the legal standards, I think there is

22   not any real dispute about what standards apply.  The Rule

23   12(b)(6) standard is well settled.  There is no dispute on

24   that.

25             On the motion to strike Rule 12(f) which we see

1    less frequently than 12(b)(6) motions, of course, that rule

2    permits the Court, in its discretion, to strike from a

3    pleading any redundant or scandalous matter.  These motions

4    are generally not favored, but courts have recognized that

5    they may be appropriate vehicles to strike allegations that

6    are made in violation of the confidentiality agreement which

7    is the basis for the motion here.

8              In terms of Rule 12(b)(1), motions to dismiss

9    the Court can, and indeed must, dismiss if it lacks subject

10   matter jurisdiction.

11             Here, what is at issue is the declaratory

12   judgment claim.  In order for me to have jurisdiction over a

13   declaratory judgment claim, I must have a justiciable case

14   of actual controversy, and the test under *MedImmune* from the

15   Supreme Court in 2007 is essentially to consider whether the

16   facts alleged under all the circumstances show that there is

17   a substantial controversy between parties having adverse

18   legal interest of sufficient immediacy and reality to

19   warrant the issuance of a declaratory judgment.

20             So with that background, law, let me turn to the

21   various arguments in the portions of the motion.

22             So first, there is a motion to dismiss Claim 2

23   under 12(b)(6) for failure to state a noninfringement claim.

24             And this portion of Sarepta's motion is granted

25   as I agree with Sarepta that the allegations as pled in the

amended complaint are insufficient to state a claim of

noninfringement.  Consistent with Rule 8(a), Claim 2

contains really only a single paragraph regarding NS's

noninfringement theory.  To the extent that theory is still

a theory that, hey, we don't infringe because your patent is

invalid, that is not adequate to state a declaratory

judgment claim of noninfringement.

          *Commil* makes clear when infringement is the

issue, the validity of the patent is not the question to be

confronted.  And the parties, at least the defendant, that

is, cites cases in a context very much like this one which

make clear that what the plaintiff has attempted to do, to

the extent again they're relying on invalidity, is not

adequate.

          Further, and I think it's essentially conceded

today, the amended complaint does not point to any facts

regarding how NS's product does not meet one or more

limitations of any particular claim of the defendant's

patents.

          There is a suggestion in the briefing from the

plaintiff that it does not directly infringe method claims

because it's a manufacturer and a marketer and not a

physician, but a complaint can't be amended by the briefing

on the motion to dismiss.  And anyway, at best this might

state a claim, this theory, that is, if it were in the

1    complaint, might state a claim for a declaratory judgment

2    of noninfringement with respect to direct infringement, but

3    the cases that the plaintiff relies on to say that that

4    therefore would give me -- you know, that they have stated

5    adequately a claim that would give me jurisdiction to

6    resolve all infringement issues under all three patents and

7    all three claims -- in all of the claims of those patents

8    under direct and indirect theories, I don't think any of the

9    cases the plaintiff cited read that broadly.

10            I will, however, subject to what I'm about to

11   say next on the rest of the motion, I will grant leave to

12   amend this Claim 2.  The plaintiff has asked for that leave.

13   It is early in this case, even though quite a lot has

14   happened for an early stage case like this one.

15            I don't think there is any real prejudice to the

16   defendant to giving the plaintiff what will be its third

17   chance, but giving them leave to amend.  I think that is

18   consistent with the liberal approach to amendments in the

19   Third Circuit as embodied in Federal Rule of Civil procedure

20   15.

21            Let me turn, though, to the motion to strike.

22   And there, I'm going to divide my analysis between the

23   so-called MCA paragraphs and the non-MCA paragraphs.

24            I'll start with the MCA paragraphs which I

25   understand to be the second sentence of paragraph 2 as well

1    as paragraphs 11, 78, and 91 of the amended complaint.

2              Here, the plaintiff NS argues that it may rely

3    on confidential communications made during the term of the

4    agreement because of the exception in Section 2.2.  And the

5    exception is excerpted in the briefing and it's in the

6    plaintiff's slides.  We talked about it.

7              Basically, I do not agree with NS's reading

8    of Section 2.2.  NS says it's a general prohibition against

9    mentioning confidential communications in legal actions but

10   does not apply here because this case is, in NS's view, an

11   action to enforce the terms of the agreement.

