IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NIPPON SHINYAKU CO., LTD.,            )
                                     )
            Plaintiff,               )
                                     )
      v.                             )    C.A. No. 21-1015 (LPS)
                                     )
SAREPTA THERAPEUTICS, INC.,          )    **DEMAND FOR JURY TRIAL**
                                     )
            Defendant.               )
                                     )
SAREPTA THERAPEUTICS, INC.,          )
                                     )
      Defendant and Counter-Plaintiff,)
                                     )
      v.                             )
                                     )
NIPPON SHINYAKU CO., LTD.            )
and NS PHARMA, INC.                  )
                                     )
            Plaintiff and Counter-   )
            Defendants.              )

**DEFENDANT SAREPTA THERAPEUTICS, INC.'S ANSWER,
DEFENSES, AND COUNTERCLAIMS TO PLAINTIFF
NIPPON SHINYAKU CO., LTD.'S SECOND AMENDED COMPLAINT**

Defendant Sarepta Therapeutics, Inc. ("Sarepta"), by and through its undersigned counsel, hereby submits its Answer and Defenses to Plaintiff Nippon Shinyaku Co., Ltd.'s ("Nippon Shinyaku") Second Amended Complaint for Breach of Contract, Declaratory Judgment of Patent Invalidity, and Patent Infringement ("SAC") (D.I. 86), filed January 14, 2022. In addition, Sarepta asserts the counterclaims below against Nippon Shinyaku and its wholly owned U.S. subsidiary, NS Pharma, Inc. ("NS Pharma").

## ANSWER

### Nature of the Action[1]

1.      Sarepta admits that the SAC purports to assert a claim for breach of contract. Sarepta admits that it entered into a Mutual Confidentiality Agreement ("MCA") with Nippon Shinyaku. Sarepta admits that it filed seven petitions for *inter partes* review (collectively, the "IPR Petitions") with the Patent Trial and Appeal Board ("PTAB") of the United States Patent and Trademark Office ("USPTO"), challenging the patentability of all claims of Nippon Shinyaku's U.S. Patent Nos. 9,708,361 ("the '361 patent"); 10,385,092 ("the '092 patent); 10,407,461 ("the '461 patent"); 10,487,106 ("the '106 patent"); 10,647,741 ("the '741 patent"); 10,662,217 ("the '217 patent"); and 10,683,322 ("the '322 patent) (collectively, "the NS Patents").[2] Sarepta denies any remaining allegations in Paragraph 1.

2.      Sarepta admits that the SAC purports to assert claims for declaratory judgment of invalidity of the University of Western Australia's ("UWA") U.S. Patent Nos. 9,994,851 ("the '851 patent"); 10,227,590 ("the '590 patent"); and 10,266,827 ("the '827 patent") (collectively, "the UWA Patents"). Sarepta admits that it has exclusive rights to the UWA Patents for the treatment of muscular dystrophies and the right to enforce the UWA Patents. Sarepta denies any remaining allegations in Paragraph 2.

---

[1] For convenience and clarity, Sarepta's Answer uses the same headings as the SAC. Sarepta does not admit any allegations contained in the SAC's headings.

[2] *See Sarepta Therapeutics, Inc. v. Nippon Shinyaku Co., Ltd.*, IPR2021-01134 (U.S. Patent No. 9,708,361); IPR2021-01135 (U.S. Patent No. 10,385,092); IPR2021-01136 (U.S. Patent No. 10,407,461); IPR2021-01137 (U.S. Patent No. 10,487,106); IPR2021-01138 (U.S. Patent No. 10,647,741); IPR2021-01139 (U.S. Patent No. 10,662,217); IPR2021-01140 (U.S. Patent No. 10,683,322).

3.     Sarepta admits that the SAC further purports to assert claims for infringement of the NS Patents. Sarepta admits that it developed golodirsen (SRP-4053) and has marketed it as Vyondys 53® in the United States. Sarepta admits that Vyondys 53® is an antisense oligonucleotide of the phosphorodiamidate morpholino oligomer subclass that induces skipping of exon 53 of the human dystrophin gene to treat Duchenne Muscular Dystrophy ("DMD"). Sarepta denies any remaining allegations in Paragraph 3.

### Parties

4.     Upon information and belief, Sarepta admits the allegations in Paragraph 4.

5.     Sarepta is without knowledge or information sufficient to form a belief as to the truth of the matters asserted in Paragraph 5 and therefore denies them.

6.     Sarepta is without knowledge or information sufficient to form a belief as to the truth of the matters asserted in Paragraph 6 and therefore denies them.

7.     Sarepta admits the allegations in Paragraph 7.

### Jurisdiction and Venue

8.     Paragraph 8 contains legal conclusions to which no response is required. To the extent a response is required, Sarepta admits that the SAC purports to assert a breach of contract claim under Delaware law. Sarepta denies any remaining allegations in Paragraph 8.

9.     Paragraph 9 contains legal conclusions to which no response is required. To the extent a response is required, Sarepta admits that the SAC purports to assert a claim for declaratory judgment of invalidity of the UWA Patents under the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq.*, and under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.* Sarepta denies any remaining allegations in Paragraph 9.

10.     Paragraph 10 contains legal conclusions to which no response is required. To the extent a response is required, Sarepta denies that the Court has subject matter jurisdiction over Claim I (Breach of Contract) and Claim II of the SAC (Declaratory Judgment of Invalidity of the UWA Patents). For purposes of this action only, Sarepta does not contest that the Court has subject matter jurisdiction over Claims III-IX of the SAC. Sarepta denies any remaining allegations in Paragraph 10.

11.     Sarepta admits that it competes with Nippon Shinyaku in developing and commercializing exon 53 skipping therapies for the treatment of DMD in patients amenable to exon 53 skipping in the United States. Upon information and belief, Sarepta admits that Sarepta and Nippon Shinyaku are the only companies with approval from the U.S. Food and Drug Administration ("FDA") to market oligonucleotide therapies for the treatment of DMD in patients amenable to exon 53 skipping in the United States. Sarepta admits that its Vyondys 53® (golodirsen) product was approved by the FDA. Upon information and belief, Sarepta admits that Nippon Shinyaku's Viltepso (viltolarsen) product was subsequently approved by the FDA. Sarepta denies any remaining allegations in Paragraph 11.

12.     Paragraph 12 contains legal conclusions to which no response is required. To the extent a response is required, Sarepta admits that the UWA was granted U.S. Patent Nos. 8,455,636 ("the '636 patent") and 9,024,007 ("the '007 patent"), entitled "Antisense Oligonucleotides for Inducing Exon Skipping and Methods of Use Thereof." Sarepta admits that the '636 and '007 patents were issued by the USPTO on June 4, 2013 and May 5, 2015, respectively. Sarepta admits that the claims of the '636 and '007 patents cover Sarepta's Vyondys 53® (golodirsen) product. Sarepta denies any remaining allegations in Paragraph 12.

13.     Paragraph 13 contains legal conclusions to which no response is required. To the extent a response is required, Sarepta admits that the UWA Patents are listed in the FDA's *Approved Drug Products with Therapeutic Equivalence Evaluations* ("Orange Book") for Vyondys 53®. Sarepta admits that the Orange Book lists a patent expiry date of June 28, 2025 for the UWA Patents. Sarepta admits that it has submitted applications for patent term extension for the UWA Patents. Sarepta denies any remaining allegations in Paragraph 13.

14.     Sarepta denies the allegations in Paragraph 14.

15.     Sarepta admits that Matthew Gall of Sarepta attended a meeting with Masaya Toda of Nippon Shinyaku on or about January 13, 2020 to discuss a potential business relationship between Sarepta and Nippon Shinyaku. Sarepta is without sufficient knowledge or information to form a belief as to what Nippon Shinyaku understood the parties to have discussed, and therefore denies the same. Sarepta denies any remaining allegations in Paragraph 15.

16.     Sarepta admits that Chris Verni, Sarepta's Chief IP counsel, spoke with Nippon Shinyaku's outside counsel on or about January 28, 2020 while attending a conference for the Association of Corporate Patent Counsel. Sarepta denies any remaining allegations in Paragraph 16.

17.     Sarepta admits that, after June 1, 2021, it had not granted Nippon Shinyaku a license or covenant not to sue for the UWA Patents, and Nippon Shinyaku had not granted Sarepta a license or covenant not to sue for the NS Patents. Sarepta denies any remaining allegations in Paragraph 17.

18.     Sarepta admits that on or about July 6, 2021, Joe Zenkus of Sarepta sent an email to Masaya Toda of Nippon Shinyaku regarding Sarepta's filing of the IPR petitions challenging the patentability of the NS Patents. Sarepta admits that Paragraph 18 quotes a portion of Nippon

Shinyaku's Exhibit D.I. 39-4 (with alteration to original). Sarepta denies any remaining allegations in Paragraph 18.

19.      Paragraph 19 contains legal conclusions to which no response is required. To the extent a response is required, Sarepta admits that Paragraph 19 quotes (with emphasis added) a portion of Nippon Shinyaku's Exhibit D.I. 39-4. Sarepta is without sufficient knowledge or information to form a belief as to Nippon Shinyaku's beliefs, and therefore denies the same. Sarepta denies any remaining allegations in Paragraph 19.

20.      Sarepta admits that on or about September 8, 2021, Nippon Shinyaku sent Sarepta a proposed covenant not to sue Nippon Shinyaku for infringement of the UWA Patents, which Nippon Shinyaku requested that Sarepta execute and return to Nippon Shinyaku no later than the close of business on September 10, 2021. Sarepta admits that it did not execute the proposed covenant not to sue. Sarepta denies any remaining allegations in Paragraph 20.

21.      Paragraph 21 contains legal conclusions to which no response is required. To the extent a response is required, Sarepta admits that Nippon Shinyaku's SAC purports to assert claims for patent infringement of the NS Patents under the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq.* Sarepta denies any remaining allegations in Paragraph 21.

