# United States Court of Appeals
# for the Federal Circuit

_____

**NIPPON SHINYAKU CO., LTD.,**
*Plaintiff-Appellant*

**v.**

**SAREPTA THERAPEUTICS, INC.,**
*Defendant-Appellee*

_____

2021-2369

_____

Appeal from the United States District Court for the District of Delaware in No. 1:21-cv-01015-LPS, Judge Leonard P. Stark.

_____

Decided:  February 8, 2022

_____

WILLIAM R. PETERSON, Morgan, Lewis & Bockius LLP, Houston, TX, argued for plaintiff-appellant.  Also represented by CHRISTOPHER JOHN BETTI, MARIA DOUKAS, KRISTA VINK VENEGAS, AMANDA SCOTT WILLIAMSON, Chicago, IL; AMY M. DUDASH, Wilmington, DE.

MICHAEL J. FLIBBERT, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, Washington, DC, argued for defendant-appellee.  Also represented by AARON GLEATON CLAY; CHARLES E. LIPSEY, J. DEREK MCCORQUINDALE, Reston, VA; ALISSA KEELY LIPTON, Boston, MA.

_____

2    NIPPON SHINYAKU CO., LTD. v. SAREPTA THERAPEUTICS, INC.

Before NEWMAN, LOURIE, and STOLL, *Circuit Judges*.

LOURIE, *Circuit Judge*.

Nippon Shinyaku Co., Ltd. ("Nippon Shinyaku") appeals from the decision of the United States District Court for the District of Delaware denying its motion for a preliminary injunction. *See Nippon Shinyaku Co.v. Sarepta Therapeutics, Inc., No. 21-cv-1015, 2021 WL 4989489 (D. Del. Oct. 25, 2021) ("Decision"); see also* J.A. 5–6. For the reasons provided below, we reverse the decision of the district court, and remand for entry of a preliminary injunction.

BACKGROUND

I.  The Mutual Confidentiality Agreement

On June 1, 2020, Nippon Shinyaku and Sarepta Therapeutics, Inc. ("Sarepta") executed a Mutual Confidentiality Agreement ("MCA"). J.A. 508–16. As stated in the MCA, the purpose of the agreement was for the parties "to enter into discussions concerning the Proposed Transaction," which the MCA defined as "a potential business relationship relating to therapies for the treatment of Duchenne Muscular Dystrophy." J.A. 508–09.

The MCA established a "Covenant Term," which was "the time period commencing on the Effective Date and ending upon twenty (20) days after the earlier of: (i) the expiration of the Term, or (ii) the effective date of termination." J.A. 509. Section 6 of the MCA contained a mutual covenant not to sue, whereby each party agreed that during the Covenant Term it:

shall not directly or indirectly assert or file any legal or equitable cause of action, suit or claim or otherwise initiate any litigation or other form of legal or administrative proceeding against the other Party . . . in any jurisdiction in the United States

NIPPON SHINYAKU CO., LTD. v. SAREPTA THERAPEUTICS, INC.    3

or Japan of or concerning intellectual property in the field of Duchenne Muscular Dystrophy.

J.A. 512 (MCA § 6.1).  Section 6 further stated:

For clarity, this covenant not to sue includes, but is not limited to, patent infringement litigations, declaratory judgment actions, patent validity challenges *before the U.S. Patent and Trademark Office* or Japanese Patent Office, and reexamination proceedings before the U.S. Patent and Trademark Office . . . .

*Id.* (emphasis added).

As noted, the covenant not to sue was time limited and applied only during the Covenant Term.  *Id.*  Importantly, the MCA also included a forum selection clause to govern patent and other intellectual property disputes between the parties after the expiration of the Covenant Term.  The forum selection clause in Section 10 of the MCA states in relevant part:

[T]he Parties agree that *all Potential Actions arising under U.S. law relating to patent infringement or invalidity*, and filed within two (2) years of the end of the Covenant Term, *shall be filed in the United States District Court for the District of Delaware* and that neither Party will contest personal jurisdiction or venue in the District of Delaware and that neither Party will seek to transfer the Potential Actions on the ground of *forum non conveniens*.

J.A. 513–14 (MCA § 10) (emphases added).  "Potential Actions" is defined in Section 1 of the MCA as "any *patent or other intellectual property disputes* between [Nippon Shinyaku] and Sarepta, or their Affiliates, other than the EP Oppositions or JP Actions, *filed with a court or administrative agency* prior to or after the Effective Date in the United States, Europe, Japan or other countries in

connection with the Parties' development and commercialization of therapies for Duchenne Muscular Dystrophy." J.A. 509 (MCA § 1) (emphases added).

