# Exhibit J



8145738

# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE

United States Patent and Trademark Office

*August 12, 2021*

**THIS IS TO CERTIFY THAT ANNEXED IS A TRUE COPY FROM THE RECORDS OF THIS OFFICE OF THE FILE WRAPPER AND CONTENTS OF:**

**APPLICATION NUMBER:** *14/615,504*
**FILING DATE:** *February 06, 2015*
**PATENT NUMBER:** *9708361*
**ISSUE DATE:** *July 18, 2017*

Certified by

**Under Secretary of Commerce
for Intellectual Property
and Director of the United States
Patent and Trademark Office**

PTO/AIA/14 (12-13)
Approved for use through 04/30/2017.  OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 209658-0001-01-US-518587 |
|---|---|---|
| | Application Number | |

| Title of Invention | ANTISENSE NUCLEIC ACIDS |
|---|---|

The application data sheet is part of the provisional or nonprovisional application for which it is being submitted. The following form contains the bibliographic data arranged in a format specified by the United States Patent and Trademark Office as outlined in 37 CFR 1.76.
This document may be completed electronically and submitted to the Office in electronic format using the Electronic Filing System (EFS) or the document may be printed and included in a paper filed application.

## Secrecy Order 37 CFR 5.2

☐ Portions or all of the application associated with this Application Data Sheet may fall under a Secrecy Order pursuant to 37 CFR 5.2  (Paper filers only. Applications that fall under Secrecy Order may not be filed electronically.)

## Inventor Information:

**Inventor    1**                    [Remove]

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Naoki | | WATANABE | |

**Residence Information (Select One)**  ○ US Residency  ◉ Non US Residency  ○ Active US Military Service

| City | Tsukuba-shi, Ibaraki | Country of Residence [i] | JP |
|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | Room 402, Ruvio II, 21-3, Sakura 1-chome |
|---|---|
| Address 2 | |
| City | Tsukuba-shi, Ibaraki | State/Province | |
| Postal Code | 305-0003 | Country [i] | JP |

**Inventor    2**                    [Remove]

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Youhei | | SATOU | |

**Residence Information (Select One)**  ○ US Residency  ◉ Non US Residency  ○ Active US Military Service

| City | Tsukuba-shi, Ibaraki | Country of Residence [i] | JP |
|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | Room 402, Ruvio II, 21-3, Sakura 1-chome |
|---|---|
| Address 2 | |
| City | Tsukuba-shi, Ibaraki | State/Province | |
| Postal Code | 305-0003 | Country [i] | JP |

**Inventor    3**                    [Remove]

**Legal Name**

NS00000568

PTO/AIA/14 (12-13)
Approved for use through 04/30/2017.  OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 209658-0001-01-US-518587 |
|---|---|---|
| | Application Number | |

| Title of Invention | ANTISENSE NUCLEIC ACIDS |
|---|---|

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Shin'ichi | | TAKEDA | |

**Residence Information (Select One)**  ◯ US Residency  ⦿ Non US Residency  ◯ Active US Military Service

| City | Kodaira-shi, Tokyo | Country of Residence $^i$ | JP |
|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | c/o National Center of Neurology and Psychiatry |
|---|---|
| Address 2 | 1-1, Ogawahigashicho 4-chome |

| City | Kodaira-shi, Tokyo | State/Province | |
|---|---|---|---|
| Postal Code | 187-8551 | Country  i | JP |

| Inventor   4 | | | Remove |
|---|---|---|---|

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Tetsuya | | NAGATA | |

**Residence Information (Select One)**  ◯ US Residency  ⦿ Non US Residency  ◯ Active US Military Service

| City | Kodaira-shi, Tokyo | Country of Residence $^i$ | JP |
|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | c/o National Center of Neurology and Psychiatry |
|---|---|
| Address 2 | 1-1, Ogawahigashicho 4-chome |

| City | Kodaira-shi, Tokyo | State/Province | |
|---|---|---|---|
| Postal Code | 187-8551 | Country  i | JP |

All Inventors Must Be Listed - Additional Inventor Information blocks may be generated within this form by selecting the **Add** button.   | Add |

## Correspondence Information:

| Enter either Customer Number or complete the Correspondence Information section below. For further information see 37 CFR 1.33(a). |
|---|

| ☐ An Address is being provided for the correspondence Information of this application. |
|---|

| Customer Number | 055694 | | |
|---|---|---|---|
| Email Address | DBRIPDocket@dbr.com | Add Email | Remove Email |

NS00000569

PTO/AIA/14 (12-13)
Approved for use through 04/30/2017.  OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 209658-0001-01-US-518587 |
|---|---|---|
| | Application Number | |

| Title of Invention | ANTISENSE NUCLEIC ACIDS |
|---|---|

## Application Information:

| Title of the Invention | ANTISENSE NUCLEIC ACIDS | | |
|---|---|---|---|
| Attorney Docket Number | 209658-0001-01-US-518587 | **Small Entity Status Claimed** | ☐ |
| Application Type | Nonprovisional | | |
| Subject Matter | Utility | | |
| **Total Number of Drawing Sheets (if any)** | 19 | **Suggested Figure for Publication (if any)** | |

### Filing By Reference :

Only complete this section when filing an application by reference under 35 U.S.C. 111(c) and 37 CFR 1.57(a). Do not complete this section if application papers including a specification and any drawings are being filed. Any domestic benefit or foreign priority information must be provided in the appropriate section(s) below (i.e., "Domestic Benefit/National Stage Information" and "Foreign Priority Information").

For the purposes of a filing date under 37 CFR 1.53(b), the description and any drawings of the present application are replaced by this reference to the previously filed application, subject to conditions and requirements of 37 CFR 1.57(a).

| Application number of the previously filed application | Filing date (YYYY-MM-DD) | Intellectual Property Authority or Country i |
|---|---|---|
| | | |

## Publication Information:

| | Request Early Publication (Fee required at time of Request 37 CFR 1.219) |
|---|---|
| ☐ | |

| ☐ | **Request Not to Publish.** I hereby request that the attached application not be published under 35 U.S.C. 122(b) and certify that the invention disclosed in the attached application **has not and will not** be the subject of an application filed in another country, or under a multilateral international agreement, that requires publication at eighteen months after filing. |
|---|---|

## Representative Information:

Representative information should be provided for all practitioners having a power of attorney in the application. Providing this information in the Application Data Sheet does not constitute a power of attorney in the application (see 37 CFR 1.32). Either enter Customer Number or complete the Representative Name section below. If both sections are completed the customer Number will be used for the Representative Information during processing.

| Please Select One: | ⦿ Customer Number | ◯ US Patent Practitioner | ◯ Limited Recognition (37 CFR 11.9) |
|---|---|---|---|
| Customer Number | 055694 | | |

NS00000570

PTO/AIA/14 (12-13)
Approved for use through 04/30/2017. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 209658-0001-01-US-518587 |
|---|---|---|
| | Application Number | |

| Title of Invention | ANTISENSE NUCLEIC ACIDS |
|---|---|

## Domestic Benefit/National Stage Information:

This section allows for the applicant to either claim benefit under 35 U.S.C. 119(e), 120, 121, or 365(c) or indicate National Stage entry from a PCT application. Providing this information in the application data sheet constitutes the specific reference required by 35 U.S.C. 119(e) or 120, and 37 CFR 1.78.
When referring to the current application, please leave the application number blank.

| Prior Application Status | Pending | | Remove |
|---|---|---|---|
| Application Number | Continuity Type | Prior Application Number | Filing Date (YYYY-MM-DD) |
| | Continuation of | 13891520 | 2013-04-10 |
| Prior Application Status | Expired | | Remove |
| Application Number | Continuity Type | Prior Application Number | Filing Date (YYYY-MM-DD) |
| 13891520 | a 371 of international | PCT/JP2011/070318 | 2011-08-31 |

Additional Domestic Benefit/National Stage Data may be generated within this form by selecting the **Add** button. | Add

## Foreign Priority Information:

This section allows for the applicant to claim priority to a foreign application. Providing this information in the application data sheet constitutes the claim for priority as required by 35 U.S.C. 119(b) and 37 CFR 1.55(d). When priority is claimed to a foreign application that is eligible for retrieval under the priority document exchange program (PDX) [i]the information will be used by the Office to automatically attempt retrieval pursuant to 37 CFR 1.55(h)(1) and (2). Under the PDX program, applicant bears the ultimate responsibility for ensuring that a copy of the foreign application is received by the Office from the participating foreign intellectual property office, or a certified copy of the foreign priority application is filed, within the time period specified in 37 CFR 1.55(g)(1).

| | | | Remove |
|---|---|---|---|
| Application Number | Country [i] | Filing Date (YYYY-MM-DD) | Access Code [i] (if applicable) |
| 2010-196032 | JP | 2010-09-01 | |

Additional Foreign Priority Data may be generated within this form by selecting the **Add** button. | Add

NS00000571

PTO/AIA/14 (12-13)
Approved for use through 04/30/2017.  OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 209658-0001-01-US-518587 |
| | Application Number | |

| Title of Invention | ANTISENSE NUCLEIC ACIDS |

## Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications

☐ This application (1) claims priority to or the benefit of an application filed before March 16, 2013 and (2) also contains, or contained at any time, a claim to a claimed invention that has an effective filing date on or after March 16, 2013.
NOTE: By providing this statement under 37 CFR 1.55 or 1.78, this application, with a filing date on or after March 16, 2013, will be examined under the first inventor to file provisions of the AIA.

## Authorization to Permit Access:

☒ Authorization to Permit Access to the Instant Application by the Participating Offices

If checked, the undersigned hereby grants the USPTO authority to provide the European Patent Office (EPO), the Japan Patent Office (JPO), the Korean Intellectual Property Office (KIPO), the World Intellectual Property Office (WIPO), and any other intellectual property offices in which a foreign application claiming priority to the instant patent application is filed access to the instant patent application. See 37 CFR 1.14(c) and (h). This box should not be checked if the applicant does not wish the EPO, JPO, KIPO, WIPO, or other intellectual property office in which a foreign application claiming priority to the instant patent application is filed to have access to the instant patent application.

In accordance with 37 CFR 1.14(h)(3), access will be provided to a copy of the instant patent application with respect to: 1) the instant patent application-as-filed; 2) any foreign application to which the instant patent application claims priority under 35 U.S.C. 119(a)-(d) if a copy of the foreign application that satisfies the certified copy requirement of 37 CFR 1.55 has been filed in the instant patent application; and 3) any U.S. application-as-filed from which benefit is sought in the instant patent application.

In accordance with 37 CFR 1.14(c), access may be provided to information concerning the date o f filing this Authorization.

