IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NIPPON SHINYAKU CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1015 (GBW) |
| | ) | |
| SAREPTA THERAPEUTICS, INC., | ) | ███████████████████ |
| | ) | |
| Defendant. | ) | |
| SAREPTA THERAPEUTICS, INC. and THE | ) | ████████████ |
| UNIVERSITY OF WESTERN AUSTRALIA, | ) | |
| | ) | REDACTED - PUBLIC VERSION |
| Defendant/Counter-Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NIPPON SHINYAKU CO., LTD. | ) | |
| and NS PHARMA, INC. | ) | |
| | ) | |
| Plaintiff/Counter-Defendants. | ) | |

**ANSWERING BRIEF OF SAREPTA THERAPEUTICS, INC. AND THE UNIVERSITY OF WESTERN AUSTRALIA IN OPPOSITION TO NIPPON SHINYAKU CO. LTD. AND NS PHARMA, INC.'S MOTION FOR THE ISSUANCE OF A <u>REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE</u>**

## TABLE OF CONTENTS

Page

I.    Nature and Stage of Proceeding/Summary of Argument ................................... 1

II.   Statement of Facts ................................................................................. 3

      A.    The Wilton Patents ...................................................................... 3

      B.    The Ongoing Litigation and this Motion ......................................... 4

III.  Legal Standard ...................................................................................... 6

IV.   Argument ............................................................................................. 7

      A.    The Motion Is Untimely ............................................................... 8

      B.    The *Aerospatiale* Factors Favor Denial ......................................... 10

            1.    The Untimeliness of the Motion Negates any Argument That the Information Sought Is Important to the Litigation ................................... 10

            2.    The Degree of Specificity of the Document Requests and Deposition Topics Is Lacking ........................................................... 11

            3.    The Information NS Seeks Did Not Originate in the United States ........ 12

            4.    NS Ignored Alternative Means of Securing the Information ................... 13

            5.    Whether Compliance Undermines Australian Law or Noncompliance Would Undermine American Law Is Neutral .......................................... 15

V.    Conclusion ......................................................................................... 15

<u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Barton v. RCI, LLC*,
No. 10-3657 (PGS)(DEA), 2014 WL 12633500 (D.N.J. Mar. 17, 2014).......................1, 9, 10

*Bombardier Recreational Products, Inc. v. Arctic Cat, Inc.*,
No. 12-cv-2706, 2014 WL 10714011 (D. Minn. Dec. 5, 2014) ...................................2, 10, 11

*Cardiovascular Systems, Inc. v. Cardio Flow, Inc.*,
0:18-cv-1253-SRN-KMM, 2020 WL 6262378 (D. Mn. May 6, 2020)............................10, 11

*Complaint of Bankers Trust Co.*,
752 F.2d 874, 890 (3rd Cir. 1984) ......................................................................................6

*Dyson, Inc. v. SharkNinja Operating LLC*,
No. 14-779, 2016 WL 5720702 (N.D. Ill. Sept. 30, 2016)................................................12, 13

*Forschung e.V. v. Sirus XM Radio Inc.*,
No. 17-184-JFB-SRF, 2021 WL 861493 (D. Del. Mar. 8, 2021)............................................7

*Haarslev Inc. v. Nissen*,
5:19-CV-06128-BCW, 2022 WL 16709716 (W.D. Mo. Sept. 20, 2022).........................1, 8, 9

*Ingenico Inc. v. Ioengine, LLC*,
No. 18-826-WCB, 2021 WL 765757 (D. Del. Feb. 26, 2021) ........................................6, 7, 12

*Ioengine, LLC v. PayPal Holdings, Inc.*,
No. 18-452-WCB, Slip. Op. (D. Del. Oct. 15, 2021) .....................................................1, 8

*Merck Sharp & Dohme Corp. v. Sandoz, Inc.*,
No. 12–3289 (PGS), 2013 WL 12203112 (D.N.J. June 7, 2013) ...................................*passim*

*Purdue Pharma Prods. L.P. v. Par Pharms., Inc.*,
No. 07–255–JJF, 2008 WL 3926158 (D. Del. Aug. 26, 2008).......................................6, 7, 14

