# EXHIBIT 2

[BoxInterferences@uspto.gov](mailto:BoxInterferences@uspto.gov)   Entered: September 29, 2015
Tel: 571-272-4683

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

PATENT TRIAL AND APPEAL BOARD
_____

**University of Western Australia,**
Junior Party
(Patent 8,486,907,
Inventors: Stephen Donald Wilton, Sue Fletcher and Graham McClorey),

v.

**Academisch Ziekenhuis Leiden**,
Senior Party
(Application 14/198,992,
Inventor: Judith Christina Theodora van Deutekom).

_____

Patent Interference No. 106,013 (RES)
(Technology Center 1600)

_____

Before: RICHARD E. SCHAFER, SALLY GARDNER LANE and DEBORAH KATZ, *Administrative Patent Judges.*

SCHAFER, *Administrative Patent Judge*.

1 **Decision - Priority - 37 CFR § 41.125(a)**

2 **I.**

3   This interference is between Patent 8,486,907, assigned to the University of
4 Western Australia (UWA), and Application 14/198,992, assigned to Academisch
5 Ziekenhuis Leiden (AZL). UWA was put under an Order to Show Cause why
6 judgment on priority should not be entered against it. Paper 193. Because UWA,
7 has not satisfied its burden of establishing prima facie that it is has a basis that

would entitle it to a judgment on priority relative to senior party AZL, we enter judgment on priority against UWA.

## II.

The subject matter claimed by the parties is directed to methods for inducing "exon skipping." Exon skipping is a molecular biology technique that may be useful for ameliorating or eliminating the effects of certain genetic mutations. Those mutations may result in a shift in the reading frame during protein formation resulting in a non-functional or partially functional protein. The exon skipping technique, in effect, hides certain pre-mRNA exons from the mRNA formation machinery. As a result, the hidden exon is removed along with introns during the splicing that forms mRNA. Exon skipping is caused by binding an oligonucleotide complementary to a particular pre-mRNA exon. The complimentary oligonucleotide is referred to as an antisense oligonucleotide or "AON." Both the exon to be discarded and the AON are chosen to restore an open reading frame allowing for the formation of a more complete and more functional protein.

Specifically, in the parties' invention, the AON is selected to cause skipping of exon 51 of the pre-mRNA associated with the gene that is responsible for the formation of the protein dystrophin. The absence of dystrophin prevents skeletal muscle development and causes the myopathies of muscular dystrophy. In those suffering from Duchenne muscular dystrophy, the mutation in the dystrophin gene essentially precludes the formation of functional dystrophin. By skipping, and thus removing, exon 51 during the formation of mRNA, a reading frame is said to be restored, resulting in the formation of a partially functional dystrophin protein.

The subject matter of this interference is defined by Count 1:

> Claim 1 of [AZL] Application 14/198,992 or Claims 1, 19, 22 or 25 of [UWA] Patent 8,486,907.

Paper 1, p. 4.

UWA addresses its arguments to the count alternative of AZL's Claim 1. Thus, for the purpose of this opinion, it is only necessary to consider AZL's Claim 1. That claim provides:

> 1. A method for inducing the skipping of exon 51 of the human dystrophin pre-mRNA, said method comprising providing an oligonucleotide of 20 to 50 nucleotides in length to a cell, wherein said oligonucleotide is capable of binding to an exon-internal sequence of exon 51 of the human dystrophin pre-mRNA and inducing skipping of exon 51, wherein h51AONl (UCAAGGAAGAUGGCAUUUCU) (SEQ ID NO: 27) is capable of binding to said exon-internal sequence.

Paper 12, Clean Copy of Claims, 1:3-8.

Both parties were accorded the benefit dates of earlier applications. UWA's earliest effective filing date was that of its Australian Application AU 2004903474 filed June 28, 2004. AZL's earliest effective filing date was that of its PCT Application PCT/NL03/00214 filed March 21, 2003. Paper 1, Declaration, 5:10-23.

