Originally Filed: September 5, 2023
Redacted Version Filed: September 11, 2023

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NIPPON SHINYAKU CO., LTD., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 21-1015 (GBW) |
| | ) |
| SAREPTA THERAPEUTICS, INC., | ) REDACTED - PUBLIC VERSION |
| | ) |
| Defendant. | ) |
| SAREPTA THERAPEUTICS, INC. and THE UNIVERSITY OF WESTERN AUSTRALIA, | ) |
| | ) |
| Defendant/Counter-Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| NIPPON SHINYAKU CO., LTD. and NS PHARMA, INC. | ) |
| | ) |
| Plaintiff/Counter-Defendants. | ) |

**SAREPTA THERAPEUTICS, INC.'S AND THE UNIVERSITY OF
WESTERN AUSTRALIA'S OPENING BRIEF IN SUPPORT OF THEIR
MOTION TO BIFURCATE AND STAY ANTITRUST COUNTERCLAIM**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Megan E. Dellinger (#5739)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mdellinger@morrisnichols.com

OF COUNSEL:

Charles E. Lipsey
J. Derek McCorquindale
Ryan P. O'Quinn
L. Scott Burwell
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
1875 Explorer Street, Suite 800
Reston, VA 20190-6023
(571) 203-2700

*Attorneys for Defendant/Counter-Plaintiffs
Sarepta Therapeutics, Inc. and The University
of Western Australia*

William B. Raich
Michael J. Flibbert
John M. Williamson
Yoonhee Kim
Yoonjin Lee
Kaitlyn S. Pehrson
FINNEGAN, HENDERSON, FARABOW,
   GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC  20001-4413
(202) 408-4000

Alissa K. Lipton
Eric J. Lee, Ph.D.
FINNEGAN, HENDERSON, FARABOW,
   GARRETT & DUNNER, LLP
Two Seaport Lane
Boston, MA  02210-2001
(617) 646-1600

Amanda P. Reeves
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C.  20004
(202) 637-2200

September 5, 2023

## TABLE OF CONTENTS

Page

I.  INTRODUCTION ........................................................................................................... 1

II.  NATURE AND STAGE OF THE PROCEEDING ...................................................... 1

III.  SUMMARY OF ARGUMENT ..................................................................................... 2

IV.  STATEMENT OF FACTS ............................................................................................ 3

V.  LEGAL STANDARD .................................................................................................... 4

VI.  ARGUMENT ................................................................................................................. 4

    A.  Sarepta Will Be Prejudiced If NS's Antitrust Counterclaim Is Not
        Bifurcated and Stayed ....................................................................................... 5

    B.  Bifurcating and Staying the Antitrust Counterclaim Will Enhance Juror
        Comprehension of the Case ............................................................................... 7

    C.  Bifurcation Will Conserve Judicial Resources ................................................. 9

VII.  CONCLUSION ............................................................................................................ 11

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Apotex, Inc. v. Senju Pharm. Co.*,
921 F. Supp. 2d 308 (D. Del. 2013)..................................................................10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..........................................................................................5

*Ductmate Indus., Inc. v. Famous Distribution, Inc.*,
No. 12-CV-1440, 2014 WL 4104810 (W.D. Pa. Aug. 19, 2014)............................7

*Eagle Pharms., Inc. v. Eli Lilly & Co.*,
C.A. No. 18-1121- MSG, 2018 WL 6201704 (D. Del. Nov. 27, 2018) ...........4, 5, 9

*Eurand Inc. v. Mylan Pharms. Inc.*,
C.A. No. 08-889-SLR, 2009 WL 3172197 (D. Del. Oct. 1, 2009)..................4, 7, 9

*Fresenius Kabi USA, LLC v. Fera Pharms., LLC*,
C.A. No. CV-153654-KM-MAH, 2017 WL 2213123 (D.N.J. May 19, 2017) ..................9, 10

*Idzojtic v. Pa. R.R. Co.*,
456 F.2d 1228 (3d Cir. 1972)...........................................................................4

*In re Innotron Diagnostics*,
800 F.2d 1077 (Fed. Cir. 1986)..................................................................5, 7, 8

*Intellectual Ventures I LLC v. Symantec Corp.*,
C.A. No. 13-440-LPS (D. Del. Jan. 27, 2015)....................................................5, 8

*Intravascular Research Ltd. v. Endosonics Corp.*,
994 F. Supp. 564 (D. Del. 1998).......................................................................2

*Masimo Corp. v. Philips Elecs. N. Am. Corp.*,
C.A. No. 09-80-JJF-MPT, 2010 WL 925864 (D. Del. Mar. 11, 2010) .........................*passim*

*Monsanto Co. v. E.I. du Pont De Nemours & Co.*,
No. 4:09-CV-686 ERW, 2009 WL 3012584 (E.D. Mo. Sept. 16, 2009)...........................6, 10

