## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NIPPON SHINYAKU CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1015 (GBW) |
| | ) | |
| SAREPTA THERAPEUTICS, INC. | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| SAREPTA THERAPEUTICS, INC. and THE | ) | |
| UNIVERSITY OF WESTERN AUSTRALIA, | ) | |
| | ) | |
| Defendant/Counter-Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NIPPON SHINYAKU CO., LTD. | ) | |
| and NS PHARMA, INC., | ) | |
| | ) | |
| Plaintiff/Counter-Defendants. | ) | |

### NIPPON SHINYAKU  CO., LTD. AND NS PHARMA, INC.'S OPPOSITION TO SAREPTA THERAPEUTICS, INC. AND THE UNIVERSITY OF WESTERN AUSTRALIA'S MOTION TO BIFURCATE AND <u>STAY ANTITRUST COUNTERCLAIM</u>

Amanda S. Williamson (admitted *pro hac vice*)
Christopher J. Betti (admitted *pro hac* vice)
Krista V. Venegas (admitted *pro hac* vice)
Wan-Shon Lo (admitted *pro hac vice*)
Maria E. Doukas (admitted *pro hac vice*)
Zachary Miller (admitted *pro hac vice*)
Guylaine Haché (admitted *pro hac vice*)
Michael T. Sikora (admitted *pro hac vice*)
110 N. Wacker Drive, Ste 2800
Chicago, IL  60601
Telephone:  312.324.1000
Fax:  312.324.1001
amanda.williamson@morganlewis.com
christopher.betti@morganlewis.com

Amy M. Dudash (DE Bar No. 5741)
Morgan, Lewis & Bockius LLP
1201 N. Market Street, Suite 2201
Wilmington, DE 19801
Telephone:  302.574.3000
Fax:  302.574.3001
amy.dudash@morganlewis.com

*Attorneys for Plaintiff/Counterclaim
Defendant Nippon Shinyaku Co., Ltd. and
Counterclaim Defendant NS Pharma, Inc.*

krista.venegas@morganlewis.com
shon.lo@morganlewis.com
maria.doukas@morganlewis.com
zachary.miller@morganlewis.com
guylaine.hache@morganlewis.com
michael.sikora@morganlewis.com

Eric Kraeutler (admitted *pro hac vice*)
Alison P. Patitucci (admitted *pro hac vice*)
1701 Market Street
Philadelphia, PA  19103
Telephone: 215.693.5000
Fax: 215.963.5001
eric.kraeutler@morganlewis.com
alison.patitucci@morganlewis.com                    <u>Dated</u>:  September 19, 2023

## TABLE OF CONTENTS

**Page**

I.     NATURE AND STAGE OF THE PROCEEDINGS. ....................................................... 2

II.    SUMMARY OF THE ARGUMENT ..................................................................... 3

III.   LEGAL STANDARDS .................................................................................. 3

    A.     Bifurcation Is the Exception, Not the Rule. .............................................. 3

    B.     Staying Discovery Is Inappropriate Absent Extreme Circumstances. .................. 4

IV.    ARGUMENT ........................................................................................... 5

    A.     Sarepta Will Not Be Prejudiced by Having This Case Proceed to a Single Trial Regarding the Patent Claims and NS's Antitrust Counterclaim. ................. 6

    B.     Bifurcation Will Significantly Prejudice NS. ........................................... 8

    C.     Judicial Efficiency Weighs Strongly Against Bifurcation .............................. 11

    D.     A Stay of Discovery Is Not Warranted. ................................................. 14

        1.     The Stay Factors Weigh Strongly Against Staying Discovery Regarding NS's Antitrust Counterclaim. ................................... 14

        2.     No Matter What the Court Decides Regarding Bifurcation, a Stay is Not Warranted. ....................................................... 15

V.     CONCLUSION........................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barnard v. Lackawanna Cnty.*,
Civ. A. No. 3:15-2220, 2016 WL 362424 (M.D. Pa. Jan. 29, 2016) ......................................15

*Climax Molybedenum Co. v. Molychem, L.L.C.*,
414 F. Supp. 2d 1007 (D. Colo. 2005).........................................................................5, 12, 13

*Commodity Futures Trading Com. v. Chilcott Portfolio Mgmt., Inc.*,
713 F.2d 1477 (10th Cir. 1983) ..........................................................................................4

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*,
498 F. Supp. 2d 734 (D. Del. 2007)......................................................................................3

*Dentsply Int'l, Inc. v. New Tech. Co.*,
Civ. A. No. 96-272 MMS, 1996 WL 756766 (D. Del. Dec. 19, 1996) ...............................16

*Ecrix Corp. v. Exabyte Corp.*,
191 F.R.D. 611 (D. Colo. 2000) .........................................................................................15

*EIS, Inc. v. WOW Tech. Int'l*,
Civ. A. No. 19-1227-GBW ............................................................................................10, 11

*Enzo Life Sci., Inc. v. Digene Corp.*,
No. Civ. A. 02-212-JJF, 2003 WL 21402512 (D. Del. June 10, 2003) ...............................15

