# Exhibit B

1

```
 1                      IN THE UNITED STATES DISTRICT COURT

 2                      IN AND FOR THE DISTRICT OF DELAWARE

 3

 4    EIS, INC.,                              )
                                              )
 5               Plaintiff,                   )
      v.                                      )   CIVIL ACTION NO.
 6                                            )   19-1227-GBW
      WOW TECH INTERNATIONAL GMBH,            )
 7    WOW TECH USA, LTD., WOW TECH CANADA,    )
      LTD., and NOVOLUTO GMBH,                )
 8                                            )
                 Defendant.
 9

10                                   - - - -

11                              Wilmington, Delaware
                                Tuesday, September 5, 2023
12                              Pretrial Conference

13                                   - - - -

14

15    BEFORE:  HONORABLE GREGORY B. WILLIAMS
               UNITED STATES DISTRICT COURT JUDGE
16

17                                   - - - -

18

19

20

21

22

23

24

25
                                         Michele L. Rolfe, RPR, CRR
```

## Page 2

APPEARANCES:

    MORRIS, NICHOLS, ARSHT & TUNNELL LLP
    BY:  CAMERON CLARK, ESQ.

        -and-

    PAUL HASTINGS LLP
    BY: ALLAN M. SOOBERT, ESQ.
      PHILLIP W. CITROEN, ESQ.
      CHETAN BANSAL, ESQ.
      JAMES RAZICK, ESQ.
      DAVID VALENTE, ESQ.

        Counsel for Plaintiff

    CHIPMAN BROWN CICERO & COLE, LLP
    BY: GREGORY STUHLMAN, ESQ.

        -and-

    OSHA BERGMAN WANTABE & BURTON
    BY: TAMMY J. DUNN, ESQ.
      CALIFF COOPER, ESQ.
      LISA MARGONIS, ESQ.
        Counsel for Defendants

## Page 3

- - - - -

P R O C E E D I N G S

(REPORTER'S NOTE:  The following pretrial conference was held beginning at 1:00 p.m.)

THE COURT:  Good afternoon.  You may be seated.

All right.  We're here for a pretrial conference in EIS versus IntiHealth.  Let's have counsel put appearances on the record.

MR. BLUMENFELD:  Thank you, Your Honor.  Jack Blumenfeld for EIS.  With me at counsel table form Paul Hastings is Allan Soobert, Phillip Citroen and Rita Roberts.  Behind them James Razick, Chetan Bansal, David Valente, Kevin Stewart.  And in the first row, Naveen Modi and Chad Pederman.

And before we start, we have been talking the last two days about some of the issues, and I think we've now resolved the bifurcation order of proof issue; that the defendants have agreed to withdraw their bifurcation of inequitable conduct motion and to agree with us that we'll go first.  So I think those -- Mr. Stuhlman can correct me if I'm wrong, but I think those issues have been resolved and taken off your plate.

THE COURT:  Okay.  All right.  Great.

MR. BLUMENFELD:  Thanks.

## Page 4

MR. STUHLMAN:  Good afternoon, Your Honor.  Greg Stuhlman from Chipman Brown Cicero & Cole on behalf of WOW Tech.  With me today at counsel table is Tammy Terry, Califf Cooper, Lisa Margonis and Gopal Gannamraj from Osha Bergman in Houston.

THE COURT:  All right.  Thank you.

All right.  So we have a number of things to get through today, so I'm going to start with the motions in limine.

We're going to first start with EIS's motion in limine.

With respect to the Motion in Limine No. 1, EIS moving to preclude WOW Tech, its lawyers and witnesses from arguing, opining or presenting evidence relating -- regarding the story of the reported invention of WOW Tech's Womanizer devices, the invention story, we'll deal with that one first.

With respect to EIS's Motion in Limine No. 1, the Court denies EIS's Motion in Limine No. 1 without prejudice as premature.  At this time exclusion based on potential hearsay is premature, whether this evidence is inadmissible hearsay will depend upon the precise testimony offered at trial, the context and purpose for which it is offered and the foundation laid for it.

Although WOW Tech will not be allowed to insert

## Page 5

an admissible hearsay on unauthenticated documents into the evidentiary record, determining how particular documents are being used without the context and benefit of trial is difficult to determine.

Accordingly, EIS Motion in Limine No. 1 is denied as premature without prejudice to raise a timely objection at trial.

Moving on to EIS's Motion in Limine No. 2 concerning evidence and references to the results of the inter partes reviews of the '851, '061 and '097 patents.

EIS seeks to preclude WOW Tech and its lawyers and witnesses from arguing, opining or presenting evidence regarding the results of the inter partes reviews of the '851, '061 and the '097 patents under Federal Rule of Evidence 402 as irrelevant, contending -- because different invalidity grounds than those at issue in the case were presented there and different rules and procedures govern those IPRs.

