# Exhibit 1





**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

NIPPON SHINYAKU CO., LTD., Plaintiff,

v.

SAREPTA THERAPEUTICS, INC.,
Defendant.

Civil Action No. 21-1015 (MN)

SAREPTA THERAPEUTICS, INC., and THE
UNIVERSITY OF WESTERN AUSTRALIA
Defendant and Counter-Plaintiffs

v.

NIPPON SHINYAKU CO., LTD. and
NS PHARMA, INC., Plaintiff, Counter-
Defendants and Counterclaimants.

---

**Expert Report of Robert S. Maness, Ph.D.**

---

Date: September 8, 2023

_____

Robert S. Maness

# Exhibit 2

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INVIDI TECHNOLOGIES | : |
| CORPORATION, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :     Civil Action No. 11-397-RGA |
| | : |
| VISIBLE WORLD, INC., et al., | : |
| | : |
| Defendants. | : |

## ORDER

The Plaintiff has filed a motion to dismiss various state law and antitrust counterclaims

(D.I. 131) that were raised for the first time in the Defendants' answers to the Plaintiff's First

Amended Complaint. The Plaintiff raises numerous theories as to why these counterclaims

should be dismissed.

The primary substantive point of dispute is whether the Defendants have properly pleaded

that the Plaintiff's patent lawsuit is "objectively baseless."

Defendants' counterclaims were new when filed on September 27, 2012. (D.I. 110 &

111). While the filing was done with the permission of the Court and the agreement of the

Plaintiff, it was done in relation to a First Amended Complaint that contained no change of

substance. There does not appear to have been any hint that new, different, and substantial

counterclaims would be added. Indeed, the filing was after the completion of paper discovery,

and only shortly before the close of all fact discovery on November 16, 2012. (D.I. 21, ¶2(c)).

Briefing on the motion to dismiss was not completed until early December. In my opinion,

Defendant is too late in adding these new counterclaims to include them in the trial of this case.

(In addition, I do not believe as a general matter that these sorts of potentially prejudicial counterclaims, even if timely filed, should be tried at the same time to the same jury as the patent infringement claims.).

Thus, this 7th day of December 2012, I will **TRIFURCATE**[1] the state law and antitrust counterclaims for purposes of discovery and trial, with the motion to dismiss (D.I. 131) being **DENIED WITHOUT PREJUDICE** to its being renewed once the trial on the patent infringement case is concluded. It seems likely that events between now and then will shed light on the issues raised by the counterclaims.

United States District Judge

---

[1] This case is already bifurcated. (D.I. 21, ¶2(a)).

# Exhibit 3

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

VIATECH TECHNOLOGIES, INC.,    :
                               :
                Plaintiff,     :
                               :
        v.                     :        Civil Action No. 14-1226-RGA
                               :
MICROSOFT CORPORATION,         :
                               :
                Defendants.    :

## ORDER

Plaintiff asserted one patent against Defendant, and Defendant has asserted one patent against Plaintiff. I suggested that I might have two trials, in order to avoid jury confusion. The parties have submitted letters commenting on my suggestion. (D.I. 122, 124).

I have considered the letters.

I have the authority to "order a separate trial on one or more separate issues, claims, crossclaims, [or] counterclaims." Fed. R. Civ. P. 42(b). I may do this for "convenience, to avoid prejudice, or to expedite and economize." *Id.*

There is likely to be a substantial amount of overlap in the two sets of claims, as Defendant's patent is asserted as prior art to Plaintiff's patent. It seems likely, based on the letters, that Plaintiff will assert its accused product as a commercial success embodying its patent, so the accused product would appear in both trials. In the end, though, my judgment is that it would likely be better to schedule two trials rather than one. First, patent trials are difficult enough for juries without adding to the degree of difficulty. Trying both patents in one

case would involve additional infringement analysis and damages analysis over a trial on just one patent. Extra testimony can lead to confusion. Second, it appears that Defendant's assertion of its patent against Plaintiff's product is of lesser importance in the scheme of things. Although there was briefing on asserted claim disputes on both patents, the parties agreed that the ten most important ones all related to Plaintiff's patent. My judgment is that resolution of the claims involving Plaintiff's patent will likely resolve the entire case. Depending on the schedule, it may never be necessary to resolve the claim disputes on Defendant's patent. Thus, I think scheduling separate trials is likely to result in economy.