12             In my view, that reading would allow what is I

13   think intended to be and I think is on the language a narrow

14   exception, that is, a narrow exception to the prohibition on

15   use of confidential communications made during the effective

16   period of the MCA.  The plaintiff's interpretation of that

17   narrow exception would be so broad as to essentially swallow

18   all of it.

19             As Sarepta I think persuasively explains, NS's

20   interpretation would allow the parties' confidential

21   information to be used in any claim at all so long as it is

22   contained in the same complaint as a breach of contract

23   claim even if that breach of contract claim lacked merit.

24             And I agree with Sarepta that that is the import

25   of the plaintiff's interpretation.  And I think it's wrong.

1    It's not consistent with the plain language of 2.2, and it's

2    not consistent with the intent of the parties in entering

3    into the MCA.

4              Moreover, I think NS is wrong to view claims 2

5    and 3 as seeking to enforce the terms of the mutual

6    confidential agreement.  Instead, claims 2 and 3 seek

7    declaratory judgments of noninfringement and invalidity of

8    the defendant's UWA patents.  They have nothing to do with

9    legal obligations imposed by the mutual confidentiality

10   agreement.

11             In other words, and relatedly, NS is not seeking

12   by its declaratory judgment claims in claims 2 and 3 to

13   enforce the forum selection clause by pursuing claims 2 and

14   3.  It's merely I suppose arguably complying with its view

15   of the forum selection clause, but in my view, that is

16   quite different than being an action to enforce the forum

17   selection clause or an action more broadly to enforce the

18   MCA.

19             So I don't think -- so I'm granting this portion

20   of the motion.  Permitting NS to violate the confidentiality

21   agreement and use confidential communications between the

22   parties to support Claims 2 and 3 would unfairly prejudice

23   Sarepta which bargained for these communications not to be

24   used except in a cause of action seeking to enforce the

25   parties' agreement.

1          NS agreed not to hold the parties' confidential

2     communications against Sarepta in future litigation such

3     as litigation like a declaratory judgment claim of

4     noninfringement, but now NS is trying to do exactly that,

5     and that cannot be permitted under the terms of the MCA.

6          So the Court will strike the MCA paragraphs to

7     the -- so I will strike those.

8          Let me now turn to the non-MCA paragraphs.  And

9     by that, I mean paragraphs 15 to 21, 82 to 88, and 95 to 101.

10         Again, the relevant provision of the mutual

11    confidentiality agreement is Section 2.2 which applies to

12    all disclosures made in connection with this agreement and

13    the proposed transaction.

14         In Sarepta's view, statements made before the

15    MCA became effective and statements made after its term

16    expired still fall within Section 2.2 because they were

17    related to and, therefore, made in connection with the

18    agreement.

19         In my view, Sarepta is interpreting this aspect

20    of Section 2.2 too expansively.  All disclosures made in

21    connection with this agreement and the proposed transaction

22    in my view more naturally refers to disclosures of

23    confidential information as defined in the agreement.  The

24    agreement defines confidential information as certain

25    information disclosed during the term of the MCA.

1           There is no dispute about that.  That the

2   agreement didn't begin until June 1st, 2020, and it ran for

3   a year.  Accordingly, in my view, NS is free to rely on

4   communications that occurred before the MCA's term started;

5   that is, before June 1st, 2020.  And so I'm not going to

6   strike the non-MCA paragraphs.  I'm not going to strike the

7   ones from before the MCA was in effect.  And likewise, I'm

8   not going to strike the ones that is the communications made

9   after the confidentiality agreement ended.

10          With respect to that latter period after the MCA

11  ended, I recognize that Sarepta argues the parties voluntarily

12  agreed to extend their confidentiality obligation, but the

13  record leaves doubts in my mind on that point.

14          There is an email to NS in which Sarepta

15  confirmed that any response that it receives from NS by a

16  date in June to Sarepta's term sheets in May will constitute

17  confidential information under the MCA.

18          That statement at least arguably encompasses

19  communications from NS to Sarepta but it does not explicitly

20  cover communications from Sarepta to NS.