22.      Paragraph 22 contains legal conclusions to which no response is required. To the extent a response is required, Sarepta admits that Nippon Shinyaku's SAC alleges that the amount in controversy exceeds $75,000, exclusive of interest and costs. Sarepta denies any remaining allegations in Paragraph 22.

23.      Sarepta admits that it markets, offers to sell, and/or sells Vyondys 53® in the United States, including in Delaware. Sarepta denies any remaining allegations in Paragraph 23.

24.      Paragraph 24 contains legal conclusions to which no response is required. To the extent a response is required, Sarepta admits that Paragraph 24 alleges that this Court has subject matter jurisdiction over Nippon Shinyaku's patent infringement claims under 28 U.S.C. §§ 1331 and 1338(a). For purposes of this action only, Sarepta does not contest that the Court has subject matter jurisdiction over those patent infringement claims. Sarepta denies any remaining allegations in Paragraph 24.

25.      Paragraph 25 contains legal conclusions to which no response is required. To the extent a response is required, Sarepta admits that it is a Delaware corporation. Sarepta does not contest that this Court has personal jurisdiction over it for purposes of this action only. Sarepta denies any remaining allegations in Paragraph 25.

26.      Paragraph 26 contains legal conclusions to which no response is required. To the extent a response is required, Sarepta admits that it is a Delaware corporation. Sarepta does not contest that venue is proper in the District of Delaware for purposes of this action only. Sarepta denies any remaining allegations in Paragraph 26.

## Duchenne Muscular Dystrophy

27.      Sarepta admits that DMD is a rare genetic disorder characterized by progressive muscle deterioration and weakness, which primarily affects boys but in rare cases can affect girls. Sarepta admits that DMD often occurs in people without a known family history of the condition. Sarepta admits that DMD occurs in about one out of every 3,600 male infants worldwide and is the most common type of muscular dystrophy. Sarepta admits that the first symptoms usually present between three- and five-years old and worsen over time. Sarepta admits that patients with DMD progressively lose the ability to perform everyday activities and often require a wheelchair and assistance by their early teens. Sarepta admits that as DMD progresses, life-threatening heart

and respiratory conditions can occur, and patients, although disease severity and life expectancy vary, typically die of the disease in their 20s or 30s. Sarepta denies any remaining allegations in Paragraph 27.

28.    Sarepta is without knowledge or information sufficient to form a belief as to the truth of the matters asserted in Paragraph 28 and therefore denies them.

29.    Sarepta is without knowledge or information sufficient to form a belief as to the truth of the matters asserted in Paragraph 29 and therefore denies them.

30.    Sarepta is without knowledge or information sufficient to form a belief as to the truth of the matters asserted in Paragraph 30 and therefore denies them.

31.    Sarepta is without knowledge or information sufficient to form a belief as to the truth of the matters asserted in Paragraph 31 and therefore denies them.

32.    Sarepta admits that in Becker Muscular Dystrophy (BMD), in-frame mutations in the dystrophin gene result in truncated but functional dystrophin. Sarepta admits that BMD patients typically experience milder symptoms than DMD patients, ranging from borderline DMD to no symptoms at all. Sarepta denies any remaining allegations in Paragraph 32.

33.    Sarepta is without knowledge or information sufficient to form a belief as to the truth of the matters asserted in Paragraph 33 and therefore denies them.

**Exon-Skipping Antisense Oligomers as a Therapeutic Option**

34.    Sarepta is without knowledge or information sufficient to form a belief as to the truth of the matters asserted in Paragraph 34 and therefore denies them.

35.    Sarepta is without knowledge or information sufficient to form a belief as to the truth of the matters asserted in Paragraph 35 and therefore denies them.

**Nippon Shinyaku's Development of Exon 53 Skipping Oligomers**

36.     Sarepta is without knowledge or information sufficient to form a belief as to the truth of the matters asserted in Paragraph 36 and therefore denies them.

37.     Upon information and belief, Sarepta admits that Nippon Shinyaku purports to have filed Japanese Patent Application No. 2010-196032 with the National Center of Neurology and Psychiatry ("NCNP") on September 1, 2010. Sarepta is without knowledge or information sufficient to form a belief as to the truth of the remaining matters asserted in Paragraph 37 and therefore denies them.

38.     Upon information and belief, Sarepta admits that Nippon Shinyaku obtained approval in Japan and the United States for Viltepso. Sarepta is without knowledge or information sufficient to form a belief as to the truth of the remaining matters asserted in Paragraph 38 and therefore denies them.

**The NS Patents-In-Suit**

39.     Sarepta admits that the '361 patent is entitled "Antisense Nucleic Acids" and states that it was issued on July 18, 2017. Sarepta admits that the '361 patent lists, on its face, Nippon Shinyaku and NCNP as assignees, and Naoki Watanabe, Youhei Satou, Shin'ichi Takeda, and Tetsuya Nagata as inventors. Sarepta admits that Nippon Shinyaku's Exhibit D.I. 2-2 purports to be a copy of the '361 patent. Sarepta denies that the '361 patent is valid or enforceable. Sarepta denies any remaining allegations in Paragraph 39.

40.     Sarepta admits that the '092 patent is entitled "Antisense Nucleic Acids" and states that it was issued on August 20, 2019. Sarepta admits that the '092 patent lists, on its face, Nippon Shinyaku and NCNP as assignees, and Naoki Watanabe, Youhei Satou, Shin'ichi Takeda, and Tetsuya Nagata as inventors. Sarepta admits that Nippon Shinyaku's Exhibit D.I. 2-3 purports to

be a copy of the '092 patent. Sarepta denies that the '092 patent is valid or enforceable. Sarepta denies any remaining allegations in Paragraph 40.

41.     Sarepta admits that the '461 patent is entitled "Antisense Nucleic Acids" and states that it was issued on September 10, 2019. Sarepta admits that the '461 patent lists, on its face, Nippon Shinyaku and NCNP as assignees, and Naoki Watanabe, Youhei Satou, Shin'ichi Takeda, and Tetsuya Nagata as inventors. Sarepta admits that Nippon Shinyaku's Exhibit D.I. 2-4 purports to be a copy of the '461 patent. Sarepta denies that the '461 patent is valid or enforceable. Sarepta denies any remaining allegations in Paragraph 41.

42.     Sarepta admits that the '106 patent is entitled "Antisense Nucleic Acids" and states that it was issued on November 26, 2019. Sarepta admits that the '106 patent lists, on its face, Nippon Shinyaku and NCNP as assignees, and Naoki Watanabe, Youhei Satou, Shin'ichi Takeda, and Tetsuya Nagata as inventors. Sarepta admits that Nippon Shinyaku's Exhibit D.I. 2-5 purports to be a copy of the '106 patent. Sarepta denies that the '106 patent is valid or enforceable. Sarepta denies any remaining allegations in Paragraph 42.

43.     Sarepta admits that the '741 patent is entitled "Antisense Nucleic Acids" and states that it was issued on May 12, 2020. Sarepta admits that the '741 patent lists, on its face, Nippon Shinyaku and NCNP as assignees, and Naoki Watanabe, Youhei Satou, Shin'ichi Takeda, and Tetsuya Nagata as inventors. Sarepta admits that Nippon Shinyaku's Exhibit D.I. 2-6 purports to be a copy of the '741 patent. Sarepta denies that the '741 patent is valid or enforceable. Sarepta denies any remaining allegations in Paragraph 43.

44.     Sarepta admits that the '217 patent is entitled "Antisense Nucleic Acids" and states that it was issued on May 26, 2020. Sarepta admits that the '217 patent lists, on its face, Nippon Shinyaku and NCNP as assignees, and Naoki Watanabe, Youhei Satou, Shin'ichi Takeda, and

Tetsuya Nagata as inventors. Sarepta admits that Nippon Shinyaku's Exhibit D.I. 2-7 purports to be a copy of the '217 patent. Sarepta denies that the '217 patent is valid or enforceable. Sarepta denies any remaining allegations in Paragraph 44.

45.     Sarepta admits that the '322 patent is entitled "Antisense Nucleic Acids" and states that it was issued on June 16, 2020. Sarepta admits that the '322 patent lists, on its face, Nippon Shinyaku and NCNP as assignees, and Naoki Watanabe, Youhei Satou, Shin'ichi Takeda, and Tetsuya Nagata as inventors. Sarepta admits that Nippon Shinyaku's Exhibit D.I. 2-8 purports to be a copy of the '322 patent. Sarepta denies that the '322 patent is valid or enforceable. Sarepta denies any remaining allegations in Paragraph 45.

46.     Paragraph 46 contains legal conclusions to which no response is required. To the extent a response is required, Sarepta admits that Nippon Shinyaku's Exhibit D.I. 39-5 purports to be a license agreement between Nippon Shinyaku and NCNP. Sarepta is without knowledge or information sufficient to form a belief as to the truth of the remaining matters asserted in Paragraph 46 and therefore denies them.

47.     Paragraph 47 contains legal conclusions to which no response is required. To the extent a response is required, Sarepta is without knowledge or information sufficient to form a belief as to the truth of the matters asserted in Paragraph 47 and therefore denies them.

48.     Paragraph 48 contains legal conclusions to which no response is required. To the extent a response is required, Sarepta is without knowledge or information sufficient to form a belief as to the truth of the matters asserted in Paragraph 48 and therefore denies them.

### The UWA Patents

49.     Sarepta admits that, on June 12, 2018, the '851 patent entitled "Antisense Oligonucleotides for Inducing Exon Skipping and Methods of Use Thereof" issued to UWA as

assignee with named inventors Stephen Donald Wilton, Sue Fletcher, and Graham McClorey. Sarepta admits that it has exclusive rights to the '851 patent for the treatment of muscular dystrophies and the right to enforce the '851 patent. Sarepta denies any remaining allegations in Paragraph 49.