The Covenant Term ended on June 21, 2021, at which point the two-year forum selection clause in Section 10 of the MCA took effect.  Yet, on June 21, 2021—the same day the Covenant Term ended—Sarepta filed seven petitions for *inter partes* review ("IPR") at the Patent Trial and Appeal Board ("the Board").

## II.  Proceedings in the District of Delaware

On July 13, 2021, Nippon Shinyaku filed a complaint in the U.S. District Court for the District of Delaware asserting claims against Sarepta for breach of contract, declaratory judgment of noninfringement and invalidity with respect to Sarepta's patents, and infringement of Nippon Shinyaku's patents.  *See* J.A. 475.  In its breach of contract claim, Nippon Shinyaku alleged that Sarepta breached the MCA by filing seven IPR petitions, which "directly contravenes the MCA's forum selection clause, which requires that Sarepta and Nippon Shinyaku bring any such patent challenges in the United States District Court for the District of Delaware."  J.A. 475–76.  In conjunction with its complaint, Nippon Shinyaku filed a motion for a preliminary injunction asking the court to enjoin Sarepta from proceeding with its IPR petitions and to require that Sarepta withdraw the petitions.  See J.A. 861.

On September 24, 2021, the district court denied Nippon Shinyaku's motion for a preliminary injunction. J.A. 5–6.  Referencing the four well-established preliminary injunction factors, the court stated:

> Nippon Shinyaku has failed to persuade the Court that it is likely to succeed on the merits, that it will suffer cognizable irreparable harm in the absence of extraordinary preliminary relief, that the

> balance of harms tips in its favor, or that the public
> interest warrants the relief that it seeks.

J.A. 6. The court concluded by noting that "[i]n due course, the Court will issue a memorandum that more fully explains its reasoning." *Id.*

On October 25, 2021, the district court issued its memorandum order explaining its reasoning for denying Nippon Shinyaku's preliminary injunction motion. The court focused the bulk of its analysis on the first preliminary injunction factor, explaining three primary reasons why Nippon Shinyaku "has not shown a reasonable probability that Sarepta breached the mutual confidentiality agreement." *Decision*, 2021 WL 4989489, at *2.

The district court's first reason was based on a perceived "tension" that would exist between Sections 6 and 10 of the MCA if the forum selection clause were interpreted to preclude IPRs. *Id.* The court reasoned that, "[a]lthough Sections 6 and 10 implicate different time periods, it would be odd if Section 6 ***expressly*** deferred the filing of IPR petitions for one year and twenty days only for them to be ***impliedly*** delayed for two additional years, likely making them time-barred and never available." *Id.* (emphases in original). Thus, the court stated, "[t]he best reading of Section 6 is that the parties intended to allow IPRs to proceed after the Covenant Term expired." *Id.*

The district court's second reason was based on other language in Section 10 of the MCA. The court acknowledged that "Section 10 obliquely refers to IPR proceedings through its mention of 'Potential Actions,' which is defined to include proceedings before administrative agencies such as the PTAB." *Id.* at *3. But, the court reasoned, "[r]ead in full context, however, Section 10 applies only to cases filed in federal court." *Id.* The court emphasized Section 10's discussion of patent infringement disputes, venue transfers on the basis of *forum non conveniens*, and contesting of venue and personal jurisdiction, all of which

relate to federal district court litigation and are categorically inapplicable to IPR proceedings at the Board. *Id.* The court thus concluded that, "while the definition of 'Potential Actions' in Section 1 literally encompasses IPRs, the use of that term in Section 10 is best understood as limited to cases in federal district court." *Id.*

The district court's third reason was based on the practical effects of interpreting Section 10's forum selection clause as precluding IPRs for two years following the Covenant Term. In light of the timing of Nippon Shinyaku's complaint for patent infringement in this case, the court noted that "[i]f Sarepta is forced to wait until June 2023 [to file IPR petitions], as Nippon Shinyaku insists, then its IPR petitions will be time-barred" under 35 U.S.C. § 315(b). *Id.* The court found that "the [MCA] as a whole does not evince a shared expectation and intent that Sarepta was waiving its right to file IPR petitions." *Id.*