## Applicant Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

NS00000572

PTO/AIA/14 (12-13)
Approved for use through 04/30/2017. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 209658-0001-01-US-518587 |
|---|---|---|
| | Application Number | |

| Title of Invention | ANTISENSE NUCLEIC ACIDS |
|---|---|

---

**Applicant  1**    [Remove]

If the applicant is the inventor (or the remaining joint inventor or inventors under 37 CFR 1.45), this section should not be completed. The information to be provided in this section is the name and address of the legal representative who is the applicant under 37 CFR 1.43; or the name and address of the assignee, person to whom the inventor is under an obligation to assign the invention, or person who otherwise shows sufficient proprietary interest in the matter who is the applicant under 37 CFR 1.46. If the applicant is an applicant under 37 CFR 1.46 (assignee, person to whom the inventor is obligated to assign, or person who otherwise shows sufficient proprietary interest) together with one or more joint inventors, then the joint inventor or inventors who are also the applicant should be identified in this section.

[Clear]

| ◉ Assignee | ○ Legal Representative under  35 U.S.C. 117 | ○ Joint Inventor |
|---|---|---|
| ○ Person to whom the inventor is obligated to assign. | ○ Person who shows sufficient proprietary interest | |

If applicant is the legal representative, indicate the authority to file the patent application, the inventor is:

Name of the Deceased or Legally Incapacitated Inventor :

If the Applicant is an Organization check here.  ☒

| Organization Name | NIPPON SHINYAKU CO., LTD. |
|---|---|

**Mailing Address Information For Applicant:**

| Address 1 | 14, Kisshoin Nishinosho Monguchicho, Minami-ku | | |
|---|---|---|---|
| Address 2 | | | |
| City | Kyoto-shi, Kyoto | State/Province | |
| Country ⁱ | JP | Postal Code | 601-8550 |
| Phone Number | | Fax Number | |
| Email Address | | | |

Additional Applicant Data may be generated within this form by selecting the Add button.    [Add]

---

**Applicant  2**    [Remove]

If the applicant is the inventor (or the remaining joint inventor or inventors under 37 CFR 1.45), this section should not be completed. The information to be provided in this section is the name and address of the legal representative who is the applicant under 37 CFR 1.43; or the name and address of the assignee, person to whom the inventor is under an obligation to assign the invention, or person who otherwise shows sufficient proprietary interest in the matter who is the applicant under 37 CFR 1.46. If the applicant is an applicant under 37 CFR 1.46 (assignee, person to whom the inventor is obligated to assign, or person who otherwise shows sufficient proprietary interest) together with one or more joint inventors, then the joint inventor or inventors who are also the applicant should be identified in this section.

[Clear]

| ◉ Assignee | ○ Legal Representative under  35 U.S.C. 117 | ○ Joint Inventor |
|---|---|---|
| ○ Person to whom the inventor is obligated to assign. | ○ Person who shows sufficient proprietary interest | |

If applicant is the legal representative, indicate the authority to file the patent application, the inventor is:

Name of the Deceased or Legally Incapacitated Inventor :

NS00000573

PTO/AIA/14 (12-13)
Approved for use through 04/30/2017. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 209658-0001-01-US-518587 |
|---|---|---|
| | Application Number | |

| Title of Invention | ANTISENSE NUCLEIC ACIDS |
|---|---|

| If the Applicant is an Organization check here. | ☒ |
|---|---|

| Organization Name | NATIONAL CENTER OF NEUROLOGY AND PSYCHIATRY |
|---|---|

**Mailing Address Information For Applicant:**

| Address 1 | 1-1, Ogawahigashicho 4-chome | | |
|---|---|---|---|
| Address 2 | | | |
| **City** | Kodaira-shi, Tokyo | **State/Province** | |
| **Country** i | JP | Postal Code | 187-8551 |
| Phone Number | | Fax Number | |
| Email Address | | | |

Additional Applicant Data may be generated within this form by selecting the Add button.    | Add |

## Assignee Information including Non-Applicant Assignee Information:

Providing assignment information in this section does not subsitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

| **Assignee    1** |
|---|

Complete this section if assignee information, including non-applicant assignee information, is desired to be included on the patent application publication . An assignee-applicant identified in the "Applicant Information" section will appear on the patent application publication as an applicant. For an assignee-applicant, complete this section only if identification as an assignee is also desired on the patent application publication.

| | Remove |
|---|---|

| If the Assignee or Non-Applicant Assignee is an Organization check here. | ☒ |
|---|---|

| Organization Name | NIPPON SHINYAKU CO., LTD. |
|---|---|

**Mailing Address Information For Assignee including Non-Applicant Assignee:**

| Address 1 | 14, Kisshoin Nishinosho Monguchicho, Minami-ku | | |
|---|---|---|---|
| Address 2 | | | |
| **City** | Kyoto-shi, Kyoto | **State/Province** | |
| **Country** i | JP | Postal Code | 601-8550 |
| Phone Number | | Fax Number | |
| Email Address | | | |

Additional Assignee or Non-Applicant Assignee Data may be generated within this form by selecting the Add button.    | Add |

NS00000574

PTO/AIA/14 (12-13)
Approved for use through 04/30/2017.  OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 209658-0001-01-US-518587 |
|---|---|---|
| | Application Number | |

| Title of Invention | ANTISENSE NUCLEIC ACIDS |
|---|---|

---

**Assignee   2**

Complete this section if assignee information, including non-applicant assignee information, is desired to be included on the patent application publication . An assignee-applicant identified in the "Applicant Information" section will appear on the patent application publication as an applicant. For an assignee-applicant, complete this section only if identification as an assignee is also desired on the patent application publication.

|  | Remove |
|---|---|

| If the Assignee or Non-Applicant Assignee is an Organization check here. | ☒ |
|---|---|

| Organization Name | NATIONAL CENTER OF NEUROLOGY AND PSYCHIATRY |
|---|---|

**Mailing Address Information For Assignee including Non-Applicant Assignee:**

| **Address 1** | 1-1, Ogawahigashicho 4-chome | | |
|---|---|---|---|
| Address 2 | | | |
| **City** | Kodaira-shi, Tokyo | **State/Province** | |
| **Country** _i_ | JP | Postal Code | 187-8551 |
| Phone Number | | Fax Number | |
| Email Address | | | |

| Additional Assignee or Non-Applicant Assignee Data may be generated within this form by selecting the Add button. | Add |
|---|---|

## Signature:

Remove

NOTE:  This form must be signed in accordance with 37 CFR 1.33.  See 37 CFR 1.4 for signature requirements and certifications.

| **Signature** | /Zhengyu Feng/ | | | Date  (YYYY-MM-DD) | 2015-02-06 |
|---|---|---|---|---|---|
| First Name | Zhengyu | Last Name | Feng | Registration Number | 66816 |

| Additional Signature may be generated within this form by selecting the Add button. | Add |
|---|---|

This collection of information is required by 37 CFR 1.76.  The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application.  Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14.  This collection is estimated to take 23 minutes to complete, including gathering, preparing, and submitting the completed application data sheet form to the USPTO.  Time will vary depending upon the individual case.  Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

NS00000575

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.  The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.

2.  A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.  A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.  A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.  A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent C o o p eration Treaty.

6.  A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.  A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.  A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.  A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

NS00000576



UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/615,504 | 02/06/2015 | Naoki WATANABE | 209658-0001-01-US-518587 | 2704 |

55694          7590          03/25/2016
DRINKER BIDDLE & REATH (DC)
1500 K STREET, N.W.
SUITE 1100
WASHINGTON, DC 20005-1209

| EXAMINER |
|---|
| MCGARRY, SEAN |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1674 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 03/25/2016 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

DBRIPDocket@dbr.com
penelope.mongelluzzo@dbr.com

PTOL-90A (Rev. 04/07)

NS00000736

| *Office Action Summary* | Application No. 14/615,504 | Applicant(s) WATANABE ET AL. | | |
|---|---|---|---|---|
| | Examiner SEAN MCGARRY | Art Unit 1674 | AIA (First Inventor to File) Status No | |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1) ☐ Responsive to communication(s) filed on _____.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.
2a) ☐ This action is **FINAL**.    2b) ☒ This action is non-final.
3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.
4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims*

5) ☒ Claim(s) <u>1 and 15-25</u> is/are pending in the application.
   5a) Of the above claim(s) _____ is/are withdrawn from consideration.
6) ☐ Claim(s) _____ is/are allowed.
7) ☒ Claim(s) <u>1 and 15-25</u> is/are rejected.
8) ☐ Claim(s) _____ is/are objected to.
9) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

\* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

## Application Papers

10) ☐ The specification is objected to by the Examiner.
11) ☐ The drawing(s) filed on _____ is/are: a) ☐ accepted or b) ☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

## Priority under 35 U.S.C. § 119

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    **Certified copies:**
    a) ☐ All   b) ☐ Some** c) ☐ None of the:
    1. ☐ Certified copies of the priority documents have been received.
    2. ☐ Certified copies of the priority documents have been received in Application No. _____.
    3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

\*\* See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**
1) ☐ Notice of References Cited (PTO-892)
2) ☒ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date _____.
3) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____.
4) ☐ Other: _____.

NS00000737

Application/Control Number: 14/615,504                                    Page 2
Art Unit: 1674

The present application is being examined under the pre-AIA first to invent

provisions.

**DETAILED ACTION**

*Claim Rejections - 35 USC § 101*

35 U.S.C. 101 reads as follows:

Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

Claims 1, 15, and 22-25 are rejected under 35 U.S.C. 101 because the claimed

invention is not directed to patent eligible subject matter. Based upon an analysis with

respect to the claim as a whole, the claims do not recite something significantly different

than a judicial exception. The claimed invention reads on a fragment of a naturally

occurring nucleic acid.

Application/Control Number: 14/615,504                                    Page 3
Art Unit: 1674

### *Claim Rejections - 35 USC § 103*

The following is a quotation of pre-AIA 35 U.S.C. 103(a) which forms the basis

for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described
> as set forth in section 102 of this title, if the differences between the subject matter sought to
> be patented and the prior art are such that the subject matter as a whole would have been
> obvious at the time the invention was made to a person having ordinary skill in the art to which
> said subject matter pertains.  Patentability shall not be negatived by the manner in which the
> invention was made.

This application currently names joint inventors. In considering patentability of the

claims under pre-AIA 35 U.S.C. 103(a), the examiner presumes that the subject matter

of the various claims was commonly owned at the time any inventions covered therein

were made absent any evidence to the contrary.  Applicant is advised of the obligation

under 37 CFR 1.56 to point out the inventor and invention dates of each claim that was

not commonly owned at the time a later invention was made in order for the examiner to

consider the applicability of pre-AIA 35 U.S.C. 103(c) and potential pre-AIA 35 U.S.C.