*Roc Nation LLC v. HCC International Insurance Co., PLC*,
19 Civ. 554 (PAE), 2020 WL 3170886 (S.D.N.Y. June 15, 2020) .........................................9

*Route1 Inc. v. AirWatch LLC*,
No. 17-0331-RGA, 2018 WL 6427145 (D. Del. Dec. 7, 2018)........................................6, 14

*Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for Southern Dist. of Iowa*,
482 U.S. 522 (1987)................................................................................6, 7, 10, 15

**Rules and Statutes**

Fed. R. Civ. 26(b) ...........................................................................................................6

D. Del. LR 30.1 ..............................................................................................................1

## I.    Nature and Stage of Proceeding/Summary of Argument

NS's motion seeking international judicial assistance to compel document production and testimony from Dr. Sue Fletcher should be denied.

First, the motion comes far too late—*just eight days before today's end of fact discovery*. NS has been aware of Dr. Fletcher at least since it filed this litigation two years ago, in July 2021. Even if Dr. Fletcher had been a party, NS's document requests would have been untimely under the Federal Rules. But the situation here is more egregious: Dr. Fletcher is not a party—she is a former employee of the University of Western Australia ("UWA") who resides in Australia. Seeking documents from Dr. Fletcher, *for the very first time*, through a motion for international judicial assistance with just days left in fact discovery is manifestly improper.

Second, even if she were a party witness, noticing Dr. Fletcher's deposition just eight days before the end of fact discovery would be untimely. D. Del. LR 30.1. Substantial authority contravenes NS's belated attempt to depose a non-party, former employee who resides abroad as unnecessarily "complicated, dilatory, and expensive." *See*, *e.g.*, *Merck Sharp & Dohme Corp. v. Sandoz, Inc.*, No. 12–3289 (PGS), 2013 WL 12203112, at *4 (D.N.J. June 7, 2013) (denying motion for letters rogatory where the motion was filed "with less than two months left before the close of discovery"); *Ioengine, LLC v. PayPal Holdings, Inc.,*No. 18-452-WCB, Slip. Op. at 3 (D. Del. Oct. 15, 2021) (denying motion for issuance of a letter of request where the moving party received the relevant "production on or before January 5, 2021…[but] did not, however, approach the court with [the motion for a letter of request] until October 12, 2021, only 10 days before the close of discovery"); *Haarslev Inc. v. Nissen,* 5:19-CV-06128-BCW, 2022 WL 16709716, at *1 (W.D. Mo. Sept. 20, 2022) (denying motion for issuance of letters rogatory because "granting Plaintiff's request would result in a significant extension of both the discovery and dispositive motion deadlines"); *Barton v. RCI, LLC,* No. 10-3657 (PGS)(DEA), 2014 WL 12633500, at *3

1

(D.N.J. Mar. 17, 2014) (denying motion for letter of request as untimely where the movant submitted its application with "three days before the close of discovery").

Third, NS's excuses for its dilatory behavior do not withstand scrutiny. NS has known of Dr. Fletcher since well before the start of this litigation, at least because she is a named inventor on the Wilton patents. Given this knowledge, NS's motion comes far too late. *Bombardier Recreational Products, Inc. v. Arctic Cat, Inc.,* No. 12-cv-2706 (MJD/LIB), 2014 WL 10714011, at *7 (D. Minn. Dec. 5, 2014) (denying motion for letters rogatory where movant waited two years after learning of the relevant individual before moving).

Finally, NS's argument that it should be entitled to discovery from Dr. Fletcher because Dr. Wilton voluntarily produced extensive documentary evidence ████████████████ █████ does not cure NS's untimeliness and, as addressed below, underscores the cumulative discovery NS seeks. NS also argues it previously sought to compel Sarepta and UWA to make Dr. Fletcher available for deposition based on alleged contractual obligations. That motion did ***not*** seek document discovery—and the Special Master denied it because the contractual provisions between UWA and Dr. Fletcher relied on by NS do "not contain any specific language obligating them to testify in any legal proceeding or appear for a deposition." D.I. 254 at 12. Regardless, NS's failure to compel Sarepta and UWA to facilitate Dr. Fletcher's deposition does not justify the late filing of this motion. Indeed, this motion comes *seven weeks* after NS filed a separate motion for a letter of request targeting two different, former UWA employees. D.I. 215. NS knew the procedure—NS has no excuse for waiting until days before the close of fact discovery before beginning this time-consuming and expensive process.