### III.
### A.

The subject matter of this interference relates to that involved in Interferences 106,007 and 106,008, also between UWA and AZL. During a telephone conference relating to the '007 and '008 Interferences, UWA requested authorization to file a motion for an additional interference between the patent and application involved here. Neither the '007 nor the '008 Interference involved the application and patent involved in this proceeding. AZL opposed declaring another interference arguing that if UWA wanted an interference it should have to file a reissue application and comply with the interference rules for suggesting an interference (i.e., 37 CFR § 41.202(a), (d) and (e)).

At the time of the conference call, AZL's involved '992 Application had been allowed by the Examiner and was days away from issuing. This left insufficient time to file a motion to declare an additional interference, an opposition, and a reply. Because the claims of UWA's '907 Patent and AZL's '992 Application appeared to be similar, this interference was declared in order to withdraw the application from issue and avoid potentially issuing two patents to the same invention. However, UWA as the junior party requesting an interference, was required, and agreed, to file a motion establishing that an interference existed between the claims of the '907 Patent and the '992 Application and to show that it had a basis to prevail on priority. Paper 1, 2:18-21. The motion had to be sufficient to establish that UWA would prevail on priority if AZL presented no rebuttal argument or evidence. Paper 1, 3:7-8. In other words, UWA was required to show, prima facie, that it had a basis to overcome the senior party's accorded benefit date. These requirements paralleled the procedure an applicant must follow in requesting an interference. *See* 37 CFR § 41.202(a), (d) and (e). Thus, UWA entered this interference facing the same hurdles as a junior party applicant seeking an interference.

UWA filed its motion. Paper 133. AZL opposed. Paper 148. UWA filed a reply. Paper 152.

### B.

UWA's motion (Paper 133) argued that an interference exists between the parties' claims and that all of its claims correspond to the count. Paper 133, 4:1 – 6:12. As to prevailing on priority, UWA argued that AZL's involved claims lack both a written description and an enabling disclosure sufficient to support the breadth of those claims in AZL's involved and parent applications. Paper 133, 11:20 – 14:9. Specifically, with respect to written description, UWA argued that the breadth of AZL's claims was not supported:

4

> AZL's claims are directed to the nascent and highly unpredictable technology of exon skipping AONs intended for therapeutic use. These claims are exceedingly broad, encompassing hundreds of billions, trillions, or incalculable numbers of potential compounds, and rely on functional language to define the claimed genera.

Paper 133, 12:7-10. According to UWA, AZL's single disclosed species of an AON was insufficient to provide a written description of the genus of AON's specified in the claims:

> Despite this breadth and the unpredictability, the AZL applications disclose just a single species of AON allegedly capable of inducing *in vitro* skipping of exon 51, and identifies no structural features common to the members of the genus.

Paper 133, 12: 10-12. With respect to enablement, UWA maintained that AZL's specification failed to "enable a person of ordinary skill in the art to make and use the full scope of the claimed invention without undue experimentation." Paper 133, 12:22-24. UWA argued:

> The various claims of the '992 application cover hundreds of billions, trillions, or incalculable numbers of AONs with significant chemical variability, but the applications disclose just a single AON capable of inducing *in vitro* skipping for exon 51. Exon skipping is extremely unpredictable: changes to the nucleobase sequence, chemical backbone, and internucleotide linkages of the AON all influence the ability of the AON to induce exon skipping. The quantity of experimentation required to determine which AONs are capable of inducing exon 51 skipping *in vitro* is undue.

Paper 133, 13:13-19. UWA further argued that the records of the involved and parent application do not include clinical data or provide evidence of in vivo activity. Paper 133, 13:21 – 14:2. As a result, UWA argued: "[t]he quantity of experimentation needed to use the full scope of AZL's claimed invention to treat patients is staggering." Paper 133, 14:2-3.