*Nobelpharma AB v. Implant Innovations, Inc.*,
141 F.3d 1059 (Fed Cir. 1998)..........................................................................8

*Orthophoenix, LLC v. Dfine, Inc.*,
C.A. No. 13-1003-LPS, 2015 WL 1938702 (D. Del. Apr. 28, 2015)..........................5, 7, 8, 9

*Otsuka Pharm. Co. v. Torrent Pharms. Ltd.*,
118 F. Supp. 3d 646 (D.N.J. 2015) ...................................................................7, 10

*Princeton Biochemicals Inc. v. Beckman Instruments Inc.*,
180 F.R.D. 254 (D.N.J. 1997) ...................................................................................4

*Quest Integrity USA LLC v. Clean Harbors Industrial Services Inc.*,
C.A. No. 14-1482-SLR (D. Del. Nov. 1, 2016) ......................................................10

*Smith v. Aleyska Pipeline Serv. Co.*,
538 F. Supp. 977 (D. Del. 1982) ...............................................................................4

*TransWeb, LLC v. 3M Innovative Props. Co.*,
812 F.3d 1295 (Fed. Cir. 2016) ..........................................................................8, 11

*Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*,
382 U.S. 172 (1965) ...................................................................................................8

*Westinghouse Air Brake Techs. Corp. v. Siemens Mobility, Inc.*,
330 F.R.D. 143 (D. Del. 2019) ..................................................................................6

**Rules and Statutes**

Fed. R. Civ. P. 42(b) ...........................................................................................................4

Sherman Antitrust Act (15 U.S.C. § 2) ......................................................................2, 3, 8

## I.    INTRODUCTION

Counter-Plaintiffs/Defendants Sarepta Therapeutics, Inc. and the University of Western Australia (collectively, "Sarepta") move to bifurcate and stay all proceedings, including discovery and trial, as to Counter-Defendants/Plaintiff Nippon Shinyaku Co., Ltd. and NS Pharma, Inc.'s (collectively, "NS") antitrust counterclaim (Claim XI) pending resolution of the underlying patent infringement issues in this case.  Because a bifurcation and stay of NS's antitrust counterclaim will promote judicial efficiency, prevent substantial delay and upending of the case schedule due to expensive, time-consuming antitrust fact and expert discovery, and avoid significant juror confusion and resulting prejudice to Sarepta, the Court should exercise its discretion to bifurcate and stay this counterclaim.

## II.    NATURE AND STAGE OF THE PROCEEDING

NS initiated this case over two years ago.  *See* D.I. 1.  Since that time, the parties have engaged in: (i) motion to dismiss briefing (*see* D.I. 32 (Sarepta's Motion to Dismiss Claims II-X of Complaint and to Strike Paragraphs 11, 66 and 69 of the Complaint), D.I. 53 (Sarepta's Motion to Dismiss Claims II-III of Nippon Shinyaku's First Amended Complaint and to Strike Portions of the First Amended Complaint), (ii) multiple amendments of pleadings (*see* D.I. 39 (NS's First Amended Complaint), D.I. 86 (NS's Second Amended Complaint), D.I. 195 (Sarepta's Amended Answer), and (iii) extensive fact discovery on the patent issues, which closed on July 27, 2023. D.I. 269.  Opening expert reports are due on September 8, 2023.  *Id.*  A seven-day jury trial is scheduled to commence on May 13, 2024.

On March 23, 2023, NS filed a motion for leave to file an Amended Answer to Sarepta's Counterclaims ("Amended Answer").  *See* D.I. 177, 178.  During oral argument on August 3, 2023, the Court granted NS's motion for leave to amend to file.  In its Amended Answer, filed September 1, 2023 (D.I. 344), NS asserts counterclaims of inequitable conduct and violations

of the Sherman Antitrust Act (15 U.S.C. § 2) against Sarepta. *Id.* Sarepta now moves to bifurcate and stay discovery and trial as to NS's antitrust counterclaim.[1]

## III.    SUMMARY OF ARGUMENT

Bifurcation and a stay of proceedings on NS's antitrust counterclaim is appropriate here because:

1.  It will avoid prejudice to Sarepta. Fact discovery is already closed, and expert reports are due later this week. Thus, additional, time-consuming fact and expert discovery relating to complex antitrust issues will disrupt the case schedule if the antitrust counterclaim is not bifurcated and stayed. Additionally, if NS is permitted to present evidence related to Sarepta's alleged "monopolization" during the patent infringement trial, such evidence could prejudicially bias the jury when it evaluates the patent infringement claims.