*FMC Corp. v. Summit Agro USA, LLC*,
No. 14-51-LPS, 2014 WL 3703629 (D. Del. July 21, 2014)..................................................4

*Gen. Tel. & Elecs. Labs., Inc. v. Nat'l Video Corp.*,
297 F. Supp. 981 (N.D. Ill. 1968) .......................................................................................13

*Graudins v. Retro Fitness, LLC*,
921 F. Supp.2d 456 (E.D. Pa. 2013) .....................................................................................6

*Hartford Underwriters Ins. Co. v. Spizzirri*,
No. 1:09-CV-1277-BBM, 2009 WL 10669603 (N.D. Ga. Dec. 11, 2009) ...........................15

*In re Innotron Diagnostics*,
800 F.2d 1077 (Fed. Cir. 1986).................................................................................4, 5, 6, 16

*Johns Hopkins Univ. v. Cellpro*,
160 F.R.D. 30 (D. Del. 1995) .............................................................................................16

*Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*,
No. 1:CV-09-1685, 2011 WL 1627052 (M.D. Pa. Apr. 29, 2011)....................................14, 15

*Laitram Corp. v. Hewlett-Packard Co.*,
791 F. Supp. 113 (E.D. La. 1992)..........................................................................................2

*Liqwd, Inc. v. L'Oreal USA, Inc.*,
Civ. A. No. 17-14-JFB-SRF, 2019 WL 365708 (D. Del. Jan. 30, 2019).............................8

*MFormation Techs., Inc. v. Research in Motion Ltd.*,
No. C 08-04990 JW, 2012 WL 1142537 (N.D. Cal. Mar. 29, 2012) .....................................5

*Netflix, Inc. v. Blockbuster, Inc.*,
No. C 06-02361 WHA, 2006 WL 2458717 (N.D. Cal. Aug. 22, 2006) .................................11

*Nortel Networks Inc. v. Foundry Networks, Inc.*,
No. 01-CV-10442-DPW, 2003 WL 26476584 (D. Mass. Mar. 24, 2003) .......................12, 13

*Orthophoenix, LLC v. Dfine, Inc.*,
Civ. A. No. 13-1003-LPS, 2015 WL 1938702 (D. Del. Apr. 28, 2015)................................10

*Procter & Gamble Co. v. CAO Grp., Inc.*,
No. 1:13-CV-337, 2013 WL 6061103 (S.D. Ohio Nov. 18, 2013) ..........................5, 9, 11, 12

*Real v. Bunn-O-Matic Corp.*,
195 F.R.D. 618 (N.D. Ill. 2000)...............................................................................7, 9, 11

*SenoRx, Inc. v. Hologic, Inc.*,
920 F. Supp. 2d 565 (D. Del. 2013).....................................................................................4, 8

*Sepracor Inc. v. Dey L.P.*,
C.A. No. 06-113-JJF, 2010 WL 2802611 (D. Del. July 15, 2010)...........................................3

*Synopsys, Inc. v. Magma Design Automation*,
No. 05-701 (GMS), 2006 WL 1452803 (D. Del. May 25, 2006) ...................................*passim*

*In re Theodor Groz & Sohne*,
972 F.2d 1352 (Fed. Cir. 1992)................................................................................................5

*THK Am., Inc. v. NSK Co.*,
151 F.R.D. 625 (N.D. Ill. 1993)...............................................................................................8

*United States v. Breyer*,
41 F.3d 884 (3d Cir. 1994)........................................................................................................4

*Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*,
707 F. Supp. 1429 (D. Del. 1989)........................................................................................8, 9

**Other Authorities**

Wright & Miller, Federal Practice and Procedure, 9A Fed. Prac. & Proc. Civ. § 2388 (3d ed. 2023) ...................................................................................................................3

Federal Rule of Civil Procedure 42(b) ..................................................................................3, 4, 6

Plaintiffs Nippon Shinyaku Co., Ltd. and NS Pharma, Inc. (collectively, "NS") oppose the Motion to Bifurcate and Stay Antitrust Counterclaim (D.I. 346) ("Motion") filed by Sarepta Therapeutics, Inc. and the University of Western Australia (collectively, "Sarepta"). The Motion ignores the realities of the instant case and instead offers nothing more than retorts regarding supposed judicial efficiency and purported prejudice resulting from proceeding in the normal course by completing discovery on all claims and counterclaims and proceeding to a single trial with one jury. Sarepta's claims of supposed prejudice and the claimed need to upend the schedule are far overblown. Indeed, once Sarepta's rhetoric is stripped away, the fact remains that the antitrust counterclaims are closely related to the numerous other claims in this case (infringement, invalidity, and inequitable conduct). Juries in this District and beyond routinely hear antitrust claims along with patent infringement and related claims, and there is no unique prejudice to having a jury do so here.