Having reviewed the parties' submissions on EIS's Motion in Limine No. 2, the Court denies EIS's Motion in Limine No. 2, evidence and references to the results of inter partes reviews of the '851, '061 and '097 patents are directly relevant to WOW Tech's claims and defenses regarding, among other things, EIS's IP Webinar and utility patent neutral evaluation based on unfair competition

18

1  number of times witnesses have to go up and down.
2           THE COURT:  Okay.  All right.  Both sides agree
3  that a witness will be called once?
4           MR. BLUMENFELD:  Your Honor, I believe we've
5  agreed to that on fact witnesses.
6           On expert witnesses, I think it may be different
7  because different issues that come up at different times.
8           THE COURT:  Understood, okay.
9           All right.  As long as you guys agree, you'll
10 let me know.  If there's any disputes, you'll let me know.
11          So here, just to clarify the trial procedure,
12 what's going to happen is all claims and defenses are going
13 to be presented to the jury during trial, so the jury is
14 going to get the patent claims, the Walker Process claims
15 and the inequitable conduct claims in an adversary capacity.
16          Following the conclusion of the jury trial, the
17 Court will have the parties submit briefing related to the
18 inequitable conduct claim and hold a post-trial hearing on
19 the issue at a later date.
20          And then the Court will issue a bench opinion,
21 including its finding of facts and conclusions of law to
22 resolve the inequitable conduct claim.
23          All right.  Moving on to the next disputed -- or
24 issue that I need to address, and that's in paragraph 113
25 concerning the parties' request to have potential jurors

19

1  complete questionnaires prior to voir dire in order to
2  preserve juror's privacy.  So I went through those questions
3  that are proposed in that section, and many of them are
4  duplicative of questions in the proposed voir dire.  And so
5  the way that -- or I've included many of them in the
6  requested -- in the voir dire.
7           So with respect to questions 1 and 2, I'm --
8  well, first, I'm not going to give jurors a questionnaire
9  prior to the voir dire.  I'm going to incorporate most of
10 those questions into the voir dire.
11          But with respect to questions 1 and 2, I'm not
12 going to ask those questions during the voir dire.  I think
13 they are incorporated in large part in some of the
14 subsequent questions that aren't as explicit.  But when we
15 take -- after we go through the voir dire and do follow-up
16 questioning in the jury room, you'll be able to ask those
17 questions, if you like, during that where we have some
18 privacy.  It's just the Court, the attorneys and the one
19 potential juror at a time.
20          So I'm going to follow my normal process during
21 voir dire in the sense of having the jurors -- asking the
22 questions to the jurors, having them circle the questions
23 that they answer "yes" to and raise their hands, I recognize
24 them.  To the extent that none of them -- to the extent that
25 they don't answer "yes" to any questions, then we'll start

20

1  by putting those folks in the juror box.  And then the ones
2  that answer "yes" to any questions, we'll bring them back
3  for follow-up questioning.
4           And after we go through the voir dire, if you
5  think that even the ones that we sit that haven't answered
6  "yes" to any questions, you want to answer, ask them, give
7  them the opportunity to ask those questions one and two, and
8  I'll consider bringing them back to the jury room as well to
9  give you an opportunity to ask those questions.  But I think
10 they are captured by some of the later questions enough.
11          So once I finish -- we'll see that again when we
12 go through the voir dire.
13          The next dispute was paragraph 118, the
14 additional claim construction.  EIS is requesting the Court
15 to engage in additional claim construction of the term
16 "nozzle effect," as used in Claim 1 of the '851 patent.  The
17 Court rejects EIS's request for an additional claim
18 construction of the term "nozzle effect" as used in Claim 1
19 of the '851 patent.  There's no genuine dispute of claim
20 scope that would trigger the Court's duty under *02 Micro*.
21 Rather, EIS appears to be attempting to recycle its
22 previously rejected claim construction argument that the
23 claims of the '851 patent require a narrowed cross section
24 between the first and second chambers to generate the
25 claimed nozzle effect.  That argument was previously

21

1  rejected, as the Court found the claims do not require a
2  narrow cross section between the first and second chambers.
3           Moving on to the next dispute, paragraph 120.
4  EIS proposes that if a party intends to seek the sealing of
5  the courtroom based on the presentation of its own or third
6  parties' highly confidential, attorneys' eyes only during
7  opening statements shall inform the party by 2:00 p.m., two
8  calendar days before opening statements.  WOW Tech proposed
9  three calendar days.  The Court is going to accept EIS's
10 proposal of two days as it most closely aligns with the
11 Court's dispute resolution policy for objections.
12          With respect to paragraph -- the next dispute,
13 paragraph 122 about case narrowing.  Have the parties
14 reached any further agreement with respect to case
15 narrowing?
16          MR. VALENTE:  No, Your Honor, we have not
17 reached a further agreement on that.
18          THE COURT:  Okay.  EIS proposes that WOW Tech
19 should identify no more than nine patent claims to be tried,
20 and in response, EIS will elect no more than 25 prior art
21 based invalidity arguments.  WOW Tech's argues that EIS's
22 proposal is untenable because EIS brought five counts
23 seeking declaratory judgment of noninfringement of each of
24 the five asserted patents in this case; meaning that WOW
25 Tech has to defend on all five asserted patents unless EIS