Thus, I will have a separate trial on Plaintiff's assertion of its patent and on Defendant's assertion of its patent. I think the trial on Defendant's patent (which was first asserted a year after Plaintiff filed its complaint, *see* D.I. 45) should be scheduled to take place at least six months after the currently scheduled trial in June 2017. The parties should meet-and-confer and propose a schedule to resolve Defendant's assertion of its patent.

IT IS SO ORDERED this ⎰ day of June 2016.

_____
United States District Judge

# Exhibit 4

```
 1              IN THE UNITED STATES DISTRICT COURT

 2              FOR THE DISTRICT OF DELAWARE

 3

 4  ANALOG DEVICES, INC.,            )
                                     )
 5                   Plaintiff,      )
                                     ) C.A. No. 19-2225-RGA
 6  v.                               )
                                     ) JURY TRIAL DEMANDED
 7  XILINX, INC.,                    )
                                     )
 8                   Defendant.      )
    - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
 9  XILINX, INC. and XILINX ASIA     )
    PACIFIC PTE. LTD.,               )
10                                   )
          Counterclaim Plaintiffs,  )
11                                   )
    v.                               )
12                                   )
    ANALOG DEVICES, INC.,            )
13                                   )
          Counterclaim Defendant.   )
14
                             J. Caleb Boggs Courthouse
15                           844 North King Street
                             Wilmington, Delaware
16
                             Friday, February 7, 2020
17                           10:00 a.m.
                             Scheduling Conference
18

19  BEFORE:  THE HONORABLE RICHARD G. ANDREWS, U.S.D.C.J.

20  APPEARANCES:

21                  MORRIS NICHOLS ARSHT & TUNNELL LLP
                    BY:  JACK B. BLUMENFELD, ESQUIRE
22
                              -and-
23
                    WILMER CUTLER PICKERING HALE & DORR LLP
24                  BY:  CYNTHIA D. VREELAND, ESQUIRE

25                               For the Plaintiff and
                                 Counterclaim Defendant
```

 1    APPEARANCES CONTINUED:

 2              YOUNG CONAWAY STARGATT & TAYLOR, LLP
              BY:  ANNE SHEA GAZA, ESQUIRE
 3
                        -and-
 4
              MORRISON & FOERSTER LLP
 5            BY:  MICHAEL A. JACOBS, ESQUIRE
              BY:  BITA RAHEBI, ESQUIRE
 6            BY:  HECTOR G. GALLEGOS, ESQUIRE

 7                                  For the Defendant and
                                  Counterclaim Plaintiffs
 8
                        ***  PROCEEDINGS  ***
 9

10              THE COURT:  All right.  Good morning, everyone.

11    Please be seated.

12              (Everyone said, Good morning, Your Honor.)

13              THE COURT:  So this is Analog versus Xilinx,

14    Civil Action Number 19-2225.

15              Mr. Blumenfeld, good morning.

16              MR. BLUMENFELD:  Good morning, Your Honor.

17              THE COURT:  I see you have Ms. Vreeland with

18    you.