21          Further, there is evidence that Sarepta

22  suggested possibly extending the MCA agreement by signing

23  an amendment which indicates that Sarepta was aware that

24  the confidentiality provisions did not yet apply to future

25  communication.  And, moreover, NS's response to Sarepta,

1    thanking it for its confirmation regarding confidentiality

2    and evidentiary privilege is, in my view, vague.

3            And all of that I think is important given the

4    early stage we're at.  Typically, any doubt that exists on a

5    motion to strike under Rule 12(f) should be resolved in the

6    nonmovant's favor, and I'm doing that here.

7            So, again, the Court will not strike the

8    allegations concerning communications made after the MCA's

9    term ended, nor will it strike allegations concerning

10   communications made before the MCA ever took effect.

11           Finally, let me just quickly address the motions

12   to dismiss, to the extent it arises under Rule 12(b)(1).  I

13   have to consider whether the remaining allegations, that is,

14   those I haven't stricken in the amended complaint, are

15   sufficient to establish subject matter jurisdiction for

16   Claims 2 and 3.

17           And I find that they are.

18           For instance, paragraphs 15 to 17 of the amended

19   complaint which has not been stricken, I must, of course,

20   accept the factual allegations in what I haven't stricken to

21   be true.

22           Paragraph 15, for example, states that Sarepta

23   and NS have engaged in nonconfidential communications

24   regarding the licensing of Sarepta's UWA patents.

25           Paragraph 16 provides a specific example of a

1    conversation between the two parties where allegedly NS

2    understood future confidential discussions would include

3    discussions of licensing Sarepta's patents to avoid

4    litigation.

5              Paragraph 17 alleges that only a few weeks

6    later, representatives from both parties had a discussion in

7    which Sarepta raised concerns about the possibility of

8    litigation.

9              Sarepta's participation in licensing discussions

10   regarding its UWA patents I think is conduct that can be

11   reasonably inferred as demonstrating an intent to enforce

12   the UWA patents.  That standard, in part, is reflected in

13   the Federal Circuit's *Hewlett Packard* decision.

14             In other words, there is a significant risk that

15   Sarepta will accuse NS of infringement potentially exposing

16   NS to liability.  It may be that Sarepta is right on the

17   merits that this evidence will prove merely that the parties

18   were working together to avert controversy.

19             There are all sorts of inferences that the

20   defendant asked me to draw.  They're set out particularly at

21   pages 16 to 17 of the opening brief.  Those may well be

22   reasonable inferences from the limited record I have in

23   front of me, but the contrary inferences that the plaintiff

24   asked me to draw, namely, that we reasonably fear and an

25   objective observer would think that Sarepta may be about to

1    immediately sue us on the UWA patents.  Those are also at

2    least equally reasonable and plausible inferences on the

3    record before me.

4            So on the whole, considering the record, I

5    conclude that NS has shown there is a substantial

6    controversy of sufficient immediacy and reality to warrant

7    the issue of a declaratory judgment.  Therefore, to the

8    extent the motion arises under 12(b)(1), it is denied.

9            So where that leaves us is the plaintiff has to

10   file another amended complaint because I have stricken parts

11   of the operative amended complaint.  And plaintiff has leave

12   to further amend, if it wishes, and believes that it can

13   correct the pleading deficiencies I have identified

14   consistent with Rule 12(b)(6).  Whatever amended complaint

15   the plaintiff is going to file has to be filed no later than

16   January 20th of next year.

17           That was all I had to say.  I don't want any

18   further argument, but let me see if you have any questions

19   for me.

20           First, Mr. Flibbert?

21           MR. FLIBBERT:  No questions.  Thank you, Your

22   Honor.

23           THE COURT:  Thank you.  And Ms. Williamson?

24           MS. WILLIAMSON:  No questions.  Thank you, Your

25   Honor.

1          THE COURT:  Okay.  Thank you all very much.

2     Happy holidays, stay safe, and we are in recess.  Thank you.

3     Bye-bye.

4               (Telephonic oral argument ends at 5:13 p.m.)

5

6          I hereby certify the foregoing is a true and accurate
      transcript from my stenographic notes in the proceeding.

7

8                              /s/ Brian P. Gaffigan
                              Official Court Reporter
9                              U.S. District Court

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25