50.     Sarepta admits that, on March 12, 2019, the '590 patent entitled "Antisense Oligonucleotides for Inducing Exon Skipping and Methods of Use Thereof" issued to UWA as assignee with named inventors Stephen Donald Wilton, Sue Fletcher, and Graham McClorey. Sarepta admits that it has exclusive rights to the '590 patent for the treatment of muscular dystrophies and the right to enforce the '590 patent. Sarepta denies any remaining allegations in Paragraph 50.

51.     Sarepta admits that, on April 23, 2019, the '827 patent entitled "Antisense Oligonucleotides for Inducing Exon Skipping and Methods of Use Thereof" issued to UWA as assignee with named inventors Stephen Donald Wilton, Sue Fletcher, and Graham McClorey. Sarepta admits that it has exclusive rights to the '827 patent for the treatment of muscular dystrophies and the right to enforce the '827 patent. Sarepta denies any remaining allegations in Paragraph 51.

## Sarepta's Infringing Product

52.     Paragraph 52 contains legal conclusions to which no response is required. To the extent a response is required, Sarepta admits that Vyondys 53$^{®}$ is an antisense oligonucleotide of the phosphorodiamidate morpholino oligomer subclass that contains 25 linked subunits and is designed to bind to exon 53 of human dystrophin pre-RNA. Sarepta denies any remaining allegations in Paragraph 52.

53.    Sarepta admits that Vyondys 53® is designed to bind to exon 53 of dystrophin pre-mRNA resulting in exclusion of this exon during mRNA processing. Sarepta denies any remaining allegations in Paragraph 53.

54.    Paragraph 54 contains legal conclusions to which no response is required. To the extent a response is required, Sarepta admits that Vyondys 53® is administered to patients and is designed to bind to exon 53 of dystrophin pre-mRNA resulting in exclusion of this exon during mRNA processing in patients with a genetic mutation that is amenable to exon 53 skipping. Sarepta denies any remaining allegations in Paragraph 54.

55.    Sarepta denies the allegations in Paragraph 55.

56.    Sarepta admits that it sponsored clinical trials in the United States for Vyondys 53® (golodirsen). Sarepta denies any remaining allegations in Paragraph 56.

57.    Sarepta admits that the FDA issued a press release on December 12, 2019, stating that it granted accelerated approval of Vyondys® 53 (golodirsen) to treat DMD patients who have a confirmed mutation of the dystrophin gene amenable to exon 53 skipping. Sarepta denies any remaining allegations in Paragraph 57.

58.    Sarepta admits that on December 12, 2019, it issued a press release containing a statement partially quoted in Paragraph 58. Sarepta denies any remaining allegations in Paragraph 58.

59.    Paragraph 59 contains legal conclusions to which no response is required. To the extent a response is required, Sarepta admits that, following FDA approval, it has marketed, offered to sell, and/or sold Vyondys 53® in the United States for the treatment of DMD patients who have a confirmed mutation of the dystrophin gene that is amenable to exon 53 skipping. Sarepta admits that its Form 10-K Annual Report for 2020 refers to Vyondys 53® as a commercial

product and states that Vyondys 53® was sold in 2020 and 2019. Sarepta denies any remaining allegations in Paragraph 59.

60.    Paragraph 60 contains legal conclusions to which no response is required. To the extent a response is required, Sarepta admits that it markets, offers to sell, and/or sells Vyondys 53® in the United States for the treatment of DMD patients who have a confirmed mutation of the dystrophin gene that is amenable to exon 53 skipping. Sarepta denies any remaining allegations in Paragraph 60.

### Sarepta's Breach of the MCA

61.    Sarepta admits the allegations in Paragraph 61.

62.    Paragraph 62 contains legal conclusions to which no response is required. To the extent a response is required, Sarepta admits that Paragraph 62 quotes a portion of Section 6.1 of the MCA. Sarepta denies any remaining allegations in Paragraph 62.

63.    Paragraph 63 contains legal conclusions to which no response is required. To the extent a response is required, Sarepta admits that Paragraph 63 quotes a portion of Section 10 of the MCA. Sarepta denies any remaining allegations in Paragraph 63.

64.    Paragraph 64 contains legal conclusions to which no response is required. To the extent a response is required, Sarepta admits that Paragraph 64 quotes from the MCA's definition of "Potential Actions" in Section 1. Sarepta denies any remaining allegations in Paragraph 64.

65.    Paragraph 65 contains legal conclusions to which no response is required. To the extent a response is required, Sarepta admits that Paragraph 65 quotes from the MCA's definitions of "Covenant Term" and "Term" in Section 1. Sarepta denies any remaining allegations in Paragraph 65.

66.     Sarepta admits that it filed the IPR Petitions with the PTAB on June 21, 2021, challenging the patentability of all claims of the NS Patents. Sarepta denies any remaining allegations in Paragraph 66.

## CLAIM I
### (Breach of Contract)

67.     Sarepta realleges as if fully set forth herein each of the foregoing paragraphs.

68.     Paragraph 68 contains legal conclusions to which no response is required. To the extent a response is required, Sarepta denies that the MCA is valid or enforceable under Nippon Shinyaku's legally erroneous contract interpretation. Sarepta denies any remaining allegations in Paragraph 68.

69.     Sarepta admits that Paragraph 69 quotes from a portion of one sentence in Section 10 of the MCA. Sarepta denies any remaining allegations in Paragraph 69.

70.     Sarepta admits that Paragraph 70 quotes the MCA's definition of "Potential Actions" in Section 1. Sarepta denies any remaining allegations in Paragraph 70.

71.     Sarepta admits that it filed the IPR Petitions with the PTAB on June 21, 2021, challenging the patentability of all claims of the NS Patents. Sarepta denies any remaining allegations in Paragraph 71.

72.     Sarepta denies the allegations in Paragraph 72.

73.     Sarepta denies the allegations in Paragraph 73.

74.     Sarepta denies the allegations in Paragraph 74.

75.     Sarepta denies the allegations in Paragraph 75.

## CLAIM II
### (Declaratory Judgment of Invalidity of the UWA Patents)

76.     Sarepta realleges as if fully set forth herein each of the foregoing paragraphs.

77.    Sarepta admits that it competes with Nippon Shinyaku in developing and commercializing exon 53 skipping therapies for the treatment of DMD in patients amenable to exon 53 skipping in the United States. Upon information and belief, Sarepta admits that Sarepta and Nippon Shinyaku are the only companies with approval from the FDA to market oligonucleotide therapies for the treatment of DMD in patients amenable to exon 53 skipping in the United States. Sarepta admits that its Vyondys 53® (golodirsen) product was approved by the FDA. Upon information and belief, Sarepta admits that Nippon Shinyaku's Viltepso (viltolarsen) product was subsequently approved by the FDA. Sarepta denies any remaining allegations in Paragraph 77.

78.    Paragraph 78 contains legal conclusions to which no response is required. To the extent a response is required, Sarepta admits that UWA was granted the '636 patent and the '007 patent, each entitled "Antisense Oligonucleotides for Inducing Exon Skipping and Methods of Use Thereof." Sarepta admits that the '636 and '007 patents were issued by the USPTO on June 4, 2013 and May 5, 2015, respectively. Sarepta admits that the claims of the '636 and '007 patents cover Sarepta's Vyondys 53® (golodirsen) product. Sarepta denies any remaining allegations in Paragraph 78.

79.    Paragraph 79 contains legal conclusions to which no response is required. To the extent a response is required, Sarepta admits that the UWA Patents are listed in the FDA Orange Book for Vyondys 53®. Sarepta admits that the Orange Book lists a patent expiry date of June 28, 2025 for the UWA Patents. Sarepta admits that it has submitted applications for patent term extension for the UWA Patents. Sarepta denies any remaining allegations in Paragraph 79.

80.    Sarepta denies the allegations in Paragraph 80.

81.     Sarepta admits that Matthew Gall of Sarepta attended a meeting with Masaya Toda of Nippon Shinyaku on or about January 13, 2020 to discuss a potential business relationship between Sarepta and Nippon Shinyaku. Sarepta is without sufficient knowledge or information to form a belief as to what Nippon Shinyaku understood the parties to have discussed, and therefore denies the same. Sarepta denies any remaining allegations in Paragraph 81.

82.     Sarepta admits that Chris Verni, Sarepta's Chief IP counsel, spoke with Nippon Shinyaku's outside counsel on or about January 28, 2020 while attending a conference for the Association of Corporate Patent Counsel. Sarepta denies any remaining allegations in Paragraph 82.

83.     Sarepta admits that, after June 1, 2021, it had not granted Nippon Shinyaku a license or covenant not to sue for the UWA Patents, and Nippon Shinyaku had not granted Sarepta a license or covenant not to sue for the NS Patents. Sarepta denies any remaining allegations in Paragraph 83.

84.     Sarepta admits that on or about July 6, 2021, Joe Zenkus of Sarepta sent an email to Masaya Toda of Nippon Shinyaku regarding Sarepta's filing of the IPR petitions challenging the patentability of the NS Patents. Sarepta admits that Paragraph 84 quotes a portion of Nippon Shinyaku's Exhibit D.I. 39-4. Sarepta denies any remaining allegations in Paragraph 84.

85.     Paragraph 85 contains legal conclusions to which no response is required. To the extent a response is required, Sarepta admits that Paragraph 85 quotes (with emphasis added) a portion of Nippon Shinyaku's Exhibit D.I. 39-4. Sarepta is without sufficient knowledge or information to form a belief as Nippon Shinyaku's beliefs, and therefore denies the same. Sarepta denies any remaining allegations in Paragraph 85.

86.     Sarepta admits that on or about September 8, 2021, Nippon Shinyaku sent Sarepta a proposed covenant not to sue Nippon Shinyaku for infringement of the UWA Patents, which Nippon Shinyaku requested that Sarepta execute and return to Nippon Shinyaku no later than the close of business on September 10, 2021. Sarepta admits that it did not execute the proposed covenant not to sue. Sarepta denies any remaining allegations in Paragraph 86.