The district court then turned to the remaining preliminary injunction factors. For the second factor, the court found that "Nippon Shinyaku has also failed to show that it will suffer irreparable harm if the [c]ourt does not grant a preliminary injunction." *Id.* The court essentially found that Nippon Shinyaku's irreparable harm arguments fell with its contract interpretation arguments regarding the forum selection clause. *Id.* ("[T]his argument depends on the faulty assumption that Nippon Shinyaku contracted itself out of that potential situation."). Similarly, with respect to the third and fourth preliminary injunction factors—the balance of hardships and public interest—the court found that Nippon Shinyaku's arguments "depend, yet again, on the flawed presumption that Sarepta's IPR petitions cannot be filed until June 21, 2023." *Id.* at *4. Thus, the court concluded that "Nippon Shinyaku did not meet its burden on any of the factors it must establish in order to obtain a preliminary injunction." *Id.*

### III.  The Instant Appeal

Nippon Shinyaku filed this appeal on September 29, 2021—five days after the district court's original order denying the preliminary injunction motion, and a month before the district court issued its order explaining its reasoning.  Nippon Shinyaku immediately moved for expedited briefing on October 1, 2021, and then filed its opening brief on October 4, 2021.  After the district court issued its memorandum order explaining its reasoning, Sarepta filed its responsive brief on November 2, 2021 and Nippon Shinyaku filed its reply on November 9, 2021.

On January 10, 2022, Nippon Shinyaku submitted a letter pursuant to Fed. R. App. P. 28(j) advising us that the Board granted institution in two of the seven IPR proceedings that Nippon Shinyaku seeks to enjoin.  We held argument in the case the following day on January 11, 2022, during which counsel for Nippon Shinyaku advised us that the deadlines for the Board to issue institution decisions in the remaining IPR proceedings were approaching.  As of January 13, 2022, the Board has granted institution in all seven IPRs at issue in this case.

Because Nippon Shinyaku appeals from an interlocutory order of the district court in a case in which a party has asserted a claim arising under an Act of Congress relating to patents, we have jurisdiction under 28 U.S.C. § 1292(c)(1).  *See also* 28 U.S.C. § 1292(a)(1); 28 U.S.C. § 1295(a)(1).

### DISCUSSION

### I

We generally review a denial of a preliminary injunction using the law of the regional circuit, here the Third Circuit.  *See Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357, 1363 (Fed. Cir. 2016) (citing *Trebro Mfg., Inc. v. Firefly Equip., LLC*, 748 F.3d 1159, 1165 (Fed. Cir. 2014)).  "However, the Federal Circuit has itself built a body of

precedent applying the general preliminary injunction considerations to a large number of factually variant patent cases, and gives dominant effect to Federal Circuit precedent insofar as it reflects considerations specific to patent issues." *Id.* (quoting *Trebro*, 748 F.3d at 1165). Both the Federal Circuit and the Third Circuit review a denial of a preliminary injunction for abuse of discretion. *See id.*; *see also Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484 (3d Cir. 2000). Under that standard, we review underlying questions of law *de novo. Antares Pharma, Inc. v. Medac Pharma Inc.*, 771 F.3d 1354, 1357 (Fed. Cir. 2014).

District courts generally consider four factors in evaluating a motion for a preliminary injunction: (1) whether the moving party has shown a reasonable likelihood of success on the merits; (2) whether the moving party will suffer irreparable harm in the absence of a preliminary injunction; (3) whether the balance of hardships tips in the moving party's favor; and (4) the impact of a preliminary injunction on the public interest. *See, e.g.*, *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1352 (Fed. Cir. 2016) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014). However, under both Federal Circuit and Third Circuit precedent, the first factor—*i.e.*, likelihood of success on the merits—is a necessary showing to establish entitlement to a preliminary injunction. *See, e.g.*, *Somerset Pharm., Inc. v. Dudas*, 500 F.3d 1344, 1346 (Fed. Cir. 2007) (citing *Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*, 357 F.3d 1319, 1324–25 (Fed. Cir. 2004)); *Holland v. Rosen*, 895 F.3d 272, 286 (3d Cir. 2018) (citing *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015)).