102(e), (f) or (g) prior art under pre-AIA 35 U.S.C. 103(a).

Claims 1-8 and 12-14 are rejected under pre-AIA 35 U.S.C. 103(a) as being

unpatentable over Popplewell et al [US20100168212], Sazani et al [US20100130591] in

view of Baker et al [US20130109091] and Bennett et al [US20120190728].

Application/Control Number: 14/615,504                                        Page 4
Art Unit: 1674

The claimed invention is drawn to antisense compounds targeted to recited regions all contained within nucleotides 31-61 of exon 53 of the dystrophin gene including antisense oligomers  SEQ ID NOS:4, 8, 11, 15, 18, 25, 32, 34, 36, 57, 103,-105, and 109 that cause skipping of the 53rd exon in the human dystrophin gene. The invention includes modifications to the compounds where these modifications are well known and routinely utilized in the antisense art at the time of invention.

Popplewell et al have taught antisense based alteration of splicing in the human dystrophin gene including use as pharmaceuticals. It has been taught to target exon 53 to induce skipping of the 53rd exon.  The specific sequences and modifications recited in the instant claims have been clearly suggested by Popplewell et al. See for example SEQ ID NOS:10-12 and 24, and paragraph 15:

The molecule that causes skipping in exon 53 comprises at least a 25 base length from a base sequence selected from:

TABLE-US-00005 (SEQ ID NO: 10) j) CXG XXG CCX CCG GXX CXG AAG GXG XXC XXG; (SEQ ID NO: 11) k) CAA CXG XXG CCX CCG GXX CXG AAG GXG XXC; or (SEQ ID NO: 12) l) XXG CCX CCG GXX CXG AAG GXG XXC XXG XAC,

wherein the molecule's sequence can vary from the above sequence at up to two base positions, and wherein the molecule can bind to a target site to cause exon skipping in exon 53 of the dystrophin gene.


Paragraph 28:

The base "X" in the above base sequences is defined as being thymine (T) or uracil (U). The presence of either base in the sequence will still allow the molecule to bind to the pre-mRNA of the dystrophin gene as it is a complementary sequence. Therefore, the presence of either base in the molecule will cause exon skipping. The base sequence of the molecule may

NS00000740

contain all thymines, all uracils or a combination of the two. One factor that can determine whether X is T or U is the chemistry used to produce the molecule. For example, if the molecule is a phosphorodiamidate morpholino oligonucleotide (PMO), X will be T as this base is used when producing PMOs. Alternatively, if the molecule is a phosphorothioate-linked 2'-O-methyl oligonucleotide (2'OMePS), X will be U as this base is used when producing 2'OMePSs. Preferably, the base "X" is only thymine (T).

Paragraph 30:

The molecule can be any type of molecule as long as it has the selected base sequence and can bind to a target site of the dystrophin pre-mRNA to cause exon skipping. For example, the molecule can be an oligodeoxyribonucleotide, an oligoribonucleotide, a phosphorodiamidate morpholino oligonucleotide (PMO) or a phosphorothioate-linked 2'-O-methyl oligonucleotide (2'OMePS). Preferably, the oligonucleotide is a PMO. The advantage of a PMO is that it has excellent safety profiles and appears to have longer lasting effects in vivo compared to 2'OMePS oligonucleotides. Preferably, the molecule is isolated so that it is free from other compounds or contaminants.

Paragraph 32:

The molecule is at least 25 bases in length. Preferably, the molecule is at least 28 bases in length. Preferably, the molecule is no more than 35 bases in length and, more preferably, no more than 32 bases in length. Preferably, the molecule is between 25 and 35 bases in length, more preferably, the molecule is between 28 and 32 bases in length, even more preferably, the molecule is between 29 and 31 bases in length, and most preferably, the molecule is 30 bases in length. It has been found that a molecule which is 30 bases in length causes efficient exon skipping. If the molecule is longer than 35 bases in length, the specificity of the binding to the specific exon region is reduced. If the molecule is less than 25 bases in length, the exon skipping efficiency is reduced.

Paragraph 96:

To ensure that the analysis of PMOs for the targeted skipping of exon 53 was not biased by any particular design strategy, seventeen 25mer PMOs were designed to cover the whole of exon 53, with stepwise arrays over suggested bioactive target sites, and then subsequently six 30mer PMOs were designed to target the sequence of exon 53 that showed an association with exon skipping for the 25mers tested. PMOs were designed and tested independently by two different groups (at RHUL and UWA), and then efficacy of the best thirteen sequences confirmed by two other independent groups (at UCL and LUMC). Such a collaborative approach has been used previously as a way of validating target sequences in DMD [4]. Human myoblasts allowed the controlled in vitro comparison of PMO sequences, and confirmation of skipping of

NS00000741

Application/Control Number: 14/615,504                                            Page 6
Art Unit: 1674

exon 53 at the RNA level by certain PMOs in both normal cells and, perhaps more importantly,
in DMD patient cells with a relevant mutation. These results were further borne out by the
expression of dystrophin protein in the DMD cells treated with specific PMOs. Use of the
humanised DMD mouse provided an in vivo setting to confirm correct exon exclusion prior to
any planned clinical trial. The combined use of these three different systems (normal cells,
patient cells and hDMD mouse) as tests of PMO bioactivity provided a reliable and coherent
determination of optimal sequence(s) for the targeted skipping of exon 53.


        Paragraph 97:

        When considering the data presented here as a whole, the superiority of the PMO
targeting the sequence +30+59 (PMO-G, or h53A30/1), is strongly indicated. In normal
myoblasts, nucleofection of PMO-G (300 nM) and liposomal-carrier mediated transfection of
leashed PMO-G (500 nM) produced over 80% and over 50% skipping of exon 53, respectively,
implying that it acts extremely efficiently within the cell. This was confirmed in patient cells.
Indeed, this PMO generates the highest levels of exon skipping in patient cells over a range of
concentrations (up to 200 nM) and, most important therapeutically, exerts its activity at
concentrations as low as 25 nM. The exon skipping activity of this PMO is also persistent, with
over 70% exon skipping for 7 days in culture, and over 60% exon skipping for up to three weeks.
This would have important safety and cost implications as a genetic therapy for DMD patients
with the appropriate deletions. PMO-G was also shown to skip exon 53 correctly in vivo. These
RNA results were further confirmed by the detection of dystrophin protein at a high level in
protein extracts from patient cells treated with PMO-G. Previous studies by the Leiden group
[18] suggest that the optimal 2'OMePS AO is targeted to the sequence +46+63 of exon 53,
producing exon skipping in up to 25% of transcripts in cultured cells and 7% in the hDMD
mouse. This 2'OMePS AO shows some degree of overlap with the optimal PMOs reported here
which strengthens our findings. The reason that our optimal PMO is more specific could be a
(combined) consequence of the different AO chemistries, length of AO used, and the absolute
target site of AO.


        The prior art has therefore taught that the same region targeted by the instantly

claimed oligomers is superior to other regions of exon 53. The prior art has taught that

sequences with SEQ ID NOS:10-12 are included in their invention. The recited SEQ ID

NOS: fall squarely within SEQ ID NOS:10-12 and 24 which has been taught by

Popplewell to be a "superior" target region of exon 53. While the entire document is

pertinent to applicant invention, please also see Example 2 and claims 1-12.

NS00000742

Application/Control Number: 14/615,504                                    Page 7
Art Unit: 1674

Sazani et al have also taught antisense oligomers for inducing exon 53 skipping in the human dystrophin gene. Sazani et al have also taught oligomers targeting the same target site and the instant invention and the superior region taught by Popplewell et all See for example SEQ ID NOS: 430, 431, and 628-633 which all overlap or is/are embrace the instantly recited SEQ ID NOS. Sazani et al have also taught that oligomer size choices and modification of antisense oligonucleotides. while the entire reference is relied upon and relevant to applicants invention, applicant is directed to, for example, paragraphs 18-25, 36, 40, 50, 56, 95, 97, 98, 104, 118, 123-177, 196, 197, and claims 36-39, for example.

While the prior art has not specifically disclosed the recited sequences SEQ ID Nos, the prior art has clearly taught that such sequences are embraced within a known target region and furthermore within known antisense compounds. The prior art, however, has taught that the region that the instant compounds are targeted to is a superior target region and furthermore the prior art references taken together have taught that one in the art can alter the sizes of the antisense compounds. It would have been well within the skill of the artisan to test various sizes of oligomers in an optimization of antisense compounds targeting a known superior target region. It is noted that the superior target region is not large; "When considering the data presented here as a whole, the superiority of the PMO targeting the sequence +30+59 (PMO-G, or h53A30/1), is strongly indicated." Applicants invention is oligomers that are within this exemplified

NS00000743

Application/Control Number: 14/615,504                                    Page 8
Art Unit: 1674

compound where it has been clearly taught that sequences within this oligomer were

considered y by the prior art. The modifications utilized in the invention and recited in

the claims were well known and routinely used in the art at the time of invention as

shown by the above art and evidenced by Baker et al and Bennett et al. The benefits of

the modifications were well known in the art where nuclease protection, and improved

hybridization, and cell penetration were known benefits, for example. Both of these

references are drawn to antisense compounds utilized in alteration of splicing. See

Paragraphs 10, 11, 13, 27, and 60-71 of Baker et al and paragraphs 25, 57-75, 97-104,

140-155, 176, and 180-183 of Bennett et al, for example. Bennett and Baker et al have

also taught various size ranges for splice altering antisense compounds.

The invention as a whole would therefore have been *prima facie* obvious to one

in the art at the time of invention.


### *Double Patenting*


The nonstatutory double patenting rejection is based on a judicially created

doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the

unjustified or improper timewise extension of the "right to exclude" granted by a patent

and to prevent possible harassment by multiple assignees. A nonstatutory double

patenting rejection is appropriate where the claims at issue are not identical, but at least

one examined application claim is not patentably distinct from the reference claim(s)

NS00000744

Application/Control Number: 14/615,504                                          Page 9
Art Unit: 1674

because the examined application claim is either anticipated by, or would have been

obvious over, the reference claim(s). See, e.g., *In re Berg*, 140 F.3d 1428, 46 USPQ2d

1226 (Fed. Cir. 1998); *In re Goodman*, 11 F.3d 1046, 29 USPQ2d 2010 (Fed. Cir.

1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir. 1985); *In re Van Ornum*,

686 F.2d 937, 214 USPQ 761 (CCPA 1982); In re Vogel, 422 F.2d 438, 164 USPQ 619

(CCPA 1970); and *In re Thorington*, 418 F.2d 528, 163 USPQ 644 (CCPA 1969).