2

NS's untimely filing of this second Motion is consistent with its shotgun approach to non-party discovery—burdening numerous non-party former Sarepta and UWA employees[1] with subpoenas seeking cumulative, duplicative and often irrelevant material—which it timed to coincide with a busy deposition schedule. Because NS fails to justify its untimely and unduly burdensome request for this second Letter of Request, the Court should deny the Motion.

## II.    Statement of Facts

The litigation between NS, Sarepta, and UWA involves allegations of patent infringement by NS's product Viltepso® and Sarepta's product Vyondys 53®, with defenses of non-infringement and invalidity. Both products are antisense oligonucleotides (ASOs) approved in the United States for the treatment of Duchenne muscular dystrophy (DMD). NS commenced this litigation in July 2021. Central to this dispute are NS's defenses to Sarepta's claim of infringement of patents owned by UWA and licensed by Sarepta (the "Wilton patents"). NS has also asserted seven patents in this action, which are referred to as the "NS patents."[2]

### A.    The Wilton Patents

The Wilton patents are the result of years of research, beginning prior to 2004, conducted in Dr. Wilton's research group by Drs. Wilton, Fletcher, and McClorey who were, at the time, employed by UWA. In collaboration, these scientists pioneered the use of ASOs to overcome

---

[1] On the eve of a period wherein the parties were scheduled to take approximately 20 party and inventor depositions, NS noticed its intent to depose and seek documents from Sarepta's contract manufacturer, ███████████████ Sarepta's patent prosecution counsel, UWA's former employees Penny Meloni and Abbie Adams, and Sarepta's former employees Diane Frank, Richard Bestwick, Peter Sazani and Ryzsard Kole. D.I. 208, 211, 215.

[2] UWA is an Australian research university that joined this case to address any perceived standing deficiency in connection with Sarepta's infringement counterclaims. UWA's discovery obligations should be proportional with that limited involvement in the case.[3] The parties recently agreed to a stipulation extending certain discovery dates, but the stipulation explicitly did not change the date for the close of fact discovery. D.I. 269.

certain dystrophin gene defects causing DMD, launching research in this area by many others. Through the dedicated research of Drs. Wilton, Fletcher, and McClorey, a non-provisional patent application was filed on June 28, 2005, which opened the door for decades of research and innovation in the area of ASOs for treatment of DMD. Drs. Wilton and Fletcher continued their research in this area at UWA for nearly another decade.

Ultimately, all the researchers left UWA to continue pursuing similar lines of research elsewhere. In 2013, Drs. Wilton and Fletcher moved from UWA to Murdoch University in Perth, Australia, where they continued their research in the same area. Dr. Fletcher then left Murdoch University in about 2020.

### B.    The Ongoing Litigation and this Motion

This litigation between the parties has been pending for over two years. NS has been aware of Dr. Fletcher, who it identified in its complaint, all along. *See, e.g.*, D.I. 2, ¶ 39. Pursuant to the case schedule, substantial completion of document production was to have occurred in January 2023 and the close of fact discovery is set for today, eight days after this Motion was filed.[3]



---

[3] The parties recently agreed to a stipulation extending certain discovery dates, but the stipulation explicitly did not change the date for the close of fact discovery. D.I. 269.

NS has already taken depositions regarding these facts. Dr. Wilton, another non-party based in Australia, produced documents ████████████████████████████████ ██████ In addition, Dr. Wilton traveled to the United States from Australia, for a deposition six weeks ago. Dr. Wilton was designated as a 30(b)(6) witness on behalf of both Sarepta and UWA on multiple topics relating to the Wilton patents, ████████████████████████████████.[4] In short, NS already received and/or had the opportunity take substantial discovery relating to the Wilton patents, ████████████████████████████████.