**C.**

AZL's Opposition (Paper 148) did not contest that an interference exists between the parties' claimed subject matter or challenge the designated claim correspondence specified in the Notice of Declaration (Paper 1). AZL argued, *inter alia*, that UWA failed to establish that UWA has a basis on which it could prevail on priority. Specifically, AZL argues that UWA did not allege a date of invention earlier than AZL's accorded benefit dates and did not show that AZL is not entitled to those dates. Paper 148, 3:14 – 4:15.

**D.**

A panel of the Board held that UWA had not established a prima facie basis upon which it could prevail on priority. Paper 192, 11:19-23. As a result, UWA was put under an order to show cause why judgment on priority should not be entered against it. Paper 193.

**IV.**

In its response to the Order to Show Cause, UWA presents four reasons it feels justify continuing this interference: (1) UWA's showing of unpatentability of AZL's claims is sufficient to establish priority; (2) this interference should be suspended and the outcome should be contingent on the outcome of Interference 106,008; (3) AZL's involved claims are unpatentable under 35 U.S.C. § 135(b)(1); and (4) AZL's involved claims are unpatentable under 35 U.S.C. § 112, ¶ 1.

**A.**

UWA argues "unpatentability is an appropriate basis to establish priority" over a senior party. Paper 194, 4:8 – 6:16. UWA directs us to MPEP, 6th Ed., Rev. 3, dated July 1997, ¶ 2308.02 (Ex. 2143) and three interference opinions for support of its position. Paper 194, 4:8 – 6:16.

**1.**

The cited portion of the MPEP provided guidance in the application of 37 CFR § 1.608(b). The cited MPEP paragraph and § 1.608(b) have been superseded and have no relevance to this interference.

The referenced rule, 37 CFR § 1.608(b), required that the junior party present evidence that would *prima facie* entitle it to a "judgment" relative to the senior party. Thus the rule required that the junior party

> file evidence which may consist of patents or printed publications, other documents, and one or more affidavits which demonstrate that applicant is *prima facie* entitled to a *judgment* relative to the patentee and an explanation stating with particularity the basis upon which the applicant is *prima facie* entitled to the *judgment*.

37 CFR § 1.608(b) (emphasis added). The rule also required specific showings where the basis for a judgment was priority:

> Where the basis upon which an applicant is entitled to judgment relative to a patentee is priority of invention, the evidence shall include affidavits by the applicant, if possible, and one or more corroborating witnesses, supported by documentary evidence, if available, each setting out a factual description of acts and circumstances performed or observed by the affiant, which collectively would *prima facie* entitle the applicant to judgment on priority with respect to the effective filing date of the patent.

*Id*.

The cited portion of the MPEP explained the showings required § 1.608(b):

> The showing under 37 CFR 1.608(b) must be such as to show that the applicant is *prima facie* entitled to a *judgment* relative to the patentee. Since 35 U.S.C. 135(a), as amended by Public Law 98-622, now gives the Board jurisdiction in an interference proceeding over questions of both priority and patentability, the 37 CFR 1.608(b) showing need not attempt to show prior invention by the applicant, but may instead demonstrate that the applicant would be entitled to a *judgment* against the patentee

7

>on a ground of unpatentability (as, for example, that the claims of the patent which will correspond to the count or counts are unpatentable over prior art or prior public use, or that the patent does not comply with 35 U.S.C.112).

Ex. 2143 (emphasis added). Thus, the rule at least implicitly, if not expressly, and consistent with MPEP ¶ 2308.02 (Ex. 2143), permitted demonstrating entitlement to *judgment* by showing unpatentability in addition to priority.

The interference rules, however, were rewritten in 2004. Section 1.608(b) was replaced with § 41.202. Unlike § 1.608(b), § 41.202(d) specifically requires that the junior party show a prima facie basis for prevailing on priority, rather than prima facie entitlement to a judgment:

> (d) *Requirement to show priority under 35 U.S.C. 102(g)*. (1) When an applicant has an earliest constructive reduction to practice that is later than the apparent earliest constructive reduction to practice for a patent or published application claiming interfering subject matter, the applicant must show why it would prevail on *priority*.