2.  It will enhance jury comprehension by reducing the number of complex issues, the amount of evidence, and the range of legal and technical subjects involved at trial. This is especially so here, where the case already involves *both* NS and Sarepta asserting a total of ten patents against the other.[2] Thus, the jury is already being asked to decide infringement, invalidity, and damages for two sets of patents on complex technology (as well as breach of contract counts). Adding an antitrust claim into an already complex patent infringement trial will only serve to confuse the jury.

---

[1]    Because Sarepta moves to stay the antitrust counterclaim, Sarepta's time to answer NS's counterclaim is tolled. *See Intravascular Research Ltd. v. Endosonics Corp.*, 994 F. Supp. 564, 567 n.3 (D. Del. 1998) ("[M]otions to stay have been recognized as tolling the time period for answering a complaint because pre-answer consideration of these motions have been found to maximize the effective utilization of judicial resources.").

[2]    NS advised Sarepta on Friday afternoon that it will drop one of its asserted patents and two claims from another asserted patent.

3.    Judicial economy weighs strongly in favor of bifurcating and staying the antitrust counterclaim because resolution of the underlying issues of infringement and validity of Sarepta's Asserted Patents has the potential to moot, or at least narrow, the issues in any subsequent antitrust trial.    Thus, to avoid waste relating to expensive, time-consuming antitrust discovery, NS's antitrust counterclaim should be bifurcated and stayed pending resolution of the patent trial.

## IV.    STATEMENT OF FACTS

Both NS and Sarepta have asserted patents and various invalidity defenses against the other, with NS asserting seven patents and Sarepta asserting three patents by way of compulsory counterclaims.    *See* D.I. 86, D.I. 195 & 328.    The parties have also asserted breach of contract claims against each other.    *See* D.I. 86, Count I; D.I. 195 & 328, Counterclaim Count V.

In its Amended Answer (*see* D.I. 344), NS added counterclaims of patent unenforceability due to inequitable conduct and *Walker Process* antitrust violations, predicated on fraudulent patent procurement, against Sarepta.    *Id.*, Counterclaims X, XI.    The *Walker Process* counterclaims are based on NS's allegations that the inventors of Sarepta's Asserted Patents had not actually conceived of, and reduced to practice, the claimed invention as of the date the initial PCT application (from which Sarepta's Asserted Patents claim priority) was filed.    *Id.*    NS alleges that during prosecution of the Asserted Patents, the inventors and prosecuting attorney "withheld and failed to disclose information concerning the lack of conception and reduction to practice" as of the date of the PCT Application.    *Id.*, ¶ 94.    NS additionally alleges that "[b]y attempting to enforce the legal monopoly conferred by [Sarepta's Asserted] Patents, which were obtained by fraud, Sarepta has engaged in monopolization and/or attempted monopolization in violation of the Sherman Act."    *Id.*, ¶ 99.    NS also alleges that, based on alleged fraudulent patent procurement, "Sarepta has engaged in predatory or anticompetitive conduct with a specific intent to monopolize

by attempting to enforce [Sarepta's Asserted] Patents against its only competitor in the market for DMD patients with mutations amenable to exon 53 skipping who have been prescribed with an ASO therapy (the 'Product Market'), Nippon Shinyaku." *Id.*, ¶ 100.

## V.    LEGAL STANDARD

Under Fed. R. Civ. P. 42(b), the Court may bifurcate claims, counterclaims, or any number of individual issues for "convenience, to avoid prejudice, or to expedite and economize." Bifurcation may be appropriate based on a showing of any one of these factors. *See Eurand Inc. v. Mylan Pharms. Inc.*, C.A. No. 08-889-SLR, 2009 WL 3172197, at *1 (D. Del. Oct. 1, 2009) (finding the request for bifurcation "supported by the promotion of judicial economy"). Separate trials may therefore be warranted if the first trial would narrow or simplify issues in the second. *See Eagle Pharms., Inc. v. Eli Lilly & Co.*, C.A. No. 18-1121- MSG, 2018 WL 6201704, at *2 (D. Del. Nov. 27, 2018). For example, one of the purposes of Rule 42(b) is to defer costly and possibly unnecessary discovery on certain issues pending resolution of potentially dispositive preliminary issues. *See Princeton Biochemicals Inc. v. Beckman Instruments Inc.*, 180 F.R.D. 254, 259 (D.N.J. 1997). District courts also have the power to limit discovery on the bifurcated issues. *See Smith v. Aleyska Pipeline Serv. Co.*, 538 F. Supp. 977, 984 (D. Del. 1982). The decision to bifurcate and the manner in which it is carried out lies in the sound discretion of the district court and will not be disturbed on appeal absent an abuse of that discretion. *See Idzojtic v. Pa. R.R. Co.*, 456 F.2d 1228, 1230 (3d Cir. 1972); *Eurand*, 2009 WL 3172197, at *1.