In its Motion, Sarepta points to supposedly "expensive, time-consuming antitrust discovery," yet never tells the Court what discovery is truly necessary, let alone explain why such discovery cannot be accommodated under the current case schedule. The antitrust counterclaims have been added to this case for over a month, and Sarepta has not served a single discovery request related to the antitrust counterclaim, which belies any assertion that such discovery is necessary and as far-reaching as Sarepta argues. Expert discovery regarding the antitrust counterclaim is already underway. NS served its opening expert report regarding antitrust damages weeks ago, and Sarepta can serve a responsive report in accordance with the Scheduling Order on October 5, 2023.

Sarepta's claims regarding the sprawling nature of any antitrust discovery are also far overblown.  So too are its claims of likely juror confusion and supposed judicial efficiency by having not one but two separate trials on related claims.  "In patent cases, as in others, separate trials should be the exception, not the rule."  *Laitram Corp. v. Hewlett-Packard Co.*, 791 F. Supp. 113, 114 (E.D. La. 1992) (collecting cases).  Here, the Court should not make an exception from this well-established rule and instead should allow the case to proceed as contemplated with all claims—including NS's antitrust counterclaim—being tried at the May 2024 trial, with all such discovery regarding these claims being completed as scheduled.

## I.    NATURE AND STAGE OF THE PROCEEDINGS.

On August 3, 2023, this Court granted NS's motion to amend to add counterclaims for inequitable conduct and Walker Process fraud and also granted Sarepta's motion to amend to add an inequitable conduct counterclaim.  *See* D.I. 317.  In granting NS's motion to amend, the Court noted that "because NS's inequitable conduct and Walker Process fraud claims turn on evidence within the patentee's control, i.e., Sarepta, Sarepta will not be prejudiced by NS's proposed amendments."  *See* Ex. A, Aug. 3, 2023 Hr'g Tr., at 36:20-23.  The parties agree that the newly-added inequitable conduct counterclaims should be tried on the current schedule.  However, Sarepta seeks to bifurcate NS's *Walker Process* antitrust counterclaim from the May 2024 scheduled trial in the instant matter and stay any related discovery.

NS timely served its opening expert report regarding its antitrust counterclaim on September 8, 2023.  *See* D.I. 350.  Sarepta's rebuttal expert reports are due to be served on October 5, 2023, with expert discovery closing in November 2023.  *See* D.I. 341.

## II.    SUMMARY OF THE ARGUMENT

Sarepta's Motion should be denied because:

1.      Severance and a stay will only serve to delay resolution of NS's counterclaim, thereby posing significant prejudice to NS while not prejudicing Sarepta.

2.      There is no significant potential for juror confusion to warrant a stay.

3.      It would be an inefficient use of judicial resources to require the patent claims to be tried separately from the antitrust counterclaim where the claims have substantial evidentiary and factual overlap and two trials will require presenting the same evidence multiple times.

4.      A stay of discovery on the antitrust claim at this late stage of the case will only delay eventual resolution of the antitrust counterclaim and is not warranted.

## III.    LEGAL STANDARDS

### A.    <u>Bifurcation Is the Exception, Not the Rule.</u>

"Although the Court has discretion in deciding whether or not to bifurcate a case, bifurcation remains the exception rather than the rule." *Sepracor Inc. v. Dey L.P.*, C.A. No. 06-113-JJF, 2010 WL 2802611, at *3 (D. Del. July 15, 2010) (internal quotation marks omitted). Indeed, federal courts have long adhered to the rule that bifurcation should be ordered only in "exceptional circumstances" because "the piecemeal trial of separate issues in a single lawsuit or the repetitive trial of the same issue in several claims is not to be the usual course." *See* Wright & Miller, Federal Practice and Procedure, 9A Fed. Prac. & Proc. Civ. § 2388 (3d ed. 2023) (collecting authorities); *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 498 F. Supp. 2d 734, 736 (D. Del. 2007) ("[B]ifurcation should be particularly compelling and prevail only in exceptional cases." (quoting *Kos Pharms., Inc. v. Barr Labs.*, 218 F.R.D. 387, 390 (S.D.N.Y. 2003)).

When exercising discretion to consider bifurcation under Federal Rule of Civil Procedure 42(b), "courts should consider whether bifurcation will avoid prejudice, conserve judicial

resources, and enhance juror comprehension of the issues presented in the case." *SenoRx, Inc. v. Hologic, Inc.*, 920 F. Supp. 2d 565, 567 (D. Del. 2013). The "major consideration" under Rule 42(b) "is directed toward the choice most likely to result in a just final disposition of the litigation." *Id.*; *In re Innotron Diagnostics*, 800 F.2d 1077, 1084 (Fed. Cir. 1986). As the party moving for bifurcation, Sarepta bears the burden of demonstrating bifurcation is appropriate. *See SenoRx*, 920 F. Supp.2d at 567.