19              MS. VREELAND:  Good morning, Your Honor.

20              THE COURT:  Good morning.

21              Ms. Gaza, who do you have with you?

22              MS. GAZA:  Good morning, Your Honor.  I have

23    Michael Jacobs.

24              THE COURT:  I've seen him before.

25              MR. JACOBS:  Yes, Your Honor.

1          MS. GAZA:  Bita Rahebi.

2          MS. RAHEBI:  Good morning, Your Honor.

3          THE COURT:  Good morning.

4          MS. GAZA:  Hector Gallegos.

5          MR. GALLEGOS:  Good morning, Your Honor.

6          THE COURT:  Good morning.

7          MS. GAZA:  And David Parandoosh from Xilinx.

8   He's the director of IP.

9          MR. PARANDOOSH:  Good morning, Your Honor.

10          THE COURT:  Good morning.

11          All right.  Okay.  So the first thing is I read

12   the brief by Xilinx.  No, I read two briefs, and I guess it

13   is the plaintiff who wants to bifurcate these things, these

14   two cases, plaintiff's patents versus defendant's products

15   or vice versa, and real vice versa.

16          So as I understand it, defendant has asserted

17   eight patents presumably to match the eight patents that

18   plaintiff has asserted.  So if you want to talk to me about

19   it, you can, but basically every case I've ever had where

20   the defendant asserted patents against a plaintiff, I have

21   sooner or later severed the trials.  Or not severed,

22   bifurcated the trials.

23          Isn't that right?

24          MR. BLUMENFELD:  It is.  I think by bifurcating

25   the trials, and I think it has happened in every case we

1    have found.

2         THE COURT:  And do you agree with that?

3         MS. GAZA:  I do, Your Honor, though I think that

4    there are reasons I would defer to Mr. Jacobs as to why it's

5    probably premature to do so at this juncture.

6         THE COURT:  And maybe it's premature, and I did

7    have one case called Zimmer versus Stryker or maybe it was

8    Stryker versus Zimmer where I think I kind of said, well,

9    I'll decide later on.  But otherwise, I've pretty much

10   always done it early on, and the reason is so that you

11   prepare for what's actually going to happen.

12        So Mr. Jacobs, if you want to talk now, I will

13   listen.  I mean, in some ways what you've put in writing

14   sounded pretty much like what other people put in writing

15   when they opposed this.  But what I would say is this is I

16   think I'm going to schedule the two trials back to back and

17   maybe this is -- I can't now actually a hundred percent

18   remember exactly what I said in Zimmer versus Stryker, and

19   actually I thought I had the dates in here, but I don't.

20        So I'm going to, no matter what you say right

21   now -- well, probably that's not a fair thing to do.  What

22   would you like to tell me before I make a ruling?

23        MR. JACOBS:  Well, so I'm going to adopt the

24   vocabulary, separating trials.

25        THE COURT:  Yeah.

1           MR. JACOBS:  I think of bifurcation as liability

2    versus damages, and really we're just separating their

3    claims against us versus our claims against them.

4           THE COURT:  Right.  That's what I understand

5    we're talking about.

6           MR. JACOBS:  And our recommendation is just to,

7    and I'll be colloquial about it, kick this can down the

8    road.  None of us know what is going to unfold in this case,

9    what kind of IPRs, for example, are going to be filed, what

10   kind of stays, if anything, will be requested.  And it's a

11   competitor-on-competitor case arguably, so it's a little

12   different from some of the cases that you see, but --

13          THE COURT:  They're different than the cases I

14   see, they're not different from the cases where I separate

15   them.

16          MR. JACOBS:  No, that's right, but in this

17   particular case what is likely to unfold over the next

18   several months is there's going to be some discovery.

19   There's going to be some litigation.  Each side will size up

20   its case with an eye toward what might ultimately happen by

21   way of PTAB and litigation before Your Honor, and there will

22   be a reckoning that goes on.

23          And our recommendation is simply leave that

24   reckoning right now to occur in the context of some

25   uncertainty about whether you're ultimately going to

1   separate the trials because we will bargain in the shadow of

2   that uncertainty or that determination.  And that's really

3   where, we're -- to be kind of brutally honest about it,

4   that's where we're coming from.