87.     Sarepta denies the allegations in Paragraph 87.

88.     Sarepta denies the allegations in Paragraph 88.

89.     Sarepta denies the allegations in Paragraph 89.

90.     Sarepta denies the allegations in Paragraph 90.

91.     Sarepta denies the allegations in Paragraph 91.

<u>CLAIM III</u>
**(Infringement of the '361 Patent)**

92.     Sarepta realleges as if fully set forth herein each of the foregoing paragraphs.

93.     Sarepta admits that Paragraph 93 quotes claim 1 of the '361 patent.

94.     Sarepta admits that Paragraph 94 purports to quote in part from "Highlights of Prescribing Information (Dec. 12, 2019) § 11." Sarepta admits that golodirsen is an antisense oligonucleotide of the phosphorodiamidate morpholino oligomer (PMO) subclass. Sarepta denies any remaining allegations in Paragraph 94.

95.     Sarepta admits that Paragraph 95 purports to quote in part from "Highlights of Prescribing Information (Dec. 12, 2019) § 12.1." Sarepta admits that golodirsen is designed to bind to exon 53 of dystrophin pre-mRNA resulting in exclusion of this exon during mRNA processing in patients with a genetic mutation that is amenable to exon 53 skipping. Sarepta denies any remaining allegations in Paragraph 95.

96.    Sarepta admits that Paragraph 96 purports to quote in part from "Highlights of Prescribing Information (Dec. 12, 2019) § 12.1." Sarepta admits that the sequence of bases from the 5' end to 3' end of golodirsen is GTTGCCTCCGGTTCTGAAGGTGTTC. Sarepta denies any remaining allegations in Paragraph 96.

97.    Sarepta denies the allegations in Paragraph 97.

98.    Sarepta denies the allegations in Paragraph 98.

99.    Paragraph 99 contains legal conclusions to which no response is required. To the extent a response is required, Sarepta admits that Paragraph 99 purports to quote in part from "Highlights of Prescribing Information (Dec. 12, 2019) § 1." Sarepta admits that Vyondys 53® is indicated for the treatment of DMD in patients who have a confirmed mutation of the dystrophin gene that is amenable to exon 53 skipping. Sarepta denies any remaining allegations in Paragraph 99.

100.    Sarepta denies the allegations in Paragraph 100.

101.    Paragraph 101 contains legal conclusions to which no response is required. To the extent a response is required, Sarepta admits that Paragraph 101 purports to quote in part from "Highlights of Prescribing Information (Dec. 12, 2019) § 1; Highlights of Prescribing Information (Feb. 11, 2021) § 1." Sarepta admits that Vyondys 53® is indicated for the treatment of DMD in patients who have a confirmed mutation of the dystrophin gene that is amenable to exon 53 skipping. Sarepta denies any remaining allegations in Paragraph 101.

102.    Sarepta denies the allegations in Paragraph 102.

103.    Sarepta denies the allegations in Paragraph 103.

104.    Sarepta denies the allegations in Paragraph 104.

## CLAIM IV
### (Infringement of the '092 Patent)

105.    Sarepta realleges as if fully set forth herein each of the foregoing paragraphs.

106.    Sarepta admits that Paragraph 106 quotes claim 1 of the '092 patent.

107.    Sarepta admits that Paragraph 107 purports to quote in part from "Highlights of Prescribing Information (Dec. 12, 2019) § 11." Sarepta admits that golodirsen is an antisense oligonucleotide of the phosphorodiamidate morpholino oligomer (PMO) subclass. Sarepta admits that golodirsen contains 25 linked subunits. Sarepta denies any remaining allegations in Paragraph 107.

108.    Sarepta admits that Paragraph 108 purports to quote in part from "Highlights of Prescribing Information (Dec. 12, 2019) §11." Sarepta admits that the sequence of bases of golodirsen from the 5' end to 3' end is GTTGCCTCCGGTTCTGAAGGTGTTC. Sarepta denies any remaining allegations in Paragraph 108.

109.    Paragraph 109 contains legal conclusions to which no response is required. To the extent a response is required, Sarepta denies the allegations in Paragraph 109.

110.    Sarepta admits that Paragraph 110 purports to quote in part from "Highlights of Prescribing Information (Dec. 12, 2019) § 12.1." Sarepta admits that golodirsen is designed to bind to exon 53 of dystrophin pre-mRNA resulting in exclusion of this exon during mRNA processing in patients with a genetic mutation that is amenable to exon 53 skipping. Sarepta denies any remaining allegations in Paragraph 110.

111.    Sarepta denies the allegations in Paragraph 111.

112.    Sarepta denies the allegations in Paragraph 112.

113.    Paragraph 113 contains legal conclusions to which no response is required. To the extent a response is required, Sarepta admits that Paragraph 113 purports to quote in part from

"Highlights of Prescribing Information (Dec. 12, 2019) § 1." Sarepta admits that Vyondys 53® is indicated for the treatment of DMD in patients who have a confirmed mutation of the dystrophin gene that is amenable to exon 53 skipping. Sarepta denies any remaining allegations in Paragraph 113.

114.    Sarepta denies the allegations in Paragraph 114.

115.    Paragraph 115 contains legal conclusions to which no response is required. To the extent a response is required, Sarepta admits that Paragraph 115 purports to quote in part from "Highlights of Prescribing Information (Dec. 12, 2019) § 1; Highlights of Prescribing Information (Feb. 11, 2021) § 1." Sarepta admits that Vyondys 53® is indicated for the treatment of DMD in patients who have a confirmed mutation of the dystrophin gene that is amenable to exon 53 skipping. Sarepta denies any remaining allegations in Paragraph 115.

116.    Sarepta denies the allegations in Paragraph 116.

117.    Sarepta denies the allegations in Paragraph 117.

118.    Sarepta denies the allegations in Paragraph 118.

## CLAIM V
### (Infringement of the '461 Patent)

119.    Sarepta realleges as if fully set forth herein each of the foregoing paragraphs.

120.    Sarepta admits that Paragraph 120 quotes claim 1 of the '461 patent.

121.    Paragraph 121 contains legal conclusions to which no response is required. To the extent a response is required, Sarepta denies the allegations in Paragraph 121.

122.    Paragraph 122 contains legal conclusions to which no response is required. To the extent a response is required, Sarepta admits that the label for Vyondys 53® indicates that the structure of golodirsen is:



Sarepta denies any remaining allegations in Paragraph 122.

123.    Sarepta denies the allegations in Paragraph 123.

124.    Sarepta denies the allegations in Paragraph 124.

125.    Sarepta denies the allegations in Paragraph 125.

126.    Sarepta denies the allegations in Paragraph 126.

127.    Sarepta denies the allegations in Paragraph 127.

128.    Sarepta denies the allegations in Paragraph 128.

### CLAIM VI
#### (Infringement of the '106 Patent)

129.    Sarepta realleges as if fully set forth herein each of the foregoing paragraphs.

130.    Sarepta admits that Paragraph 130 quotes claim 1 of the '106 patent.

131.    Paragraph 131 contains legal conclusions to which no response is required. To the extent a response is required, Sarepta admits that the label for Vyondys 53® describes the structure of golodirsen. Sarepta denies any remaining allegations in Paragraph 131.

132.    Sarepta denies the allegations in Paragraph 132.

133.    Sarepta denies the allegations in Paragraph 133.

134.    Sarepta denies the allegations in Paragraph 134.

135.    Sarepta denies the allegations in Paragraph 135.

136.    Sarepta denies the allegations in Paragraph 136.

137.    Sarepta denies the allegations in Paragraph 137.

## CLAIM VII
### (Infringement of the '741 Patent)

138.    Sarepta realleges as if fully set forth herein each of the foregoing paragraphs.

139.    Sarepta admits that Paragraph 139 quotes claim 1 of the '741 patent.

140.    Paragraph 140 contains legal conclusions to which no response is required. To the extent a response is required, Sarepta admits that Paragraph 140 purports to quote in part from "Highlights of Prescribing Information (Dec. 12, 2019) § 1; Highlights of Prescribing Information (Feb. 11, 2021) § 1." Sarepta admits that Vyondys 53® is indicated for the treatment of DMD in patients who have a confirmed mutation of the dystrophin gene that is amenable to exon 53 skipping. Sarepta denies any remaining allegations in Paragraph 140.

141.    Sarepta admits that Paragraph 141 purports to quote in part from "Highlights of Prescribing Information (Dec. 12, 2019)" and "Highlights of Prescribing Information (Feb. 11, 2021)." Sarepta admits that golodirsen is designed to bind to exon 53 of dystrophin pre-mRNA resulting in exclusion of this exon during mRNA processing in patients with a genetic mutation that is amenable to exon 53 skipping. Sarepta denies any remaining allegations in Paragraph 141.

142.    Sarepta denies the allegations in Paragraph 142.

143.    Sarepta denies the allegations in Paragraph 143.

144.    Sarepta denies the allegations in Paragraph 144.

145.    Sarepta denies the allegations in Paragraph 145.

## CLAIM VIII
### (Infringement of the '217 Patent)

146.    Sarepta realleges as if fully set forth herein each of the foregoing paragraphs.

147.    Sarepta denies that Paragraph 147 accurately quotes the language of claim 1 of the '217 patent.

148.    Paragraph 148 contains legal conclusions to which no response is required. To the extent a response is required, Sarepta admits that Vyondys 53® is indicated for the treatment of DMD in patients who have a confirmed mutation of the dystrophin gene that is amenable to exon 53 skipping. Sarepta denies any remaining allegations in Paragraph 148.

149.    Sarepta admits that Paragraph 149 purports to quote in part from "Highlights of Prescribing Information (Dec. 12, 2019)" and "Highlights of Prescribing Information (Feb. 11, 2021) § 2.4." Sarepta admits that Vyondys 53® is administered via intravenous infusion. Sarepta denies any remaining allegations in Paragraph 149.