Here, the district court's finding that Nippon Shinyaku did not show it was likely to succeed on the merits turned entirely on the court's interpretation of the MCA. The parties agreed that the MCA "shall be governed by and interpreted in accordance with the laws of the State of Delaware." J.A. 513 (MCA § 10). Therefore, this appeal

presents "a question of contract interpretation under Delaware law, which we review *de novo.*" *Studiengesellschaft Kohle, m.b.H. v. Hercules, Inc.*, 105 F.3d 629, 632 (Fed. Cir. 1997) (citing *Cyrix Corp. v. Intel Corp.*, 77 F.3d 1381, 1384 (Fed. Cir. 1996)); *see also Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989) ("[T]he interpretation of private contracts is ordinarily a question of state law . . . ."); *Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1347 (Fed. Cir. 2008) ("Construction of a contract is an issue of law that we review without deference." (citing *Intel Corp. v. VIA Techs., Inc.*, 319 F.3d 1357, 1361 (Fed. Cir. 2003))).

## II

In interpreting a contract, "Delaware adheres to the 'objective' theory of contracts, i.e. a contract's construction should be that which would be understood by an objective, reasonable third party." *Estate of Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) (quoting *NBC Universal v. Paxson Commc'ns*, No. 650-N, 2005 WL 1038997, at *5 (Del. Ch. Apr. 29, 2005)). Under Delaware law, we must "read a contract as a whole" and "give each provision and term effect, so as not to render any part of the contract mere surplusage." *Id.* (quoting *Kuhn Constr., Inc. v. Diamond State Port Corp.*, 990 A.2d 393, 396–97 (Del. 2010)). Importantly, "when the contract is clear and unambiguous, we will give effect to the plain-meaning of the contract's terms and provisions." *Id.* at 1159–60 (citing *Rhone-Poulenc Basic Chem. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992)).

In this case, the plain language of the forum selection clause in Section 10 of the MCA resolves the dispute. Section 10 states clearly that "all Potential Actions arising under U.S. law relating to patent infringement or invalidity, and filed within two (2) years of the end of the Covenant Term, shall be filed in the United States District Court for the District of Delaware." J.A. 513–14. The express

definition of "Potential Actions" includes "patent or other intellectual property disputes . . . filed with a court ***or administrative agency***," J.A. 509 (emphasis added), and the district court acknowledged that the "definition of 'Potential Actions' in Section 1 literally encompasses IPRs." *Decision*, 2021 WL 4989489, at \*3. Sarepta does not contend otherwise. The MCA's forum selection clause is thus unambiguous, and we must "give effect to the plain meaning of [its] terms." *Estate of Osborn*, 991 A.2d at 1159–60.

Under the plain language of Section 10, Sarepta was required to bring all disputes regarding the invalidity of Nippon Shinyaku's patents—including the allegations and contentions contained in Sarepta's IPR petitions—in the District of Delaware. Sarepta instead brought those disputes in the form of IPR petitions at the Board, which contravened the plain language of the forum selection clause in Section 10 of the MCA.

## III

Sarepta makes a number of arguments in support of the district court's interpretation of the forum selection clause in Section 10 of the MCA. We address these arguments below.

We first consider Sarepta's suggestion that our reading of Section 10's forum selection clause would lead, not to a preclusion of IPRs, but rather to a requirement that IPR petitions must be filed in the federal district court in Delaware. We reject that suggestion because such a requirement would not fall within what an "objective, ***reasonable*** third party" would have understood from the language of the forum selection clause. *See Estate of Osborn*, 991 A.2d at 1159 (emphasis added). Any such nonsensical result stems from the parties' decision to define the future-tense term "***Potential*** Actions" using past-tense language about where such disputes may have been "filed." *See* J.A. 509 (emphasis added). But the choice of wording in the "Definitions" section of the MCA does not upend our reasonable

NIPPON SHINYAKU CO., LTD. v. SAREPTA THERAPEUTICS, INC.    11

interpretation of the forum selection clause. *See Falcon Steel Co. v. Weber Eng'g Co.*, 517 A.2d 281, 285–86 (Del. Ch. 1986) (refusing to incorporate by reference terms which made a reasonable reading of the contract nonsensical).

We next turn to Sarepta's arguments in defense of the district court's reasoning. Sarepta first echoes the district court's concern about the supposed "tension" between Sections 6 and 10 of the MCA, stressing the legal requirement that we give effect to all terms of the contract and "if possible, reconcile all the provisions of the instrument." *See Alta Berkeley VI C.V. v. Omneon, Inc.*, 41 A.3d 381, 385–86 (Del. 2012) (quoting *Elliott Assoc., L.P. v. Avatex Corp.*, 715 A.2d 843, 854 (Del. 1998)); *see also O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 287 (Del. 2001) (a court must consider the contract as a whole rather than "any single passage in isolation" (citing *Aetna Cas. and Sur. Co. v. Kenner*, Del. Supr., 570 A.2d 1172, 1174 (1990))). Nippon Shinyaku responds that, absent some ambiguity in the plain language of Section 10, there was no reason for the court to look at Section 6 at all. Moreover, Nippon Shinyaku argues that the two provisions are not in conflict with each other because they apply at different times, which the district court acknowledged. *See Decision*, 2021 WL 4989489, at *2 ("Sections 6 and 10 implicate different time periods . . . .").