A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) or 1.321(d)

may be used to overcome an actual or provisional rejection based on a nonstatutory

double patenting ground provided the reference application or patent either is shown to

be commonly owned with this application, or claims an invention made as a result of

activities undertaken within the scope of a joint research agreement. See MPEP §

717.02 for applications subject to examination under the first inventor to file provisions

of the AIA as explained in MPEP § 2159.  See MPEP §§ 706.02(l)(1) - 706.02(l)(3) for

applications not subject to examination under the first inventor to file provisions of the

AIA. A terminal disclaimer must be signed in compliance with 37 CFR 1.321(b).

The USPTO Internet website contains terminal disclaimer forms which may be

used. Please visit www.uspto.gov/forms/. The filing date of the application in which the

form is filed  determines what form (e.g., PTO/SB/25, PTO/SB/26, PTO/AIA/25, or

PTO/AIA/26) should be used. A web-based eTerminal Disclaimer may be filled out

completely online using web-screens. An eTerminal Disclaimer that meets all

requirements is auto-processed and approved immediately upon submission. For more

NS00000745

Application/Control Number: 14/615,504                                        Page 10
Art Unit: 1674

information about eTerminal Disclaimers, refer to

http://www.uspto.gov/patents/process/file/efs/guidance/eTD-info-I.jsp.

Claims 1 and 15-25 are rejected on the ground of nonstatutory double patenting

as being unpatentable over claims 1-7 of U.S. Patent No. 9079934. Although the claims

at issue are not identical, they are not patentably distinct from each other because the

antisense oligomer of the patent overlaps significantly with and within antisense

compounds targeted within or to the regions recited in the instant claim1, for example.


Any inquiry concerning this communication or earlier communications from the

examiner should be directed to SEAN MCGARRY whose telephone number is

(571)272-0761.  The examiner can normally be reached on M-Th  (7:00-5:30).


If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Shaojia Anna Jiang can be reached on (571) 272-0627.  The fax phone

number for the organization where this application or proceeding is assigned is 571-

273-8300.

NS00000746

Application/Control Number: 14/615,504                                     Page 11
Art Unit: 1674

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


Sean R McGarry
Primary Examiner
Art Unit 1674

/SEAN MCGARRY/
Primary Examiner, Art Unit 1674

Docket No.: 209658-0001-01-US-518587
(PATENT)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of:
Naoki WATANABE et al.

Application No.: 14/615,504                    Confirmation No.: 2704

Filed: February 6, 2015                         Art Unit: 1674

For:  ANTISENSE NUCLEIC ACIDS                   Examiner: S. McGarry

## AMENDMENT / RESPONSE UNDER 37 C.F.R. § 1.111
## &
## PETITION FOR EXTENSION OF TIME

**MS Amendment**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Sir:

In response to the Office Action mailed March 25, 2016, Applicants submit the present Amendment / Response.  The Office is respectfully requested to consider and enter the following amendments and remarks.  Applicants petition herewith for a ONE-month extension of time and submit the corresponding fee, extending the period of response until July 25, 2016.

**Amendments to the Abstract** begin on page 2.

**Amendments to the Claims** begin on page 4.

**Remarks** begin on page 6.

83833562.1

NS00000753

Application No. 14/615,504
Amendment dated July 22, 2016
Reply to Office Action of March 25, 2016

Docket No.: 209658-0001-01-US-518587
Page 2

## AMENDMENTS TO THE ABSTRACT

Please replace the Abstract with the Substitute Abstract provided on the next page.

83833562.1

NS00000754

Application No. 14/615,504
Amendment dated July 22, 2016
Reply to Office Action of March 25, 2016

Docket No.: 209658-0001-01-US-518587
Page 3

## SUBSTITUTE ABSTRACT

The present invention provides a pharmaceutical composition which causes skipping of the 53rd exon in the human dystrophin gene with a high efficiency.

The present invention provides an oligomer which efficiently enables to cause skipping of the 53rd exon in the human dystrophin gene. Also provided is a pharmaceutical composition which causes skipping of the 53rd exon in the human dystrophin gene with a high efficiency.

83833562.1

NS00000755

Application No. 14/615,504
Amendment dated July 22, 2016
Reply to Office Action of March 25, 2016

Docket No.: 209658-0001-01-US-518587
Page 4

## AMENDMENTS TO THE CLAIMS

This listing of claims will replace all prior versions, and listings, of the claims in the application:

## LISTING OF CLAIMS

Claim 1. (Currently Amended):   An antisense oligomer which causes skipping of the 53rd exon in the human dystrophin gene, consisting of [[a]]the nucleotide sequence complementary to any one of the sequences consisting of: the 31st to the 55th, the 32nd to the 53rd, the 32nd to the 56th, the 32nd to the 61st, the 33rd to the 54th, the 33rd to the 57th, the 34th to the 58th, the 35th to the 59th, the 36th to the 53rd, the 36th to the 55th, the 36th to the 57th, the 36th to the 60th, or the 37th to the 61st nucleotides from the 5' end of the 53rd exon in the human dystrophin gene of SEQ ID NO: 11 and SEQ ID NO: 57, wherein the antisense oligomer is an oligonucleotide in which the sugar moiety and/or the phosphate-binding region of at least one nucleotide constituting the oligonucleotide is modified, or a morpholino oligomer .

Claims 2-16.  (Canceled).

Claim 17. (Currently Amended):   The antisense oligomer according to claim [[16]]1, wherein the sugar moiety of at least one nucleotide constituting the oligonucleotide is a ribose in which the 2'-OH group is replaced by any one selected from the group consisting of: OR, R, R'OR, SH, SR, NH$_2$, NHR, NR$_2$, N$_3$, CN, F, Cl, Br, and I, wherein R is an alkyl or an aryl and R' is an alkylene.

Claim 18. (Currently Amended):   The antisense oligomer according to claim [[16]]1, wherein the phosphate-binding region of at least one nucleotide constituting the oligonucleotide is any one selected from the group consisting of: a phosphorothioate bond, a phosphorodithioate bond, an alkylphosphonate bond, a phosphoramidate bond, and a boranophosphate bond.

Claim 19. (Previously Presented):   The antisense oligomer according to claim 1, which is a morpholino oligomer.

83833562.1

NS00000756

Application No. 14/615,504
Amendment dated July 22, 2016
Reply to Office Action of March 25, 2016

Docket No.: 209658-0001-01-US-518587
Page 5

Claim 20.  (Previously Presented):    The antisense oligomer according to claim 19, which is a phosphorodiamidate morpholino oligomer.

Claim 21.  (Previously Presented):    The antisense oligomer according to claim 19, wherein the 5' end is any one of the groups of chemical formulae (1) to (3) below:



(1)          (2)          (3)

Claim 22.  (Canceled).

Claim 23.  (Currently Amended):    The antisense oligomer according to claim 1, consisting of the nucleotide sequence shown by any one selected from the group consisting of SEQ ID NOS: 4, 8, 11, 15, 18, 25, 32, 34, 36, 57, 103, 104, 105, and 109of SEQ ID NO: 57.

Claim 24.  (Currently Amended):    The antisense oligomer according to claim 1, consisting of the nucleotide sequence shown byof SEQ ID NO: 11.

Claim 25.  (Previously Presented):    A pharmaceutical composition for the treatment of muscular dystrophy, comprising as an active ingredient the antisense oligomer according to claim 1, or a pharmaceutically acceptable salt or hydrate thereof.

83833562.1

Application No. 14/615,504
Amendment dated July 22, 2016
Reply to Office Action of March 25, 2016

Docket No.: 209658-0001-01-US-518587
Page 6

## REMARKS

Applicants request reconsideration in light of the above amendments and following comments submitted under 37 C.F.R. § 1.111.

### 1.    Amendments to the Abstract

Applicants amend the Abstract to a single paragraph. No prohibited new matter is believed to be introduced.

### 2.    Status of the Claims

The status of the claims following entry of the amendments is as follows:

**Claims pending:**    1, 17-21, and 23-25

**Claims rejected:**    1 and 15-25

**Claims canceled:**    2-16 and 22

**Claims amended:**    1, 17-18, and 22-23

Applicants amend claim 1 to recite SEQ ID NO: 11 and SEQ ID NO: 57, which respectively correspond to nucleotide sequences complementary to 36th to 60th and 32nd to 56th nucleotides from the 5' end of the 53rd exon in the human dystrophin gene. Applicants also amend claims 17-18 to update the dependency given the cancellation of claim 16. Applicants further amend claims 22 and 23 to recite SEQ ID NO: 57 and SEQ ID NO: 11, respectively. Thus, no prohibited new matter is believed to be added.

The claims have been amended without prejudice to, or disclaimer of, the canceled subject matter. Applicant reserves the right to file a continuation or divisional application on any subject matter canceled by way of amendments.

### 3.    Information Disclosure Statements

Applicants appreciate the Office's acknowledgement of the Information Disclosure Statements (IDSs) submitted on February 6, 2015, and September 22, 2015.

83833562.1

NS00000758

Application No. 14/615,504                                    Docket No.: 209658-0001-01-US-518587
Amendment dated July 22, 2016                                                             Page 7
Reply to Office Action of March 25, 2016

**4.    Status of the Drawings**

Applicants respectfully request status as to the acceptance of the drawings as filed
February 6, 2015 and Replacement Sheets March 3, 2016 with the Office's next communication.

**5.    Priority Documents**

Applicants respectfully request acknowledgment of the claim for foreign priority and
receipt of the priority document(s) with the Office's next communication.

**6.    Claim Rejection Under 35 U.S.C. § 101**

The Office rejects claims 1, 15, and 22-25 as allegedly not directed to patent eligible
subject matter. Office Action, page 2. The Office alleges that (1) "the claims do no recite
something significantly different than a judicial exception"; and (2) "[t]he claimed invention
reads on a fragment of a naturally occurring nucleic acid." *Id.*

Upon entry of the present amendments, claims 15 and 22 stand canceled, mooting at least
this aspect of the rejection. Without acquiescing as to the merits of the Office's rejection,
amended independent claim 1 recites, *inter alia*, an antisense oligomer that is either (1) a
modified oligonucleotide (in which the sugar moiety and/or the phosphate-binding region of at
least one nucleotide constituting the oligonucleotide has been modified), or (2) a morpholino
oligomer.[1] There is no evidence on the record, or adduced by the Office, that any one of the
presently recited antisense oligomers would have existed as "a fragment of a naturally occurring
nucleic acid." The Office's rejection is thus moot. Accordingly, Applicants respectfully request
withdrawal of the rejection and allowance of claims 1 and 23-25.