Despite the extensive documents that Sarepta, UWA, and Dr. Wilton have produced, the numerous depositions that have been taken or will occur, and time the parties have had for discovery, NS now has decided to burden yet another non-party with overbroad, duplicative, and untimely discovery requests. This comes on the heels of a hectic few months of discovery in which NS has served many former Sarepta and UWA employees—some of whom are retired—with unnecessary and overly broad non-party discovery. D.I. 208, 211. It also comes seven weeks after NS filed a first motion for a Letter of Request seeking non-party discovery from two different former UWA lab workers located in Australia. D.I. 215. After striking out with the Special Master in its initial attempt to elicit court intervention to compel Dr. Fletcher's testimony, NS now seeks discovery from yet another non-party Australian national who, like the other non-party Australian nationals targeted by the first Letter of Request, worked with Dr. Wilton in the same lab. This Motion is therefore untimely, unduly burdensome, not proportional to the needs of the case, and cumulative of discovery NS could have obtained through other means.

---

[4] Although NS now complains that his testimony lacked requisite detail, as set forth below, NS did not inform Sarepta of these alleged deficiencies or seek to keep that deposition open.

## III.    Legal Standard

For a motion to issue a Letter of Request, the "party seeking application of the Hague Convention proce[dures] bears the burden of persuading the Court of its necessity." *Purdue Pharma Prods. L.P. v. Par Pharms., Inc.*, No. 07–255–JJF, 2008 WL 3926158, at *1 (D. Del. Aug. 26, 2008); *see also Ingenico Inc. v. Ioengine, LLC*, No. 18-826-WCB, 2021 WL 765757, at *1 (D. Del. Feb. 26, 2021) (same). In evaluating the necessity for a Letter of Request, "a court must limit the frequency and extent of discovery that can be obtained from sources less burdensome or less expensive, or if it determines that the burden or expense of the proposed discovery outweighs its likely benefit." *Purdue,* 2008 WL 3926158 at *2 (citing Fed. R. Civ. 26(b)). Keeping in mind "the system's cumbersome nature," courts will deny motions "where the relevancy or materiality of the testimony sought is doubtful." *Route1 Inc. v. AirWatch LLC,* No. 17-0331-RGA, 2018 WL 6427145, at *1 (D. Del. Dec. 7, 2018). And although the Third Circuit has explained that a district court must provide some reason for denying a motion for Letter of Request, it nonetheless "decline[d] to hold that a trial court must expressly set forth a 'good reason' for den[ial]." *Complaint of Bankers Trust Co.*, 752 F.2d 874, 890 (3rd Cir. 1984).

Because Letters of Request are a "complicated, dilatory and expensive system," courts apply a five-factor test "relevant to any comity analysis." *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for Southern Dist. of Iowa*, 482 U.S. 522, 531, 544 n.28 (1987). The five factors are:

> (1) the importance to the … litigation of the documents or other information requested;
> (2) the degree of specificity of the request;
> (3) whether the information originated in the United States;
> (4) the availability of alternative means of securing the information; and

6

> (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

*Id.*

A proper application of the "five-factor test requires a particularized analysis of the facts of a case, the sovereign interests involved, and the likelihood that resorting to the Hague Convention will prove effective." *Ingenico, LLC,* 2021 WL 765757 at *1; *see also Fraunhofer-Gesellschaft Zur Forderung der angewandten Forschung e.V. v. Sirus XM Radio Inc.*, No. 17-184-JFB-SRF, 2021 WL 861493, at *2 (D. Del. Mar. 8, 2021) ("Accordingly, the Supreme Court has directed federal courts to employ a case-by-case analysis to determine whether the use of the Hague Convention is the appropriate tool for obtaining evidence in a given proceeding.").