37 CFR § 41.202(d) (emphasis added). Section 41.202(d) specifically requires that priority be shown pursuant to 35 U.S.C. § 102(g). That section provides in relevant part:

> A person shall be entitled to a patent unless -
> *****
> (g)(1) during the course of an interference conducted under section 135 . . . , another inventor involved therein establishes, to the extent permitted in section 104, that before such person's invention thereof the invention was made by such other inventor and not abandoned, suppressed, or concealed it . . . . In determining priority of invention under this subsection, there shall be considered not only the respective dates of conception and reduction to practice of the invention, but also the reasonable diligence of one who was first to conceive and last to reduce to practice, from a time prior to conception by the other.

35 U.S.C. § 102(g).

The MPEP has also been revised and, like § 41.202(d), requires a showing of priority:

> Whenever the application has an earliest constructive reduction-to-practice that is later than the earliest constructive reduction-to-practice of a published application having allowed claims or a patent with which it interferes, the applicant must make a priority showing under 37 CFR 41.202(d)(1).

MPEP, 9th Ed. (March 2014), ¶ 2305.[1]

Thus, under the current procedures, a junior party requesting an interference must show that it is entitled to priority. That showing must be sufficient to support, if unrebutted by the opponent, a determination of priority in favor of the party making the showing. 37 CFR § 41.202(e)(1). Merely showing that the opponent's claims are unpatentable is not enough.

**2.**

UWA asserts that AZL's claims lack both a written description and an enabling disclosure sufficient to support the breadth of its involved claims. Those claims, it is argued' are therefore unpatentable under 35 U.S.C. § 112, first paragraph, entitling AZL to a judgment of priority. Under the facts here, we do not agree.

**a.**

As a condition for continuing this interference, UWA was under the burden of establishing priority over AZL's accorded benefit dates. Priority in an interference is determined on the basis of one or more counts. When an interference is declared, the count or counts are identified and a preliminary determination of priority is made based upon the accorded benefit dates for each

---

[1] This interference was declared September, 29, 2014, after the effective date of the MPEP.

count.  A party is accorded the benefit of the filing date of applications that are proper constructive reductions to practice under 35 U.S.C. § 102(g)(1); 37 CFR § 41.201, definition of "benefit."  An application is a constructive reduction to practice if it includes a described and enabled anticipation under § 102(g)(1) of the subject matter of the count.  *Id.*, definition of "constructive reduction to practice."  The parties are presumed to have invented the interfering subject matter in the order of their accorded benefit dates.  37 CFR § 41.207(a)(1).  The senior party is the inventor presumed under § 41.207(a)(1) to be the first inventor.  37 CFR § 41.201, definition of "senior party."  The senior party's benefit date is important because it is the date the junior party must overcome in showing priority.

Overcoming an opponent's benefit date may be accomplished by showing the incorrectness of an accorded benefit date (i.e., the date of a constructive reduction to practice).  Thus, a junior party may seek the benefit of the filing dates of additional applications and/or attack the senior party's accorded benefit dates.  A junior party may also show priority by establishing priority on the merits (i.e., actual reduction to practice or conception and diligence).

Priority based on a constructive and actual reduction to practice involve similar concepts.  Proof of an actual reduction to practice of a species or embodiment within the scope of the count prior to the opponent's date results in an award of priority against the opponent.  *Medichem S.A. v. Rolabo S.L.*, 437 F.3d 1157, 1169 (Fed. Cir. 2006).  Similarly, a benefit application need only describe a single enabled species or embodiment within the scope of the count to constitute a constructive reduction to practice.  *Hunt v. Treppschuh*, 523 F.2d 1386, 1389 (CCPA 1975) (For the purpose of priority in an interference, where an "application is relied upon as a prior constructive reduction to practice[,] . . . the § 112, first paragraph requirements need only be met for an *embodiment* within the count.")  *See also*, *Falkner v. Inglis*, 448 F.3d 1357, 1362 (Fed. Cir. 2006).