## VI.    ARGUMENT

NS's antitrust counterclaim should be bifurcated and stayed because litigating a complex antitrust counterclaim alongside the patent claims would significantly complicate the case, expand the scope and cost of discovery, cause needless delays, and confuse jurors. Here, "the circumstances do not warrant departure from the Federal Circuit's general guidance that antitrust

and related issues be bifurcated in patent cases, and . . . that judicial economy warrants staying discovery related to these issues." *Intellectual Ventures I LLC v. Symantec Corp.*, C.A. No. 13-440-LPS, D.I. 117 at 1 (D. Del. Jan. 27, 2015) (*citing In re Innotron Diagnostics*, 800 F.2d 1077, 1084 (Fed. Cir. 1986)) (Ex. A).

### A.    Sarepta Will Be Prejudiced If NS's Antitrust Counterclaim Is Not Bifurcated and Stayed

First, the cut-off for fact discovery has already passed more than a month ago without the parties conducting antitrust-specific discovery.  As courts have recognized, antitrust specific discovery "can be voluminous, time-consuming, and expensive." *See Eagle Pharms.*, 2018 WL 6201704, at *3 (internal quotations and citation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558-59 (2007) (cataloging precedent describing the "extensive scope" and "unusually high cost of discovery in antitrust cases"); *Masimo Corp. v. Philips Elecs. N. Am. Corp.*, C.A. No. 09-80-JJF-MPT, 2010 WL 925864, at *2 (D. Del. Mar. 11, 2010) ("Major antitrust litigation is often enormously time-consuming."); *Intellectual Ventures I*, C.A. No. 13-440-LPS, D.I. 117, at 1 (noting that antitrust-related claims and defenses raise "complicated issues potentially involving extensive discovery well beyond what is relevant to the issues of infringement and invalidity") (Ex. A); *Orthophoenix, LLC v. Dfine, Inc.*, C.A. No. 13-1003-LPS, 2015 WL 1938702, at *1 (D. Del. Apr. 28, 2015) (recognizing the "substantial and expensive discovery that is related solely to antitrust issues").

If NS's antitrust claim is not bifurcated, fact discovery will need to be re-opened, causing significant delays and upending the parties' current schedule.  Defending against NS's antitrust claims will require Sarepta to conduct extensive fact discovery into complex issues that have not been the focus of discovery to date, such as whether NS has properly defined a relevant antitrust market, competitive intent, alleged harm to competition, potential competitors to Sarepta and NS,

pricing, product quality, and alleged fraudulent enforcement, requiring the education of additional antitrust counsel. In addition to written discovery document production, third party discovery, and antitrust-focused depositions, the parties would also need to retain additional experts who will need to draft reports relating to antitrust-specific issues. If the antitrust claim is not bifurcated and stayed, Sarepta will be prejudiced because "there is a strong likelihood that consideration of the patent validity issues will be delayed significantly if tried together with the antitrust issues." *Masimo*, 2010 WL 925864, at *2; *see also Westinghouse Air Brake Techs. Corp. v. Siemens Mobility, Inc.*, 330 F.R.D. 143, 149-150 (D. Del. 2019) ("[B]ecause antitrust litigation surely 'holds the potential for enormously costly and time-consuming discovery[,]' were the Amended Counterclaims not severed at this stage, it would almost certainly mean that the current case schedule 'will be entirely displaced[.]'") (internal citations omitted).

Second, Sarepta will additionally be prejudiced during trial if NS is permitted to present evidence regarding its antitrust claim to the jury during the patent trial. For example, NS argues that "Sarepta has engaged in predatory or anticompetitive conduct with a specific intent to monopolize" by attempting to enforce its patents against NS. D.I. 344, ¶ 100. Courts have recognized that such "allegations of monopolization could bias the jury when it evaluates [the patentee]'s patent claims." *See Masimo*, 2010 WL 925864 at *2 (citing *Monsanto Co. v. E.I. du Pont De Nemours & Co.*, No. 4:09-CV-686 ERW, 2009 WL 3012584, at *2 (E.D. Mo. Sept. 16, 2009)). Thus, if a jury hears NS's allegations regarding monopolization during the patent infringement trial, the jury may impermissibly consider such alleged misconduct when assessing the invalidity of Sarepta's Asserted Patents on other grounds, prejudicing Sarepta's ability to receive a fair trial on its patent infringement claims.