### B.     Staying Discovery Is Inappropriate Absent Extreme Circumstances.

A stay of litigation regarding a claim is an "extraordinary measure." *United States v. Breyer*, 41 F.3d 884, 893 (3d Cir. 1994). Courts have recognized that "the right to proceed in court should not be denied except under the most extreme circumstances." *Commodity Futures Trading Com. v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983). While a district court has discretion to stay proceedings regarding a claim, "in exercising this discretion, the Court must weigh the competing interests of the parties and attempt to maintain an even balance." *Dentsply Inc. v. Kerr Mfg. Co.*, 734. F. Supp. 656, 658 (D. Del. 1990). Where a requested stay would prejudice the non-movant, the moving party must make "a showing of a clear case of hardship or inequity before the Court can enter a stay order." *Id.*

Courts in this District have typically considered three factors when deciding a motion to stay: (1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay, or allow the movant to gain a clear tactical advantage. *See, e.g.*, *FMC Corp. v. Summit Agro USA, LLC*, No. 14-51-LPS, 2014 WL 3703629, at *2 (D. Del. July 21, 2014).

4

## IV.    ARGUMENT

"There is no universal practice of bifurcating and staying antitrust claims from patent claims in infringement cases."[1]  *Procter & Gamble Co. v. CAO Grp., Inc.*, No. 1:13-CV-337, 2013 WL 6061103, at *2 (S.D. Ohio Nov. 18, 2013) (collecting cases); *see also, e.g.*, *Synopsys, Inc. v. Magma Design Automation*, No. 05-701 (GMS), 2006 WL 1452803, at *4-5 (D. Del. May 25, 2006) (refusing to bifurcate antitrust claims from patent claims and rejecting patentee's argument that other courts routinely do so); *Climax Molybedenum Co. v. Molychem, L.L.C.*, 414 F. Supp. 2d 1007, 1014 (D. Colo. 2005) (denying bifurcation and noting "[b]ifurcation of patent and antitrust claims . . . is not mandated").  Instead, "[i]n patent cases, as in other types of cases, bifurcation is the exception, not the rule." *MFormation Techs., Inc. v. Research in Motion Ltd.*, No. C 08-04990 JW, 2012 WL 1142537, at *1 n.6 (N.D. Cal. Mar. 29, 2012) (internal quotation marks omitted).

---

[1] Sarepta's argument that bifurcation of antitrust counterclaims from patent claims is a "universal" practice relies heavily on *In re Innotron Diagnostics*, 800 F.2d 1077 (Fed. Cir. 1986) and cases relying on *Innotron*.  But Sarepta ignores that the Federal Circuit itself has called *Innotron*'s observations regarding the propriety of bifurcation of certain types of antitrust claims from patent claims as "dictum" and emphasized the importance of assessing bifurcation on a case-by-case basis.  *See In re Theodor Groz & Sohne*, 972 F.2d 1352 (Fed. Cir. 1992) (affirming district court's refusal to bifurcate antitrust counterclaims from patent claims).  A court within this District too has found the very arguments Sarepta makes unpersuasive and contrary to the law.  *See Synopsys*, 2006 WL 1452803, at *4 (rejecting argument "that the court should bifurcate the antitrust claims from the infringement claims because other courts routinely do so" emphasizing that this argument ignores the need for case-by-case consideration and then refusing to bifurcate antitrust counterclaims).

**A.    Sarepta Will Not Be Prejudiced by Having This Case Proceed to a Single Trial Regarding the Patent Claims and NS's Antitrust Counterclaim.**

The "major consideration" in assessing whether a stay is appropriate under Rule 42(b) "is directed toward the choice most likely to result in a just final disposition of the litigation." *Innotron*, 800 F.2d at 1084 (citation omitted).  It is well-established that "a single trial will generally lessen the delay, expense and inconvenience to the parties and the courts."  *Graudins v. Retro Fitness, LLC*, 921 F. Supp.2d 456, 468 (E.D. Pa. 2013).  Unlike the cases relied upon by Sarepta, bifurcating and staying NS's antitrust counterclaim here would create, rather than avoid, prejudice, while offering little in the way of efficiency or preserved resources.  In its Motion, Sarepta invites the Court to delay resolution of NS's antitrust counterclaim based on specious assertions regarding hypothetical discovery that Sarepta has never served and which there is no indication would be necessary here.  *See* Mot. at 5-6.  Sarepta posits that in antitrust cases there is sometimes extensive discovery necessary that can be costly.  *See id.*  But Sarepta fails to explain why such discovery is necessary in this case and why such discovery is so voluminous so as to be prejudicial to Sarepta from needing to go forward with defending against this claim.

Here, there is no need for voluminous and costly separate discovery related solely to the antitrust counterclaims.  Indeed, unlike in the numerous cases Sarepta cites, here, fact discovery is completed.  The parties have taken collectively over 125 hours of depositions, exchanged over 379,000 pages of documents, and responded to hundreds of discovery requests.  Such completed fact discovery included extensive exploration of the market for the parties' products and competitors therein (the same market relevant with respect to the antitrust counterclaim), the prosecution history of the Sarepta asserted patents (the same patents that NS asserts Sarepta procedure through *Walker Process* fraud in the antitrust counterclaim), and pricing of the parties products embodying the inventions claimed in the asserted patents (the same pricing necessary to