5                   THE COURT:  Okay.  Well, I appreciate the

6   candor.  And in some ways, based on my track record and what

7   I've just said, I'm not sure that your bargaining is going

8   to be any different if I kick the can down the road as

9   opposed to doing what I'm inclined to do right now because

10  it's not realistic to expect a different outcome a few

11  months from now.

12                  So I think it's better to be straightforward.

13  And I don't think I actually officially have to do anything

14  at all, so I'm going to dismiss the motion or do something

15  else to take it off the docket.

16                  The presumption is separate trials.  I'm going

17  to schedule it for separate trials.  If somewhere down the

18  road, for reasons relating to the trials as opposed to

19  bargaining in the shadow of the schedule, there's a really

20  good reason to combine them, you know, you're not prohibited

21  from bringing it up.  And based on the arguments you make,

22  if you make an argument that persuades me that I should do

23  it, I'll do it.

24                  You know, part of the reason why I've always

25  separated the trials when there's patents going both ways is

```
 1   right after I became a judge, and I kind of expect
 2   Mr. Blumenfeld and possibly Ms. Gaza have heard this before,
 3   Judge Stark said to me that he had just finished doing a
 4   trial where there were patents going both ways, and he
 5   described it as using various unfavorable adjectives.
 6   Multiple unfavorable adjectives.
 7          And I have found, because I have had at least
 8   one case where both trials actually took place, you know, it
 9   made for a much cleaner case.  I don't think it actually
10   took any significant extra amount of time over doing one
11   trial with everything thrown in.  I don't think it unfairly
12   prejudiced anybody.  I don't think having two different
13   juries decide what are after all two different sets of
14   questions, do they infringe your patents and do you infringe
15   their patents, is somehow unfair, or I don't know.
16          And you know, the jury service, in my belief,
17   it's better to spread that out among the population.
18   There's a group of people now known as the gig economy who
19   can't sit on a two-week jury trial.  Sometimes they can't
20   sit on a one-week jury trial, either, but there are fewer
21   people excluded if the service terms are shorter.
22          So for all those reasons, I'm going to schedule
23   it for separate dates.  At the end, I'm going to certainly
24   keep it under one case number.  I'm not actually going to
25   enter an order, I guess, bifurcating it, but as I've said on
```

1    the record here, that's the presumption.

2              Okay?

3              MR. JACOBS:  Understood.  And then I think what

4    you said was back to back which would put them in proximity

5    to each other which --

6              THE COURT:  Right.  And that's my recollection,

7    which could be wrong.  I forget, were either of you involved

8    in Zimmer and Stryker?

9              MS. GAZA:  I was in Zimmer versus Stryker.

10             THE COURT:  You know, I know I had them

11   scheduled at the end back to back.  I think, you know, I

12   blocked off two weeks.  So I think I did delay making a

13   decision there, but I did it just so that I could -- because

14   I had at least -- you know, four times that I had done it

15   before that case, that that's the way it was going to end

16   up.

17             So we'll do that and --

18             MS. GAZA:  Yeah.

19             THE COURT:  -- that will sort of, as best we

20   can, preserve the options.

21             MS. GAZA:  And Your Honor, it was very helpful,

22   I know in the Zimmer versus Stryker case that Your Honor

23   kept the case otherwise together so all discovery and

24   proceedings went together in the case.

25             THE COURT:  Well, you know, that's I think kind

1   of the way you've done the schedule here, and that makes

2   sense to me because there's certainly efficiencies from you

3   all doing discovery of a topic that applies to both cases at

4   the same time.  You know, it may put some sort of burden on

5   you to be thinking when you're asking questions that apply

6   to one case or the other, but that's part of the reason I

7   like you to know what I expect to have happen up front so

8   you can be thinking about that as you go along.

9           So the other question that you raised just

10  generally in regards to the scheduling order was the

11  location of depositions for parties or representatives.  And

12  I think this came out partly as a result of the slight

13  modification I made to my standard form order, and I think

14  we're talking about paragraph 4 which is on pages 2 and 3.