150.    Sarepta denies the allegations in Paragraph 150.

151.    Sarepta denies the allegations in Paragraph 151.

152.    Sarepta denies the allegations in Paragraph 152.

153.    Sarepta denies the allegations in Paragraph 153.

## CLAIM IX
### (Infringement of the '322 Patent)

154.    Sarepta realleges as if fully set forth herein each of the foregoing paragraphs.

155.    Sarepta denies the allegations in Paragraph 155.

156.    Sarepta denies the allegations in Paragraph 156.

157.    Sarepta denies the allegations in Paragraph 157.

158.    Sarepta denies the allegations in Paragraph 158.

159.    Sarepta denies the allegations in Paragraph 159.

160.    Sarepta denies the allegations in Paragraph 160.

161.    Sarepta denies the allegations in Paragraph 161.

162.    Sarepta denies the allegations in Paragraph 162.

163.    Sarepta denies the allegations in Paragraph 163.

164.    Sarepta denies the allegations in Paragraph 164.

Sarepta denies all allegations of the SAC not specifically admitted above.

## **PRAYER FOR RELIEF**

Sarepta denies that Nippon Shinyaku is entitled to the relief it requests or to any other relief.

## **DEMAND FOR A JURY TRIAL**

Sarepta admits that Nippon Shinyaku has demanded a jury trial solely for Claims II-IX of the SAC but denies that it is entitled to one.

## **DEFENSES**

By alleging the Defenses set forth below, Sarepta does not agree or concede that it bears the burden of proof or the burden of persuasion on any of these issues, whether in whole or in part. For its Defenses to the SAC, Sarepta alleges as follows.

## **First Defense**
**(No Breach of Contract)**

Sarepta has not breached any of its contractual obligations under the MCA.

## Second Defense
### (The UWA Patents are Not Invalid)

All claims of the UWA Patents are not invalid or unenforceable under 35 U.S.C. § 1 *et seq.*, and Nippon Shinyaku will not be able to demonstrate otherwise by clear and convincing evidence.

## Third Defense
### (Non-Infringement of the NS Patents)

Sarepta has not infringed and will not infringe, directly or indirectly, any valid and enforceable claim of the NS Patents, either literally or under the doctrine of equivalents.

## Fourth Defense
### (Invalidity of the NS Patents)

Each asserted claim of the NS Patents is invalid for failure to comply with one or more requirements of the patent laws of the United States, including without limitation, 35 U.S.C. §§ 101, 102, 103, 112, and/or obviousness-type double patenting, and the rules, regulations, and laws pertaining thereto.

## Fifth Defense
### (Prosecution History Estoppel and Disclaimer)

Nippon Shinyaku's patent infringement claims are estopped in whole or in part by representations made or actions taken during the prosecution of the applications that matured into the NS Patents and/or related patents, under the doctrine of prosecution history estoppel and/or prosecution disclaimer.

## Sixth Defense
### (Failure to State a Claim)

The SAC fails to state a claim upon which relief may be granted.

**Seventh Defense**
**(No Case or Controversy)**

There is no justiciable case or controversy between the parties concerning Claims I-II of the SAC.

**Eighth Defense**
**(Subject Matter Jurisdiction)**

The Court lacks subject matter jurisdiction over Claims I-II of the SAC.

**Ninth Defense**
**(Equitable Defenses and Remedies)**

Nippon Shinyaku's breach of contract claim and/or requested remedies are barred in whole or in part under principles of equity, including unclean hands.

For example, in view of Nippon Shinyaku's knowing and repeated bad-faith breaches of the MCA as detailed in Counterclaim V below, Nippon Shinyaku has unclean hands precluding it from enforcing the MCA and depriving it of any entitlement to injunctive or other equitable relief for any alleged breach of the MCA by Sarepta.

**Tenth Defense**
**(No Damages)**

Nippon Shinyaku has incurred no damages as a result of the alleged patent infringement or breach of contract, which Sarepta denies.

**Eleventh Defense**
**(No Injunctive Relief)**

Nippon Shinyaku is not entitled to injunctive relief for its breach of contract claim or any other claim because it cannot succeed on the merits of any claim, any alleged injury to Nippon Shinyaku is neither immediate nor irreparable, Nippon Shinyaku has an adequate remedy at law, and the balance of the equities and the public interest are not served by the granting of an injunction. In addition, in view of Nippon Shinyaku's knowing and repeated bad-faith breaches of

the MCA as detailed in Counterclaim V below, Nippon Shinyaku has unclean hands depriving it of any entitlement to injunctive or other equitable relief for any alleged breach of the MCA by Sarepta.

**Twelfth Defense**
**(Limitation on Damages and Costs)**

Nippon Shinyaku's claims for relief are barred in whole or in part, including without limitation, by 35 U.S.C. §§ 286, 287, and/or 288.

**Thirteenth Defense**
**(No Willful Infringement)**

Nippon Shinyaku is not entitled to enhanced damages pursuant to 35 U.S.C. § 284, because it cannot prove that Sarepta has willfully infringed any valid claim of the NS Patents.

**Fourteenth Defense**
**(No Exceptional Case)**

Nippon Shinyaku cannot prove that this is an exceptional case warranting an award of attorney fees under 35 U.S.C. § 285, or pursuant to the Court's inherent power.

**Reservation of Additional Defenses**

Sarepta reserves any and all additional defenses available under Title 35 of the United States Code, or otherwise in law or equity, now existing, or later arising, as may be developed during discovery or supported by subsequent court rulings.

**COUNTERCLAIMS**

Counterclaim Plaintiff Sarepta Therapeutics, Inc. ("Sarepta") asserts the following allegations and counterclaims against counterclaim Defendants Nippon Shinyaku Co., Ltd. ("Nippon Shinyaku") and NS Pharma, Inc. ("NS Pharma") (collectively "Defendants"). Sarepta reserves the right to assert additional counterclaims as warranted by facts discovered through investigation and discovery.

**Nature of the Action**

1.     Sarepta asserts counterclaims for infringement of U.S. Patent Nos. 9,994,851 ("the '851 patent") (Exhibit A); 10,227,590 ("the '590 patent") (Exhibit B); and 10,266,827 ("the '827 patent") (Exhibit C) (collectively, "the UWA Patents") arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.* These patent infringement claims arise out of Defendants' unauthorized manufacture, use, sale, offer for sale, and/or importation in the United States of Viltepso, also known as viltolarsen, and Defendants' intentional encouragement of physicians and patients to administer Viltepso.

2.     Sarepta further asserts a counterclaim for declaratory judgment of invalidity of U.S. Patent Nos. 9,708,361 ("the '361 patent"); 10,385,092 ("the '092 patent"); 10,407,461 ("the '461 patent"); 10,487,106 ("the '106 patent"); 10,647,741 ("the '741 patent"); 10,662,217 ("the '217 patent"); and 10,683,322 ("the '322 patent") (collectively, "the NS Patents") arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.* and under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*

3.     Sarepta further asserts a counterclaim for breach of contract arising under Delaware state law.

**Parties**

4.     Sarepta is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 215 First Street, Cambridge, Massachusetts 02142.

5.     Nippon Shinyaku represents in its Second Amended Complaint that it is a Japanese company with a principal pace of business at 14, Nishinosho-Monguchi-cho, Kisshoin, Minami-ku, Kyoto 601-8550, Japan.

6.      Nippon Shinyaku represents in its Second Amended Complaint that by virtue of a license agreement with NCNP, Nippon Shinyaku holds the exclusive assertion rights for the NS Patents.

7.      Upon information and belief, NS Pharma is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 149 East Ridgewood Ave., Suite 280S, Paramus, NJ 07652. Upon information and belief, NS Pharma is a wholly owned U.S. subsidiary of Nippon Shinyaku. Upon information and belief, NS Pharma is Nippon Shinyaku's U.S. Agent authorized by the FDA to market Viltepso.

<u>**Jurisdiction and Venue**</u>

8.      There is an actual justiciable controversy between Defendants and Sarepta concerning Defendants' liability for infringement of the UWA Patents.

9.      Sarepta's counterclaims against Defendants for infringement of the UWA Patents arise under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*

10.      This Court has subject matter jurisdiction over the patent infringement counterclaims under 28 U.S.C. §§ 1331 and 1338(a).

11.      There is an actual justiciable controversy between Defendants and Sarepta concerning the invalidity of the NS Patents as evidenced by Nippon Shinyaku's allegations in the Second Amended Complaint concerning Sarepta's alleged liability for infringement of the NS Patents.

12.      Sarepta's counterclaim for declaratory judgment of invalidity of the NS Patents arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.* and under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*

13.    This Court has subject matter jurisdiction over the declaratory judgment counterclaim of invalidity of the NS Patents under 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

14.    There is an actual justiciable controversy between Nippon Shinyaku and Sarepta concerning Nippon Shinyaku's breach of contract.

15.    Sarepta's breach of contract counterclaim arises under Delaware state law.

16.    This Court has subject matter jurisdiction over the breach of contract counterclaim under 28 U.S.C. §§ 1332(a) and 1367(a).

17.    Personal jurisdiction is proper over Nippon Shinyaku at least because Nippon Shinyaku has commenced this action and thus submitted to this Court's personal jurisdiction.

18.    Upon information and belief, personal jurisdiction is proper over NS Pharma, a Delaware corporation, at least because it has committed acts of infringement of the UWA Patents in Delaware by offering to sell and selling Viltepso (viltolarsen) in the State of Delaware. In addition, upon information and belief, Nippon Shinyaku conferred with, and coordinated with, NS Pharma in bringing this action and thus NS Pharma has consented to this Court's personal jurisdiction.