We agree with Nippon Shinyaku that there is no conflict or tension between the two sections of the MCA. During the Covenant Term, Section 6 prohibited the parties from "directly or indirectly assert[ing] or fil[ing] any legal or equitable cause of action, suit or claim or otherwise initiat[ing] any litigation or other form of legal or administrative proceeding . . . of or concerning intellectual property in the field of Duchenne Muscular Dystrophy." J.A. 512 (MCA § 6.1). In essence, the covenant not to sue broadly prohibited the parties from litigating any issue relating to patents, regardless of the forum. *See id.* (expressly clarifying that the covenant not to sue includes "patent infringement litigations, declaratory judgment actions, [and]

patent validity challenges before the U.S. Patent and Trademark Office"). Upon the expiration of the Covenant Term, however, Section 6's covenant not to sue was no longer in effect, and the parties were thus no longer prohibited from asserting claims relating to patent infringement or invalidity. At that point, to the extent either party wished to assert or file any such claims, Section 10's forum selection clause merely required that such claims "arising under U.S. law relating to patent infringement or invalidity" be filed in "the United States District Court for the District of Delaware." J.A. 514 (MCA § 10). This framework—which reflects harmony, not tension, between Sections 6 and 10 of the MCA—is entirely consistent with our interpretation of the plain meaning of the forum selection clause, as set forth above.

Sarepta next defends the district court's reasoning that other language in Section 10 indicates that the forum selection clause is best read as limited only to federal district court litigation. We disagree. To be sure, the district court was correct that issues of patent infringement, *forum non conveniens*, and jurisdiction challenges are inapplicable to IPR proceedings. *See Decision*, 2021 WL 4989489, at *3 (citing *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007); *AVX Corp. v. Presidio Components, Inc.*, 923 F.3d 1357, 1361 (Fed. Cir. 2019)). But it does not follow that the parties' inclusion of those issues in the forum selection clause means that they intended to categorically exclude IPRs. We think the better reading of Section 10 recognizes the parties' agreement that, after one party files an action relating to patent infringement or invalidity in the District of Delaware—as a filing party is required to do—the other party will not "contest personal jurisdiction or venue in the District of Delaware" or "seek to transfer . . . on the ground of *forum non conveniens*." J.A. 514.

Finally, Sarepta argues that the district court correctly determined that neither party intended to bargain away its

right to file IPR petitions, which, due to the time bar in 35 U.S.C. § 315(b), would be the practical effect of our reading of the forum selection clause.  Again, we disagree with Sarepta and the district court.  As a general principle, this court has recognized that parties are entitled to bargain away their rights to file IPR petitions, including through the use of forum selection clauses.  For example, in *Dodocase VR, Inc. v. MerchSource, LLC*, 767 F. App'x 930, 935 (Fed. Cir. 2019) (non-precedential), we affirmed a district court's grant of a preliminary injunction on the basis that a defendant had likely violated a forum selection clause by filing IPR petitions, even though the forum selection clause did not explicitly mention IPRs.  Even in *Kannuu Pty Ltd. v. Samsung Electronics Co.,* 15 F.4th 1101, 1106–10 (Fed. Cir. 2021), where we determined that the parties' forum selection clause did not extend to IPRs, that determination was based on the specific language in the forum selection clause at issue in that case.  Inherent in our holding in *Kannuu* was an understanding that a differently worded forum selection clause would preclude the filing of IPR petitions.  *See id.*  In the case before us now, we have such a forum selection clause, which uses a defined term that the district court acknowledged "literally encompasses IPRs." *Decision*, 2021 WL 4989489, at \*3.