**7.    Claim Rejection Under 35 U.S.C. § 103(a)**

The Office rejects claims 1 and 15-25[2] as allegedly obvious over **Popplewell** et al., US
2010/0168212 ("Popplewell") and **Sazani** et al., US 2010/0130591 ("Sazani") in view of **Baker**

---

[1]    Morpholino oligomers are synthetic molecules having standard nucleic acid bases bound to morpholine
rings (instead of the deoxyribose rings in DNA). *See, e.g.*, Wikipedia page of Morpholino, *available at*
http://en.wikipedia.org/wiki/Morpholino.
[2]    The Office alleges "[c]laims 1-8 and 12-14" as unpatentable over the cited references. Applicants
believe that the Office must have meant "claims 1 and 15-25" as indicated in the Office Action Summary (PTOL-
326).

83833562.1

NS00000759

Application No. 14/615,504
Amendment dated July 22, 2016
Reply to Office Action of March 25, 2016

Docket No.: 209658-0001-01-US-518587
Page 8

et al., US 2013/0109091 ("Baker") and **Bennett** et al., US 2012/0190728 ("Bennett").  Office Action, pages 3-8.

### Alleged Grounds for Rejection

Popplewell allegedly teaches targeting the 53rd exon of the human dystrophin gene to induce skipping of the 53rd exon.  *Id.*, at 4.  Popplewell's SEQ ID NOs: 10-12 and 24 allegedly suggest the presently recited sequences and modifications.  *Id.*

Sazani allegedly teaches antisense oligomers for inducing exon 53 skipping in the human dystrophin gene.  *Id.*, at 7.  Sazani's SEQ ID NOs: 430-431 and 628-633 allegedly overlap or encompass the presently recited SEQ ID NOs: 11 or 35.  *Id.*

The Office admits that none of the cited references discloses the presently recited SEQ ID NOs.  *Id.*, at 8.  Nevertheless, the Office alleges that "[i]t would have been well within the skill of the artisan to test various sizes of oligomers in an optimization of antisense compounds targeting a known superior target region."  *Id.*

The Office by relying upon Baker and Bennett further alleges that "[t]he modifications utilized in the invention and recited in the claims were well known and routinely used in the art at the time."  *Id.*, 8.  The Office then concludes that "[t]he invention as whole would therefore have been prima facie obvious to one in the art at the time of invention."  *Id.*

Applicants traverse the rejection to the extent it may be applied to the amended claims.  Both the suggestion of the claimed invention and the expectation of success must be in the prior art, not in the disclosure of the claimed invention.  *In re Dow Chem. Co.*, 837 F.2d 469 (Fed. Cir. 1988).  Additionally, once the scope and content of the prior art are determined, the relevant inquiry is whether the prior art suggests all the limitations of the invention, and whether one of ordinary skill in the art would have had a reasonable expectation that the claimed invention would be successful as so combined.  *In re Vaeck*, 947 F.2d 488, 493 (Fed. Cir. 1991).

Upon entry of the present amendments, independent claim 1 recites, *inter alia*, an oligomer consisting of the nucleotide sequence of SEQ ID NO: 11 or SEQ ID NO: 57.  As the Office admits, none of the cited references teaches or suggests SEQ ID NO: 11 or SEQ ID NO: 57.  The Office's rejection is  unsupported, at least because the Office fails to articulate a rationale why a skilled artisan would have been guided or directed to modify the antisense oligomers of Sazani to arrive at the presently claimed antisense oligomers.  Without such

83833562.1

Application No. 14/615,504
Amendment dated July 22, 2016
Reply to Office Action of March 25, 2016

Docket No.: 209658-0001-01-US-518587
Page 9

guidance, the artisan would not have had a reasonable expectation of success in arriving at the claimed sequences. *See, e.g., In re O'Farrell*, 853 F.2d 894, 903 (Fed. Cir. 1988).[3] Teachings of Baker and Bennett are not directly applicable, because the targeted genes discussed therein differ from the human dystrophin gene.

Additionally, the presently recited oligomers (consisting of the nucleotide sequence of SEQ ID NO: 11 and 57) offer superior skipping effects over the oligomers taught in both Popplewell and Sazani. For example, Figures 2-4 of the Specification (corresponding to data in Test Examples 2-3) show that PMO No. 3 (having the nucleotide sequence of SEQ ID NO: 11; *see* Table 2) outperformed exemplary antisense oligomers taught in Popplewell (PMO Nos. 12 and 15). Additionally, Figures 18-19 of the Specification (corresponding to data in Test Example 7) show that PMO No. 3 (having the nucleotide sequence of SEQ ID NO: 11; *see* Table 2) outperformed exemplary antisense oligomer taught in Sazani (PMO No. 16).[4] Furthermore, Figures 16-17 (corresponding to data in Test Example 6) show that the oligomer having the nucleotide sequence of SEQ ID NO: 57 (H53_36-60) displays a higher level skipping activity that that having the nucleotide sequence of SEQ ID NO: 11 (H53_32-56). Thus, the recited oligomers consisting of the nucleotide sequence of SEQ ID NO: 57 also have superior skipping activity over exemplary oligomers taught in Popplewell and Sazani. Applicants submit that this superiority is unexpected, at least because none of the cited references teach or suggest such an effect.

Given at least the above arguments, claim 1 as amended and its dependent claims 17-21, and 23-25 would have been nonobvious over cited references. Claims 15-16 and 22 stand canceled, mooting at least this aspect of the rejection. Accordingly, Applicants respectfully request withdrawal of the rejection and allowance of the claims.

---

[3]    "The admonition that 'obvious to try' is not the standard under § 103 has been directed mainly at two kinds of error. In some cases, what would have been 'obvious to try' would have been to vary all parameters or try each of numerous possible choices until one possibly arrived at a successful result, where the prior art gave either no indication of which parameters were critical or no direction as to which of many possible choices is likely to be successful."

[4]    Figure 19 shows that PMO No. 3 has an equivalent level of skipping activity as PMO No. 8. Figure 18 shows that PMO No. 8 has a higher level of skipping activity than the exemplary antisense oligomer taught in Sazani (PMO No. 16). Thus, a skilled artisan given Figures 18-19 would have understood the following order of the skipping activities:

PMO No. 3 ≈ PMO No. 8 >> PMO No. 16.

83833562.1

NS00000761

Application No. 14/615,504
Amendment dated July 22, 2016
Reply to Office Action of March 25, 2016

Docket No.: 209658-0001-01-US-518587
Page 10

## 8.    Double Patenting Rejection

The Office rejects claims 1 and 15-25 on the ground of nonstatutory double patenting as allegedly obvious over claims 1-7 of **U.S. Patent No. 9,079,934** ("the '934 patent"). Office Action, pages 8-10. The Office alleges:

> Although the claims at issue are not identical, they are not patentably distinct from each other because the antisense oligomer of the patent overlaps significantly with and within antisense compounds targeted within or to the regions recited in the instant claim 1, for example.

*Id.*, at 10.

Without acquiescing as to the merits of the Office's rejection, Applicants amend claim 1 to recite, *inter alia*, an oligomer consisting of the nucleotide sequence of SEQ ID NO: 11 or SEQ ID NO: 57. SEQ ID NO: 11 corresponds to H53_32-56, while SEQ ID NO: 57 corresponds to H53_36-60. The '934 patent recites oligomers consisting of the nucleotide sequence of SEQ ID NO: 35, which correspond to H53_36-56. In addition to the sequence differences, the '934 patent's oligomers are shorter (21-mer) that the presently claimed oligomers (25-mer). Applicants respectfully request the Office's reconsideration given the present claim amendments.

If necessary, Applicants may consider submitting a Terminal Disclaimer Form and payment of the appropriate fee, when the obviousness-type double patenting rejection becomes the only outstanding rejection remaining.

NS00000762

Application No. 14/615,504
Amendment dated July 22, 2016
Reply to Office Action of March 25, 2016

Docket No.: 209658-0001-01-US-518587
Page 11

## CONCLUSION

In view of the foregoing, Applicant submits that the pending claims are in condition for allowance, and respectfully request reconsideration and timely allowance of the pending claims. Should the Examiner feel that there are any issues outstanding after consideration of this response; the Examiner is invited to contact Applicant's undersigned representative to expedite prosecution. A favorable action is awaited.

EXCEPT for issue fees payable under 37 C.F.R. § 1.18, the Commissioner is hereby authorized by this paper to charge any additional fees during the entire pendency of this application including fees due under 37 C.F.R. § 1.16 and 1.17 which may be required, including any required extension of time fees, or credit any overpayment to Deposit Account No. 50-0573. This paragraph is intended to be a CONSTRUCTIVE PETITION FOR EXTENSION OF TIME in accordance with 37 C.F.R. § 1.136(a)(3).

Dated:  July 22, 2016

Respectfully submitted,

Customer Number:  055694

By    /Zhengyu Feng/
Zhengyu Feng, Ph.D.
Registration No.: 66,816
DRINKER BIDDLE & REATH LLP
1500 K Street, N.W.
Suite 1100
Washington, DC  20005-1209
202.230.5119 (Phone)
202.842.8465 (Fax)
Attorneys/Agents For Applicant

83833562.1

NS00000763



UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/615,504 | 02/06/2015 | Naoki WATANABE | 209658-0001-01-US-518587 | 2704 |

55694    7590    10/27/2016
DRINKER BIDDLE & REATH (DC)
1500 K STREET, N.W.
SUITE 1100
WASHINGTON, DC 20005-1209

| EXAMINER |
|---|
| MCGARRY, SEAN |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1674 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 10/27/2016 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

DBRIPDocket@dbr.com
penelope.mongelluzzo@dbr.com

PTOL-90A (Rev. 04/07)

NS00000772

|  |  |  |  |
|---|---|---|---|
| ***Office Action Summary*** | **Application No.**<br>14/615,504 | **Applicant(s)**<br>WATANABE ET AL. |  |
|  | **Examiner**<br>SEAN MCGARRY | **Art Unit**<br>1674 | **AIA (First Inventor to File)**<br>**Status**<br>No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☐ Responsive to communication(s) filed on <u>7/22/2016</u>.
    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a)☒ This action is **FINAL**.        2b)☐ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5)☒ Claim(s) <u>1,17-21,24 and 25</u> is/are pending in the application.
    5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6)☐ Claim(s) _____ is/are allowed.

7)☒ Claim(s) <u>1,17-21,24 and 25</u> is/are rejected.

8)☐ Claim(s) _____ is/are objected to.

9)☐ Claim(s) _____ are subject to restriction and/or election requirement.

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

**Application Papers**

10)☐ The specification is objected to by the Examiner.