Importantly, courts consider the timeliness of such requests in view of the "complicated, dilatory and expensive" nature of the process. *Merck*, 2013 WL 12203112 at *4. When a party files a motion for a letter of request close to the close of fact discovery, this "counsels against the issuance of the letters rogatory." *Id.*

## IV.    Argument

NS's Motion is untimely, which alone is grounds for denial. *See Merck,* 2013 WL 12203112 at *4 ("[T]he Court must consider the timeliness of the request for issuance of the letters rogatory."). Moreover, NS's Motion provides only a cursory analysis of the *Aerospatiale* factors, relying mainly on conclusory statements. *See generally* D.I. 215. Without any meaningful substantive analysis, NS fails to meet its "burden of persuading the Court of [the Letter of Request's] necessity." *Purdue,* 2008 WL 3926158 at *1. This also warrants denial of NS's Motion. *Id.* Further, as shown below, an analysis of the five *Aerospatiale* factors further demonstrates the futility of NS's attempt to seek this untimely discovery in Australia.

### A.    The Motion Is Untimely

NS's motion is untimely and should be denied for this reason alone. *See Merck,* 2013 WL 12203112 at *4 ("[T]he Court finds that the timeliness factor also counsels against issuance of the letters rogatory."). After more than two years of litigation, NS filed this Motion just eight days before today's close of fact discovery. D.I. 269. But NS has been aware that Dr. Fletcher is a named inventor of the Wilton patents since at least July 2021, when it filed its complaint asserting, *inter alia*, invalidity and non-infringement of the Wilton patents. D.I. 2. NS also should have been aware that Dr. Fletcher is located in Australia and has not worked at UWA for a decade. In other words, NS has known since the start of this litigation that if it wanted discovery from Dr. Fletcher, it would need to seek such discovery through a Letter of Request. Yet NS waited until now.

Months after the substantial completion of document production and only two months before the close of fact discovery, NS attempted to compel Sarepta and UWA to make Dr. Fletcher available for a deposition. D.I. 226. The Special Master denied NS's motion to compel, because the agreement with UWA that Dr. Fletcher "executed does not contain any specific language obligating [her] to testify in any legal proceeding or appear for a deposition." D.I. 254 at 12. Finally, with the close of fact discovery just days away, NS has belatedly decided to try the time-consuming Letter of Request process.

NS's Motion is precisely the type of motion the courts have rejected as untimely. *See, e.g., Merck,* 2013 WL 12203112 at *4 (denying motion for letters rogatory where the motion was filed "with less than two months left before the close of discovery" and "with dispositive motions due approximately six months from now"); *Ioengine,* No. 18-452-WCB, Slip. Op. at 3   (denying motion for issuance of a letter of request because "PayPal's lack of diligence counsels against granting the motion"); *Haarslev*, 2022 WL 16709716 at *1 (denying motion for issuance of letters rogatory because "granting Plaintiff's request would result in a significant extension of both the

discovery and dispositive motion deadlines"); *Roc Nation LLC v. HCC International Insurance Co., PLC,* 19 Civ. 554 (PAE), 2020 WL 3170886, at *1 (S.D.N.Y. June 15, 2020) (denying motion for letter of request because "HCC was aware of the potential for international discovery related to Bretton Woods from the beginning of this suit" but failed to move for the request in a timely manner); *Barton,* 2014 WL 12633500 at *3  (denying motion for letter of request as untimely where the movant "waited until January 31, 2014 to finally submit this application—three days before the close of discovery").The parallels between this case and cases rejecting similar motions as untimely are apparent. NS waited until just over a week was left in fact discovery to file this Motion. The final date for dispositive motions is less than six months away. And NS has known about Dr. Fletcher since at least the filing of its complaint more than two years ago. These are all reasons to deny the Motion as untimely.

Any discovery NS can hope to get through the Letter of Request process will come several months after the close of fact discovery at the earliest and, in all likelihood, during or after expert discovery. Such late discovery will undoubtedly have a significantly negative impact on the case schedule, including dispositive motions and trial.[5] NS has not shown that "the evidence sought is of such material value that the time-consuming process of obtaining the evidence outweighs the negative impact on the scheduling order." *Haarslev*, 2022 WL 16709716 at *1. As such, in view of the upcoming case deadlines, the Motion should be denied. *See Merck,* 2013 WL 12203112 at

---

[5] NS says in its Motion for Expedited Briefing, without support or prior notice to the parties, that it intends to take the depositions of the other two former UWA employees in Australia the week of August 21. D.I. 275 at 1. We understand that Ms. Adams has not received notice of this apparent deposition date and that neither the Western Australian Supreme Court nor Federal Court have provided any publicly available information regarding this supposed deposition date, or even the hearing that must precede it. Although NS has not disclosed the basis for its statement that the depositions will occur in August, to the extent NS has communicated with any authority in Australia about these depositions, it has been without notice to Sarepta, UWA, or Ms. Adams.