10

**b.**

UWA's attack on the breadth of AZL's claims does not, under the facts here, establish priority with respect to AZL's accorded benefit. AZL is entitled to those dates as long as its involved and benefit applications describe an enabled embodiment meeting all the limitations of the count. *Hunt, supra*; *Falkner, supra*. In order to defeat AZL's accorded benefit dates and show a basis for priority, UWA must establish that AZL's involved and benefit applications do not describe an enabled embodiment meeting the limitations of the count.

UWA has not made that showing. Example 1 of AZL's involved application and each of its benefit applications appear to be identical. Example 1 facially appears to describe all the limitations, and thus "anticipates," the Count alternative of AZL's Claim 1. See Paper 133, 12:10-12. See 37 CFR § 41.201, definition of "constructive reduction to practice." UWA has not asserted that Example 1 in AZL's involved application or AZL's benefit applications does not describe an enabled embodiment meeting all the limitations of AZL's Claim 1 and, therefore, the limitations of the Count. Thus, UWA has not established that AZL is not entitled to the benefit of the dates of its involved and earlier applications, including the March 21, 2003, filing date of its International Application PCT/NL2003/000214. Under these circumstances, UWA's scope argument is insufficient to establish, prima facie, priority over AZL's accorded benefit dates.

**B.**

Referring to our Decision on Motions (Paper 192 at 7:20-25) UWA argues that

> the Board Decision [improperly] assumes the Count in the '013 interference is appropriate to define the interfering subject matter between the parties. It is not, however, because as UWA has explained in the '008 interference, the subject matter defined by the Count is unpatentable to AZL.

11

Paper 194, 8:23 – 9:1

UWA, however, has not requested authorization to file a motion to substitute a more appropriate count for establishing its case for priority. Nor has it sought authorization to file a motion attacking the benefit accorded AZL. *Cf*. 37 CFR § 41.202(d)(2), last sentence.

### C.

UWA refers us to three interference opinions said to support its argument that a showing of unpatentability under § 112, ¶ 1, should be sufficient to prove priority. In each case, like UWA here, the junior party did not assert a date of invention earlier than its opponent's filing date but presented a challenge to the patentability of the senior party's claims under § 112, ¶ 1. Thus, in *Gould v. Hellwarth,* 472 F.2d 1383 (CCPA 1973), the invention was an improved laser. *Id*. at 1384. The junior party Hellwarth asserted that senior party Gould's disclosure did not enable how to make any type of a laser. The CCPA agreed and concluded that Gould's disclosure did not enable how to make a laser. It affirmed the award of priority to Hellwarth.

In *Brown v. Fodo*r, Interference 104,358 (B.P.A.I 1999) (Ex. 2113), Junior Party Brown attacked the filing date of Fodor's patent asserting Fodor's disclosure did not adequately describe or enable the interfering subject matter. Ex. 2113, p. 2. The Board held that Brown failed to establish that Fodor's specification did not satisfy the written description and enablement requirements. Ex. 2113, pp. 6 and 11. Because Brown did not establish that Fodor's involved claims lacked descriptive or enabling support, judgment on priority was awarded against Brown, based on Fordor's earlier accorded benefit date.

In *Tanabe v. Lee*, 2004 W.L. 3217733 (B.P.A.I 2004), the Junior Party Tanabe was authorized to file a motion asserting that Lee's copied claims did not have written descriptive support in Lee's disclosure. The Board granted Tanabe's

12

motion holding that Lee's specification failed to provide written descriptive support for the involved claims. The Board entered judgment against the Senior Party. 2004 W.L. 3217733, *5.

While those cases support the proposition that a showing that claims are unpatentable under § 112, ¶ 1, may be sufficient to disprove the senior party's priority, those cases do not involve the scope argument raised here by UWA. In each case it was asserted that certain claim limitations had no § 112 support, not just that those limitations encompassed more than what was supported by the disclosure. When § 112 support is totally lacking, the senior party's application simply is not a constructive reduction to practice of the involved subject matter. The filing date of the application is not a constructive date of invention. In effect, as to unsupported subject matter, the senior party has no date of invention. By showing that the senior party has no support, the junior party has established "priority" by virtue of its own constructive reduction to practice and filing date.