6

### B. Bifurcating and Staying the Antitrust Counterclaim Will Enhance Juror Comprehension of the Case

Bifurcation and stay of NS's antitrust claim will enhance jury comprehension by reducing the number of complex issues, the amount of evidence, and the range of legal and technical subjects presented at trial. *See In re Innotron*, 800 F.2d at 1086 (noting that bifurcating the patent and antitrust claims will "*enhance the parties'* right to jury trial by making the issues the jury must consider less complex") (emphasis in original). Indeed, courts have recognized the high risk of juror confusion caused by the consideration of complex antitrust issues alongside complex patent infringement and validity issues. *See Masimo*, 2010 WL 925864, at *2 ("To add such [antitrust] issues to the patent case would pose a difficult task for even the most astute of juries") (internal quotations and citation omitted); *Orthophoenix,* 2015 WL 1938702, at *1 ("There is also a likelihood that, absent a stay, a trial of patent infringement, patent validity, *and* antitrust issues before the same jury may lead to jury confusion.") (emphasis in original); *Eurand*, 2009 WL 3172197, at *1 n.4 ("[T]he complicated legal concepts and technologies at issue in patent infringement and validity disputes provide an ample source of confusion for juries. Such confusion would only be magnified by the esoteric commercial complexities introduced by simultaneously trying an antitrust claim."); *Otsuka Pharm. Co. v. Torrent Pharms. Ltd.*, 118 F. Supp. 3d 646, 659 (D.N.J. 2015) ("Bifurcation of antitrust Counterclaim and patent infringement claims further enhances the parties' right to jury trial by making the issues the jury must consider less complex.") (internal quotations and citation omitted); *see also Ductmate Indus., Inc. v. Famous Distribution, Inc.*, No. 12-CV-1440, 2014 WL 4104810, at *7 (W.D. Pa. Aug. 19, 2014) ("Extraneous evidence increases the risk that the jury will become confused or unfocused.").

This rationale is especially applicable here. The parties are already asserting a combined ten patents, all covering highly technical subject matter (exon-skipping antisense oligonucleotides,

and use of the same for treatment of Duchenne Muscular Dystrophy), implicating various theories of infringement, invalidity, unenforceability, and damages, as well as breach of contract claims. Injecting complex antitrust issues would only serve to confuse the jury.  For example, to prevail on its *Walker Process* fraud claim, NS would have to (1) prove that Sarepta obtained the patents by knowingly and willfully misrepresenting or concealing facts that would have prevented the patents from issuing before the Patent Office and enforced the patents with knowledge of that fraud, and (2) establish the necessary elements of an antitrust claim under the Sherman Act:  (a) that Sarepta engaged in predatory or anticompetitive conduct with (b) a specific intent to monopolize and (c) a dangerous probability of achieving monopoly power.  *See Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 177-78 (1965); *TransWeb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1306 (Fed. Cir. 2016); *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1069 (Fed Cir. 1998).  Thus, to resolve the antitrust claim – in addition to the highly technical and detailed scientific claims included in the numerous patents at issue – the jury would also have to consider complex issues such as the relevant product market, the competitors in that market, alleged market power, Sarepta's alleged willful acquisition or maintenance of such power, Sarepta's decision to bring compulsory counterclaims after first being sued by NS, and NS's alleged antitrust injury and damages, none of which would be resolved by the inequitable conduct claims.  *Id.*  Consideration of such complicated evidence – which would likely consume significant portions of the trial, would require testimony by third party market participants as well as by economic experts, in addition to complex evidence regarding patent infringement and validity – is the reason the "Federal Circuit's general guidance [is] that antitrust issues should typically be bifurcated in patent cases."  *Orthophoenix*, 2015 WL 1938702, at *1 (*citing Innotron*, 800 F.2d at 1084); *see also Intellectual Ventures I*, C.A. No. 13-440, D.I. 117, at

1 (finding that that "the circumstances do not warrant departure from the Federal Circuit's general guidance that antitrust and related issues be bifurcated in patent cases") (Ex. A); *Masimo*, 2010 WL 925864, at *1 ("Bifurcation of patent and antitrust claims is not mandatory, but is common."). "Bifurcation will limit the number of legal issues the jury must address at any particular time and will result in the presentation of evidence in a manner that is easier for the jurors to understand." *See Masimo*, 2010 WL 925864, at *2.

### C.    Bifurcation Will Conserve Judicial Resources

Because NS's antitrust counterclaim will likely be mooted, or at least narrowed, as a result of the trial on the underlying patent infringement claims, bifurcating and staying that claim will conserve judicial resources. *See Eagle Pharms.*, 2018 WL 6201704, at *3 ("A delay of antitrust specific discovery—which courts have recognized can be voluminous, time-consuming, and expensive will avoid potential waste if the claims in the antitrust action are narrowed or mooted by the resolution of the patent infringement action.") (internal quotations and citation omitted); *Masimo*, 2010 WL 925864, at *3-4 (staying discovery as to the antitrust claims where the allegations of the plaintiff's alleged anticompetitive behavior "may be affected by the scope of [Plaintiff]'s patents, which will be determined at the trial of [Plaintiff]'s patent claims"); *Orthophoenix*, 2015 WL 1938702, at *1 ("While there may be considerable overlap between the antitrust and patent issues, there will also likely be substantial and expensive discovery that is related solely to antitrust issues, and which may prove to be largely or entirely unnecessary after resolution of the patent issues."); *Eurand*, 2009 WL 3172197, at *2 (granting motion to sever and stay discovery as to antitrust counterclaims); *Fresenius Kabi USA, LLC v. Fera Pharms., LLC*, C.A. No. CV-153654-KM-MAH, 2017 WL 2213123, at *4 (D.N.J. May 19, 2017) (staying discovery as to the *Walker Process* and sham litigation antitrust counterclaims because if the

patents were found to be valid, "then all of the discovery and litigation on complex issues peculiar to the antitrust counterclaims, such as market definition, anticompetitive effect, and damages, will have been wasted").