assessing antitrust damages).  There is no need to reopen discovery into these issues that the parties have already extensively explored through both written discovery and deposition testimony. Sarepta's conclusory assertion to the contrary is undermined by the fact that Sarepta has never served, or sought leave to serve, a single discovery request pertaining to the antitrust claims or informally requested any additional information pertaining to this counterclaim since it was added to the case more than a month ago.  Thus, it appears Sarepta's new-found claim of the need for voluminous discovery is one manufactured solely to delay resolution of NS's antitrust counterclaim.  At bottom, Sarepta has all it needs to now engage in the limited discovery necessary for the antitrust counterclaim—information this Court has already recognized is within Sarepta's control (*see* Ex. A, Aug. 3, 2023 Hr'g Tr., at 36:20-23) and service of an expert report on antitrust issues.  Using this extensive existing discovery, NS prepared and served its opening report on antitrust damages in accordance with the Scheduling Order on September 8, 2023.  Sarepta now can respond to that expert report with an expert report of its own in accordance with the Scheduling Order on October 5.

Sarepta's remaining claims of prejudice fail.  That the jury will hear relevant evidence regarding Sarepta's predatory conduct does not provide a basis for bifurcation.  After all, "[a]ny potential confusion can be remedied by good lawyering, cautionary warnings, limiting instructions, or special verdict forms."  *Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 624-25 (N.D. Ill. 2000).

### B.      <u>Bifurcation Will Significantly Prejudice NS.</u>

If the Court were to bifurcate the antitrust claim delaying trial on it till some unknown future date, it is NS who will be prejudiced, not Sarepta, because Sarepta is able to continue to proceed with a lawsuit based on fraudulently acquired patents thereby causing NS to incur attorneys' fees and face unlawful market conditions.   *See* NS's Counterclaim, D.I. 344. Bifurcation will simply mean delayed justice for NS and allow Sarepta to continue to unlawfully monopolize the market based on an improperly obtained patent.  This severely prejudices NS.  *See SenoRx*, 920 F. Supp.2d at 568 (denying motion to bifurcate because of, *inter alia*, prejudice to plaintiff from "inevitable delay, and resulting prejudice . . . of two separate trials" which "cannot be mitigated by any action short of denying the request for separate trials."); *Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*, 707 F. Supp. 1429, 1435 (D. Del. 1989) ("Perhaps the most important consideration for a court ruling on a motion to bifurcate is whether separate trials would unduly prejudice the non-moving party. . . .   [P]rejudice under these circumstances may simply amount to unfair delay of the final disposition of the matter."); *see generally THK Am., Inc. v. NSK Co.*, 151 F.R.D. 625, 633 (N.D. Ill. 1993) ("[S]eparate jury trials and separate discovery phases would not in any way promote judicial economy.  Instead, it would result in additional expense to all parties, and would unduly prolong the litigation to the prejudice of the plaintiff.").  Further, NS faces prejudice from bifurcation because it will be forced to present much of the same evidence twice.  *Cf. Liqwd, Inc. v. L'Oreal USA, Inc.*, Civ. A. No. 17-14-JFB-SRF, 2019 WL 365708, at *2 (D. Del. Jan. 30, 2019) (holding bifurcation of counterclaims from other claims "would result in prejudice to [non-moving party] by requiring [non-moving party] to present the same evidence at two separate trials").

At bottom, "[b]ifurcation could actually exacerbate [NS]'s alleged injuries if bifurcation gives [Sarepta] a marketplace advantage that it could not achieve through its patent claims.  Should

[NS] prevail on its claims, it may be impossible to quantify the harm caused to it by its lost market opportunities." *See Procter & Gamble Co.*, 2013 WL 6061103, at *3 (recognizing this prejudice and denying motion to bifurcate).

## B.    <u>Separate Trials Are Not Necessary to Avoid Juror Confusion.</u>

Sarepta asserts that a combined trial on the pending patent and antitrust claims would risk confusing the jury given the claims are legally complex. Mot. at 7-8. But a generalized concern about supposed juror confusion cannot justify delaying trial on NS's antitrust counterclaim and consuming the judicial resources necessary for two separate trials. *See Willemijn*, 707 F. Supp. at 1435 ("The burden of showing a significant risk of confusion is on the party requesting bifurcation."). Sarepta's theoretical concerns regarding jurors' abilities to comprehend various legal issues and hear evidence related to the same ignores that the Court should "not pre-judge the yet-unnamed jurors by assuming they are unable to digest the facts and law in th[e] case" and should instead presume that juries are "adept at comprehending and adhering to the instructions they are given, even in the most complex factual and legal scenarios." *Synopsys*, 2006 WL 1452803, at *4; *cf. Real*, 195 F.R.D. at 625 ("[I]t is the experience of this Court, as well as others, that jurors bring a collective wisdom, common sense and experience as well as intelligence and dedication to their task.").