15          And so part of the reason why I had changed my

16  standard form order was because if a plaintiff sued a

17  defendant, the defendant often counterclaimed for

18  invalidity.  And you know, I didn't think because the

19  plaintiff chose the forum and the defendant chose to defend

20  itself by including invalidity counterclaims that that

21  should act as a way of saying, well, the defendant chose the

22  forum, too.

23          But I think it's a different thing when the

24  defendant files its own patents because I presume if you had

25  wanted to, you could have filed your suit against the

```
 1    plaintiff in California or wherever it is that they're
 2    predominantly located or have their principal place of
 3    business.  So you made a discretionary decision, you know,
 4    maybe a tactical decision to file your counterclaims which,
 5    in my opinion, are genuine counterclaims because you're
 6    introducing new, you know, sort of offenses in the sense of
 7    on the attack as opposed to some other sense claims.
 8              So that being said, as I understand it, Xilinx
 9    is located in Asia in, I guess, Singapore.  And so the
10    question is:  Where does Xilinx's representatives who fall
11    within the rule, where they have to come to to be deposed?
12    Is that kind of what we're talking about here?
13              Because I take it, I thought I saw -- did I see
14    that the plaintiff was saying Massachusetts which I guess is
15    where the plaintiff's attorneys are?
16              MR. BLUMENFELD:  No, the plaintiff is actually
17    in Massachusetts.  The defendant, as I understand it, its
18    U.S. operations are in California, but apparently it has an
19    overseas location in Singapore, maybe other overseas
20    locations.  But we talked about this further yesterday, and
21    we would like to leave the default provision in, but not
22    because we want to force all witnesses, party witnesses to
23    come to Delaware, just because we don't have enough
24    information to know who those witnesses are going to be and
25    where they are.
```

1          And I told Ms. Gaza's associate yesterday that

2     we will, of course, work with them about deposition

3     locations.  But what we couldn't agree to was that their

4     people would be on the West Coast.  We just don't know, you

5     know, who they are or what they are, so...

6          THE COURT:  But the general idea that your

7     people should be deposed in Massachusetts which is your

8     principal place of business, and that their people, if

9     California is their principal place of business in the U.S.,

10     that the depositions should be there of the officers,

11     directors, managing agents, and I guess, the Rule 30(b)(6),

12     you're saying you're agreeable to that?

13          MR. BLUMENFELD:  No, it's not -- no, I don't

14     want to agree to anything right now because I don't feel

15     like I have enough information, but what I am saying is

16     we're not fighting to make their people in California come

17     to Delaware.  That wasn't the purpose of that.

18          It was just that as things go on and we find out

19     who the witnesses are actually going to be and where they

20     are, we can deal with it.  And that's the way it happens in

21     every case.  This default standard has been in your order

22     and other judges' orders.

23          I've never had a case where all the witnesses

24     came to Delaware.  People get pretty reasonable about this

25     because it works both ways.

1          THE COURT:  Do you have any comment on this?

2          MS. GAZA:  Well, Your Honor, what we were trying

3     to do is to really front the issue with plaintiff's counsel

4     and explain why we wanted to try and work it out so that the

5     parties would have kind of a protocol in place and hopefully

6     avoid disputes down the road that we may have to bring to

7     Your Honor.  We have one defendant who is also a

8     counterclaim plaintiff who is in California, but we also

9     have one Xilinx Asia who is in Singapore.

10          So any of those officers, directors, party

11    representatives would have to come to the U.S.  And we're

12    fine doing that, we just think it makes sense to pick one

13    location, and then we can include language such as, you

14    know, subject to the parties' agreement otherwise or the

15    Court's order.

16          THE COURT:  But that language is already

17    typically in there; right?

18          MS. GAZA:  The language is in there that they

19    would have to come to this district for it, and there's no

20    problem.  Of course, obviously, the parties are litigating

21    in Delaware.  But it just seems if we know this issue

22    exists, why not lay the ground rules now.