19.    Upon information and belief, Nippon Shinyaku directly or through its agents including its wholly owned U.S. subsidiary NS Pharma, manufactures, markets, offers to sell, sells, and/or distributes Viltepso (viltolarsen) in the State of Delaware and elsewhere in the United States, and Viltepso is prescribed by physicians practicing in Delaware and elsewhere in the United States, is available at pharmacies or medical facilities located within Delaware and elsewhere in the United States, and/or is used by patients in, and/or residents of, Delaware and elsewhere in the United States.

20.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(c)(3) and 1400(b).

**The UWA Patents**

21.    On June 12, 2018, the USPTO issued the '851 patent, entitled "Antisense Oligonucleotides for Inducing Exon Skipping and Methods of Use Thereof." The '851 patent is assigned to the University of Western Australia. A copy of the '851 patent is attached hereto as Exhibit A. The '851 patent is fully maintained and is valid and enforceable. Sarepta has exclusive rights to the '851 patent for the treatment of muscular dystrophies and the right to enforce the '851 patent.

22.    On March 12, 2019, the USPTO issued the '590 patent, entitled "Antisense Oligonucleotides for Inducing Exon Skipping and Methods of Use Thereof." The '590 patent is assigned to the University of Western Australia. A copy of the '590 patent is attached hereto as Exhibit B. The '590 patent is fully maintained and is valid and enforceable. Sarepta has exclusive rights to the '590 patent for the treatment of muscular dystrophies and the right to enforce the '590 patent.

23.    On April 23, 2019, the USPTO issued the '827 patent, entitled "Antisense Oligonucleotides for Inducing Exon Skipping and Methods of Use Thereof." The '827 patent is assigned to the University of Western Australia. A copy of the '827 patent is attached hereto as Exhibit C. The '827 patent is fully maintained and is valid and enforceable. Sarepta has exclusive rights to the '827 patent for the treatment of muscular dystrophies and the right to enforce the '827 patent.

24.    The UWA Patents are listed in the U.S. Food and Drug Administration's ("FDA") *Approved Drug Products with Therapeutic Equivalence Evaluations* ("the Orange Book") for New Drug Application ("NDA") No. 211970 for Sarepta's Vyondys 53® product, also known as golodirsen. Each of the UWA Patents covers, *inter alia*, an antisense oligonucleotide of 20 to 31

bases wherein a base sequence comprises at least 12 consecutive bases of SEQ ID NO: 195 disclosed in the UWA Patents, in which uracil bases are thymine bases, and a method of using it for the treatment of Duchenne Muscular Dystrophy ("DMD") in patients who have a mutation of the DMD gene that is amenable to exon 53 skipping.

**Background**

**Defendants' Infringing Product**

25.     Upon information and belief, Defendants' product, Viltepso (viltolarsen), is a morpholino antisense oligonucleotide comprising a base sequence that is 100% complementary to consecutive bases of a target region of exon 53 of the human dystrophin pre-mRNA. Viltepso (viltolarsen) Highlights of Prescribing Information (Aug. 2020),[3] § 11; *see also* Viltepso (viltolarsen) Highlights of Prescribing Information (Mar. 2021)[4]. Viltepso contains 21 bases and CCTCCGGTTCTGAAGGTGTTC as the base sequence. Viltepso (viltolarsen) Highlights of Prescribing Information (Mar. 2021), § 11.

26.     Upon information and belief, Viltepso induces exon 53 skipping in a human dystrophin pre-mRNA. *Id.* § 12.1.

27.     Upon information and belief, Viltepso is administered to DMD patients who have a confirmed mutation of the DMD gene that is amenable to exon 53 skipping and induces skipping of exon 53 of dystrophin pre-mRNA. *Id.* §§ 1, 12.1. Defendants' label for Viltepso has encouraged and continues to encourage such use.

---

[3]  Viltepso (viltolarsen) Highlights of Prescribing Information (Rev. Aug. 2020), https://www.accessdata.fda.gov/drugsatfda_docs/label/2020/212154Orig1s000lbl.pdf (last visited Jan. 28, 2022).

[4]  Viltepso (viltolarsen) Highlights of Prescribing Information (Rev. Mar. 2021), https://www.viltepso.com/prescribing-information (last visited Jan. 28, 2022).

28.     Upon information and belief, Defendants conducted pre-clinical and clinical development of Viltepso (viltolarsen), including clinical trials, to generate data in support of their submission of an NDA with the FDA for Viltepso (viltolarsen).

29.     Upon information and belief, on October 2, 2019, Nippon Shinyaku announced that it had submitted a rolling NDA for Viltepso (viltolarsen) with the FDA. Nippon Shinyaku News Release (Oct. 2, 2019).[5]

30.     On August 12, 2020, the FDA announced it had granted accelerated approval to Viltepso for the treatment of DMD in patients who have a confirmed mutation of the DMD gene that is amenable to exon 53 skipping. FDA News Release (Aug. 12, 2020).[6]

31.     Upon information and belief, Nippon Shinyaku announced that NS Pharma, a wholly owned U.S. subsidiary of Nippon Shinyaku, had launched Viltepso for commercial sales in the United States as of August 19, 2020. Nippon Shinyaku News Release (Aug. 20, 2020).[7] Upon information and belief, NS Pharma is Nippon Shinyaku's U.S. Agent authorized by the FDA to market Viltepso. *Id.*

32.     Upon information and belief, since at least August 2020, Defendants have encouraged physicians to treat DMD patients by administering Viltepso to induce skipping of exon 53 of dystrophin pre-mRNA including through their labels for Viltepso. Defendants have also facilitated pricing and reimbursement of Viltepso in the United States.

---

[5]     Nippon    Shinyaku    Press    Release    (Oct.    2,    2019),    https://www.nippon-shinyaku.co.jp/file/download.php?file_id=3838 (last visited Jan. 28, 2022).

[6]     FDA    News    Release    (Aug.    12,    2020),    https://www.fda.gov/news-events/press-announcements/fda-approves-targeted-treatment-rare-duchenne-muscular-dystrophy-mutation (last visited Jan. 28, 2022).

[7]     Nippon    Shinyaku    Press    Release    (Aug.    20,    2020),    https://www.nippon-shinyaku.co.jp/file/download.php?file_id=3868 (last visited Jan. 28, 2022).

**Defendants' Awareness of the UWA Patents**

33.    Upon information and belief, Defendants have been familiar with and knew of the UWA Patents prior to this litigation. Upon information and belief, Defendants believed prior to this litigation that one or more claims of the UWA Patents covered Viltepso (viltolarsen). When the UWA Patents issued in 2018 and 2019, for example, Defendants' NDA seeking marketing approval for viltolarsen was under regulatory review in the United States. Upon information and belief, Defendants became aware of the UWA Patents after the UWA Patents were submitted for listing in the FDA Orange Book for Vyondys 53® in December 2019. Upon information and belief, Defendants expected that their Viltepso (viltolarsen) product, if approved, would compete directly with Sarepta's Vyondys 53® (golodirsen) product. Upon information and belief, Defendants learned of the UWA Patents through their efforts to research and/or monitor third-party U.S. patents that could potentially interfere with their ability to market Viltepso (viltolarsen) in the United States.

34.    Sarepta and Nippon Shinyaku entered into a Mutual Confidentiality Agreement ("MCA") effective June 1, 2020. Upon information and belief, Defendants were already aware of the UWA Patents when Sarepta and Nippon Shinyaku began business discussions under the MCA in June 2020.

### COUNTERCLAIM I
### (Infringement of the '851 Patent)

35.    Sarepta realleges each of the foregoing Paragraphs 1-34 as if fully set forth herein.

36.    Sarepta incorporates by reference its answers and responses to Nippon Shinyaku's Second Amended Complaint ("SAC") as if fully set forth herein.

37.    Claim 1 of the '851 patent recites:

> An antisense oligonucleotide of 20 to 31 bases comprising a base sequence that is 100% complementary to consecutive bases of a target region of exon 53 of the human dystrophin pre-mRNA, wherein the target region is within annealing site H53A(+23+47) and annealing site H53A(+39+69), wherein the base sequence comprises at least 12 consecutive bases of CUG AAG GUG UUC UUG UAC UUC AUC C (SEQ ID NO: 195), in which uracil bases are thymine bases, wherein the antisense oligonucleotide is a morpholino antisense oligonucleotide, and wherein the antisense oligonucleotide induces exon 53 skipping; or a pharmaceutically acceptable salt thereof.

38.    Upon information and belief, Viltepso satisfies each element of at least claim 1 of the '851 patent.

39.    Viltolarsen is an antisense oligonucleotide of the phosphorodiamidate morpholino oligomer (PMO) subclass. *See* Viltepso (viltolarsen) Highlights of Prescribing Information (Rev. Mar. 2021), § 11. Viltolarsen contains 21 linked subunits. *Id.* The base sequence of viltolarsen is CCTCCGGTTCTGAAGGTGTTC, which includes CTGAAGGTGTTC as 12 consecutive bases. *Id.*

40.    Viltepso is designed to bind to exon 53 of dystrophin pre-mRNA resulting in exclusion of this exon during mRNA processing in patients with genetic mutations that are amenable to exon 53 skipping. *Id.* § 12.1.

41.    Viltepso is indicated for the treatment of DMD in patients who have a confirmed mutation of the DMD gene that is amenable to exon 53 skipping. *Id.* § 1.

42.    Upon information and belief, Defendants have directly infringed and continue to directly infringe at least claim 1 of the '851 patent, either literally or under the doctrine of equivalents, by engaging in the commercial manufacture, use, offer for sale, sale, and/or importation of Viltepso in the United States in violation of 35 U.S.C. § 271(a).

43.     Upon information and belief, Defendants knew or should have known of the existence of the '851 patent at least as of the date of its issuance. For example, upon information and belief, Defendants learned of the '851 patent through their monitoring of third-party patent rights, including the UWA Patents, and their efforts to obtain approval for, and market, viltolarsen in the United States. Upon information and belief, Defendants were aware of the '851 patent before June 2020 when Nippon Shinyaku and Sarepta began business discussions under the MCA.