Moreover, it is apparent that the practical effects about which the district court was concerned—*i.e.*, that Sarepta's IPRs will be time barred by the time the forum selection clause expires—resulted from Nippon Shinyaku's filing of a patent infringement complaint, not from the parties' entry into the MCA itself.  We are not persuaded that our interpretation of the forum selection clause should be impacted by Nippon Shinyaku's filing of a complaint, which was an event that occurred more than a year after the parties entered into the MCA.  *Cf. Osram Sylvania, Inc. v. Townsend Ventures, LLC*, No. 8123-VCP, 2013 WL 6199554, at \*19 (Del. Ch. Nov. 19, 2013) ("The courts will not imply terms to 'rebalanc[e] economic interests after

events that could have been anticipated, but were not, that later adversely affected one party to a contract.'" (quoting *Nemec v. Shrader*, 991 A.2d 1120, 1128 (Del. 2010))).  At the time the parties entered into the MCA, it was not a given that Nippon Shinyaku would file a complaint for patent infringement during the period governed by the forum selection clause; indeed, it seems possible that if Sarepta had not first filed its IPR petitions, Nippon Shinyaku never would have filed its complaint.  Under our interpretation of the forum selection clause, if Nippon Shinyaku had not filed a complaint for patent infringement—or even if Nippon Shinyaku had filed a complaint, but had done so more than a year after the Covenant Term ended—Sarepta would have had time to file its IPR petitions after the expiration of the forum selection clause and before they were time barred by 35 U.S.C. § 315(b).  Thus, the practical effect that Sarepta's IPRs will now be time barred is irrelevant to determining the parties' intent at the time they included the forum selection clause in the MCA.

For the foregoing reasons, we are unpersuaded by Sarepta's arguments that the district court correctly interpreted Section 10 of the MCA as allowing the filing of IPR petitions.  We conclude as a matter of law that the forum selection clause in Section 10 of the MCA precludes the filing of IPR petitions during the two-year period following the expiration of the Covenant Term on June 21, 2021.  Because Sarepta filed IPR petitions during that time in violation of the forum selection clause in Section 10, Nippon Shinyaku is likely to succeed on the merits of its claim for breach of contract.

IV

Having determined that Nippon Shinyaku is likely to succeed on the merits of its breach of contract claim, we turn to the other three factors relevant to the preliminary injunction analysis.  As noted above, the district court determined that Nippon Shinyaku's arguments with respect

to all three factors rose and fell with its arguments regarding likelihood of success on the merits. We agree, and for the following reasons we find that Nippon Shinyaku has satisfied the remaining preliminary injunction factors in this case as a matter of law.

With regard to irreparable harm, Nippon Shinyaku has argued that, absent a preliminary injunction, it will be deprived of its bargained-for choice of forum and forced to litigate its patent rights in multiple jurisdictions. We have held that such harm constitutes irreparable harm sufficient to meet the standard for a preliminary injunction. *See Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355, 1363 (Fed. Cir. 2011). Our binding precedent compels the same result here.

We also agree with Nippon Shinyaku that the balance of hardships tips in its favor. Without a preliminary injunction, Nippon Shinyaku will suffer the irreparable harm previously described, and Sarepta will potentially get multiple bites at the invalidity apple, including in a forum it bargained away. In contrast, if a preliminary injunction is entered, Sarepta will still have an opportunity to litigate the invalidity of Nippon Shinyaku's patents, but it will have to do so only in the District of Delaware rather than also at the Board. Again, our holding in *General Protecht* is directly on point: "Having contracted for a specific forum, [Sarepta] should not be heard to argue that the enforcement of the contract into which it freely entered would cause hardship." 651 F.3d at 1365.

Finally, with respect to the public interest, we reject the notion that there is anything unfair about holding Sarepta to its bargain. While it is certainly true that Congress desired to serve the public interest by creating IPRs to allow parties to quickly and efficiently challenge patents, it does not follow that it is necessarily against the public interest for an individual party to bargain away its opportunity to do so. It is well established that forum

16   NIPPON SHINYAKU CO., LTD. v. SAREPTA THERAPEUTICS, INC.

selection clauses "are prima facie valid and should be en-
forced," *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1,
10 (1972), and we have held that "[t]here is no public inter-
est served by excusing a party's violation of its previously
negotiated contractual undertaking to litigate in a particu-
lar forum." *Gen. Protecht*, 651 F.3d at 1366.

CONCLUSION

We have considered Sarepta's remaining arguments
but we find them unpersuasive.  For the foregoing reasons,
we conclude that Nippon Shinyaku has shown that all four
preliminary injunction factors weigh in its favor.  Accord-
ingly, we reverse the decision of the district court, and we
remand for entry of a preliminary injunction.

**REVERSED AND REMANDED**

COSTS

Costs against Appellee.