11)☒ The drawing(s) filed on <u>2/6/2015 and 3/3/2015</u> is/are: a)☒ accepted or b)☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12)☒ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    **Certified copies:**
    a)☒ All    b)☐ Some**  c)☐ None of the:
       1.☐ Certified copies of the priority documents have been received.
       2.☒ Certified copies of the priority documents have been received in Application No. <u>13/819,520</u>.
       3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☐ Notice of References Cited (PTO-892)

2)☐ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b)
    Paper No(s)/Mail Date _____.

3)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____.

4)☐ Other: _____.

NS00000773

Application/Control Number: 14/615,504                                    Page 2

Art Unit: 1674

The present application is being examined under the pre-AIA first to invent

provisions.

## DETAILED ACTION

### Claim Rejections - 35 USC § 101

35 U.S.C. 101 reads as follows:

> Whoever invents or discovers any new and useful process, machine, manufacture, or
> composition of matter, or any new and useful improvement thereof, may obtain a patent
> therefor, subject to the conditions and requirements of this title.

Claims 1, 15, and 22-25 **WERE** rejected under 35 U.S.C. 101 because the claimed

invention is not directed to patent eligible subject matter. Based upon an analysis with

respect to the claim as a whole, the claims do not recite something significantly different

than a judicial exception.

This rejection has been withdrawn in view of applicants amendments to the

claims filed 7/22/2016.

### Claim Rejections - 35 USC § 103

The following is a quotation of pre-AIA 35 U.S.C. 103(a) which forms the basis

for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described
> as set forth in section 102 of this title, if the differences between the subject matter sought to
> be patented and the prior art are such that the subject matter as a whole would have been
> obvious at the time the invention was made to a person having ordinary skill in the art to which

NS00000774

Application/Control Number: 14/615,504                                         Page 3
Art Unit: 1674

> said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

This application currently names joint inventors. In considering patentability of the claims under pre-AIA 35 U.S.C. 103(a), the examiner presumes that the subject matter of the various claims was commonly owned at the time any inventions covered therein were made absent any evidence to the contrary. Applicant is advised of the obligation under 37 CFR 1.56 to point out the inventor and invention dates of each claim that was not commonly owned at the time a later invention was made in order for the examiner to consider the applicability of pre-AIA 35 U.S.C. 103(c) and potential pre-AIA 35 U.S.C. 102(e), (f) or (g) prior art under pre-AIA 35 U.S.C. 103(a).

Claims 1, 17-21 and 23-25 are rejected under pre-AIA 35 U.S.C. 103(a) as being unpatentable over Popplewell et al [US20100168212], Sazani et al [US20100130591] in view of Baker et al [US20130109091] and Bennett et al [US20120190728].

The claimed invention is drawn to antisense compounds targeted to recited regions all contained within nucleotides 31-61 of exon 53 of the dystrophin gene including antisense oligomers SEQ ID NOS:4, 8, 11, 15, 18, 25, 32, 34, 36, 57, 103,-105, and 109 that cause skipping of the 53rd exon in the human dystrophin gene. The invention includes modifications to the compounds where these modifications are well known and routinely utilized in the antisense art at the time of invention.

NS00000775

Application/Control Number: 14/615,504                                    Page 4
Art Unit: 1674

Popplewell et al have taught antisense based alteration of splicing in the human dystrophin gene including use as pharmaceuticals. It has been taught to target exon 53 to induce skipping of the 53rd exon. The specific sequences and modifications recited in the instant claims have been clearly suggested by Popplewell et al. See for example SEQ ID NOS:10-12 and 24, and paragraph 15:

The molecule that causes skipping in exon 53 comprises at least a 25 base length from a base sequence selected from:

TABLE-US-00005 (SEQ ID NO: 10) j) CXG XXG CCX CCG GXX CXG AAG GXG XXC XXG; (SEQ ID NO: 11) k) CAA CXG XXG CCX CCG GXX CXG AAG GXG XXC; or (SEQ ID NO: 12) l) XXG CCX CCG GXX CXG AAG GXG XXC XXG XAC,

wherein the molecule's sequence can vary from the above sequence at up to two base positions, and wherein the molecule can bind to a target site to cause exon skipping in exon 53 of the dystrophin gene.


Paragraph 28:

The base "X" in the above base sequences is defined as being thymine (T) or uracil (U). The presence of either base in the sequence will still allow the molecule to bind to the pre-mRNA of the dystrophin gene as it is a complementary sequence. Therefore, the presence of either base in the molecule will cause exon skipping. The base sequence of the molecule may contain all thymines, all uracils or a combination of the two. One factor that can determine whether X is T or U is the chemistry used to produce the molecule. For example, if the molecule is a phosphorodiamidate morpholino oligonucleotide (PMO), X will be T as this base is used when producing PMOs. Alternatively, if the molecule is a phosphorothioate-linked 2'-O-methyl oligonucleotide (2'OMePS), X will be U as this base is used when producing 2'OMePSs. Preferably, the base "X" is only thymine (T).


Paragraph 30:

The molecule can be any type of molecule as long as it has the selected base sequence and can bind to a target site of the dystrophin pre-mRNA to cause exon skipping. For example, the molecule can be an oligodeoxyribonucleotide, an oligoribonucleotide, a phosphorodiamidate morpholino oligonucleotide (PMO) or a phosphorothioate-linked 2'-O-methyl oligonucleotide

NS00000776

Application/Control Number: 14/615,504                                    Page 5
Art Unit: 1674

(2'OMePS). Preferably, the oligonucleotide is a PMO. The advantage of a PMO is that it has
excellent safety profiles and appears to have longer lasting effects in vivo compared to 2'OMePS
oligonucleotides. Preferably, the molecule is isolated so that it is free from other compounds or
contaminants.


Paragraph 32:

The molecule is at least 25 bases in length. Preferably, the molecule is at least 28 bases in
length. Preferably, the molecule is no more than 35 bases in length and, more preferably, no
more than 32 bases in length. Preferably, the molecule is between 25 and 35 bases in length,
more preferably, the molecule is between 28 and 32 bases in length, even more preferably, the
molecule is between 29 and 31 bases in length, and most preferably, the molecule is 30 bases in
length. It has been found that a molecule which is 30 bases in length causes efficient exon
skipping. If the molecule is longer than 35 bases in length, the specificity of the binding to the
specific exon region is reduced. If the molecule is less than 25 bases in length, the exon skipping
efficiency is reduced.


Paragraph 96:

To ensure that the analysis of PMOs for the targeted skipping of exon 53 was not biased
by any particular design strategy, seventeen 25mer PMOs were designed to cover the whole of
exon 53, with stepwise arrays over suggested bioactive target sites, and then subsequently six
30mer PMOs were designed to target the sequence of exon 53 that showed an association with
exon skipping for the 25mers tested. PMOs were designed and tested independently by two
different groups (at RHUL and UWA), and then efficacy of the best thirteen sequences
confirmed by two other independent groups (at UCL and LUMC). Such a collaborative approach
has been used previously as a way of validating target sequences in DMD [4]. Human myoblasts
allowed the controlled in vitro comparison of PMO sequences, and confirmation of skipping of
exon 53 at the RNA level by certain PMOs in both normal cells and, perhaps more importantly,
in DMD patient cells with a relevant mutation. These results were further borne out by the
expression of dystrophin protein in the DMD cells treated with specific PMOs. Use of the
humanised DMD mouse provided an in vivo setting to confirm correct exon exclusion prior to
any planned clinical trial. The combined use of these three different systems (normal cells,
patient cells and hDMD mouse) as tests of PMO bioactivity provided a reliable and coherent
determination of optimal sequence(s) for the targeted skipping of exon 53.


Paragraph 97:

When considering the data presented here as a whole, the superiority of the PMO
targeting the sequence +30+59 (PMO-G, or h53A30/1), is strongly indicated. In normal
myoblasts, nucleofection of PMO-G (300 nM) and liposomal-carrier mediated transfection of

NS00000777

Application/Control Number: 14/615,504                                    Page 6
Art Unit: 1674

leashed PMO-G (500 nM) produced over 80% and over 50% skipping of exon 53, respectively, implying that it acts extremely efficiently within the cell. This was confirmed in patient cells. Indeed, this PMO generates the highest levels of exon skipping in patient cells over a range of concentrations (up to 200 nM) and, most important therapeutically, exerts its activity at concentrations as low as 25 nM. The exon skipping activity of this PMO is also persistent, with over 70% exon skipping for 7 days in culture, and over 60% exon skipping for up to three weeks. This would have important safety and cost implications as a genetic therapy for DMD patients with the appropriate deletions. PMO-G was also shown to skip exon 53 correctly in vivo. These RNA results were further confirmed by the detection of dystrophin protein at a high level in protein extracts from patient cells treated with PMO-G. Previous studies by the Leiden group [18] suggest that the optimal 2'OMePS AO is targeted to the sequence +46+63 of exon 53, producing exon skipping in up to 25% of transcripts in cultured cells and 7% in the hDMD mouse. This 2'OMePS AO shows some degree of overlap with the optimal PMOs reported here which strengthens our findings. The reason that our optimal PMO is more specific could be a (combined) consequence of the different AO chemistries, length of AO used, and the absolute target site of AO.

The prior art has therefore taught that the same region targeted by the instantly claimed oligomers is superior to other regions of exon 53. The prior art has taught that sequences with SEQ ID NOS:10-12 are included in their invention. The recited SEQ ID NOS: fall squarely within SEQ ID NOS:10-12 and 24 which has been taught by Popplewell to be a "superior" target region of exon 53. While the entire document is pertinent to applicant invention, please also see Example 2 and claims 1-12.

Sazani et al have also taught antisense oligomers for inducing exon 53 skipping in the human dystrophin gene. Sazani et al have also taught oligomers targeting the same target site and the instant invention and the superior region taught by Popplewell et all See for example SEQ ID NOS: 430, 431, and 628-633 which all overlap or is/are embrace the instantly recited SEQ ID NOS. Sazani et al have also taught that oligomer size choices and modification of antisense oligonucleotides. while the entire reference is

NS00000778

Application/Control Number: 14/615,504                                        Page 7
Art Unit: 1674

relied upon and relevant to applicants invention, applicant is directed to, for example,

paragraphs 18-25, 36, 40, 50, 56, 95, 97, 98, 104, 118, 123-177, 196, 197, and claims

36-39, for example.