*4 ("In light of the likelihood that the letters rogatory will require an extension of discovery, and in light of the compressed schedule in this Hatch-Waxman case, with dispositive motions due approximately six months from now, the Court finds that the timeliness factor also counsels against issuance of the letters rogatory.").

The untimeliness of NS's request is aggravated by its failure to seek an extension of fact discovery. *See Barton,* 2014 WL 12633500, at *3 ("Plaintiffs also failed to move for an extension of fact discovery…. Plaintiffs' motion for issuance of letters rogatory is untimely and should be denied."); *Cardiovascular Systems, Inc. v. Cardio Flow, Inc.,* 0:18-cv-1253-SRN-KMM, 2020 WL 6262378, at *3 (D. Mn. May 6, 2020) ("CSI could have moved to extend the discovery deadline at that time to accommodate the deposition of Ms. Nadirashvili then, but did not.").

NS's failure to even raise the obvious timing issue with the Court—that any Letters of Request issued would be resolved well beyond the close of fact discovery—further warrants denying this motion. *See Bombardier Recreational Products, Inc. v. Arctic Cat, Inc.,* No. 12-cv-2706 (MJD/LIB), 2014 WL 10714011, at *5 (D. Minn. Dec. 5, 2014) (denying motion for issuance of letters rogatory where, among other things, "Arctic Cat did not mention either Mr. Leblanc or Mr. Talbot in the parties' subsequent, stipulated request for a second extension of the fact discovery period to complete six of the outstanding, previously noticed, depositions in October").

## B.    The *Aerospatiale* Factors Favor Denial

### 1.    The Untimeliness of the Motion Negates any Argument That the Information Sought Is Important to the Litigation

NS's decision not to seek this Letter of Request during the earlier stages of discovery outweighs any alleged importance to the case of the discovery sought. *See Cardiovascular Systems,* 2020 WL 6262378 at *1 (denying motion for issuance of a letter rogatory as untimely even where the court agreed the target of discovery was "an important figure in the factual

10

landscape that underlies this litigation"); *Bombardier,* 2014 WL 10714011 at *7 ("Regardless of whether Messrs. Leblanc and/or Talbot possess discoverable, relevant information, Arctic Cat's attempt to secure letters rogatory for Messrs. Leblanc and Talbot is grossly overdue."). NS provides no adequate justification for its untimely Motion.

NS has known of Dr. Fletcher's role as an inventor for years, as is clear from its complaint. Despite her alleged importance, NS decided not to seek discovery through a Letter of Request earlier. NS now appears to regret this decision, but this should not prejudice Sarepta, UWA, or Dr. Fletcher. *See Cardiovascular Systems,* 2020 WL 6262378 at *3 ("Though CSI chose not to [pursue a letter of request earlier in the litigation] due to costs, this represents a strategic litigation decision; the fact that CSI now regrets this decision is not a reason for the Court to retroactively modify its scheduling order."). Nor does Dr. Wilton's deposition or document production change the equation. NS was aware of Dr. Fletcher's role before any information was exchanged during discovery. If NS wanted discovery from Dr. Fletcher, it should have acted in a timely manner. *See id.* ("Even if the Court had found that Mr. Petrucci's deposition constituted a sea change in this litigation—an argument that this Court has already rejected—CSI should have acted more quickly.").

NS's failure to obtain discovery from Dr. Fletcher over the past two years does not excuse its conduct. Factor one weighs in favor of denial.

2.    **The Degree of Specificity of the Document Requests and Deposition Topics Is Lacking**

The breadth of subject matter covered by the proposed document requests and deposition topics is staggering, including years of work done long after Dr. Fletcher left UWA. D.I. 274-1, Ex. A at 8-10. The first document request seeks essentially every non-privileged document relating

11

to exon 53 skipping without any date cutoff. D.I. 274-1, Ex. A at 8. The request is not "tailored" to any claims or defenses in a litigation involving patents with a 2005 effective filing date.