On the other hand, a junior party's showing that the senior party's claims are broader than permitted by the senior party's disclosure is not sufficient to deprive the senior party of a constructive reduction to practice and an effective filing date where that disclosure describes an enabled embodiment meeting all the count limitations. An application disclosure is a constructive reduction to practice of everything adequately disclosed therein. *See Renz v. Jacob*, 326 F.2d 792, 796 (CCPA 1964). See also *Hyatt v. Boone*, 146 F.3d 1348, 1352 (Fed. Cir. 1998) (The filing of a patent application serves as conception and constructive reduction to practice of the subject matter described in the application). "For the purpose of priority in an interference, where an "application is relied upon as a prior constructive reduction to practice[,] . . . the § 112, first paragraph requirements need only be met for an *embodiment* within the count Section 112, first paragraph." *Hunt*, 523 F.2d at 1389; *Falkners*, 448 F.3d at 1362. An earlier described and

13

1 enabled embodiment remains a constructive reduction to practice of the invention.
2 That described and enabled embodiment is sufficient to defeat the junior party's
3 claim of priority as to the subject matter of the count, notwithstanding the alleged
4 unpatentability of the senior party's claims for undue breadth.

5     UWA has not shown that AZL's involved and parent applications do not
6 describe an enabled embodiment meeting the limitations of the count. As we noted
7 above, Example 1 in AZL's involved and benefit applications, appears to meet the
8 the limitations of the count alternative of AZL's claim 1. See Paper 133, 12:10-12.
9 On this record, AZL has not been shown to lack entitlement to its accorded benefit
10 dates. UWA has failed to show, prima facie, priority as to the subject matter of the
11 count.

12     **D.**

13     Each of UWA's remaining arguments for continuing this interference
14 revolve around the alleged unpatentability of AZL's claims. Thus, UWA argues
15 that AZL's claims are unpatentable under 35 U.S.C. §§ 135(b)(1) and 112, ¶ 1.
16 Paper 194, 11:16 – 14:13. UWA also argues that AZL's involved claims included
17 the same unpatentable limitations as AZL's claims under attack in the '008
18 interference. Paper 194, 6:20 – 11:15.

19     We are not persuaded by these arguments.

20     This interference was requested by UWA. Paper 1, 2:3-5. Because UWA
21 was the apparent junior party, and notwithstanding that it was a patentee, it was
22 required, and it agreed, to file a motion to establish, *inter alia*, why it would prevail
23 on priority:

24         [S]ince the circumstances for declaring this interference
25         are somewhat unusual, UWA is required, and agreed, to file a
26         motion to establish that an interference exists and show that it
27         has a basis to prevail on priority. Cf. 37 C.F.R. § 41.202(a)
28         and (e).

14

> UWA shall file a motion to establish that an interference exists between its '907 patent and AZL's '992 application. The motion shall include the following:
>     (1) a claim chart comparing at least one claim of each party corresponding to the count and show why the claims interfere within the meaning of §41.203(a);
>     (2) Explain in detail why UWA will prevail on priority; and
>     (3) for each application for which benefit has been accorded, provide a chart showing where the disclosure provides a constructive reduction to practice within the scope of the count.
> UWA's motion must establish that it would, if unrebutted, support a determination of priority in favor of UWA.

Paper 1, 2:16 – 3:5.