If Sarepta's patents are found to be valid and infringed, NS's *Walker Process* counterclaim "would likely be mooted; enforcement of a valid patent does not generally violate the antitrust laws." *Fresenius Kabi*, 2017 WL 2213123, at *4 (severing and staying *Walker Process* counterclaim); *see also Monsanto*, 2009 WL 3012584, at *2 ("A separate trial on Plaintiffs' patent claims has the potential of mooting a number of Defendants' antitrust claims. At a minimum, a trial on Plaintiffs' patent claims will simplify or eliminate Defendants' antitrust claims relating to sham litigation, fraud on the patent office, and misrepresentations of patent rights.").

Thus, because resolution of underlying issues such as infringement, validity, and enforceability has the potential to moot NS's antitrust counterclaim, bifurcation will conserve judicial resources. *See Masimo*, 2010 WL 925864, at *2 ("The court's interest in efficiency also weighs in favor of bifurcation . . . . A trial will determine, at the very least, the validity and scope of Masimo's asserted patents, and the scope of Masimo's patent protection may affect its liability under antitrust laws."); *Apotex, Inc. v. Senju Pharm. Co.*, 921 F. Supp. 2d 308, 314 (D. Del. 2013) ("A stay on antitrust claims may potentially simplify the issues in various ways. For example, if a patent holder ultimately prevails on any of its infringement claims, it would have a legal entitlement to exclude a competitor from the marketplace.") (citation omitted); *Otsuka Pharm.*, 118 F. Supp. 3d at 659 ("[R]esolution of the patent infringement issues may render [Defendant]'s antitrust Counterclaim moot, thereby serving the interests of judicial economy."); *see also Quest Integrity USA LLC v. Clean Harbors Indus. Servs. Inc.*, C.A. No. 14-1482-SLR, D.I. 169, at 1-2 (D. Del. Nov. 1, 2016) (granting motion for leave to file *Walker Process* antitrust

counterclaim, but explaining that "consistent with the court's practice, the antitrust counterclaims are hereby bifurcated, to be tried (if at all) after the Federal Circuit has had the opportunity to review the merits of the patent litigation on appeal") (Ex. B).

Even if NS's antitrust counterclaim is not mooted as a result of the underlying patent infringement trial, it is likely to be significantly narrowed.  Specifically, NS's *Walker Process* fraud claim requires, among other things, a showing that Sarepta knowingly procured a patent by fraud and that the patent would not have been granted absent the fraud, and enforced the patent with knowledge of that fraud.  *TransWeb*, 812 F.3d at 1306.  NS argues that Sarepta made a false claim of priority to the USPTO because it "wanted to avoid the numerous references published after the claimed priority date that would have been material to patentability had the USPTO considered them as prior art."  *See* D.I. 178 at 1.  During the patent infringement trial, however, the jury will have the opportunity to consider Sarepta's reasons for assertion of the priority claim, and why it was not only permissible but also proper.  *See* D.I. 183 at 1–2.  A verdict in Sarepta's favor on this point at the patent trial would be fatal to NS's claim that Sarepta engaged in intentional fraud sufficient to support antitrust liability.

## VII.    CONCLUSION

Sarepta respectfully requests that the Court exercise its discretion under Fed. R. Civ. P. 42(b) to bifurcate and stay proceedings on NS's antitrust counterclaim pending the jury trial on the underlying claims of infringement and invalidity.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Megan E. Dellinger*

_____

OF COUNSEL:

Charles E. Lipsey
J. Derek McCorquindale
Ryan P. O'Quinn
L. Scott Burwell
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, LLP
1875 Explorer Street, Suite 800
Reston, VA  20190-6023
(571) 203-2700

William B. Raich
Michael J. Flibbert
John M. Williamson
Yoonhee Kim
Yoonjin Lee
Kaitlyn S. Pehrson
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC  20001-4413
(202) 408-4000

Alissa K. Lipton
Eric J. Lee, Ph.D.
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, LLP
Two Seaport Lane
Boston, MA  02210-2001
(617) 646-1600

Amanda P. Reeves
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C.  20004
(202) 637-2200