There is nothing about this particular case that warrants bifurcation. As is common in this District, both sides are asserting various patents—this alone does not mean jurors cannot also hear a single antitrust counterclaim regarding some of the asserted patents. Indeed, jurors will need to hear evidence regarding the market, pricing, competition, and the prosecution history (including prior art) in order to decide the infringement and invalidity issues already in the case. This evidence is directly relevant to the antitrust counterclaim. Given this substantial evidentiary

overlap and lack of unique complex antitrust issues, the instant case is a far cry from those on which Sarepta relies to claim that bifurcation is necessary to enhance juror confusion. *See* Mot. at 7. For instance, the court in *Masimo Corp. v. Philips Electronics North America Corp.*, found bifurcation appropriate because the Plaintiffs' claims would require the jury to assess validity, enforceability, and infringement for 24 different patents as well as here evidence regarding unasserted patents. Civ. A. No. 09-80-JJF-MPT, 2010 WL 925864, at *2 (D. Del. Mar. 11, 2010). The court concluded that asking the jury to adjudicate defendant's seven antitrust counterclaims would add to that already difficult task. *Id.* Here, by contrast, there are not such unusually high numbers of patents asserted and this case involves only a single antitrust claim.

*Orthophoenix, LLC v. Dfine, Inc.*, Civ. A. No. 13-1003-LPS, 2015 WL 1938702 (D. Del. Apr. 28, 2015), is likewise inapposite. That case involved 15 patents and "complex issues potentially requiring discovery well beyond what is relevant to patent infringement and invalidity." *Id.* at *1. Here, by contrast, there is substantial overlap in discovery, and Sarepta has not made a showing there is "discovery well beyond" the patent-related discovery necessary. *Eurand, Inc. v. Mylan Pharmas, Inc.*, is wholly inapposite because it involved a situation where "Defendants d[id] not oppose bifurcation of the antitrust counterclaims"—the precise opposite of the instant case. Civ. No. 08-889-SLR, 2009 WL 3172197, at *2 (D. Del. Oct. 1, 2009). The Court in *Otsuka Pharm. Co. v. Torrent Pharms., Ltd.*, did not consider the fact that juries within this District routinely decide complex multi-claim suits and provides no reason why the jury in this case cannot do the same. 118 F. Supp. 3d 646, 659 (D.N.J. 2015).

Adopting Sarepta's juror confusion argument would set an unworkable precedent in this District where juries routinely hear antitrust, patent, and portions of inequitable conduct claims together in one trial, without any confusion. *See, e.g.*, *EIS, Inc. v. WOW Tech. Int'l*, Civ. A. No.

19-1227-GBW, Pretrial Conference Tr., Sept. 5, 2023 (Ex. B) at 18:11-22 (discussing during pretrial conference for recently completed trial that jury would get the "patent claims, the Walker Process claims, and the inequitable conduct claims in an [advisory] capacity" and that the court would issue a bench opinion to resolve the inequitable conduct claim); see also *EIS, Inc. v. WOW Tech. Int'l*, Civ. A. No. 19-1227-GBW, Redacted Verdict Form (D.I. 665) (reflecting jury verdict on antitrust and patent claims).

### C.      Judicial Efficiency Weighs Strongly Against Bifurcation

Where, as here, "separate trials would involve overlapping evidence, courts frequently deny motions to bifurcate." *Procter & Gamble*, 2013 WL 6061103, at *2; *see also Real*, 195 F.R.D. at 624 ("It goes without saying that if proof overlaps substantially, the parties, the witnesses, and the Court would be inconvenienced by the presentation of the same evidence several times."); *Synopsys*, 2006 WL 1452803, at *4 (denying bifurcation of patent and antitrust claims because "the evidentiary presentation in one case would likely be substantially duplicative of the evidentiary presentation in the other").

Here, the antitrust counterclaim shares several common issues of fact, which would require substantial duplication of the evidence if presented to different juries. The invalidity and unenforceability of the asserted Sarepta patents also form part of the basis of NS's antitrust claim. NS's antitrust claim and inequitable conduct claim are both rooted in the same fraudulent misrepresentations that Sarepta made in obtaining its patents.  And, a determination on NS's *Walker Process* antitrust fraud claim "is closely related to a determination as to the validity of the patents in suit.  The prosecution history and the omitted prior-art references will be relevant to both inquiries." *Netflix, Inc. v. Blockbuster, Inc.*, No. C 06-02361 WHA, 2006 WL 2458717, at *10 (N.D. Cal. Aug. 22, 2006) (denying bifurcation because of evidentiary overlap between

11

antitrust and patent claims); *see also Climax*, 414 F. Supp. 2d at 1014 ("The commonality between [the] defense of inequitable conduct and [a] *Walker Process* antitrust claim weighs against bifurcation."). Additionally, the same technology, patents, and markets (including competition and pricing within the market) would be at issue in the patent trial and any separate antitrust counterclaim trial, which "would likely create further duplication of evidence because both juries would need to be educated in the same relevant technology." *Synopsys*, 2006 WL 1452803, at *4 (denying bifurcation of infringement claim and antitrust claim); *see also Nortel Networks Inc. v. Foundry Networks, Inc.*, Civil Action No. 01-CV-10442-DPW, 2003 WL 26476584, at *13 (D. Mass. Mar. 24, 2003) ("Consequently, in order to understand the antitrust and unfair competition claims, [a second] jury will need to understand the patents in suit, albeit not to the degree of an infringement analysis."). Under these circumstances, interests of judicial efficiency weigh in favor of a single trial. *See Procter & Gamble*, 2013 WL 6061103, at *3.