23          THE COURT:  But doesn't the standard order have

24    the subject to court order or agreement in it --

25          MR. BLUMENFELD:  Yes.

1           THE COURT:  -- which I don't --

2           MS. GAZA:  It does.

3           THE COURT:  And in fact, you have it here.

4           MS. GAZA:  Right.  So the plaintiffs have

5    proposed that, and we would be fine as long as we can work,

6    you know, to get on a witness-by-witness basis, but that's

7    why we had proposed an alternative.

8           THE COURT:  Okay.  So I'm going to go with what

9    the plaintiff -- the standard language, you know, with the

10   expectation, and I can't say with all the different

11   discovery disputes that I've ever had that I ever remember

12   there being one about whether a particular person needed to

13   be deposed in Delaware or some other place in the United

14   States.  I think I've had one or two involving Europe.  So

15   I'm going to go with the plaintiff's language and certainly

16   expect the reasonableness that is historic.

17           Okay.  So I think then the only other thing are

18   these dates that we need to fill in.  And so the dates that

19   I had in mind was the hearing on claim construction for, I

20   guess, the analog patents would be 9:00 a.m. on

21   December 10th of 2020.  And the hearing on the Xilinx

22   asserted patents would be at 9:00 a.m. on December 15th of

23   2020.

24           Are those dates agreeable?

25           MS. VREELAND:  Yes.

1               MR. JACOBS:  Yes, Your Honor.

2               THE COURT:  Okay.  And then the pretrial

3   conference date would be at 9:00 a.m. on January 7th of

4   2022.

5               Is that date agreeable?

6               MR. JACOBS:  Yes, Your Honor.

7               THE COURT:  Yes.  And then I guess because there

8   was something up in the air here -- hold on.

9               All right.  And I'm going to schedule these for

10   five-day jury trials.  How about the first trial is on

11   January 24th of 2022, and the second trial is on

12   January 31st of 2022?

13              MS. VREELAND:  That would be great, Your Honor.

14              MR. JACOBS:  Fine, Your Honor.

15              THE COURT:  Okay.  All right.

16              So I think that takes care of all the things

17   that I either identified as being in dispute or that needed

18   a date from me.  Is there anything else to be discussed?

19              MR. BLUMENFELD:  I don't think so.  I think one

20   thing we should talk about, based on the January 7th

21   pretrial, is moving the jury instructions and pretrial order

22   before Christmas rather than --

23              THE COURT:  Well, you can work that out between

24   yourselves.  So why don't I do this, I was actually writing

25   this in like I would just sign this, but why don't you

1    discuss that among yourselves.  If you want to modify that

2    in some way, go ahead.

3              And I assume, Mr. Blumenfeld, that you

4    submitted this.  Yeah, if you would just resubmit this.

5              MR. BLUMENFELD:  We can do that.

6              THE COURT:  And if you modify those dates,

7    that's fine by me.  All right?

8              MR. BLUMENFELD:  Thank you.

9              THE COURT:  Okay.  Anything else from the

10   defendant?

11             MR. JACOBS:  Nothing.

12             MS. GAZA:  Nothing, Your Honor.

13             THE COURT:  Okay.  Well, thank you very much --

14             MR. JACOBS:  Thank you.

15             THE COURT:  -- for coming here, and I will sign

16   the order when I get it.  Okay?

17             MR. BLUMENFELD:  Thank you, Your Honor.

18             MS. GAZA:  Thank you, Your Honor.

19             THE COURT:  Have a good day.

20             (Scheduling Conference was concluded at 10:19

21   a.m.)

22             I hereby certify the foregoing is a true and

23   accurate transcript from my stenographic notes in the

24   proceeding.     /s/ Heather M. Triozzi
                      Certified Merit and Real-Time Reporter
25                    U.S. District Court