44.     Viltepso is approved for use in the treatment of DMD in patients who have a confirmed mutation of the DMD gene that is amenable to exon 53 skipping. *See* Viltepso (viltolarsen) Highlights of Prescribing Information (Rev. Mar. 2021), § 1. Upon information and belief, Viltepso has no substantial non-infringing uses, and Defendants know that Viltepso is especially made or especially adapted for use in infringement of the '851 patent.

45.     Upon information and belief, Defendants' sale, offer for sale, and/or distribution of Viltepso includes labeling indicating that it is approved by the FDA to treat DMD in patients who have a confirmed mutation of the dystrophin gene that is amenable to exon 53 skipping and instructs physicians and patients to use Viltepso to treat DMD. *Id*. Upon information and belief, Defendants specifically intend that Viltepso be used to treat DMD with the knowledge that it would infringe the '851 patent.

46.     Upon information and belief, Defendants have induced and/or contributed to and continue to induce and/or contribute to infringement of at least claim 1 of the '851 patent, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. §§ 271(b) and/or (c).

47.     Upon information and belief, Defendants' infringement of the '851 patent has been willful and continues to be willful, entitling Sarepta to enhanced damages pursuant to 35 U.S.C. § 284. Upon information and belief, Defendants knew or should have known that their conduct

related to the development, manufacture, use, offer for sale, sale, and/or importation of Viltepso constituted an unreasonable risk of infringement of at least claim 1 of the '851 patent.

48.    This case is exceptional and Sarepta is entitled to attorneys' fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

## COUNTERCLAIM II
### (Infringement of the '590 Patent)

49.    Sarepta realleges each of the foregoing Paragraphs 1-48 as if fully set forth herein.

50.    Sarepta incorporates by reference its answers and responses to Nippon Shinyaku's Second Amended Complaint as if fully set forth herein.

51.    Claim 1 of the '590 patent recites:

> An antisense oligonucleotide of 20 to 31 bases comprising a base sequence that is 100% complementary to consecutive bases of a target region of exon 53 of the human dystrophin pre-mRNA, wherein the base sequence comprises at least 12 consecutive bases of CUG AAG GUG UUC UUG UAC UUC AUC C (SEQ ID NO: 195), in which uracil bases are thymine bases, wherein the antisense oligonucleotide is a morpholino antisense oligonucleotide, and wherein the antisense oligonucleotide induces exon 53 skipping; or a pharmaceutically acceptable salt thereof.

52.    Upon information and belief, Viltepso satisfies each element of at least claim 1 of the '590 patent.

53.    Viltolarsen is an antisense oligonucleotide of the phosphorodiamidate morpholino oligomer (PMO) subclass. *See* Viltepso (viltolarsen) Highlights of Prescribing Information (Rev. Mar. 2021), § 11. Viltolarsen contains 21 linked subunits. *Id.* The base sequence of viltolarsen is CCTCCGGTTCTGAAGGTGTTC, which includes CTGAAGGTGTTC as 12 consecutive bases. *Id.*

54.    Viltepso is designed to bind to exon 53 of dystrophin pre-mRNA resulting in exclusion of this exon during mRNA processing in patients with a genetic mutation that is amenable to exon 53 skipping. *Id.* § 12.1.

55.    Viltepso is indicated for the treatment of DMD in patients who have a confirmed mutation of the DMD gene that is amenable to exon 53 skipping. *Id.* § 1.

56.    Upon information and belief, Defendants have directly infringed and continue to directly infringe at least claim 1 of the '590 patent, either literally or under the doctrine of equivalents, by engaging in the commercial manufacture, use, offer for sale, sale, and/or importation of Viltepso in the United States in violation of 35 U.S.C. § 271(a).

57.    Upon information and belief, Defendants knew or should have known of the existence of the '590 patent at least as of the date of its issuance. For example, upon information and belief, Defendants learned of the '590 patent through their monitoring of third-party patent rights, including the UWA Patents, and their efforts to obtain approval for, and market, viltolarsen in the United States. Upon information and belief, Defendants were aware of the '590 patent before June 2020 when Nippon Shinyaku and Sarepta began business discussions under the MCA.

58.    Viltepso is approved for use in the treatment of DMD in patients who have a confirmed mutation of the DMD gene that is amenable to exon 53 skipping. *See* Viltepso (viltolarsen) Highlights of Prescribing Information (Rev. Mar. 2021), § 1. Upon information and belief, viltolarsen has no substantial non-infringing uses, and Defendants know that viltolarsen is especially made or especially adapted for use in infringement of the '590 patent.

59.    Upon information and belief, Defendants' sale, offer for sale, and/or distribution of Viltepso includes labeling indicating that it is approved by the FDA to treat DMD in patients who have a confirmed mutation of the dystrophin gene that is amenable to exon 53 skipping and

instructs physicians and patients to use Viltepso to treat DMD. *Id.* Upon information and belief, Defendants specifically intend that Viltepso be used to treat DMD with the knowledge that it would infringe the '590 patent.

60.    Upon information and belief, Defendants have induced and/or contributed to and continue to induce and/or contribute to infringement of at least claim 1 of the '590 patent, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. §§ 271(b) and/or (c).

61.    Upon information and belief, Defendants' infringement of the '590 patent has been willful and continues to be willful, entitling Sarepta to enhanced damages pursuant to 35 U.S.C. § 284. Upon information and belief, Defendants knew or should have known that their conduct related to the development, manufacture, use, offer for sale, sale, and/or importation of Viltepso constituted an unreasonable risk of infringement of at least claim 1 of the '590 patent.

62.    This case is exceptional and Sarepta is entitled to attorneys' fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

## COUNTERCLAIM III
### (Infringement of the '827 Patent)

63.    Sarepta realleges each of the foregoing Paragraphs 1-62 as if fully set forth herein.

64.    Sarepta incorporates by reference its answer and responses to Nippon Shinyaku's Second Amended Complaint as if fully set forth herein.

65.    Claim 1 of the '827 patent recites:

> A method for treating a patient with Duchenne muscular dystrophy (DMD) in need thereof who has a mutation of the DMD gene that is amenable to exon 53 skipping, comprising administering to the patient an antisense oligonucleotide of 20 to 31 bases comprising a base sequence that is 100% complementary to consecutive bases of a target region of exon 53 of the human dystrophin pre-mRNA, wherein the base sequence comprises at least 12 consecutive bases of CUG AAG GUG UUC UUG UAC UUC AUC C (SEQ ID NO: 195), in which uracil bases are thymine bases, wherein the antisense

oligonucleotide is a morpholino antisense oligonucleotide, and wherein the antisense oligonucleotide induces exon 53 skipping; or a pharmaceutically acceptable salt thereof.

66.     Upon information and belief, the use of Viltepso satisfies each element of, and directly infringes, either literally or under the doctrine of equivalents, at least claim 1 of the '827 patent.

67.     Viltepso is indicated for the treatment of DMD in patients who have a confirmed mutation of the DMD gene that is amenable to exon 53 skipping. *See* Viltepso (viltolarsen) Highlights of Prescribing Information (Rev. Mar. 2021), § 1.

68.     Upon information and belief, Defendants knew or should have known of the existence of the '827 patent at least as of the date of its issuance. For example, upon information and belief, Defendants learned of the '827 patent through their monitoring of third-party patent rights, including the UWA Patents, and their efforts to obtain approval for, and market, viltolarsen in the United States. Upon information and belief, Defendants were aware of the '827 patent before June 2020 when Nippon Shinyaku and Sarepta began business discussions under the MCA.

69.     Viltepso is approved for use in the treatment of DMD in patients who have a confirmed mutation of the DMD gene that is amenable to exon 53 skipping. *Id*. Upon information and belief, viltolarsen has no substantial non-infringing uses, and Defendants know that viltolarsen is especially made or especially adapted for use in infringement of the '827 patent.

70.     Upon information and belief, Defendants' sale, offer for sale, and/or distribution of Viltepso includes labeling indicating that it is approved by the FDA to treat DMD in patients who have a confirmed mutation of the dystrophin gene that is amenable to exon 53 skipping and instructs physicians and patients to use Viltepso to treat DMD. *Id*. Upon information and belief,

Defendants specifically intend that Viltepso be used to treat DMD with the knowledge that it would infringe the '827 patent.

71.    Upon information and belief, Defendants have induced and/or contributed to and continue to induce and/or contribute to infringement of at least claim 1 of the '827 patent, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. §§ 271(b) and/or (c).

72.    Upon information and belief, Defendants' infringement of the '827 patent has been willful and continues to be willful, entitling Sarepta to enhanced damages pursuant to 35 U.S.C. § 284. Upon information and belief, Defendants knew or should have known that their conduct related to the development, manufacture, use, offer for sale, sale, and/or importation of Viltepso constituted an unreasonable risk of infringement of at least claim 1 of the '827 patent.

73.    This case is exceptional and Sarepta is entitled to attorneys' fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

## <u>COUNTERCLAIM IV</u>
### (Declaration of Invalidity of the NS Patents)

74.    Sarepta realleges each of the foregoing Paragraphs 1-73 as if fully set forth herein.

75.    Sarepta incorporates by reference its answers and responses to Nippon Shinyaku's Second Amended Complaint.

76.    Each claim of the NS Patents is invalid for failure to comply with one or more requirements of the patent laws of the United States, including without limitation, 35 U.S.C. §§ 101, 102, 103, 112, and/or obviousness-type double patenting, and the rules, regulations, and laws pertaining thereto.