     While the prior art has not specifically disclosed the recited sequences SEQ ID

Nos, the prior art has clearly taught that such sequences are embraced within a known

target region and furthermore within known antisense compounds. The prior art,

however, has taught that the region that the instant compounds are targeted to is a

superior target region and furthermore the prior art references taken together have

taught that one in the art can alter the sizes of the antisense compounds. It would have

been well within the skill of the artisan to test various sizes of oligomers in an

optimization of antisense compounds targeting a known superior target region. It is

noted that the superior target region is not large; "When considering the data presented here

as a whole, the superiority of the PMO targeting the sequence +30+59 (PMO-G, or h53A30/1), is

strongly indicated." Applicants invention is oligomers that are within this exemplified

compound where it has been clearly taught that sequences within this oligomer were

considered y by the prior art. The modifications utilized in the invention and recited in

the claims were well known and routinely used in the art at the time of invention as

shown by the above art and evidenced by Baker et al and Bennett et al. The benefits of

the modifications were well known in the art where nuclease protection, and improved

hybridization, and cell penetration were known benefits, for example. Both of these

references are drawn to antisense compounds utilized in alteration of splicing. See

NS00000779

Application/Control Number: 14/615,504                                    Page 8
Art Unit: 1674

Paragraphs 10, 11, 13, 27, and 60-71 of Baker et al and paragraphs 25, 57-75, 97-104, 140-155, 176, and 180-183 of Bennett et al, for example. Bennett and Baker et al have also taught various size ranges for splice altering antisense compounds.

The invention as a whole would therefore have been *prima facie* obvious to one in the art at the time of invention.

### Response to Arguments

Applicant's arguments filed 7/22/2016 have been fully considered but they are not persuasive.

Applicant has argued that the rejection of record fails to articulate why a skilled artsen would have been guided or directed to modify the antisense oligomers of Sazani to arrive at the presently claimed oligomers. It is noted that the instant oligomers are targeted to nt32-56 and 36-60 of exon 53. These oligomers are 25mers. The examiner asserts that the rejection specifically provides the ese teachings from the prior art.

From the rejection above:

It has been taught to target exon 53 to induce skipping of the 53rd exon. The specific sequences and modifications recited in the instant claims have been clearly suggested by Popplewell et al. See for example SEQ ID NOS:10-12 and 24, and paragraph 15:

The molecule that causes skipping in exon 53 comprises at least a 25 base length from a base sequence selected from:

Application/Control Number: 14/615,504                                              Page 9
Art Unit: 1674

TABLE-US-00005 (SEQ ID NO: 10) j) CXG XXG CCX CCG GXX CXG AAG GXG XXC XXG; (SEQ ID NO: 11) k) CAA CXG XXG CCX CCG GXX CXG AAG GXG XXC; or (SEQ ID NO: 12) l) XXG CCX CCG GXX CXG AAG GXG XXC XXG XAC,

wherein the molecule's sequence can vary from the above sequence at up to two base positions, and wherein the molecule can bind to a target site to cause exon skipping in exon 53 of the dystrophin gene.


Paragraph 32:

The molecule is at least 25 bases in length. Preferably, the molecule is at least 28 bases in length. Preferably, the molecule is no more than 35 bases in length and, more preferably, no more than 32 bases in length. Preferably, the molecule is between 25 and 35 bases in length, more preferably, the molecule is between 28 and 32 bases in length, even more preferably, the molecule is between 29 and 31 bases in length, and most preferably, the molecule is 30 bases in length. It has been found that a molecule which is 30 bases in length causes efficient exon skipping. If the molecule is longer than 35 bases in length, the specificity of the binding to the specific exon region is reduced. If the molecule is less than 25 bases in length, the exon skipping efficiency is reduced.


Paragraph 97:

When considering the data presented here as a whole, the superiority of the PMO targeting the sequence +30+59 (PMO-G, or h53A30/1), is strongly indicated. In normal myoblasts, nucleofection of PMO-G (300 nM) and liposomal-carrier mediated transfection of leashed PMO-G (500 nM) produced over 80% and over 50% skipping of exon 53, respectively, implying that it acts extremely efficiently within the cell. This was confirmed in patient cells. Indeed, this PMO generates the highest levels of exon skipping in patient cells over a range of concentrations (up to 200 nM) and, most important therapeutically, exerts its activity at concentrations as low as 25 nM. The exon skipping activity of this PMO is also persistent, with over 70% exon skipping for 7 days in culture, and over 60% exon skipping for up to three weeks. This would have important safety and cost implications as a genetic therapy for DMD patients with the appropriate deletions. PMO-G was also shown to skip exon 53 correctly in vivo. These RNA results were further confirmed by the detection of dystrophin protein at a high level in protein extracts from patient cells treated with PMO-G. Previous studies by the Leiden group [18] suggest that the optimal 2'OMePS AO is targeted to the sequence +46+63 of exon 53, producing exon skipping in up to 25% of transcripts in cultured cells and 7% in the hDMD mouse. This 2'OMePS AO shows some degree of overlap with the optimal PMOs reported here which strengthens our findings. The reason that our optimal PMO is more specific could be a (combined) consequence of the different AO chemistries, length of AO used, and the absolute target site of AO.

NS00000781

Application/Control Number: 14/615,504                                                    Page 10
Art Unit: 1674

The prior art has therefore taught that the same region targeted by the instantly claimed oligomers is superior to other regions of exon 53. The prior art has taught that sequences with SEQ ID NOS:10-12 are included in their invention. The recited SEQ ID NOS: fall squarely within SEQ ID NOS:10-12 and 24 which has been taught by Popplewell to be a "superior" target region of exon 53. While the entire document is pertinent to applicant invention, please also see Example 2 and claims 1-12.

Applicant dismissed the Baker and Bennet references since they are not directed to the same gene. This is not what the references are relied on for. For example they are relied on for what was asserted in the rejection above: modifications of antisense compounds utilized for intron splice modulation.

Applicant asserts that the instant compounds have unexpected properties. The examiner disagrees. The compounds function as designed, to alter splicing. The fact that applicant screened for more oligonucleotides in a region that has been taught to be superior utilizing size ranges and modifications known in the art is not unexpected. The prior art indeed asserts that these oligonucleotides are included in their invention as asserted in the rejection of record.

NS00000782

Application/Control Number: 14/615,504                                    Page 11
Art Unit: 1674

### Double Patenting

Claims 1 and 15-25 **WERE** rejected on the ground of nonstatutory double patenting as being unpatentable over claims 1-7 of U.S. Patent No. 9079934.

This rejection has been withdrawn in view if the amendments filed 7/22/2016.

**THIS ACTION IS MADE FINAL.**  Applicant is reminded of the extension of time policy as set forth in 37 CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE MONTHS from the mailing date of this action.  In the event a first reply is filed within TWO MONTHS of the mailing date of this final action and the advisory action is not mailed until after the end of the THREE-MONTH shortened statutory period, then the shortened statutory period will expire on the date the advisory action is mailed, and any extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of the advisory action.  In no event, however, will the statutory period for reply expire later than SIX MONTHS from the mailing date of this final action.

Any inquiry concerning this communication or earlier communications from the examiner should be directed to SEAN MCGARRY whose telephone number is (571)272-0761.  The examiner can normally be reached on M-Th  (7:00-5:30).

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Shaojia Anna Jiang can be reached on (571) 272-0627.  The fax phone

Application/Control Number: 14/615,504                                    Page 12
Art Unit: 1674

number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system.  Status information for published applications may be obtained from either Private PAIR or Public PAIR.  Status information for unpublished applications is available through Private PAIR only.  For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

Sean R McGarry
Primary Examiner
Art Unit 1674

/SEAN MCGARRY/
Primary Examiner, Art Unit 1674

NS00000784

Docket No.: 209658-0001-01-US-518587
(PATENT)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of:
Naoki WATANABE et al.

Application No.: 14/615,504                     Confirmation No.: 2704

Filed: February 6, 2015                          Art Unit: 1674

For: ANTISENSE NUCLEIC ACIDS                     Examiner: S. McGarry

## AMENDMENT / RESPONSE UNDER 37 C.F.R. § 1.116
## &
## PETITION FOR EXTENSION OF TIME

**MS AF**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Sir:

In response to the FINAL Office Action mailed October 27, 2016, the Office is respectfully requested to consider and enter the following amendments and remarks. Applicant petitions herewith a ONE-month extension of time, extending the period of response until February 27, 2017.

**Amendments to the Claims** begin on page 2.

**Remarks** begin on page 4.

A **Certification and Request for Consideration under the After Final Consideration Pilot Program 2.0** is concurrently submitted.

87880460.1

NS00000787

Application No. 14/615,504                                Docket No.: 209658-0001-01-US-518587
Amendment dated February 27, 2017                                                     Page 2
After Final Office Action of October 27, 2016

## AMENDMENTS TO THE CLAIMS

This listing of claims will replace all prior versions, and listings, of the claims in the application:

## LISTING OF CLAIMS

Claim 1. (Currently Amended):    An antisense oligomer which causes skipping of the 53rd exon in the human dystrophin gene, consisting of the nucleotide sequence of ~~SEQ ID NO: 11 and~~ SEQ ID NO: 57, wherein the antisense oligomer is an oligonucleotide in which the sugar moiety and/or the phosphate-binding region of at least one nucleotide constituting the oligonucleotide is modified, or a morpholino oligomer.


Claims 2-16.  (Canceled).


Claim 17. (Previously Presented):    The antisense oligomer according to claim 1, wherein the sugar moiety of at least one nucleotide constituting the oligonucleotide is a ribose in which the 2'-OH group is replaced by any one selected from the group consisting of: OR, R, R'OR, SH, SR, $NH_2$, NHR, $NR_2$, $N_3$, CN, F, Cl, Br, and I, wherein R is an alkyl or an aryl and R' is an alkylene.


Claim 18. (Previously Presented):    The antisense oligomer according to claim 1, wherein the phosphate-binding region of at least one nucleotide constituting the oligonucleotide is any one selected from the group consisting of: a phosphorothioate bond, a phosphorodithioate bond, an alkylphosphonate bond, a phosphoramidate bond, and a boranophosphate bond.


Claim 19. (Previously Presented):    The antisense oligomer according to claim 1, which is a morpholino oligomer.


Claim 20. (Previously Presented):    The antisense oligomer according to claim 19, which is a phosphorodiamidate morpholino oligomer.

87880460.1

NS00000788

Application No. 14/615,504                                  Docket No.: 209658-0001-01-US-518587
Amendment dated February 27, 2017                                                        Page 3
After Final Office Action of October 27, 2016

Claim 21. (Previously Presented):   The antisense oligomer according to claim 19, wherein the 5' end is any one of the groups of chemical formulae (1) to (3) below:



(1)                              (2)                    (3) .

Claims 22-24. (Canceled).

Claim 25. (Previously Presented):   A pharmaceutical composition for the treatment of muscular dystrophy, comprising as an active ingredient the antisense oligomer according to claim 1, or a pharmaceutically acceptable salt or hydrate thereof.