Other requests are similarly overbroad. For example, many requests are either unbounded in time and subject matter (i.e., "work, experiments, tests, or studies relating to DMD") or cover unnecessarily broad time periods (i.e., "2003-2012"). D.I. 274-1, Ex. A at 8-10. NS provides no explanation as to how its broad discovery requests and deposition topics—targeting information covering decades of work, information about fellow employees in Dr. Wilton's lab, unrelated articles and patents published years after the Wilton patents' effective filing date, or essentially any work that could possibly be conducted in Dr. Wilton's lab—are related to "NS's challenge to the validity and unenforceability of the UWA patents and its pending inequitable conduct defense and counterclaim." D.I. 274 at 6. Because NS fails to provide any justification for such "sweeping" testimony, the Motion "fails the second factor in *Aerospatiale*'s five-factor test." *Ingenico Inc. v. Ioengine, LLC*, No. 18-826-WCB, 2021 WL 765757, at *4 (D. Del. Feb. 26, 2021).

### 3.    The Information NS Seeks Did Not Originate in the United States

The information NS Pharma seeks did not originate in the United States. NS concedes as much. *See, e.g.*, D.I. 274 at 7-8 ("Although the testimony relates to information that originated outside of the United States—Dr. Fletcher performed her work in Australia…"). Factor three therefore weighs in favor of denial. *Ingenico, LLC,* 2021 WL 765757 at *3; *Dyson, Inc. v. SharkNinja Operating LLC*, No. 14-779, 2016 WL 5720702, at *3 (N.D. Ill. Sept. 30, 2016) ("Finally, the information did not originate in the United States, and this factor weighs against issuing the Letters Rogatory.").

**4.      NS Ignored Alternative Means of Securing the Information**

Any relevant, non-privileged information NS is seeking from Dr. Fletcher in Australia has been, or could have been, obtained through discovery in the United States. Sarepta gathered and made available to NS ████████████████████████████████████████████ ███████████████████████. Moreover, Dr. Wilton (another non-party) travelled from Australia to the United States and was deposed by NS. And Dr. Wilton further agreed to be a 30(b)(6) witness on numerous topics relating to the Wilton patents. ████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████████████████████

NS had the opportunity to ask Dr. Wilton about each of the topics for which he was designated. NS did not hold Dr. Wilton's deposition as open or otherwise complain to Sarepta or UWA about his preparedness. NS's motion is the first indication Sarepta has received that Dr. Wilton's deposition was allegedly inadequate. Moreover, Sarepta had no reason to believe Dr. Wilton's deposition was inadequate. Even the limited portion of Dr. Wilton's transcript NS includes with its motion contradicts NS's claims that Dr. Wilton did not recall Dr. Fletcher's role in the lab. ████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████ In addition, NS could have asked further questions relating to

Dr. Fletcher's contributions, yet it chose not to. NS's lack of diligence in pursuing these lines of questioning should not now prejudice Sarepta or allow it to burden Dr. Fletcher.

NS nonetheless speculates that Dr. Fletcher "must" possess other unique information about the Wilton patents. D.I. 274 at 4-8. NS's speculation does not warrant burdensome, untimely foreign discovery that could have been obtained from a party through the witness it designated. *Route1 Inc. v. AirWatch LLC,* No. 17-0331-RGA, 2018 WL 6427145, at *1 (D. Del. Dec. 7, 2018) ("Defendant does little to address why Plaintiff is not a sufficient source of the documents Plaintiff allegedly provided to Fiera and De Jong."); *Purdue Pharma Prods. L.P. v. Par Pharms., Inc.*, No. 07–255–JJF, 2008 WL 3926158, at *2 (D. Del. Aug. 26, 2008) ("Similarly, the Court concludes that the remaining topics of examination…are insufficiently relevant to the present action to justify the burden and expense they would impose, especially in light of the fact that much of the information sought has already been produced or is publicly available.").