Pre-AIA 35 U.S.C. § 135(a) authorizes the director to address the issue of multiple claimants for the same patentable invention by declaring an interference to determine which of those claimants was the first inventor. Although issues of patentability may be considered, the purpose of an interference proceeding is to determine priority of invention—to decide who among multiple patent applicants (or applicants and patentees) was the first to invent claimed subject matter. *Minnesota Min. & Mfg. Co. v. Norton Co.*, 929 F.2d 670, 674 (Fed. Cir. 1991). The emphasis on priority is manifest in § 135(a) (emphasis added): "[T]he [Patent Trial and Appeal Board] *shall* determine questions of priority of the inventions and *may* determine questions of patentability."

Whether the Director initiates or continues an interference is discretionary. "The plain meaning of this statute [35 U.S.C. § 135(a)] is clear from the use of the permissive term 'may' that the [Director] has discretion whether to declare an interference." *Barton v. Adang*, 162 F.3d 1140, 1144 (Fed. Cir. 1998).

> Section 135(a) states that the Board shall determine questions of priority once an interference proceeding is declared. This

15

>authority for the Board to determine questions of priority, however, does not vitiate the Director's discretion to begin or discontinue an interference once declared.

*Eli Lilly & Co. v. Board of Regents of the University of Washington*, 334 F.3d 1264, 1267 (Fed. Cir. 2003). The Director's discretion in interferences has been delegated to the Board. 37 CFR § 41.203(b).

Long established PTO practice requires a junior party requesting an interference to present a basis on which it could prevail on priority before allowing an interference to proceed. *E.g.*, *Ewing v. United States ex rel. The Fowler Car Company*, 244 U.S. 1 (1917) (Upholding the Commissioner of Patents' authority to decline proceeding with an interference where the junior party did not present circumstances showing a date of invention prior to the filing date of the opponent); *Kistler v. Weber*, 412 F.2d 280, 283-85 (CCPA 1969); *Edwards v. Strazzabosco*, 2001 WL 697944, (Bd. Pat. App. & Inter. 2001). *See also*, 37 CFR § 41.202(a)(4). An interference is not simply a pre-grant opposition or a post-grant cancellation proceeding. It is not simply a vehicle for a junior party to challenge the patentability of a senior party's claims. It is fundamentally, and at center, a priority contest to determine between two or more parties who was the first to invent the interfering subject matter. UWA apparently seeks an interference, not to establish that it was the first to invent, but to show that AZL's claims are unpatentable. We decline to exercise discretion to allow a junior party who has not established a colorable basis for priority to challenge the patentability of the senior party's claims.

As things now stand in this interference, UWA's involved claims are unpatentable under 35 U.S.C, § 102(g)(1) over AZL's subject matter. UWA was given the opportunity and attempted to provide a basis upon which it could prevail on priority. It was not successful in that attempt. Without UWA providing a

16

colorable basis to prevail on priority, its unpatentability assertions alone provide an insufficient basis to continue this interference. We therefore exercise our discretion to discontinue this interference with a judgment against the junior party UWA. In this regard, we note that, in the event AZL's involved application issues, UWA may raise many, if not all, of its challenges by means of a Post Grant Review under 35 U.S.C. § 321.

## V.

UWA has failed to satisfy its burden of showing prima facie entitlement to a judgment of priority. UWA has failed to show cause why judgment should not be entered against it. A judgment will be issued against UWA in a separate paper.

cc (via email):

Attorney for University of Western Australia:
    R. Danny Huntington, Esq.
    Sharon E. Crane, Esq.
    Rothwell, Figg, Ernst & Manbeck P.C.
    dhuntington@rfem.com
    scrane@rfem.com

    Steven P. O'Connor, Esq.
    William B. Raich, Esq.
    Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
    steven.oconnor@finnegan.com
    william.raich@finnegan.com

Attorney for Academisch Ziekenhuis Leiden:
    Timothy M. Murphy, Esq.
    Kathleen M. Williams, Esq.
    Elizabeth N. Spar, Esq.
    Brandon T. Scruggs, Esq.
    Sunstein Kann Murphy & Timbers, LLP
    tmurphy@sunsteinlaw.com
    kwilliams@sunsteinlaw.com
    espar@sunsteinlaw.com
    bscruggs@sunsteinlaw.com