September 5, 2023

Jack B. Blumenfeld (#1014)
Megan E. Dellinger (#5739)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mdellinger@morrisnichols.com

*Attorneys for Defendant/Counter-Plaintiffs
Sarepta Therapeutics, Inc. and The University of
Western Australia*

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on September 5, 2023, upon the following in the manner indicated:

| | |
|---|---|
| Amy M. Dudash, Esquire<br>MORGAN, LEWIS & BOCKIUS LLP<br>1201 North Market Street, Suite 2201<br>Wilmington, DE 19801<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Amanda S. Williamson, Esquire<br>Christopher J. Betti, Esquire<br>Krista Vink Venegas, Esquire<br>Maria E. Doukas, Esquire<br>Michael T. Sikora, Esquire<br>Zachary Miller, Esquire<br>Guylaine Haché, Ph.D.<br>Wan-Shon Lo, Esquire<br>MORGAN, LEWIS & BOCKIUS LLP<br>110 North Wacker Drive, Suite 2800<br>Chicago, IL 60606<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Eric Kraeutler, Esquire<br>Alison P. Patitucci, Esquire<br>MORGAN, LEWIS & BOCKIUS LLP<br>1701 Market Street<br>Philadelphia, PA 19103<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |

*/s/ Megan E. Dellinger*

_____
Megan E. Dellinger (#5739)

EXHIBIT A

**U.S. District Court**
**District of Delaware (Wilmington)**
**CIVIL DOCKET FOR CASE #: 1:13-cv-00440-LPS**

| 01/27/2015 | 117 | ORAL ORDER: Having reviewed the parties' briefing (D.I. 97, 104, 113), IT IS HEREBY ORDERED that IV's motion to bifurcate and stay discovery on Defendant's patent misuse defense (D.I. 96) is GRANTED. While the Court views IV's motion as essentially two motions one to bifurcate for a separate trial, see F.R.C.P. 42(b), and one to stay discovery, to which the general stay factors may be pertinent, see, e.g., Apotex, Inc. v. Senju Pharm. Co., 921 F. Supp. 2d 308, 313-14 (D. Del. 2013) it finds that the circumstances do not warrant departure from the Federal Circuit's general guidance that antitrust and related issues be bifurcated in patent cases, and further finds that judicial economy warrants staying discovery related to these issues. See In re Innotron Diagnostics, 800 F.2d 1077, 1084 (Fed. Cir. 1986). Symantec's patent misuse defense raises complicated issues potentially involving extensive discovery well beyond what is relevant to the issues of infringement and invalidity. (See, e.g., D.I. 97 at 10) (describing broad discovery request) Furthermore, Symantec has raised patent misuse as a defense rather than an independent counterclaim, so the patent misuse issue may well not need to be resolved depending on the outcome of the patent issues (e.g., Symantec may invalidate the patent or be found not to infringe). Accordingly, proceedings, including discovery, relating to Symantec's patent misuse defense are BIFURCATED and STAYED until resolution of the patent claims. In light of these rulings, the request to schedule a discovery teleconference (D.I. 116) is DENIED. ORDERED by Judge Leonard P. Stark on 1/27/15. (ntl) (Entered: 01/27/2015) |

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

QUEST INTEGRITY USA, LLC, )
                               )
          Plaintiff, )
                               )
          v. )    Civ. No. 14-1482-SLR
                               )
CLEAN HARBORS INDUSTRIAL )
SERVICES, INC., )
                               )
          Defendant. )

QUEST INTEGRITY USA, LLC, )
                               )
          Plaintiff, )
                               )
          v. )    Civ. No. 14-1483-SLR
                               )
COKEBUSTERS USA, INC., )
                               )
          Defendant. )

**MEMORANDUM ORDER**

At Wilmington this 1st day of November, 2016, having reviewed the papers

submitted in connection with the various disputes pending in the above captioned

litigation;

IT IS ORDERED that:

1. **Motion to amend.** The motion for leave to file *Walker Process* antitrust

counterclaims filed by defendant Cokebusters USA Inc. ("Cokebusters") (D.I. 152) is

granted, as it was timely filed and sufficiently pled. However, consistent with the court's

practice, the antitrust counterclaims are hereby bifurcated, to be tried (if at all) after the
Federal Circuit has had the opportunity to review the merits of the patent litigation on
appeal.  Any issues related to discovery shall be addressed at that time.