Sarepta's contention that NS's counterclaim will "likely be mooted, or at least narrowed as a result" of the patent infringement trial (Mot. at 9) is incorrect. NS's antitrust counterclaim depends on Sarepta's fraud in obtaining patents that it then used to stifle market competition. *See* D.I. 344, Count XI. Whether those patents are infringed does not give Sarepta the right to procure it by fraud. Likewise, whether those patents are invalid does not give Sarepta a free pass on using what were at the time valid patents to stifle market competition. Sarepta's claim that the jury will be deciding issues underlying fraud in connection with the patent infringement and validity portion of any trial (Mot. at 11) which will somehow foreclose a portion of the antitrust claim only underscores why the patent claims and the antitrust claims must be tried together. There is nothing about patent validity or infringement that forecloses or narrows NS's antitrust counterclaim. Instead, the instant case presents a situation where the antitrust counterclaim will not be resolved

by resolution of the patent issues, but one where the antitrust counterclaim shares common elements with the patent issues (*i.e.*, market, prosecution history). *See Gen. Tel. & Elecs. Labs., Inc. v. Nat'l Video Corp.*, 297 F. Supp. 981, 983 (N.D. Ill. 1968) ("The matters in the counterclaims do not seem so closely related to the patent claim that they would be determined by its validity nor so distantly related that they should not be tried at the same time. The trial of all the claims and counterclaims at the same time would seem to be the most efficacious and efficient means to an early and just resolution of this case.").

Because the patent issues trial will not dispose of the antitrust counterclaim, Sarepta's reliance on cases where courts deemed bifurcation appropriate because of the likelihood resolution of patent claims would dispose of an antitrust claim is misplaced. *See* Mot. at 11 (collecting inapposite cases). Indeed, courts have refused to bifurcate cases in which adjudication of patent issues was unlikely to resolve or significantly narrow the counterclaims. *See Synopsys*, 2006 WL 1452803, at *1, 4-5 (denying motion to bifurcate and stay where plaintiff alleged patent infringement and defendant counterclaimed with Section 2 claims for monopolization and attempted monopolization alleging patent fraud and an attempt to create exclusive dealing contracts with defendant's customers); *Climax*, 414 F. Supp. 2d at 1009-10, 1013-15 (denying motion to stay antitrust claims and bifurcate for trial where plaintiff sued for patent infringement and defendant counterclaimed alleging patent fraud, price squeezes and refusals to deal); *Nortel Networks*, 2003 WL 26476584, at *13 (refusing to bifurcate where "given the nature of [defendant's] allegations, trying the patent infringement claims first will not obviate the need to try the antitrust or unfair competition counterclaims").

13

**D.      A Stay of Discovery Is Not Warranted.**

> **1.      The Stay Factors Weigh Strongly Against Staying Discovery Regarding NS's Antitrust Counterclaim.**

Each of the three factors the Court considers in assessing whether to stay discovery regarding a claim—(1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay, or allow the movant to gain a clear tactical advantage—weigh strongly against staying discovery regarding NS's antitrust counterclaim.

*First*, as discussed above, a stay will not simplify issues for trial. Juries in this District routinely hear antitrust and patent claims together. There is no reason a jury cannot do so here. Further, there will be substantial evidence overlap between the two trials, and, thus, a stay, will simply mean that the parties need to revisit already completed discovery.

*Second*, the status of discovery weighs strongly against a stay at this late stage. Fact discovery is closed, and Sarepta has not pointed to any specific fact discovery it now needs regarding the antitrust counterclaim. Nor could it. Indeed, as this Court has recognized, the necessary facts underlying the antitrust counterclaim are uniquely within Sarepta's control. *See* Ex. A, Aug. 3, 2023 Hr'g Tr., at 36:20-23. And, discovery regarding the market, competitors, and related damages issues has already been completed as part of discovery regarding the patent infringement claims. NS has served its antitrust damages expert report, and there is no reason Sarepta cannot timely serve its responsive expert report. A trial date has been set for years and is now just month away. There is no reason to disrupt the trial date on all claims just months before the scheduled trial.

*Third*, a stay would provide Sarepta a clear tactical advantage at the expense (and prejudice of) NS.  If discovery were to be stayed on the antitrust claims now after Sarepta already has NS's antitrust damages expert report, Sarepta will have additional months (or more) to prepare its responsive expert report.  Moreover, if Sarepta is entitled to re-open discovery into the antitrust counterclaims at a later, unknown date, there is significant risk of prejudice to NS who will faces inevitable memory loss and/or witness availability issues due to the passage of time.  *See Hartford Underwriters Ins. Co. v. Spizzirri*, Civ. A. No. 1:09-CV-1277-BBM, 2009 WL 10669603, at *5 (N.D. Ga. Dec. 11, 2009) (stay presented "risks of faded witness memory"); *cf. Barnard v. Lackawanna Cnty.*, Civ. A. No. 3:15-2220, 2016 WL 362424, at *3 (M.D. Pa. Jan. 29, 2016) (non-moving party "may suffer injury" because the requested stay may last "for over half of a year" and it "must wait in limbo").