77.    By way of example, the claims of the NS Patents are invalid under 35 U.S.C. §§ 102 and/or 103 in view of Popplewell, L.J., *Comparative Analysis of Antisense Oligonucleotide Sequences Targeting Exon 53 of the Human DMD Gene: Implications for Future Clinical Trials*,

Neuromuscular Disorders 20:102–110 (2010) ("Popplewell") and Sazani, P., *Safety Pharmacology and Genotoxicity Evaluation of AVI-4658*, Int'l J. Toxicology 29(2):143–156 (2010) ("Sazani"), alone or in combination with other prior art, for at least the reasons set forth in Sarepta's IPR Petitions challenging the NS Patents. In granting Sarepta's IPR Petitions challenging all claims of all seven NS Patents, for example, the Patent Trial and Appeal Board found Sarepta's arguments and evidence of unpatentability persuasive, concluding in each institution decision that Sarepta "has demonstrated a reasonable likelihood of success in proving that the challenged claims of the [patent] are unpatentable." *See Sarepta Therapeutics, Inc. v. Nippon Shinyaku Co., Ltd.*, Decisions Granting Institution in IPR2021-01134, Paper No. 20 (Jan. 12, 2022); IPR2021-01135, Paper No. 20 (Jan. 12, 2022); IPR2021-01136, Paper No. 19 (Jan. 13, 2022); IPR2021-01137, Paper No. 18 (Jan. 13, 2022); IPR2021-01138, Paper No. 18 (Jan. 13, 2022); IPR2021-01139, Paper No. 18 (Jan. 13, 2022); and IPR2021-01140, Paper No. 18 (Jan. 12, 2022).

78.    An actual case or controversy exists between Sarepta and Defendants as to whether the claims of the NS Patents are invalid.

79.    Sarepta is entitled to a declaratory judgment that the claims of the NS Patents are invalid.

80.    This case is exceptional and Sarepta is entitled to attorneys' fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

## COUNTERCLAIM V
### (Breach of Contract)

81.    Sarepta realleges each of the foregoing Paragraphs 1-80 as if fully set forth herein.

82.    Sarepta incorporates by reference its answers and responses in Sarepta's Answer and Counterclaims to Nippon Shinyaku's Second Amended Complaint as fully set forth herein.

83. Sarepta asserts a claim for breach of contract arising under Delaware state law. This Court has subject matter jurisdiction over this breach of contract claim under 28 U.S.C. §§ 1332(a) and 1367(a).

84. This claim for breach of contract arises out of Nippon Shinyaku's material breach of the MCA with Sarepta.

85. Properly interpreted, the MCA is a valid and enforceable contract between Sarepta and Nippon Shinyaku.

86. Sections 1-3 of the MCA define "Confidential Information" and proscribe improper disclosures or uses of confidential information beyond the permitted purposes. Section 2.2, entitled "Obligations of Confidentiality and Non-Use," states among other relevant provisions that:

> The Parties intend and agree that this Agreement, the Proposed Transaction and all disclosures, including all meetings, discussions, correspondence, communications, documents, or other materials exchanged between the Parties made in connection with this Agreement and the Proposed Transaction shall not be submitted, referenced, admitted or otherwise used by the Recipient, its Affiliates, or their respective Representatives against the other Party in any legal action, except in an action to enforce the terms of this Agreement, and shall be treated as conducted in the aid of negotiation and shall be governed by and entitled to the protections and privileges of Delaware Rule of Evidence 408 and Federal Rule of Evidence 408, as well as any and all analogous or applicable privileges or additional limitations on use and disclosure set forth herein. Furthermore, regardless of whether the Proposed Transaction leads to any arrangement or resolution of issues, the fact that these confidential Proposed Transactions occurred shall not be referenced in any legal action currently pending, including but not limited to the EP Oppositions, the JP Actions, or the Potential Actions. Neither Party nor their Affiliates or Representatives shall in any way attempt to place into evidence any document, fact, statement or opinion in any way relating to the Proposed Transaction for any purpose, regardless of whether such document, fact, statement or opinion would be admissible under FRE 408 or any other analogous or applicable privilege.

D.I. 2-1 at 3.

87.     On July 14, 2021, Nippon Shinyaku filed its original Complaint in this action containing confidential information in violation of its agreement, materially breaching its obligations under the MCA, Sections 1-3.

88.     Notwithstanding that in its first set of Rule 12 responsive motions Sarepta raised its objection to such confidential information appearing in Nippon Shinyaku's original Complaint contrary to the terms of the MCA, Nippon Shinyaku again included the same confidential material in its First Amended Complaint ("FAC"), filed September 10, 2021 (D.I. 39).

89.     Sarepta renewed its objection in subsequent Rule 12 responsive motions (D.I. 53, 54) to such confidential information appearing in Nippon Shinyaku's FAC contrary to the terms of the MCA.

90.     On December 20, 2021, the Court found that Nippon Shinyaku had violated the confidentiality and non-use provisions of the MCA and struck from the FAC the second sentence of paragraph 2 as well as paragraphs 11, 78, and 91 of the FAC. (Hearing Tr. at 31-34; D.I. 84.)

91.     As the Court found, Nippon Shinyaku "agreed not to hold the parties' confidential communications against Sarepta in future litigation" because the terms of the valid and enforceable MCA had prohibitions against mentioning confidential communications in legal actions. *Id*. at 32, 34. But Nippon Shinyaku materially breached the terms of the agreement by including confidential information in its original Complaint and again in its FAC, even after being put on notice of its breach, requiring further briefing, motions practice, and a ruling by this Court striking the confidential information from Nippon Shinyaku's pleading.

92.    Sarepta has suffered prejudice and injury by virtue of Nippon Shinyaku's knowing and repeated bad-faith breaches of the MCA's confidentiality and non-use provisions of Section 2, entitling Sarepta to damages in an amount exceeding $75,000.

93.    In addition, in view of Nippon Shinyaku's knowing and repeated bad-faith breaches of the MCA, Nippon Shinyaku has unclean hands precluding enforcement of the MCA and depriving it of any entitlement to injunctive or other equitable relief for any alleged breach of the MCA by Sarepta.

## **PRAYER FOR RELIEF**

WHEREFORE, Sarepta respectfully requests that the Court enter judgment in its favor and against Defendants on the counterclaims set forth above and respectfully requests that this Court:

1.    award Sarepta the relief it seeks in its Defenses asserted in response to Nippon Shinyaku's Second Amended Complaint for Breach of Contract, Declaratory Judgment of Invalidity, and Patent Infringement;

2.    deny all damages, costs, expenses, attorneys' fees, or other relief requested by Nippon Shinyaku;

3.    enter judgment that the '851 patent has been infringed and will be infringed by Defendants, pursuant to at least 35 U.S.C. §§ 271(a), (b), and/or (c), either literally and/or under the doctrine of equivalents;

4.    enter judgment that the '590 patent has been infringed and will be infringed by Defendants, pursuant to at least 35 U.S.C. §§ 271(a), (b), and/or (c), either literally and/or under the doctrine of equivalents;

5.    enter judgment that the '827 patent has been infringed and will be infringed by Defendants, pursuant to 35 U.S.C. §§ 271(b) and/or (c), either literally and/or under the doctrine of equivalents;

6.    to the extent that Defendants have or will commercially manufacture, use, offer for sale, or sell Viltepso within the United States or import Viltepso into the United States, prior to the expiration of the UWA Patents, including any extensions, enter judgment awarding Sarepta monetary relief pursuant to 35 U.S.C. § 284, together with interest;

7.    enter judgment that Defendants' infringement of the UWA Patents has been willful, and/or an order increasing any damages awarded for Defendants' infringement of the UWA Patents pursuant to 35 U.S.C. § 284;

8.    declare that Sarepta has not infringed and will not infringe any claim of the NS Patents;

9.    declare that each claim of the NS Patents is invalid;

10.    find that Nippon Shinyaku has knowingly, materially, and repeatedly breached the MCA's confidentiality and non-use provisions in bath faith and that those bad-faith breaches of the MCA constitute unclean hands, precluding Nippon Shinyaku from enforcing the MCA or obtaining injunctive or other equitable relief for any alleged breach of the MCA by Sarepta;

11.    declare that this is an exceptional case under 35 U.S.C. § 285 and award Sarepta its attorneys' fees, expenses, and costs; and

12.    award all other and further relief the Court may deem just and proper.

## <u>DEMAND FOR A JURY TRIAL</u>

Pursuant to Federal Rule of Civil Procedure 38(c), Sarepta hereby demands a trial by jury on all triable issues alleged in its counterclaims.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Megan E. Dellinger*

OF COUNSEL:

Charles E. Lipsey
J. Derek McCorquindale
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
1875 Explorer Street, Suite 800
Reston, VA  20190-6023
(571) 203-2700

Michael J. Flibbert
Aaron Gleaton Clay
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC  20001-4413
(202) 408-4000

Alissa K. Lipton
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
Two Seaport Lane
Boston, MA  02210-2001
(617) 646-1600

January 28, 2022

_____
Jack B. Blumenfeld (#1014)
Megan E. Dellinger (#5739)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mdellinger@morrisnichols.com

*Attorneys for Defendant and Counter-Plaintiff*
*Sarepta Therapeutics, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 28, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on January 28, 2022, upon the following in the manner indicated:

| | |
|---|---|
| Amy M. Dudash, Esquire<br>MORGAN, LEWIS & BOCKIUS LLP<br>1201 North Market Street, Suite 2201<br>Wilmington, DE  19801<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Amanda S. Williamson, Esquire<br>Christopher J. Betti, Esquire<br>Krista Vink Venegas, Esquire<br>Maria E. Doukas, Esquire<br>Michael T. Sikora, Esquire<br>Zachary Miller, Esquire<br>MORGAN, LEWIS & BOCKIUS LLP<br>110 North Wacker Drive, Suite 2800<br>Chicago, IL  60606<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Jitsuro Morishita, Esquire<br>MORGAN, LEWIS & BOCKIUS LLP<br>16F, Marunouchi Building,<br>2-4-1 Marunouchi, Chiyoda-ku<br>Tokyo, 100-6316 Japan<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |

*/s/ Megan E. Dellinger*

_____
Megan E. Dellinger (#5739)