87880460.1

NS00000789

Application No. 14/615,504                                      Docket No.: 209658-0001-01-US-518587
Amendment dated February 27, 2017                                                            Page 4
After Final Office Action of October 27, 2016

## REMARKS

Entry of this Amendment is proper under 37 C.F.R. § 1.116, because the Amendment places the application in condition for allowance for the reasons discussed herein; does not raise any new issue requiring further search and/or consideration, because the amendments amplify issues previously discussed throughout prosecution; relates to matters of form rather than substance, because the added language was already present in the claims and thus presents no additional search burden; adds no new claims; and places the application in a better form for an appeal should an appeal be necessary. The Amendment is necessary and was not earlier presented because it is made in response to arguments raised in the final rejection. Entry of the Amendment, reexamination, and further and favorable reconsideration of the subject application given the following remarks, pursuant to and consistent with 37 C.F.R. § 1.116, are thus respectfully requested.

### 1.    Status of the Claims and Support for the Claim Amendments

The status of the claims following entry of the amendments is as follows:

| | |
|---|---|
| **Claims pending:** | 1, 17-21, and 25 |
| **Claims rejected:** | 1, 17-21, and 23-25 |
| **Claim amended:** | 1 |
| **Claims canceled:** | 2-16 and 22-24 |

Applicants amend claim 1 to no longer recite SEQ ID NO: 11. Thus, no prohibited new matter is believed to be added.

The claims have been amended without prejudice to, or disclaimer of, the canceled subject matter. Applicants reserve the right to file a continuation or divisional application on any subject matter canceled by way of amendments.

### 2.    Status the Drawings

Applicants appreciate the Office's acknowledgment that the drawings filed February 6, 2015 and March 3, 2015 are accepted by the Office.

87880460.1

Application No. 14/615,504
Amendment dated February 27, 2017
After Final Office Action of October 27, 2016

Docket No.: 209658-0001-01-US-518587
Page 5

3.    **Priority Documents**

Applicants appreciates the Office's acknowledgment that certified copies of the priority document have been received in the parent application.

4.    **Withdrawn Objections and Rejections**

Rejections and objections not reiterated stand withdrawn. *See* 37 C.F.R. § 1.113(b); M.P.E.P. §§ 706.07 and 707.07(e).

5.    **Claim Rejection under 35 U.S.C. § 103(a)**

The Office rejects claims 1, 17-21, and 23-25 as allegedly obvious over **Popplewell** et al., U.S. Published Patent Application No. 2010/0168212 ("Popplewell") and **Sazani** et al., U.S. Published Patent Application No. 2010/0130591 ("Sazani") in view of **Baker** et al., U.S. Published Patent Application No. 2013/0109091 ("Baker") and **Bennett** et al., U.S. Published Patent Application No. 2012/0190728 ("Bennett"). Office Action, pages 2-10.

**Alleged Grounds for Rejection**

Popplewell allegedly teaches targeting the 53rd exon of the human dystrophin gene to induce skipping of the 53rd exon. *Id.*, at 4. Popplewell's SEQ ID NOs: 10-12 and 24 allegedly suggest the presently recited sequences and modifications. *Id.,* 4 and 8. Sazani allegedly teaches antisense oligomers for inducing exon 53 skipping in the human dystrophin gene. *Id.*, at 6-7. Sazani's SEQ ID NOs: 430-431 and 628-633 allegedly overlap or encompass the presently recited SEQ ID NOs. *Id.* The Office admits that none of the cited references discloses the presently recited SEQ ID NOs. *Id.*, at 8. Nevertheless, the Office alleges that "[i]t would have been well within the skill of the artisan to test various sizes of oligomers in an optimization of antisense compounds targeting a known superior target region." *Id.*

The Office by relying upon Baker and Bennett further alleges that "[t]he modifications utilized in the invention and recited in the claims were well known and routinely used in the art at the time." *Id.*, 7. The Office then concludes that "[t]he invention as whole would therefore have been prima facie obvious to one in the art at the time of invention." *Id.*, 8.

NS00000791

Application No. 14/615,504
Amendment dated February 27, 2017
After Final Office Action of October 27, 2016

Docket No.: 209658-0001-01-US-518587
Page 6

Given Applicants' Amendment/Response filed July 22, 2016, the Office discounts
Applicants' argument. *Id.*, 10. The presently recited SEQ ID Nos "falls squarely within" what
"has been taught by Popplewell to be a 'superior' target region." *Id.* The Office further alleges
that "[t]he prior art indeed asserts that these oligonucleotides are included in their invention as
asserted in the rejection of record." *Id.*

### Arguments

Applicants traverse the rejection to the extent it may be applied to the amended claims.
Both the suggestion of the claimed invention and the expectation of success must be in the prior
art, not in the disclosure of the claimed invention. *In re Dow Chem. Co.*, 837 F.2d 469 (Fed. Cir.
1988). Additionally, once the scope and content of the prior art are determined, the relevant
inquiry is whether the prior art suggests all the limitations of the invention, and whether one of
ordinary skill in the art would have had a reasonable expectation that the claimed invention
would be successful as so combined. *In re Vaeck*, 947 F.2d 488, 493 (Fed. Cir. 1991).

Upon entry of the present amendments, independent claim 1 recites, *inter alia*, an
oligomer consisting of the nucleotide sequence of SEQ ID NO: 57. As the Office admits, none
of the cited references teaches or suggests SEQ ID NO: 57. The Office's rejection is
unsupported, at least because the Office fails to articulate a rationale why a skilled artisan would
have been guided or directed to modify the antisense oligomers of the cited references to arrive
at the presently claimed antisense oligomers. Without such guidance, the artisan would not have
had a reasonable expectation of success in arriving at the claimed sequences. *See, e.g., In re
O'Farrell*, 853 F.2d 894, 903 (Fed. Cir. 1988).[1] Teachings of Baker and Bennett are not directly
applicable, because the targeted genes discussed therein differ from the human dystrophin gene.

In fact, a skilled artisan given Popplewell would have been directed to use or modify the
oligomers that are different from the presently recited ones. Popplewell teaches that the
oligomer corresponding to positions 30-59 of exon 53 provides the highest activity. *See, e.g.,*

---

[1]    "The admonition that 'obvious to try' is not the standard under § 103 has been directed mainly at two kinds
of error. In some cases, what would have been 'obvious to try' would have been to vary all parameters or try each of
numerous possible choices until one possibly arrived at a successful result, where the prior art gave either no
indication of which parameters were critical or no direction as to which of many possible choices is likely to be
successful."

87880460. 1

NS00000792

Application No. 14/615,504
Amendment dated February 27, 2017
After Final Office Action of October 27, 2016

Docket No.: 209658-0001-01-US-518587
Page 7

Popplewell, ¶ [0074][2] and FIG. 8. In contrast, the presently recited SEQ ID NO: 57 corresponds to positions 36-60 of exon 50. Thus, Popplewell's top performer is different from the presently recited ones. There is no evidence on the record, or adduced by the Office, that a skilled artisan given Popplewell's teachings would have arrived at the presently recited oligomers, let alone doing so with any expectation of success.

Additionally, the presently recited oligomer (consisting of the nucleotide sequence of SEQ ID NO: 57) offer superior skipping effects over the oligomers taught in both Popplewell and Sazani. For example, Figures 2-4 of the Specification (corresponding to data in Test Examples 2-3) show that PMO No. 3 (having the nucleotide sequence of SEQ ID NO: 11; see Table 2) outperformed exemplary antisense oligomers taught in Popplewell (PMO Nos. 12 and 15). As shown in TABLE 2, PMO Nos. 12 and 15 corresponds to the top performer taught in Popplewell (targeting sequence 30-59 of exon 53). Additionally, Figures 18-19 of the Specification (corresponding to data in Test Example 7) show that PMO No. 3 (having the nucleotide sequence of SEQ ID NO: 11; see Table 2) outperformed exemplary antisense oligomer taught in Sazani (PMO No. 16).[3] Furthermore, Figures 16-17 (corresponding to data in Test Example 6) show that the oligomer having the nucleotide sequence of SEQ ID NO: 57 (H53_36-60) displays a higher level skipping activity that that having the nucleotide sequence of SEQ ID NO: 11 (H53_32-56). Thus, the recited oligomers consisting of the nucleotide sequence of SEQ ID NO: 57 also have superior skipping activity over exemplary oligomers taught in Popplewell and Sazani, particularly the top performer taught in Popplewell. Applicants submit that this superiority is unexpected, at least because none of the cited references teach or suggest such an effect.

Given at least the above arguments, claim 1 as amended and its dependent claims 17-21, and 25 would have been nonobvious over cited references. Claims 23-24 stand canceled,

---

[2] "...produced the most robust skipping of exon 53, and should be considered the sequence of choice for any upcoming PMO clinical trial."

[3] Figure 19 shows that PMO No. 3 has an equivalent level of skipping activity as PMO No. 8. Figure 18 shows that PMO No. 8 has a higher level of skipping activity than the exemplary antisense oligomer taught in Sazani (PMO No. 16). Thus, a skilled artisan given Figures 18-19 would have understood the following order of the skipping activities:

PMO No. 3 ≈ PMO No. 8 >> PMO No. 16.

87880460. 1

NS00000793

Application No. 14/615,504                                     Docket No.: 209658-0001-01-US-518587
Amendment dated February 27, 2017                                                          Page 8
After Final Office Action of October 27, 2016

mooting at least this aspect of the rejection. Accordingly, Applicants respectfully request

withdrawal of the rejection and allowance of the claims.

## CONCLUSION

In view of the foregoing, Applicants submit that the pending claims are in condition for

allowance, and respectfully request reconsideration and timely allowance of the pending claims.

Should the Office have any questions or comments regarding Applicants' amendments or

response, please contact Applicants' undersigned representative at (202) 230-5119.

Furthermore, please direct all correspondence to the below-listed address.

EXCEPT for issue fees payable under 37 C.F.R. § 1.18, the Commissioner is hereby

authorized by this paper to charge any additional fees during the entire pendency of this

application including fees due under 37 C.F.R. § 1.16 and 1.17 which may be required, including

any required extension of time fees, or credit any overpayment to Deposit Account No. 50-0573.

If an Appeal fee is required to maintain pendency of the present application, the Office is

authorized to charge the Appeal fee to the deposit account above and use this paper as a

constructive Notice of Appeal.


Dated:  February 27, 2017                    Respectfully submitted,



Customer Number:  055694                     By
                                             Zhengyu Feng, Ph.D.
                                             Registration No.: 66,816
                                             DRINKER BIDDLE & REATH LLP
                                             1500 K Street, N.W.
                                             Suite 1100
                                             Washington, DC  20005-1209
                                             202.230.5119 (Phone)
                                             202.842.8465 (Fax)
                                             Attorneys/Agents For Applicant


87880460.1

NS00000794