Even if NS did not already have the relevant and non-privileged documents regarding the Wilton patents in its possession, much of the information it seeks from Dr. Fletcher was or could have been obtained through Dr. Wilton. Dr. Wilton and Dr. Fletcher worked together in the same laboratory. Dr. Wilton is an inventor of the Wilton patents. D.I. 274 at 2. And Dr. Wilton is an inventor listed on the unrelated, unasserted patent application cited by NS, PCT/AU2010/001520. D.I. 274-1, Ex. A at 10. Any documents or testimony NS could hope to obtain from Dr. Fletcher would be duplicative of testimony it already obtained, or could have obtained, from Dr. Wilton. *See Merck*, 2013 WL 12203112 at *4 ("Defendants have already noticed or taken depositions of the four inventors of the patent-in-suit who were also named inventors on the '147 and WO '679 patents.").

14

Because NS has failed to show it cannot obtain the information it seeks from party and voluntary discovery in the United States, factor four weighs in favor of denial.

       **5.**       **Whether Compliance Undermines Australian Law or Noncompliance Would Undermine American Law Is Neutral**

The issues of comity here are neutral. NS argues that the United States' interests in fully and fairly litigated lawsuits is sufficient for this fact to weigh in its favor. D.I. 274 at 7. Aside from a conclusory one sentence statement that Australia will make a decision on the "specific questions," it says nothing about Australia's interests. *Id.* Under NS's reasoning, this factor would weigh in favor of the movant 100% of the time. But that is illogical—a factor that always weighs in favor of one party is not a factor to consider at all. Because NS provides no substantive analysis regarding this factor, it is neutral.

Accordingly, in addition to the lack of timeliness of this Motion, four of the five *Aerospatiale* factors weigh in favor of denial and the final factor is neutral. Because NS has failed to justify its untimely, burdensome, duplicative, request for discovery, its request should be denied.

## V.    **Conclusion**

The Court should deny NS's Motion for the Issuance of a Request for International Judicial Assistance asking the Court to issue the proposed Letter of Request to the Competent Authority of Australia.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

OF COUNSEL:

Charles E. Lipsey
J. Derek McCorquindale
Ryan P. O'Quinn
L. Scott Burwell
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, LLP
1875 Explorer Street, Suite 800
Reston, VA  20190-6023
(571) 203-2700

William B. Raich
Michael J. Flibbert
John M. Williamson
Yoonhee Kim
Yoonjin Lee
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC  20001-4413
(202) 408-4000

Alissa K. Lipton
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, LLP
Two Seaport Lane
Boston, MA  02210-2001
(617) 646-1600

July 27, 2023

Jack B. Blumenfeld (#1014)
Megan E. Dellinger (#5739)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mdellinger@morrisnichols.com

*Attorneys for Defendant/Counter-Plaintiffs*
*Sarepta Therapeutics, Inc. and The University of*
*Western Australia*

16

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 27, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on July 27, 2023, upon the following in the manner indicated:

Amy M. Dudash, Esquire                                           *VIA ELECTRONIC MAIL*
MORGAN, LEWIS & BOCKIUS LLP
1201 North Market Street, Suite 2201
Wilmington, DE  19801
*Attorneys for Plaintiff*

Amanda S. Williamson, Esquire                             *VIA ELECTRONIC MAIL*
Christopher J. Betti, Esquire
Krista Vink Venegas, Esquire
Maria E. Doukas, Esquire
Michael T. Sikora, Esquire
Zachary Miller, Esquire
Guylaine Haché, Ph.D.
Wan-Shon Lo, Esquire
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive, Suite 2800
Chicago, IL  60606
*Attorneys for Plaintiff*

Eric Kraeutler, Esquire                                           *VIA ELECTRONIC MAIL*
Alison P. Patitucci, Esquire
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103
*Attorneys for Plaintiff*

Jitsuro Morishita, Esquire
MORGAN, LEWIS & BOCKIUS LLP
16F, Marunouchi Building,
2-4-1 Marunouchi, Chiyoda-ku
Tokyo, 100-6316 Japan
*Attorneys for Plaintiff*

*VIA ELECTRONIC MAIL*

*/s/ Jack B. Blumenfeld*

_____
Jack B. Blumenfeld (#1014)

2