2. **Motion for reconsideration.**  The motion for reconsideration filed by plaintiff
Quest Integrity USA, LLC ("Quest") (D.I. 202) is denied.  The purpose of a motion for
reconsideration is to "correct manifest errors of law or fact or to present newly
discovered evidence." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d
669, 677 (3d Cir. 1999).  A court should exercise its discretion to alter or amend its prior
decision only if the movant demonstrates one of the following:  (a) a change in the
controlling law; (b) a need to correct a clear error of law or fact or to prevent manifest
injustice; or (c) availability of new evidence not available when the decision issued. *See
id.*

3. Quest complains that placing limits on the number of claims it can assert
through expert discovery and trial is prejudicial.  There can be no dispute at this
juncture, however, that a court has the authority "to reasonably limit both the number of
claim terms to be construed and the number of patent claims the parties may assert, 'to
control the dispositions of the causes on its docket with economy of time and effort for
itself, for counsel, and for litigants.'" *Masimo Corp. v. Philips Electronics North America,*
918 F. Supp. 2d 277, 282 (D. Del. 2013).  The court concludes that, by the time the
claim limits were imposed (August 19, 2016), Quest had sufficient information to
choose representative claims:  (a) fact discovery was substantially completed; (b) the
court's claim construction order had issued; and (c) Quest initiated the litigation with a

2

preliminary injunction proceeding, giving the parties a substantial amount of information at the outset. Moreover, Quest did not address, in either its papers or at the September 30, 2016 conference, the issue of how the limit of five claims imposed by the court has prevented Quest from trying all of its representative claims.[1]  *See In re Katz.Interactive Call Processing Patent Litigation,* 639 F.3d 1303, 1309 (Fed. Cir. 2011).  Without such input from Quest, the court declines to find any prejudice in either the limits imposed or the process followed.

4. **October 26, 2016 emergency email.**  Quest complains that, while it is complying with the above claim limits, defendants Cokebusters and Clean Harbors Industrial Services, Inc. ("Clean Harbors") have proposed more than the allowed three prior art references per claim. (Civ. No. 14-1482, D.I. 145; Civ. No. 14-1483, D.I. 194) Unlike using a single reference (e.g., a patent) for purposes of proving anticipation, Clean Harbors and Cokebusters are asserting anticipation by prior use/sales.  The fact that a single prior use/sale may require more than one document to prove its existence and substance does not mean that defendants are relying on more than a single allegedly anticipatory event.  Therefore, so long as the events were timely disclosed, and so long as the documents related to the events were vetted through discovery and clearly relate to the single identified event, the court will not grant any relief at this time.

5. *In camera* **review - representative redacted documents.**  Having reviewed the exemplars (Civ. No. 14-1483, D.I. 257, D.I. 259), the court finds that the redactions

_____

[1]Quest concedes that the patent at issue (the '874 patent) has numerous redundant claims.  Pursuant to the court's August 19, 2016 order (Civ. No. 14-1482, D.I. 145; Civ. No. 14-1483, D.I. 194), Quest has asserted three independent claims and two dependent claims depending from two additional independent claims.

are consistent with its prior rulings regarding the attorney-client privilege and foreign
sales.

      6. *In camera* **review - Stinson Leonard L.L.P. documents.** Exhibits 13 and
14 are protected by the attorney-client privilege. Exhibit 12 is an affidavit executed by a
third party for submission to the Patent & Trademark Office ("PTO") in connection with
the prosecution of the '874 patent. It appears to the court that the affidavit was never
submitted to the PTO and was prepared by someone other than the affiant, presumably
the attorneys. Therefore, the court concludes that the affidavit need not be produced,
as it is protected by the work product doctrine as trial preparation materials, comparable
to a draft report or the facts and opinions held by an expert not expected to be called as
a witness at trial. *See* Fed. R. Civ. P. 26(b)(3)(A) and (4)(B) and (D).

United States District Judge

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 11, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on September 11, 2023, upon the following in the manner indicated:

| | |
|---|---|
| Amy M. Dudash, Esquire<br>MORGAN, LEWIS & BOCKIUS LLP<br>1201 North Market Street, Suite 2201<br>Wilmington, DE 19801<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Amanda S. Williamson, Esquire<br>Christopher J. Betti, Esquire<br>Krista Vink Venegas, Esquire<br>Maria E. Doukas, Esquire<br>Michael T. Sikora, Esquire<br>Zachary Miller, Esquire<br>Guylaine Haché, Ph.D.<br>Wan-Shon Lo, Esquire<br>MORGAN, LEWIS & BOCKIUS LLP<br>110 North Wacker Drive, Suite 2800<br>Chicago, IL 60606<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Eric Kraeutler, Esquire<br>Alison P. Patitucci, Esquire<br>MORGAN, LEWIS & BOCKIUS LLP<br>1701 Market Street<br>Philadelphia, PA 19103<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Jitsuro Morishita, Esquire<br>MORGAN, LEWIS & BOCKIUS LLP<br>16F, Marunouchi Building,<br>2-4-1 Marunouchi, Chiyoda-ku<br>Tokyo, 100-6316 Japan<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |

*/s/ Megan E. Dellinger*

_____

Megan E. Dellinger (#5739)