### 2.    No Matter What the Court Decides Regarding Bifurcation, a Stay is Not Warranted.

Even when courts determine that bifurcation is appropriate, courts routinely refuse to stay discovery on the bifurcated claims.  *See, e.g.*, *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, No. 1:CV-09-1685, 2011 WL 1627052, at *2-3 (M.D. Pa. Apr. 29, 2011) (bifurcating claims and declining to wholesale stay discovery pending outcome of first trial because "judicial economy and efficiency do not warrant staying discovery on the counterclaims. A stay would only further prolong this litigation . . . [and] result in a long litany of time-consuming and costly discovery disputes which would monopolize the parties and the court's time"); *Enzo Life Sci., Inc. v. Digene Corp.*, No. Civ. A. 02-212-JJF, 2003 WL 21402512, at *5 (D. Del. June 10, 2003) (declining to stay discovery on bifurcated claim in patent case because stay would "prevent a fair and efficient resolution of the Counterclaims"); *Ecrix Corp. v. Exabyte Corp.*, 191 F.R.D. 611, 614 (D. Colo. 2000) (denying stay on discovery where "[t]here will be overlap in the

patent infringement/antitrust evidence [and] [d]enying the stay on discovery will also allow for a quick resolution of the antitrust trial, if it is required, as both parties will already have most of the information required"); *Dentsply Int'l, Inc. v. New Tech. Co.*, Civ. A. No. 96-272 MMS, 1996 WL 756766, at *6 (D. Del. Dec. 19, 1996) (declining to stay discovery on bifurcated antitrust claim because efficiency dictated that discovery must proceed).  In fact, even *In re Innotron*, the case on which Sarepta relies for the proposition that it was once the "standard practice" to bifurcate antitrust and patent claims, the Federal Circuit itself affirmed the lower court's decision to not stay discovery on the antitrust claims despite granting the motion to bifurcate the claims for trial. 800 F.2d at 1078.

Accordingly, no matter the Court's decision regarding Sarepta's motion to bifurcate, the Court should reject Sarepta's request to stay discovery regarding NS's antitrust counterclaim. Discovery on NS's counterclaim should proceed now so that the counterclaim is trial ready on schedule and can be tried with (or immediately after) resolution of the patent-related claims. Staying discovery will only delay an eventual trial (and ultimate justice in the instant action), thereby further allowing Sarepta to unfairly monopolize the market by asserting patents it fraudulently obtained.  *Johns Hopkins Univ. v. Cellpro*, 160 F.R.D. 30, 36 (D. Del. 1995) (The "stop-and-start of a stay of discovery and separate trials undermines our goal of working to apply the Rules of Civil Procedure to obtain a just, speedy and inexpensive resolution of every action.") (denying motion to bifurcate and stay discovery).  A stay would only delay justice further in this action and delay an eventual trial on the antitrust counterclaim.

16

## V. CONCLUSION

For the reasons discussed above, NS respectfully requests that the Court deny Sarepta's Motion and allow this case to proceed as scheduled, with the antitrust counterclaim being tried alongside other claims.

Dated:  September 19, 2023

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

Amanda S. Williamson (admitted *pro hac vice*)
Christopher J. Betti (admitted *pro hac* vice)
Krista V. Venegas (admitted *pro hac* vice)
Wan-Shon Lo (admitted *pro hac* vice)
Maria E. Doukas (admitted *pro hac vice*)
Zachary D. Miller (admitted *pro hac vice*)
Guylaine Haché (admitted *pro hac vice*)
Michael T. Sikora (admitted *pro hac vice*)
110 N. Wacker Drive, Suite 2800
Chicago, IL  60601
Telephone:  312.324.1000
Fax:  312.324.1001
amanda.williamson@morganlewis.com
christopher.betti@morganlewis.com
krista.venegas@morganlewis.com
shon.lo@morganlewis.com
maria.doukas@morganlewis.com
zachary.miller@morganlewis.com
guylaine.hache@morganlewis.com
michael.sikora@morganlewis.com

Eric Kraeutler (admitted *pro hac vice*)
Alison P. Patitucci (admitted *pro hac vice*)
1701 Market Street
Philadelphia, PA  19103
Telephone: 215.693.5000
Fax: 215.963.5001
eric.kraeutler@morganlewis.com
alison.patitucci@morganlewis.com

*/s/Amy M. Dudash*
Amy M. Dudash (DE Bar No. 5741)
1201 N. Market Street, Suite 2201
Wilmington, Delaware 19801
Telephone:  302.574.3000
Fax:  302.574.3001
amy.dudash@morganlewis.com

*Attorneys for Nippon Shinyaku Co., Ltd. and NS Pharma, Inc.*

17