# EXHIBIT 29

# PART 3

U̲NITED S̲TATES P̲ATENT AND T̲RADEMARK O̲FFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/605,276 | 10/23/2009 | Peter Sazani | 120178.410 | 1379 |

500        7590        08/24/2011
SEED INTELLECTUAL PROPERTY LAW GROUP PLLC
701 FIFTH AVE
SUITE 5400
SEATTLE, WA 98104

| EXAMINER |
|---|
| MCDONALD, JENNIFER SUE PITRAK |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1635 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 08/24/2011 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A  (Rev. 04/07)

SRPT-VYDS-0003389

| | Application No. | Applicant(s) |
|---|---|---|
| ***Office Action Summary*** | 12/605,276 | SAZANI ET AL. |
| | Examiner | Art Unit | |
| | JENNIFER S. PITRAK MCDONALD | 1635 | |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1) ☒ Responsive to communication(s) filed on <u>13 June 2011</u>.

2a) ☐ This action is **FINAL**.      2b) ☒ This action is non-final.

3) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims

4) ☒ Claim(s) <u>66-81</u> is/are pending in the application.

    4a) Of the above claim(s) <u>73-81</u> is/are withdrawn from consideration.

5) ☐ Claim(s) _____ is/are allowed.

6) ☒ Claim(s) <u>66-72</u> is/are rejected.

7) ☐ Claim(s) _ is/are objected to.

8) ☐ Claim(s) _ are subject to restriction and/or election requirement.

## Application Papers

9) ☐ The specification is objected to by the Examiner.

10) ☐ The drawing(s) filed on _____ is/are:  a) ☐ accepted or b) ☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11) ☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

## Priority under 35 U.S.C. § 119

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All   b) ☐ Some * c) ☐ None of:

      1. ☐ Certified copies of the priority documents have been received.

      2. ☐ Certified copies of the priority documents have been received in Application No. _____.

      3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)

2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3) ☒ Information Disclosure Statement(s) (PTO/SB/08) Paper No(s)/Mail Date <u>06/14/2011</u>.

4) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____ .

5) ☐ Notice of Informal Patent Application

6) ☐ Other: _____ .

SRPT-VYDS-0003390

Application/Control Number: 12/605,276                                    Page 2

Art Unit: 1635

## DETAILED ACTION

### *Remarks*

The amendments and remarks filed on 06/13/2011 have been entered and considered.

Claims 1-65 are canceled.  Claims 66-81 are pending.  Claims 73-81 are withdrawn from further

consideration pursuant to 37 CFR 1.142(b) as being drawn to a nonelected invention.

Claims 66-72 are under examination

### *Allowable Subject Matter*

The indicated allowability of claim 26 is withdrawn in view of the newly discovered

reference(s) to Matsuo, et al. (US 2007/0082861)(06/14/2011 IDS) and Venter, et al. (US

2007/0037165).  Rejections based on the newly cited reference(s) follow.

### *Claim Rejections - 35 USC § 112 - New*

The following is a quotation of the second paragraph of 35 U.S.C. 112:

The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the
subject matter which the applicant regards as his invention.

Claims 66-72 are rejected under 35 U.S.C. 112, second paragraph, as being indefinite for

failing to particularly point out and distinctly claim the subject matter which applicant regards as

the invention.

Claims 66 and 67 recite the limitation "the targeting sequence of SEQ ID NO:287".

There is insufficient antecedent basis for this limitation in the claim.  The targeting sequence of

SEQ ID NO:287 is not previously defined in the specification or in the claims.

Application/Control Number: 12/605,276                                      Page 3

Art Unit: 1635

### *Claim Rejections - 35 USC § 103 - withdrawn*

#### <u>Wilton, et al</u>

The rejection of claims 24 and 25 under 35 U.S.C. 103(a) as being unpatentable over

Wilton, et al. (WO 2006/000057) is **withdrawn**.  The amendments have obviated the rejection.

#### <u>Wilton, et al. and Weller, et al.</u>

The rejection of claims 24, 25, and 27 under 35 U.S.C. 103(a) as being unpatentable over

Wilton, et al. (WO 2006/000057) in view of Weller, et al. (US 2008/0194463) is **withdrawn.**

The amendments have obviated the rejection.

### *Claim Rejections - 35 USC § 103 - New*

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.  Patentability shall not be negatived by the manner in which the invention was made.

#### <u>Matsuo, et al., Wilton, et al., and Venter, et al.</u>

Claims 66, 67, and 70 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Matsuo, et al. (US 2007/0082861)(of record, 06/14/2011 IDS), Wilton, et al. (WO 2006/000057,

of record), and Venter, et al. (US 2007/0037165).

Application/Control Number: 12/605,276                                      Page 4
Art Unit: 1635

The claims are directed to a morpholino antisense oligonucleotide comprising SEQ ID

NO: 287 and having phosphorodiamidate internucleotide linkages useful for producing exon

skipping of exon 50 in processing of human dystrophin mRNA.

Matsuo, et al. and Wilton, et al. teach antisense oligonucleotides for producing exon

skipping of exon 50 in processing of human dystrophin mRNA.  Matsuo, et al. teach an antisense

oligonucleotide targeting dystrophin (p.91, paragraphs 756-757).  This antisense oligonucleotide

comprises 18 of 25 nucleotides of the instantly claimed antisense oligonucleotide having SEQ ID

NO:287 as shown (shared nucleotides are underlined).

```
Matsuo, et al.          5'-GCTCCAATAGTGGTCAGT-3'
SEQ ID NO: 287  5'-CTTACAGGCTCCAATAGTGGTCAGT-3'
```

Wilton, et al. teach antisense oligonucleotides for producing exon skipping of exon 50 in

processing of human dystrophin mRNA.  Wilton, et al. teach that the antisense oligonucleotides

may preferably be between 17-30 nucleotides in length (p.24, second paragraph) and that the

antisense oligonucleotides may be morpholino antisense oligonucleotides (see description for

Table 1A spanning pages 16 and 17).  Wilton, et al. exemplify antisense oligonucleotides that are

25 nucleotides in length (table starting at page 10).  Wilton, et al. teach that the antisense

molecules may be oligonucleotides wherein at least one, all, or every other of the internucleotide

bridging phosphate residues are modified phosphates, including phosphoropiperazidates and

phosphoramidates (p.26).

Venter, et al. teach the human dystrophin (DMD) sequence.  See SEQ ID NO:14546, for

example.  Matsuo's antisense oligonucleotide corresponds to the DMD sequence as shown.

Application/Control Number: 12/605,276                                    Page 5
Art Unit: 1635

```
Matsuo, et al.              5'       GCTCCAATAGTGGTCAGT   3'
                                     ||||||||||||||||||
Venter, et al.  3' (113967) GAATGTCCGAGGTTATCACCAGTCA (113943) 5'
```

It would have been obvious to one of skill in the art at the time the instant invention was made to make an antisense oligonucleotide targeting exon 50 of the human dystrophin gene because Matsuo, et al. and Wilton, et al. teach such oligonucleotides.  It would have been obvious to make the antisense oligonucleotide having the sequence 5'-GCTCCAATAGTGGTCAGT-3' for exon skipping, because Matsuo, et al. teach such an oligonucleotide. It further would have been obvious to extend the oligonucleotide in either the 5'- or 3'-direction to incorporate up to 30 nucleotides because Wilton, et al. suggest that the antisense oligonucleotides comprise up to 30 nucleotides.  Extension of Matsuo's  antisense oligonucleotide by just 7 nucleotides in the 5'-direction would yield an antisense oligonucleotide comprising the instantly claimed SEQ ID NO:287.   It further would have been obvious to make the oligonucleotide with morpholino subunits and phosphorodiamidate intersubunit linkages because Wilton, et al. suggest that the oligonucleotides may be made with morpholino subunits and phosphoramidate linkages.  One of skill in the art would recognize that phosphoramidate linkages can be phosphorodiamidate linkages.  Therefore, the instant claims would have been *prima facie* obvious to one of skill in the art at the time of the instant invention.

**Matsuo, et al., Wilton, et al., Venter, et al., and  Weller, et al.**

Claims 66-72 are rejected under 35 U.S.C. 103(a) as being unpatentable over Matsuo, et al. (US 2007/0082861)(06/14/2011 IDS), Wilton, et al. (WO 2006/000057, of record), and

SRPT-VYDS-0003394

Application/Control Number: 12/605,276                                        Page 6

Art Unit: 1635

Venter, et al. (US 2007/0037165) as applied to claims 66, 67, and 70 above, and further in view

of Weller, et al. (US 2008/0194463, of record).

The claims are directed to a morpholino antisense oligonucleotide comprising SEQ ID

NO: 287 and having phosphorodiamidate internucleotide linkages useful for producing exon

skipping of exon 50 in processing of human dystrophin mRNA. Claims 68 and 69 are directed to

the morpholino antisense oligonucleotide conjugated to an arginine-rich peptide having SEQ ID

NO:578. Claims 71 and 72 are directed to the antisense oligonucleotide having SEQ ID NO:287

comprising phosphorodiamidate linkages wherein at least one and up to 50% of the intersubunit

linkages comprise a pendant cationic group that is 1-piperazinyl.

Matsuo, et al. and Wilton, et al. teach antisense oligonucleotides for producing exon

skipping of exon 50 in processing of human dystrophin mRNA. Matsuo, et al. teach an antisense

oligonucleotide targeting dystrophin (p.91, paragraphs 756-757). This antisense oligonucleotide

comprises 18 of 25 nucleotides of the instantly claimed antisense oligonucleotide having SEQ ID

NO:287 as shown (shared nucleotides are underlined).


```
Matsuo, et al.           5'-GCTCCAATAGTGGTCAGT-3'
SEQ ID NO: 287   5'-CTTACAGGCTCCAATAGTGGTCAGT-3'
```


Wilton, et al. teach antisense oligonucleotides for producing exon skipping of exon 50 in

processing of human dystrophin mRNA. Wilton, et al. teach that the antisense oligonucleotides

may preferably be between 17-30 nucleotides in length (p.24, second paragraph) and that the

antisense oligonucleotides may be morpholino antisense oligonucleotides (see description for

Table 1A spanning pages 16 and 17). Wilton, et al. exemplify antisense oligonucleotides that are

Application/Control Number: 12/605,276                                              Page 7
Art Unit: 1635

25 nucleotides in length (table starting at page 10).  Wilton, et al. teach that the antisense

molecules may be oligonucleotides wherein at least one, all, or every other of the internucleotide

bridging phosphate residues are modified phosphates, including phosphoropiperazidates and

phosphoramidates (p.26).

Venter, et al. teach the human dystrophin (DMD) sequence.  See SEQ ID NO:14546, for

example.  Matsuo's antisense oligonucleotide corresponds to the DMD sequence as shown.

```
Matsuo, et al.            5'       GCTCCAATAGTGGTCAGT   3'
                                   ||||||||||||||||||
Venter, et al.  3' (113967) GAATGTCCGAGGTTATCACCAGTCA (113943) 5'
```

Weller, et al. teach antisense oligomers conjugated to arginine-rich peptides and that the

arginine-rich peptides enhance delivery of the oligomers to cells (paragraph 181).  Weller, et al.

specifically teach the arginine-rich peptide having the instantly claimed SEQ ID NO:578 (see

paragraphs 78 and 79 and SEQ ID NO:105).  Weller, et al. also teach that the morpholino

subunits of oligonucleotides may be joined by phosphorodiamidate linkages including both

uncharged and cationic linkages, including those with 1-piperazinyl pendant groups (p.2,

paragraphs 29-31).

It would have been obvious to one of skill in the art at the time the instant invention was

made to make an antisense oligonucleotide targeting exon 50 of the human dystrophin gene

because Matsuo, et al. and Wilton, et al. teach such oligonucleotides.  It would have been

obvious to make the antisense oligonucleotide having the sequence 5'-

GCTCCAATAGTGGTCAGT-3' for exon skipping, because Matsuo, et al. teach such an

oligonucleotide. It further would have been obvious to extend the oligonucleotide in either the 5'-

SRPT-VYDS-0003396

Application/Control Number: 12/605,276                                        Page 8

Art Unit: 1635

or 3'-direction to incorporate up to 30 nucleotides because Wilton, et al. suggest that the

antisense oligonucleotides comprise up to 30 nucleotides.  Extension of Matsuo's  antisense

oligonucleotide by just 7 nucleotides in the 5'-direction would yield an antisense oligonucleotide

comprising the instantly claimed SEQ ID NO:287.   It further would have been obvious to make

the oligonucleotide with morpholino subunits and phosphorodiamidate intersubunit linkages

having 1-piperazinyl pendant groups because Wilton, et al. suggest that the oligonucleotides may

be made with morpholino subunits and phosphoramidate linkages and Weller, et al. teach

oligonucleotides having phosphorodiamidate linkages with 1-piperazinyl pendant groups.  It

would have been obvious to incorporate the pendant group in up to 50%  of the intersubunit

linkages because Wilton, et al. teach oligonucleotides wherein every other of the internucleotide

bridging phosphate residues are modified phosphates, including phosphoropiperazidates and

phosphoramidates.

It would have been obvious to one of skill in the art at the time the instant invention was

made to attach the oligomer having SEQ ID NO:287 to an arginine-rich peptide having the

instantly claimed SEQ ID NO:578 because Weller, et al. teach that arginine-rich peptides

enhance oligomer delivery to cells and a particular peptide is that having the instant SEQ ID

NO:578.

Therefore, the instant claims would have been *prima facie* obvious to one of skill in the

art at the time of the instant invention.

SRPT-VYDS-0003397

Application/Control Number: 12/605,276                                         Page 9
Art Unit: 1635

### *Conclusion*

Any inquiry concerning this communication or earlier communications from the examiner should be directed to JENNIFER S. MCDONALD whose telephone number is (571)270-3061. The examiner can normally be reached on Monday-Friday, 8:30AM-5:00PM, EST.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Heather Calamita can be reached on 571-272-2876. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/JENNIFER S. MCDONALD/
Examiner, Art Unit 1635

SRPT-VYDS-0003398

# UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/605,276 | 10/23/2009 | Peter Sazani | 120178.410 | 1379 |

500        7590        02/11/2011
SEED INTELLECTUAL PROPERTY LAW GROUP PLLC
701 FIFTH AVE
SUITE 5400
SEATTLE, WA 98104

| EXAMINER |
|---|
| MCDONALD, JENNIFER SUE PITRAK |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1635 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 02/11/2011 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A  (Rev. 04/07)

SRPT-VYDS-0003399

| **Office Action Summary** | Application No.<br>12/605,276 | Applicant(s)<br>SAZANI ET AL. | |
|---|---|---|---|
| | Examiner<br>JENNIFER S. PITRAK MCDONALD | Art Unit<br>1635 | |

-- **The MAILING DATE of this communication appears on the cover sheet with the correspondence address** --

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1) ☒ Responsive to communication(s) filed on <u>19 January 2011</u>.

2a) ☐ This action is **FINAL**.    2b) ☒ This action is non-final.

3) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims

4) ☒ Claim(s) <u>1-65</u> is/are pending in the application.

    4a) Of the above claim(s) <u>1-23 and 28-65</u> is/are withdrawn from consideration.

5) ☐ Claim(s) _____ is/are allowed.

6) ☒ Claim(s) <u>24,25 and 27</u> is/are rejected.

7) ☒ Claim(s) <u>26</u> is/are objected to.

8) ☒ Claim(s) <u>1-65</u> are subject to restriction and/or election requirement.

## Application Papers

9) ☐ The specification is objected to by the Examiner.

10) ☐ The drawing(s) filed on _____ is/are: a) ☐ accepted or b) ☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11) ☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

## Priority under 35 U.S.C. § 119

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All  b) ☐ Some * c) ☐ None of:

      1. ☐ Certified copies of the priority documents have been received.

      2. ☐ Certified copies of the priority documents have been received in Application No. _____.

      3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)
2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3) ☐ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date _____.

4) ☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____.
5) ☐ Notice of Informal Patent Application
6) ☐ Other: _____.

SRPT-VYDS-0003400

Application/Control Number: 12/605,276                                          Page 2

Art Unit: 1635

## DETAILED ACTION

### Election/Restrictions

Restriction to one of the following inventions is required under 35 U.S.C. 121:

1.  Claims 1-3, drawn to a composition for use in producing exon skipping of exon 44 in the processing of human dystrophin pre-processed mRNA, classified in class 536, subclass 24.5.  Election of this group requires the further election of **species 13 and species 1**.

2.  Claims 4-7, drawn to a composition for use in producing exon skipping of exon 45 in the processing of human dystrophin pre-processed mRNA, classified in class 536, subclass 24.5.  Election of this group requires the further election of **species 13 and species 2.**

3.  Claims 8-11, drawn to a composition for use in producing exon skipping of exon 46 in the processing of human dystrophin pre-processed mRNA, classified in class 536, subclass 24.5.  Election of this group requires the further election of **species 13 and species 3**.

4.  Claims 12-15, drawn to a composition for use in producing exon skipping of exon 47 in the processing of human dystrophin pre-processed mRNA, classified in class 536, subclass 24.5. Election of this group requires the further election of **species 13 and species 4**.

5.  Claims 16-19, drawn to a composition for use in producing exon skipping of exon 48 in the processing of human dystrophin pre-processed mRNA, classified in class 536, subclass 24.5.  Election of this group requires the further election of **species 13 and species 5**.

6.  Claims 20-23, drawn to a composition for use in producing exon skipping of exon 49 in the processing of human dystrophin pre-processed mRNA, classified in class 536, subclass 24.5.  Election of this group requires the further election of **species 13 and species 6.**

7.  Claims 24-27, drawn to a composition for use in producing exon skipping of exon 50 in the processing of human dystrophin pre-processed mRNA, classified in class 536, subclass 24.5.  Election of this group requires the further election of **species 13 and species 7.**

Application/Control Number: 12/605,276              Page 3

Art Unit: 1635

8.      Claims 28-31, drawn to a composition for use in producing exon skipping of exon 51 in the processing of human dystrophin pre-processed mRNA, classified in class 536, subclass 24.5. Election of this group requires the further election of **species 13 and species 8**.

9.      Claims 32-35, drawn to a composition for use in producing exon skipping of exon 52 in the processing of human dystrophin pre-processed mRNA, classified in class 536, subclass 24.5. Election of this group requires the further election of **species 13 and species 9**.

10.      Claims 36-39, drawn to a composition for use in producing exon skipping of exon 53 in the processing of human dystrophin pre-processed mRNA, classified in class 536, subclass 24.5. Election of this group requires the further election of **species 13 and species 10.**

11.      Claims 40-43, drawn to a composition for use in producing exon skipping of exon 54 in the processing of human dystrophin pre-processed mRNA, classified in class 536, subclass 24.5. Election of this group requires the further election of **species 13 and species 11.**

12.      Claims 44-47, drawn to a composition for use in producing exon skipping of exon 55 in the processing of human dystrophin pre-processed mRNA, classified in class 536, subclass 24.5. Election of this group requires the further election of **species 13 and species 12.**

13.      Claim 51, drawn to a method of treating muscular dystrophy by administering an antisense compound targeted to exon 44 of a dystrophin gene, classified in class 514, subclass 44. Election of this group requires the further election of **species 13 and species 1**.

14.      Claim 52, drawn to a method of treating muscular dystrophy by administering an antisense compound targeted to exon 45 of a dystrophin gene, classified in class 514, subclass 44. Election of this group requires the further election of **species 13 and species 2**.

15.      Claim 53, drawn to a method of treating muscular dystrophy by administering an antisense compound targeted to exon 46 of a dystrophin gene, classified in class 514, subclass 44. Election of this group requires the further election of **species 13 and species 3**.

16.      Claim 54, drawn to a method of treating muscular dystrophy by administering an antisense compound targeted to exon 47 of a dystrophin gene, classified in class 514, subclass 44. Election of this group requires the further election of **species 13 and species 4**.

SRPT-VYDS-0003402

Application/Control Number: 12/605,276    Page 4
Art Unit: 1635

17.    Claim 55, drawn to a method of treating muscular dystrophy by administering an antisense compound targeted to exon 48 of a dystrophin gene, classified in class 514, subclass 44.  Election of this group requires the further election of **species 13 and species 5**.

18.    Claim 56, drawn to a method of treating muscular dystrophy by administering an antisense compound targeted to exon 49 of a dystrophin gene, classified in class 514, subclass 44. Election of this group requires the further election of **species 13 and species 6**.

19.    Claims 57 and 63, drawn to a method of treating muscular dystrophy by administering an antisense compound targeted to exon 50 of a dystrophin gene, classified in class 514, subclass 44.  Election of this group requires the further election of **species 13 and species 7.**

20.    Claim 58, drawn to a method of treating muscular dystrophy by administering an antisense compound targeted to exon 51 of a dystrophin gene, classified in class 514, subclass 44.  Election of this group requires the further election of **species 13 and species 8**.

21.    Claim 59, drawn to a method of treating muscular dystrophy by administering an antisense compound targeted to exon 52 of a dystrophin gene, classified in class 514, subclass 44.  Election of this group requires the further election of **species 13 and species 9**.

22.    Claim 60, drawn to a method of treating muscular dystrophy by administering an antisense compound targeted to exon 53 of a dystrophin gene, classified in class 514, subclass 44.  Election of this group requires the further election of **species 13 and species 10**.

23.    Claim 61, drawn to a method of treating muscular dystrophy by administering an antisense compound targeted to exon 54 of a dystrophin gene, classified in class 514, subclass 44.  Election of this group requires the further election of **species 13 and species 11**.

24.    Claim 62, drawn to a method of treating muscular dystrophy by administering an antisense compound targeted to exon 55 of a dystrophin gene, classified in class 514, subclass 44.  Election of this group requires the further election of **species 13 and species 12**.

The inventions are distinct, each from the other because of the following reasons:

SRPT-VYDS-0003403

Application/Control Number: 12/605,276                                        Page 5
Art Unit: 1635

Each of Inventions 1-12 and each of Inventions 13-24 are related as product and process of use, respectively. The inventions can be shown to be distinct if either or both of the following can be shown: (1) the process for using the product as claimed can be practiced with another materially different product or (2) the product as claimed can be used in a materially different process of using that product. See MPEP § 806.05(h). In the instant case the process can be practiced with another materially different product, such as the antisense oligomers of the other Inventions 1-12.

Inventions 1-12 are directed to related products. The related inventions are distinct if: (1) the inventions as claimed are either not capable of use together or can have a materially different design, mode of operation, function, or effect; (2) the inventions do not overlap in scope, i.e., are mutually exclusive; and (3) the inventions as claimed are not obvious variants. See MPEP § 806.05(j). In the instant case, the inventions as claimed have materially different designs and are mutually exclusive. Furthermore, the inventions as claimed do not encompass overlapping subject matter and there is nothing of record to show them to be obvious variants.

Inventions 13-24 are directed to related processes. The related inventions are distinct if: (1) the inventions as claimed are either not capable of use together or can have a materially different design, mode of operation, function, or effect; (2) the inventions do not overlap in scope, i.e., are mutually exclusive; and (3) the inventions as claimed are not obvious variants. See MPEP § 806.05(j). In the instant case, the inventions as claimed have materially different designs and are mutually exclusive. Furthermore, the inventions as claimed do not encompass overlapping subject matter and there is nothing of record to show them to be obvious variants.

SRPT-VYDS-0003404

Application/Control Number: 12/605,276                                      Page 6
Art Unit: 1635

Invention 1 and each of Inventions 14-24 are directed to an unrelated product and process. Product and process inventions are unrelated if it can be shown that the product cannot be used in, or made by, the process. See MPEP § 802.01 and § 806.06. In the instant case, the methods of Inventions 14-24 require an antisense oligonucleotide that is distinct from that of Invention 1.

Invention 2 and each of Inventions 13 and 15-24 are directed to an unrelated product and process. Product and process inventions are unrelated if it can be shown that the product cannot be used in, or made by, the process. See MPEP § 802.01 and § 806.06. In the instant case, the methods of Inventions 13 and 15-24 require an antisense oligonucleotide that is distinct from that of Invention 2.

Invention 3 and each of Inventions 13, 14, and 16-24 are directed to an unrelated product and process. Product and process inventions are unrelated if it can be shown that the product cannot be used in, or made by, the process. See MPEP § 802.01 and § 806.06. In the instant case, the methods of Inventions 13, 14, and 16-24 require an antisense oligonucleotide that is distinct from that of Invention 3.

Invention 4 and each of Inventions 13-15 and 17-24 are directed to an unrelated product and process. Product and process inventions are unrelated if it can be shown that the product cannot be used in, or made by, the process. See MPEP § 802.01 and § 806.06. In the instant case, the methods of Inventions 13-15 and 17-24 require an antisense oligonucleotide that is distinct from that of Invention 4.

Invention 5 and each of Inventions 13-16 and 18-24 are directed to an unrelated product and process. Product and process inventions are unrelated if it can be shown that the product

Application/Control Number: 12/605,276                                      Page 7
Art Unit: 1635

cannot be used in, or made by, the process.  See MPEP § 802.01 and § 806.06.  In the instant

case, the methods of Inventions 13-16 and 18-24 require an antisense oligonucleotide that is

distinct from that of Invention 5.

Invention 6 and each of Inventions 13-17 and 19-24 are directed to an unrelated product

and process.  Product and process inventions are unrelated if it can be shown that the product

cannot be used in, or made by, the process.  See MPEP § 802.01 and § 806.06.  In the instant

case, the methods of Inventions 13-17 and 19-24 require an antisense oligonucleotide that is

distinct from that of Invention 6.

Invention 7 and each of Inventions 13-18 and 20-24 are directed to an unrelated product

and process.  Product and process inventions are unrelated if it can be shown that the product

cannot be used in, or made by, the process.  See MPEP § 802.01 and § 806.06.  In the instant

case, the methods of Inventions 13-18 and 20-24 require an antisense oligonucleotide that is

distinct from that of Invention 7.

 Invention 8 and each of Inventions 13-19 and 21-24 are directed to an unrelated product

and process.  Product and process inventions are unrelated if it can be shown that the product

cannot be used in, or made by, the process.  See MPEP § 802.01 and § 806.06.  In the instant

case, the methods of Inventions 13-19 and 21-24 require an antisense oligonucleotide that is

distinct from that of Invention 8.

Invention 9 and each of Inventions 13-20 and 22-24 are directed to an unrelated product

and process.  Product and process inventions are unrelated if it can be shown that the product

cannot be used in, or made by, the process.  See MPEP § 802.01 and § 806.06.  In the instant

SRPT-VYDS-0003406

Application/Control Number: 12/605,276                                    Page 8

Art Unit: 1635

case, the methods of Inventions 13-20 and 22-24 require an antisense oligonucleotide that is distinct from that of Invention 9.

Invention 10 and each of Inventions 13-21, 23, and 24 are directed to an unrelated product and process. Product and process inventions are unrelated if it can be shown that the product cannot be used in, or made by, the process. See MPEP § 802.01 and § 806.06. In the instant case, the methods of Inventions 13-21, 23, and 24 require an antisense oligonucleotide that is distinct from that of Invention 10.

Invention 11 and each of Inventions 13-22 and 24 are directed to an unrelated product and process. Product and process inventions are unrelated if it can be shown that the product cannot be used in, or made by, the process. See MPEP § 802.01 and § 806.06. In the instant case, the methods of Inventions 13-22 and 24 require an antisense oligonucleotide that is distinct from that of Invention 11.

Invention 12 and each of Inventions 13-23 are directed to an unrelated product and process. Product and process inventions are unrelated if it can be shown that the product cannot be used in, or made by, the process. See MPEP § 802.01 and § 806.06. In the instant case, the methods of Inventions 13-23 require an antisense oligonucleotide that is distinct from that of Invention 12.

Claims 48-50, 64, and 65 link(s) inventions 13-24. The restriction requirement among the linked inventions is **subject to** the nonallowance of the linking claim(s), claims 48-50, 64, and 65. Upon the indication of allowability of the linking claim(s), the restriction requirement as to the linked inventions **shall** be withdrawn and any claim(s) depending from or otherwise requiring all the limitations of the allowable linking claim(s) will be rejoined and fully examined

Application/Control Number: 12/605,276                                      Page 9
Art Unit: 1635

for patentability in accordance with 37 CFR 1.104 **Claims that require all the limitations of an allowable linking claim** will be entered as a matter of right if the amendment is presented prior to final rejection or allowance, whichever is earlier. Amendments submitted after final rejection are governed by 37 CFR 1.116; amendments submitted after allowance are governed by 37 CFR 1.312.

Applicant(s) are advised that if any claim presented in a continuation or divisional application is anticipated by, or includes all the limitations of, the allowable linking claim, such claim may be subject to provisional statutory and/or nonstatutory double patenting rejections over the claims of the instant application. Where a restriction requirement is withdrawn, the provisions of 35 U.S.C. 121 are no longer applicable. In re Ziegler, 443 F.2d 1211, 1215, 170 USPQ 129, 131-32 (CCPA 1971). See also MPEP § 804.01.

## Species 1

Claim(s) 1 and 51 is/are generic to the following disclosed patentably distinct species: SEQ ID NOs:1-20. The species are independent or distinct because each species has a distinct structure. In addition, these species are not obvious variants of each other based on the current record.

Applicant is required under 35 U.S.C. 121 to elect a single disclosed species, or a single grouping of patentably indistinct species, for prosecution on the merits to which the claims shall be restricted if no generic claim is finally held to be allowable.

There is a search and/or examination burden for the patentably distinct species as set forth above because at least the following reason(s) apply:

Application/Control Number: 12/605,276                                    Page 10
Art Unit: 1635

each species requires a distinct search and review of the results of the search.

**Applicant is advised that the reply to this requirement to be complete <u>must</u> include (i) an election of a species or a grouping of patentably indistinct species to be examined** even though the requirement <u>may</u> be traversed (37 CFR 1.143) **and (ii) identification of the claims encompassing the elected species or grouping of patentably indistinct species,** including any claims subsequently added. An argument that a claim is allowable or that all claims are generic is considered nonresponsive unless accompanied by an election.

The election may be made with or without traverse. To preserve a right to petition, the election must be made with traverse. If the reply does not distinctly and specifically point out supposed errors in the election of species requirement, the election shall be treated as an election without traverse. Traversal must be presented at the time of election in order to be considered timely. Failure to timely traverse the requirement will result in the loss of right to petition under 37 CFR 1.144. If claims are added after the election, applicant must indicate which of these claims are readable on the elected species or grouping of patentably indistinct species.

Should applicant traverse on the ground that the species, or groupings of patentably indistinct species from which election is required, are not patentably distinct, applicant should submit evidence or identify such evidence now of record showing them to be obvious variants or clearly admit on the record that this is the case. In either instance, if the examiner finds one of the species unpatentable over the prior art, the evidence or admission may be used in a rejection under 35 U.S.C. 103(a) of the other species.

Application/Control Number: 12/605,276    Page 11
Art Unit: 1635

Upon the allowance of a generic claim, applicant will be entitled to consideration of claims to additional species which depend from or otherwise require all the limitations of an allowable generic claim as provided by 37 CFR 1.141.

**Species 2**

Claim(s) 2 and 52 is/are generic to the following disclosed patentably distinct species: SEQ ID NOs:21-76, 612, and 624. The species are independent or distinct because each species has a distinct structure. In addition, these species are not obvious variants of each other based on the current record.

Applicant is required under 35 U.S.C. 121 to elect a single disclosed species, or a single grouping of patentably indistinct species, for prosecution on the merits to which the claims shall be restricted if no generic claim is finally held to be allowable.

There is a search and/or examination burden for the patentably distinct species as set forth above because at least the following reason(s) apply:

each species requires a distinct search and review of the results of the search.

**Applicant is advised that the reply to this requirement to be complete must include (i) an election of a species or a grouping of patentably indistinct species to be examined** even though the requirement may be traversed (37 CFR 1.143) **and (ii) identification of the claims encompassing the elected species or grouping of patentably indistinct species,** including any claims subsequently added. An argument that a claim is allowable or that all claims are generic is considered nonresponsive unless accompanied by an election.

SRPT-VYDS-0003410

Application/Control Number: 12/605,276                                          Page 12
Art Unit: 1635

The election may be made with or without traverse. To preserve a right to petition, the

election must be made with traverse. If the reply does not distinctly and specifically point out

supposed errors in the election of species requirement, the election shall be treated as an election

without traverse. Traversal must be presented at the time of election in order to be considered

timely. Failure to timely traverse the requirement will result in the loss of right to petition under

37 CFR 1.144. If claims are added after the election, applicant must indicate which of these

claims are readable on the elected species or grouping of patentably indistinct species.

Should applicant traverse on the ground that the species, or groupings of patentably

indistinct species from which election is required, are not patentably distinct, applicant should

submit evidence or identify such evidence now of record showing them to be obvious variants or

clearly admit on the record that this is the case. In either instance, if the examiner finds one of

the species unpatentable over the prior art, the evidence or admission may be used in a rejection

under 35 U.S.C. 103(a) of the other species.

Upon the allowance of a generic claim, applicant will be entitled to consideration of

claims to additional species which depend from or otherwise require all the limitations of an

allowable generic claim as provided by 37 CFR 1.141.


## Species 3

Claim(s) 3 and 53 is/are generic to the following disclosed patentably distinct species:

SEQ ID NOs:77-125. The species are independent or distinct because each species has a distinct

structure.  In addition, these species are not obvious variants of each other based on the current

record.

SRPT-VYDS-0003411

Application/Control Number: 12/605,276                                    Page 13
Art Unit: 1635

Applicant is required under 35 U.S.C. 121 to elect a single disclosed species, or a single grouping of patentably indistinct species, for prosecution on the merits to which the claims shall be restricted if no generic claim is finally held to be allowable.

There is a search and/or examination burden for the patentably distinct species as set forth above because at least the following reason(s) apply:

each species requires a distinct search and review of the results of the search.

**Applicant is advised that the reply to this requirement to be complete <u>must</u> include (i) an election of a species or a grouping of patentably indistinct species to be examined** even though the requirement <u>may</u> be traversed (37 CFR 1.143) **and (ii) identification of the claims encompassing the elected species or grouping of patentably indistinct species**, including any claims subsequently added. An argument that a claim is allowable or that all claims are generic is considered nonresponsive unless accompanied by an election.

The election may be made with or without traverse. To preserve a right to petition, the election must be made with traverse. If the reply does not distinctly and specifically point out supposed errors in the election of species requirement, the election shall be treated as an election without traverse. Traversal must be presented at the time of election in order to be considered timely. Failure to timely traverse the requirement will result in the loss of right to petition under 37 CFR 1.144. If claims are added after the election, applicant must indicate which of these claims are readable on the elected species or grouping of patentably indistinct species.

Should applicant traverse on the ground that the species, or groupings of patentably indistinct species from which election is required, are not patentably distinct, applicant should submit evidence or identify such evidence now of record showing them to be obvious variants or

Application/Control Number: 12/605,276                                      Page 14
Art Unit: 1635

clearly admit on the record that this is the case. In either instance, if the examiner finds one of

the species unpatentable over the prior art, the evidence or admission may be used in a rejection

under 35 U.S.C. 103(a) of the other species.

Upon the allowance of a generic claim, applicant will be entitled to consideration of

claims to additional species which depend from or otherwise require all the limitations of an

allowable generic claim as provided by 37 CFR 1.141.


## Species 4

Claim(s) 4 and 54 is/are generic to the following disclosed patentably distinct species:

SEQ ID NOs:126-169. The species are independent or distinct because each species has a

distinct structure.  In addition, these species are not obvious variants of each other based on the

current record.

Applicant is required under 35 U.S.C. 121 to elect a single disclosed species, or a single

grouping of patentably indistinct species, for prosecution on the merits to which the claims shall

be restricted if no generic claim is finally held to be allowable.

There is a search and/or examination burden for the patentably distinct species as set

forth above because at least the following reason(s) apply:

each species requires a distinct search and review of the results of the search.

**Applicant is advised that the reply to this requirement to be complete must include**

**(i) an election of a species or a grouping of patentably indistinct species to be examined**

even though the requirement may be traversed (37 CFR 1.143) **and (ii) identification of the**

**claims encompassing the elected species or grouping of patentably indistinct species,**

Application/Control Number: 12/605,276                                     Page 15
Art Unit: 1635

including any claims subsequently added. An argument that a claim is allowable or that all

claims are generic is considered nonresponsive unless accompanied by an election.

The election may be made with or without traverse. To preserve a right to petition, the

election must be made with traverse. If the reply does not distinctly and specifically point out

supposed errors in the election of species requirement, the election shall be treated as an election

without traverse. Traversal must be presented at the time of election in order to be considered

timely. Failure to timely traverse the requirement will result in the loss of right to petition under

37 CFR 1.144. If claims are added after the election, applicant must indicate which of these

claims are readable on the elected species or grouping of patentably indistinct species.

Should applicant traverse on the ground that the species, or groupings of patentably

indistinct species from which election is required, are not patentably distinct, applicant should

submit evidence or identify such evidence now of record showing them to be obvious variants or

clearly admit on the record that this is the case. In either instance, if the examiner finds one of

the species unpatentable over the prior art, the evidence or admission may be used in a rejection

under 35 U.S.C. 103(a) of the other species.

Upon the allowance of a generic claim, applicant will be entitled to consideration of

claims to additional species which depend from or otherwise require all the limitations of an

allowable generic claim as provided by 37 CFR 1.141.


**Species 5**

Claim(s) 5 and 55 is/are generic to the following disclosed patentably distinct species:

SEQ ID NOs:170-224 and 634. The species are independent or distinct because each species has

SRPT-VYDS-0003414

Application/Control Number: 12/605,276                                          Page 16
Art Unit: 1635

a distinct structure. In addition, these species are not obvious variants of each other based on the current record.

Applicant is required under 35 U.S.C. 121 to elect a single disclosed species, or a single grouping of patentably indistinct species, for prosecution on the merits to which the claims shall be restricted if no generic claim is finally held to be allowable.

There is a search and/or examination burden for the patentably distinct species as set forth above because at least the following reason(s) apply:

each species requires a distinct search and review of the results of the search.

**Applicant is advised that the reply to this requirement to be complete must include (i) an election of a species or a grouping of patentably indistinct species to be examined** even though the requirement may be traversed (37 CFR 1.143) **and (ii) identification of the claims encompassing the elected species or grouping of patentably indistinct species**, including any claims subsequently added. An argument that a claim is allowable or that all claims are generic is considered nonresponsive unless accompanied by an election.

The election may be made with or without traverse. To preserve a right to petition, the election must be made with traverse. If the reply does not distinctly and specifically point out supposed errors in the election of species requirement, the election shall be treated as an election without traverse. Traversal must be presented at the time of election in order to be considered timely. Failure to timely traverse the requirement will result in the loss of right to petition under 37 CFR 1.144. If claims are added after the election, applicant must indicate which of these claims are readable on the elected species or grouping of patentably indistinct species.

SRPT-VYDS-0003415

Application/Control Number: 12/605,276                                         Page 17
Art Unit: 1635

Should applicant traverse on the ground that the species, or groupings of patentably

indistinct species from which election is required, are not patentably distinct, applicant should

submit evidence or identify such evidence now of record showing them to be obvious variants or

clearly admit on the record that this is the case. In either instance, if the examiner finds one of

the species unpatentable over the prior art, the evidence or admission may be used in a rejection

under 35 U.S.C. 103(a) of the other species.

Upon the allowance of a generic claim, applicant will be entitled to consideration of

claims to additional species which depend from or otherwise require all the limitations of an

allowable generic claim as provided by 37 CFR 1.141.


**Species 6**

Claim(s) 6 and 56 is/are generic to the following disclosed patentably distinct species:

SEQ ID NOs:225-266. The species are independent or distinct because each species has a

distinct structure.  In addition, these species are not obvious variants of each other based on the

current record.

Applicant is required under 35 U.S.C. 121 to elect a single disclosed species, or a single

grouping of patentably indistinct species, for prosecution on the merits to which the claims shall

be restricted if no generic claim is finally held to be allowable.

There is a search and/or examination burden for the patentably distinct species as set

forth above because at least the following reason(s) apply:

each species requires a distinct search and review of the results of the search.

Application/Control Number: 12/605,276                                    Page 18
Art Unit: 1635

**Applicant is advised that the reply to this requirement to be complete <u>must</u> include (i) an election of a species or a grouping of patentably indistinct species to be examined** even though the requirement <u>may</u> be traversed (37 CFR 1.143) **and (ii) identification of the claims encompassing the elected species or grouping of patentably indistinct species**, including any claims subsequently added. An argument that a claim is allowable or that all claims are generic is considered nonresponsive unless accompanied by an election.

The election may be made with or without traverse. To preserve a right to petition, the election must be made with traverse. If the reply does not distinctly and specifically point out supposed errors in the election of species requirement, the election shall be treated as an election without traverse. Traversal must be presented at the time of election in order to be considered timely. Failure to timely traverse the requirement will result in the loss of right to petition under 37 CFR 1.144. If claims are added after the election, applicant must indicate which of these claims are readable on the elected species or grouping of patentably indistinct species.

Should applicant traverse on the ground that the species, or groupings of patentably indistinct species from which election is required, are not patentably distinct, applicant should submit evidence or identify such evidence now of record showing them to be obvious variants or clearly admit on the record that this is the case. In either instance, if the examiner finds one of the species unpatentable over the prior art, the evidence or admission may be used in a rejection under 35 U.S.C. 103(a) of the other species.

Upon the allowance of a generic claim, applicant will be entitled to consideration of claims to additional species which depend from or otherwise require all the limitations of an allowable generic claim as provided by 37 CFR 1.141.

Application/Control Number: 12/605,276                                    Page 19
Art Unit: 1635

**Species 7**

Claim(s) 7 and 57 is/are generic to the following disclosed patentably distinct species: SEQ ID NOs:267-308. The species are independent or distinct because each species has a distinct structure.  In addition, these species are not obvious variants of each other based on the current record.

Applicant is required under 35 U.S.C. 121 to elect a single disclosed species, or a single grouping of patentably indistinct species, for prosecution on the merits to which the claims shall be restricted if no generic claim is finally held to be allowable.

There is a search and/or examination burden for the patentably distinct species as set forth above because at least the following reason(s) apply:

each species requires a distinct search and review of the results of the search.

**Applicant is advised that the reply to this requirement to be complete <u>must</u> include (i) an election of a species or a grouping of patentably indistinct species to be examined** even though the requirement <u>may</u> be traversed (37 CFR 1.143) **and (ii) identification of the claims encompassing the elected species or grouping of patentably indistinct species**, including any claims subsequently added. An argument that a claim is allowable or that all claims are generic is considered nonresponsive unless accompanied by an election.

The election may be made with or without traverse. To preserve a right to petition, the election must be made with traverse. If the reply does not distinctly and specifically point out supposed errors in the election of species requirement, the election shall be treated as an election without traverse. Traversal must be presented at the time of election in order to be considered

SRPT-VYDS-0003418

Application/Control Number: 12/605,276                                          Page 20
Art Unit: 1635

timely. Failure to timely traverse the requirement will result in the loss of right to petition under

37 CFR 1.144. If claims are added after the election, applicant must indicate which of these

claims are readable on the elected species or grouping of patentably indistinct species.

Should applicant traverse on the ground that the species, or groupings of patentably

indistinct species from which election is required, are not patentably distinct, applicant should

submit evidence or identify such evidence now of record showing them to be obvious variants or

clearly admit on the record that this is the case. In either instance, if the examiner finds one of

the species unpatentable over the prior art, the evidence or admission may be used in a rejection

under 35 U.S.C. 103(a) of the other species.

Upon the allowance of a generic claim, applicant will be entitled to consideration of

claims to additional species which depend from or otherwise require all the limitations of an

allowable generic claim as provided by 37 CFR 1.141.


**<u>Species 8</u>**

Claim(s) 8 and 58 is/are generic to the following disclosed patentably distinct species:

SEQ ID NOs:309-371. The species are independent or distinct because each species has a

distinct structure.  In addition, these species are not obvious variants of each other based on the

current record.

Applicant is required under 35 U.S.C. 121 to elect a single disclosed species, or a single

grouping of patentably indistinct species, for prosecution on the merits to which the claims shall

be restricted if no generic claim is finally held to be allowable.

SRPT-VYDS-0003419

Application/Control Number: 12/605,276                                    Page 21

Art Unit: 1635

There is a search and/or examination burden for the patentably distinct species as set

forth above because at least the following reason(s) apply:

each species requires a distinct search and review of the results of the search.

**Applicant is advised that the reply to this requirement to be complete must include**

**(i) an election of a species or a grouping of patentably indistinct species to be examined**

even though the requirement may be traversed (37 CFR 1.143) **and (ii) identification of the**

**claims encompassing the elected species or grouping of patentably indistinct species**,

including any claims subsequently added. An argument that a claim is allowable or that all

claims are generic is considered nonresponsive unless accompanied by an election.

The election may be made with or without traverse. To preserve a right to petition, the

election must be made with traverse. If the reply does not distinctly and specifically point out

supposed errors in the election of species requirement, the election shall be treated as an election

without traverse. Traversal must be presented at the time of election in order to be considered

timely. Failure to timely traverse the requirement will result in the loss of right to petition under

37 CFR 1.144. If claims are added after the election, applicant must indicate which of these

claims are readable on the elected species or grouping of patentably indistinct species.

Should applicant traverse on the ground that the species, or groupings of patentably

indistinct species from which election is required, are not patentably distinct, applicant should

submit evidence or identify such evidence now of record showing them to be obvious variants or

clearly admit on the record that this is the case. In either instance, if the examiner finds one of

the species unpatentable over the prior art, the evidence or admission may be used in a rejection

under 35 U.S.C. 103(a) of the other species.

SRPT-VYDS-0003420

Application/Control Number: 12/605,276                                    Page 22
Art Unit: 1635

Upon the allowance of a generic claim, applicant will be entitled to consideration of claims to additional species which depend from or otherwise require all the limitations of an allowable generic claim as provided by 37 CFR 1.141.

**Species 9**

Claim(s) 9 and 59 is/are generic to the following disclosed patentably distinct species: SEQ ID NOs:372-415. The species are independent or distinct because each species has a distinct structure.  In addition, these species are not obvious variants of each other based on the current record.

Applicant is required under 35 U.S.C. 121 to elect a single disclosed species, or a single grouping of patentably indistinct species, for prosecution on the merits to which the claims shall be restricted if no generic claim is finally held to be allowable.

There is a search and/or examination burden for the patentably distinct species as set forth above because at least the following reason(s) apply:

each species requires a distinct search and review of the results of the search.

**Applicant is advised that the reply to this requirement to be complete must include (i) an election of a species or a grouping of patentably indistinct species to be examined** even though the requirement may be traversed (37 CFR 1.143) **and (ii) identification of the claims encompassing the elected species or grouping of patentably indistinct species,** including any claims subsequently added. An argument that a claim is allowable or that all claims are generic is considered nonresponsive unless accompanied by an election.

SRPT-VYDS-0003421

Application/Control Number: 12/605,276                                          Page 23
Art Unit: 1635

The election may be made with or without traverse. To preserve a right to petition, the

election must be made with traverse. If the reply does not distinctly and specifically point out

supposed errors in the election of species requirement, the election shall be treated as an election

without traverse. Traversal must be presented at the time of election in order to be considered

timely. Failure to timely traverse the requirement will result in the loss of right to petition under

37 CFR 1.144. If claims are added after the election, applicant must indicate which of these

claims are readable on the elected species or grouping of patentably indistinct species.

Should applicant traverse on the ground that the species, or groupings of patentably

indistinct species from which election is required, are not patentably distinct, applicant should

submit evidence or identify such evidence now of record showing them to be obvious variants or

clearly admit on the record that this is the case. In either instance, if the examiner finds one of

the species unpatentable over the prior art, the evidence or admission may be used in a rejection

under 35 U.S.C. 103(a) of the other species.

Upon the allowance of a generic claim, applicant will be entitled to consideration of

claims to additional species which depend from or otherwise require all the limitations of an

allowable generic claim as provided by 37 CFR 1.141.


**Species 10**

Claim(s) 10 and 60 is/are generic to the following disclosed patentably distinct species:

SEQ ID NOs:416-475. The species are independent or distinct because each species has a

distinct structure.  In addition, these species are not obvious variants of each other based on the

current record.

Application/Control Number: 12/605,276                                      Page 24
Art Unit: 1635

Applicant is required under 35 U.S.C. 121 to elect a single disclosed species, or a single grouping of patentably indistinct species, for prosecution on the merits to which the claims shall be restricted if no generic claim is finally held to be allowable.

There is a search and/or examination burden for the patentably distinct species as set forth above because at least the following reason(s) apply:

each species requires a distinct search and review of the results of the search.

**Applicant is advised that the reply to this requirement to be complete <u>must</u> include (i) an election of a species or a grouping of patentably indistinct species to be examined** even though the requirement <u>may</u> be traversed (37 CFR 1.143) **and (ii) identification of the claims encompassing the elected species or grouping of patentably indistinct species**, including any claims subsequently added. An argument that a claim is allowable or that all claims are generic is considered nonresponsive unless accompanied by an election.

The election may be made with or without traverse. To preserve a right to petition, the election must be made with traverse. If the reply does not distinctly and specifically point out supposed errors in the election of species requirement, the election shall be treated as an election without traverse. Traversal must be presented at the time of election in order to be considered timely. Failure to timely traverse the requirement will result in the loss of right to petition under 37 CFR 1.144. If claims are added after the election, applicant must indicate which of these claims are readable on the elected species or grouping of patentably indistinct species.

Should applicant traverse on the ground that the species, or groupings of patentably indistinct species from which election is required, are not patentably distinct, applicant should submit evidence or identify such evidence now of record showing them to be obvious variants or

SRPT-VYDS-0003423

Application/Control Number: 12/605,276                                      Page 25
Art Unit: 1635

clearly admit on the record that this is the case. In either instance, if the examiner finds one of

the species unpatentable over the prior art, the evidence or admission may be used in a rejection

under 35 U.S.C. 103(a) of the other species.

Upon the allowance of a generic claim, applicant will be entitled to consideration of

claims to additional species which depend from or otherwise require all the limitations of an

allowable generic claim as provided by 37 CFR 1.141.


## Species 11

Claim(s) 11 and 61 is/are generic to the following disclosed patentably distinct species:

SEQ ID NOs:476-519. The species are independent or distinct because each species has a

distinct structure.  In addition, these species are not obvious variants of each other based on the

current record.

Applicant is required under 35 U.S.C. 121 to elect a single disclosed species, or a single

grouping of patentably indistinct species, for prosecution on the merits to which the claims shall

be restricted if no generic claim is finally held to be allowable.

There is a search and/or examination burden for the patentably distinct species as set

forth above because at least the following reason(s) apply:

each species requires a distinct search and review of the results of the search.

**Applicant is advised that the reply to this requirement to be complete must include**

**(i) an election of a species or a grouping of patentably indistinct species to be examined**

even though the requirement may be traversed (37 CFR 1.143) **and (ii) identification of the**

**claims encompassing the elected species or grouping of patentably indistinct species,**

Application/Control Number: 12/605,276                                                    Page 26
Art Unit: 1635

including any claims subsequently added. An argument that a claim is allowable or that all claims are generic is considered nonresponsive unless accompanied by an election.

The election may be made with or without traverse. To preserve a right to petition, the election must be made with traverse. If the reply does not distinctly and specifically point out supposed errors in the election of species requirement, the election shall be treated as an election without traverse. Traversal must be presented at the time of election in order to be considered timely. Failure to timely traverse the requirement will result in the loss of right to petition under 37 CFR 1.144. If claims are added after the election, applicant must indicate which of these claims are readable on the elected species or grouping of patentably indistinct species.

Should applicant traverse on the ground that the species, or groupings of patentably indistinct species from which election is required, are not patentably distinct, applicant should submit evidence or identify such evidence now of record showing them to be obvious variants or clearly admit on the record that this is the case. In either instance, if the examiner finds one of the species unpatentable over the prior art, the evidence or admission may be used in a rejection under 35 U.S.C. 103(a) of the other species.

Upon the allowance of a generic claim, applicant will be entitled to consideration of claims to additional species which depend from or otherwise require all the limitations of an allowable generic claim as provided by 37 CFR 1.141.

**Species 12**

Claim(s) 12 and 62 is/are generic to the following disclosed patentably distinct species: SEQ ID NOs:520-569 and 635. The species are independent or distinct because each species has

SRPT-VYDS-0003425

Application/Control Number: 12/605,276                                    Page 27
Art Unit: 1635

a distinct structure.  In addition, these species are not obvious variants of each other based on the current record.

Applicant is required under 35 U.S.C. 121 to elect a single disclosed species, or a single grouping of patentably indistinct species, for prosecution on the merits to which the claims shall be restricted if no generic claim is finally held to be allowable.

There is a search and/or examination burden for the patentably distinct species as set forth above because at least the following reason(s) apply:

each species requires a distinct search and review of the results of the search.

**Applicant is advised that the reply to this requirement to be complete must include (i) an election of a species or a grouping of patentably indistinct species to be examined** even though the requirement may be traversed (37 CFR 1.143) **and (ii) identification of the claims encompassing the elected species or grouping of patentably indistinct species**, including any claims subsequently added. An argument that a claim is allowable or that all claims are generic is considered nonresponsive unless accompanied by an election.

The election may be made with or without traverse. To preserve a right to petition, the election must be made with traverse. If the reply does not distinctly and specifically point out supposed errors in the election of species requirement, the election shall be treated as an election without traverse. Traversal must be presented at the time of election in order to be considered timely. Failure to timely traverse the requirement will result in the loss of right to petition under 37 CFR 1.144. If claims are added after the election, applicant must indicate which of these claims are readable on the elected species or grouping of patentably indistinct species.

Application/Control Number: 12/605,276                                    Page 28
Art Unit: 1635

Should applicant traverse on the ground that the species, or groupings of patentably indistinct species from which election is required, are not patentably distinct, applicant should submit evidence or identify such evidence now of record showing them to be obvious variants or clearly admit on the record that this is the case. In either instance, if the examiner finds one of the species unpatentable over the prior art, the evidence or admission may be used in a rejection under 35 U.S.C. 103(a) of the other species.

Upon the allowance of a generic claim, applicant will be entitled to consideration of claims to additional species which depend from or otherwise require all the limitations of an allowable generic claim as provided by 37 CFR 1.141.


**Species 13**

Claim(s) 3, 7, 11, 15, 19, 23, 27, 31, 35, 39, 43, 47, 64, and 65 are generic to the following disclosed patentably distinct species: SEQ ID NOs:570-578. The species are independent or distinct because each species has a distinct structure.  In addition, these species are not obvious variants of each other based on the current record.

Applicant is required under 35 U.S.C. 121 to elect a single disclosed species, or a single grouping of patentably indistinct species, for prosecution on the merits to which the claims shall be restricted if no generic claim is finally held to be allowable.

There is a search and/or examination burden for the patentably distinct species as set forth above because at least the following reason(s) apply:

each species requires a distinct search and review of the results of the search.

SRPT-VYDS-0003427

Application/Control Number: 12/605,276                                        Page 29
Art Unit: 1635

**Applicant is advised that the reply to this requirement to be complete <u>must</u> include (i) an election of a species or a grouping of patentably indistinct species to be examined** even though the requirement <u>may</u> be traversed (37 CFR 1.143) **and (ii) identification of the claims encompassing the elected species or grouping of patentably indistinct species,** including any claims subsequently added. An argument that a claim is allowable or that all claims are generic is considered nonresponsive unless accompanied by an election.

The election may be made with or without traverse. To preserve a right to petition, the election must be made with traverse. If the reply does not distinctly and specifically point out supposed errors in the election of species requirement, the election shall be treated as an election without traverse. Traversal must be presented at the time of election in order to be considered timely. Failure to timely traverse the requirement will result in the loss of right to petition under 37 CFR 1.144. If claims are added after the election, applicant must indicate which of these claims are readable on the elected species or grouping of patentably indistinct species.

Should applicant traverse on the ground that the species, or groupings of patentably indistinct species from which election is required, are not patentably distinct, applicant should submit evidence or identify such evidence now of record showing them to be obvious variants or clearly admit on the record that this is the case. In either instance, if the examiner finds one of the species unpatentable over the prior art, the evidence or admission may be used in a rejection under 35 U.S.C. 103(a) of the other species.

Upon the allowance of a generic claim, applicant will be entitled to consideration of claims to additional species which depend from or otherwise require all the limitations of an allowable generic claim as provided by 37 CFR 1.141.

SRPT-VYDS-0003428

Application/Control Number: 12/605,276                                         Page 30
Art Unit: 1635

During a telephone conversation with Mark Rogel on 02/05/2011 a provisional election was made without traverse to prosecute the invention of **Group 7, claims 24-27** and **SEQ ID NO:287** and **SEQ ID NO:578**  Affirmation of this election must be made by applicant in replying to this Office action.  Claims 1-23 and 28-65 are withdrawn from further consideration by the examiner, 37 CFR 1.142(b), as being drawn to a non-elected invention.

Applicant is reminded that upon the cancellation of claims to a non-elected invention, the inventorship must be amended in compliance with 37 CFR 1.48(b) if one or more of the currently named inventors is no longer an inventor of at least one claim remaining in the application. Any amendment of inventorship must be accompanied by a request under 37 CFR 1.48(b) and by the fee required under 37 CFR 1.17(i).

The examiner has required restriction between product and process claims. Where applicant elects claims directed to the product, and the product claims are subsequently found allowable, withdrawn process claims that depend from or otherwise require all the limitations of the allowable product claim will be considered for rejoinder. All claims directed to a nonelected process invention must require all the limitations of an allowable product claim for that process invention to be rejoined.

In the event of rejoinder, the requirement for restriction between the product claims and the rejoined process claims will be withdrawn, and the rejoined process claims will be fully examined for patentability in accordance with 37 CFR 1.104. Thus, to be allowable, the rejoined

SRPT-VYDS-0003429

Application/Control Number: 12/605,276

Page 31

Art Unit: 1635

claims must meet all criteria for patentability including the requirements of 35 U.S.C. 101, 102, 103 and 112. Until all claims to the elected product are found allowable, an otherwise proper restriction requirement between product claims and process claims may be maintained. Withdrawn process claims that are not commensurate in scope with an allowable product claim will not be rejoined. See MPEP § 821.04(b). Additionally, in order to retain the right to rejoinder in accordance with the above policy, applicant is advised that the process claims should be amended during prosecution to require the limitations of the product claims. **Failure to do so may result in a loss of the right to rejoinder**. Further, note that the prohibition against double patenting rejections of 35 U.S.C. 121 does not apply where the restriction requirement is withdrawn by the examiner before the patent issues. See MPEP § 804.01.

**Claims 24-27** are under examination.

## Claim Rejections - 35 USC § 103

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

(a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

**Wilton, et al**

Claims 24 and 25 are rejected under 35 U.S.C. 103(a) as being unpatentable over Wilton, et al. (WO 2006/000057).

Application/Control Number: 12/605,276                                          Page 32
Art Unit: 1635

The claims are directed to a morpholino antisense oligonucleotide comprising one of SEQ ID NOs:277, 287, 290, and 291 useful for producing exon skipping of exon 50 in processing of human dystrophin mRNA.

Wilton, et al. teach antisense oligonucleotides for producing exon skipping of exon 50 in processing of human dystrophin mRNA. Wilton, et al. specifically teach SEQ ID NO:175 (page 15). Wilton, et al. also teach that the antisense oligonucleotides may preferably be between 17-30 nucleotides in length (p.24, second paragraph) and that the antisense oligonucleotides may be morpholino antisense oligonucleotides (see description for Table 1A spanning pages 16 and 17). SEQ ID NO:175 of Wilton, et al. aligns with the instantly claimed SEQ ID NO:290 as shown.

```
SEQ ID NO:175      5'- GGGAUCCAGUAUACUUACAGGCUCC-3'
SEQ ID NO:290      5'- ATGGGAUCCAGUAUACUUACAGGCU-3'
```

It would have been obvious to one of skill in the art at the time the instant invention was made to make an antisense oligonucleotide targeting exon 50 of the human dystrophin gene and having the sequence 5'-GGGAUCCAGUAUACUUACAGGCUCC-3' for exon skipping, because Wilton, et al. teach such an oligonucleotide (SEQ ID NO:175 of Wilton, et al.). It further would have been obvious to make the oligonucleotide with morpholino subunits because Wilton, et al. suggest that the oligonucleotides may be made with morpholino subunits. It further would have been obvious to extend the oligonucleotide in either the 5'- or 3'-direction to incorporate up to 30 nucleotides because Wilton, et al. suggest that the antisense oligonucleotides comprise up to 30 nucleotides. Extension of SEQ ID NO:175 by just 2 nucleotides in the 5'-direction would yield an antisense oligonucleotide comprising the instantly

SRPT-VYDS-0003431

Application/Control Number: 12/605,276                                          Page 33
Art Unit: 1635

claimed SEQ ID NO:290.  Therefore, the instant claims would have been prima facie obvious to

one of skill in the art at the time of the instant invention.


**Wilton, et al. and Weller, et al.**

Claims 24, 25, and 27 rejected under 35 U.S.C. 103(a) as being unpatentable over Wilton,

et al. (WO 2006/000057) as applied to claims 24 and 25 above, and further in view of Weller, et

al. (US 2008/0194463).

The claims are directed to a morpholino antisense oligonucleotide comprising one of

SEQ ID NOs:277, 287, 290, and 291 useful for producing exon skipping of exon 50 in

processing of human dystrophin mRNA.  Claim 27 is directed to the morpholino antisense

oligonucleotide conjugated to an arginine-rich peptide having SEQ ID NO:578.

Wilton, et al. teach morpholino antisense oligonucleotides as described in the preceding

rejection.  Wilton, et al. do not teach conjugating such oligonucleotides to arginine-rich peptides.

Weller, et al. teach antisense oligomers conjugated to arginine-rich peptides and that the

arginine-rich peptides enhance delivery of the oligomers to cells (paragraph 181).  Weller, et al.

specifically teach the arginine-rich peptide having the instantly claimed SEQ ID NO:578 (see

paragraphs 78 and 79 and SEQ ID NO:105).

It would have been obvious to one of skill in the art at the time the instant invention was

made to make an antisense oligonucleotide targeting exon 50 of the human dystrophin gene and

having the sequence 5'- ATGGGAUCCAGUAUACUUACAGGCU-3' (instantly claimed SEQ

ID NO:290) for exon skipping, because Wilton, et al. teach an oligonucleotide having the

sequence 5'-GGGAUCCAGUAUACUUACAGGCUCC-3' (SEQ ID NO:175 of Wilton, et al.)

SRPT-VYDS-0003432

Application/Control Number: 12/605,276                                      Page 34
Art Unit: 1635

and Wilton, et al. suggest that the antisense oligonucleotides comprise up to 30 nucleotides. Extension of SEQ ID NO:175 by just 2 nucleotides in the 5'-direction would yield an antisense oligonucleotide comprising the instantly claimed SEQ ID NO:290. It further would have been obvious to make the oligonucleotide with morpholino subunits because Wilton, et al. suggest that the oligonucleotides may be made with morpholino subunits.

It would have been obvious to one of skill in the art at the time the instant invention was made to attach the oligomer having SEQ ID NO:290 to an arginine-rich peptide having the instantly claimed SEQ ID NO:578 because Weller, et al. teach that arginine-rich peptides enhance oligomer delivery to cells and a particular peptide is that having the instant SEQ ID NO:578. Therefore, the instant claims would have been prima facie obvious to one of skill in the art at the time the instant invention was made.

## Allowable Subject Matter

Claim 26 is objected to as being dependent upon a rejected base claim, but would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims.

## Conclusion

Any inquiry concerning this communication or earlier communications from the examiner should be directed to JENNIFER S. PITRAK MCDONALD whose telephone number is (571)270-3061. The examiner can normally be reached on Monday-Friday, 8:30AM-5:00PM, EST.

Application/Control Number: 12/605,276                                                    Page 35
Art Unit: 1635

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Heather Calamita can be reached on 571-272-2876. The fax phone number for the

organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent

Application Information Retrieval (PAIR) system. Status information for published applications

may be obtained from either Private PAIR or Public PAIR. Status information for unpublished

applications is available through Private PAIR only. For more information about the PAIR

system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR

system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would

like assistance from a USPTO Customer Service Representative or access to the automated

information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/JENNIFER S. PITRAK MCDONALD/
Examiner, Art Unit 1635



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

959        7590        05/03/2013

NELSON MULLINS RILEY & SCARBOROUGH LLP
FLOOR 30, SUITE 3000
ONE POST OFFICE SQUARE
BOSTON, MA 02109

| EXAMINER |
| --- |
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
| --- | --- |
| 1635 | |

DATE MAILED: 05/03/2013

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
| --- | --- | --- | --- | --- |
| 12/837,356 | 07/15/2010 | Stephen Donald Wilton | AVN-008CN | 4032 |

TITLE OF INVENTION: ANTISENSE OLIGONUCLEOTIDES FOR INDUCING EXON SKIPPING AND METHODS OF USE THEREOF

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
| --- | --- | --- | --- | --- | --- | --- |
| nonprovisional | SMALL | $890 | $300 | $0 | $1190 | 08/05/2013 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

Page 1 of 4

PTOL-85 (Rev. 02/11)

SRPT-VYDS-0003435

**PART B - FEE(S) TRANSMITTAL**

Complete and send this form, together with applicable fee(s), to: <u>Mail</u>   **Mail Stop ISSUE FEE**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, Virginia 22313-1450**
or <u>Fax</u>   **(571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

959      7590      05/03/2013
NELSON MULLINS RILEY & SCARBOROUGH LLP
FLOOR 30, SUITE 3000
ONE POST OFFICE SQUARE
BOSTON, MA 02109

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/837,356 | 07/15/2010 | Stephen Donald Wilton | AVN-008CN | 4032 |

TITLE OF INVENTION: ANTISENSE OLIGONUCLEOTIDES FOR INDUCING EXON SKIPPING AND METHODS OF USE THEREOF

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $890 | $300 | $0 | $1190 | 08/05/2013 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| CHONG, KIMBERLY | 1635 | 536-024500 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list

(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE or COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual ☐ Corporation or other private group entity ☐ Government

4a. The following fee(s) are submitted:

☐ Issue Fee

☐ Publication Fee (No small entity discount permitted)

☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): (**Please first reapply any previously paid issue fee shown above**)

☐ A check is enclosed.

☐ Payment by credit card. Form PTO-2038 is attached.

☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

Page 2 of 4

PTOL-85 (Rev. 02/11)

SRPT-VYDS-0003436

5. **Change in Entity Status** (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

NOTE: Absent a valid certification of Micro Entity Status (see form PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

☐ Applicant asserting small entity status. See 37 CFR 1.27

NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

☐ Applicant changing to regular undiscounted fee status.

NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____     Date _____

Typed or printed name _____     Registration No. _____

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 02/11) Approved for use through 08/31/2013.        OMB 0651-0033        U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

SRPT-VYDS-0003437



### UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/837,356 | 07/15/2010 | Stephen Donald Wilton | AVN-008CN | 4032 |

959        7590        05/03/2013

NELSON MULLINS RILEY & SCARBOROUGH LLP
FLOOR 30, SUITE 3000
ONE POST OFFICE SQUARE
BOSTON, MA 02109

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1635 | |

DATE MAILED: 05/03/2013

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment to date is 228 day(s). If the issue fee is paid on the date that is three months after the mailing date of this notice and the patent issues on the Tuesday before the date that is 28 weeks (six and a half months) after the mailing date of this notice, the Patent Term Adjustment will be 228 day(s).

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

SRPT-VYDS-0003438

# Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

SRPT-VYDS-0003439

| *Notice of Allowability* | Application No. 12/837,356 | Applicant(s) WILTON ET AL. | |
|---|---|---|---|
| | Examiner KIMBERLY CHONG | Art Unit 1635 | AIA (First Inventor to File) Status No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to _04/02/2013_.

    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on_____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on ____; the restriction requirement and election have been incorporated into this action.

3. ☒ The allowed claim(s) is/are _100-102 and 116-181_. As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov .

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    **Certified copies:**

    a) ☐ All   b) ☐ Some   *c) ☐ None of the:

       1. ☐ Certified copies of the priority documents have been received.

       2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

       3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    * Certified copies not received: _____.

    **Interim copies:**

    a) ☐ All   b) ☐ Some   c) ☐ None of the: Interim copies of the priority documents have been received.

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

    ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date ____

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)
2. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date ____
3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material
4. ☒ Interview Summary (PTO-413), Paper No./Mail Date _04/29/2013_ .

5. ☐ Examiner's Amendment/Comment
6. ☒ Examiner's Statement of Reasons for Allowance
7. ☐ Other _____.

/Kimberly  Chong/
Primary Examiner, Art Unit 1635

SRPT-VYDS-0003440

| ***Applicant-Initiated Interview Summary*** | Application No. | Applicant(s) |
|---|---|---|
| | 12/837,356 | WILTON ET AL. |
| | **Examiner** | **Art Unit** | |
| | KIMBERLY CHONG | 1635 | |

All participants (applicant, applicant's representative, PTO personnel):

(1) _KIMBERLY CHONG_.                    (3) _____.

(2) _AMY MANDRAGOURAS_.                   (4) _____.

Date of Interview: _02 April 2013_.

Type:   ☒ Telephonic   ☐ Video Conference
        ☐ Personal [copy given to: ☐ applicant   ☐ applicant's representative]

Exhibit shown or demonstration conducted:   ☐ Yes   ☐ No.
   If Yes, brief description: _____.

Issues Discussed   ☐101   ☐112   ☐102   ☐103   ☒Others
(For each of the checked box(es) above, please describe below the issue and detailed description of the discussion)

Claim(s) discussed: _____.

Identification of prior art discussed: _____.

Substance of Interview
(For each issue discussed, provide a detailed description and indicate if agreement was reached. Some topics may include: identification or clarification of a reference or a portion thereof, claim interpretation, proposed amendments, arguments of any applied references etc...)

   _Amy Mandragouras informed Examiner that copending application 13/270531 would be abandoned so that the instant application can be allowed since the double patenting rejection was the only rejection of record_.

**Applicant recordation instructions:** The formal written reply to the last Office action must include the substance of the interview. (See MPEP section 713.04). If a reply to the last Office action has already been filed, applicant is given a non-extendable period of the longer of one month or thirty days from this interview date, or the mailing date of this interview summary form, whichever is later, to file a statement of the substance of the interview

**Examiner recordation instructions:** Examiners must summarize the substance of any interview of record. A complete and proper recordation of the substance of an interview should include the items listed in MPEP 713.04 for complete and proper recordation including the identification of the general thrust of each argument or issue discussed, a general indication of any other pertinent matters discussed regarding patentability and the general results or outcome of the interview, to include an indication as to whether or not agreement was reached on the issues raised.

☐ Attachment

/Kimberly   Chong/
Primary Examiner, Art Unit 1635

SRPT-VYDS-0003441

# Summary of Record of Interview Requirements

**Manual of Patent Examining Procedure (MPEP), Section 713.04, Substance of Interview Must be Made of Record**
A complete written statement as to the substance of any face-to-face, video conference, or telephone interview with regard to an application must be made of record in the application whether or not an agreement with the examiner was reached at the interview.

**Title 37 Code of Federal Regulations (CFR) § 1.133 Interviews**
Paragraph (b)

In every instance where reconsideration is requested in view of an interview with an examiner, a complete written statement of the reasons presented at the interview as warranting favorable action must be filed by the applicant. An interview does not remove the necessity for reply to Office action as specified in §§ 1.111, 1.135. (35 U.S.C. 132)

37 CFR §1.2 Business to be transacted in writing.
All business with the Patent or Trademark Office should be transacted in writing. The personal attendance of applicants or their attorneys or agents at the Patent and Trademark Office is unnecessary. The action of the Patent and Trademark Office will be based exclusively on the written record in the Office. No attention will be paid to any alleged oral promise, stipulation, or understanding in relation to which there is disagreement or doubt.

_____

The action of the Patent and Trademark Office cannot be based exclusively on the written record in the Office if that record is itself incomplete through the failure to record the substance of interviews.

It is the responsibility of the applicant or the attorney or agent to make the substance of an interview of record in the application file, unless the examiner indicates he or she will do so. It is the examiner's responsibility to see that such a record is made and to correct material inaccuracies which bear directly on the question of patentability.

Examiners must complete an Interview Summary Form for each interview held where a matter of substance has been discussed during the interview by checking the appropriate boxes and filling in the blanks. Discussions regarding only procedural matters, directed solely to restriction requirements for which interview recordation is otherwise provided for in Section 812.01 of the Manual of Patent Examining Procedure, or pointing out typographical errors or unreadable script in Office actions or the like, are excluded from the interview recordation procedures below. Where the substance of an interview is completely recorded in an Examiners Amendment, no separate Interview Summary Record is required.

The Interview Summary Form shall be given an appropriate Paper No., placed in the right hand portion of the file, and listed on the "Contents" section of the file wrapper. In a personal interview, a duplicate of the Form is given to the applicant (or attorney or agent) at the conclusion of the interview. In the case of a telephone or video-conference interview, the copy is mailed to the applicant's correspondence address either with or prior to the next official communication. If additional correspondence from the examiner is not likely before an allowance or if other circumstances dictate, the Form should be mailed promptly after the interview rather than with the next official communication.

The Form provides for recordation of the following information:
– Application Number (Series Code and Serial Number)
– Name of applicant
– Name of examiner
– Date of interview
– Type of interview (telephonic, video-conference, or personal)
– Name of participant(s) (applicant, attorney or agent, examiner, other PTO personnel, etc.)
– An indication whether or not an exhibit was shown or a demonstration conducted
– An identification of the specific prior art discussed
– An indication whether an agreement was reached and if so, a description of the general nature of the agreement (may be by attachment of a copy of amendments or claims agreed as being allowable). Note: Agreement as to allowability is tentative and does not restrict further action by the examiner to the contrary.
– The signature of the examiner who conducted the interview (if Form is not an attachment to a signed Office action)

It is desirable that the examiner orally remind the applicant of his or her obligation to record the substance of the interview of each case. It should be noted, however, that the Interview Summary Form will not normally be considered a complete and proper recordation of the interview unless it includes, or is supplemented by the applicant or the examiner to include, all of the applicable items required below concerning the substance of the interview.

A complete and proper recordation of the substance of any interview should include at least the following applicable items:
1) A brief description of the nature of any exhibit shown or any demonstration conducted,
2) an identification of the claims discussed,
3) an identification of the specific prior art discussed,
4) an identification of the principal proposed amendments of a substantive nature discussed, unless these are already described on the Interview Summary Form completed by the Examiner,
5) a brief identification of the general thrust of the principal arguments presented to the examiner,
   (The identification of arguments need not be lengthy or elaborate. A verbatim or highly detailed description of the arguments is not required. The identification of the arguments is sufficient if the general nature or thrust of the principal arguments made to the examiner can be understood in the context of the application file. Of course, the applicant may desire to emphasize and fully describe those arguments which he or she feels were or might be persuasive to the examiner.)
6) a general indication of any other pertinent matters discussed, and
7) if appropriate, the general results or outcome of the interview unless already described in the Interview Summary Form completed by the examiner.
Examiners are expected to carefully review the applicant's record of the substance of an interview. If the record is not complete and accurate, the examiner will give the applicant an extendable one month time period to correct the record.

## Examiner to Check for Accuracy

If the claims are allowable for other reasons of record, the examiner should send a letter setting forth the examiner's version of the statement attributed to him or her. If the record is complete and accurate, the examiner should place the indication, "Interview Record OK" on the paper recording the substance of the interview along with the date and the examiner's initials.

Application/Control Number: 12/837,356                                    Page 2
Art Unit: 1635

### *Reasons for Allowance*

The following is an examiner's statement of reasons for allowance:

The rejection of claims 100-102 and 116-181as rejected under the judicially

created doctrine of double patenting over claims 44-87 of copending Application No.

13/270,531 is withdrawn as this application was abandoned on 04/10/2013.


Any comments considered necessary by applicant must be submitted no later

than the payment of the issue fee and, to avoid processing delays, should preferably

accompany the issue fee.  Such submissions should be clearly labeled "Comments on

Statement of Reasons for Allowance."


### *Conclusion*

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Kimberly Chong whose telephone number is 571-272-

3111.  The examiner can normally be reached Monday thru Friday between 9-5 pm.

If attempts to reach the examiner by telephone are unsuccessful please contact

the SPE for 1635 Heather Calamita at 571-272-2876. The fax phone number for the

organization where this application or proceeding is assigned is 571-273-8300.


Patent applicants with problems or questions regarding electronic images that
can be viewed in the Patent Application Information Retrieval system (PAIR) can now
contact the USPTO's Patent Electronic Business Center (Patent EBC) for assistance.
Representatives are available to answer your questions daily from 6 am to midnight
(EST). The toll free number is (866) 217-9197. When calling please have your
application serial or patent number, the type of document you are having an image
problem with, the number of pages and the specific nature of the problem.  The Patent
Electronic Business Center will notify applicants of the resolution of the problem within
5-7 business days. Applicants can also check PAIR to confirm that the problem has

Application/Control Number: 12/837,356                                    Page 3
Art Unit: 1635

been corrected.  The USPTO's Patent Electronic Business Center is a complete service center supporting all patent business on the Internet. The USPTO's PAIR system provides Internet-based access to patent application status and history information. It also enables applicants to view the scanned images of their own application file folder(s) as well as general patent information available to the public. For more information about the PAIR system, see http://pair-direct.uspto.gov.

For all other customer support, please call the USPTO Call Center (UCC) at 800-786-9199.


/Kimberly Chong/
Primary Examiner
Art Unit 1635

SRPT-VYDS-0003444

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/837,356 | 07/15/2010 | Stephen Donald Wilton | AVN-008CN | 4032 |

959        7590        04/03/2013
NELSON MULLINS RILEY & SCARBOROUGH LLP
FLOOR 30, SUITE 3000
ONE POST OFFICE SQUARE
BOSTON, MA 02109

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1635 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 04/03/2013 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A  (Rev. 04/07)

SRPT-VYDS-0003445

| **Office Action Summary** | **Application No.**<br>12/837,356 | **Applicant(s)**<br>WILTON ET AL. |
|---|---|---|
| | **Examiner**<br>KIMBERLY CHONG | **Art Unit**<br>1635 | **AIA (First Inventor to File) Status**<br>No |

*Note columns below for Art Unit / AIA:*

| | **Examiner**<br>KIMBERLY CHONG | **Art Unit**<br>1635 | **AIA (First Inventor to File) Status**<br>No |
|---|---|---|---|

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --**

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☒ Responsive to communication(s) filed on <u>12 February 2013</u>.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a) ☐ This action is **FINAL**.   2b) ☒ This action is non-final.

3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

5) ☒ Claim(s) <u>100-102 and 116-181</u> is/are pending in the application.
   5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6) ☐ Claim(s) _____ is/are allowed.

7) ☒ Claim(s) <u>100-102 and 116-181</u> is/are rejected.

8) ☐ Claim(s) _____ is/are objected to.

9) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

**Application Papers**

10) ☐ The specification is objected to by the Examiner.

11) ☒ The drawing(s) filed on <u>15 July 2010</u> is/are: a)☒ accepted or b)☐ objected to by the Examiner.
   Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
   Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12) ☒ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

**Certified copies:**

   a)☒ All   b)☐ Some *   c)☐ None of the:
   1. ☒ Certified copies of the priority documents have been received.
   2. ☐ Certified copies of the priority documents have been received in Application No. _____.
   3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
   * See the attached detailed Office action for a list of the certified copies not received.

**Interim copies:**

   a)☐ All   b)☐ Some   c)☐ None of the: Interim copies of the priority documents have been received.

**Attachment(s)**

1) ☐ Notice of References Cited (PTO-892)

2) ☒ Information Disclosure Statement(s) (PTO/SB/08)
   Paper No(s)/Mail Date <u>04/14/11,02/04/13</u>.

3) ☐ Interview Summary (PTO-413)
   Paper No(s)/Mail Date. _____ .

4) ☐ Other: _____.

SRPT-VYDS-0003446

Application/Control Number: 12/837,356                                         Page 2
Art Unit: 1635

## DETAILED ACTION

### Election/Restrictions

Applicant's election without traverse of Group XVII in the reply filed on

02/04/2013 is acknowledged.

### Status of the Application

Claims 100-102 and 116-181 are pending and currently under examination.  SEQ

ID No. 207 has been found free of the prior art searched.

### Information Disclosure Statement

The submission of the Information Disclosure Statements on 02/14/2013 and

04/14/2011 are in compliance with 37 CFR 1.97.  The information disclosure statements

have been considered by the examiner and signed copies have been placed in the file.

### Double Patenting

The nonstatutory double patenting rejection is based on a judicially created
doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the
unjustified or improper timewise extension of the "right to exclude" granted by a patent
and to prevent possible harassment by multiple assignees.  See *In re Goodman*, 11
F.3d 1046, 29 USPQ2d 2010 (Fed. Cir. 1993); *In re Longi*, 759 F.2d 887, 225
USPQ 645 (Fed. Cir. 1985); *In re Van Ornum*, 686 F.2d 937, 214 USPQ 761 (CCPA
1982); *In re Vogel*, 422 F.2d 438, 164 USPQ 619 (CCPA 1970);and, *In re Thorington,*
418 F.2d 528, 163 USPQ 644 (CCPA 1969).
    A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) may be
used to overcome an actual or provisional rejection based on a nonstatutory double
patenting ground provided the conflicting application or patent is shown to be commonly
owned with this application.  See 37 CFR 1.130(b).

Application/Control Number: 12/837,356                                    Page 3
Art Unit: 1635

Effective January 1, 1994, a registered attorney or agent of record may sign a
terminal disclaimer. A terminal disclaimer signed by the assignee must fully comply with
37 CFR 3.73(b).


Claims 100-102 and 116-181 are provisionally rejected under the judicially

created doctrine of double patenting over claims 44-87 of copending Application No.

13/270,531. This is a provisional double patenting rejection since the conflicting claims

have not yet been patented. Although the conflicting claims are not identical, they are

not patentably distinct from each other because the instant claims and the claims of the

patent are drawn to patently indistinguishable subject matter because both are drawn to

an isolated oligonucleotide with at least 17 consecutive nucleotides of SEQ ID No. 207

and methods of treatment using said oligonucleotide.


***Conclusion***

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Kimberly Chong whose telephone number is 571-272-

3111. The examiner can normally be reached Monday thru Friday between 9-5 pm.

If attempts to reach the examiner by telephone are unsuccessful please contact

the SPE for 1635 Heather Calamita at 571-272-2876. The fax phone number for the

organization where this application or proceeding is assigned is 571-273-8300.

Patent applicants with problems or questions regarding electronic images that
can be viewed in the Patent Application Information Retrieval system (PAIR) can now
contact the USPTO's Patent Electronic Business Center (Patent EBC) for assistance.
Representatives are available to answer your questions daily from 6 am to midnight
(EST). The toll free number is (866) 217-9197. When calling please have your
application serial or patent number, the type of document you are having an image
problem with, the number of pages and the specific nature of the problem. The Patent

Application/Control Number: 12/837,356                                    Page 4
Art Unit: 1635

Electronic Business Center will notify applicants of the resolution of the problem within 5-7 business days. Applicants can also check PAIR to confirm that the problem has been corrected.  The USPTO's Patent Electronic Business Center is a complete service center supporting all patent business on the Internet. The USPTO's PAIR system provides Internet-based access to patent application status and history information. It also enables applicants to view the scanned images of their own application file folder(s) as well as general patent information available to the public. For more information about the PAIR system, see http://pair-direct.uspto.gov.

       For all other customer support, please call the USPTO Call Center (UCC) at 800-786-9199.

/Kimberly Chong/
Primary Examiner
Art Unit 1635

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/837,356 | 07/15/2010 | Stephen Donald Wilton | AVN-008CN | 4032 |

959         7590         08/02/2012

NELSON MULLINS RILEY & SCARBOROUGH LLP
FLOOR 30, SUITE 3000
ONE POST OFFICE SQUARE
BOSTON, MA 02109

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1635 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 08/02/2012 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A  (Rev. 04/07)

SRPT-VYDS-0003450

| | Application No. | Applicant(s) |
|---|---|---|
| ***Office Action Summary*** | 12/837,356 | WILTON ET AL. |
| | Examiner | Art Unit | |
| | KIMBERLY CHONG | 1635 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>1</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒  Responsive to communication(s) filed on <u>17 October 2011</u>.

2a)☐  This action is **FINAL**.        2b)☒  This action is non-final.

3)☐  An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4)☐  Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

5)☒  Claim(s) <u>15-115</u> is/are pending in the application.

    5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6)☐  Claim(s) _____ is/are allowed.

7)☐  Claim(s) _____ is/are rejected.

8)☐  Claim(s) _____ is/are objected to.

9)☒  Claim(s) <u>15-115</u> are subject to restriction and/or election requirement.

**Application Papers**

10)☐  The specification is objected to by the Examiner.

11)☐  The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

12)☐  The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

13)☐  Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All   b)☐ Some *  c)☐ None of:

      1.☐  Certified copies of the priority documents have been received.

      2.☐  Certified copies of the priority documents have been received in Application No. _____.

      3.☐  Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☐ Notice of References Cited (PTO-892)
2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3)☐ Information Disclosure Statement(s) (PTO/SB/08) Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____ .
5)☐ Notice of Informal Patent Application
6)☐ Other: _____.

SRPT-VYDS-0003451

Application/Control Number: 12/837,356                                                    Page 2

Art Unit: 1635

# DETAILED ACTION

## *Election/Restrictions*

Restriction to one of the following inventions is required under 35 U.S.C. 121:

I.     Claims 15-27, 59-61, drawn to a method of inducing exon skipping of dystrophin exon 51 comprising introducing an oligonucleotide targeted to **exon 51 and comprises SEQ ID No. 180,** classifiable in class 514, subclass 44.

II.    Claims 58, drawn to an isolated antisense oligonucleotide comprising **SEQ ID No. 180 and specifically hybridizes to exon 51**, classifiable in class 536, subclass 24.5.

III.   Claims 15-27, 63-65, 67-69, drawn to a method of inducing exon skipping of dystrophin exon 51 comprising introducing an oligonucleotide targeted to **exon 51 and comprises SEQ ID No. 181,** classifiable in class 514, subclass 44.

IV.    Claims 62, 66, drawn to an isolated antisense oligonucleotide comprising **SEQ ID No. 181 and specifically hybridizes to exon 51**, classifiable in class 536, subclass 24.5.

V.     Claims 28-37, drawn to an isolated antisense oligonucleotide comprising **SEQ ID No. 193 and specifically hybridizes to exon 53**, classifiable in class 536, subclass 24.5.

VI.    Claims 38-47, 50-57, drawn to a method of inducing exon skipping of dystrophin exon 53 comprising introducing an oligonucleotide targeted to

SRPT-VYDS-0003452

Application/Control Number: 12/837,356                                        Page 3
Art Unit: 1635

     **exon 53 and comprises SEQ ID No. 193,** classifiable in class 514, subclass 44.

VII.    Claim 48, drawn to an isolated antisense oligonucleotide comprising **SEQ ID No. 194 and specifically hybridizes to exon 53**, classifiable in class 536, subclass 24.5.

VIII.    Claims 49, drawn to a method of inducing exon skipping of dystrophin exon 53 comprising introducing an oligonucleotide targeted to **exon 53 and comprises SEQ ID No. 194,** classifiable in class 514, subclass 44.

IX.    Claims 70, 72, drawn to an isolated antisense oligonucleotide comprising **SEQ ID No. 175 and specifically hybridizes to exon 50**, classifiable in class 536, subclass 24.5.

X.    Claims 71, 73, 76, 78, 79, drawn to a method of inducing exon skipping of dystrophin exon 50 comprising introducing an oligonucleotide targeted to **exon 50 and comprises SEQ ID No. 175,** classifiable in class 514, subclass 44.

XI.    Claims 74, drawn to an isolated antisense oligonucleotide comprising **SEQ ID No. 174 and specifically hybridizes to exon 50**, classifiable in class 536, subclass 24.5.

XII.    Claims 75, 77, drawn to a method of inducing exon skipping of dystrophin exon 50 comprising introducing an oligonucleotide targeted to **exon 50 and comprises SEQ ID No. 174,** classifiable in class 514, subclass 44.

SRPT-VYDS-0003453

Application/Control Number: 12/837,356                                      Page 4
Art Unit: 1635

XIII.   Claims 80, 88, 92, drawn to an isolated antisense oligonucleotide comprising **SEQ ID No. 167 and specifically hybridizes to exon 44**, classifiable in class 536, subclass 24.5.

XIV.   Claims 81-87, 89-91, 93-95, drawn to a method of inducing exon skipping of dystrophin exon 44 comprising introducing an oligonucleotide targeted to **exon 44 and comprises SEQ ID No. 167,** classifiable in class 514, subclass 44.

XV   Claim 96, drawn to an isolated antisense oligonucleotide comprising **SEQ ID No. 165 and specifically hybridizes to exon 44**, classifiable in class 536, subclass 24.5.

XVI.   Claims 97-99, drawn to a method of inducing exon skipping of dystrophin exon 44 comprising introducing an oligonucleotide targeted to **exon 44 and comprises SEQ ID No. 165,** classifiable in class 514, subclass 44.

XVII.   Claim 100, drawn to an isolated antisense oligonucleotide comprising **SEQ ID No. 207 and specifically hybridizes to exon 45**, classifiable in class 536, subclass 24.5.

XVIII.   Claims 100-107, drawn to a method of inducing exon skipping of dystrophin exon 45 comprising introducing an oligonucleotide targeted to **exon 45 and comprises SEQ ID No. 207,** classifiable in class 514, subclass 44.

SRPT-VYDS-0003454

Application/Control Number: 12/837,356                                    Page 5

Art Unit: 1635

XIX    Claim 108, drawn to an isolated antisense oligonucleotide comprising

**SEQ ID No. 203 and specifically hybridizes to exon 46**, classifiable in

class 536, subclass 24.5.

XX.    Claims 109-111, drawn to a method of inducing exon skipping of

dystrophin exon 46 comprising introducing an oligonucleotide targeted to

**exon 46 and comprises SEQ ID No. 203,** classifiable in class 514,

subclass 44.

XXI.    Claim 112, drawn to an isolated antisense oligonucleotide comprising

**SEQ ID No. 204 and specifically hybridizes to exon 46**, classifiable in

class 536, subclass 24.5.

XXII.    Claims 113-115, drawn to a method of inducing exon skipping of

dystrophin exon 46 comprising introducing an oligonucleotide targeted to

**exon 46 and comprises SEQ ID No. 204,** classifiable in class 514,

subclass 44.


The inventions are distinct, each from the other because of the following reasons:

Inventions of Groups II, IV, V, VII, IX, XI, XIII, XV, XVII, XIX and XXI are

unrelated.  Inventions are unrelated if it can be shown that they are not disclosed as

capable of use together and they have different designs, modes of operation, and

effects (MPEP § 802.01 and § 806.06).  In the instant case, the different inventions are

drawn to distinct antisense oligonucleotides which have different nucleotide sequences

and bind to different regions of exons or to entirely different exon and would induce

SRPT-VYDS-0003455

Application/Control Number: 12/837,356                                      Page 6
Art Unit: 1635

skipping of that exon to different degrees, absent evidence to the contrary. Furthermore

restriction is proper because the subject matter is divergent and non-coextensive and a

search for one would not necessarily reveal art against the other.  It is therefore a

burden to search these inventions in a single application.


Inventions of Groups I, III, VI, VIII, X, XII, XIV, XVI, XVIII, XX and XXII are

unrelated.  Inventions are unrelated if it can be shown that they are not disclosed as

capable of use together and they have different designs, modes of operation, and

effects (MPEP § 802.01 and § 806.06).  In the instant case, the different inventions are

drawn to different methods wherein the methods use different antisense

oligonucleotides which have different nucleotide sequences and bind to different regions

of exons or to entirely different exon and would induce skipping of that exon to different

degrees, absent evidence to the contrary. Furthermore restriction is proper because the

subject matter is divergent and non-coextensive and a search for one would not

necessarily reveal art against the other.  It is therefore a burden to search these

inventions in a single application.


Inventions of Groups I-II, III-IV, V-VI, VII-VIII, IX-X, XI-XII, XIII-XIV, XV-XVI, XVII-

XVIII, XIX-XX and XXI-XXII are related as product and process of use.  The inventions

can be shown to be distinct if either or both of the following can be shown: (1) the

process for using the product as claimed can be practiced with another materially

different product or (2) the product as claimed can be used in a materially different

SRPT-VYDS-0003456

Application/Control Number: 12/837,356                                   Page 7
Art Unit: 1635

process of using that product. See MPEP § 806.05(h).  In the instant case the antisense

oligonucleotide products can be used in assays such as in situ hybridization.

Furthermore restriction is proper because the subject matter is divergent and non-

coextensive and a search for one would not necessarily reveal art against the other.  It

is therefore a burden to search these inventions in a single application.


    Inventions of Groups I-XXII that are no paired together above are directed to an

unrelated product and process.  Product and process inventions are unrelated if it can

be shown that the product cannot be used in, or made by, the process.  See MPEP §

802.01 and § 806.06.  In the instant case, the product antisense oligonucleotides

comprise different nucleotide sequences than the oligonucleotides of the unrelated

methods and are not disclosed as capable of use together. Furthermore restriction is

proper because the subject matter is divergent and non-coextensive and a search for

one would not necessarily reveal art against the other.  It is therefore a burden to search

these inventions in a single application.


    Restriction for examination purposes as indicated is proper because all these

inventions listed in this action are independent or distinct for the reasons given above

and there would be a serious search and examination burden if restriction were not

required because one or more of the following reasons apply:

    (a) the inventions have acquired a separate status in the art in view of their

    different classification;

SRPT-VYDS-0003457

Application/Control Number: 12/837,356                                      Page 8
Art Unit: 1635

(b) the inventions have acquired a separate status in the art due to their recognized divergent subject matter;

(c) the inventions require a different field of search (for example, searching different classes/subclasses or electronic resources, or employing different search queries);

(d) the prior art applicable to one invention would not likely be applicable to another invention;

(e) the inventions are likely to raise different non-prior art issues under 35 U.S.C. 101 and/or 35 U.S.C. 112, first paragraph.

**Applicant is advised that the reply to this requirement to be complete <u>must</u> include (i) an election of a invention to be examined** even though the requirement may be traversed (37 CFR 1.143) **and (ii) <u>identification of the claims encompassing the elected invention</u>**.

The election of an invention may be made with or without traverse. To reserve a right to petition, the election must be made with traverse. If the reply does not distinctly and specifically point out supposed errors in the restriction requirement, the election shall be treated as an election without traverse. Traversal must be presented at the time of election in order to be considered timely.  Failure to timely traverse the requirement will result in the loss of right to petition under 37 CFR 1.144.

If claims are added after the election, applicant must indicate which of these claims are readable upon the elected invention.

SRPT-VYDS-0003458

Application/Control Number: 12/837,356                                    Page 9
Art Unit: 1635

Should applicant traverse on the ground that the inventions are not patentably

distinct, applicant should submit evidence or identify such evidence now of record

showing the inventions to be obvious variants or clearly admit on the record that this is

the case. In either instance, if the examiner finds one of the inventions unpatentable

over the prior art, the evidence or admission may be used in a rejection under 35 U.S.C.

103(a) of the other invention.

Applicant is reminded that upon the cancellation of claims to a non-elected

invention, the inventorship must be amended in compliance with 37 CFR 1.48(b) if one

or more of the currently named inventors is no longer an inventor of at least one claim

remaining in the application. Any amendment of inventorship must be accompanied by

a request under 37 CFR 1.48(b) and by the fee required under 37 CFR 1.17(i).

The examiner has required restriction between product and process claims.
Where applicant elects claims directed to the product, and the product claims are
subsequently found allowable, withdrawn process claims that depend from or otherwise
require all the limitations of the allowable product claim will be considered for rejoinder.
All claims directed a nonelected process invention  must require all the limitations of an
allowable product claim for that process invention to be rejoined.
In the event of rejoinder, the requirement for restriction between the product
claims and the rejoined process claims will be withdrawn, and the rejoined process
claims will be fully examined for patentability in accordance with 37 CFR 1.104. Thus, to
be allowable, the rejoined claims must meet all criteria for patentability including the
requirements of 35 U.S.C. 101, 102, 103 and 112. Until all claims to the elected product
are found allowable, an otherwise proper restriction requirement between product
claims and process claims may be maintained. Withdrawn process claims that are not
commensurate in scope with an allowable product claim will not be rejoined. See MPEP
§ 821.04(b). Additionally, in order to retain the right to rejoinder in accordance with the
above policy, applicant is advised that the process claims should be amended during
prosecution to require the limitations of the product claims. **Failure to do so may result
in a loss of the right to rejoinder**. Further, note that the prohibition against double

SRPT-VYDS-0003459

Application/Control Number: 12/837,356                                   Page 10
Art Unit: 1635

patenting rejections of 35 U.S.C. 121 does not apply where the restriction requirement
is withdrawn by the examiner before the patent issues. See MPEP § 804.01.


### *Conclusion*

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Kimberly Chong whose telephone number is 571-272-

3111.  The examiner can normally be reached Monday thru Friday between 7-4 pm.

If attempts to reach the examiner by telephone are unsuccessful please contact

the Acting SPE for 1635 Heather Calamita at 571-272-2876.  The fax phone number for

the organization where this application or proceeding is assigned is 571-273-8300.

Patent applicants with problems or questions regarding electronic images that

can be viewed in the Patent Application Information Retrieval system (PAIR) can now

contact the USPTO's Patent Electronic Business Center (Patent EBC) for assistance.

Representatives are available to answer your questions daily from 6 am to midnight

(EST). The toll free number is (866) 217-9197. When calling please have your

application serial or patent number, the type of document you are having an image

problem with, the number of pages and the specific nature of the problem.  The Patent

Electronic Business Center will notify applicants of the resolution of the problem within

5-7 business days. Applicants can also check PAIR to confirm that the problem has

been corrected.  The USPTO's Patent Electronic Business Center is a complete service

center supporting all patent business on the Internet. The USPTO's PAIR system

provides Internet-based access to patent application status and history information. It

also enables applicants to view the scanned images of their own application file

SRPT-VYDS-0003460

Application/Control Number: 12/837,356                                    Page 11
Art Unit: 1635

folder(s) as well as general patent information available to the public. For more

information about the PAIR system, see http://pair-direct.uspto.gov.

        For all other customer support, please call the USPTO Call Center (UCC) at 800-

786-9199.




/Kimberly Chong/
Primary Examiner
Art Unit 1635

SRPT-VYDS-0003461



## UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| | | |
|---|---|---|
| 21971 | 7590 | 03/12/2012 |

WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CA 94304-1050

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1635 | |

DATE MAILED: 03/12/2012

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/837,359 | 07/15/2010 | Stephen Donald Wilton | 40239-712.301 | 4040 |

TITLE OF INVENTION: ANTISENSE OLIGONUCLEOTIDES FOR INDUCING EXON SKIPPING AND METHODS OF USE THEREOF

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | YES | $870 | $300 | $0 | $1170 | 06/12/2012 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the SMALL ENTITY status shown above.

If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

A. If the status is the same, pay the TOTAL FEE(S) DUE shown above.

B. If the status above is to be removed, check box 5b on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and twice the amount of the ISSUE FEE shown above, or

If the SMALL ENTITY is shown as NO:

A. Pay TOTAL FEE(S) DUE shown above, or

B. If applicant claimed SMALL ENTITY status before, or is now claiming SMALL ENTITY status, check box 5a on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and 1/2 the ISSUE FEE shown above.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

Page 1 of 3

PTOL-85 (Rev. 02/11)

SRPT-VYDS-0003462

**PART B - FEE(S) TRANSMITTAL**

**Complete and send this form, together with applicable fee(s), to:** **Mail**    **Mail Stop ISSUE FEE**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, Virginia 22313-1450**
**or Fax    (571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

21971          7590          03/12/2012

WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CA 94304-1050

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/837,359 | 07/15/2010 | Stephen Donald Wilton | 40239-712.301 | 4040 |

TITLE OF INVENTION: ANTISENSE OLIGONUCLEOTIDES FOR INDUCING EXON SKIPPING AND METHODS OF USE THEREOF

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | YES | $870 | $300 | $0 | $1170 | 06/12/2012 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| CHONG, KIMBERLY | 1635 | 536-024500 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list

(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) :  ☐ Individual  ☐ Corporation or other private group entity  ☐ Government

4a. The following fee(s) are submitted:
☐ Issue Fee
☐ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): (**Please first reapply any previously paid issue fee shown above**)
☐ A check is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

5. **Change in Entity Status** (from status indicated above)
☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.          ☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____          Date _____

Typed or printed name _____          Registration No. _____

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 02/11) Approved for use through 08/31/2013.          OMB 0651-0033          U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

SRPT-VYDS-0003463



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/837,359 | 07/15/2010 | Stephen Donald Wilton | 40239-712.301 | 4040 |

21971    7590    03/12/2012

WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CA 94304-1050

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1635 | |

DATE MAILED: 03/12/2012

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
### (application filed on or after May 29, 2000)

The Patent Term Adjustment to date is 0 day(s). If the issue fee is paid on the date that is three months after the mailing date of this notice and the patent issues on the Tuesday before the date that is 28 weeks (six and a half months) after the mailing date of this notice, the Patent Term Adjustment will be 0 day(s).

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

SRPT-VYDS-0003464

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

SRPT-VYDS-0003465

| *Notice of Allowability* | Application No. | Applicant(s) | |
|---|---|---|---|
| | 12/837,359 | WILTON ET AL. | |
| | **Examiner** | **Art Unit** | |
| | KIMBERLY CHONG | 1635 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to _03/05/2012_.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☒ The allowed claim(s) is/are _45-69_.

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All   b) ☐ Some*   c) ☐ None  of the:

       1. ☐ Certified copies of the priority documents have been received.

       2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

       3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    * Certified copies not received: _____ .

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ A SUBSTITUTE OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.

6. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

    (a) ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review ( PTO-948) attached

       1) ☐ hereto or 2) ☐ to Paper No./Mail Date _____.

    (b) ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of

       Paper No./Mail Date _____.

**Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

7. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)

2. ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____

4. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

5. ☐ Notice of Informal Patent Application

6. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____ .

7. ☐ Examiner's Amendment/Comment

8. ☐ Examiner's Statement of Reasons for Allowance

9. ☐ Other _____ .

/Kimberly Chong/
Primary Examiner AU1635

SRPT-VYDS-0003466

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/837,359 | 07/15/2010 | Stephen Donald Wilton | 120178.411C1 | 4040 |

500          7590          10/05/2011
SEED INTELLECTUAL PROPERTY LAW GROUP PLLC
701 FIFTH AVE
SUITE 5400
SEATTLE, WA 98104

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1635 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 10/05/2011 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

SRPT-VYDS-0003467

| *Office Action Summary* | Application No. | Applicant(s) |
|---|---|---|
| | 12/837,359 | WILTON ET AL. |
| | Examiner | Art Unit |
| | KIMBERLY CHONG | 1635 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1)☒ Responsive to communication(s) filed on <u>30 June 2011</u>.

2a)☒ This action is **FINAL**.    2b)☐ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims

5)☒ Claim(s) <u>15,16 and 18-46</u> is/are pending in the application.

    5a) Of the above claim(s) <u>33-37</u> is/are withdrawn from consideration.

6)☐ Claim(s) _____ is/are allowed.

7)☒ Claim(s) <u>15,16,18-32 and 38-46</u> is/are rejected.

8)☐ Claim(s) _____ is/are objected to.

9)☐ Claim(s) _____ are subject to restriction and/or election requirement.

## Application Papers

10)☐ The specification is objected to by the Examiner.

11)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

12)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

## Priority under 35 U.S.C. § 119

13)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All  b)☐ Some * c)☐ None of:

      1.☐ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

## Attachment(s)

1)☐ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☒ Information Disclosure Statement(s) (PTO/SB/08) Paper No(s)/Mail Date <u>04/14/2011</u>.

4)☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____ .

5)☐ Notice of Informal Patent Application

6)☐ Other: _____ .

SRPT-VYDS-0003468

Application/Control Number: 12/837,359                                      Page 2
Art Unit: 1635

## DETAILED ACTION

### *Status of Application/Amendment/Claims*

Applicant's response filed 06/30/2011 has been considered. Rejections and/or objections not reiterated from the previous office action mailed 03/30/2011 are hereby withdrawn. The following rejections and/or objections are either newly applied or are reiterated and are the only rejections and/or objections presently applied to the instant application. The text of those sections of Title 35, U.S. Code not included in this action can be found in a prior Office action.

With entry of the amendment filed on 06/30/2011, claims 15, 16 and 18-46 are pending in the application. Claims 15, 16, 18-32 and 38-46 are currently under examination. Claims 33-37 and non-elected sequences are withdrawn as being drawn to a non-elected invention.

### *New Claim Objections and Rejections*

### *Sequence Compliance*

This application contains sequence disclosures that are encompassed by the definitions for nucleotide and/or amino acid sequences set forth in 37 CFR 1.821(a)(1) and (a)(2). However, this application fails to comply with the requirements of 37 CFR 1.821 through 1.825 for the reason(s) set forth below: The instant specification contains sequences listed in tables that do not have the require sequence identifier.

SRPT-VYDS-0003469

Application/Control Number: 12/837,359                                                Page 3
Art Unit: 1635

A complete response to this office action must correct the defects cited above regarding compliance with the sequence rules and a response to the action on the merits which follows.

The aforementioned instance of failure to comply is not intended as an exhaustive list of all such potential failures to comply in the instant application. Applicants are encouraged to thoroughly review the application to ensure that the entire application is in full compliance with all sequence rules. This requirement will not be held in abeyance.

### *Claim Objections*

Claims 45-46, SEQ ID No. 195, are objected to as being dependent upon a rejected base claim and reciting non-elected subject matter, but would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims and deleting non-elected subject matter.

### *Claim Rejections - 35 USC § 112*

The following is a quotation of the second paragraph of 35 U.S.C. 112:

The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

Claim 16 is rejected under 35 U.S.C. 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.

Claim 16 is drawn to an isolated antisense oligonucleotide of claim 15 comprising SEQ ID No. 195. The oligonucleotide having SEQ ID No. 195 is 31 nucleotides in

SRPT-VYDS-0003470

Application/Control Number: 12/837,359                                    Page 4
Art Unit: 1635

length which is the maximum length recited in claim 15.  Therefore the recitation of an

oligonucleotide comprising SEQ ID No. 195 implies the antisense oligonucleotide is

longer than 31 nucleotides and must contain SEQ ID No. 195. Thus the clam is

indefinite because an antisense oligonucleotide of claim 15 can only consist or is SEQ

ID No. 195.


### *Response to Arguments*

### *Claim Rejections - 35 USC § 112*

The rejection of claims 15, 17-32 and 38-44 are rejected under 35 U.S.C. 112,

second paragraph, as being indefinite for failing to particularly point out and distinctly

claim the subject matter which applicant regards as the invention is withdrawn.


### *Claim Rejections - 35 USC § 102*

The rejection of claims 15 and 19 are rejected under 35 U.S.C. 102(e) as being

anticipated by Xue et al. (US Patent No. 7,250,289 and sequence listing below) is

maintained for the reasons of record.

Claims 15 and 19 are drawn to an isolated antisense oligonucleotide of 20 to 31

nucleotides in length comprising sequence that is complementary to an exon 53 target

region H53A(+23+47), H53A(+39/69) or both.

Claim 15 has been amended such that the oligonucleotide 20 to 31 nucleotides

in length "is complementary" to annealing sites and recited. The complementarity of the

claimed oligonucleotide is defined as having a sufficient degree of complementarity or

SRPT-VYDS-0003471

Application/Control Number: 12/837,359                                    Page 5
Art Unit: 1635

precise base pairing such that stable and specific binding occurs between the

oligonucleotide and the DNA or RNA target and need not be 100% complementary to tis

target (see paragraph [0074] reproduced below. Thus the claims as recited do not

require the antisense oligonucleotide to be 100% complementary to the target region,

based on the definition in the instant specification.

[0074] **The oligonucleotide and the DNA or RNA are complementary to each other when a sufficient number of corresponding positions in each molecule are occupied by nucleotides which can hydrogen bond with each other.** Thus, "specifically hybridisable" and "complementary" are terms which are used to indicate a sufficient degree of complementarity or precise pairing such that stable and specific binding occurs between the oligonucleotide and the DNA or RNA target**. It is understood in the art that the sequence of an antisense molecule need not be 100% complementary to that of its target sequence** to be specifically hybridisable. An antisense molecule is specifically hybridisable when binding of the compound to the target DNA or RNA molecule interferes with the normal function of the target DNA or RNA to cause a loss of utility, and there is a sufficient degree of complementarity to avoid non-specific binding of the antisense compound to non-target sequences under conditions in which specific binding is desired, i.e., under physiological conditions in the case of in vivo assays or therapeutic treatment, and in the case of in vitro assays, under conditions in which the assays are performed.

The oligonucleotide taught by Xue et al. has 14 nucleotides that are

complementary to the target annealing site H53A (+23+47) and as shown in the prior

art, functional antisense oligonucleotides can be 8 to 50 nucleotides in length. See

Bennett et al. (columns 5 and 7 of Patent No. 6,656,732 of record) and reproduced

below.

33)  In the context of this invention, "hybridization" means hydrogen bonding, which may be Watson-Crick, Hoogsteen or reversed Hoogsteen hydrogen bonding, between complementary nucleoside or nucleotide bases.  For example, adenine and thymine are complementary nucleobases which pair through the formation of hydrogen bonds.  "Complementary," as used herein, refers to the capacity for precise pairing between two nucleotides.  For example, if a nucleotide at a certain position of an oligonucleotide is capable of hydrogen bonding with a nucleotide at the same position of a DNA or RNA molecule, then the oligonucleotide and the DNA or RNA are considered to be complementary to each other at that position.  **The oligonucleotide and the DNA or RNA are complementary to each other when a**

SRPT-VYDS-0003472

Application/Control Number: 12/837,359                                          Page 6
Art Unit: 1635

**sufficient number of corresponding positions in each molecule are occupied by nucleotides which can hydrogen bond with each other.** Thus, "specifically hybridizable" and "complementary" are terms which are used to indicate a sufficient degree of complementarity or precise pairing such that stable and specific binding occurs between the oligonucleotide and the DNA or RNA target. **It is understood in the art that the sequence of an antisense compound need not be 100% complementary to that of its target nucleic acid** to be specifically hybridizable. An antisense compound is specifically hybridizable when binding of the compound to the target DNA or RNA molecule interferes with the normal function of the target DNA or RNA to cause a loss of utility, and there is a sufficient degree of complementarity to avoid non-specific binding of the antisense compound to non-target sequences under conditions in which specific binding is desired, i.e., under physiological conditions in the case of in vivo assays or therapeutic treatment, and in the case of in vitro assays, under conditions in which the assays are performed.

(42) While antisense oligonucleotides are a preferred form of antisense compound, the present invention comprehends other oligomeric antisense compounds, including but not limited to oligonucleotide mimetics such as are described below. **The antisense compounds in accordance with this invention preferably comprise from about 8 to about 50 nucleobases (i.e. from about 8 to about 50 linked nucleosides). Particularly preferred antisense compounds are antisense oligonucleotides, even more preferably those comprising from about 12 to about 30 nucleobases.** Antisense compounds include ribozymes, external guide sequence (EGS) oligonucleotides (oligozymes), and other short catalytic RNAs or catalytic oligonucleotides which hybridize to the target nucleic acid and modulate its expression.

Thus the oligonucleotide taught by Xue et al. meets the claim limitations and would therefore anticipate the instant claims.

The rejection of claims 15 and 19 are rejected under 35 U.S.C. 102(b) as being anticipated by Asvadi et al. (Journal of Molecular Recognition 2002; 15; 321-330) is maintained for the reasons of record and as discussed above.

*Withdrawn rejections*

The rejection of claims 15, 19-21, 32, 41 and 44 under 35 U.S.C. 102(e) as being anticipated by Matsuo et al. (US Patent Application 2007/0082861 and sequence listing below) is withdrawn in response to claim amendments.

Application/Control Number: 12/837,359                                    Page 7
Art Unit: 1635

The rejection of claims 15 and 19 are rejected under 35 U.S.C. 102(b) as being anticipated by Rosso et al. (Bioinformatics 19 (11), 1441-1442 (2003) sequence listing below) is withdrawn in response to claim amendments.

### Claim Rejections - 35 USC § 103

The rejection of claims 15, 18-32 and 38-44 under 35 U.S.C. 103(a) as being unpatentable over Matsuo et al. (US Patent Application 2007/0082861) and Bennett et al. (US Patent No. 6,656,732) is maintained for the reasons of record.

Applicant argues Matsuo et al. do not teach an oligonucleotide of 20 to 31 nucleotides in length or teach or suggest that increasing the oligonucleotide length or targeting either of the claimed regions and Bennett et al. fails to cure the deficiencies of Matsuo et al.

In response, the claims do not recite any functional language such as the oligonucleotides of 20 to 31 nucleotides having the ability to induce exon skipping more efficiently or targeting multiple annealing regions.

Matusuo et al. teach an antisense oligonucleotide having 18 nucleotides in length that are complementary to the annealing site H53A (+23+47) and as explained early it would have been obvious to make the oligonucleotide longer in length to improve the efficiency of exon binding because as shown by Bennett et al., the optimal length of an oligonucleotide is preferably up to 30 nucleotides in length.  It would have been obvious to incorporate said modifications given Bennett et al. teach such modifications increase the oligonucleotides stability.  One of skill in the art would have wanted to incorporate

SRPT-VYDS-0003474

Application/Control Number: 12/837,359                                    Page 8
Art Unit: 1635

such modifications given they were well known in the art to improve the efficacy of an

antisense oligonucleotide and the one of skill in the would have reasonably expected to

be able to incorporate said modifications given Bennett et al. teach detailed steps.

Thus in the absence of evidence to the contrary, the invention as a whole would

have been *prima facie* obvious to one of ordinary skill in the art at the time the invention

was made and the rejection is maintained.

### Conclusion

Applicant's amendment necessitated the new ground(s) of rejection presented in

this Office action. Accordingly, **THIS ACTION IS MADE FINAL**. See MPEP

§ 706.07(a). Applicant is reminded of the extension of time policy as set forth in 37

CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE
MONTHS from the mailing date of this action. In the event a first reply is filed within
TWO MONTHS of the mailing date of this final action and the advisory action is not
mailed until after the end of the THREE-MONTH shortened statutory period, then the
shortened statutory period will expire on the date the advisory action is mailed, and any
extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of
the advisory action. In no event, however, will the statutory period for reply expire later
than SIX MONTHS from the date of this final action.

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to KIMBERLY CHONG whose telephone number is 571-

272-3111. The examiner can normally be reached Monday thru Thursday between 6

and 3 pm.

SRPT-VYDS-0003475

Application/Control Number: 12/837,359                                         Page 9
Art Unit: 1635

If attempts to reach the examiner by telephone are unsuccessful please contact

the SPE for 1635 Heather Calamita at 571-272-2876. The fax phone number for the

organization where this application or proceeding is assigned is 571-273-8300.

Patent applicants with problems or questions regarding electronic images that can be viewed in the Patent Application Information Retrieval system (PAIR) can now contact the USPTO's Patent Electronic Business Center (Patent EBC) for assistance. Representatives are available to answer your questions daily from 6 am to midnight (EST). The toll free number is (866) 217-9197. When calling please have your application serial or patent number, the type of document you are having an image problem with, the number of pages and the specific nature of the problem. The Patent Electronic Business Center will notify applicants of the resolution of the problem within 5-7 business days. Applicants can also check PAIR to confirm that the problem has been corrected. The USPTO's Patent Electronic Business Center is a complete service center supporting all patent business on the Internet. The USPTO's PAIR system provides Internet-based access to patent application status and history information. It also enables applicants to view the scanned images of their own application file folder(s) as well as general patent information available to the public. For more information about the PAIR system, see http://pair-direct.uspto.gov.
For all other customer support, please call the USPTO Call Center (UCC) at 800-786-9199.


/Kimberly Chong/
Primary Examiner
Art Unit 1635

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/837,359 | 07/15/2010 | Stephen Donald Wilton | 120178.411C1 | 4040 |

500        7590        03/30/2011
SEED INTELLECTUAL PROPERTY LAW GROUP PLLC
701 FIFTH AVE
SUITE 5400
SEATTLE, WA 98104

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1635 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 03/30/2011 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

SRPT-VYDS-0003477

| *Office Action Summary* | Application No. 12/837,359 | Applicant(s) WILTON ET AL. | |
|---|---|---|---|
| | Examiner KIMBERLY CHONG | Art Unit 1635 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>24 January 2010</u>.
2a)☐ This action is **FINAL**.       2b)☒ This action is non-final.
3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) <u>15-44</u> is/are pending in the application.
    4a) Of the above claim(s) <u>37 and 38</u> is/are withdrawn from consideration.
5)☐ Claim(s) _____ is/are allowed.
6)☒ Claim(s) <u>15-32 and 38-44</u> is/are rejected.
7)☐ Claim(s) _____ is/are objected to.
8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☒ The specification is objected to by the Examiner.
10)☒ The drawing(s) filed on <u>15 July 2010</u> is/are:  a)☒ accepted or b)☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).
11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☒ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    a)☐ All   b)☐ Some * c)☒ None of:
       1.☒ Certified copies of the priority documents have been received.
       2.☐ Certified copies of the priority documents have been received in Application No. _____.
       3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)
2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3)☐ Information Disclosure Statement(s) (PTO/SB/08) Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____.
5)☐ Notice of Informal Patent Application
6)☐ Other: _____.

SRPT-VYDS-0003478

Application/Control Number: 12/837,359                                          Page 2

Art Unit: 1635

## DETAILED ACTION

### Election/Restrictions

Applicant's election without traverse of the restriction requirement of group IV, claims 15-32 in the reply filed on 01/24/2011 is acknowledged.

### Status of the Application

Claims 15-44 are pending.  Claims 15-32 and 38-44 are currently under examination.  Claims 33-37 and non-elected sequences are withdrawn as being drawn to a non-elected invention.

### Sequence Compliance

This application contains sequence disclosures that are encompassed by the definitions for nucleotide and/or amino acid sequences set forth in 37 CFR 1.821(a)(1) and (a)(2). However, this application fails to comply with the requirements of 37 CFR 1.821 through 1.825 for the reason(s) set forth below:  Figure 1 of the drawings recite nucleotide sequences that do not have the required sequence identifier in either the drawings or the brief description of the drawings on page 7 of the specification.

A complete response to this office action must correct the defects cited above regarding compliance with the sequence rules and a response to the action on the merits which follows.

The aforementioned instance of failure to comply is not intended as an exhaustive list of all such potential failures to comply in the instant application. Applicants are encouraged to thoroughly review the application to ensure that the entire

SRPT-VYDS-0003479

Application/Control Number: 12/837,359                                    Page 3
Art Unit: 1635

application is in full compliance with all sequence rules.  This requirement will not be

held in abeyance.


### Claim Objections

Claim 16, SEQ ID No. 195,  is objected to as being dependent upon a rejected

base claim and reciting non-elected subject matter, but would be allowable if rewritten in

independent form including all of the limitations of the base claim and any intervening

claims and deleting non-elected subject matter.


### Claim Rejections - 35 USC § 112

The following is a quotation of the second paragraph of 35 U.S.C. 112:

The specification shall conclude with one or more claims particularly pointing out and distinctly
claiming the subject matter which the applicant regards as his invention.

Claims 15, 17-32 and 38-44 are rejected under 35 U.S.C. 112, second

paragraph, as being indefinite for failing to particularly point out and distinctly claim the

subject matter which applicant regards as the invention.

Claims 15, 17 and 25 is drawn to an isolated antisense oligonucleotide of 10 to

50 nucleotides in length comprising sequence that specifically hybridizable to an exon

53 target region H53A(+23+47), H53A(+39+69) or both.  It is unclear how an

oligonucleotide having 10-45 nucleotides could specifically hybridize to both target

regions because to be capable of the claimed limitation, the oligonucleotide would need

to be at a minimum of 46 nucleotides to bind to both regions above. Claims 18-32 and

SRPT-VYDS-0003480

Application/Control Number: 12/837,359                                          Page 4
Art Unit: 1635

38-44 are rejected because they depend from the rejected claims and would include all

the limitations of the independent claims.

Thus the clams are indefinite.


Claims 41 and 44 are rejected under 35 U.S.C. 112, second paragraph, as being

indefinite for failing to particularly point out and distinctly claim the subject matter which

applicant regards as the invention.

Claims 41 and 44 lack antecedent basis because they recite the limitation "the

uracil bases are thymine bases" and claim 15 from which they depend do not recite the

oligonucleotide has uracil or thymine bases.


### *Claim Rejections - 35 USC § 102*

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that

form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

(e) the invention was described in (1) an application for patent, published under section 122(b), by another filed in the United States before the invention by the applicant for patent or (2) a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent, except that an international application filed under the treaty defined in section 351(a) shall have the effects for purposes of this subsection of an application filed in the United States only if the international application designated the United States and was published under Article 21(2) of such treaty in the English language.


Claims 15, 17 and 19 are rejected under 35 U.S.C. 102(e) as being anticipated

by Xue et al. (US Patent No. 7,250,289 and sequence listing below).

SRPT-VYDS-0003481

Application/Control Number: 12/837,359                                              Page 5
Art Unit: 1635

Claims 15, 17 and 19 are drawn to an isolated antisense oligonucleotide of 10 to 50 nucleotides in length comprising sequence that specifically hybridizable to an exon 53 target region H53A(+23+47), H53A(+39+69) or both. The claim limitation "comprising sequence that is specifically hybridizable" is interpreted such that a prior art oligonucleotide of 50 nucleotides in length could comprise a 10 nucleotide sequence that is specifically hybridizable to the claimed target region and that would meet the limitations of the claimed invention.

Xue et al. teach an oligonucleotide having 25 nucleotides in length wherein 14 nucleotides are complementary to the annealing site H53A (+23+47). Claim 19 recites the oligonucleotide does not activate RNAse H however because Xue et al. teach an identical product, the claimed properties or functions are presumed inherent.

The MPEP states:

**A REFERENCE TEACHING PRODUCT APPEARING TO BE SUBSTANTIALLY IDENTICAL IS MADE THE BASIS OF A REJECTION, AND THE EXAMINER PRESENTS EVIDENCE OR REASONING TENDING TO SHOW INHERENCY, THE BURDEN SHIFTS TO THE APPLICANT TO SHOW AN UNOBVIOUS DIFFERENCE**

"[T]he PTO can require an applicant to prove that the prior art products do not necessarily or inherently possess the characteristics of his [or her] claimed product. Whether the rejection is based on inherency' under 35 U.S.C. 102, on prima facie obviousness' under 35 U.S.C. 103, jointly or alternatively, the burden of proof is the same...[footnote omitted]." The burden of proof is similar to that required with respect to product-by-process claims. *In re Fitzgerald,* 619 F.2d 67, 70, 205 USPQ 594, 596 (CCPA 1980) (quoting *In re Best,* 562 F.2d 1252, 1255, 195 USPQ 430, 433-34 (CCPA 1977)).

**MPEP 2112.01:**

**PRODUCT AND APPARATUS CLAIMS ☐ WHEN THE STRUCTURE RECITED IN THE REFERENCE IS SUBSTANTIALLY IDENTICAL TO THAT OF THE CLAIMS, CLAIMED PROPERTIES OR FUNCTIONS ARE PRESUMED TO BE INHERENT**

Where the claimed and prior art products are identical or substantially identical in structure or composition, or are produced by identical or substantially identical processes, a prima facie case of either anticipation or obviousness has been established. In re Best, 562 F.2d 1252, 1255, 195

SRPT-VYDS-0003482

Application/Control Number: 12/837,359                                   Page 6
Art Unit: 1635

USPQ 430, 433 (CCPA 1977). ☐When the PTO shows a sound basis for believing that the products of the applicant and the prior art are the same, the applicant has the burden of showing that they are not.☐ *In re Spada*, 911 F.2d 705, 709, 15 USPQ2d 1655, 1658 (Fed. Cir. 1990). Therefore, the   prima facie case can be rebutted by evidence showing that the prior art products do not necessarily possess the characteristics of the claimed product. *In re Best*, 562 F.2d at 1255, 195 USPQ at 433.

**A REJECTION UNDER 35 U.S.C. 102/103 CAN BE MADE WHEN THE PRIOR ART PRODUCT SEEMS TO BE IDENTICAL EXCEPT THAT THE PRIOR ART IS SILENT AS TO AN INHERENT CHARACTERISTIC**

Where applicant claims a composition in terms of a function, property or characteristic and the composition of the prior art is the same as that of the claim but the function is not explicitly disclosed by the reference, the examiner may make a rejection under both 35 U.S.C. 102 and 103, expressed as a 102/103 rejection. "There is nothing inconsistent in concurrent rejections for obviousness under 35  U.S.C. 103 and for anticipation under 35 U.S.C. 102." *In re Best*, 562 F.2d 1252, 1255 n.4, 195 USPQ 430, 433 n.4 (CCPA 1977). This same rationale should also apply to product, apparatus, and process claims claimed in terms of function, property or characteristic. Therefore, a 35  U.S.C. 102/103 rejection is appropriate for these types of claims as well as for composition claims.

Thus the oligonucleotide taught by Xue et al. meets the claim limitations and

would therefore anticipate the instant claims.

```
RESULT 41
US-10-719-900-459016/c
; Sequence 459016, Application US/10719900
; Patent No. 7250289
; GENERAL INFORMATION:
;   APPLICANT: Xue Mei Zhou
;   TITLE OF INVENTION: Methods of Genetic Analysis of Mouse
;   FILE REFERENCE: 3528.1
;   CURRENT APPLICATION NUMBER: US/10/719,900
;   CURRENT FILING DATE:  2003-11-20
;   PRIOR APPLICATION NUMBER: 60/427,808
;   PRIOR FILING DATE: 2002 11 20
;   NUMBER OF SEQ ID NOS: 982914
;   SOFTWARE: Microarray Probe Sequence Listing Generator V 1.1
; Patent No. 7250289
; SEQ ID NO 459016
;   LENGTH: 25
;   TYPE: DNA
;   ORGANISM: Mus musculus
US-10-719-900-459016

  Query Match             56.0%;  Score 14;  DB 5;  Length 25;
  Best Local Similarity   57.1%;
```

Application/Control Number: 12/837,359                                    Page 7
Art Unit: 1635

```
  Matches    8;  Conservative    6;  Mismatches    0;  Indels    0;  Gaps
0;

Qy         4 AAGGUGUUCUUGUA 17
             ||||:|::|::|:|
Db        17 AAGGTGTTCTTGTA 4
```

Claims 15, 17, 19-21, 32, 41 and 44 are rejected under 35 U.S.C. 102(e) as

being anticipated by Matsuo et al. (US Patent Application 2007/0082861 and sequence

listing below).

Claims 15, 17, 19-21, 32, 41 and 44 are drawn to an isolated antisense

oligonucleotide of 10 to 50 nucleotides in length comprising sequence that specifically

hybridizable to an exon 53 target region H53A(+23+47), H53A(+39+69) or both.  The

claim limitation "comprising sequence that is specifically hybridizable" is interpreted

such that a prior art oligonucleotide of 50 nucleotides in length could comprise a 10

nucleotide sequence that is specifically hybridizable to the claimed target region and

that would meet the limitations of the claimed invention.

Matsuo et al. teach an oligonucleotide having 18 nucleotides in length that are

complementary to the annealing site H53A (+23+47). Matsuo et al. teach said

oligonucleotide is capable of exon skipping such as exon 53 and teach various

pharmaceutical compositions and modifications of said oligonucleotide comprising

sugar modifications and phosphate (see entire reference). Claim 19 recites the

oligonucleotide does not activate RNAse H however because Matsuo et al. teach an

identical product, the claimed properties or functions are presumed inherent (see MPEP

referenced above).

SRPT-VYDS-0003484

Application/Control Number: 12/837,359                                              Page 8

Art Unit: 1635

 Thus the oligonucleotide taught by Matsuo et al. meets the claim limitations and

would therefore anticipate the instant claims.

```
RESULT 9
US-10-536-258A-75
; Sequence 75, Application US/10536258A
; Publication No. US20070082861A1
; GENERAL INFORMATION:
;  APPLICANT: MATSUO, MASAFUMI
;  APPLICANT:  TAKESHIMA, YASUHIRO
;  APPLICANT:  KOIZUMI, MAKOTO
;  TITLE OF INVENTION: ENA nucleic acid pharmaceuticals capable of modifying
splicing of mRNA
;  TITLE OF INVENTION:  precursors
;  FILE REFERENCE: 271295US0XPCT
;  CURRENT APPLICATION NUMBER: US/10/536,258A
;  CURRENT FILING DATE:  2005-05-25
;  PRIOR APPLICATION NUMBER: PCT/JP03/14915
;  PRIOR FILING DATE: 2003-11-21
;  PRIOR APPLICATION NUMBER: JP 2002-340857
;  PRIOR FILING DATE: 2002-11-25
;  PRIOR APPLICATION NUMBER: JP 2003-204381
;  PRIOR FILING DATE: 2003-07-31
;  NUMBER OF SEQ ID NOS: 88
;  SOFTWARE: PatentIn version 3.1
; SEQ ID NO 75
;  LENGTH: 18
;  TYPE: DNA
;  ORGANISM: Artificial Sequence
;  FEATURE:
;  OTHER INFORMATION: Synthetic DNA
US-10-536-258A-75

  Query Match             72.0%;  Score 18;  DB 18;  Length 18;
  Best Local Similarity   61.1%;
  Matches   11;  Conservative   7;  Mismatches   0;  Indels   0;  Gaps
0;

Qy         1 CUGAAGGUGUUCUUGUAC 18
             |:|||||:|::|::|:||
Db         1 CTGAAGGTGTTCTTGTAC 18
```

 Claims 15, 17 and 19 are rejected under 35 U.S.C. 102(b) as being anticipated

by Rosso et al. (Bioinformatics 19 (11), 1441-1442 (2003) sequence listing below).

SRPT-VYDS-0003485

Application/Control Number: 12/837,359                                    Page 9
Art Unit: 1635

Claims 15, 17 and 19 are drawn to an isolated antisense oligonucleotide of 10 to 50 nucleotides in length comprising sequence that specifically hybridizable to an exon 53 target region H53A(+23+47), H53A(+39+69) or both.  The claim limitation "comprising sequence that is specifically hybridizable" is interpreted such that a prior art oligonucleotide of 50 nucleotides in length could comprise a 10 nucleotide sequence that is specifically hybridizable to the claimed target region and that would meet the limitations of the claimed invention.

Rosso et al. teach an oligonucleotide having 33 nucleotides in length wherein 10 nucleotides are complementary to the annealing site H53A (+23+47). Claim 19 recites the oligonucleotide does not activate RNAse H however because Rosso et al. teach an identical product, the claimed properties or functions are presumed inherent. (see MPEP referenced above).

Thus the oligonucleotide taught by Rosso et al. meets the claim limitations and would therefore anticipate the instant claims.

```
RESULT 135
BX949132
LOCUS       BX949132                33 bp    DNA      linear   GSS 05-APR-
2004
DEFINITION  Arabidopsis thaliana T-DNA flanking sequence GK-796C05-024950,
            genomic survey sequence.
ACCESSION   BX949132
VERSION     BX949132.1  GI:42598818
KEYWORDS    GSS.
SOURCE      Arabidopsis thaliana (thale cress)
  ORGANISM  Arabidopsis thaliana
            Eukaryota; Viridiplantae; Streptophyta; Embryophyta;
Tracheophyta;
            Spermatophyta; Magnoliophyta; eudicotyledons; core
eudicotyledons;
            rosids; malvids; Brassicales; Brassicaceae; Arabidopsis.
REFERENCE   1
```

SRPT-VYDS-0003486

Application/Control Number: 12/837,359                                        Page 10
Art Unit: 1635

```
    AUTHORS    Li,Y., Rosso,M.G., Strizhov,N., Viehoever,P. and Weisshaar,B.
    TITLE      GABI-Kat SimpleSearch: a flanking sequence tag (FST) database for
               the identification of T-DNA insertion mutants in Arabidopsis
               thaliana
    JOURNAL    Bioinformatics 19 (11), 1441-1442 (2003)
    PUBMED     12874060
REFERENCE  2
    AUTHORS    Rosso,M.G., Li,Y., Strizhov,N., Reiss,B., Dekker,K. and
               Weisshaar,B.
    TITLE      An Arabidopsis thaliana T-DNA mutagenized population (GABI-Kat)
for
               flanking sequence tag-based reverse genetics
    JOURNAL    Plant Mol. Biol. 53 (1-2), 247-259 (2003)
    PUBMED     14756321
REFERENCE  3
    AUTHORS    Strizhov,N., Li,Y., Rosso,M.G., Viehoever,P., Dekker,K.A. and
               Weisshaar,B.
    TITLE      High-throughput generation of sequence indexes from T-DNA
               mutagenized Arabidopsis thaliana lines
    JOURNAL    BioTechniques 35 (6), 1164-1168 (2003)
    PUBMED     14682050
REFERENCE  4  (bases 1 to 33)
    AUTHORS    Rosso,M.G., Li,Y., Strizhov,N. and Weisshaar,B.
    TITLE      Direct Submission
    JOURNAL    Submitted (31-MAR-2004) Weisshaar B., Max-Planck-Institut fuer
               Zuechtungsforschung, Carl-von-Linne-Weg 10, Koeln, 50829, Germany
COMMENT        This sequence has been recovered from the left border of the T-
DNA.
               It indicates an insertion within the locus defined by BAC clone
               F3L24. Details on the protocols used for generation of the
sequence
               are described in References 1-3. The sequences are generated at
the
               MPI for Plant Breeding Research in the context of the GABI-Kat
               project. GABI-Kat is part of the German Plant Genomics program
               designated 'GABI'. Information on line availability can be found
               at: http://www.mpiz-koeln.mpg.de/GABI-Kat/.
FEATURES             Location/Qualifiers
     source          1. .33
                     /organism="Arabidopsis thaliana"
                     /mol_type="genomic DNA"
                     /db_xref="taxon:3702"
                     /clone="GK-796C05-024950"
                     /clone_lib="Arabidopsis thaliana T-DNA insertion lines"
                     /ecotype="Col-0"
                     /note="PCR was performed on DNA from Arabidopsis
thaliana
                     plants (T1) which were transformed with the T-DNA from
                     vector pAC161 (GenBank accession number: AJ537514). The
                     lines contain one or more T-DNA insertions. The DNA
                     fragment(s) resulting from the PCR were directly
sequenced
                     to determine the genomic sequence flanking the
insertion.
```

Application/Control Number: 12/837,359                                              Page 11
Art Unit: 1635

```
                      T-DNA derived sequences were removed."
ORIGIN

  Query Match              40.0%;  Score 10;  DB 27;  Length 33;
  Best Local Similarity    50.0%;
  Matches     5;  Conservative    5;  Mismatches    0;  Indels    0;  Gaps
0;

Qy          9 GUUCUUGUAC 18
              |::|::|:||
Db         12 GTTCTTGTAC 21
```

Claims 15, 17 and 19 are rejected under 35 U.S.C. 102(b) as being anticipated

by Asvadi et al. (Journal of Molecular Recognition 2002; 15; 321-330).

Claims 15, 17 and 19 are drawn to an isolated antisense oligonucleotide of 10 to

50 nucleotides in length comprising sequence that specifically hybridizable to an exon

53 target region H53A(+23+47), H53A(+39+69) or both.  The claim limitation

"comprising sequence that is specifically hybridizable" is interpreted such that a prior art

oligonucleotide of 50 nucleotides in length could comprise a 10 nucleotide sequence

that is specifically hybridizable to the claimed target region and that would meet the

limitations of the claimed invention.

Asvadi et al. teach an oligonucleotide having 30 nucleotides in length wherein 13

nucleotides are complementary to the annealing site H53A (+39+69). Claim 19 recites

the oligonucleotide does not activate RNAse H however because Asvadi et al. teach an

identical product, the claimed properties or functions are presumed inherent. (see

MPEP referenced above).

Thus the oligonucleotide taught by Asvadi et al. meets the claim limitations and

would therefore anticipate the instant claims.

SRPT-VYDS-0003488

Application/Control Number: 12/837,359                                    Page 12
Art Unit: 1635

### *Claim Rejections - 35 USC § 103*

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

Claims 15, 17-32 and 38-44 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Matsuo et al. (US Patent Application 2007/0082861) and Bennett et

al. (US Patent No. 6,656,732).

The claims are drawn to an isolated antisense oligonucleotide of 10 to 50

nucleotides in length comprising sequence that specifically hybridizable to an exon 53

target region H53A(+23+47), H53A(+39+69) or both wherein the oligonucleotide

comprises modifies bases, sugars and linkages.  The claim limitation "comprising

sequence that is specifically hybridizable" is interpreted such that a prior art

oligonucleotide of 50 nucleotides in length could comprise a 10 nucleotide sequence

that is specifically hybridizable to the claimed target region and that would meet the

limitations of the claimed invention.

Matsuo et al. teach an oligonucleotide having 18 nucleotides in length that are

complementary to the annealing site H53A (+23+47). Matsuo et al. teach said

oligonucleotide is capable of exon skipping such as exon 53 and teach various

pharmaceutical compositions and modifications of said oligonucleotide comprising

sugar modifications and phosphate (see entire reference). Claim 19 recites the

oligonucleotide does not activate RNAse H however because Matsuo et al. teach an

SRPT-VYDS-0003489

Application/Control Number: 12/837,359                                    Page 13
Art Unit: 1635

identical product, the claimed properties or functions are presumed inherent (see MPEP referenced above).

Matsuo et al. do not teach modifications such as morpholinos, peptide nucleic acids, and modified phosphates such as phosphorothioates or conjugates such as polyethylene glycol.

Bennett et al. teach modification of antisense compounds comprising modified 2' sugars, morpholinos, peptide nucleic acids, and modified phosphates such as phosphorothioates or conjugates such as polyethylene glycol (see at least paragraphs 44-45 and 47-56). Further Bennett et al. teach oligonucleotides can be up to 50 nucleotides in length thus it would have been obvious to make the oligonucleotide taught by Matsuo et al. a longer length to bind to both regions of exon 53 to increase the efficiency of exon skipping. It would have been obvious to incorporate said modifications given Bennett et al. teach such modifications increase the oligonucleotides stability. One of skill in the art would have wanted to incorporate such modifications given they were well known in the art to improve the efficacy of an antisense oligonucleotide and the one of skill in the would have reasonably expected to be able to incorporate said modifications given Bennett et al. teach detailed steps.

Thus in the absence of evidence to the contrary, the invention as a whole would have been *prima facie* obvious to one of ordinary skill in the art at the time the invention was made.

SRPT-VYDS-0003490

Application/Control Number: 12/837,359                                    Page 14
Art Unit: 1635

### *Conclusion*

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Kimberly Chong whose telephone number is 571-272-

3111.  The examiner can normally be reached Monday thru Friday between 7-4 pm.

If attempts to reach the examiner by telephone are unsuccessful please contact

the SPE for 1635 Heather Calamita at 571-272-2876. The fax phone number for the

organization where this application or proceeding is assigned is 571-273-8300.

Patent applicants with problems or questions regarding electronic images that
can be viewed in the Patent Application Information Retrieval system (PAIR) can now
contact the USPTO's Patent Electronic Business Center (Patent EBC) for assistance.
Representatives are available to answer your questions daily from 6 am to midnight
(EST). The toll free number is (866) 217-9197. When calling please have your
application serial or patent number, the type of document you are having an image
problem with, the number of pages and the specific nature of the problem.  The Patent
Electronic Business Center will notify applicants of the resolution of the problem within
5-7 business days. Applicants can also check PAIR to confirm that the problem has
been corrected.  The USPTO's Patent Electronic Business Center is a complete service
center supporting all patent business on the Internet. The USPTO's PAIR system
provides Internet-based access to patent application status and history information. It
also enables applicants to view the scanned images of their own application file
folder(s) as well as general patent information available to the public. For more
information about the PAIR system, see http://pair-direct.uspto.gov.
For all other customer support, please call the USPTO Call Center (UCC) at 800-
786-9199.

/Kimberly Chong/
Primary Examiner
Art Unit 1635

Application/Control Number: 12/837,359                                    Page 15
Art Unit: 1635

SRPT-VYDS-0003492

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/837,359 | 07/15/2010 | Stephen Donald Wilton | 120178.411C1 | 4040 |

500          7590          12/22/2010

SEED INTELLECTUAL PROPERTY LAW GROUP PLLC
701 FIFTH AVE
SUITE 5400
SEATTLE, WA 98104

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1635 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 12/22/2010 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

SRPT-VYDS-0003493

| *Office Action Summary* | Application No. | Applicant(s) |
| | 12/837,359 | WILTON ET AL. |
| | Examiner | Art Unit | |
| | KIMBERLY CHONG | 1635 | |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE *1* MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on *28 September 2010*.

2a)☐ This action is **FINAL**.        2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) *15-37* is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☐ Claim(s) _____ is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☒ Claim(s) *15-37* are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All    b)☐ Some * c)☐ None of:

      1.☐ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☐ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☐ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____ .

5)☐ Notice of Informal Patent Application

6)☐ Other: _____.

SRPT-VYDS-0003494

Application/Control Number: 12/837,359                                          Page 2

Art Unit: 1635

# DETAILED ACTION

## *Election/Restrictions*

Restriction to one of the following inventions is required under 35 U.S.C. 121:

I.      Claims 15-32, drawn to an isolated antisense oligonucleotide 10 to 50 nucleotides in length that is specifically hybridizable to an exon 44 target region, classifiable in class 536, subclass 24.5.  **This group is subject to a further election of a sequence from claim 16.**

II.     Claims 15-32, drawn to an isolated antisense oligonucleotide 10 to 50 nucleotides in length that is specifically hybridizable to an exon 45 target region, classifiable in class 536, subclass 24.5.  **This group is subject to a further election of a sequence from claim 16.**

III.    Claims 15-32, drawn to an isolated antisense oligonucleotide 10 to 50 nucleotides in length that is specifically hybridizable to an exon 50 target region, classifiable in class 536, subclass 24.5.  **This group is subject to a further election of a sequence from claim 16.**

IV.     Claims 15-32, drawn to an isolated antisense oligonucleotide 10 to 50 nucleotides in length that is specifically hybridizable to an exon 53 target region, classifiable in class 536, subclass 24.5.  **This group is subject to a further election of a sequence from claim 16.**

V.      Claims 33-37, drawn to a method of inducing exon skipping of a dystrophin exon 44, classifiable in class 514, subclass 44. **This group is subject to a further election of a sequence from claim 16.**

Application/Control Number: 12/837,359                                    Page 3
Art Unit: 1635

    VI.    Claims 33-37, drawn to a method of inducing exon skipping of a dystrophin exon 45, classifiable in class 514, subclass 44. **This group is subject to a further election of a sequence from claim 16.**

    VII.    Claims 33-37, drawn to a method of inducing exon skipping of a dystrophin exon 50, classifiable in class 514, subclass 44. **This group is subject to a further election of a sequence from claim 16.**

    VIII.    Claims 33-37, drawn to a method of inducing exon skipping of a dystrophin exon 53, classifiable in class 514, subclass 44. **This group is subject to a further election of a sequence from claim 16.**

The inventions are distinct, each from the other because of the following reasons:

Inventions groups I-IV are unrelated. Inventions are unrelated if it can be shown that they are not disclosed as capable of use together and they have different designs, modes of operation, and effects (MPEP § 802.01 and § 806.06). In the instant case, the different inventions are drawn to antisense oligonucleotides that have different structures i.e. sequences and have different modes of operation in that they bind to different exon regions. Furthermore restriction is proper because the subject matter is divergent and non-coextensive and a search for one would not necessarily reveal art against the other. It is therefore a burden to search these inventions in a single application.

SRPT-VYDS-0003496

Application/Control Number: 12/837,359                                    Page 4
Art Unit: 1635

     Inventions group I and groups VI-VIII are directed to an unrelated product and process.  Product and process inventions are unrelated if it can be shown that the product cannot be used in, or made by, the process.  See MPEP § 802.01 and § 806.06.  In the instant case, group 1 is drawn to an oligonucleotide that binds to a specific region of exon 44 and cannot be used in the methods of groups VI-VIII which require antisense oligonucleotides to bind to specific regions of entirely different exons.

     Inventions group I and group V are related as product and process of use.  The inventions can be shown to be distinct if either or both of the following can be shown: (1) the process for using the product as claimed can be practiced with another materially different product or (2) the product as claimed can be used in a materially different process of using that product. See MPEP § 806.05(h).  In the instant case the product antisense can be used in a materially different process such as in situ hybridization. It is therefore a burden to search these inventions in a single application.


     Inventions group II and groups V, VII and VIII are directed to an unrelated product and process.  Product and process inventions are unrelated if it can be shown that the product cannot be used in, or made by, the process.  See MPEP § 802.01 and § 806.06.  In the instant case, group II is drawn to an oligonucleotide that binds to a specific region of exon 45 and cannot be used in the methods of groups V, VII and VIII which require antisense oligonucleotides to bind to specific regions of entirely different exons.

SRPT-VYDS-0003497

Application/Control Number: 12/837,359                                    Page 5
Art Unit: 1635

Inventions group II and group VI are related as product and process of use.  The
inventions can be shown to be distinct if either or both of the following can be shown: (1)
the process for using the product as claimed can be practiced with another materially
different product or (2) the product as claimed can be used in a materially different
process of using that product. See MPEP § 806.05(h).  In the instant case the product
antisense can be used in a materially different process such as in situ hybridization. It is
therefore a burden to search these inventions in a single application.

Inventions group III and groups V, VI and VIII are directed to an unrelated
product and process.  Product and process inventions are unrelated if it can be shown
that the product cannot be used in, or made by, the process.  See MPEP § 802.01 and
§ 806.06.  In the instant case, group II is drawn to an oligonucleotide that binds to a
specific region of exon 50 and cannot be used in the methods of groups V, II and VIII
which require antisense oligonucleotides to bind to specific regions of entirely different
exons.

Inventions group III and group VII are related as product and process of use.
The inventions can be shown to be distinct if either or both of the following can be
shown: (1) the process for using the product as claimed can be practiced with another
materially different product or (2) the product as claimed can be used in a materially
different process of using that product. See MPEP § 806.05(h).  In the instant case the
product antisense can be used in a materially different process such as in situ
hybridization. It is therefore a burden to search these inventions in a single application.

SRPT-VYDS-0003498

Application/Control Number: 12/837,359                                                    Page 6
Art Unit: 1635

Inventions group IV and groups V, VI and VII are directed to an unrelated product and process.  Product and process inventions are unrelated if it can be shown that the product cannot be used in, or made by, the process.  See MPEP § 802.01 and § 806.06.  In the instant case, group II is drawn to an oligonucleotide that binds to a specific region of exon 53 and cannot be used in the methods of groups V, II and VIII which require antisense oligonucleotides to bind to specific regions of entirely different exons.

Inventions group IV and group VIII are related as product and process of use. The inventions can be shown to be distinct if either or both of the following can be shown: (1) the process for using the product as claimed can be practiced with another materially different product or (2) the product as claimed can be used in a materially different process of using that product. See MPEP § 806.05(h).  In the instant case the product antisense can be used in a materially different process such as in situ hybridization. It is therefore a burden to search these inventions in a single application.

Restriction for examination purposes as indicated is proper because all these inventions listed in this action are independent or distinct for the reasons given above and there would be a serious search and examination burden if restriction were not required because one or more of the following reasons apply:

(a) the inventions have acquired a separate status in the art in view of their different classification;

SRPT-VYDS-0003499

Application/Control Number: 12/837,359                                          Page 7
Art Unit: 1635

(b) the inventions have acquired a separate status in the art due to their recognized divergent subject matter;

(c) the inventions require a different field of search (for example, searching different classes/subclasses or electronic resources, or employing different search queries);

(d) the prior art applicable to one invention would not likely be applicable to another invention;

(e) the inventions are likely to raise different non-prior art issues under 35 U.S.C. 101 and/or 35 U.S.C. 112, first paragraph.

**Applicant is advised that the reply to this requirement to be complete <u>must</u> include (i) an election of a invention to be examined** even though the requirement may be traversed (37 CFR 1.143) **and (ii) <u>identification of the claims encompassing the elected invention</u>.**

The election of an invention may be made with or without traverse. To reserve a right to petition, the election must be made with traverse. If the reply does not distinctly and specifically point out supposed errors in the restriction requirement, the election shall be treated as an election without traverse. Traversal must be presented at the time of election in order to be considered timely.  Failure to timely traverse the requirement will result in the loss of right to petition under 37 CFR 1.144.

If claims are added after the election, applicant must indicate which of these claims are readable upon the elected invention.

Application/Control Number: 12/837,359                                          Page 8
Art Unit: 1635

Should applicant traverse on the ground that the inventions are not patentably

distinct, applicant should submit evidence or identify such evidence now of record

showing the inventions to be obvious variants or clearly admit on the record that this is

the case. In either instance, if the examiner finds one of the inventions unpatentable

over the prior art, the evidence or admission may be used in a rejection under 35 U.S.C.

103(a) of the other invention.

Applicant is reminded that upon the cancellation of claims to a non-elected

invention, the inventorship must be amended in compliance with 37 CFR 1.48(b) if one

or more of the currently named inventors is no longer an inventor of at least one claim

remaining in the application. Any amendment of inventorship must be accompanied by

a request under 37 CFR 1.48(b) and by the fee required under 37 CFR 1.17(i).


Furthermore, should applicants elect to prosecute groups I-VIII, these groups are

subject to further restriction as follows.  Claim 16 is subject to an additional restriction

since it is not considered to be a proper genus/Markush.  See MPEP 803.02 –

PRACTICE RE MARKUSH-TYPE CLAIMS – if the members of the Markush group are

sufficiently few in number or so closely related that a search and examination of the

entire claim can be made without serious burden, the examiner must examine all the

members of the Markush group in the claims on the merits, even though they are

directed to independent and distinct inventions.  In such a case, the examiner will not

follow the procedure described below and will not require restriction.  Since the

decisions in In re Weber, 580 F.2d 455, 198 USPQ 300 (CCPA 1980); and In re Haas,

SRPT-VYDS-0003501

Application/Control Number: 12/837,359                                        Page 9
Art Unit: 1635

580 F.2d 461, 198 USPQ 334 (CCPA 1978), it is improper for the Office to refuse to

examine that which applicants regard as their invention, unless the subject matter in a

claim lacks unity of invention.  In re Harnish, 631 F.2d 716, 206 USPQ 300 (CCPA

1980); and Ex parte Hozumi, 3 USPQ2d 1059 (Bd. Pat. App. & Int. 1984).  Broadly,

unity of invention exists where compounds included within a Markush group (1) share a

common utility, and (2) share a substantial structure feature disclosed as being

essential to that utility.

        Claim 16 specifically claims antisense oligonucleotide sequences having SEQ ID

Nos. 165, 167, 173, 175, 191, 192, 193, 195, 207 and 211.  Each sequence is

considered to be unrelated, since each sequence claimed is structurally and functionally

independent and distinct.  Furthermore, a search of more than one (1) of the sequences

claimed in claim 16 presents an undue burden on the Patent and Trademark Office due

to the complex nature of the search and corresponding examination of more than one

(1) of the claimed sequences.  In view of the foregoing, one (1) sequence is considered

to be a reasonable number of sequences for examination.  Accordingly, applicants are

required to elect a total of one (1) sequence from claim 16.  **Note that this is not a**

**species election.  Election of a sequence must be commensurate in scope to the**

**exon target region of each group.**


        The examiner has required restriction between product and process claims.
Where applicant elects claims directed to the product, and the product claims are
subsequently found allowable, withdrawn process claims that depend from or otherwise
require all the limitations of the allowable product claim will be considered for rejoinder.

Application/Control Number: 12/837,359                                      Page 10
Art Unit: 1635

All claims directed a nonelected process invention must require all the limitations of an allowable product claim for that process invention to be rejoined.

In the event of rejoinder, the requirement for restriction between the product claims and the rejoined process claims will be withdrawn, and the rejoined process claims will be fully examined for patentability in accordance with 37 CFR 1.104. Thus, to be allowable, the rejoined claims must meet all criteria for patentability including the requirements of 35 U.S.C. 101, 102, 103 and 112. Until all claims to the elected product are found allowable, an otherwise proper restriction requirement between product claims and process claims may be maintained. Withdrawn process claims that are not commensurate in scope with an allowable product claim will not be rejoined. See MPEP § 821.04(b). Additionally, in order to retain the right to rejoinder in accordance with the above policy, applicant is advised that the process claims should be amended during prosecution to require the limitations of the product claims. **Failure to do so may result in a loss of the right to rejoinder**. Further, note that the prohibition against double patenting rejections of 35 U.S.C. 121 does not apply where the restriction requirement is withdrawn by the examiner before the patent issues. See MPEP § 804.01.

### Conclusion

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Kimberly Chong whose telephone number is 571-272-3111.  The examiner can normally be reached Monday thru Friday between 7-4 pm.

If attempts to reach the examiner by telephone are unsuccessful please contact the Acting SPE for 1635 Heather Calamita at 571-272-2876.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Patent applicants with problems or questions regarding electronic images that can be viewed in the Patent Application Information Retrieval system (PAIR) can now contact the USPTO's Patent Electronic Business Center (Patent EBC) for assistance. Representatives are available to answer your questions daily from 6 am to midnight (EST). The toll free number is (866) 217-9197. When calling please have your application serial or patent number, the type of document you are having an image problem with, the number of pages and the specific nature of the problem.  The Patent Electronic Business Center will notify applicants of the resolution of the problem within 5-7 business days. Applicants can also check PAIR to confirm that the problem has been corrected.  The USPTO's Patent Electronic Business Center is a complete service center supporting all patent business on the Internet. The USPTO's PAIR system

SRPT-VYDS-0003503

Application/Control Number: 12/837,359                                        Page 11
Art Unit: 1635

provides Internet-based access to patent application status and history information. It also enables applicants to view the scanned images of their own application file folder(s) as well as general patent information available to the public. For more information about the PAIR system, see http://pair-direct.uspto.gov.

For all other customer support, please call the USPTO Call Center (UCC) at 800-786-9199.


/Kimberly Chong/
Primary Examiner
Art Unit 1635

SRPT-VYDS-0003504



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

500       7590       02/14/2011

SEED INTELLECTUAL PROPERTY LAW GROUP PLLC
701 FIFTH AVE
SUITE 5400
SEATTLE, WA 98104

| EXAMINER |
| --- |
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
| --- | --- |
| 1635 | |

DATE MAILED: 02/14/2011

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
| --- | --- | --- | --- | --- |
| 12/860,078 | 08/20/2010 | Stephen Donald Wilton | 120178.411C3 | 9286 |

TITLE OF INVENTION: ANTISENSE OLIGONUCLEOTIDES FOR INDUCING EXON SKIPPING AND METHODS OF USE THEREOF

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
| --- | --- | --- | --- | --- | --- | --- |
| nonprovisional | YES | $755 | $300 | $0 | $1055 | 05/16/2011 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN <u>THREE MONTHS</u> FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. <u>THIS STATUTORY PERIOD CANNOT BE EXTENDED.</u> SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the SMALL ENTITY status shown above.

If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

A. If the status is the same, pay the TOTAL FEE(S) DUE shown above.

B. If the status above is to be removed, check box 5b on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and twice the amount of the ISSUE FEE shown above, or

If the SMALL ENTITY is shown as NO:

A. Pay TOTAL FEE(S) DUE shown above, or

B. If applicant claimed SMALL ENTITY status before, or is now claiming SMALL ENTITY status, check box 5a on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and 1/2 the ISSUE FEE shown above.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

Page 1 of 3

PTOL-85 (Rev. 02/11)

SRPT-VYDS-0003505

**PART B - FEE(S) TRANSMITTAL**

**Complete and send this form, together with applicable fee(s), to:** **Mail**   Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
**or Fax**   (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

```
        500        7590     02/14/2011
SEED INTELLECTUAL PROPERTY LAW GROUP PLLC
701 FIFTH AVE
SUITE 5400
SEATTLE, WA 98104
```

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/860,078 | 08/20/2010 | Stephen Donald Wilton | 120178.411C3 | 9286 |

TITLE OF INVENTION: ANTISENSE OLIGONUCLEOTIDES FOR INDUCING EXON SKIPPING AND METHODS OF USE THEREOF

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | YES | $755 | $300 | $0 | $1055 | 05/16/2011 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| CHONG, KIMBERLY | 1635 | 536-024500 |

**1.** Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

**2.** For printing on the patent front page, list

(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

**3.** ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE

(B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) :   ☐ Individual   ☐ Corporation or other private group entity   ☐ Government

**4a.** The following fee(s) are submitted:

☐ Issue Fee

☐ Publication Fee (No small entity discount permitted)

☐ Advance Order - # of Copies _____

**4b.** Payment of Fee(s): (**Please first reapply any previously paid issue fee shown above**)

☐ A check is enclosed.

☐ Payment by credit card. Form PTO-2038 is attached.

☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

**5. Change in Entity Status** (from status indicated above)

☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.   ☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____   Date _____

Typed or printed name _____   Registration No. _____

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 02/11) Approved for use through 08/31/2013.       OMB 0651-0033       U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

SRPT-VYDS-0003506



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/860,078 | 08/20/2010 | Stephen Donald Wilton | 120178.411C3 | 9286 |

500        7590        02/14/2011

SEED INTELLECTUAL PROPERTY LAW GROUP PLLC
701 FIFTH AVE
SUITE 5400
SEATTLE, WA 98104

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1635 | |

DATE MAILED: 02/14/2011

**Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)**
(application filed on or after May 29, 2000)

The Patent Term Adjustment to date is 0 day(s). If the issue fee is paid on the date that is three months after the mailing date of this notice and the patent issues on the Tuesday before the date that is 28 weeks (six and a half months) after the mailing date of this notice, the Patent Term Adjustment will be 0 day(s).

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

SRPT-VYDS-0003507

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

SRPT-VYDS-0003508

| *Notice of Allowability* | Application No. | Applicant(s) |
| --- | --- | --- |
| | 12/860,078 | WILTON ET AL. |
| | Examiner | Art Unit | |
| | KIMBERLY CHONG | 1635 | |

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--**

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to _11/13/2010_.

2. ☒ The allowed claim(s) is/are _15-38_.

3. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All   b) ☐ Some*   c) ☐ None  of the:

      1. ☐ Certified copies of the priority documents have been received.

      2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

      3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    * Certified copies not received: _____.

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

4. ☐ A SUBSTITUTE OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

    (a) ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review ( PTO-948) attached

      1) ☐ hereto or 2) ☐ to Paper No./Mail Date _____.

    (b) ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____.

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)

2. ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____

4. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

5. ☐ Notice of Informal Patent Application

6. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____ .

7. ☐ Examiner's Amendment/Comment

8. ☐ Examiner's Statement of Reasons for Allowance

9. ☐ Other _____.

| | /Kimberly Chong/ |
| --- | --- |
| | Primary Examiner AU1635 |

SRPT-VYDS-0003509

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/168,857 | 06/24/2011 | STEPHEN DONALD WILTON | AVN-008CN4 | 1861 |

959        7590        07/12/2012
NELSON MULLINS RILEY & SCARBOROUGH LLP
FLOOR 30, SUITE 3000
ONE POST OFFICE SQUARE
BOSTON, MA 02109

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1635 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 07/12/2012 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A  (Rev. 04/07)

SRPT-VYDS-0003510

| *Office Action Summary* | **Application No.** 13/168,857 | **Applicant(s)** WILTON ET AL. |
|---|---|---|
| | **Examiner** KIMBERLY CHONG | **Art Unit** 1635 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE *1* MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on *19 September 2011*.

2a)☐ This action is **FINAL**.    2b)☒ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

5)☒ Claim(s) *15-71* is/are pending in the application.

    5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6)☐ Claim(s) _____ is/are allowed.

7)☐ Claim(s) _____ is/are rejected.

8)☐ Claim(s) _____ is/are objected to.

9)☒ Claim(s) *15-71* are subject to restriction and/or election requirement.

**Application Papers**

10)☐ The specification is objected to by the Examiner.

11)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

12)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

13)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All   b)☐ Some * c)☐ None of:

      1.☐ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☐ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☐ Information Disclosure Statement(s) (PTO/SB/08) Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____.

5)☐ Notice of Informal Patent Application

6)☐ Other: _____.

SRPT-VYDS-0003511

Application/Control Number: 13/168,857                                    Page 2
Art Unit: 1635

# DETAILED ACTION

## *Election/Restrictions*

Restriction to one of the following inventions is required under 35 U.S.C. 121:

I.      Claims 15-41, 47, 48 and 70, drawn to an isolated antisense oligonucleotide 10 to 50 nucleotides in length that is specifically hybridizable to an exon 45 target region or a combination thereof, classifiable in class 536, subclass 24.5.  **This group is subject to a further election of a sequence from claim 16.**

II.     Claims 49-54 and 71, drawn to an isolated antisense oligonucleotide at least 10 nucleotides in length that is specifically hybridizable to an exon 45 target region wherein the oligonucleotide comprises annealing site H45A(-3+7), classifiable in class 536, subclass 24.5.

III.    Claims 42-46, drawn to a method of inducing exon skipping of a dystrophin exon 45 comprising delivering the oligonucleotide of claim 15, classifiable in class 514, subclass 44.

IV.     Claims 55-63, drawn to a method of inducing exon skipping of a dystrophin exon 45 comprising delivering an isolated antisense oligonucleotide at least 10 nucleotides in length that is specifically hybridizable to an exon 45 target region wherein the oligonucleotide comprises annealing site H45A(-3+7), classifiable in class 514, subclass 44.

SRPT-VYDS-0003512

Application/Control Number: 13/168,857                                      Page 3
Art Unit: 1635

> V.      Claims 64-69, drawn to an isolated antisense oligonucleotide of about 10
>
> to 50 nucleotides in length that is specifically hybridizable to an exon 45
>
> target region H45A(-6+20) wherein the antisense comprises or consists of
>
> SEQ ID No. 207, classifiable in class 536, subclass 24.5.

The inventions are distinct, each from the other because of the following reasons:

Inventions groups I, II and V are unrelated.  Inventions are unrelated if it can be shown that they are not disclosed as capable of use together and they have different designs, modes of operation, and effects (MPEP § 802.01 and § 806.06).  In the instant case, the different inventions are drawn to antisense oligonucleotides that have different structures i.e. sequences and have different modes of operation in that they bind to different exon regions.  Furthermore restriction is proper because the subject matter is divergent and non-coextensive and a search for one would not necessarily reveal art against the other.  It is therefore a burden to search these inventions in a single application.

Inventions group I and IV, groups II and III and groups V and III, IV are directed to an unrelated product and process.  Product and process inventions are unrelated if it can be shown that the product cannot be used in, or made by, the process.  See MPEP § 802.01 and § 806.06.  In the instant case, group I is drawn to an oligonucleotide that binds to a specific region of exon 45 and cannot be used in the methods of groups IV which require antisense oligonucleotides to bind to different regions of exon 45.  Group II is drawn to an oligonucleotide that binds to a specific region of exon 45 and cannot be

SRPT-VYDS-0003513

Application/Control Number: 13/168,857                                                Page 4

Art Unit: 1635

used in the methods of groups III which require antisense oligonucleotides that bind to different exon regions.  Group V is drawn to an oligonucleotide that binds to a specific region of exon 45 and cannot be used in the methods of groups III and IV which require antisense oligonucleotides that bind to different exon regions. It is therefore a burden to search these inventions in a single application.

Inventions group I and group III are related as product and process of use.  The inventions can be shown to be distinct if either or both of the following can be shown: (1) the process for using the product as claimed can be practiced with another materially different product or (2) the product as claimed can be used in a materially different process of using that product. See MPEP § 806.05(h).  In the instant case the product antisense can be used in a materially different process such as in situ hybridization. It is therefore a burden to search these inventions in a single application.

Inventions group II and IV are related as product and process of use.  The inventions can be shown to be distinct if either or both of the following can be shown: (1) the process for using the product as claimed can be practiced with another materially different product or (2) the product as claimed can be used in a materially different process of using that product. See MPEP § 806.05(h).  In the instant case the product antisense can be used in a materially different process such as in situ hybridization. It is therefore a burden to search these inventions in a single application.

Application/Control Number: 13/168,857                                          Page 5
Art Unit: 1635

Restriction for examination purposes as indicated is proper because all these inventions listed in this action are independent or distinct for the reasons given above and there would be a serious search and examination burden if restriction were not required because one or more of the following reasons apply:

(a) the inventions have acquired a separate status in the art in view of their different classification;

(b) the inventions have acquired a separate status in the art due to their recognized divergent subject matter;

(c) the inventions require a different field of search (for example, searching different classes/subclasses or electronic resources, or employing different search queries);

(d) the prior art applicable to one invention would not likely be applicable to another invention;

(e) the inventions are likely to raise different non-prior art issues under 35 U.S.C. 101 and/or 35 U.S.C. 112, first paragraph.

**Applicant is advised that the reply to this requirement to be complete <u>must</u> include (i) an election of a invention to be examined** even though the requirement may be traversed (37 CFR 1.143) **and (ii) <u>identification of the claims encompassing the elected invention</u>.**

The election of an invention may be made with or without traverse. To reserve a right to petition, the election must be made with traverse. If the reply does not distinctly and specifically point out supposed errors in the restriction requirement, the election

SRPT-VYDS-0003515

Application/Control Number: 13/168,857                                    Page 6
Art Unit: 1635

shall be treated as an election without traverse. Traversal must be presented at the time

of election in order to be considered timely.  Failure to timely traverse the requirement

will result in the loss of right to petition under 37 CFR 1.144.

If claims are added after the election, applicant must indicate which of these

claims are readable upon the elected invention.

Should applicant traverse on the ground that the inventions are not patentably

distinct, applicant should submit evidence or identify such evidence now of record

showing the inventions to be obvious variants or clearly admit on the record that this is

the case. In either instance, if the examiner finds one of the inventions unpatentable

over the prior art, the evidence or admission may be used in a rejection under 35 U.S.C.

103(a) of the other invention.

Applicant is reminded that upon the cancellation of claims to a non-elected

invention, the inventorship must be amended in compliance with 37 CFR 1.48(b) if one

or more of the currently named inventors is no longer an inventor of at least one claim

remaining in the application. Any amendment of inventorship must be accompanied by

a request under 37 CFR 1.48(b) and by the fee required under 37 CFR 1.17(i).


The examiner has required restriction between product and process claims.
Where applicant elects claims directed to the product, and the product claims are
subsequently found allowable, withdrawn process claims that depend from or otherwise
require all the limitations of the allowable product claim will be considered for rejoinder.
All claims directed a nonelected process invention  must require all the limitations of an
allowable product claim for that process invention to be rejoined.
In the event of rejoinder, the requirement for restriction between the product
claims and the rejoined process claims will be withdrawn, and the rejoined process
claims will be fully examined for patentability in accordance with 37 CFR 1.104. Thus, to
be allowable, the rejoined claims must meet all criteria for patentability including the

Application/Control Number: 13/168,857                                        Page 7
Art Unit: 1635

requirements of 35 U.S.C. 101, 102, 103 and 112. Until all claims to the elected product
are found allowable, an otherwise proper restriction requirement between product
claims and process claims may be maintained. Withdrawn process claims that are not
commensurate in scope with an allowable product claim will not be rejoined. See MPEP
§ 821.04(b). Additionally, in order to retain the right to rejoinder in accordance with the
above policy, applicant is advised that the process claims should be amended during
prosecution to require the limitations of the product claims. **Failure to do so may result
in a loss of the right to rejoinder**. Further, note that the prohibition against double
patenting rejections of 35 U.S.C. 121 does not apply where the restriction requirement
is withdrawn by the examiner before the patent issues. See MPEP § 804.01.

### *Conclusion*

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Kimberly Chong whose telephone number is 571-272-

3111.  The examiner can normally be reached Monday thru Friday between 7-4 pm.

If attempts to reach the examiner by telephone are unsuccessful please contact

the SPE for 1635 Heather Calamita at 571-272-2876. The fax phone number for the

organization where this application or proceeding is assigned is 571-273-8300.

Patent applicants with problems or questions regarding electronic images that

can be viewed in the Patent Application Information Retrieval system (PAIR) can now

contact the USPTO's Patent Electronic Business Center (Patent EBC) for assistance.

Representatives are available to answer your questions daily from 6 am to midnight

(EST). The toll free number is (866) 217-9197. When calling please have your

application serial or patent number, the type of document you are having an image

problem with, the number of pages and the specific nature of the problem.  The Patent

Electronic Business Center will notify applicants of the resolution of the problem within

5-7 business days. Applicants can also check PAIR to confirm that the problem has

Application/Control Number: 13/168,857                                               Page 8
Art Unit: 1635

been corrected.  The USPTO's Patent Electronic Business Center is a complete service

center supporting all patent business on the Internet. The USPTO's PAIR system

provides Internet-based access to patent application status and history information. It

also enables applicants to view the scanned images of their own application file

folder(s) as well as general patent information available to the public. For more

information about the PAIR system, see http://pair-direct.uspto.gov.

　　　　For all other customer support, please call the USPTO Call Center (UCC) at 800-

786-9199.

/Kimberly Chong/
Primary Examiner
Art Unit 1635



UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

959          7590          03/08/2013

NELSON MULLINS RILEY & SCARBOROUGH LLP
FLOOR 30, SUITE 3000
ONE POST OFFICE SQUARE
BOSTON, MA 02109

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1635 | |

DATE MAILED: 03/08/2013

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/168,863 | 06/24/2011 | Stephen Donald Wilton | AVN-008CN5 | 1868 |

TITLE OF INVENTION: ANTISENSE OLIGONUCLEOTIDES FOR INDUCING EXON SKIPPING AND METHODS OF USE THEREOF

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | YES | $885 | $300 | $0 | $1185 | 06/10/2013 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED.** THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN <u>THREE MONTHS</u> FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. <u>THIS STATUTORY PERIOD CANNOT BE EXTENDED.</u>** SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.

**HOW TO REPLY TO THIS NOTICE:**

I. Review the SMALL ENTITY status shown above.

If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

A. If the status is the same, pay the TOTAL FEE(S) DUE shown above.

B. If the status above is to be removed, check box 5b on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and twice the amount of the ISSUE FEE shown above, or

If the SMALL ENTITY is shown as NO:

A. Pay TOTAL FEE(S) DUE shown above, or

B. If applicant claimed SMALL ENTITY status before, or is now claiming SMALL ENTITY status, check box 5a on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and 1/2 the ISSUE FEE shown above.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

Page 1 of 3

PTOL-85 (Rev. 02/11)

SRPT-VYDS-0003519

PART B - FEE(S) TRANSMITTAL

**Complete and send this form, together with applicable fee(s), to: Mail**

Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
**or Fax** (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

959       7590       03/08/2013

NELSON MULLINS RILEY & SCARBOROUGH LLP
FLOOR 30, SUITE 3000
ONE POST OFFICE SQUARE
BOSTON, MA 02109

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/168,863 | 06/24/2011 | Stephen Donald Wilton | AVN-008CN5 | 1868 |

TITLE OF INVENTION: ANTISENSE OLIGONUCLEOTIDES FOR INDUCING EXON SKIPPING AND METHODS OF USE THEREOF

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | YES | $885 | $300 | $0 | $1185 | 06/10/2013 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| CHONG, KIMBERLY | 1635 | 536-024500 |

**1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).**

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

**2. For printing on the patent front page, list**

(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

**3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT** (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) :   ☐ Individual   ☐ Corporation or other private group entity   ☐ Government

**4a. The following fee(s) are submitted:**

☐ Issue Fee

☐ Publication Fee (No small entity discount permitted)

☐ Advance Order - # of Copies _____

**4b. Payment of Fee(s): (Please first reapply any previously paid issue fee shown above)**

☐ A check is enclosed.

☐ Payment by credit card. Form PTO-2038 is attached.

☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

**5. Change in Entity Status** (from status indicated above)

☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.     ☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____     Date _____

Typed or printed name _____     Registration No. _____

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 02/11) Approved for use through 08/31/2013.        OMB 0651-0033        U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

SRPT-VYDS-0003520



U̲NITED S̲TATES P̲ATENT AND T̲RADEMARK O̲FFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/168,863 | 06/24/2011 | Stephen Donald Wilton | AVN-008CN5 | 1868 |

959          7590          03/08/2013

NELSON MULLINS RILEY & SCARBOROUGH LLP
FLOOR 30, SUITE 3000
ONE POST OFFICE SQUARE
BOSTON, MA 02109

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1635 | |

DATE MAILED: 03/08/2013

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment to date is 0 day(s). If the issue fee is paid on the date that is three months after the mailing date of this notice and the patent issues on the Tuesday before the date that is 28 weeks (six and a half months) after the mailing date of this notice, the Patent Term Adjustment will be 0 day(s).

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

SRPT-VYDS-0003521

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| *Notice of Allowability* | Application No. | Applicant(s) |
|---|---|---|
| | 13/168,863 | WILTON ET AL. |
| | Examiner | Art Unit | |
| | KIMBERLY CHONG | 1635 | |

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--**

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *02/13/2013*.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☒ The allowed claim(s) is/are *76-123*. As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov .

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All   b) ☐ Some*   c) ☐ None   of the:

       1. ☐ Certified copies of the priority documents have been received.

       2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

       3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    * Certified copies not received: _____ .

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

    ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____.

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

Attachment(s)

1. ☐ Notice of References Cited (PTO-892)
2. ☒ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date *1/11/13,2/13/13*
3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material
4. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____ .

5. ☐ Examiner's Amendment/Comment
6. ☒ Examiner's Statement of Reasons for Allowance
7. ☐ Other _____ .

| | /Kimberly Chong/ Primary Examiner AU1635 |
|---|---|

SRPT-VYDS-0003523

Application/Control Number: 13/168,863                                           Page 2
Art Unit: 1635

Claims 76-111 and 116-123 are directed to an allowable product. Pursuant to the

procedures set forth in MPEP § 821.04(B), claims 112-115, directed to the process of

making or using an allowable product, previously withdrawn from consideration as a

result of a restriction requirement, are hereby rejoined and fully examined for

patentability under 37 CFR 1.104.

Because all claims previously withdrawn from consideration under 37 CFR 1.142

have been rejoined, **the restriction requirement as set forth in the Office action**

**mailed on 08/08/2012 is hereby withdrawn**. In view of the withdrawal of the restriction

requirement as to the rejoined inventions, applicant(s) are advised that if any claim

presented in a continuation or divisional application is anticipated by, or includes all the

limitations of, a claim that is allowable in the present application, such claim may be

subject to provisional statutory and/or nonstatutory double patenting rejections over the

claims of the instant application. Once the restriction requirement is withdrawn, the

provisions of 35 U.S.C. 121 are no longer applicable. See *In re Ziegler*, 443 F.2d 1211,

1215, 170 USPQ 129, 131-32 (CCPA 1971). See also MPEP § 804.01.


Claims 112-115 have been examined and are allowed along with claims 76-111

and 116-123.

### Conclusion

Any inquiry concerning this communication or earlier communications from the
examiner should be directed to Kimberly Chong whose telephone number is 571-272-
3111.  The examiner can normally be reached Monday thru Friday between 9-5 pm.
If attempts to reach the examiner by telephone are unsuccessful please contact
the SPE for 1635 Heather Calamita at 571-272-2876. The fax phone number for the
organization where this application or proceeding is assigned is 571-273-8300.

Application/Control Number: 13/168,863                                    Page 3
Art Unit: 1635

     Patent applicants with problems or questions regarding electronic images that
can be viewed in the Patent Application Information Retrieval system (PAIR) can now
contact the USPTO's Patent Electronic Business Center (Patent EBC) for assistance.
Representatives are available to answer your questions daily from 6 am to midnight
(EST). The toll free number is (866) 217-9197. When calling please have your
application serial or patent number, the type of document you are having an image
problem with, the number of pages and the specific nature of the problem.  The Patent
Electronic Business Center will notify applicants of the resolution of the problem within
5-7 business days. Applicants can also check PAIR to confirm that the problem has
been corrected.  The USPTO's Patent Electronic Business Center is a complete service
center supporting all patent business on the Internet. The USPTO's PAIR system
provides Internet-based access to patent application status and history information. It
also enables applicants to view the scanned images of their own application file
folder(s) as well as general patent information available to the public. For more
information about the PAIR system, see http://pair-direct.uspto.gov.
     For all other customer support, please call the USPTO Call Center (UCC) at 800-
786-9199.

/Kimberly Chong/
Primary Examiner
Art Unit 1635

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/168,863 | 06/24/2011 | Stephen Donald Wilton | AVN-008CN5 | 1868 |

959          7590          10/11/2012
NELSON MULLINS RILEY & SCARBOROUGH LLP
FLOOR 30, SUITE 3000
ONE POST OFFICE SQUARE
BOSTON, MA 02109

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1635 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 10/11/2012 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

SRPT-VYDS-0003526

| | Application No. | Applicant(s) |
|---|---|---|
| **Office Action Summary** | 13/168,863 | WILTON ET AL. |
| | Examiner | Art Unit |
| | KIMBERLY CHONG | 1635 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☒ Responsive to communication(s) filed on <u>04 October 2012</u>.

2a) ☐ This action is **FINAL**.    2b) ☒ This action is non-final.

3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

5) ☒ Claim(s) <u>76-115</u> is/are pending in the application.

    5a) Of the above claim(s) <u>112-115</u> is/are withdrawn from consideration.

6) ☒ Claim(s) <u>76-90,93-108 and 111</u> is/are allowed.

7) ☒ Claim(s) <u>91,92,109 and 110</u> is/are rejected.

8) ☐ Claim(s) _____ is/are objected to.

9) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

10) ☐ The specification is objected to by the Examiner.

11) ☒ The drawing(s) filed on <u>06/24/2011</u> is/are: a) ☒ accepted or b) ☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

12) ☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

13) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All   b) ☐ Some * c) ☐ None of:

      1. ☐ Certified copies of the priority documents have been received.

      2. ☐ Certified copies of the priority documents have been received in Application No. _____.

      3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)

2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3) ☒ Information Disclosure Statement(s) (PTO/SB/08) Paper No(s)/Mail Date <u>See Continuation Sheet</u>.

4) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____.

5) ☐ Notice of Informal Patent Application

6) ☐ Other: _____.

SRPT-VYDS-0003527

**Continuation Sheet (PTOL-326)** **Application No. 13/168,863**

Continuation of Attachment(s) 3). Information Disclosure Statement(s) (PTO/SB/08), Paper No(s)/Mail Date
:01/31/2012,05/10/2012,10/04/2012.

SRPT-VYDS-0003528

Application/Control Number: 13/168,863                                        Page 2
Art Unit: 1635

### *Election/Restrictions*

Applicant's election of Group I, claims 76-111 in the reply filed on 10/04/2012 is acknowledged.

### *Status of the Application*

Claims 76-115 are pending.  Claims 76-111 are currently under examination. Claims 112-115 are withdrawn as being drawn to a non-elected invention.

Claims 76-90, 93-108 and 111 are free of the prior art searched.

### *Information Disclosure Statement*

The submission of the Information Disclosure Statements on 01/31/2012, 05/10/2012 and 10/04/2012 is in compliance with 37 CFR 1.97.  The information disclosure statements have been considered by the examiner and signed copies have been placed in the file.

### *Objection to the Specification*

### *Sequence Compliance*

This application contains sequence disclosures that are encompassed by the definitions for nucleotide and/or amino acid sequences set forth in 37 CFR 1.821(a)(1) and (a)(2). However, this application fails to comply with the requirements of 37 CFR 1.821 through 1.825 for the reason(s) set forth below:  Tables 2-39 of the specification recite sequences that do not have the required sequence identifier.  A complete

SRPT-VYDS-0003529

Application/Control Number: 13/168,863                                    Page 3
Art Unit: 1635

response to this office action must correct the defects cited above regarding compliance

with the sequence rules and a response to the action on the merits which follows.

   The aforementioned instance of failure to comply is not intended as an

exhaustive list of all such potential failures to comply in the instant application.

Applicants are encouraged to thoroughly review the application to ensure that the entire

application is in full compliance with all sequence rules.  This requirement will not be

held in abeyance.


### *Claim Rejections - 35 USC § 112*

The following is a quotation of the first paragraph of 35 U.S.C. 112:

> The specification shall contain a written description of the invention, and of the manner and process of
> making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the
> art to which it pertains, or with which it is most nearly connected, to make and use the same and shall
> set forth the best mode contemplated by the inventor of carrying out his invention.

   Claims 91, 92, 109 and 110 are rejected under 35 U.S.C. 112, first paragraph, as

failing to comply with the written description requirement.  The claim(s) contains subject

matter which was not described in the specification in such a way as to reasonably

convey to one skilled in the relevant art that the inventor(s), at the time the application

was filed, had possession of the claimed invention.  <u>This is a new matter rejection</u>.

   Claims 91 and 109 are directed to "wherein the oligonucleotide is conjugated to

an arginine-rich cell penetrating peptide". The specification discloses peptide nucleic

acid modifications of the oligonucleotide but do not disclose a conjugate comprising

arginine-rich cell penetrating peptides.

SRPT-VYDS-0003530

Application/Control Number: 13/168,863                                    Page 4
Art Unit: 1635

Claims 92 and 110 are directed to an oligonucleotide "chemically linked to a polyethylene glycol molecule". The specification provides support for a linked polynucleotide chain but not a "molecule". The use of the term "molecule" is new matter because it can encompass many types of polyethylene glycol molecules that are not instantly disclosed.

If Applicant believes that such support is present in the specification and claimed priority documents, Applicant should point, with particularity, to where such support is to be found.

Thus the claims are accorded the priority date of 06/24/2011, the filing date of the instant application.

## *Claim Rejections - 35 USC § 103*

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

Claims 91, 92, 109 and 110 are rejected under 35 U.S.C. 103(a) as being unpatentable over De Kimpe et al. (US Application No. 20110294753), van Deutekom et al. (US Patent No. 7,534,879 of record cited on IDS filed 10/04/2012), Ackermann et al. (US 20040254137 of record cited on IDS filed 10/04/2012) and Manoharan et al. (US 20020156235 of record cited on IDS filed 10/04/2012).

SRPT-VYDS-0003531

Application/Control Number: 13/168,863                                    Page 5
Art Unit: 1635

The claims are drawn to an isolated antisense oligonucleotide of 20 to 50 nucleotides in length comprising at least 17 consecutive nucleotides 100% complementary to an exon 52 annealing site H52A(+17+37), wherein the oligonucleotide specifically hybridizes to an exon 52 target region of the Dystrophin gene, wherein the antisense oligonucleotide comprises modified backbone, sugar and internucleotide linkages and wherein the oligonucleotide comprises at least 17 nucleotides of SEQ ID No. 188.

De Kimpe et al. teach an oligonucleotide 20 nucleotides in length (SEQ ID No. 312) having 20 consecutive nucleotides of instant SEQ ID No. 188 (see alignment below) which targets the claimed annealing site. De Kimpe teach the studies provide a promising proof of principle for antisense-based therapy for DMD and may be applicable to a variety of DMD mutations and teach the use of 2'-O-methyl modified oligonucleotides.


SEQ ID No. 188        1 ACUGGGGACGCCUCUGUUCC 20

De Kimpe et al.       1 ACUGGGGACGCCUCUGUUCC 20


van Deutekom teach a method for making chemically modified antisense oligonucleotides that induce exon skipping in dystrophin pre-mRNA from a Duchenne muscular dystrophy allele wherein the antisense oligonucleotides target several exons (see entire reference).  van Deutekom teach the studies provide a promising proof of

SRPT-VYDS-0003532

Application/Control Number: 13/168,863                                            Page 6
Art Unit: 1635

principle for antisense-based therapy for DMD and may be applicable to a variety of

DMD mutations and teach the use of 2'-O-methyl modified oligonucleotides.

Ackermann et al. teach antisense oligonucleotides that comprise modified

backbone, sugar moieties and internucleotide linkages, comprise morpholino moieties,

and that can be peptide nucleic acids and further can be linked to a conjugate such as

PEG (see paragraphs 0038-0047) which enhance the stability and specificity of

antisense oligonucleotides and it would have been obvious to one of ordinary skill in the

art to incorporate these moieties into the antisense oligonucleotide made to target exon

5s.

It would have further been obvious for one of ordinary skill in the art to conjugate

cell penetrating peptides and chemically linking with polyethylene glycol chains as

taught by Manoharan et al. (see paragraphs 0027 and 0165).  Manoharan et al. teach

antisense oligonucleotides comprising peptide conjugates such as tat enhanced the

overall efficacy of said oligonucleotide and one of ordinary skill in the art would have

expected to be capable of making such conjugates as demonstrated by Manoharan et

al.

Thus in the absence of evidence to the contrary, the invention as a whole would

have been *prima facie* obvious to one of ordinary skill in the art at the time the invention

was made.

SRPT-VYDS-0003533

Application/Control Number: 13/168,863                                    Page 7

Art Unit: 1635

### *Conclusion*

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Kimberly Chong whose telephone number is 571-272-

3111.  The examiner can normally be reached Monday thru Friday between 7-4 pm.

If attempts to reach the examiner by telephone are unsuccessful please contact

the SPE for 1635 Heather Calamita at 571-272-2876. The fax phone number for the

organization where this application or proceeding is assigned is 571-273-8300.

Patent applicants with problems or questions regarding electronic images that can be viewed in the Patent Application Information Retrieval system (PAIR) can now contact the USPTO's Patent Electronic Business Center (Patent EBC) for assistance. Representatives are available to answer your questions daily from 6 am to midnight (EST). The toll free number is (866) 217-9197. When calling please have your application serial or patent number, the type of document you are having an image problem with, the number of pages and the specific nature of the problem.  The Patent Electronic Business Center will notify applicants of the resolution of the problem within 5-7 business days. Applicants can also check PAIR to confirm that the problem has been corrected.  The USPTO's Patent Electronic Business Center is a complete service center supporting all patent business on the Internet. The USPTO's PAIR system provides Internet-based access to patent application status and history information. It also enables applicants to view the scanned images of their own application file folder(s) as well as general patent information available to the public. For more information about the PAIR system, see http://pair-direct.uspto.gov.

For all other customer support, please call the USPTO Call Center (UCC) at 800-786-9199.

/Kimberly Chong/
Primary Examiner
Art Unit 1635

SRPT-VYDS-0003534

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/168,863 | 06/24/2011 | Stephen Donald Wilton | AVN-008CN5 | 1868 |

959        7590        08/08/2012

NELSON MULLINS RILEY & SCARBOROUGH LLP
FLOOR 30, SUITE 3000
ONE POST OFFICE SQUARE
BOSTON, MA 02109

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1635 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 08/08/2012 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

SRPT-VYDS-0003535

| | Application No. | Applicant(s) |
|---|---|---|
| | 13/168,863 | WILTON ET AL. |
| **Office Action Summary** | **Examiner** | **Art Unit** | |
| | KIMBERLY CHONG | 1635 | |

-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>1</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1)☒ Responsive to communication(s) filed on <u>10 May 2012</u>.

2a)☐ This action is **FINAL**.    2b)☒ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____ ; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims

5)☒ Claim(s) <u>76-115</u> is/are pending in the application.

   5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6)☐ Claim(s) _____ is/are allowed.

7)☐ Claim(s) _____ is/are rejected.

8)☐ Claim(s) _____ is/are objected to.

9)☒ Claim(s) <u>76-115</u> are subject to restriction and/or election requirement.

## Application Papers

10)☐ The specification is objected to by the Examiner.

11)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

   Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

   Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

12)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

## Priority under 35 U.S.C. § 119

13)☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

   a)☐ All  b)☐ Some * c)☐ None of:

   1.☐ Certified copies of the priority documents have been received.

   2.☐ Certified copies of the priority documents have been received in Application No. _____.

   3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

   * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☐ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☐ Information Disclosure Statement(s) (PTO/SB/08)
   Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413)
   Paper No(s)/Mail Date. _____ .

5)☐ Notice of Informal Patent Application

6)☐ Other: _____ .

Application/Control Number: 13/168,863                                         Page 2
Art Unit: 1635

## DETAILED ACTION

### *Election/Restrictions*

Restriction to one of the following inventions is required under 35 U.S.C. 121:

I.      Claims 76-111, drawn to an isolated antisense oligonucleotide of 10 to 50
        nucleotides in length comprising at least 10 consecutive nucleotides 100%
        complementary to exon 52, classifiable in class 536, subclass 24.5.

II.     Claims 112-115, drawn to a method of inducing exon skipping of a
        dystrophin exon 52 comprising administering a pharmaceutical
        composition comprising an antisense oligonucleotide targeted to exon 52,
        classifiable in class 514, subclass 44.


The inventions are distinct, each from the other because of the following reasons:

        Inventions Groups I and II are related as product and process of use.  The
inventions can be shown to be distinct if either or both of the following can be shown: (1)
the process for using the product as claimed can be practiced with another materially
different product or (2) the product as claimed can be used in a materially different
process of using that product. See MPEP § 806.05(h).  In the instant case product
antisense oligonucleotide can be used in a materially different process such as a
method of screening or in situ hybridization. Furthermore restriction is proper because
the subject matter is divergent and non-coextensive and a search for one would not
necessarily reveal art against the other.  It is therefore a burden to search these
inventions in a single application.

Application/Control Number: 13/168,863                                        Page 3
Art Unit: 1635

Restriction for examination purposes as indicated is proper because all these inventions listed in this action are independent or distinct for the reasons given above and there would be a serious search and examination burden if restriction were not required because one or more of the following reasons apply:

(a) the inventions have acquired a separate status in the art in view of their different classification;

(b) the inventions have acquired a separate status in the art due to their recognized divergent subject matter;

(c) the inventions require a different field of search (for example, searching different classes/subclasses or electronic resources, or employing different search queries);

(d) the prior art applicable to one invention would not likely be applicable to another invention;

(e) the inventions are likely to raise different non-prior art issues under 35 U.S.C. 101 and/or 35 U.S.C. 112, first paragraph.

**Applicant is advised that the reply to this requirement to be complete <u>must</u> include (i) an election of a invention to be examined** even though the requirement may be traversed (37 CFR 1.143) **and (ii) <u>identification of the claims encompassing the elected invention</u>.**

The election of an invention may be made with or without traverse. To reserve a right to petition, the election must be made with traverse. If the reply does not distinctly and specifically point out supposed errors in the restriction requirement, the election

SRPT-VYDS-0003538

Application/Control Number: 13/168,863                                    Page 4
Art Unit: 1635

shall be treated as an election without traverse. Traversal must be presented at the time

of election in order to be considered timely.  Failure to timely traverse the requirement

will result in the loss of right to petition under 37 CFR 1.144.

If claims are added after the election, applicant must indicate which of these

claims are readable upon the elected invention.

Should applicant traverse on the ground that the inventions are not patentably

distinct, applicant should submit evidence or identify such evidence now of record

showing the inventions to be obvious variants or clearly admit on the record that this is

the case. In either instance, if the examiner finds one of the inventions unpatentable

over the prior art, the evidence or admission may be used in a rejection under 35 U.S.C.

103(a) of the other invention.

Applicant is reminded that upon the cancellation of claims to a non-elected

invention, the inventorship must be amended in compliance with 37 CFR 1.48(b) if one

or more of the currently named inventors is no longer an inventor of at least one claim

remaining in the application. Any amendment of inventorship must be accompanied by

a request under 37 CFR 1.48(b) and by the fee required under 37 CFR 1.17(i).


The examiner has required restriction between product and process claims.
Where applicant elects claims directed to the product, and the product claims are
subsequently found allowable, withdrawn process claims that depend from or otherwise
require all the limitations of the allowable product claim will be considered for rejoinder.
All claims directed a nonelected process invention  must require all the limitations of an
allowable product claim for that process invention to be rejoined.
In the event of rejoinder, the requirement for restriction between the product
claims and the rejoined process claims will be withdrawn, and the rejoined process
claims will be fully examined for patentability in accordance with 37 CFR 1.104. Thus, to
be allowable, the rejoined claims must meet all criteria for patentability including the

requirements of 35 U.S.C. 101, 102, 103 and 112. Until all claims to the elected product are found allowable, an otherwise proper restriction requirement between product claims and process claims may be maintained. Withdrawn process claims that are not commensurate in scope with an allowable product claim will not be rejoined. See MPEP § 821.04(b). Additionally, in order to retain the right to rejoinder in accordance with the above policy, applicant is advised that the process claims should be amended during prosecution to require the limitations of the product claims. **Failure to do so may result in a loss of the right to rejoinder**. Further, note that the prohibition against double patenting rejections of 35 U.S.C. 121 does not apply where the restriction requirement is withdrawn by the examiner before the patent issues. See MPEP § 804.01.

### *Conclusion*

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Kimberly Chong whose telephone number is 571-272-3111. The examiner can normally be reached Monday thru Friday between 7-4 pm.

If attempts to reach the examiner by telephone are unsuccessful please contact the Acting SPE for 1635 Heather Calamita at 571-272-2876. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Patent applicants with problems or questions regarding electronic images that can be viewed in the Patent Application Information Retrieval system (PAIR) can now contact the USPTO's Patent Electronic Business Center (Patent EBC) for assistance. Representatives are available to answer your questions daily from 6 am to midnight (EST). The toll free number is (866) 217-9197. When calling please have your application serial or patent number, the type of document you are having an image problem with, the number of pages and the specific nature of the problem. The Patent Electronic Business Center will notify applicants of the resolution of the problem within 5-7 business days. Applicants can also check PAIR to confirm that the problem has

SRPT-VYDS-0003540

Application/Control Number: 13/168,863                                    Page 6
Art Unit: 1635

been corrected.  The USPTO's Patent Electronic Business Center is a complete service

center supporting all patent business on the Internet. The USPTO's PAIR system

provides Internet-based access to patent application status and history information. It

also enables applicants to view the scanned images of their own application file

folder(s) as well as general patent information available to the public. For more

information about the PAIR system, see http://pair-direct.uspto.gov.

For all other customer support, please call the USPTO Call Center (UCC) at 800-

786-9199.


/Kimberly Chong/
Primary Examiner
Art Unit 1635



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

959        7590        03/15/2013

NELSON MULLINS RILEY & SCARBOROUGH LLP
FLOOR 30, SUITE 3000
ONE POST OFFICE SQUARE
BOSTON, MA 02109

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1635 | |

DATE MAILED: 03/15/2013

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/270,500 | 10/11/2011 | Stephen Donald Wilton | AVN-008CN6 | 4073 |

TITLE OF INVENTION: ANTISENSE OLIGONUCLEOTIDES FOR INDUCING EXON SKIPPING AND METHODS OF USE THEREOF

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | YES | $885 | $300 | $0 | $1185 | 06/17/2013 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED.** THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN <u>THREE MONTHS</u> FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. <u>THIS STATUTORY PERIOD CANNOT BE EXTENDED.</u>** SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.

**HOW TO REPLY TO THIS NOTICE:**

I. Review the SMALL ENTITY status shown above.

If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

A. If the status is the same, pay the TOTAL FEE(S) DUE shown above.

B. If the status above is to be removed, check box 5b on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and twice the amount of the ISSUE FEE shown above, or

If the SMALL ENTITY is shown as NO:

A. Pay TOTAL FEE(S) DUE shown above, or

B. If applicant claimed SMALL ENTITY status before, or is now claiming SMALL ENTITY status, check box 5a on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and 1/2 the ISSUE FEE shown above.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

PTOL-85 (Rev. 02/11)

SRPT-VYDS-0003542

**PART B - FEE(S) TRANSMITTAL**

Complete and send this form, together with applicable fee(s), to: **Mail**    Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
**or Fax**    (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

959        7590        03/15/2013

NELSON MULLINS RILEY & SCARBOROUGH LLP
FLOOR 30, SUITE 3000
ONE POST OFFICE SQUARE
BOSTON, MA 02109

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/270,500 | 10/11/2011 | Stephen Donald Wilton | AVN-008CN6 | 4073 |

TITLE OF INVENTION: ANTISENSE OLIGONUCLEOTIDES FOR INDUCING EXON SKIPPING AND METHODS OF USE THEREOF

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | YES | $885 | $300 | $0 | $1185 | 06/17/2013 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| CHONG, KIMBERLY | 1635 | 536-024500 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list

(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent):  ☐ Individual  ☐ Corporation or other private group entity  ☐ Government

4a. The following fee(s) are submitted:

☐ Issue Fee
☐ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): (**Please first reapply any previously paid issue fee shown above**)

☐ A check is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment to Deposit Account Number _____ (enclose an extra copy of this form).

5. **Change in Entity Status** (from status indicated above)

☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.        ☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____        Date _____

Typed or printed name _____        Registration No. _____

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 02/11) Approved for use through 08/31/2013.        OMB 0651-0033        U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/270,500 | 10/11/2011 | Stephen Donald Wilton | AVN-008CN6 | 4073 |

959        7590        03/15/2013
NELSON MULLINS RILEY & SCARBOROUGH LLP
FLOOR 30, SUITE 3000
ONE POST OFFICE SQUARE
BOSTON, MA 02109

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1635 | |

DATE MAILED: 03/15/2013

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment to date is 0 day(s). If the issue fee is paid on the date that is three months after the mailing date of this notice and the patent issues on the Tuesday before the date that is 28 weeks (six and a half months) after the mailing date of this notice, the Patent Term Adjustment will be 0 day(s).

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

SRPT-VYDS-0003544

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

SRPT-VYDS-0003545

| *Notice of Allowability* | Application No. | Applicant(s) | |
|---|---|---|---|
| | 13/270,500 | WILTON ET AL. | |
| | Examiner | Art Unit | |
| | KIMBERLY CHONG | 1635 | |

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--**

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to <u>01/30/2013</u>.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☒ The allowed claim(s) is/are <u>33 and 57-98</u>. As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov .

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All    b) ☐ Some*    c) ☐ None   of the:

        1. ☐ Certified copies of the priority documents have been received.

        2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

        3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    * Certified copies not received: _____ .

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

    ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____ .

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)

2. ☒ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date <u>01/30/13,02/14/13,05/14/12</u>

3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

4. ☒ Interview Summary (PTO-413), Paper No./Mail Date _____ .

5. ☐ Examiner's Amendment/Comment

6. ☐ Examiner's Statement of Reasons for Allowance

7. ☐ Other _____ .

| | |
|---|---|
| | /Kimberly Chong/<br>Primary Examiner AU1635 |

SRPT-VYDS-0003546

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/270,500 | 10/11/2011 | Stephen Donald Wilton | AVN-008CN6 | 4073 |

959        7590        07/30/2012

NELSON MULLINS RILEY & SCARBOROUGH LLP
FLOOR 30, SUITE 3000
ONE POST OFFICE SQUARE
BOSTON, MA 02109

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1635 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 07/30/2012 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

SRPT-VYDS-0003547

| | Application No. | Applicant(s) |
|---|---|---|
| **Office Action Summary** | 13/270,500 | WILTON ET AL. |
| | **Examiner** | **Art Unit** | |
| | KIMBERLY CHONG | 1635 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>14 May 2012</u>.

2a)☐ This action is **FINAL**.          2b)☒ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

5)☒ Claim(s) <u>33 and 57-92</u> is/are pending in the application.

    5a) Of the above claim(s) <u>33</u> is/are withdrawn from consideration.

6)☐ Claim(s) _____ is/are allowed.

7)☒ Claim(s) <u>57-92</u> is/are rejected.

8)☐ Claim(s) _____ is/are objected to.

9)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

10)☒ The specification is objected to by the Examiner.

11)☒ The drawing(s) filed on <u>11 October 2011</u> is/are: a)☒ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

12)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

13)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All   b)☐ Some * c)☐ None of:

      1.☐ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☒ Information Disclosure Statement(s) (PTO/SB/08) Paper No(s)/Mail Date <u>01/31/12,5/14/12</u>.

4)☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____.

5)☐ Notice of Informal Patent Application

6)☐ Other: _____.

U.S. Patent and Trademark Office

PTOL-326 (Rev. 03-11)          **Office Action Summary**          Part of Paper No./Mail Date 20120725

SRPT-VYDS-0003548

Application/Control Number: 13/270,500                                            Page 2
Art Unit: 1635

## DETAILED ACTION

### Election/Restrictions

Applicant's election with traverse of Group I, claims 15-23 and 41 in the reply filed on 05/14/2012 is acknowledged.  The traversal is on the ground(s) that the subject matter of Group III and Group V would not pose an undue burden if searched with Group I.  The claims of group III and V have been canceled and new claims 57-92 are directed to the subject matter of Group I, thus making Applicant's argument moot.

The only original remaining claim is claim 33 which is directed to the subject matter of Group II and the restriction between Group I and II was not traversed.

The requirement is still deemed proper and is therefore made FINAL.

### Status of the Application

Claims 33 and 57-92 are pending.  Claims 57-92 are currently under examination.  Claim 33 is withdrawn as being drawn to a non-elected invention.

### Information Disclosure Statement

The submission of the Information Disclosure Statements on 01/31/2012 and 05/14/2012 is in compliance with 37 CFR 1.97.  The information disclosure statements have been considered by the examiner and signed copies have been placed in the file.

### Objection to the Specification

### Sequence Compliance

This application contains sequence disclosures that are encompassed by the definitions for nucleotide and/or amino acid sequences set forth in 37 CFR 1.821(a)(1) and (a)(2). However, this application fails to comply with the requirements of 37 CFR 1.821 through 1.825 for the reason(s) set forth below:  Tables 2-39 of the specification recite sequences that do not have the required sequence identifier.  A complete response to this office action must correct the defects cited above regarding compliance with the sequence rules and a response to the action on the merits which follows.

The aforementioned instance of failure to comply is not intended as an exhaustive list of all such potential failures to comply in the instant application. Applicants are encouraged to thoroughly review the application to ensure that the entire application is in full compliance with all sequence rules.  This requirement will not be held in abeyance.

### Claim Rejections - 35 USC § 112

The following is a quotation of the first paragraph of 35 U.S.C. 112:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same and shall set forth the best mode contemplated by the inventor of carrying out his invention.

Claims 73, 74, 90 and 91 are rejected under 35 U.S.C. 112, first paragraph, as failing to comply with the written description requirement.  The claim(s) contains subject matter which was not described in the specification in such a way as to reasonably

Application/Control Number: 13/270,500                                    Page 4
Art Unit: 1635

convey to one skilled in the relevant art that the inventor(s), at the time the application

was filed, had possession of the claimed invention.  <u>This is a new matter rejection</u>.

Claims 73 and 90 are directed to "wherein the oligonucleotide is conjugated to an

arginine-rich cell penetrating peptide". The specification discloses peptide nucleic acid

modifications of the oligonucleotide but do not disclose a conjugate comprising arginine-

rich cell penetrating peptides.

Claims 74 and 94 are directed to an oligonucleotide "chemically linked to a

polyethylene glycol molecule".  The specification in paragraph 0086 provides support for

a linked polynucleotide chain but not a "molecule".  The use of the term "molecule" is

new matter because it can encompass many type of polyethylene glycol molecules that

are not instantly disclosed.

If Applicant believes that such support is present in the specification and claimed

priority documents, Applicant should point, with particularity, to where such support is to

be found.


### *Claim Rejections - 35 USC § 102*

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that

form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

(e) the invention was described in (1) an application for patent, published under section 122(b), by another filed in the United States before the invention by the applicant for patent or (2) a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent, except that an international application filed under the treaty defined in section

SRPT-VYDS-0003551

Application/Control Number: 13/270,500                                    Page 5
Art Unit: 1635

351(a) shall have the effects for purposes of this subsection of an application filed in the United States only if the international application designated the United States and was published under Article 21(2) of such treaty in the English language.

Claims 57, 60, 61, and 75-78 are rejected under 35 U.S.C. 102(b) as being anticipated by Bouma et al. (US Patent No. 5,869,252).

The claims are drawn to an isolated antisense oligonucleotide of 10 to 50 nucleotides in length comprising at least 10 consecutive nucleotides of SEQ ID No. 167, wherein the oligonucleotide specifically hybridizes to an exon 44 target region of the Dystrophin gene.

Bouma et al. teach an oligonucleotide 23 nucleotides in length (SEQ ID No. 22) having 18 consecutive nucleotides of instant SEQ ID No. 167 (see alignment below).

SEQ ID No. 167       3 CUGUCAAAUCGCCUGCAG 20

Bouma et al.         1 CTGTCAAATCGCCTGCAG 18

Bouma et al. do not teach the oligonucleotide has the claimed function of hybridizing to exon 44 and has the ability to skip exon 44 however because the oligonucleotide is substantially identical to the claimed oligonucleotide, the claimed properties or functions are presumed to be inherent. The MPEP states:

**A REFERENCE TEACHING PRODUCT APPEARING TO BE SUBSTANTIALLY IDENTICAL IS MADE THE BASIS OF A REJECTION, AND THE EXAMINER PRESENTS EVIDENCE OR REASONING TENDING TO SHOW INHERENCY, THE BURDEN SHIFTS TO THE APPLICANT TO SHOW AN UNOBVIOUS DIFFERENCE**

"[T]he PTO can require an applicant to prove that the prior art products do not necessarily or inherently possess the characteristics of his [or her] claimed product. Whether the rejection is based on inherency' under 35 U.S.C. 102, on prima facie obviousness' under 35 U.S.C. 103, jointly or alternatively, the burden of proof is the same...[footnote omitted]." The burden of proof is

Application/Control Number: 13/270,500                                                Page 6

Art Unit: 1635

similar to that required with respect to product-by-process claims. *In re Fitzgerald,* 619 F.2d 67, 70, 205 USPQ 594, 596 (CCPA 1980) (quoting *In re Best,* 562 F.2d 1252, 1255, 195 USPQ 430, 433-34 (CCPA 1977)).

**MPEP 2112.01:**

**PRODUCT AND APPARATUS CLAIMS □ WHEN THE STRUCTURE RECITED IN THE REFERENCE IS SUBSTANTIALLY IDENTICAL TO THAT OF THE CLAIMS, CLAIMED PROPERTIES OR FUNCTIONS ARE PRESUMED TO BE INHERENT**

Where the claimed and prior art products are identical or substantially identical in structure or composition, or are produced by identical or substantially identical processes, a prima facie case of either anticipation or obviousness has been established. In re Best, 562 F.2d 1252, 1255, 195 USPQ 430, 433 (CCPA 1977). □When the PTO shows a sound basis for believing that the products of the applicant and the prior art are the same, the applicant has the burden of showing that they are not.□ *In re Spada*, 911 F.2d 705, 709, 15 USPQ2d 1655, 1658 (Fed. Cir. 1990). Therefore, the   prima facie case can be rebutted by evidence showing that the prior art products do not necessarily possess the characteristics of the claimed product. *In re Best*, 562 F.2d at 1255, 195 USPQ at 433.

**A REJECTION UNDER 35 U.S.C. 102/103 CAN BE MADE WHEN THE PRIOR ART PRODUCT SEEMS TO BE IDENTICAL EXCEPT THAT THE PRIOR ART IS SILENT AS TO AN INHERENT CHARACTERISTIC**

Where applicant claims a composition in terms of a function, property or characteristic and the composition of the prior art is the same as that of the claim but the function is not explicitly disclosed by the reference, the examiner may make a rejection under both 35 U.S.C. 102 and 103, expressed as a 102/103 rejection. "There is nothing inconsistent in concurrent rejections for obviousness under 35  U.S.C. 103 and for anticipation under 35 U.S.C. 102." *In re Best*, 562 F.2d 1252, 1255 n.4, 195 USPQ 430, 433 n.4 (CCPA 1977). This same rationale should also apply to product, apparatus, and process claims claimed in terms of function, property or characteristic. Therefore, a 35  U.S.C. 102/103 rejection is appropriate for these types of claims as well as for composition claims.

Thus Bouma et al. anticipates the instant claims.

Claims 57, 60-72, 74-89, 91 and 92 are rejected under 35 U.S.C. 102(e) as being

anticipated by Ackermann et al. (US 20040254137).

The claims are drawn to an isolated antisense oligonucleotide of 10 to 50

nucleotides in length comprising at least 10 consecutive nucleotides of SEQ ID No. 167,

Application/Control Number: 13/270,500                                          Page 7
Art Unit: 1635

wherein the oligonucleotide specifically hybridizes to an exon 44 target region of the

Dystrophin gene, wherein the antisense oligonucleotide comprises modified backbone,

sugar and internucleotide linkages.

Ackermann et al. teach an oligonucleotide 20 nucleotides in length having 12

consecutive nucleotides of instant SEQ ID No. 167 (see alignment below).

SEQ ID No. 167          5 GUCAAAUCGCCU 16

Ackermann et al.        6 GTCAAATCGCCT 17

Ackermann et al. teach the oligonucleotide comprises modified backbone, sugar

moieties and internucleotide linkages, comprises morpholino moieties, can be a peptide

nucleic acid and can be linked to a conjugate such as PEG (see paragraphs 0038-

0047).

Ackermann et al. do not teach the oligonucleotide has the claimed function of

hybridizing to exon 44 and has the ability to skip exon 44 however because the

oligonucleotide is substantially identical to the claimed oligonucleotide, the claimed

properties or functions are presumed to be inherent (see MPEP above).

Thus Ackermann anticipates the instant claims.

### Claim Rejections - 35 USC § 103

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

Application/Control Number: 13/270,500                                                    Page 8
Art Unit: 1635

(a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

Claims 57-92 are rejected under 35 U.S.C. 103(a) as being unpatentable over van Deutekom et al. (Human Molecular Genetics 2001, Vol. 10, No. 15:1547-1554 of record IDS filed 01/31/2012) and van Ommen et al. (US 20060147952 of record IDS filed 05/14/2012), Ackermann et al. (US 20040254137) and ( Manoharan et al. (US 20020156235).

The claims are drawn to an isolated antisense oligonucleotide of 10 to 50 nucleotides in length comprising at least 10 consecutive nucleotides of SEQ ID No. 167, wherein the oligonucleotide specifically hybridizes to an exon 44 target region of the Dystrophin gene, wherein the antisense oligonucleotide comprises modified backbone, sugar and internucleotide linkages.

van Deutekom teach a method for making chemically modified antisense oligonucleotides that induce exon skipping in dystrophin pre-mRNA from a Duchenne muscular dystrophy allele wherein the antisense oligonucleotides target several exons (see entire reference).

van Deutekom teach the studies provide a promising proof of principle for antisense-based therapy for DMD and may be applicable to a variety of DMD mutations and teach the use of 2'-O-methyl modified oligonucleotides (see page 1551).  van Deutekom teach a list of 10 exons, including exon 44 wherein it has been determined that skipping of this group of exons provides the possibility of >65% of DMD deletion

Application/Control Number: 13/270,500                                          Page 9
Art Unit: 1635

mutations being corrected (see page 1551).  This provides the motivation to design an

oligonucleotide targeted to at least exon 44.

van Ommen et al. et al. teach detailed method steps of generating antisense

oligonucleotides capable of exon skipping.  van Ommen et al. teach targeting the exon

inclusion signals and splice regions of the exon and teach methods of testing the

antisense oligonucleotides for the ability to induce exon skipping in assays using

myoblasts obtained from muscle biopsies (see beginning paragraph 0041).  van

Ommen et al. also teach the antisense oligonucleotide comprises modifications to

enhance stability and efficacy.

One would have wanted to target exon 44 as taught by van Deutekom et al. and

it would have been obvious to use the methods of van Ommen et al. to generate an

exon targeted to exon 44.  Given the sequence of exon 44 is well known (Genbank

Accession No. U94396; exon 44 2868-3015), one of skill in the art would have been

capable of generating antisense oligonucleotides comprising or consisting of the

claimed sequence and testing said molecules for the ability to induce skipping.

Ackermann et al. teach antisense oligonucleotides that comprise modified

backbone, sugar moieties and internucleotide linkages, comprise morpholino moieties,

and that can be peptide nucleic acids and further can be linked to a conjugate such as

PEG (see paragraphs 0038-0047) which enhance the stability and specificity of

antisense oligonucleotides and it would have been obvious to one of ordinary skill in the

art to incorporate these moieties into the antisense oligonucleotide made to target exon

44.

Application/Control Number: 13/270,500                              Page 10
Art Unit: 1635

It would have further been obvious for one of ordinary skill in the art to conjugate cell penetrating peptides and chemically linking with polyethylene glycol chains as taught by Manoharan et al. (see paragraphs 0027 and 0165). Manoharan et al. teach antisense oligonucleotides comprising peptide conjugates such as tat enhanced the overall efficacy of said oligonucleotide and one of ordinary skill in the art would have expected to be capable of making such conjugates as demonstrated by Manoharan et al.

Thus in the absence of evidence to the contrary, the invention as a whole would have been *prima facie* obvious to one of ordinary skill in the art at the time the invention was made.

### Conclusion

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Kimberly Chong whose telephone number is 571-272-3111. The examiner can normally be reached Monday thru Friday between 7-4 pm.

If attempts to reach the examiner by telephone are unsuccessful please contact the SPE for 1635 Heather Calamita at 571-272-2876. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Patent applicants with problems or questions regarding electronic images that can be viewed in the Patent Application Information Retrieval system (PAIR) can now contact the USPTO's Patent Electronic Business Center (Patent EBC) for assistance. Representatives are available to answer your questions daily from 6 am to midnight

Application/Control Number: 13/270,500                                    Page 11
Art Unit: 1635

(EST). The toll free number is (866) 217-9197. When calling please have your

application serial or patent number, the type of document you are having an image

problem with, the number of pages and the specific nature of the problem.  The Patent

Electronic Business Center will notify applicants of the resolution of the problem within

5-7 business days. Applicants can also check PAIR to confirm that the problem has

been corrected.  The USPTO's Patent Electronic Business Center is a complete service

center supporting all patent business on the Internet. The USPTO's PAIR system

provides Internet-based access to patent application status and history information. It

also enables applicants to view the scanned images of their own application file

folder(s) as well as general patent information available to the public. For more

information about the PAIR system, see http://pair-direct.uspto.gov.

        For all other customer support, please call the USPTO Call Center (UCC) at 800-

786-9199.


/Kimberly Chong/
Primary Examiner
Art Unit 1635

SRPT-VYDS-0003558

Uɴɪᴛᴇᴅ Sᴛᴀᴛᴇs Pᴀᴛᴇɴᴛ ᴀɴᴅ Tʀᴀᴅᴇᴍᴀʀᴋ Oꜰꜰɪᴄᴇ

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/270,500 | 10/11/2011 | Stephen Donald Wilton | 40239-712.306 | 4073 |

21971      7590      03/14/2012
WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CA 94304-1050

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1635 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 03/14/2012 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

SRPT-VYDS-0003559

| | Application No. | Applicant(s) |
|---|---|---|
| **Office Action Summary** | 13/270,500 | WILTON ET AL. |
| | **Examiner** | **Art Unit** | |
| | KIMBERLY CHONG | 1635 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>1</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>11 October 2011</u>.

2a)☐ This action is **FINAL**.    2b)☒ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

5)☒ Claim(s) <u>15-56</u> is/are pending in the application.

    5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6)☐ Claim(s) _____ is/are allowed.

7)☐ Claim(s) _____ is/are rejected.

8)☐ Claim(s) _____ is/are objected to.

9)☒ Claim(s) <u>15-56</u> are subject to restriction and/or election requirement.

**Application Papers**

10)☐ The specification is objected to by the Examiner.

11)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

12)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

13)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All   b)☐ Some * c)☐ None of:

      1.☐ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☐ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☐ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____ .

5)☐ Notice of Informal Patent Application

6)☐ Other: _____.

SRPT-VYDS-0003560

Application/Control Number: 13/270,500                                                Page 2
Art Unit: 1635

## DETAILED ACTION

### *Election/Restrictions*

Restriction to one of the following inventions is required under 35 U.S.C. 121:

I.     Claims 15-23, 41, drawn to an isolated antisense oligonucleotide

       comprising 10 nucleotides or base positions 6-15 of SEQ ID No. 167

       wherein the oligonucleotide specifically hybridizes to exon 44 target

       region, classifiable in class 536, subclass 24.5.

II.    Claims 24-40, 42-44, drawn to a method of inducing exon-skipping of

       dystrophin exon 44 comprising introducing a nucleic acid molecule

       wherein the molecule is an isolated antisense oligonucleotide comprising

       base positions 10 nucleotides or base positions 6-15 of SEQ ID No. 167,

       classifiable in class 514, subclass 44.

III.   Claim 45, drawn to an isolated antisense oligonucleotide comprising base

       positions 11-20 of SEQ ID No. 167 wherein the oligonucleotide specifically

       hybridizes to exon 44 target region, classifiable in class 536, subclass

       24.5

IV.    Claims 46-48, drawn to a method of inducing exon-skipping of dystrophin

       exon 44 comprising introducing a nucleic acid molecule wherein the

       molecule is an isolated antisense oligonucleotide comprising base

       positions 11-20 of SEQ ID No. 167, classifiable in class 514, subclass 44.

V.     Claim 49, drawn to an isolated antisense oligonucleotide comprising base

       positions 1-10 of SEQ ID No. 167 wherein the oligonucleotide specifically

hybridizes to exon 44 target region, classifiable in class 536, subclass 24.5

VI.     Claims 50-52, drawn to a method of inducing exon-skipping of dystrophin exon 44 comprising introducing a nucleic acid molecule wherein the molecule is an isolated antisense oligonucleotide comprising base positions 1-10 of SEQ ID No. 167, classifiable in class 514, subclass 44.

VII.    Claim 53, drawn to an isolated antisense oligonucleotide comprising base positions 8-17 of SEQ ID No. 165 wherein the oligonucleotide specifically hybridizes to exon 44 target region, classifiable in class 536, subclass 24.5

VIII.   Claims 54-56, drawn to a method of inducing exon-skipping of dystrophin exon 44 comprising introducing a nucleic acid molecule wherein the molecule is an isolated antisense oligonucleotide comprising base positions 8-17 of SEQ ID No. 165, classifiable in class 514, subclass 44.

The inventions are distinct, each from the other because of the following reasons:

Inventions of Groups I and II are related as product and process of use. The inventions can be shown to be distinct if either or both of the following can be shown: (1) the process for using the product as claimed can be practiced with another materially different product or (2) the product as claimed can be used in a materially different process of using that product. See MPEP § 806.05(h). In the instant case, the product antisense oligonucleotide can be used in a materially different process, such as a probe

Application/Control Number: 13/270,500                                         Page 4
Art Unit: 1635

in a hybridization assay. Furthermore restriction is proper because the subject matter is

divergent and non-coextensive and a search for one would not necessarily reveal art

against the other.  It is therefore a burden to search these inventions in a single

application.

  Inventions of Groups I and III are unrelated.  Inventions are unrelated if it can be

shown that they are not disclosed as capable of use together and they have different

designs, modes of operation, and effects (MPEP § 802.01 and § 806.06).  In the instant

case, the different inventions have different designs as they are each unique

oligonucleotide sequences that bind to different regions of a target gene and thus have

different modes of operation and effects. Furthermore restriction is proper because the

subject matter is divergent and non-coextensive and a search for one would not

necessarily reveal art against the other.  It is therefore a burden to search these

inventions in a single application.

  Inventions of Groups I and IV are directed to an unrelated product and process.

Product and process inventions are unrelated if it can be shown that the product cannot

be used in, or made by, the process.  See MPEP § 802.01 and § 806.06.  In the instant

case, the isolated antisense oligonucleotide of Group I is materially different product

than the oligonucleotide described in the method of Group IV and is not disclosed as

capable of use in the claimed method. Furthermore restriction is proper because the

subject matter is divergent and non-coextensive and a search for one would not

necessarily reveal art against the other.  It is therefore a burden to search these

inventions in a single application.

SRPT-VYDS-0003563

Application/Control Number: 13/270,500                                      Page 5
Art Unit: 1635

Inventions of Groups I and V are unrelated.  Inventions are unrelated if it can be shown that they are not disclosed as capable of use together and they have different designs, modes of operation, and effects (MPEP § 802.01 and § 806.06).  In the instant case, the different inventions have different designs as they are each unique oligonucleotide sequences that bind to different regions of a target gene and thus have different modes of operation and effects. Furthermore restriction is proper because the subject matter is divergent and non-coextensive and a search for one would not necessarily reveal art against the other.  It is therefore a burden to search these inventions in a single application.

Inventions of Groups I and VI are directed to an unrelated product and process. Product and process inventions are unrelated if it can be shown that the product cannot be used in, or made by, the process.  See MPEP § 802.01 and § 806.06.  In the instant case, the isolated antisense oligonucleotide of Group I is materially different product than the oligonucleotide described in the method of Group VI and is not disclosed as capable of use in the claimed method. Furthermore restriction is proper because the subject matter is divergent and non-coextensive and a search for one would not necessarily reveal art against the other.  It is therefore a burden to search these inventions in a single application.

Inventions of Groups I and VII are unrelated.  Inventions are unrelated if it can be shown that they are not disclosed as capable of use together and they have different designs, modes of operation, and effects (MPEP § 802.01 and § 806.06).  In the instant case, the different inventions have different designs as they are each unique

SRPT-VYDS-0003564

Application/Control Number: 13/270,500                                    Page 6
Art Unit: 1635

oligonucleotide sequences that bind to different regions of a target gene and thus have different modes of operation and effects. Furthermore restriction is proper because the subject matter is divergent and non-coextensive and a search for one would not necessarily reveal art against the other. It is therefore a burden to search these inventions in a single application.

Inventions of Groups I and VIII are directed to an unrelated product and process. Product and process inventions are unrelated if it can be shown that the product cannot be used in, or made by, the process. See MPEP § 802.01 and § 806.06. In the instant case, the isolated antisense oligonucleotide of Group I is materially different product than the oligonucleotide described in the method of Group VIII and is not disclosed as capable of use in the claimed method. Furthermore restriction is proper because the subject matter is divergent and non-coextensive and a search for one would not necessarily reveal art against the other. It is therefore a burden to search these inventions in a single application.

Inventions of Groups II and III are directed to an unrelated product and process. Product and process inventions are unrelated if it can be shown that the product cannot be used in, or made by, the process. See MPEP § 802.01 and § 806.06. In the instant case, the isolated antisense oligonucleotide of Group III is materially different product than the oligonucleotide described in the method of Group II and is not disclosed as capable of use in the claimed method. Furthermore restriction is proper because the

Application/Control Number: 13/270,500                                          Page 7

Art Unit: 1635

subject matter is divergent and non-coextensive and a search for one would not necessarily reveal art against the other.  It is therefore a burden to search these inventions in a single application.

Inventions of Groups II and IV are unrelated.  Inventions are unrelated if it can be shown that they are not disclosed as capable of use together and they have different designs, modes of operation, and effects (MPEP § 802.01 and § 806.06).  In the instant case, the different inventions have different designs as they each use a different and unique oligonucleotide sequences that bind to different regions of a target gene and thus have different modes of operation and effects. Furthermore restriction is proper because the subject matter is divergent and non-coextensive and a search for one would not necessarily reveal art against the other.  It is therefore a burden to search these inventions in a single application.

Inventions of Groups II and V are directed to an unrelated product and process. Product and process inventions are unrelated if it can be shown that the product cannot be used in, or made by, the process.  See MPEP § 802.01 and § 806.06.  In the instant case, the isolated antisense oligonucleotide of Group V is materially different product than the oligonucleotide described in the method of Group II and is not disclosed as capable of use in the claimed method. Furthermore restriction is proper because the subject matter is divergent and non-coextensive and a search for one would not necessarily reveal art against the other.  It is therefore a burden to search these inventions in a single application.

SRPT-VYDS-0003566

Application/Control Number: 13/270,500                                    Page 8
Art Unit: 1635

Inventions of Groups II and VI are unrelated. Inventions are unrelated if it can be shown that they are not disclosed as capable of use together and they have different designs, modes of operation, and effects (MPEP § 802.01 and § 806.06). In the instant case, the different inventions have different designs as they each use a different and unique oligonucleotide sequences that bind to different regions of a target gene and thus have different modes of operation and effects. Furthermore restriction is proper because the subject matter is divergent and non-coextensive and a search for one would not necessarily reveal art against the other. It is therefore a burden to search these inventions in a single application.

Inventions of Groups II and VII are directed to an unrelated product and process. Product and process inventions are unrelated if it can be shown that the product cannot be used in, or made by, the process. See MPEP § 802.01 and § 806.06. In the instant case, the isolated antisense oligonucleotide of Group VII is materially different product than the oligonucleotide described in the method of Group II and is not disclosed as capable of use in the claimed method. Furthermore restriction is proper because the subject matter is divergent and non-coextensive and a search for one would not necessarily reveal art against the other. It is therefore a burden to search these inventions in a single application.

Inventions of Groups II and VIII are unrelated. Inventions are unrelated if it can be shown that they are not disclosed as capable of use together and they have different designs, modes of operation, and effects (MPEP § 802.01 and § 806.06). In the instant case, the different inventions have different designs as they each use a different and

SRPT-VYDS-0003567

Application/Control Number: 13/270,500    Page 9
Art Unit: 1635

unique oligonucleotide sequences that bind to different regions of a target gene and thus have different modes of operation and effects. Furthermore restriction is proper because the subject matter is divergent and non-coextensive and a search for one would not necessarily reveal art against the other.  It is therefore a burden to search these inventions in a single application.

Inventions of Groups III and IV are related as product and process of use.  The inventions can be shown to be distinct if either or both of the following can be shown: (1) the process for using the product as claimed can be practiced with another materially different product or (2) the product as claimed can be used in a materially different process of using that product. See MPEP § 806.05(h).  In the instant case, the product antisense oligonucleotide can be used in a materially different process, such as a probe in a hybridization assay. Furthermore restriction is proper because the subject matter is divergent and non-coextensive and a search for one would not necessarily reveal art against the other.  It is therefore a burden to search these inventions in a single application.

Inventions of Groups III and V are unrelated.  Inventions are unrelated if it can be shown that they are not disclosed as capable of use together and they have different designs, modes of operation, and effects (MPEP § 802.01 and § 806.06).  In the instant case, the different inventions have different designs as they each use a different and unique oligonucleotide sequences that bind to different regions of a target gene and

SRPT-VYDS-0003568

Application/Control Number: 13/270,500                                         Page 10
Art Unit: 1635

thus have different modes of operation and effects. Furthermore restriction is proper because the subject matter is divergent and non-coextensive and a search for one would not necessarily reveal art against the other.  It is therefore a burden to search these inventions in a single application.

Inventions of Groups III and VI are directed to an unrelated product and process. Product and process inventions are unrelated if it can be shown that the product cannot be used in, or made by, the process.  See MPEP § 802.01 and § 806.06.  In the instant case, the isolated antisense oligonucleotide of Group III is materially different product than the oligonucleotide described in the method of Group VI and is not disclosed as capable of use in the claimed method. Furthermore restriction is proper because the subject matter is divergent and non-coextensive and a search for one would not necessarily reveal art against the other.  It is therefore a burden to search these inventions in a single application.

Inventions of Groups III and VII are unrelated.  Inventions are unrelated if it can be shown that they are not disclosed as capable of use together and they have different designs, modes of operation, and effects (MPEP § 802.01 and § 806.06).  In the instant case, the different inventions have different designs as they each use a different and unique oligonucleotide sequences that bind to different regions of a target gene and thus have different modes of operation and effects. Furthermore restriction is proper because the subject matter is divergent and non-coextensive and a search for one would not necessarily reveal art against the other.  It is therefore a burden to search these inventions in a single application.

SRPT-VYDS-0003569

Application/Control Number: 13/270,500                                                    Page 11
Art Unit: 1635

Inventions of Groups III and VIII are directed to an unrelated product and

process.  Product and process inventions are unrelated if it can be shown that the

product cannot be used in, or made by, the process.  See MPEP § 802.01 and §

806.06.  In the instant case, the isolated antisense oligonucleotide of Group III is

materially different product than the oligonucleotide described in the method of Group

VIII and is not disclosed as capable of use in the claimed method. Furthermore

restriction is proper because the subject matter is divergent and non-coextensive and a

search for one would not necessarily reveal art against the other.  It is therefore a

burden to search these inventions in a single application.

Inventions of Groups IV and V are directed to an unrelated product and process.

Product and process inventions are unrelated if it can be shown that the product cannot

be used in, or made by, the process.  See MPEP § 802.01 and § 806.06.  In the instant

case, the isolated antisense oligonucleotide of Group V is materially different product

than the oligonucleotide described in the method of Group IV and is not disclosed as

capable of use in the claimed method. Furthermore restriction is proper because the

subject matter is divergent and non-coextensive and a search for one would not

necessarily reveal art against the other.  It is therefore a burden to search these

inventions in a single application.

Inventions of Groups IV and VI are unrelated.  Inventions are unrelated if it can

be shown that they are not disclosed as capable of use together and they have different

Application/Control Number: 13/270,500                                                    Page 12
Art Unit: 1635

designs, modes of operation, and effects (MPEP § 802.01 and § 806.06).  In the instant

case, the different inventions have different designs as they each use a different and

unique oligonucleotide sequences that bind to different regions of a target gene and

thus have different modes of operation and effects. Furthermore restriction is proper

because the subject matter is divergent and non-coextensive and a search for one

would not necessarily reveal art against the other.  It is therefore a burden to search

these inventions in a single application.

Inventions of Groups IV and VII are directed to an unrelated product and

process.  Product and process inventions are unrelated if it can be shown that the

product cannot be used in, or made by, the process.  See MPEP § 802.01 and §

806.06.  In the instant case, the isolated antisense oligonucleotide of Group VII is

materially different product than the oligonucleotide described in the method of Group IV

and is not disclosed as capable of use in the claimed method. Furthermore restriction is

proper because the subject matter is divergent and non-coextensive and a search for

one would not necessarily reveal art against the other.  It is therefore a burden to search

these inventions in a single application.

Inventions of Groups IV and VIII are unrelated.  Inventions are unrelated if it can

be shown that they are not disclosed as capable of use together and they have different

designs, modes of operation, and effects (MPEP § 802.01 and § 806.06).  In the instant

case, the different inventions have different designs as they each use a different and

unique oligonucleotide sequences that bind to different regions of a target gene and

thus have different modes of operation and effects. Furthermore restriction is proper

SRPT-VYDS-0003571

Application/Control Number: 13/270,500                                    Page 13
Art Unit: 1635

because the subject matter is divergent and non-coextensive and a search for one
would not necessarily reveal art against the other.  It is therefore a burden to search
these inventions in a single application

       Inventions of Groups V and VI are related as product and process of use.  The
inventions can be shown to be distinct if either or both of the following can be shown: (1)
the process for using the product as claimed can be practiced with another materially
different product or (2) the product as claimed can be used in a materially different
process of using that product. See MPEP § 806.05(h).  In the instant case, the product
antisense oligonucleotide can be used in a materially different process, such as a probe
in a hybridization assay. Furthermore restriction is proper because the subject matter is
divergent and non-coextensive and a search for one would not necessarily reveal art
against the other.  It is therefore a burden to search these inventions in a single
application.

       Inventions of Groups V and VII are unrelated.  Inventions are unrelated if it can
be shown that they are not disclosed as capable of use together and they have different
designs, modes of operation, and effects (MPEP § 802.01 and § 806.06).  In the instant
case, the different inventions have different designs as they each use a different and
unique oligonucleotide sequences that bind to different regions of a target gene and
thus have different modes of operation and effects. Furthermore restriction is proper
because the subject matter is divergent and non-coextensive and a search for one

SRPT-VYDS-0003572

Application/Control Number: 13/270,500                                      Page 14
Art Unit: 1635

would not necessarily reveal art against the other.  It is therefore a burden to search these inventions in a single application.

Inventions of Groups V and VIII are directed to an unrelated product and process.  Product and process inventions are unrelated if it can be shown that the product cannot be used in, or made by, the process.  See MPEP § 802.01 and § 806.06.  In the instant case, the isolated antisense oligonucleotide of Group VII is materially different product than the oligonucleotide described in the method of Group V and is not disclosed as capable of use in the claimed method. Furthermore restriction is proper because the subject matter is divergent and non-coextensive and a search for one would not necessarily reveal art against the other.  It is therefore a burden to search these inventions in a single application.


Inventions of Groups VI and VII are directed to an unrelated product and process.  Product and process inventions are unrelated if it can be shown that the product cannot be used in, or made by, the process.  See MPEP § 802.01 and § 806.06.  In the instant case, the isolated antisense oligonucleotide of Group VII is materially different product than the oligonucleotide described in the method of Group VI and is not disclosed as capable of use in the claimed method. Furthermore restriction is proper because the subject matter is divergent and non-coextensive and a search for one would not necessarily reveal art against the other.  It is therefore a burden to search these inventions in a single application.

Application/Control Number: 13/270,500                                    Page 15
Art Unit: 1635

Inventions of Groups VI and VIII are unrelated.  Inventions are unrelated if it can be shown that they are not disclosed as capable of use together and they have different designs, modes of operation, and effects (MPEP § 802.01 and § 806.06).  In the instant case, the different inventions have different designs as they each use a different and unique oligonucleotide sequences that bind to different regions of a target gene and thus have different modes of operation and effects. Furthermore restriction is proper because the subject matter is divergent and non-coextensive and a search for one would not necessarily reveal art against the other.  It is therefore a burden to search these inventions in a single application

Inventions of Groups VII and VIII are related as product and process of use.  The inventions can be shown to be distinct if either or both of the following can be shown: (1) the process for using the product as claimed can be practiced with another materially different product or (2) the product as claimed can be used in a materially different process of using that product. See MPEP § 806.05(h).  In the instant case, the product antisense oligonucleotide can be used in a materially different process, such as a probe in a hybridization assay. Furthermore restriction is proper because the subject matter is divergent and non-coextensive and a search for one would not necessarily reveal art against the other.  It is therefore a burden to search these inventions in a single application.

Application/Control Number: 13/270,500                                    Page 16
Art Unit: 1635

Restriction for examination purposes as indicated is proper because all these inventions listed in this action are independent or distinct for the reasons given above and there would be a serious search and examination burden if restriction were not required because one or more of the following reasons apply:

(a) the inventions have acquired a separate status in the art in view of their different classification;

(b) the inventions have acquired a separate status in the art due to their recognized divergent subject matter;

(c) the inventions require a different field of search (for example, searching different classes/subclasses or electronic resources, or employing different search queries);

(d) the prior art applicable to one invention would not likely be applicable to another invention;

(e) the inventions are likely to raise different non-prior art issues under 35 U.S.C. 101 and/or 35 U.S.C. 112, first paragraph.

**Applicant is advised that the reply to this requirement to be complete <u>must include (i) an election of a invention to be examined</u>** even though the requirement may be traversed (37 CFR 1.143) **and (ii) <u>identification of the claims encompassing the elected invention</u>**.

The election of an invention may be made with or without traverse. To reserve a right to petition, the election must be made with traverse. If the reply does not distinctly and specifically point out supposed errors in the restriction requirement, the election

Application/Control Number: 13/270,500                                    Page 17
Art Unit: 1635

shall be treated as an election without traverse. Traversal must be presented at the time

of election in order to be considered timely.  Failure to timely traverse the requirement

will result in the loss of right to petition under 37 CFR 1.144.

If claims are added after the election, applicant must indicate which of these

claims are readable upon the elected invention.

Should applicant traverse on the ground that the inventions are not patentably

distinct, applicant should submit evidence or identify such evidence now of record

showing the inventions to be obvious variants or clearly admit on the record that this is

the case. In either instance, if the examiner finds one of the inventions unpatentable

over the prior art, the evidence or admission may be used in a rejection under 35 U.S.C.

103(a) of the other invention.

Applicant is reminded that upon the cancellation of claims to a non-elected

invention, the inventorship must be amended in compliance with 37 CFR 1.48(b) if one

or more of the currently named inventors is no longer an inventor of at least one claim

remaining in the application. Any amendment of inventorship must be accompanied by

a request under 37 CFR 1.48(b) and by the fee required under 37 CFR 1.17(i).


The examiner has required restriction between product and process claims.
Where applicant elects claims directed to the product, and the product claims are
subsequently found allowable, withdrawn process claims that depend from or otherwise
require all the limitations of the allowable product claim will be considered for rejoinder.
All claims directed a nonelected process invention  must require all the limitations of an
allowable product claim for that process invention to be rejoined.
In the event of rejoinder, the requirement for restriction between the product
claims and the rejoined process claims will be withdrawn, and the rejoined process
claims will be fully examined for patentability in accordance with 37 CFR 1.104. Thus, to
be allowable, the rejoined claims must meet all criteria for patentability including the

requirements of 35 U.S.C. 101, 102, 103 and 112. Until all claims to the elected product are found allowable, an otherwise proper restriction requirement between product claims and process claims may be maintained. Withdrawn process claims that are not commensurate in scope with an allowable product claim will not be rejoined. See MPEP § 821.04(b). Additionally, in order to retain the right to rejoinder in accordance with the above policy, applicant is advised that the process claims should be amended during prosecution to require the limitations of the product claims. **Failure to do so may result in a loss of the right to rejoinder**. Further, note that the prohibition against double patenting rejections of 35 U.S.C. 121 does not apply where the restriction requirement is withdrawn by the examiner before the patent issues. See MPEP § 804.01.

### *Conclusion*

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Kimberly Chong whose telephone number is 571-272-3111. The examiner can normally be reached Monday thru Friday between 7-4 pm.

If attempts to reach the examiner by telephone are unsuccessful please contact the Acting SPE for 1635 Heather Calamita at 571-272-2876. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Patent applicants with problems or questions regarding electronic images that can be viewed in the Patent Application Information Retrieval system (PAIR) can now contact the USPTO's Patent Electronic Business Center (Patent EBC) for assistance. Representatives are available to answer your questions daily from 6 am to midnight (EST). The toll free number is (866) 217-9197. When calling please have your application serial or patent number, the type of document you are having an image problem with, the number of pages and the specific nature of the problem. The Patent Electronic Business Center will notify applicants of the resolution of the problem within 5-7 business days. Applicants can also check PAIR to confirm that the problem has

SRPT-VYDS-0003577

Application/Control Number: 13/270,500                                                    Page 19
Art Unit: 1635

been corrected.  The USPTO's Patent Electronic Business Center is a complete service

center supporting all patent business on the Internet. The USPTO's PAIR system

provides Internet-based access to patent application status and history information. It

also enables applicants to view the scanned images of their own application file

folder(s) as well as general patent information available to the public. For more

information about the PAIR system, see http://pair-direct.uspto.gov.

    For all other customer support, please call the USPTO Call Center (UCC) at 800-

786-9199.

/Kimberly Chong/
Primary Examiner
Art Unit 1635

SRPT-VYDS-0003578

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/270,531 | 10/11/2011 | Stephen Donald Wilton | AVN-008CN7 | 8453 |

959          7590          06/28/2012
NELSON MULLINS RILEY & SCARBOROUGH LLP
FLOOR 30, SUITE 3000
ONE POST OFFICE SQUARE
BOSTON, MA 02109

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1635 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 06/28/2012 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

SRPT-VYDS-0003579

| | Application No. | Applicant(s) |
|---|---|---|
| | 13/270,531 | WILTON ET AL. |
| **Office Action Summary** | Examiner | Art Unit | |
| | KIMBERLY CHONG | 1635 | |

-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --

### Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE **3** MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

### Status

1) ☒ Responsive to communication(s) filed on _14 May 2012_.

2a) ☐ This action is **FINAL**.   2b) ☒ This action is non-final.

3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under _Ex parte Quayle_, 1935 C.D. 11, 453 O.G. 213.

### Disposition of Claims

5) ☒ Claim(s) _44-80_ is/are pending in the application.

   5a) Of the above claim(s) _44_ is/are withdrawn from consideration.

6) ☐ Claim(s) _____ is/are allowed.

7) ☒ Claim(s) _45-80_ is/are rejected.

8) ☐ Claim(s) _____ is/are objected to.

9) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

### Application Papers

10) ☐ The specification is objected to by the Examiner.

11) ☒ The drawing(s) filed on _10/11/2011_ is/are: a) ☐ accepted or b) ☐ objected to by the Examiner.

   Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

   Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

12) ☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

### Priority under 35 U.S.C. § 119

13) ☒ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

   a) ☒ All   b) ☐ Some *   c) ☐ None of:

   1. ☐ Certified copies of the priority documents have been received.

   2. ☒ Certified copies of the priority documents have been received in Application No. _11570691_.

   3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

   * See the attached detailed Office action for a list of the certified copies not received.

#### Attachment(s)

1) ☒ Notice of References Cited (PTO-892)
2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3) ☒ Information Disclosure Statement(s) (PTO/SB/08)
   Paper No(s)/Mail Date _01/31/12,05/14/12_.

4) ☐ Interview Summary (PTO-413)
   Paper No(s)/Mail Date. _____ .
5) ☐ Notice of Informal Patent Application
6) ☐ Other: _____.

SRPT-VYDS-0003580

Application/Control Number: 13/270,531                                        Page 2
Art Unit: 1635

## DETAILED ACTION

### Election/Restrictions

Applicant's election with traverse of Group I in the reply filed on 05/14/2012 is

acknowledged.  The traversal is on the ground(s) that Group III should be rejoined with

Group I.  This argument is persuasive and the groups will be rejoined.   With the

canceling of claims 15-43 and claims 44-80 pending, claims 45-80 are directed to the

subject matter of the elected group and currently under examination.

### Information Disclosure Statement

The submission of the Information Disclosure Statements on 05/14/2012 and

01/31/2012 is in compliance with 37 CFR 1.97.  The information disclosure statements

have been considered by the examiner and signed copies have been placed in the file.

### Claim Rejections - 35 USC § 112

The following is a quotation of the first paragraph of 35 U.S.C. 112:

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same and shall set forth the best mode contemplated by the inventor of carrying out his invention.

Claims 61 and 62 are rejected under 35 U.S.C. 112, first paragraph, as failing to

comply with the written description requirement.  The claim(s) contains subject matter

which was not described in the specification in such a way as to reasonably convey to

Application/Control Number: 13/270,531                                     Page 3
Art Unit: 1635

one skilled in the relevant art that the inventor(s), at the time the application was filed,

had possession of the claimed invention.  This is a new matter rejection.

Claim 61 is directed to "wherein the oligonucleotide is conjugated to an arginine-

rich cell penetrating peptide". The specification discloses peptide nucleic acid

modifications of the oligonucleotide but do not disclose a conjugate comprising arginine-

rich cell penetrating peptides.

Claim 62 is directed to an oligonucleotide "chemically linked to a polyethylene

glycol molecule".  The specification in paragraph 0086 provides support for a linked

polynucleotide chain but not a "molecule".  The use of the term "molecule" is new matter

because it can encompass many type of polyethylene glycol molecules that are not

instantly disclosed.

If Applicant believes that such support is present in the specification and claimed

priority documents, Applicant should point, with particularity, to where such support is to

be found.


***Claim Rejections - 35 USC § 102***

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that

form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(e) the invention was described in (1) an application for patent, published under section 122(b), by
another filed in the United States before the invention by the applicant for patent or (2) a patent
granted on an application for patent by another filed in the United States before the invention by the
applicant for patent, except that an international application filed under the treaty defined in section
351(a) shall have the effects for purposes of this subsection of an application filed in the United States
only if the international application designated the United States and was published under Article 21(2)
of such treaty in the English language.

Application/Control Number: 13/270,531                                        Page 4
Art Unit: 1635

Claims 63-77 are rejected under 35 U.S.C. 102(e) as being anticipated by van Deutekom et al. (US Patent No. 7,537,879).

The claims are drawn to an isolated antisense oligonucleotide 10 to 50 nucleotides in length comprising at least 10 consecutive nucleotides 100% complementary to an exon 45 target region.

van Deutekom et al. teach an antisense oligonucleotide 17 nucleotides in length that comprises 15 consecutive nucleotides complementary to exon 45.

```
US 7,534,879 SEQ ID16

SEQ ID 207          1 CCAAUGCCAUCCUGG 15
                      | | | | | | | | | | | | | | |
  '879              3 CCAAUGCCAUCCUGG 17
```

van Deutekom et al. et al. teach the oligonucleotide can be modified to not activate RNase H, can comprise modified sugar and base moieties and can comprise morpholino and modified internucleotide linkages (see at least column 6 and claims). van Deutekom et al. et al. teach the oligonucleotide is capable of inducing exon skipping.

Thus van Deutekom et al. anticipates the instant claims.

### Claim Rejections - 35 USC § 103

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

(a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and

SRPT-VYDS-0003583

Application/Control Number: 13/270,531                                    Page 5
Art Unit: 1635

> the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

Claims 45-80 are rejected under 35 U.S.C. 103(a) as being unpatentable over van Deutekom et al. (US Patent No. 7,537,879) and Manoharan et al. (US 20020156235).

The claims are drawn to an isolated antisense oligonucleotide 10 to 50 nucleotides in length comprising at least 10 consecutive nucleotides 100% complementary to an exon 45 target region.

van Deutekom et al. teach an antisense oligonucleotide 17 nucleotides in length that comprises 15 consecutive nucleotides complementary to exon 45.

```
US 7,534,879 SEQ ID 16

SEQ ID 207          1 CCAAUGCCAUCCUGG 15
                      |||||||||||||||
'879                3 CCAAUGCCAUCCUGG 17
```

van Deutekom et al. et al. teach the oligonucleotide can be modified to not activate RNase H, can comprise modified sugar and base moieties and can comprise morpholino and modified internucleotide linkages (see at least column 6 and claims). van Deutekom et al. et al. teach the oligonucleotide is capable of inducing exon skipping.

van Deutekom et al. does not teach the oligonucleotide has at least 17 nucleotides complementary to an exon 45 target region and does not teach the

SRPT-VYDS-0003584

Application/Control Number: 13/270,531                                          Page 6
Art Unit: 1635

oligonucleotide is conjugated to an cell penetrating peptide or chemically linked to a

polyethylene glycol molecule.

While van Deutekom et al. does not specifically teach the oligonucleotide has at

least 17 nucleotides complementary to the exon 45 target region, van Deutekom et al.

does teach methods of generating antisense oligonucleotides targeted to exon regions

for induction of exon skipping.  van Deutekom et al. teach the antisense

oligonucleotides can be from 16 to 50 nucleotides in length (see column 6).  van

Deutekom et al. et al. generates several antisense oligonucleotides targeted to different

exons to demonstrate the methods of generating such functional oligonucleotides and

does in fact demonstrate an antisense oligonucleotide targeted to exon 45 was capable

of exon skipping.  This provides motivation to use the methods to generate more

antisense oligonucleotides to this exon region wherein the antisense oligonucleotides

can be anywhere from 16 to 50 nucleotides in length for the purpose of generating

effective oligonucleotides to use in methods of treatment.

It would have therefore been obvious to one of ordinary skill in the art to generate

the claimed antisense oligonucleotide comprising at least 17 oligonucleotides targeted

to exon 45.  One of skill in the art would have reasonably expected to be capable of

generating said antisense oligonucleotide as van Deutekom et al. teach methods of

generating functional antisense oligonucleotides capable of inducing exon skipping.

It would have further been obvious for one of ordinary skill in the art to conjugate

cell penetrating peptides and chemically linking with polyethylene glycol chains as

taught by Manoharan et al. (see paragraphs 0027 and 0165).  Manoharan et al. teach

SRPT-VYDS-0003585

Application/Control Number: 13/270,531                                            Page 7
Art Unit: 1635

antisense oligonucleotides comprising peptide conjugates such as tat enhanced the

overall efficacy of said oligonucleotide and one of ordinary skill in the art would have

expected to be capable of making such conjugates as demonstrated by Manoharan et

al.

Thus in the absence of evidence to the contrary, the invention as a whole would

have been *prima facie* obvious to one of ordinary skill in the art at the time the invention

was made.


### *Conclusion*

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Kimberly Chong whose telephone number is 571-272-

3111.  The examiner can normally be reached Monday thru Friday between 7-4 pm.

If attempts to reach the examiner by telephone are unsuccessful please contact

the SPE for 1635 Heather Calamita at 571-272-2876. The fax phone number for the

organization where this application or proceeding is assigned is 571-273-8300.

Patent applicants with problems or questions regarding electronic images that

can be viewed in the Patent Application Information Retrieval system (PAIR) can now

contact the USPTO's Patent Electronic Business Center (Patent EBC) for assistance.

Representatives are available to answer your questions daily from 6 am to midnight

(EST). The toll free number is (866) 217-9197. When calling please have your

application serial or patent number, the type of document you are having an image

problem with, the number of pages and the specific nature of the problem.  The Patent

SRPT-VYDS-0003586

Application/Control Number: 13/270,531                                    Page 8
Art Unit: 1635

Electronic Business Center will notify applicants of the resolution of the problem within

5-7 business days. Applicants can also check PAIR to confirm that the problem has

been corrected.  The USPTO's Patent Electronic Business Center is a complete service

center supporting all patent business on the Internet. The USPTO's PAIR system

provides Internet-based access to patent application status and history information. It

also enables applicants to view the scanned images of their own application file

folder(s) as well as general patent information available to the public. For more

information about the PAIR system, see http://pair-direct.uspto.gov.

         For all other customer support, please call the USPTO Call Center (UCC) at 800-

786-9199.

/Kimberly Chong/
Primary Examiner
Art Unit 1635

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/270,531 | 10/11/2011 | Stephen Donald Wilton | 40239-712.307 | 8453 |

21971          7590          03/14/2012
WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CA 94304-1050

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1635 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 03/14/2012 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

SRPT-VYDS-0003588

| | Application No. | Applicant(s) |
|---|---|---|
| **Office Action Summary** | 13/270,531 | WILTON ET AL. |
| | **Examiner** | **Art Unit** | |
| | KIMBERLY CHONG | 1635 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>1</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>11 October 2011</u>.

2a)☐ This action is **FINAL**.    2b)☒ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

5)☒ Claim(s) <u>15-44</u> is/are pending in the application.

5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6)☐ Claim(s) _____ is/are allowed.

7)☐ Claim(s) _____ is/are rejected.

8)☐ Claim(s) _____ is/are objected to.

9)☒ Claim(s) <u>15-44</u> are subject to restriction and/or election requirement.

**Application Papers**

10)☐ The specification is objected to by the Examiner.

11)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

12)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

13)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

a)☐ All  b)☐ Some * c)☐ None of:

1.☐ Certified copies of the priority documents have been received.

2.☐ Certified copies of the priority documents have been received in Application No. _____.

3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

* See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☐ Notice of References Cited (PTO-892)
2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3)☐ Information Disclosure Statement(s) (PTO/SB/08)
Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413)
Paper No(s)/Mail Date. _____ .
5)☐ Notice of Informal Patent Application
6)☐ Other: _____.

U.S. Patent and Trademark Office
PTOL-326 (Rev. 03-11)    Office Action Summary    Part of Paper No./Mail Date 20120312

SRPT-VYDS-0003589

Application/Control Number: 13/270,531                                    Page 2

Art Unit: 1635

## DETAILED ACTION

### *Election/Restrictions*

Restriction to one of the following inventions is required under 35 U.S.C. 121:

I.      Claims 15-23, drawn to an isolated antisense oligonucleotide comprising base positions 5-14 of SEQ ID No. 207 wherein the oligonucleotide specifically hybridizes to exon 45 target region, classifiable in class 536, subclass 24.5.

II.     Claims 24-40, drawn to a method of inducing exon-skipping of dystrophin exon 45 comprising introducing a nucleic acid molecule wherein the molecule is an isolated antisense oligonucleotide comprising base positions 5-14 of SEQ ID No. 207, classifiable in class 514, subclass 44.

III.    Claim 41, drawn to an isolated antisense oligonucleotide comprising base positions 7-16 of SEQ ID No. 207 wherein the oligonucleotide specifically hybridizes to exon 50 target region, classifiable in class 536, subclass 24.5

IV.     Claims 42-44, drawn to a method of inducing exon-skipping of dystrophin exon 50 comprising introducing a nucleic acid molecule wherein the molecule is an isolated antisense oligonucleotide comprising base positions 7-16 of SEQ ID No. 207, classifiable in class 514, subclass 44.


The inventions are distinct, each from the other because of the following reasons:

Application/Control Number: 13/270,531                                          Page 3
Art Unit: 1635

Inventions of Groups I and II are related as product and process of use.  The
inventions can be shown to be distinct if either or both of the following can be shown: (1)
the process for using the product as claimed can be practiced with another materially
different product or (2) the product as claimed can be used in a materially different
process of using that product. See MPEP § 806.05(h).  In the instant case, the product
antisense oligonucleotide can be used in a materially different process, such as a probe
in a hybridization assay. Furthermore restriction is proper because the subject matter is
divergent and non-coextensive and a search for one would not necessarily reveal art
against the other.  It is therefore a burden to search these inventions in a single
application.

Inventions of Groups I and III are unrelated.  Inventions are unrelated if it can be
shown that they are not disclosed as capable of use together and they have different
designs, modes of operation, and effects (MPEP § 802.01 and § 806.06).  In the instant
case, the different inventions have different designs as they are each unique
oligonucleotide sequences that bind to different regions of a target gene and thus have
different modes of operation and effects. Furthermore restriction is proper because the
subject matter is divergent and non-coextensive and a search for one would not
necessarily reveal art against the other.  It is therefore a burden to search these
inventions in a single application.

Inventions of Groups I and IV are directed to an unrelated product and process.
Product and process inventions are unrelated if it can be shown that the product cannot
be used in, or made by, the process.  See MPEP § 802.01 and § 806.06.  In the instant

SRPT-VYDS-0003591

Application/Control Number: 13/270,531                                        Page 4
Art Unit: 1635

case, the isolated antisense oligonucleotide of Group I is materially different product

than the oligonucleotide described in the method of Group IV and is not disclosed as

capable of use in the claimed method. Furthermore restriction is proper because the

subject matter is divergent and non-coextensive and a search for one would not

necessarily reveal art against the other.  It is therefore a burden to search these

inventions in a single application.


        Inventions of Groups II and III are directed to an unrelated product and process.

Product and process inventions are unrelated if it can be shown that the product cannot

be used in, or made by, the process.  See MPEP § 802.01 and § 806.06.  In the instant

case, the isolated antisense oligonucleotide of Group III is materially different product

than the oligonucleotide described in the method of Group II and is not disclosed as

capable of use in the claimed method. Furthermore restriction is proper because the

subject matter is divergent and non-coextensive and a search for one would not

necessarily reveal art against the other.  It is therefore a burden to search these

inventions in a single application.

        Inventions of Groups II and IV are unrelated.  Inventions are unrelated if it can be

shown that they are not disclosed as capable of use together and they have different

designs, modes of operation, and effects (MPEP § 802.01 and § 806.06).  In the instant

case, the different inventions have different designs as they each use a different and

unique oligonucleotide sequences that bind to different regions of a target gene and

thus have different modes of operation and effects. Furthermore restriction is proper

SRPT-VYDS-0003592

Application/Control Number: 13/270,531                                    Page 5
Art Unit: 1635

because the subject matter is divergent and non-coextensive and a search for one
would not necessarily reveal art against the other.  It is therefore a burden to search
these inventions in a single application.


        Inventions of Groups III and IV are related as product and process of use.  The
inventions can be shown to be distinct if either or both of the following can be shown: (1)
the process for using the product as claimed can be practiced with another materially
different product or (2) the product as claimed can be used in a materially different
process of using that product. See MPEP § 806.05(h).  In the instant case, the product
antisense oligonucleotide can be used in a materially different process, such as a probe
in a hybridization assay. Furthermore restriction is proper because the subject matter is
divergent and non-coextensive and a search for one would not necessarily reveal art
against the other.  It is therefore a burden to search these inventions in a single
application.


        Restriction for examination purposes as indicated is proper because all these
inventions listed in this action are independent or distinct for the reasons given above
and there would be a serious search and examination burden if restriction were not
required because one or more of the following reasons apply:

        (a) the inventions have acquired a separate status in the art in view of their

        different classification;

Application/Control Number: 13/270,531                                        Page 6
Art Unit: 1635

(b) the inventions have acquired a separate status in the art due to their recognized divergent subject matter;

(c) the inventions require a different field of search (for example, searching different classes/subclasses or electronic resources, or employing different search queries);

(d) the prior art applicable to one invention would not likely be applicable to another invention;

(e) the inventions are likely to raise different non-prior art issues under 35 U.S.C. 101 and/or 35 U.S.C. 112, first paragraph.

**Applicant is advised that the reply to this requirement to be complete <u>must include (i) an election of a invention to be examined</u>** even though the requirement may be traversed (37 CFR 1.143) **and (ii) <u>identification of the claims encompassing the elected invention</u>**.

The election of an invention may be made with or without traverse. To reserve a right to petition, the election must be made with traverse. If the reply does not distinctly and specifically point out supposed errors in the restriction requirement, the election shall be treated as an election without traverse. Traversal must be presented at the time of election in order to be considered timely.  Failure to timely traverse the requirement will result in the loss of right to petition under 37 CFR 1.144.

If claims are added after the election, applicant must indicate which of these claims are readable upon the elected invention.

SRPT-VYDS-0003594

Application/Control Number: 13/270,531                                   Page 7
Art Unit: 1635

Should applicant traverse on the ground that the inventions are not patentably

distinct, applicant should submit evidence or identify such evidence now of record

showing the inventions to be obvious variants or clearly admit on the record that this is

the case. In either instance, if the examiner finds one of the inventions unpatentable

over the prior art, the evidence or admission may be used in a rejection under 35 U.S.C.

103(a) of the other invention.

Applicant is reminded that upon the cancellation of claims to a non-elected

invention, the inventorship must be amended in compliance with 37 CFR 1.48(b) if one

or more of the currently named inventors is no longer an inventor of at least one claim

remaining in the application. Any amendment of inventorship must be accompanied by

a request under 37 CFR 1.48(b) and by the fee required under 37 CFR 1.17(i).


The examiner has required restriction between product and process claims.
Where applicant elects claims directed to the product, and the product claims are
subsequently found allowable, withdrawn process claims that depend from or otherwise
require all the limitations of the allowable product claim will be considered for rejoinder.
All claims directed a nonelected process invention  must require all the limitations of an
allowable product claim for that process invention to be rejoined.
    In the event of rejoinder, the requirement for restriction between the product
claims and the rejoined process claims will be withdrawn, and the rejoined process
claims will be fully examined for patentability in accordance with 37 CFR 1.104. Thus, to
be allowable, the rejoined claims must meet all criteria for patentability including the
requirements of 35 U.S.C. 101, 102, 103 and 112. Until all claims to the elected product
are found allowable, an otherwise proper restriction requirement between product
claims and process claims may be maintained. Withdrawn process claims that are not
commensurate in scope with an allowable product claim will not be rejoined. See MPEP
§ 821.04(b). Additionally, in order to retain the right to rejoinder in accordance with the
above policy, applicant is advised that the process claims should be amended during
prosecution to require the limitations of the product claims. **Failure to do so may result
in a loss of the right to rejoinder**. Further, note that the prohibition against double
patenting rejections of 35 U.S.C. 121 does not apply where the restriction requirement
is withdrawn by the examiner before the patent issues. See MPEP § 804.01.

SRPT-VYDS-0003595

Application/Control Number: 13/270,531                                    Page 8
Art Unit: 1635

### *Conclusion*

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Kimberly Chong whose telephone number is 571-272-3111.  The examiner can normally be reached Monday thru Friday between 7-4 pm.

If attempts to reach the examiner by telephone are unsuccessful please contact the Acting SPE for 1635 Heather Calamita at 571-272-2876.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Patent applicants with problems or questions regarding electronic images that can be viewed in the Patent Application Information Retrieval system (PAIR) can now contact the USPTO's Patent Electronic Business Center (Patent EBC) for assistance. Representatives are available to answer your questions daily from 6 am to midnight (EST). The toll free number is (866) 217-9197. When calling please have your application serial or patent number, the type of document you are having an image problem with, the number of pages and the specific nature of the problem.  The Patent Electronic Business Center will notify applicants of the resolution of the problem within 5-7 business days. Applicants can also check PAIR to confirm that the problem has been corrected.  The USPTO's Patent Electronic Business Center is a complete service center supporting all patent business on the Internet. The USPTO's PAIR system provides Internet-based access to patent application status and history information. It also enables applicants to view the scanned images of their own application file folder(s) as well as general patent information available to the public. For more information about the PAIR system, see http://pair-direct.uspto.gov.

For all other customer support, please call the USPTO Call Center (UCC) at 800-786-9199.

/Kimberly Chong/
Primary Examiner
Art Unit 1635

SRPT-VYDS-0003596



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

959        7590        04/03/2013

NELSON MULLINS RILEY & SCARBOROUGH LLP
FLOOR 30, SUITE 3000
ONE POST OFFICE SQUARE
BOSTON, MA 02109

| EXAMINER |
| --- |
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
| --- | --- |
| 1635 | |

DATE MAILED: 04/03/2013

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
| --- | --- | --- | --- | --- |
| 13/270,744 | 10/11/2011 | Stephen Donald Wilton | AVN-008CN8 | 1144 |

TITLE OF INVENTION: ANTISENSE OLIGONUCLEOTIDES FOR INDUCING EXON SKIPPING AND METHODS OF USE THEREOF

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
| --- | --- | --- | --- | --- | --- | --- |
| nonprovisional | SMALL | $890 | $300 | $0 | $1190 | 07/03/2013 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT.
PROSECUTION ON THE MERITS IS CLOSED.   THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS.
THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON
PETITION BY THE APPLICANT.  SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN <u>THREE MONTHS</u> FROM THE
MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED.   <u>THIS
STATUTORY PERIOD CANNOT BE EXTENDED</u>.   SEE 35 U.S.C. 151.  THE ISSUE FEE DUE INDICATED ABOVE DOES
NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION.   IF AN ISSUE FEE HAS
PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM
WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW
DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

Page 1 of 4

PTOL-85 (Rev. 02/11)

SRPT-VYDS-0003597

PART B - FEE(S) TRANSMITTAL

**Complete and send this form, together with applicable fee(s), to:** <u>Mail</u>    Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
or <u>Fax</u>    (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

959        7590        04/03/2013
NELSON MULLINS RILEY & SCARBOROUGH LLP
FLOOR 30, SUITE 3000
ONE POST OFFICE SQUARE
BOSTON, MA 02109

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

| | |
|---|---|
| | (Depositor's name) |
| | (Signature) |
| | (Date) |

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/270,744 | 10/11/2011 | Stephen Donald Wilton | AVN-008CN8 | 1144 |

TITLE OF INVENTION: ANTISENSE OLIGONUCLEOTIDES FOR INDUCING EXON SKIPPING AND METHODS OF USE THEREOF

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $890 | $300 | $0 | $1190 | 07/03/2013 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| CHONG, KIMBERLY | 1635 | 536-024500 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list

(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE        (B) RESIDENCE: (CITY and STATE or COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) :    ☐ Individual    ☐ Corporation or other private group entity    ☐ Government

4a. The following fee(s) are submitted:

☐ Issue Fee

☐ Publication Fee (No small entity discount permitted)

☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): (**Please first reapply any previously paid issue fee shown above**)

☐ A check is enclosed.

☐ Payment by credit card. Form PTO-2038 is attached.

☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

Page 2 of 4

PTOL-85 (Rev. 02/11)

SRPT-VYDS-0003598

5. **Change in Entity Status** (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

<u>NOTE:</u> Absent a valid certification of Micro Entity Status (see form PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

☐ Applicant asserting small entity status. See 37 CFR 1.27

<u>NOTE:</u> If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

☐ Applicant changing to regular undiscounted fee status.

<u>NOTE:</u> Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____    Date _____

Typed or printed name _____    Registration No. _____

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 02/11) Approved for use through 08/31/2013.        OMB 0651-0033        U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

SRPT-VYDS-0003599



U̲NITED S̲TATES P̲ATENT AND T̲RADEMARK O̲FFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/270,744 | 10/11/2011 | Stephen Donald Wilton | AVN-008CN8 | 1144 |

959          7590          04/03/2013

NELSON MULLINS RILEY & SCARBOROUGH LLP
FLOOR 30, SUITE 3000
ONE POST OFFICE SQUARE
BOSTON, MA 02109

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1635 | |

DATE MAILED: 04/03/2013

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment to date is 0 day(s). If the issue fee is paid on the date that is three months after the mailing date of this notice and the patent issues on the Tuesday before the date that is 28 weeks (six and a half months) after the mailing date of this notice, the Patent Term Adjustment will be 0 day(s).

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

SRPT-VYDS-0003600

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| *Notice of Allowability* | Application No. 13/270,744 | Applicant(s) WILTON ET AL. | |
|---|---|---|---|
| | Examiner KIMBERLY CHONG | Art Unit 1635 | AIA (First Inventor to File) Status No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to 02/06/2013.

    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on_____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☒ The allowed claim(s) is/are 35 and 47-88. As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov .

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    **Certified copies:**

    a) ☐ All    b) ☐ Some    *c) ☐ None of the:

        1. ☐ Certified copies of the priority documents have been received.

        2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

        3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    * Certified copies not received: _____.

    **Interim copies:**

    a) ☐ All    b) ☐ Some    c) ☐ None of the: Interim copies of the priority documents have been received.

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

    ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No._____.

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)
2. ☒ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date 02/6/13,6/14/12
3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material
4. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____ .

5. ☐ Examiner's Amendment/Comment
6. ☐ Examiner's Statement of Reasons for Allowance
7. ☐ Other _____.

/Kimberly Chong/
Primary Examiner AU1635

SRPT-VYDS-0003602

Application/Control Number: 13/270,744                                    Page 2
Art Unit: 1635

### *Reasons for Allowance*

The following is an examiner's statement of reasons for allowance: Applicant's remarks and claim amendments filed 02/14/2013 overcome the rejection of record.

Claims 47-88 are directed to an allowable product. Pursuant to the procedures set forth in MPEP § 821.04(B), claim 35, directed to the process of making or using an allowable product, previously withdrawn from consideration as a result of a restriction requirement, is hereby rejoined and fully examined for patentability under 37 CFR 1.104.

Because all claims previously withdrawn from consideration under 37 CFR 1.142 have been rejoined, **the restriction requirement as set forth in the Office action mailed on 03/14/2012 is hereby withdrawn**. In view of the withdrawal of the restriction requirement as to the rejoined inventions, applicant(s) are advised that if any claim presented in a continuation or divisional application is anticipated by, or includes all the limitations of, a claim that is allowable in the present application, such claim may be subject to provisional statutory and/or nonstatutory double patenting rejections over the claims of the instant application. Once the restriction requirement is withdrawn, the provisions of 35 U.S.C. 121 are no longer applicable. See *In re Ziegler*, 443 F.2d 1211, 1215, 170 USPQ 129, 131-32 (CCPA 1971). See also MPEP § 804.01.

Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should preferably accompany the issue fee. Such submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."

SRPT-VYDS-0003603

Application/Control Number: 13/270,744                                    Page 3
Art Unit: 1635

### *Conclusion*

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Kimberly Chong whose telephone number is 571-272-3111. The examiner can normally be reached Monday thru Friday between 9-5 pm.

If attempts to reach the examiner by telephone are unsuccessful please contact the SPE for 1635 Heather Calamita at 571-272-2876. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Patent applicants with problems or questions regarding electronic images that can be viewed in the Patent Application Information Retrieval system (PAIR) can now contact the USPTO's Patent Electronic Business Center (Patent EBC) for assistance. Representatives are available to answer your questions daily from 6 am to midnight (EST). The toll free number is (866) 217-9197. When calling please have your application serial or patent number, the type of document you are having an image problem with, the number of pages and the specific nature of the problem. The Patent Electronic Business Center will notify applicants of the resolution of the problem within 5-7 business days. Applicants can also check PAIR to confirm that the problem has been corrected. The USPTO's Patent Electronic Business Center is a complete service center supporting all patent business on the Internet. The USPTO's PAIR system provides Internet-based access to patent application status and history information. It also enables applicants to view the scanned images of their own application file folder(s) as well as general patent information available to the public. For more information about the PAIR system, see http://pair-direct.uspto.gov.
For all other customer support, please call the USPTO Call Center (UCC) at 800-786-9199.


/Kimberly Chong/
Primary Examiner
Art Unit 1635

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/270,744 | 10/11/2011 | Stephen Donald Wilton | AVN-008CN8 | 1144 |

959        7590        08/06/2012
NELSON MULLINS RILEY & SCARBOROUGH LLP
FLOOR 30, SUITE 3000
ONE POST OFFICE SQUARE
BOSTON, MA 02109

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1635 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 08/06/2012 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

SRPT-VYDS-0003605

| | Application No. | Applicant(s) |
|---|---|---|
| **Office Action Summary** | 13/270,744 | WILTON ET AL. |
| | **Examiner** | **Art Unit** | |
| | KIMBERLY CHONG | 1635 | |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☒ Responsive to communication(s) filed on <u>14 June 2012</u>.

2a) ☐ This action is **FINAL**.  2b) ☒ This action is non-final.

3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

5) ☒ Claim(s) <u>37 and 47-82</u> is/are pending in the application.

   5a) Of the above claim(s) <u>37</u> is/are withdrawn from consideration.

6) ☐ Claim(s) _____ is/are allowed.

7) ☒ Claim(s) <u>47-82</u> is/are rejected.

8) ☐ Claim(s) _____ is/are objected to.

9) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

10) ☒ The specification is objected to by the Examiner.

11) ☒ The drawing(s) filed on <u>10/11/2011</u> is/are: a) ☒ accepted or b) ☐ objected to by the Examiner.

   Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

   Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

12) ☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

13) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

   a) ☐ All  b) ☐ Some * c) ☐ None of:

   1. ☐ Certified copies of the priority documents have been received.

   2. ☐ Certified copies of the priority documents have been received in Application No. _____.

   3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

   * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)
2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3) ☒ Information Disclosure Statement(s) (PTO/SB/08)
   Paper No(s)/Mail Date <u>01/31/12,06/14/12</u>.

4) ☐ Interview Summary (PTO-413)
   Paper No(s)/Mail Date. _____.
5) ☐ Notice of Informal Patent Application
6) ☐ Other: _____.

PTOL-326 (Rev. 03-11)                    **Office Action Summary**                    Part of Paper No./Mail Date 20120802

SRPT-VYDS-0003606

Application/Control Number: 13/270,744                                                  Page 2
Art Unit: 1635

## DETAILED ACTION

### Election/Restrictions

Applicant's election of Group I, new claims 47-82, in the reply filed on 06/14/2012 is acknowledged.

### Status of the Application

Claims 37 and 47-82 are pending.  Claims 47-82 are currently under examination.  Claim 35 is withdrawn as being drawn to a non-elected invention.

### Information Disclosure Statement

The submission of the Information Disclosure Statements on 01/31/2012 and 06/14/2012 is in compliance with 37 CFR 1.97.  The information disclosure statements have been considered by the examiner and signed copies have been placed in the file.

### Objection to the Specification

### Sequence Compliance

This application contains sequence disclosures that are encompassed by the definitions for nucleotide and/or amino acid sequences set forth in 37 CFR 1.821(a)(1) and (a)(2). However, this application fails to comply with the requirements of 37 CFR 1.821 through 1.825 for the reason(s) set forth below:  Tables 2-39 of the specification recite sequences that do not have the required sequence identifier.  A complete

SRPT-VYDS-0003607

Application/Control Number: 13/270,744                                              Page 3
Art Unit: 1635

response to this office action must correct the defects cited above regarding compliance

with the sequence rules and a response to the action on the merits which follows.

The aforementioned instance of failure to comply is not intended as an

exhaustive list of all such potential failures to comply in the instant application.

Applicants are encouraged to thoroughly review the application to ensure that the entire

application is in full compliance with all sequence rules.  This requirement will not be

held in abeyance.

### *Claim Rejections - 35 USC § 112*

The following is a quotation of the first paragraph of 35 U.S.C. 112:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same and shall set forth the best mode contemplated by the inventor of carrying out his invention.

Claims 63, 64, 80 and 81 are rejected under 35 U.S.C. 112, first paragraph, as

failing to comply with the written description requirement.  The claim(s) contains subject

matter which was not described in the specification in such a way as to reasonably

convey to one skilled in the relevant art that the inventor(s), at the time the application

was filed, had possession of the claimed invention.  <u>This is a new matter rejection</u>.

Claims 63 and 80 are directed to "wherein the oligonucleotide is conjugated to an

arginine-rich cell penetrating peptide". The specification discloses peptide nucleic acid

modifications of the oligonucleotide but do not disclose a conjugate comprising arginine-

rich cell penetrating peptides.

SRPT-VYDS-0003608

Application/Control Number: 13/270,744                                              Page 4

Art Unit: 1635

Claims 64 and 81 are directed to an oligonucleotide "chemically linked to a polyethylene glycol molecule". The specification in paragraph 0086 provides support for a linked polynucleotide chain but not a "molecule". The use of the term "molecule" is new matter because it can encompass many type of polyethylene glycol molecules that are not instantly disclosed.

If Applicant believes that such support is present in the specification and claimed priority documents, Applicant should point, with particularity, to where such support is to be found.

### *Claim Rejections - 35 USC § 102*

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(e) the invention was described in (1) an application for patent, published under section 122(b), by another filed in the United States before the invention by the applicant for patent or (2) a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent, except that an international application filed under the treaty defined in section 351(a) shall have the effects for purposes of this subsection of an application filed in the United States only if the international application designated the United States and was published under Article 21(2) of such treaty in the English language.

Claims 47, 51, 65, 67 and 68 are rejected under 35 U.S.C. 102(e) as being anticipated by Zhou et al. (US Patent No. 7,314,750).

The claims are drawn to an isolated antisense oligonucleotide of 20 to 50 nucleotides in length comprising at least 10 consecutive nucleotides of SEQ ID No. 203,

SRPT-VYDS-0003609

Application/Control Number: 13/270,744                                   Page 5

Art Unit: 1635

wherein the oligonucleotide specifically hybridizes to an exon 46 target region of the

Dystrophin gene.

Zhou et al. teach an oligonucleotide 25 nucleotides in length (SEQ ID No.

324961) having 16 consecutive nucleotides of instant SEQ ID No. 203 (see alignment

below).

SEQ ID No. 203          2 UCUUUUCCAGGUUCAA 17

Zho et al.             10 TCTTTTCCAGGTTCAA 25

Zhou et al. do not teach the oligonucleotide has the claimed function of

hybridizing to exon 46 and has the ability to skip exon 46 however because the

oligonucleotide is substantially identical to the claimed oligonucleotide, the claimed

properties or functions are presumed to be inherent. The MPEP states:

**A REFERENCE TEACHING PRODUCT APPEARING TO BE SUBSTANTIALLY IDENTICAL IS MADE THE BASIS OF A REJECTION, AND THE EXAMINER PRESENTS EVIDENCE OR REASONING TENDING TO SHOW INHERENCY, THE BURDEN SHIFTS TO THE APPLICANT TO SHOW AN UNOBVIOUS DIFFERENCE**

"[T]he PTO can require an applicant to prove that the prior art products do not necessarily or inherently possess the characteristics of his [or her] claimed product. Whether the rejection is based on inherency' under 35 U.S.C. 102, on prima facie obviousness' under 35 U.S.C. 103, jointly or alternatively, the burden of proof is the same...[footnote omitted]." The burden of proof is similar to that required with respect to product-by-process claims. *In re Fitzgerald*, 619 F.2d 67, 70, 205 USPQ 594, 596 (CCPA 1980) (quoting *In re Best*, 562 F.2d 1252, 1255, 195 USPQ 430, 433-34 (CCPA 1977)).

**MPEP 2112.01:**

**PRODUCT AND APPARATUS CLAIMS ☐ WHEN THE STRUCTURE RECITED IN THE REFERENCE IS SUBSTANTIALLY IDENTICAL TO THAT OF THE CLAIMS, CLAIMED PROPERTIES OR FUNCTIONS ARE PRESUMED TO BE INHERENT**

Where the claimed and prior art products are identical or substantially identical in structure or composition, or are produced by identical or substantially identical processes, a prima facie case

Application/Control Number: 13/270,744                                                    Page 6
Art Unit: 1635

of either anticipation or obviousness has been established. In re Best, 562 F.2d 1252, 1255, 195
USPQ 430, 433 (CCPA 1977). □When the PTO shows a sound basis for believing that the
products of the applicant and the prior art are the same, the applicant has the burden of showing
that they are not.□ *In re Spada*, 911 F.2d 705, 709, 15 USPQ2d 1655, 1658 (Fed. Cir. 1990).
Therefore, the   prima facie case can be rebutted by evidence showing that the prior art products
do not necessarily possess the characteristics of the claimed product. *In re Best*, 562 F.2d at
1255, 195 USPQ at 433.

**A REJECTION UNDER 35 U.S.C. 102/103 CAN BE MADE WHEN THE PRIOR ART PRODUCT
SEEMS TO BE IDENTICAL EXCEPT THAT THE PRIOR ART IS SILENT AS TO AN
INHERENT CHARACTERISTIC**

Where applicant claims a composition in terms of a function, property or characteristic and the
composition of the prior art is the same as that of the claim but the function is not explicitly
disclosed by the reference, the examiner may make a rejection under both 35 U.S.C. 102 and
103, expressed as a 102/103 rejection. "There is nothing inconsistent in concurrent rejections for
obviousness under 35  U.S.C. 103 and for anticipation under 35
U.S.C. 102." *In re Best*, 562 F.2d 1252, 1255 n.4, 195 USPQ 430, 433 n.4 (CCPA 1977). This
same rationale should also apply to product, apparatus, and process claims claimed in terms of
function, property or characteristic. Therefore, a 35  U.S.C. 102/103 rejection is appropriate for
these types of claims as well as for composition claims.

Thus Zhou et al. anticipates the instant claims.

### *Claim Rejections - 35 USC § 103*

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

(a) A patent may not be obtained though the invention is not identically disclosed or described as set
forth in section 102 of this title, if the differences between the subject matter sought to be patented and
the prior art are such that the subject matter as a whole would have been obvious at the time the
invention was made to a person having ordinary skill in the art to which said subject matter pertains.
Patentability shall not be negatived by the manner in which the invention was made.

Claims 47-82 are rejected under 35 U.S.C. 103(a) as being unpatentable over

van Ommen et al. (US 20060099616), Ackermann et al. (US 20040254137) and

Manoharan et al. (US 20020156235).

The claims are drawn to an isolated antisense oligonucleotide of 20 to 50

nucleotides in length comprising at least 10 consecutive nucleotides of SEQ ID No. 203

Application/Control Number: 13/270,744                                        Page 7
Art Unit: 1635

or annealing site H46A(+90+115), wherein the oligonucleotide specifically hybridizes to

an exon 46 target region of the Dystrophin gene, wherein the antisense oligonucleotide

comprises modified backbone, sugar and internucleotide linkages.

 van Ommen teach a method for making chemically modified antisense

oligonucleotides that induce exon skipping in dystrophin pre-mRNA from a Duchenne

muscular dystrophy allele wherein the antisense oligonucleotides target several exons

(see entire reference).  van Ommen teach the studies provide a promising proof of

principle for antisense-based therapy for DMD and may be applicable to a variety of

DMD mutations and teach the use of 2'-O-methyl modified oligonucleotides.  van

Ommen et al. teach an oligonucleotide 19 nucleotides in length (SEQ ID No. 26) having

19 consecutive nucleotides of instant SEQ ID No. 203 (see alignment below) wherein

the oligonucleotide is capable of binding to exon 46 (see Table 2) and hybridizes to

annealing site H46A(+90+115) and inducing exon skipping.


SEQ ID No. 203  10 AGGUUCAAGUGGGAUACUA 28

van Ommen et al.  1 AGGUUCAAGUGGGAUACUA 19


 van Ommen et al. also teach the antisense oligonucleotide comprises

modifications to enhance stability and  teach targeting the exon inclusion signals and

splice regions of the exon and teach methods of testing the antisense oligonucleotides

for the ability to induce exon skipping in assays using myoblasts obtained from muscle

biopsies.

Application/Control Number: 13/270,744                                    Page 8
Art Unit: 1635

It would have been obvious to use the methods of van Ommen to generate an exon targeted to exon 46 having at least 20 nucleotides and comprising or consisting of SEQ ID No. 203. Given the sequence of exon 46 is well known (Genbank) and given van Ommen al. teach making an antisense molecule comprising 19 nucleotides of SEQ ID No. 203 to demonstrate the capability of skipping exon 46, one of skill in the art would have been motivated to use the methods to further generate oligonucleotides of varying length targeted to the same region in efforts of finding the most efficient antisense oligonucleotide to induce exon skipping.

van Ommen et al. teach in paragraph [0015] that skipping exon 46 using an antisense oligonucleotide resulted in restored reading frame and induction of dystrophin synthesis in 75% of cells tested and one of ordinary skill in the art would have wanted to make longer oligonucleotides comprising the antisense oligonucleotide taught by van Ommen et al. or at least an oligonucleotide at least 20 nucleotides and therefore would have made the claimed oligonucleotide in efforts of finding the most efficient antisense oligonucleotide.

van Ommen et al. teach the oligonucleotides are designed to bind to purine rich sequences and are preferred to target 16-50 nucleotides of the exon region and thus it would have been obvious for one of skill in the art to make longer oligonucleotides from 20 to 50 nucleotides that encompass SEQ ID No. 26 because it was shown that this oligonucleotide can bind to exon 46 and cause skipping.

It would have been obvious to increase the length of the oligonucleotide taught by van Ommen et al. in efforts to increase the %UC to target more of the AG rich

SRPT-VYDS-0003613

Application/Control Number: 13/270,744                                          Page 9
Art Unit: 1635

sequence of exon 46 and increasing the length to at least consist of the instant SEQ ID No. 203 would more than double the %UC content and one of ordinary skill in the art would have wanted to make this oligonucleotide in efforts to generate more oligonucleotide to induce exon skipping in efforts of finding an appropriate therapeutic molecule for use in treatment of DMD.

Ackermann et al. teach antisense oligonucleotides that comprise modified backbone, sugar moieties and internucleotide linkages, comprise morpholino moieties, and that can be peptide nucleic acids and further can be linked to a conjugate such as PEG (see paragraphs 0038-0047) which enhance the stability and specificity of antisense oligonucleotides and it would have been obvious to one of ordinary skill in the art to incorporate these moieties into the antisense oligonucleotide made to target exon 53.

It would have further been obvious for one of ordinary skill in the art to conjugate cell penetrating peptides and chemically linking with polyethylene glycol chains as taught by Manoharan et al. (see paragraphs 0027 and 0165).  Manoharan et al. teach antisense oligonucleotides comprising peptide conjugates such as tat enhanced the overall efficacy of said oligonucleotide and one of ordinary skill in the art would have expected to be capable of making such conjugates as demonstrated by Manoharan et al.

Thus in the absence of evidence to the contrary, the invention as a whole would have been *prima facie* obvious to one of ordinary skill in the art at the time the invention was made.

Application/Control Number: 13/270,744                                          Page 10
Art Unit: 1635

### *Conclusion*

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Kimberly Chong whose telephone number is 571-272-3111. The examiner can normally be reached Monday thru Friday between 7-4 pm.

If attempts to reach the examiner by telephone are unsuccessful please contact the SPE for 1635 Heather Calamita at 571-272-2876. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Patent applicants with problems or questions regarding electronic images that can be viewed in the Patent Application Information Retrieval system (PAIR) can now contact the USPTO's Patent Electronic Business Center (Patent EBC) for assistance. Representatives are available to answer your questions daily from 6 am to midnight (EST). The toll free number is (866) 217-9197. When calling please have your application serial or patent number, the type of document you are having an image problem with, the number of pages and the specific nature of the problem. The Patent Electronic Business Center will notify applicants of the resolution of the problem within 5-7 business days. Applicants can also check PAIR to confirm that the problem has been corrected. The USPTO's Patent Electronic Business Center is a complete service center supporting all patent business on the Internet. The USPTO's PAIR system provides Internet-based access to patent application status and history information. It also enables applicants to view the scanned images of their own application file folder(s) as well as general patent information available to the public. For more information about the PAIR system, see http://pair-direct.uspto.gov.
For all other customer support, please call the USPTO Call Center (UCC) at 800-786-9199.

/Kimberly Chong/
Primary Examiner
Art Unit 1635

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/270,744 | 10/11/2011 | Stephen Donald Wilton | 40239-712.308 | 1144 |

21971          7590          03/14/2012
WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CA 94304-1050

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1635 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 03/14/2012 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A  (Rev. 04/07)

SRPT-VYDS-0003616

| **Office Action Summary** | **Application No.** | **Applicant(s)** |
|---|---|---|
| | 13/270,744 | WILTON ET AL. |
| | **Examiner** | **Art Unit** | |
| | KIMBERLY CHONG | 1635 | |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>1</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒  Responsive to communication(s) filed on <u>11 October 2011</u>.

2a)☐ This action is **FINAL**.        2b)☒ This action is non-final.

3)☐  An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4)☐  Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

5)☒  Claim(s) <u>15-46</u> is/are pending in the application.

    5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6)☐  Claim(s) _____ is/are allowed.

7)☐  Claim(s) _____ is/are rejected.

8)☐  Claim(s) _____ is/are objected to.

9)☒  Claim(s) <u>15-46</u> are subject to restriction and/or election requirement.

**Application Papers**

10)☐ The specification is objected to by the Examiner.

11)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

12)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

13)☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All  b)☐ Some * c)☐ None of:

      1.☐  Certified copies of the priority documents have been received.

      2.☐  Certified copies of the priority documents have been received in Application No. _____.

      3.☐  Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☐ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☐ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____ .

5)☐ Notice of Informal Patent Application

6)☐ Other: _____.

SRPT-VYDS-0003617

Application/Control Number: 13/270,744

Page 2

Art Unit: 1635

# DETAILED ACTION

## *Election/Restrictions*

Restriction to one of the following inventions is required under 35 U.S.C. 121:

I.    Claims 15-24, drawn to an isolated antisense oligonucleotide comprising base positions 1-10 of SEQ ID No. 203 wherein the oligonucleotide specifically hybridizes to exon 46 target region, classifiable in class 536, subclass 24.5.

II.    Claims 24-42, drawn to a method of inducing exon-skipping of dystrophin exon 46 comprising introducing a nucleic acid molecule wherein the molecule is an isolated antisense oligonucleotide comprising base positions 1-10 of SEQ ID No. 203, classifiable in class 514, subclass 44.

III.    Claim 43, drawn to an isolated antisense oligonucleotide comprising base positions 22-31 of SEQ ID No. 204 wherein the oligonucleotide specifically hybridizes to exon 46 target region, classifiable in class 536, subclass 24.5

IV.    Claims 45-46, drawn to a method of inducing exon-skipping of dystrophin exon 46 comprising introducing a nucleic acid molecule wherein the molecule is an isolated antisense oligonucleotide comprising base positions 22-31 of SEQ ID No. 204, classifiable in class 514, subclass 44.

The inventions are distinct, each from the other because of the following reasons:

SRPT-VYDS-0003618

Application/Control Number: 13/270,744                                    Page 3
Art Unit: 1635

     Inventions of Groups I and II are related as product and process of use.  The inventions can be shown to be distinct if either or both of the following can be shown: (1) the process for using the product as claimed can be practiced with another materially different product or (2) the product as claimed can be used in a materially different process of using that product. See MPEP § 806.05(h).  In the instant case, the product antisense oligonucleotide can be used in a materially different process, such as a probe in a hybridization assay. Furthermore restriction is proper because the subject matter is divergent and non-coextensive and a search for one would not necessarily reveal art against the other.  It is therefore a burden to search these inventions in a single application.

     Inventions of Groups I and III are unrelated.  Inventions are unrelated if it can be shown that they are not disclosed as capable of use together and they have different designs, modes of operation, and effects (MPEP § 802.01 and § 806.06).  In the instant case, the different inventions have different designs as they are each unique oligonucleotide sequences that bind to different regions of a target gene and thus have different modes of operation and effects. Furthermore restriction is proper because the subject matter is divergent and non-coextensive and a search for one would not necessarily reveal art against the other.  It is therefore a burden to search these inventions in a single application.

     Inventions of Groups I and IV are directed to an unrelated product and process. Product and process inventions are unrelated if it can be shown that the product cannot be used in, or made by, the process.  See MPEP § 802.01 and § 806.06.  In the instant

SRPT-VYDS-0003619

Application/Control Number: 13/270,744                                      Page 4
Art Unit: 1635

case, the isolated antisense oligonucleotide of Group I is materially different product

than the oligonucleotide described in the method of Group IV and is not disclosed as

capable of use in the claimed method. Furthermore restriction is proper because the

subject matter is divergent and non-coextensive and a search for one would not

necessarily reveal art against the other.  It is therefore a burden to search these

inventions in a single application.


        Inventions of Groups II and III are directed to an unrelated product and process.

Product and process inventions are unrelated if it can be shown that the product cannot

be used in, or made by, the process.  See MPEP § 802.01 and § 806.06.  In the instant

case, the isolated antisense oligonucleotide of Group III is materially different product

than the oligonucleotide described in the method of Group II and is not disclosed as

capable of use in the claimed method. Furthermore restriction is proper because the

subject matter is divergent and non-coextensive and a search for one would not

necessarily reveal art against the other.  It is therefore a burden to search these

inventions in a single application.

        Inventions of Groups II and IV are unrelated.  Inventions are unrelated if it can be

shown that they are not disclosed as capable of use together and they have different

designs, modes of operation, and effects (MPEP § 802.01 and § 806.06).  In the instant

case, the different inventions have different designs as they each use a different and

unique oligonucleotide sequences that bind to different regions of a target gene and

thus have different modes of operation and effects. Furthermore restriction is proper

Application/Control Number: 13/270,744                                          Page 5
Art Unit: 1635

because the subject matter is divergent and non-coextensive and a search for one would not necessarily reveal art against the other.  It is therefore a burden to search these inventions in a single application.


Inventions of Groups III and IV are related as product and process of use.  The inventions can be shown to be distinct if either or both of the following can be shown: (1) the process for using the product as claimed can be practiced with another materially different product or (2) the product as claimed can be used in a materially different process of using that product. See MPEP § 806.05(h).  In the instant case, the product antisense oligonucleotide can be used in a materially different process, such as a probe in a hybridization assay. Furthermore restriction is proper because the subject matter is divergent and non-coextensive and a search for one would not necessarily reveal art against the other.  It is therefore a burden to search these inventions in a single application.


Restriction for examination purposes as indicated is proper because all these inventions listed in this action are independent or distinct for the reasons given above and there would be a serious search and examination burden if restriction were not required because one or more of the following reasons apply:

        (a) the inventions have acquired a separate status in the art in view of their different classification;

Application/Control Number: 13/270,744                                              Page 6

Art Unit: 1635

(b) the inventions have acquired a separate status in the art due to their

recognized divergent subject matter;

(c) the inventions require a different field of search (for example, searching

different classes/subclasses or electronic resources, or employing different

search queries);

(d) the prior art applicable to one invention would not likely be applicable to

another invention;

(e) the inventions are likely to raise different non-prior art issues under 35 U.S.C.

101 and/or 35 U.S.C. 112, first paragraph.

**Applicant is advised that the reply to this requirement to be complete <u>must</u>**

**include (i) an election of a invention to be examined** even though the requirement

may be traversed (37 CFR 1.143) **and (ii) <u>identification of the claims encompassing</u>**

**<u>the elected invention</u>**.

The election of an invention may be made with or without traverse. To reserve a

right to petition, the election must be made with traverse. If the reply does not distinctly

and specifically point out supposed errors in the restriction requirement, the election

shall be treated as an election without traverse. Traversal must be presented at the time

of election in order to be considered timely.  Failure to timely traverse the requirement

will result in the loss of right to petition under 37 CFR 1.144.

If claims are added after the election, applicant must indicate which of these

claims are readable upon the elected invention.

SRPT-VYDS-0003622

Application/Control Number: 13/270,744                                    Page 7

Art Unit: 1635

Should applicant traverse on the ground that the inventions are not patentably

distinct, applicant should submit evidence or identify such evidence now of record

showing the inventions to be obvious variants or clearly admit on the record that this is

the case. In either instance, if the examiner finds one of the inventions unpatentable

over the prior art, the evidence or admission may be used in a rejection under 35 U.S.C.

103(a) of the other invention.

Applicant is reminded that upon the cancellation of claims to a non-elected

invention, the inventorship must be amended in compliance with 37 CFR 1.48(b) if one

or more of the currently named inventors is no longer an inventor of at least one claim

remaining in the application. Any amendment of inventorship must be accompanied by

a request under 37 CFR 1.48(b) and by the fee required under 37 CFR 1.17(i).


The examiner has required restriction between product and process claims.
Where applicant elects claims directed to the product, and the product claims are
subsequently found allowable, withdrawn process claims that depend from or otherwise
require all the limitations of the allowable product claim will be considered for rejoinder.
All claims directed a nonelected process invention  must require all the limitations of an
allowable product claim for that process invention to be rejoined.
     In the event of rejoinder, the requirement for restriction between the product
claims and the rejoined process claims will be withdrawn, and the rejoined process
claims will be fully examined for patentability in accordance with 37 CFR 1.104. Thus, to
be allowable, the rejoined claims must meet all criteria for patentability including the
requirements of 35 U.S.C. 101, 102, 103 and 112. Until all claims to the elected product
are found allowable, an otherwise proper restriction requirement between product
claims and process claims may be maintained. Withdrawn process claims that are not
commensurate in scope with an allowable product claim will not be rejoined. See MPEP
§ 821.04(b). Additionally, in order to retain the right to rejoinder in accordance with the
above policy, applicant is advised that the process claims should be amended during
prosecution to require the limitations of the product claims. **Failure to do so may result
in a loss of the right to rejoinder**. Further, note that the prohibition against double
patenting rejections of 35 U.S.C. 121 does not apply where the restriction requirement
is withdrawn by the examiner before the patent issues. See MPEP § 804.01.

SRPT-VYDS-0003623

Application/Control Number: 13/270,744                                                  Page 8

Art Unit: 1635

## *Conclusion*

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Kimberly Chong whose telephone number is 571-272-3111.  The examiner can normally be reached Monday thru Friday between 7-4 pm.

If attempts to reach the examiner by telephone are unsuccessful please contact the Acting SPE for 1635 Heather Calamita at 571-272-2876.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Patent applicants with problems or questions regarding electronic images that can be viewed in the Patent Application Information Retrieval system (PAIR) can now contact the USPTO's Patent Electronic Business Center (Patent EBC) for assistance. Representatives are available to answer your questions daily from 6 am to midnight (EST). The toll free number is (866) 217-9197. When calling please have your application serial or patent number, the type of document you are having an image problem with, the number of pages and the specific nature of the problem.  The Patent Electronic Business Center will notify applicants of the resolution of the problem within 5-7 business days. Applicants can also check PAIR to confirm that the problem has been corrected.  The USPTO's Patent Electronic Business Center is a complete service center supporting all patent business on the Internet. The USPTO's PAIR system provides Internet-based access to patent application status and history information. It also enables applicants to view the scanned images of their own application file folder(s) as well as general patent information available to the public. For more information about the PAIR system, see http://pair-direct.uspto.gov.

For all other customer support, please call the USPTO Call Center (UCC) at 800-786-9199.

/Kimberly Chong/
Primary Examiner
Art Unit 1635



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| | | |
|---|---|---|
| 959 7590 02/25/2013 | | EXAMINER |
| NELSON MULLINS RILEY & SCARBOROUGH LLP | | CHONG, KIMBERLY |
| FLOOR 30, SUITE 3000 | | |
| ONE POST OFFICE SQUARE | ART UNIT | PAPER NUMBER |
| BOSTON, MA 02109 | 1635 | |

DATE MAILED: 02/25/2013

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/270,937 | 10/11/2011 | Stephen Donald Wilton | AVN-008CN9 | 5416 |

TITLE OF INVENTION: ANTISENSE OLIGONUCLEOTIDES FOR INDUCING EXON SKIPPING AND METHODS OF USE THEREOF

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | YES | $885 | $300 | $0 | $1185 | 05/28/2013 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED.** THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN <u>THREE MONTHS</u> FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. <u>THIS STATUTORY PERIOD CANNOT BE EXTENDED.</u>** SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.

**HOW TO REPLY TO THIS NOTICE:**

I. Review the SMALL ENTITY status shown above.

If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

A. If the status is the same, pay the TOTAL FEE(S) DUE shown above.

B. If the status above is to be removed, check box 5b on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and twice the amount of the ISSUE FEE shown above, or

If the SMALL ENTITY is shown as NO:

A. Pay TOTAL FEE(S) DUE shown above, or

B. If applicant claimed SMALL ENTITY status before, or is now claiming SMALL ENTITY status, check box 5a on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and 1/2 the ISSUE FEE shown above.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

Page 1 of 3

PTOL-85 (Rev. 02/11)

SRPT-VYDS-0003625

**PART B - FEE(S) TRANSMITTAL**

**Complete and send this form, together with applicable fee(s), to:** _Mail_    Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
**or _Fax_** (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

959       7590      02/25/2013

NELSON MULLINS RILEY & SCARBOROUGH LLP
FLOOR 30, SUITE 3000
ONE POST OFFICE SQUARE
BOSTON, MA 02109

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/270,937 | 10/11/2011 | Stephen Donald Wilton | AVN-008CN9 | 5416 |

TITLE OF INVENTION: ANTISENSE OLIGONUCLEOTIDES FOR INDUCING EXON SKIPPING AND METHODS OF USE THEREOF

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | YES | $885 | $300 | $0 | $1185 | 05/28/2013 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| CHONG, KIMBERLY | 1635 | 536-024500 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list

(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered attorney or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE          (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) :  ☐ Individual  ☐ Corporation or other private group entity  ☐ Government

4a. The following fee(s) are submitted:
☐ Issue Fee
☐ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): (**Please first reapply any previously paid issue fee shown above**)
☐ A check is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

5. **Change in Entity Status** (from status indicated above)
☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.    ☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____    Date _____

Typed or printed name _____    Registration No. _____

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 02/11) Approved for use through 08/31/2013.          OMB 0651-0033          U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/270,937 | 10/11/2011 | Stephen Donald Wilton | AVN-008CN9 | 5416 |

959       7590       02/25/2013

NELSON MULLINS RILEY & SCARBOROUGH LLP
FLOOR 30, SUITE 3000
ONE POST OFFICE SQUARE
BOSTON, MA 02109

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1635 | |

DATE MAILED: 02/25/2013

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment to date is 0 day(s). If the issue fee is paid on the date that is three months after the mailing date of this notice and the patent issues on the Tuesday before the date that is 28 weeks (six and a half months) after the mailing date of this notice, the Patent Term Adjustment will be 0 day(s).

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

SRPT-VYDS-0003627

# Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| *Notice of Allowability* | Application No. | Applicant(s) |
|---|---|---|
| | 13/270,937 | WILTON ET AL. |
| | **Examiner** | **Art Unit** | |
| | KIMBERLY CHONG | 1635 | |

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--**

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to <u>12/14/2012</u>.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☒ The allowed claim(s) is/are <u>24,30,31,34,35 and 45-86</u>. As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see <u>http://www.uspto.gov/patents/init_events/pph/index.jsp</u> or send an inquiry to <u>PPHfeedback@uspto.gov</u> .

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All    b) ☐ Some*    c) ☐ None   of the:

        1. ☐ Certified copies of the priority documents have been received.

        2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

        3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    * Certified copies not received: _____ .

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

    ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____.

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)
2. ☒ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date <u>See Continuation Sheet</u>
3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material
4. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____ .

5. ☐ Examiner's Amendment/Comment
6. ☐ Examiner's Statement of Reasons for Allowance
7. ☐ Other _____ .

| | /Kimberly Chong/ |
| | Primary Examiner AU1635 |

SRPT-VYDS-0003629

Continuation of Attachment(s) 2. Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date: 02/13/2013,12/14/2012.

SRPT-VYDS-0003630

Application/Control Number: 13/270,937                                    Page 2
Art Unit: 1635

The following is an examiner's statement of reasons for allowance: Applicant's remarks and claim amendments filed 12/14/2012 overcome the rejection of record.

Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should preferably accompany the issue fee. Such submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."

## Conclusion

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Kimberly Chong whose telephone number is 571-272-3111. The examiner can normally be reached Monday thru Friday between 9-5 pm.

If attempts to reach the examiner by telephone are unsuccessful please contact the SPE for 1635 Heather Calamita at 571-272-2876. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Patent applicants with problems or questions regarding electronic images that can be viewed in the Patent Application Information Retrieval system (PAIR) can now contact the USPTO's Patent Electronic Business Center (Patent EBC) for assistance. Representatives are available to answer your questions daily from 6 am to midnight (EST). The toll free number is (866) 217-9197. When calling please have your application serial or patent number, the type of document you are having an image problem with, the number of pages and the specific nature of the problem. The Patent Electronic Business Center will notify applicants of the resolution of the problem within

Application/Control Number: 13/270,937                                        Page 3
Art Unit: 1635

5-7 business days. Applicants can also check PAIR to confirm that the problem has

been corrected.  The USPTO's Patent Electronic Business Center is a complete service

center supporting all patent business on the Internet. The USPTO's PAIR system

provides Internet-based access to patent application status and history information. It

also enables applicants to view the scanned images of their own application file

folder(s) as well as general patent information available to the public. For more

information about the PAIR system, see http://pair-direct.uspto.gov.

For all other customer support, please call the USPTO Call Center (UCC) at 800-

786-9199.

/Kimberly Chong/
Primary Examiner
Art Unit 1635

SRPT-VYDS-0003632

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/270,937 | 10/11/2011 | Stephen Donald Wilton | AVN-008CN9 | 5416 |

959          7590          06/14/2012
NELSON MULLINS RILEY & SCARBOROUGH LLP
FLOOR 30, SUITE 3000
ONE POST OFFICE SQUARE
BOSTON, MA 02109

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1635 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 06/14/2012 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A  (Rev. 04/07)

SRPT-VYDS-0003633

| ***Office Action Summary*** | Application No. | Applicant(s) |
|---|---|---|
| | 13/270,937 | WILTON ET AL. |
| | Examiner | Art Unit | |
| | KIMBERLY CHONG | 1635 | |

-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE 3 MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on _13 April 2012_.

2a)☐ This action is **FINAL**.      2b)☒ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

5)☒ Claim(s) _15-44_ is/are pending in the application.

    5a) Of the above claim(s) _24-33 and 35-44_ is/are withdrawn from consideration.

6)☐ Claim(s) _____ is/are allowed.

7)☒ Claim(s) _15-23 and 34_ is/are rejected.

8)☒ Claim(s) _____ is/are objected to.

9)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

10)☒ The specification is objected to by the Examiner.

11)☒ The drawing(s) filed on _11 October 2011_ is/are: a)☒ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

12)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

13)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All  b)☐ Some * c)☐ None of:

    1.☐ Certified copies of the priority documents have been received.

    2.☐ Certified copies of the priority documents have been received in Application No. _____.

    3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☒ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date _01/31/2012_.

4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail. Date. _____ .

5)☐ Notice of Informal Patent Application

6)☐ Other: _____.

SRPT-VYDS-0003634

Application/Control Number: 13/270,937                                    Page 2
Art Unit: 1635

## DETAILED ACTION

### *Election/Restrictions*

Applicant's election of Group I in the reply filed on 04/13/2012 is acknowledged. Because applicant did not distinctly and specifically point out the supposed errors in the restriction requirement, the election has been treated as an election without traverse (MPEP § 818.03(a)).

### *Status of the Application*

Claims 15-44 are pending.  Claims 15-23 and 34 are currently under examination.  Claims 24-33 and 35-44 are withdrawn as being drawn to a non-elected invention.

### *Information Disclosure Statement*

The submission of the Information Disclosure Statement on 01/31/2012 is in compliance with 37 CFR 1.97.  The information disclosure statement has been considered by the examiner and signed copies have been placed in the file.

### *Sequence Compliance- Specification*

This application contains sequence disclosures that are encompassed by the definitions for nucleotide and/or amino acid sequences set forth in 37 CFR 1.821(a)(1) and (a)(2). However, this application fails to comply with the requirements of 37 CFR 1.821 through 1.825 for the reason(s) set forth below: Figure 1 of the drawings recite a

SRPT-VYDS-0003635

Application/Control Number: 13/270,937                                    Page 3
Art Unit: 1635

nucleotide sequence that does not have the required sequence identifier in either the

drawings or the brief description of the drawings in the specification.

A complete response to this office action must correct the defects cited above

regarding compliance with the sequence rules and a response to the action on the

merits which follows.

The aforementioned instance of failure to comply is not intended as an

exhaustive list of all such potential failures to comply in the instant application.

Applicants are encouraged to thoroughly review the application to ensure that the entire

application is in full compliance with all sequence rules.  This requirement will not be

held in abeyance.

### *Claim Rejections - 35 USC § 102*

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that

form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

(e) the invention was described in (1) an application for patent, published under section 122(b), by another filed in the United States before the invention by the applicant for patent or (2) a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent, except that an international application filed under the treaty defined in section 351(a) shall have the effects for purposes of this subsection of an application filed in the United States only if the international application designated the United States and was published under Article 21(2) of such treaty in the English language.

Application/Control Number: 13/270,937                                        Page 4

Art Unit: 1635

Claims 15-17 and 34 are rejected under 35 U.S.C. 102(b) as being anticipated by

Zhou et al. (US 20050026164).

The claims are drawn to an isolated antisense oligonucleotide comprising base

positions 14-23 of SEQ ID No. 175, wherein the oligonucleotide specifically hybridizes

to an exon 50 target region of the Dystrophin gene.

Zhou et al. teach an oligonucleotide 25 nucleotides in length comprising positions

14-23 of SEQ ID No. 175 (see alignment below).

```
SEQ ID NO 50831
Length 25 nucleotides
US-20050026164


SEQ ID NO 175            11 AUACUUACAGGCU 23
SEQ ID NO 50831          6 ATACTTACAGGCT 18
```

Zhou et al. do not teach the oligonucleotide has the claimed function of

hybridizing to exon 50 and has the ability to skip exon 50 however because the

oligonucleotide is substantially identical to the claimed oligonucleotide, the claimed

properties or functions are presumed to be inherent. The MPEP states:

**A REFERENCE TEACHING PRODUCT APPEARING TO BE SUBSTANTIALLY IDENTICAL IS MADE THE BASIS OF A REJECTION, AND THE EXAMINER PRESENTS EVIDENCE OR REASONING TENDING TO SHOW INHERENCY, THE BURDEN SHIFTS TO THE APPLICANT TO SHOW AN UNOBVIOUS DIFFERENCE**

"[T]he PTO can require an applicant to prove that the prior art products do not necessarily or inherently possess the characteristics of his [or her] claimed product. Whether the rejection is based on inherency' under 35 U.S.C. 102, on prima facie obviousness' under 35 U.S.C. 103, jointly or alternatively, the burden of proof is the same...[footnote omitted]." The burden of proof is similar to that required with respect to product-by-process claims. *In re Fitzgerald,* 619 F.2d 67, 70, 205 USPQ 594, 596 (CCPA 1980) (quoting *In re Best,* 562 F.2d 1252, 1255, 195 USPQ 430, 433-34 (CCPA 1977)).

**MPEP 2112.01:**

Application/Control Number: 13/270,937                                        Page 5

Art Unit: 1635

**PRODUCT AND APPARATUS CLAIMS □ WHEN THE STRUCTURE RECITED IN THE REFERENCE IS SUBSTANTIALLY IDENTICAL TO THAT OF THE CLAIMS, CLAIMED PROPERTIES OR FUNCTIONS ARE PRESUMED TO BE INHERENT**

Where the claimed and prior art products are identical or substantially identical in structure or composition, or are produced by identical or substantially identical processes, a prima facie case of either anticipation or obviousness has been established. In re Best, 562 F.2d 1252, 1255, 195 USPQ 430, 433 (CCPA 1977). □When the PTO shows a sound basis for believing that the products of the applicant and the prior art are the same, the applicant has the burden of showing that they are not.□ *In re Spada*, 911 F.2d 705, 709, 15 USPQ2d 1655, 1658 (Fed. Cir. 1990). Therefore, the   prima facie case can be rebutted by evidence showing that the prior art products do not necessarily possess the characteristics of the claimed product. *In re Best*, 562 F.2d at 1255, 195 USPQ at 433.

**A REJECTION UNDER 35 U.S.C. 102/103 CAN BE MADE WHEN THE PRIOR ART PRODUCT SEEMS TO BE IDENTICAL EXCEPT THAT THE PRIOR ART IS SILENT AS TO AN INHERENT CHARACTERISTIC**

Where applicant claims a composition in terms of a function, property or characteristic and the composition of the prior art is the same as that of the claim but the function is not explicitly disclosed by the reference, the examiner may make a rejection under both 35 U.S.C. 102 and 103, expressed as a 102/103 rejection. "There is nothing inconsistent in concurrent rejections for obviousness under 35  U.S.C. 103 and for anticipation under 35 U.S.C. 102." *In re Best*, 562 F.2d 1252, 1255 n.4, 195 USPQ 430, 433 n.4 (CCPA 1977). This same rationale should also apply to product, apparatus, and process claims claimed in terms of function, property or characteristic. Therefore, a 35  U.S.C. 102/103 rejection is appropriate for these types of claims as well as for composition claims.


Thus Zhou et al. anticipates the instant claims.



Claims 15-16, 20 and 34 are rejected under 35 U.S.C. 102(e) as being

anticipated by Bentwich et al. (US Patent No. 7,655,785).

The claims are drawn to an isolated antisense oligonucleotide comprising base

positions 14-23 of SEQ ID No. 175, wherein the oligonucleotide specifically hybridizes

to an exon 50 target region of the Dystrophin gene and further wherein the

oligonucleotide comprises an expression vector.

SRPT-VYDS-0003638

Application/Control Number: 13/270,937                                          Page 6
Art Unit: 1635

Bentwich et al. teach an oligonucleotide 16 nucleotides in length comprising

positions 14-23 of SEQ ID No. 175 (see alignment below).

```
SEQ ID NO 1554844
Length 16 nucleotides
US-7,665,785

SEQ ID No. 175        13 ACUUACAGGCU 23

SEQ ID No. 1554844    6 ACUUACAGGCU 16
```

Bentwich et al. do not teach the oligonucleotide has the claimed function of

hybridizing to exon 50 and has the ability to skip exon 50 however because the

oligonucleotide is substantially identical to the claimed oligonucleotide, the claimed

properties or functions are presumed to be inherent (see MPEP above).

Thus Bentwich anticipates the instant claims.


Claims 15-17, 19, 20, 22, 23 and 34 are rejected under 35 U.S.C. 102(b) as

being anticipated by Iversen et al. (US 20050153935).

The claims are drawn to an isolated antisense oligonucleotide comprising base

positions 14-23 of SEQ ID No. 175, wherein the oligonucleotide specifically hybridizes

to an exon 50 target region of the Dystrophin gene.

Iversen et al. teach an oligonucleotide 21 nucleotides in length comprising

positions 14-23 of SEQ ID No. 175 (see Table 2)   Iversen et al. teach the

oligonucleotides comprise modifications and is specifically complementary to the target

gene (see paragraph 0035 and Table 2).

Application/Control Number: 13/270,937                                    Page 7
Art Unit: 1635

Iversen et al. do not teach the oligonucleotide has the claimed function of

hybridizing to exon 50 and has the ability to skip exon 50 however because the

oligonucleotide is substantially identical to the claimed oligonucleotide, the claimed

properties or functions are presumed to be inherent (see MPEP above).

Thus Iversen et al. anticipates the instant claims.


Claims 15-17, 19, 23 and 34 are rejected under 35 U.S.C. 102(b) as being

anticipated by Iversen et al. (US 20050153935).

The claims are drawn to an isolated antisense oligonucleotide comprising base

positions 14-23 of SEQ ID No. 175, wherein the oligonucleotide specifically hybridizes

to an exon 50 target region of the Dystrophin gene.

Iversen et al. teach an oligonucleotide 21 nucleotides in length comprising

positions 14-23 of SEQ ID No. 175 (see Table 2)   Iversen et al. teach the

oligonucleotides comprise modifications and is specifically complementary to the target

gene (see paragraph 0035 and Table 2).

Iversen et al. do not teach the oligonucleotide has the claimed function of

hybridizing to exon 50 and has the ability to skip exon 50 however because the

oligonucleotide is substantially identical to the claimed oligonucleotide, the claimed

properties or functions are presumed to be inherent (see MPEP above).

Thus Iversen et al. anticipates the instant claims.

SRPT-VYDS-0003640

Application/Control Number: 13/270,937                                    Page 8

Art Unit: 1635

### *Claim Rejections - 35 USC § 103*

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

Claims 15-17, 19, 21, 23 and 34 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Iversen et al. (US 20050153935) and Hermonat et al. (US Patent No.

6,153,436).

The claims are drawn to an isolated antisense oligonucleotide comprising base

positions 14-23 of SEQ ID No. 175, wherein the oligonucleotide specifically hybridizes

to an exon 50 target region of the Dystrophin gene.

Iversen et al. teach an oligonucleotide 21 nucleotides in length comprising

positions 14-23 of SEQ ID No. 175 (see Table 2)   Iversen et al. teach the

oligonucleotides comprise modifications and is specifically complementary to the target

gene (see paragraph 0035 and Table 2).

Iversen et al. do not teach the oligonucleotide has the claimed function of

hybridizing to exon 50 and has the ability to skip exon 50 however because the

oligonucleotide is substantially identical to the claimed oligonucleotide, the claimed

properties or functions are presumed to be inherent (see MPEP above).

Iversen et al. do not teach the use of adeno-associated virus vectors for delivery

of oligonucleotides.  Hermonat et al. demonstrates the use of AAV to deliver nucleic

acid sequences such as antisense into cells. Hermonant et al. teach these vectors are

SRPT-VYDS-0003641

Application/Control Number: 13/270,937                                              Page 9
Art Unit: 1635

efficient because they can integrate into the chromosome and have the capability to

produce high titers.

Thus one of ordinary skill in the art would have used such a vector to increase

the expression of the oligonucleotide taught by Iversen et al. and would have expected

to be capable of making such a vector as taught by Hermonat et al.

Thus in the absence of evidence to the contrary, the invention as a whole would

have been *prima facie* obvious to one of ordinary skill in the art at the time the invention

was made.

### *Claim Rejections - 35 USC § 103*

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

Claims 15-23 and 34 are rejected under 35 U.S.C. 103(a) as being unpatentable

over van Deutekom et al. (Human Molecular Genetics 2001, Vol. 10, No. 15:1547-1554

of record) and van Ommen et al. (US 20060147952).

The claims are drawn to an isolated antisense oligonucleotide comprising base

positions 14-23 of SEQ ID No. 175, wherein the oligonucleotide specifically hybridizes

to an exon 50 target region of the Dystrophin gene, wherein the oligonucleotide induces

exon skipping when tested in an assay and wherein the oligonucleotide comprises an

expression vector.

Application/Control Number: 13/270,937                                   Page 10
Art Unit: 1635

van Deutekom teach a method for making chemically modified antisense oligonucleotides that induce exon skipping in dystrophin pre-mRNA from a Duchenne muscular dystrophy allele wherein the antisense oligonucleotides target several exons (see entire reference).

van Deutekom teach the studies provide a promising proof of principle for antisense-based therapy for DMD and may be applicable to a variety of DMD mutations and teach the use of 2'-O-methyl modified oligonucleotides (see page 1551). van Deutekom teach a list of 10 exons, including exon 50 wherein it has been determined that skipping of this group of exons provides the possibility of >65% of DMD deletion mutations being corrected (see page 1551). This provides the motivation to design an oligonucleotide targeted to at least exon 50.

van Ommen et al. et al. teach detailed method steps of generating antisense oligonucleotides capable of exon skipping. van Ommen et al. teach targeting the exon inclusion signals and splice regions of the exon and teach methods of testing the antisense oligonucleotides for the ability to induce exon skipping in assays using myoblasts obtained from muscle biopsies (see beginning paragraph 0041). van Ommen et al. et al. teach the antisense oligonucleotide comprises modifications to enhance stability and teach the use of expression vectors such as AAV.

One would have wanted to target exon 50 as taught by van Deutekom et al. and it would have been obvious to use the methods of van Ommen et al. to generate an exon targeted to exon 50. Given the sequence of exon 50 is well known, one of skill in

SRPT-VYDS-0003643

Application/Control Number: 13/270,937                                    Page 11
Art Unit: 1635

the art would have been capable of generating antisense oligonucleotides comprising

the claimed sequence and testing said molecules for the ability to induce skipping.

Thus in the absence of evidence to the contrary, the invention as a whole would

have been *prima facie* obvious to one of ordinary skill in the art at the time the invention

was made.


### Conclusion

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Kimberly Chong whose telephone number is 571-272-

3111.  The examiner can normally be reached Monday thru Friday between 7-4 pm.

If attempts to reach the examiner by telephone are unsuccessful please contact

the SPE for 1635 Heather Calamita at 571-272-2876. The fax phone number for the

organization where this application or proceeding is assigned is 571-273-8300.

Patent applicants with problems or questions regarding electronic images that

can be viewed in the Patent Application Information Retrieval system (PAIR) can now

contact the USPTO's Patent Electronic Business Center (Patent EBC) for assistance.

Representatives are available to answer your questions daily from 6 am to midnight

(EST). The toll free number is (866) 217-9197. When calling please have your

application serial or patent number, the type of document you are having an image

problem with, the number of pages and the specific nature of the problem.  The Patent

Electronic Business Center will notify applicants of the resolution of the problem within

5-7 business days. Applicants can also check PAIR to confirm that the problem has

SRPT-VYDS-0003644

Application/Control Number: 13/270,937                                      Page 12
Art Unit: 1635

been corrected.  The USPTO's Patent Electronic Business Center is a complete service

center supporting all patent business on the Internet. The USPTO's PAIR system

provides Internet-based access to patent application status and history information. It

also enables applicants to view the scanned images of their own application file

folder(s) as well as general patent information available to the public. For more

information about the PAIR system, see http://pair-direct.uspto.gov.

For all other customer support, please call the USPTO Call Center (UCC) at 800-

786-9199.


/Kimberly Chong/
Primary Examiner
Art Unit 1635

SRPT-VYDS-0003645

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/270,937 | 10/11/2011 | Stephen Donald Wilton | 40239-712.309 | 5416 |

21971          7590          03/14/2012
WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CA 94304-1050

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1635 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 03/14/2012 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A  (Rev. 04/07)

SRPT-VYDS-0003646

| **Office Action Summary** | Application No. | Applicant(s) |
| | 13/270,937 | WILTON ET AL. |
| | Examiner | Art Unit |
| | KIMBERLY CHONG | 1635 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>1</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>11 October 2011</u>.

2a)☐ This action is **FINAL**.    2b)☒ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

5)☒ Claim(s) <u>15-44</u> is/are pending in the application.

    5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6)☐ Claim(s) _____ is/are allowed.

7)☐ Claim(s) _____ is/are rejected.

8)☐ Claim(s) _____ is/are objected to.

9)☒ Claim(s) <u>15-44</u> are subject to restriction and/or election requirement.

**Application Papers**

10)☐ The specification is objected to by the Examiner.

11)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

12)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

13)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All  b)☐ Some * c)☐ None of:

      1.☐ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☐ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☐ Information Disclosure Statement(s) (PTO/SB/08) Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____ .

5)☐ Notice of Informal Patent Application

6)☐ Other: _____ .

U.S. Patent and Trademark Office

PTOL-326 (Rev. 03-11)                    Office Action Summary                    Part of Paper No./Mail Date 20120312

SRPT-VYDS-0003647

Application/Control Number: 13/270,937                                                    Page 2

Art Unit: 1635

# DETAILED ACTION

## *Election/Restrictions*

Restriction to one of the following inventions is required under 35 U.S.C. 121:

I.    Claims 15-23, 34, drawn to an isolated antisense oligonucleotide comprising base positions 14-23 of SEQ ID No. 175 wherein the oligonucleotide specifically hybridizes to exon 50 target region, classifiable in class 536, subclass 24.5.

II.    Claims 24-33, 35, 38-41 and 43-44, drawn to a method of inducing exon-skipping of dystrophin exon 50 comprising introducing a nucleic acid molecule wherein the molecule is an isolated antisense oligonucleotide comprising base positions 14-23 of SEQ ID No. 175, classifiable in class 514, subclass 44.

III.    Claim 36, drawn to an isolated antisense oligonucleotide comprising base positions 11-27 of SEQ ID No. 174 wherein the oligonucleotide specifically hybridizes to exon 50 target region, classifiable in class 536, subclass 24.5

IV.    Claims 37, 42, drawn to a method of inducing exon-skipping of dystrophin exon 50 comprising introducing a nucleic acid molecule wherein the molecule is an isolated antisense oligonucleotide comprising base positions 11-27 of SEQ ID No. 174, classifiable in class 514, subclass 44.

The inventions are distinct, each from the other because of the following reasons:

Application/Control Number: 13/270,937                                          Page 3
Art Unit: 1635

Inventions of Groups I and II are related as product and process of use.  The inventions can be shown to be distinct if either or both of the following can be shown: (1) the process for using the product as claimed can be practiced with another materially different product or (2) the product as claimed can be used in a materially different process of using that product. See MPEP § 806.05(h).  In the instant case, the product antisense oligonucleotide can be used in a materially different process, such as a probe in a hybridization assay. Furthermore restriction is proper because the subject matter is divergent and non-coextensive and a search for one would not necessarily reveal art against the other.  It is therefore a burden to search these inventions in a single application.

Inventions of Groups I and III are unrelated.  Inventions are unrelated if it can be shown that they are not disclosed as capable of use together and they have different designs, modes of operation, and effects (MPEP § 802.01 and § 806.06).  In the instant case, the different inventions have different designs as they are each unique oligonucleotide sequences that bind to different regions of a target gene and thus have different modes of operation and effects. Furthermore restriction is proper because the subject matter is divergent and non-coextensive and a search for one would not necessarily reveal art against the other.  It is therefore a burden to search these inventions in a single application.

Inventions of Groups I and IV are directed to an unrelated product and process. Product and process inventions are unrelated if it can be shown that the product cannot be used in, or made by, the process.  See MPEP § 802.01 and § 806.06.  In the instant

SRPT-VYDS-0003649

Application/Control Number: 13/270,937                                    Page 4
Art Unit: 1635

case, the isolated antisense oligonucleotide of Group I is materially different product

than the oligonucleotide described in the method of Group IV and is not disclosed as

capable of use in the claimed method. Furthermore restriction is proper because the

subject matter is divergent and non-coextensive and a search for one would not

necessarily reveal art against the other.  It is therefore a burden to search these

inventions in a single application.


       Inventions of Groups II and III are directed to an unrelated product and process.

Product and process inventions are unrelated if it can be shown that the product cannot

be used in, or made by, the process.  See MPEP § 802.01 and § 806.06.  In the instant

case, the isolated antisense oligonucleotide of Group III is materially different product

than the oligonucleotide described in the method of Group II and is not disclosed as

capable of use in the claimed method. Furthermore restriction is proper because the

subject matter is divergent and non-coextensive and a search for one would not

necessarily reveal art against the other.  It is therefore a burden to search these

inventions in a single application.

       Inventions of Groups II and IV are unrelated.  Inventions are unrelated if it can be

shown that they are not disclosed as capable of use together and they have different

designs, modes of operation, and effects (MPEP § 802.01 and § 806.06).  In the instant

case, the different inventions have different designs as they each use a different and

unique oligonucleotide sequences that bind to different regions of a target gene and

thus have different modes of operation and effects. Furthermore restriction is proper

Application/Control Number: 13/270,937                                    Page 5

Art Unit: 1635

because the subject matter is divergent and non-coextensive and a search for one

would not necessarily reveal art against the other.  It is therefore a burden to search

these inventions in a single application.


Inventions of Groups III and IV are related as product and process of use.  The

inventions can be shown to be distinct if either or both of the following can be shown: (1)

the process for using the product as claimed can be practiced with another materially

different product or (2) the product as claimed can be used in a materially different

process of using that product. See MPEP § 806.05(h).  In the instant case, the product

antisense oligonucleotide can be used in a materially different process, such as a probe

in a hybridization assay. Furthermore restriction is proper because the subject matter is

divergent and non-coextensive and a search for one would not necessarily reveal art

against the other.  It is therefore a burden to search these inventions in a single

application.


Restriction for examination purposes as indicated is proper because all these

inventions listed in this action are independent or distinct for the reasons given above

and there would be a serious search and examination burden if restriction were not

required because one or more of the following reasons apply:

(a) the inventions have acquired a separate status in the art in view of their

different classification;

SRPT-VYDS-0003651

Application/Control Number: 13/270,937                                Page 6
Art Unit: 1635

(b) the inventions have acquired a separate status in the art due to their recognized divergent subject matter;

(c) the inventions require a different field of search (for example, searching different classes/subclasses or electronic resources, or employing different search queries);

(d) the prior art applicable to one invention would not likely be applicable to another invention;

(e) the inventions are likely to raise different non-prior art issues under 35 U.S.C. 101 and/or 35 U.S.C. 112, first paragraph.

**Applicant is advised that the reply to this requirement to be complete <u>must</u> include (i) an election of a invention to be examined** even though the requirement may be traversed (37 CFR 1.143) **and (ii) <u>identification of the claims encompassing the elected invention</u>.**

The election of an invention may be made with or without traverse. To reserve a right to petition, the election must be made with traverse. If the reply does not distinctly and specifically point out supposed errors in the restriction requirement, the election shall be treated as an election without traverse. Traversal must be presented at the time of election in order to be considered timely.  Failure to timely traverse the requirement will result in the loss of right to petition under 37 CFR 1.144.

If claims are added after the election, applicant must indicate which of these claims are readable upon the elected invention.

SRPT-VYDS-0003652

Application/Control Number: 13/270,937                                    Page 7
Art Unit: 1635

Should applicant traverse on the ground that the inventions are not patentably

distinct, applicant should submit evidence or identify such evidence now of record

showing the inventions to be obvious variants or clearly admit on the record that this is

the case. In either instance, if the examiner finds one of the inventions unpatentable

over the prior art, the evidence or admission may be used in a rejection under 35 U.S.C.

103(a) of the other invention.

Applicant is reminded that upon the cancellation of claims to a non-elected

invention, the inventorship must be amended in compliance with 37 CFR 1.48(b) if one

or more of the currently named inventors is no longer an inventor of at least one claim

remaining in the application. Any amendment of inventorship must be accompanied by

a request under 37 CFR 1.48(b) and by the fee required under 37 CFR 1.17(i).


The examiner has required restriction between product and process claims.
Where applicant elects claims directed to the product, and the product claims are
subsequently found allowable, withdrawn process claims that depend from or otherwise
require all the limitations of the allowable product claim will be considered for rejoinder.
All claims directed a nonelected process invention  must require all the limitations of an
allowable product claim for that process invention to be rejoined.
In the event of rejoinder, the requirement for restriction between the product
claims and the rejoined process claims will be withdrawn, and the rejoined process
claims will be fully examined for patentability in accordance with 37 CFR 1.104. Thus, to
be allowable, the rejoined claims must meet all criteria for patentability including the
requirements of 35 U.S.C. 101, 102, 103 and 112. Until all claims to the elected product
are found allowable, an otherwise proper restriction requirement between product
claims and process claims may be maintained. Withdrawn process claims that are not
commensurate in scope with an allowable product claim will not be rejoined. See MPEP
§ 821.04(b). Additionally, in order to retain the right to rejoinder in accordance with the
above policy, applicant is advised that the process claims should be amended during
prosecution to require the limitations of the product claims. **Failure to do so may result
in a loss of the right to rejoinder**. Further, note that the prohibition against double
patenting rejections of 35 U.S.C. 121 does not apply where the restriction requirement
is withdrawn by the examiner before the patent issues. See MPEP § 804.01.

SRPT-VYDS-0003653

Application/Control Number: 13/270,937                                              Page 8
Art Unit: 1635

### *Conclusion*

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Kimberly Chong whose telephone number is 571-272-3111. The examiner can normally be reached Monday thru Friday between 7-4 pm.

If attempts to reach the examiner by telephone are unsuccessful please contact the Acting SPE for 1635 Heather Calamita at 571-272-2876. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Patent applicants with problems or questions regarding electronic images that can be viewed in the Patent Application Information Retrieval system (PAIR) can now contact the USPTO's Patent Electronic Business Center (Patent EBC) for assistance. Representatives are available to answer your questions daily from 6 am to midnight (EST). The toll free number is (866) 217-9197. When calling please have your application serial or patent number, the type of document you are having an image problem with, the number of pages and the specific nature of the problem. The Patent Electronic Business Center will notify applicants of the resolution of the problem within 5-7 business days. Applicants can also check PAIR to confirm that the problem has been corrected. The USPTO's Patent Electronic Business Center is a complete service center supporting all patent business on the Internet. The USPTO's PAIR system provides Internet-based access to patent application status and history information. It also enables applicants to view the scanned images of their own application file folder(s) as well as general patent information available to the public. For more information about the PAIR system, see http://pair-direct.uspto.gov.

For all other customer support, please call the USPTO Call Center (UCC) at 800-786-9199.

/Kimberly Chong/
Primary Examiner
Art Unit 1635



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| | | | |
|---|---|---|---|
| 959 | 7590 | 04/04/2013 | |

NELSON MULLINS RILEY & SCARBOROUGH LLP
FLOOR 30, SUITE 3000
ONE POST OFFICE SQUARE
BOSTON, MA 02109

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1635 | |

DATE MAILED: 04/04/2013

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/270,992 | 10/11/2011 | Stephen Donald Wilton | AVN-008CN10 | 8515 |

TITLE OF INVENTION: ANTISENSE OLIGONUCLEOTIDES FOR INDUCING EXON SKIPPING AND METHODS OF USE THEREOF

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $890 | $300 | $0 | $1190 | 07/05/2013 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

Page 1 of 4

PTOL-85 (Rev. 02/11)

SRPT-VYDS-0003655

**PART B - FEE(S) TRANSMITTAL**

**Complete and send this form, together with applicable fee(s), to:** <u>**Mail**</u>    **Mail Stop ISSUE FEE**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, Virginia 22313-1450**
or <u>**Fax**</u>    **(571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

959        7590        04/04/2013
NELSON MULLINS RILEY & SCARBOROUGH LLP
FLOOR 30, SUITE 3000
ONE POST OFFICE SQUARE
BOSTON, MA 02109

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

|  |
|---|
| (Depositor's name) |
| (Signature) |
| (Date) |

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/270,992 | 10/11/2011 | Stephen Donald Wilton | AVN-008CN10 | 8515 |

TITLE OF INVENTION: ANTISENSE OLIGONUCLEOTIDES FOR INDUCING EXON SKIPPING AND METHODS OF USE THEREOF

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $890 | $300 | $0 | $1190 | 07/05/2013 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| CHONG, KIMBERLY | 1635 | 536-044000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list

(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE or COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) :    ☐ Individual    ☐ Corporation or other private group entity    ☐ Government

4a. The following fee(s) are submitted:

☐ Issue Fee

☐ Publication Fee (No small entity discount permitted)

☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): (**Please first reapply any previously paid issue fee shown above**)

☐ A check is enclosed.

☐ Payment by credit card. Form PTO-2038 is attached.

☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

Page 2 of 4

PTOL-85 (Rev. 02/11)

SRPT-VYDS-0003656

5. **Change in Entity Status** (from status indicated above)

❑ Applicant certifying micro entity status. See 37 CFR 1.29

<u>NOTE:</u> Absent a valid certification of Micro Entity Status (see form PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

❑ Applicant asserting small entity status. See 37 CFR 1.27

<u>NOTE:</u> If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

❑ Applicant changing to regular undiscounted fee status.

<u>NOTE:</u> Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____     Date _____

Typed or printed name _____     Registration No. _____

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 02/11) Approved for use through 08/31/2013.     OMB 0651-0033     U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

SRPT-VYDS-0003657



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/270,992 | 10/11/2011 | Stephen Donald Wilton | AVN-008CN10 | 8515 |

959        7590        04/04/2013

NELSON MULLINS RILEY & SCARBOROUGH LLP
FLOOR 30, SUITE 3000
ONE POST OFFICE SQUARE
BOSTON, MA 02109

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1635 | |

DATE MAILED: 04/04/2013

### Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment to date is 0 day(s). If the issue fee is paid on the date that is three months after the mailing date of this notice and the patent issues on the Tuesday before the date that is 28 weeks (six and a half months) after the mailing date of this notice, the Patent Term Adjustment will be 0 day(s).

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

SRPT-VYDS-0003658

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| *Notice of Allowability* | Application No. 13/270,992 | Applicant(s) WILTON ET AL. | |
|---|---|---|---|
| | Examiner KIMBERLY CHONG | Art Unit 1635 | AIA (First Inventor to File) Status No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to _01/30/2013_.

    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on_____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☒ The allowed claim(s) is/are _52-82_. As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov .

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    **Certified copies:**

    a) ☐ All  b) ☐ Some  *c) ☐ None of the:

        1. ☐ Certified copies of the priority documents have been received.

        2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

        3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    * Certified copies not received: _____.

    **Interim copies:**

    a) ☐ All  b) ☐ Some  c) ☐ None of the: Interim copies of the priority documents have been received.

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely reply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

    ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____.

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)
2. ☒ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date See Continuation Sheet
3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material
4. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____ .

5. ☐ Examiner's Amendment/Comment
6. ☒ Examiner's Statement of Reasons for Allowance
7. ☐ Other _____.

/Kimberly Chong/
Primary Examiner AU1635

SRPT-VYDS-0003660

**Application No.  13/270,992**

Continuation of Attachment(s) 2. Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date: 02/14/2013,01/30/2013.

SRPT-VYDS-0003661

Application/Control Number: 13/270,992                                      Page 2
Art Unit: 1635

The following is an examiner's statement of reasons for allowance:

The claim amendments and declaration filed on 01/03/2013 under 37 CFR 1.132 is sufficient to overcome the rejections based upon the 35 U.S.C. 103 and 112.

Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should preferably accompany the issue fee.  Such submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."

## Conclusion

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Kimberly Chong whose telephone number is 571-272-3111.  The examiner can normally be reached Monday thru Friday between 9-5 pm.

If attempts to reach the examiner by telephone are unsuccessful please contact the SPE for 1635 Heather Calamita at 571-272-2876. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Patent applicants with problems or questions regarding electronic images that can be viewed in the Patent Application Information Retrieval system (PAIR) can now contact the USPTO's Patent Electronic Business Center (Patent EBC) for assistance. Representatives are available to answer your questions daily from 6 am to midnight (EST). The toll free number is (866) 217-9197. When calling please have your application serial or patent number, the type of document you are having an image

SRPT-VYDS-0003662

Application/Control Number: 13/270,992                                    Page 3
Art Unit: 1635

problem with, the number of pages and the specific nature of the problem.  The Patent

Electronic Business Center will notify applicants of the resolution of the problem within

5-7 business days. Applicants can also check PAIR to confirm that the problem has

been corrected.  The USPTO's Patent Electronic Business Center is a complete service

center supporting all patent business on the Internet. The USPTO's PAIR system

provides Internet-based access to patent application status and history information. It

also enables applicants to view the scanned images of their own application file

folder(s) as well as general patent information available to the public. For more

information about the PAIR system, see http://pair-direct.uspto.gov.

        For all other customer support, please call the USPTO Call Center (UCC) at 800-

786-9199.

/Kimberly Chong/
Primary Examiner
Art Unit 1635

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/270,992 | 10/11/2011 | Stephen Donald Wilton | AVN-008CN10 | 8515 |

959        7590        07/30/2012
NELSON MULLINS RILEY & SCARBOROUGH LLP
FLOOR 30, SUITE 3000
ONE POST OFFICE SQUARE
BOSTON, MA 02109

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1635 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 07/30/2012 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

SRPT-VYDS-0003664

| | Application No. | Applicant(s) |
|---|---|---|
| **Office Action Summary** | 13/270,992 | WILTON ET AL. |
| | **Examiner** | **Art Unit** | |
| | KIMBERLY CHONG | 1635 | |

-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>18 June 2012</u>.

2a)☐ This action is **FINAL.**    2b)☒ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____ ; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

5)☒ Claim(s) <u>52-80</u> is/are pending in the application.

    5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6)☐ Claim(s) _____ is/are allowed.

7)☒ Claim(s) <u>52-80</u> is/are rejected.

8)☐ Claim(s) _____ is/are objected to.

9)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

10)☒ The specification is objected to by the Examiner.

11)☒ The drawing(s) filed on <u>11 October 2011</u> is/are: a)☒ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

12)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

13)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All  b)☐ Some * c)☐ None of:

       1.☐ Certified copies of the priority documents have been received.

       2.☐ Certified copies of the priority documents have been received in Application No. _____.

       3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☒ Information Disclosure Statement(s) (PTO/SB/08)
Paper No(s)/Mail Date <u>06/18/2012,01/31/2012</u>.

4)☐ Interview Summary (PTO-413)
Paper No(s)/Mail Date. _____ .

5)☐ Notice of Informal Patent Application

6)☐ Other: _____.

        **Office Action Summary**         

SRPT-VYDS-0003665

Application/Control Number: 13/270,992                                                    Page 2
Art Unit: 1635

## DETAILED ACTION

### *Election/Restrictions*

Applicant's election with traverse of Group VI, claims 15-23 and 41 in the reply filed on 06/18/2012 is acknowledged.  The traversal is on the ground(s) that the subject matter of Group IV and Group VI would not pose an undue burden if searched with Group VI.  The claims of group VI and VI have been canceled and new claims 52-80 are directed to the subject matter of Group VI, thus making Applicant's argument moot.

The requirement is still deemed proper and is therefore made FINAL.

### *Status of the Application*

Claims 52-80 are pending and are currently under examination.

### *Information Disclosure Statement*

The submission of the Information Disclosure Statements on 01/31/2012 and 06/18/2012 is in compliance with 37 CFR 1.97.  The information disclosure statements have been considered by the examiner and signed copies have been placed in the file.

### *Objection to the Specification*

### *Sequence Compliance*

This application contains sequence disclosures that are encompassed by the definitions for nucleotide and/or amino acid sequences set forth in 37 CFR 1.821(a)(1) and (a)(2). However, this application fails to comply with the requirements of 37 CFR

SRPT-VYDS-0003666

Application/Control Number: 13/270,992                                                    Page 3
Art Unit: 1635

1.821 through 1.825 for the reason(s) set forth below:  Tables 2-39 of the specification

recite sequences that do not have the required sequence identifier.  A complete

response to this office action must correct the defects cited above regarding compliance

with the sequence rules and a response to the action on the merits which follows.

The aforementioned instance of failure to comply is not intended as an

exhaustive list of all such potential failures to comply in the instant application.

Applicants are encouraged to thoroughly review the application to ensure that the entire

application is in full compliance with all sequence rules.  This requirement will not be

held in abeyance.


### *Claim Rejections - 35 USC § 112*

The following is a quotation of the first paragraph of 35 U.S.C. 112:

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same and shall set forth the best mode contemplated by the inventor of carrying out his invention.

Claims 68 and 69 are rejected under 35 U.S.C. 112, first paragraph, as failing to

comply with the written description requirement.  The claim(s) contains subject matter

which was not described in the specification in such a way as to reasonably convey to

one skilled in the relevant art that the inventor(s), at the time the application was filed,

had possession of the claimed invention.  This is a new matter rejection.

Claim 68 is directed to "wherein the oligonucleotide is conjugated to an arginine-

rich cell penetrating peptide". The specification discloses peptide nucleic acid

SRPT-VYDS-0003667

Application/Control Number: 13/270,992                                            Page 4
Art Unit: 1635

modifications of the oligonucleotide but do not disclose a conjugate comprising arginine-rich cell penetrating peptides.

Claim 69 is directed to an oligonucleotide "chemically linked to a polyethylene glycol molecule". The specification in paragraph 0086 provides support for a linked polynucleotide chain but not a "molecule". The use of the term "molecule" is new matter because it can encompass many type of polyethylene glycol molecules that are not instantly disclosed.

If Applicant believes that such support is present in the specification and claimed priority documents, Applicant should point, with particularity, to where such support is to be found.

### *Claim Rejections - 35 USC § 103*

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

Claims 52-80 are rejected under 35 U.S.C. 103(a) as being unpatentable over van Deutekom et al. (Human Molecular Genetics 2001, Vol. 10, No. 15:1547-1554 of record IDS filed 01/31/2012), van Ommen et al. (US 20060099616 of record IDS filed 06/18/2012), De Angelis et al. (PNAS 2002, Vol. 99: 6456-9461), Ackermann et al. (US 20040254137) and ( Manoharan et al. (US 20020156235).

Application/Control Number: 13/270,992                                          Page 5
Art Unit: 1635

The claims are drawn to a method of inducing exon skipping in a subject
comprising administering a composition comprising an antisense oligonucleotide
comprising SEQ ID No. 181, wherein the antisense oligonucleotide comprises modified
backbone, sugar and internucleotide linkages.

The scope of this rejection is limited to a method of inducing exon 51 skipping in
a subject having DMD (whereas the enablement rejection below is directed to the lack
of enablement for inducing any exon skipping using an antisense oligonucleotide
targeted to exon 51). Further, the scope of this rejection with respect to claims 70-80 is
limited to a DMD disease and a method of restoring functional DMD dystrophin in a
subject.

van Deutekom teach a method for making chemically modified antisense
oligonucleotides that induce exon skipping in dystrophin pre-mRNA from a Duchenne
muscular dystrophy (DMD) allele wherein the antisense oligonucleotides target several
exons (see entire reference). van Deutekom teach the studies provide a promising
proof of principle for antisense-based therapy for DMD and may be applicable to a
variety of DMD mutations and teach the use of 2'-O-methyl modified oligonucleotides
(see page 1551). van Deutekom teach a list of 10 exons, including exon 51 wherein it
has been determined that skipping of this group of exons provides the possibility of
>65% of DMD deletion mutations being corrected (see page 1551).

De Angelis et al. teach proof of principle in exon 51 skipping wherein an
antisense oligonucleotide targeted to exon 51 an expressed in a snRNA was capable of

SRPT-VYDS-0003669

skipping exon 51 and rescuing DMD dystrophin synthesis in cells in vitro (see entire reference).

Similarly, van Ommen et al. teach detailed method steps of generating antisense oligonucleotides targeted to exon 51 capable of exon skipping. van Ommen et al. teach an oligonucleotide h51AON (SEQ ID No. 37) comprising 20 consecutive nucleotides of the instantly claimed antisense oligonucleotide. van Ommen et al. teach targeting the exon inclusion signals and splice regions of the exon and teach methods of generating antisense oligonucleotides to induce exon skipping (see beginning paragraph 0041). van Ommen et al. also teach the antisense oligonucleotide comprises modifications to enhance stability and efficacy (see paragraphs 0169-0174) and provide methods for treating a subject to correct a DMD gene and restore functional dystrophin production in a subject.

van Deutekom, van Ommen et al. nor De Angelis specifically teach an antisense oligonucleotide comprising or consisting of SEQ ID No. 181.

It would have been obvious to use the methods of van Deutekom and van Ommen et al. to generate an exon targeted to exon 51 having 30 to 50 nucleotides and comprising SEQ ID No. 181. Given the sequence of exon 51 is well known (Genbank), and given van Ommen et al. teach making an antisense molecule comprising 20 nucleotides of SEQ ID No. 181 to demonstrate the capability of skipping exon 51, one of skill in the art would have been motivated to use the methods to further generate oligonucleotides of varying length targeted to the same region in efforts of finding the most efficient antisense oligonucleotide to use in the claimed methods.

SRPT-VYDS-0003670

Application/Control Number: 13/270,992                                    Page 7
Art Unit: 1635

van Ommen et al. teach in Table 4 that skipping exon 51 has the potential to correct the highest percentage of mutations (17.5%) as compared to the other exons listed.  van Ommen et al. teach the antisense oligonucleotide can have up to 50 nucleotides complementary to the target exon and one of ordinary skill in the art would have wanted to make longer oligonucleotide comprising the antisense oligonucleotide taught by van Ommen et al. and therefore would have made the claimed oligonucleotide in efforts of finding the most efficient antisense oligonucleotide.

Ackermann et al. teach antisense oligonucleotides that comprise modified backbone, sugar moieties and internucleotide linkages, comprise morpholino moieties, and that can be peptide nucleic acids and further can be linked to a conjugate such as PEG (see paragraphs 0038-0047) which enhance the stability and specificity of antisense oligonucleotides and it would have been obvious to one of ordinary skill in the art to incorporate these moieties into the antisense oligonucleotide made to target exon 44.

It would have further been obvious for one of ordinary skill in the art to conjugate cell penetrating peptides and chemically linking with polyethylene glycol chains as taught by Manoharan et al. (see paragraphs 0027 and 0165).  Manoharan et al. teach antisense oligonucleotides comprising peptide conjugates such as Tat peptide, which is an arginine rich peptide, enhanced the overall efficacy of said oligonucleotide and one of ordinary skill in the art would have expected to be capable of making such conjugates as demonstrated by Manoharan et al.

Application/Control Number: 13/270,992                                    Page 8
Art Unit: 1635

Thus in the absence of evidence to the contrary, the invention as a whole would have been *prima facie* obvious to one of ordinary skill in the art at the time the invention was made.


### Claim Rejections - 35 USC § 112

The following is a quotation of the first paragraph of 35 U.S.C. 112:

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same and shall set forth the best mode contemplated by the inventor of carrying out his invention.

Claims 52-80 are rejected under 35 U.S.C. 112, first paragraph, as failing to comply with the enablement requirement.  The claim(s) contains subject matter which was not described in the specification in such a way as to enable one skilled in the art to which it pertains, or with which it is most nearly connected, to make and/or use the invention.

The following factors have been considered in the analysis of enablement: (1) the breadth of the claims, (2) the nature of the invention, (3) the state of the prior art, (4) the level of one of ordinary skill, (5) the level of predictability in the art, (6) the amount of direction provided by the inventor, (7) the existence of working examples, (8) the quantity of experimentation needed to make or use the invention based on the content of the disclosure.

The instant claims are drawn to a method of inducing exon skipping in a subject comprising administering a therapeutically effective amount of an antisense oligonucleotide comprising SEQ ID No. 181, drawn to a method of correcting an

SRPT-VYDS-0003672

Application/Control Number: 13/270,992                                  Page 9
Art Unit: 1635

abnormal or disease associated gene in a subject comprising administering a

therapeutically effective amount of an antisense oligonucleotide comprising SEQ ID No.

181, drawn to restoring or increasing functional dystrophin protein production

comprising administering a therapeutically effective amount of an antisense

oligonucleotide comprising SEQ ID No. 181 and drawn to treating a genetic disease or

disorder in a subject comprising administering a therapeutically effective amount of an

antisense oligonucleotide comprising SEQ ID No. 181.

The nature of the invention relies upon broadly inducing any exon skipping in a

subject, not necessarily dystrophin, after administration of an antisense oligonucleotide

comprising SEQ ID No. 181 and relies upon broadly correcting or treating any abnormal

disease or gene and restoring or increasing functional dystrophin protein production by

administering a therapeutically effective amount of an antisense oligonucleotide

comprising SEQ ID No. 181.

Whether the specification would have been enabling as of the filing date involves

consideration of the nature of the invention, the state of the prior art, and the level of

skill in the art.  The state of the prior art is what one skilled in the art would have known,

at the time the application was filed, about the subject matter to which the claimed

invention pertains.  The relative skill of those in the art refers to the skill of those in the

art in relation to the subject matter to which the claimed invention pertains at the time

the application was filed. See MPEP § 2164.05(b). The state of the prior art provides

evidence for the degree of predictability in the art and is related to the amount of

direction or guidance needed in the specification as filed to meet the enablement

Application/Control Number: 13/270,992                                    Page 10
Art Unit: 1635

requirement. The state of the prior art is also related to the need for working examples

in the specification.

A thorough review of the patent and non-patent literature indicates that the state

of the art linking treatment of a dystrophin disease or restoring functional dystrophin in a

subject after exon skipping was embryonic around the time of the instant invention.

Aartsma-Rus et al. (RNA 2007, 13:1609-1624 cited on IDS filed 06/18/2012)

acknowledges the effects of a dystrophin disease such as DMD in patients and that

antisense-mediated exon skipping is a versatile tool for research applications.  Aartsma-

Rus discusses the feasibility of using antisense oligonucleotides to skip known exons

such as exon 45-53 in DMD patients and also discusses multiple exon skipping but

reports this method is not consistent and efficient (page 1616).  Aartsma-Rus et al.

further discuss that potential therapeutics to skip these exons could affect up to 50% of

DMD patents.  Aartsma-Rus et al. discusses the feasibility of using antisense

oligonucleotides in therapeutic treatments of DMD and does state it is promising but

needs more work.  Aartsma-Rus et al. does not teach that using said oligonucleotides

targeted to DMD exons to induce exon skipping can be used to correct any abnormal or

disease associated with the gene or used to restore or increase functional dystrophin

protein in a subject.

While the level of one of ordinary skill practicing said invention would be high, the

level of predictability is considered variable as evident in the prior art discussed above

and is not considered to provide sufficient enablement to practice the claimed invention.

SRPT-VYDS-0003674

Application/Control Number: 13/270,992                                    Page 11
Art Unit: 1635

At best, the prior art at the time of the instant invention invites further experimentation to find a correlation between using the claimed antisense having SEQ ID No. 181 and skipping any other exon, besides exon 51, as broadly claimed in claim 52, or correcting any abnormal or disease associated with any gene as broadly claimed or restoring or increasing functional dystrophin as broadly claimed.

The working embodiment in the instant application illustrates oligonucleotides were capable of inducing skipping of exon 51 in muscle cells in vitro.  The working embodiment in the instant application does not include experiments wherein the antisense oligonucleotide targeted to exon 51 was capable of skipping any other exon in a subject or skipping any other exon in the dystrophin gene.  The working embodiment does not include experiments illustrating correction of an abnormal or disease associated gene in a subject or correction of any dystrophin gene in a subject by use of the claimed antisense oligonucleotide targeted to a dystrophin exon 51 target region.

Moreover, the working embodiment in the instant specification does not include experiments of restoring or increasing functional dystrophin protein production in a subject after administration of the claimed oligonucleotide and does not include experiments illustrating broadly treating any genetic disease or disorder or even treating dystrophin in a subject.

While the MPEP 2164.02 states the specification need not contain an example if the invention is otherwise disclosed in such manner that one skilled in the art will be able to practice it without an undue amount of experimentation. In re Borkowski, 422 F.2d 904, 908, 164 USPQ 642, 645 (CCPA 1970), the lack of a working example,

SRPT-VYDS-0003675

Application/Control Number: 13/270,992                                        Page 12
Art Unit: 1635

however, is a factor to be considered, especially in a case involving an unpredictable

and undeveloped art.

Thus, as discussed above, there is no predictable correlation in the art for the

role of skipping of exon 51 and the broad methods of treatment as claimed.  Without

further guidance, one of skill in the art would have to practice a substantial amount of

trial and error experimentation, an amount considered undue and not routine, to practice

the instantly claimed invention.

### Conclusion

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Kimberly Chong whose telephone number is 571-272-

3111.  The examiner can normally be reached Monday thru Friday between 7-4 pm.

If attempts to reach the examiner by telephone are unsuccessful please contact

the SPE for 1635 Heather Calamita at 571-272-2876. The fax phone number for the

organization where this application or proceeding is assigned is 571-273-8300.

Patent applicants with problems or questions regarding electronic images that

can be viewed in the Patent Application Information Retrieval system (PAIR) can now

contact the USPTO's Patent Electronic Business Center (Patent EBC) for assistance.

Representatives are available to answer your questions daily from 6 am to midnight

(EST). The toll free number is (866) 217-9197. When calling please have your

application serial or patent number, the type of document you are having an image

problem with, the number of pages and the specific nature of the problem.  The Patent

Electronic Business Center will notify applicants of the resolution of the problem within

Application/Control Number: 13/270,992                                              Page 13
Art Unit: 1635

5-7 business days. Applicants can also check PAIR to confirm that the problem has

been corrected.  The USPTO's Patent Electronic Business Center is a complete service

center supporting all patent business on the Internet. The USPTO's PAIR system

provides Internet-based access to patent application status and history information. It

also enables applicants to view the scanned images of their own application file

folder(s) as well as general patent information available to the public. For more

information about the PAIR system, see http://pair-direct.uspto.gov.

        For all other customer support, please call the USPTO Call Center (UCC) at 800-

786-9199.

/Kimberly Chong/
Primary Examiner
Art Unit 1635

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/270,992 | 10/11/2011 | Stephen Donald Wilton | 40239-712.310 | 8515 |

21971     7590     03/16/2012
WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CA 94304-1050

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1635 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 03/16/2012 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A  (Rev. 04/07)

SRPT-VYDS-0003678

| | Application No. | Applicant(s) |
|---|---|---|
| **Office Action Summary** | 13/270,992 | WILTON ET AL. |
| | Examiner | Art Unit |
| | KIMBERLY CHONG | 1635 |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>1</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>11 October 2011</u>.

2a)☐ This action is **FINAL**.    2b)☒ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

5)☒ Claim(s) <u>15-51</u> is/are pending in the application.

    5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6)☐ Claim(s) _____ is/are allowed.

7)☐ Claim(s) _____ is/are rejected.

8)☐ Claim(s) _____ is/are objected to.

9)☒ Claim(s) <u>15-51</u> are subject to restriction and/or election requirement.

**Application Papers**

10)☐ The specification is objected to by the Examiner.

11)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

12)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

13)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All   b)☐ Some * c)☐ None of:

      1.☐ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☐ Notice of References Cited (PTO-892)
2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3) ☐ Information Disclosure Statement(s) (PTO/SB/08) Paper No(s)/Mail Date _____.

4) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____.
5) ☐ Notice of Informal Patent Application
6) ☐ Other: _____.

U.S. Patent and Trademark Office

PTOL-326 (Rev. 03-11)                **Office Action Summary**                Part of Paper No./Mail Date 20120312

SRPT-VYDS-0003679

Application/Control Number: 13/270,992                                      Page 2

Art Unit: 1635

## DETAILED ACTION

### *Election/Restrictions*

Restriction to one of the following inventions is required under 35 U.S.C. 121:

I.     Claims 15-23, drawn to an isolated antisense oligonucleotide comprising base positions 16-25 of SEQ ID No. 180 wherein the oligonucleotide specifically hybridizes to exon 51 target region, classifiable in class 536, subclass 24.5.

II.    Claims 24-43, drawn to a method of inducing exon-skipping of dystrophin exon 51 comprising introducing a nucleic acid molecule wherein the molecule is an isolated antisense oligonucleotide comprising base positions 16-25 of SEQ ID No. 180, classifiable in class 514, subclass 44.

III.   Claim 44, drawn to an isolated antisense oligonucleotide comprising base positions 2-11 of SEQ ID No. 181 wherein the oligonucleotide specifically hybridizes to exon 51 target region, classifiable in class 536, subclass 24.5

IV.    Claims 45-47, drawn to a method of inducing exon-skipping of dystrophin exon 51 comprising introducing a nucleic acid molecule wherein the molecule is an isolated antisense oligonucleotide comprising base positions 2-11 of SEQ ID No. 181, classifiable in class 514, subclass 44.

V.     Claim 48, drawn to an isolated antisense oligonucleotide comprising base positions 1-17 of SEQ ID No. 181 wherein the oligonucleotide specifically

Application/Control Number: 13/270,992                                            Page 3
Art Unit: 1635

> hybridizes to exon 51 target region, classifiable in class 536, subclass
>
> 24.5

VI.    Claims 49-51, drawn to a method of inducing exon-skipping of dystrophin

       exon 51 comprising introducing a nucleic acid molecule wherein the

       molecule is an isolated antisense oligonucleotide comprising base

       positions 1-17 of SEQ ID No. 181, classifiable in class 514, subclass 44.

The inventions are distinct, each from the other because of the following reasons:

       Inventions of Groups I and II are related as product and process of use. The
inventions can be shown to be distinct if either or both of the following can be shown: (1)
the process for using the product as claimed can be practiced with another materially
different product or (2) the product as claimed can be used in a materially different
process of using that product. See MPEP § 806.05(h). In the instant case, the product
antisense oligonucleotide can be used in a materially different process, such as a probe
in a hybridization assay. Furthermore restriction is proper because the subject matter is
divergent and non-coextensive and a search for one would not necessarily reveal art
against the other. It is therefore a burden to search these inventions in a single
application.

       Inventions of Groups I and III are unrelated. Inventions are unrelated if it can be
shown that they are not disclosed as capable of use together and they have different
designs, modes of operation, and effects (MPEP § 802.01 and § 806.06). In the instant
case, the different inventions have different designs as they are each unique

SRPT-VYDS-0003681

Application/Control Number: 13/270,992                                      Page 4
Art Unit: 1635

oligonucleotide sequences that bind to different regions of a target gene and thus have different modes of operation and effects. Furthermore restriction is proper because the subject matter is divergent and non-coextensive and a search for one would not necessarily reveal art against the other.  It is therefore a burden to search these inventions in a single application.

Inventions of Groups I and IV are directed to an unrelated product and process. Product and process inventions are unrelated if it can be shown that the product cannot be used in, or made by, the process.  See MPEP § 802.01 and § 806.06.  In the instant case, the isolated antisense oligonucleotide of Group I is materially different product than the oligonucleotide described in the method of Group IV and is not disclosed as capable of use in the claimed method. Furthermore restriction is proper because the subject matter is divergent and non-coextensive and a search for one would not necessarily reveal art against the other.  It is therefore a burden to search these inventions in a single application.

Inventions of Groups I and V are unrelated.  Inventions are unrelated if it can be shown that they are not disclosed as capable of use together and they have different designs, modes of operation, and effects (MPEP § 802.01 and § 806.06).  In the instant case, the different inventions have different designs as they are each unique oligonucleotide sequences that bind to different regions of a target gene and thus have different modes of operation and effects. Furthermore restriction is proper because the subject matter is divergent and non-coextensive and a search for one would not

SRPT-VYDS-0003682

Application/Control Number: 13/270,992                                            Page 5
Art Unit: 1635

necessarily reveal art against the other.  It is therefore a burden to search these

inventions in a single application.

Inventions of Groups I and VI are directed to an unrelated product and process.

Product and process inventions are unrelated if it can be shown that the product cannot

be used in, or made by, the process.  See MPEP § 802.01 and § 806.06.  In the instant

case, the isolated antisense oligonucleotide of Group I is materially different product

than the oligonucleotide described in the method of Group VI and is not disclosed as

capable of use in the claimed method. Furthermore restriction is proper because the

subject matter is divergent and non-coextensive and a search for one would not

necessarily reveal art against the other.  It is therefore a burden to search these

inventions in a single application.

Inventions of Groups II and III are directed to an unrelated product and process.

Product and process inventions are unrelated if it can be shown that the product cannot

be used in, or made by, the process.  See MPEP § 802.01 and § 806.06.  In the instant

case, the isolated antisense oligonucleotide of Group III is materially different product

than the oligonucleotide described in the method of Group II and is not disclosed as

capable of use in the claimed method. Furthermore restriction is proper because the

subject matter is divergent and non-coextensive and a search for one would not

necessarily reveal art against the other.  It is therefore a burden to search these

inventions in a single application.

Application/Control Number: 13/270,992                                    Page 6
Art Unit: 1635

Inventions of Groups II and IV are unrelated.  Inventions are unrelated if it can be shown that they are not disclosed as capable of use together and they have different designs, modes of operation, and effects (MPEP § 802.01 and § 806.06).  In the instant case, the different inventions have different designs as they each use a different and unique oligonucleotide sequences that bind to different regions of a target gene and thus have different modes of operation and effects. Furthermore restriction is proper because the subject matter is divergent and non-coextensive and a search for one would not necessarily reveal art against the other.  It is therefore a burden to search these inventions in a single application.

Inventions of Groups II and V are directed to an unrelated product and process. Product and process inventions are unrelated if it can be shown that the product cannot be used in, or made by, the process.  See MPEP § 802.01 and § 806.06.  In the instant case, the isolated antisense oligonucleotide of Group V is materially different product than the oligonucleotide described in the method of Group II and is not disclosed as capable of use in the claimed method. Furthermore restriction is proper because the subject matter is divergent and non-coextensive and a search for one would not necessarily reveal art against the other.  It is therefore a burden to search these inventions in a single application.

Inventions of Groups II and VI are unrelated.  Inventions are unrelated if it can be shown that they are not disclosed as capable of use together and they have different designs, modes of operation, and effects (MPEP § 802.01 and § 806.06).  In the instant case, the different inventions have different designs as they each use a different and

SRPT-VYDS-0003684

Application/Control Number: 13/270,992                                    Page 7
Art Unit: 1635

unique oligonucleotide sequences that bind to different regions of a target gene and

thus have different modes of operation and effects. Furthermore restriction is proper

because the subject matter is divergent and non-coextensive and a search for one

would not necessarily reveal art against the other.  It is therefore a burden to search

these inventions in a single application.



Inventions of Groups III and IV are related as product and process of use.  The

inventions can be shown to be distinct if either or both of the following can be shown: (1)

the process for using the product as claimed can be practiced with another materially

different product or (2) the product as claimed can be used in a materially different

process of using that product. See MPEP § 806.05(h).  In the instant case, the product

antisense oligonucleotide can be used in a materially different process, such as a probe

in a hybridization assay. Furthermore restriction is proper because the subject matter is

divergent and non-coextensive and a search for one would not necessarily reveal art

against the other.  It is therefore a burden to search these inventions in a single

application.

Inventions of Groups III and V are unrelated.  Inventions are unrelated if it can be

shown that they are not disclosed as capable of use together and they have different

designs, modes of operation, and effects (MPEP § 802.01 and § 806.06).  In the instant

case, the different inventions have different designs as they each use a different and

unique oligonucleotide sequences that bind to different regions of a target gene and

SRPT-VYDS-0003685

Application/Control Number: 13/270,992                                          Page 8
Art Unit: 1635

thus have different modes of operation and effects. Furthermore restriction is proper

because the subject matter is divergent and non-coextensive and a search for one

would not necessarily reveal art against the other.  It is therefore a burden to search

these inventions in a single application.

Inventions of Groups III and VI are directed to an unrelated product and process.

Product and process inventions are unrelated if it can be shown that the product cannot

be used in, or made by, the process.  See MPEP § 802.01 and § 806.06.  In the instant

case, the isolated antisense oligonucleotide of Group III is materially different product

than the oligonucleotide described in the method of Group VI and is not disclosed as

capable of use in the claimed method. Furthermore restriction is proper because the

subject matter is divergent and non-coextensive and a search for one would not

necessarily reveal art against the other.  It is therefore a burden to search these

inventions in a single application.


Inventions of Groups IV and V are directed to an unrelated product and process.

Product and process inventions are unrelated if it can be shown that the product cannot

be used in, or made by, the process.  See MPEP § 802.01 and § 806.06.  In the instant

case, the isolated antisense oligonucleotide of Group V is materially different product

than the oligonucleotide described in the method of Group IV and is not disclosed as

capable of use in the claimed method. Furthermore restriction is proper because the

subject matter is divergent and non-coextensive and a search for one would not

Application/Control Number: 13/270,992                                    Page 9
Art Unit: 1635

necessarily reveal art against the other.  It is therefore a burden to search these inventions in a single application.

Inventions of Groups IV and VI are unrelated.  Inventions are unrelated if it can be shown that they are not disclosed as capable of use together and they have different designs, modes of operation, and effects (MPEP § 802.01 and § 806.06).  In the instant case, the different inventions have different designs as they each use a different and unique oligonucleotide sequences that bind to different regions of a target gene and thus have different modes of operation and effects. Furthermore restriction is proper because the subject matter is divergent and non-coextensive and a search for one would not necessarily reveal art against the other.  It is therefore a burden to search these inventions in a single application.

Inventions of Groups V and VI are related as product and process of use.  The inventions can be shown to be distinct if either or both of the following can be shown: (1) the process for using the product as claimed can be practiced with another materially different product or (2) the product as claimed can be used in a materially different process of using that product. See MPEP § 806.05(h).  In the instant case, the product antisense oligonucleotide can be used in a materially different process, such as a probe in a hybridization assay. Furthermore restriction is proper because the subject matter is divergent and non-coextensive and a search for one would not necessarily reveal art against the other.  It is therefore a burden to search these inventions in a single application

Application/Control Number: 13/270,992    Page 10
Art Unit: 1635

Restriction for examination purposes as indicated is proper because all these inventions listed in this action are independent or distinct for the reasons given above and there would be a serious search and examination burden if restriction were not required because one or more of the following reasons apply:

(a) the inventions have acquired a separate status in the art in view of their different classification;

(b) the inventions have acquired a separate status in the art due to their recognized divergent subject matter;

(c) the inventions require a different field of search (for example, searching different classes/subclasses or electronic resources, or employing different search queries);

(d) the prior art applicable to one invention would not likely be applicable to another invention;

(e) the inventions are likely to raise different non-prior art issues under 35 U.S.C. 101 and/or 35 U.S.C. 112, first paragraph.

**Applicant is advised that the reply to this requirement to be complete <u>must</u> include (i) an election of a invention to be examined** even though the requirement may be traversed (37 CFR 1.143) **and (ii) <u>identification of the claims encompassing the elected invention</u>.**

The election of an invention may be made with or without traverse. To reserve a right to petition, the election must be made with traverse. If the reply does not distinctly and specifically point out supposed errors in the restriction requirement, the election

SRPT-VYDS-0003688

Application/Control Number: 13/270,992                                    Page 11
Art Unit: 1635

shall be treated as an election without traverse. Traversal must be presented at the time

of election in order to be considered timely.  Failure to timely traverse the requirement

will result in the loss of right to petition under 37 CFR 1.144.

If claims are added after the election, applicant must indicate which of these

claims are readable upon the elected invention.

Should applicant traverse on the ground that the inventions are not patentably

distinct, applicant should submit evidence or identify such evidence now of record

showing the inventions to be obvious variants or clearly admit on the record that this is

the case. In either instance, if the examiner finds one of the inventions unpatentable

over the prior art, the evidence or admission may be used in a rejection under 35 U.S.C.

103(a) of the other invention.

Applicant is reminded that upon the cancellation of claims to a non-elected

invention, the inventorship must be amended in compliance with 37 CFR 1.48(b) if one

or more of the currently named inventors is no longer an inventor of at least one claim

remaining in the application. Any amendment of inventorship must be accompanied by

a request under 37 CFR 1.48(b) and by the fee required under 37 CFR 1.17(i).


The examiner has required restriction between product and process claims.
Where applicant elects claims directed to the product, and the product claims are
subsequently found allowable, withdrawn process claims that depend from or otherwise
require all the limitations of the allowable product claim will be considered for rejoinder.
All claims directed a nonelected process invention  must require all the limitations of an
allowable product claim for that process invention to be rejoined.
In the event of rejoinder, the requirement for restriction between the product
claims and the rejoined process claims will be withdrawn, and the rejoined process
claims will be fully examined for patentability in accordance with 37 CFR 1.104. Thus, to
be allowable, the rejoined claims must meet all criteria for patentability including the

Application/Control Number: 13/270,992                                    Page 12
Art Unit: 1635

requirements of 35 U.S.C. 101, 102, 103 and 112. Until all claims to the elected product
are found allowable, an otherwise proper restriction requirement between product
claims and process claims may be maintained. Withdrawn process claims that are not
commensurate in scope with an allowable product claim will not be rejoined. See MPEP
§ 821.04(b). Additionally, in order to retain the right to rejoinder in accordance with the
above policy, applicant is advised that the process claims should be amended during
prosecution to require the limitations of the product claims. **Failure to do so may result
in a loss of the right to rejoinder**. Further, note that the prohibition against double
patenting rejections of 35 U.S.C. 121 does not apply where the restriction requirement
is withdrawn by the examiner before the patent issues. See MPEP § 804.01.


### *Conclusion*

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Kimberly Chong whose telephone number is 571-272-

3111.  The examiner can normally be reached Monday thru Friday between 7-4 pm.

If attempts to reach the examiner by telephone are unsuccessful please contact

the Acting SPE for 1635 Heather Calamita at 571-272-2876.  The fax phone number for

the organization where this application or proceeding is assigned is 571-273-8300.

Patent applicants with problems or questions regarding electronic images that

can be viewed in the Patent Application Information Retrieval system (PAIR) can now

contact the USPTO's Patent Electronic Business Center (Patent EBC) for assistance.

Representatives are available to answer your questions daily from 6 am to midnight

(EST). The toll free number is (866) 217-9197. When calling please have your

application serial or patent number, the type of document you are having an image

problem with, the number of pages and the specific nature of the problem.  The Patent

Electronic Business Center will notify applicants of the resolution of the problem within

5-7 business days. Applicants can also check PAIR to confirm that the problem has

Application/Control Number: 13/270,992                                    Page 13
Art Unit: 1635

been corrected.  The USPTO's Patent Electronic Business Center is a complete service

center supporting all patent business on the Internet. The USPTO's PAIR system

provides Internet-based access to patent application status and history information. It

also enables applicants to view the scanned images of their own application file

folder(s) as well as general patent information available to the public. For more

information about the PAIR system, see http://pair-direct.uspto.gov.

        For all other customer support, please call the USPTO Call Center (UCC) at 800-

786-9199.

/Kimberly Chong/
Primary Examiner
Art Unit 1635

SRPT-VYDS-0003691



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

959       7590       03/26/2013
NELSON MULLINS RILEY & SCARBOROUGH LLP
FLOOR 30, SUITE 3000
ONE POST OFFICE SQUARE
BOSTON, MA 02109

| EXAMINER |
| --- |
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
| --- | --- |
| 1635 | |

DATE MAILED: 03/26/2013

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
| --- | --- | --- | --- | --- |
| 13/271,080 | 10/11/2011 | Stephen Donald Wilton | AVN-008CN11 | 7347 |

TITLE OF INVENTION: Antisense Oligonucleotides for Inducing Exon Skipping and Methods of Use Thereof

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
| --- | --- | --- | --- | --- | --- | --- |
| nonprovisional | SMALL | $890 | $300 | $0 | $1190 | 06/26/2013 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

Page 1 of 4

PTOL-85 (Rev. 02/11)

SRPT-VYDS-0003692

**PART B - FEE(S) TRANSMITTAL**

**Complete and send this form, together with applicable fee(s), to:** <u>Mail</u>    Mail Stop ISSUE FEE
                                                Commissioner for Patents
                                                P.O. Box 1450
                                                Alexandria, Virginia 22313-1450
                                    or <u>Fax</u>    (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

959        7590        03/26/2013
NELSON MULLINS RILEY & SCARBOROUGH LLP
FLOOR 30, SUITE 3000
ONE POST OFFICE SQUARE
BOSTON, MA 02109

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/271,080 | 10/11/2011 | Stephen Donald Wilton | AVN-008CN11 | 7347 |

TITLE OF INVENTION: Antisense Oligonucleotides for Inducing Exon Skipping and Methods of Use Thereof

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $890 | $300 | $0 | $1190 | 06/26/2013 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| CHONG, KIMBERLY | 1635 | 536-044000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list

(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE        (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) :   ☐ Individual   ☐ Corporation or other private group entity   ☐ Government

4a. The following fee(s) are submitted:

☐ Issue Fee

☐ Publication Fee (No small entity discount permitted)

☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): (**Please first reapply any previously paid issue fee shown above**)

☐ A check is enclosed.

☐ Payment by credit card. Form PTO-2038 is attached.

☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

Page 2 of 4

PTOL-85 (Rev. 02/11)

SRPT-VYDS-0003693

5. **Change in Entity Status** (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

NOTE: Absent a valid certification of Micro Entity Status (see form PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

☐ Applicant asserting small entity status. See 37 CFR 1.27

NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

☐ Applicant changing to regular undiscounted fee status.

NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____    Date _____

Typed or printed name _____    Registration No. _____

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 02/11) Approved for use through 08/31/2013.        OMB 0651-0033        U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

SRPT-VYDS-0003694



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/271,080 | 10/11/2011 | Stephen Donald Wilton | AVN-008CN11 | 7347 |

959        7590        03/26/2013
NELSON MULLINS RILEY & SCARBOROUGH LLP
FLOOR 30, SUITE 3000
ONE POST OFFICE SQUARE
BOSTON, MA 02109

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1635 | |

DATE MAILED: 03/26/2013

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment to date is 0 day(s). If the issue fee is paid on the date that is three months after the mailing date of this notice and the patent issues on the Tuesday before the date that is 28 weeks (six and a half months) after the mailing date of this notice, the Patent Term Adjustment will be 0 day(s).

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

SRPT-VYDS-0003695

# Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

SRPT-VYDS-0003696

| *Notice of Allowability* | Application No. | Applicant(s) | |
|---|---|---|---|
| | 13/271,080 | WILTON ET AL. | |
| | Examiner | Art Unit | |
| | KIMBERLY CHONG | 1635 | |

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--**

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to <u>01/30/2013</u>.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☒ The allowed claim(s) is/are <u>37 and 45-86</u>. As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov .

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All    b) ☐ Some*    c) ☐ None    of the:

      1. ☐ Certified copies of the priority documents have been received.

      2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

      3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    * Certified copies not received: _____ .

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

    ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____ .

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)

2. ☒ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date <u>See Continuation Sheet</u>

3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

4. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____ .

5. ☐ Examiner's Amendment/Comment

6. ☒ Examiner's Statement of Reasons for Allowance

7. ☐ Other _____ .

/Kimberly Chong/
Primary Examiner AU1635

SRPT-VYDS-0003697

Continuation of Attachment(s) 2. Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date: 6/14/12,1/30/13,2/14/13.

SRPT-VYDS-0003698

Application/Control Number: 13/271,080                                    Page 2
Art Unit: 1635

### *Reasons for Allowance*

The following is an examiner's statement of reasons for allowance: Applicant's remarks and claim amendments filed 01/30/2013 overcome the rejection of record.

Claims 45-86 are directed to an allowable product. Pursuant to the procedures set forth in MPEP § 821.04(B), claim 37, directed to the process of making or using an allowable product, previously withdrawn from consideration as a result of a restriction requirement, is hereby rejoined and fully examined for patentability under 37 CFR 1.104.

Because all claims previously withdrawn from consideration under 37 CFR 1.142 have been rejoined, **the restriction requirement as set forth in the Office action mailed on 03/14/2012 is hereby withdrawn**. In view of the withdrawal of the restriction requirement as to the rejoined inventions, applicant(s) are advised that if any claim presented in a continuation or divisional application is anticipated by, or includes all the limitations of, a claim that is allowable in the present application, such claim may be subject to provisional statutory and/or nonstatutory double patenting rejections over the claims of the instant application. Once the restriction requirement is withdrawn, the provisions of 35 U.S.C. 121 are no longer applicable. See *In re Ziegler*, 443 F.2d 1211, 1215, 170 USPQ 129, 131-32 (CCPA 1971). See also MPEP § 804.01.

Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should preferably

Application/Control Number: 13/271,080                                    Page 3
Art Unit: 1635

accompany the issue fee.  Such submissions should be clearly labeled "Comments on

Statement of Reasons for Allowance."


### *Conclusion*

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Kimberly Chong whose telephone number is 571-272-

3111.  The examiner can normally be reached Monday thru Friday between 9-5 pm.

If attempts to reach the examiner by telephone are unsuccessful please contact

the SPE for 1635 Heather Calamita at 571-272-2876. The fax phone number for the

organization where this application or proceeding is assigned is 571-273-8300.

Patent applicants with problems or questions regarding electronic images that
can be viewed in the Patent Application Information Retrieval system (PAIR) can now
contact the USPTO's Patent Electronic Business Center (Patent EBC) for assistance.
Representatives are available to answer your questions daily from 6 am to midnight
(EST). The toll free number is (866) 217-9197. When calling please have your
application serial or patent number, the type of document you are having an image
problem with, the number of pages and the specific nature of the problem.  The Patent
Electronic Business Center will notify applicants of the resolution of the problem within
5-7 business days. Applicants can also check PAIR to confirm that the problem has
been corrected.  The USPTO's Patent Electronic Business Center is a complete service
center supporting all patent business on the Internet. The USPTO's PAIR system
provides Internet-based access to patent application status and history information. It
also enables applicants to view the scanned images of their own application file
folder(s) as well as general patent information available to the public. For more
information about the PAIR system, see http://pair-direct.uspto.gov.
For all other customer support, please call the USPTO Call Center (UCC) at 800-
786-9199.


/Kimberly Chong/
Primary Examiner
Art Unit 1635

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/271,080 | 10/11/2011 | Stephen Donald Wilton | AVN-008CN11 | 7347 |

959        7590        07/30/2012
NELSON MULLINS RILEY & SCARBOROUGH LLP
FLOOR 30, SUITE 3000
ONE POST OFFICE SQUARE
BOSTON, MA 02109

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1635 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 07/30/2012 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

SRPT-VYDS-0003701

|  | Application No. | Applicant(s) |  |
|---|---|---|---|
| **Office Action Summary** | 13/271,080 | WILTON ET AL. |  |
|  | Examiner | Art Unit |  |
|  | KIMBERLY CHONG | 1635 |  |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☒ Responsive to communication(s) filed on <u>14 June 2012</u>.

2a) ☐ This action is **FINAL**.    2b) ☒ This action is non-final.

3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

5) ☒ Claim(s) <u>37 and 45-80</u> is/are pending in the application.

   5a) Of the above claim(s) <u>37</u> is/are withdrawn from consideration.

6) ☐ Claim(s) _____ is/are allowed.

7) ☒ Claim(s) <u>45-80</u> is/are rejected.

8) ☐ Claim(s) _____ is/are objected to.

9) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

10) ☒ The specification is objected to by the Examiner.

11) ☒ The drawing(s) filed on <u>11 October 2011</u> is/are: a) ☒ accepted or b) ☐ objected to by the Examiner.

   Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

   Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

12) ☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

13) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

   a) ☐ All  b) ☐ Some * c) ☐ None of:

     1. ☐ Certified copies of the priority documents have been received.

     2. ☐ Certified copies of the priority documents have been received in Application No. _____.

     3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

   * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)

2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3) ☒ Information Disclosure Statement(s) (PTO/SB/08)
   Paper No(s)/Mail Date <u>01/13/12,06/14/12</u>.

4) ☐ Interview Summary (PTO-413)
   Paper No(s)/Mail Date. _____ .

5) ☐ Notice of Informal Patent Application

6) ☐ Other: _____.

PTOL-326 (Rev. 03-11)    **Office Action Summary**    Part of Paper No./Mail Date 20120728

SRPT-VYDS-0003702

Application/Control Number: 13/271,080                                    Page 2
Art Unit: 1635

## DETAILED ACTION

### *Election/Restrictions*

Applicant's election of Group I, claims 15-23 and 41 in the reply filed on 06/14/2012 is acknowledged.

### *Status of the Application*

Claims 37 and 45-80 are pending. Claims 45-80 are currently under examination. Claim 37 is withdrawn as being drawn to a non-elected invention.

### *Information Disclosure Statement*

The submission of the Information Disclosure Statements on 01/31/2012 and 06/14/2012 is in compliance with 37 CFR 1.97. The information disclosure statements have been considered by the examiner and signed copies have been placed in the file.

### *Objection to the Specification*

### *Sequence Compliance*

This application contains sequence disclosures that are encompassed by the definitions for nucleotide and/or amino acid sequences set forth in 37 CFR 1.821(a)(1) and (a)(2). However, this application fails to comply with the requirements of 37 CFR 1.821 through 1.825 for the reason(s) set forth below: Tables 2-39 of the specification recite sequences that do not have the required sequence identifier. A complete

SRPT-VYDS-0003703

Application/Control Number: 13/271,080                                    Page 3
Art Unit: 1635

response to this office action must correct the defects cited above regarding compliance with the sequence rules and a response to the action on the merits which follows.

The aforementioned instance of failure to comply is not intended as an exhaustive list of all such potential failures to comply in the instant application. Applicants are encouraged to thoroughly review the application to ensure that the entire application is in full compliance with all sequence rules. This requirement will not be held in abeyance.

### *Claim Rejections - 35 USC § 112*

The following is a quotation of the first paragraph of 35 U.S.C. 112:

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same and shall set forth the best mode contemplated by the inventor of carrying out his invention.

Claims 61, 62, 78 and 79 are rejected under 35 U.S.C. 112, first paragraph, as failing to comply with the written description requirement. The claim(s) contains subject matter which was not described in the specification in such a way as to reasonably convey to one skilled in the relevant art that the inventor(s), at the time the application was filed, had possession of the claimed invention. <u>This is a new matter rejection</u>.

Claims 61 and 78 are directed to "wherein the oligonucleotide is conjugated to an arginine-rich cell penetrating peptide". The specification discloses peptide nucleic acid modifications of the oligonucleotide but do not disclose a conjugate comprising arginine-rich cell penetrating peptides.

SRPT-VYDS-0003704

Application/Control Number: 13/271,080                                   Page 4
Art Unit: 1635

Claims 62 and 79 are directed to an oligonucleotide "chemically linked to a
polyethylene glycol molecule". The specification in paragraph 0086 provides support for
a linked polynucleotide chain but not a "molecule". The use of the term "molecule" is
new matter because it can encompass many type of polyethylene glycol molecules that
are not instantly disclosed.

If Applicant believes that such support is present in the specification and claimed
priority documents, Applicant should point, with particularity, to where such support is to
be found.

### *Claim Rejections - 35 USC § 102*

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that
form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(e) the invention was described in (1) an application for patent, published under section 122(b), by
another filed in the United States before the invention by the applicant for patent or (2) a patent
granted on an application for patent by another filed in the United States before the invention by the
applicant for patent, except that an international application filed under the treaty defined in section
351(a) shall have the effects for purposes of this subsection of an application filed in the United States
only if the international application designated the United States and was published under Article 21(2)
of such treaty in the English language.

Claims 45, 48, 63, 64 and 65 are rejected under 35 U.S.C. 102(e) as being
anticipated by Bentwich et al. (US Patent No. 7,250,496).

The claims are drawn to an isolated antisense oligonucleotide of 20 to 50
nucleotides in length comprising at least 10 consecutive nucleotides of SEQ ID No. 193,

SRPT-VYDS-0003705

Application/Control Number: 13/271,080                                                      Page 5

Art Unit: 1635

wherein the oligonucleotide specifically hybridizes to an exon 53 target region of the

Dystrophin gene.

Bentwich et al. teach an oligonucleotide 21 nucleotides in length (SEQ ID No.

896672) having 14 consecutive nucleotides of instant SEQ ID No. 167 (see alignment

below).

SEQ ID No. 193              11 UUGCCUCCGGUUCU 24

Bentwich et al.              17 TTGCCTCCGGTTCT 4

Bentwich et al. do not teach the oligonucleotide has the claimed function of

hybridizing to exon 53 and has the ability to skip exon 53 however because the

oligonucleotide is substantially identical to the claimed oligonucleotide, the claimed

properties or functions are presumed to be inherent. The MPEP states:

> **A REFERENCE TEACHING PRODUCT APPEARING TO BE SUBSTANTIALLY IDENTICAL IS MADE THE BASIS OF A REJECTION, AND THE EXAMINER PRESENTS EVIDENCE OR REASONING TENDING TO SHOW INHERENCY, THE BURDEN SHIFTS TO THE APPLICANT TO SHOW AN UNOBVIOUS DIFFERENCE**
>
> "[T]he PTO can require an applicant to prove that the prior art products do not necessarily or inherently possess the characteristics of his [or her] claimed product. Whether the rejection is based on inherency' under 35 U.S.C. 102, on prima facie obviousness' under 35 U.S.C. 103, jointly or alternatively, the burden of proof is the same...[footnote omitted]." The burden of proof is similar to that required with respect to product-by-process claims. *In re Fitzgerald,* 619 F.2d 67, 70, 205 USPQ 594, 596 (CCPA 1980) (quoting *In re Best,* 562 F.2d 1252, 1255, 195 USPQ 430, 433-34 (CCPA 1977)).
>
> **MPEP 2112.01:**
>
> **PRODUCT AND APPARATUS CLAIMS ☐ WHEN THE STRUCTURE RECITED IN THE REFERENCE IS SUBSTANTIALLY IDENTICAL TO THAT OF THE CLAIMS, CLAIMED PROPERTIES OR FUNCTIONS ARE PRESUMED TO BE INHERENT**
>
> Where the claimed and prior art products are identical or substantially identical in structure or composition, or are produced by identical or substantially identical processes, a prima facie case of either anticipation or obviousness has been established. In re Best, 562 F.2d 1252, 1255, 195 USPQ 430, 433 (CCPA 1977). ☐When the PTO shows a sound basis for believing that the

SRPT-VYDS-0003706

Application/Control Number: 13/271,080                                        Page 6
Art Unit: 1635

products of the applicant and the prior art are the same, the applicant has the burden of showing that they are not.☐ *In re Spada*, 911 F.2d 705, 709, 15 USPQ2d 1655, 1658 (Fed. Cir. 1990). Therefore, the   prima facie case can be rebutted by evidence showing that the prior art products do not necessarily possess the characteristics of the claimed product. *In re Best*, 562 F.2d at 1255, 195 USPQ at 433.

**A REJECTION UNDER 35 U.S.C. 102/103 CAN BE MADE WHEN THE PRIOR ART PRODUCT SEEMS TO BE IDENTICAL EXCEPT THAT THE PRIOR ART IS SILENT AS TO AN INHERENT CHARACTERISTIC**

Where applicant claims a composition in terms of a function, property or characteristic and the composition of the prior art is the same as that of the claim but the function is not explicitly disclosed by the reference, the examiner may make a rejection under both 35 U.S.C. 102 and 103, expressed as a 102/103 rejection. "There is nothing inconsistent in concurrent rejections for obviousness under 35  U.S.C. 103 and for anticipation under 35 U.S.C. 102." *In re Best*, 562 F.2d 1252, 1255 n.4, 195 USPQ 430, 433 n.4 (CCPA 1977). This same rationale should also apply to product, apparatus, and process claims claimed in terms of function, property or characteristic. Therefore, a 35  U.S.C. 102/103 rejection is appropriate for these types of claims as well as for composition claims.


Thus Bentwich et al. anticipates the instant claims.


## *Claim Rejections - 35 USC § 103*

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

Claims 45-80 are rejected under 35 U.S.C. 103(a) as being unpatentable over

van Deutekom et al. (US Patent No. 7,534,879), Ackermann et al. (US 20040254137)

and Manoharan et al. (US 20020156235).

The claims are drawn to an isolated antisense oligonucleotide of 20 to 50

nucleotides in length comprising at least 10 consecutive nucleotides of SEQ ID No. 193,

SRPT-VYDS-0003707

Application/Control Number: 13/271,080                                      Page 7
Art Unit: 1635

wherein the oligonucleotide specifically hybridizes to an exon 53 target region of the

Dystrophin gene, wherein the antisense oligonucleotide comprises modified backbone,

sugar and internucleotide linkages.

van Deutekom teach a method for making chemically modified antisense

oligonucleotides that induce exon skipping in dystrophin pre-mRNA from a Duchenne

muscular dystrophy allele wherein the antisense oligonucleotides target several exons

(see entire reference).  van Deutekom teach the studies provide a promising proof of

principle for antisense-based therapy for DMD and may be applicable to a variety of

DMD mutations and teach the use of 2'-O-methyl modified oligonucleotides.  van

Deutekom et al. teach an oligonucleotide 18 nucleotides in length (SEQ ID No. 29)

having 18 consecutive nucleotides of instant SEQ ID No. 193 (see alignment below)

wherein the oligonucleotide is capable of skipping exon 53 (see Table 2).


SEQ ID No. 167        8 CUGUUGCCUCCGGUUCUG 25

van Ommen et al.      1 CUGUUGCCUCCGGUUCUG 18


van Deutekom et al. also teach the antisense oligonucleotide comprises

modifications to enhance stability and efficacy (see column 6) and  teach targeting the

exon inclusion signals and splice regions of the exon and teach methods of testing the

antisense oligonucleotides for the ability to induce exon skipping in assays using

myoblasts obtained from muscle biopsies.

SRPT-VYDS-0003708

Application/Control Number: 13/271,080                                                    Page 8
Art Unit: 1635

It would have been obvious to use the methods of van Deutekom to generate an exon targeted to exon 53 having 20 to 50 nucleotides and comprising SEQ ID No. 193. Given the sequence of exon 53 is well known (Genbank) and given van Deutekom et al. teach making an antisense molecule comprising 18 nucleotides of SEQ ID No. 193 to demonstrate the capability of skipping exon 53, one of skill in the art would have been motivated to use the methods to further generate oligonucleotides of varying length targeted to the same region in efforts of finding the most efficient antisense oligonucleotide to use in the claimed methods.

van Deutekom et al. teach in Table 4 that skipping exon 53 has the potential to correct 7.5% of mutations in the database as compared to the other exons listed. van Deutekom et al. teach the antisense oligonucleotide can have up to 50 nucleotides complementary to the target exon (see column 6) and one of ordinary skill in the art would have wanted to make longer oligonucleotide comprising the antisense oligonucleotide taught by van Ommen et al. and therefore would have made the claimed oligonucleotide in efforts of finding the most efficient antisense oligonucleotide.

Ackermann et al. teach antisense oligonucleotides that comprise modified backbone, sugar moieties and internucleotide linkages, comprise morpholino moieties, and that can be peptide nucleic acids and further can be linked to a conjugate such as PEG (see paragraphs 0038-0047) which enhance the stability and specificity of antisense oligonucleotides and it would have been obvious to one of ordinary skill in the art to incorporate these moieties into the antisense oligonucleotide made to target exon 53.

Application/Control Number: 13/271,080                                    Page 9
Art Unit: 1635

It would have further been obvious for one of ordinary skill in the art to conjugate

cell penetrating peptides and chemically linking with polyethylene glycol chains as

taught by Manoharan et al. (see paragraphs 0027 and 0165).  Manoharan et al. teach

antisense oligonucleotides comprising peptide conjugates such as tat enhanced the

overall efficacy of said oligonucleotide and one of ordinary skill in the art would have

expected to be capable of making such conjugates as demonstrated by Manoharan et

al.

Thus in the absence of evidence to the contrary, the invention as a whole would

have been *prima facie* obvious to one of ordinary skill in the art at the time the invention

was made.

### Conclusion

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Kimberly Chong whose telephone number is 571-272-

3111.  The examiner can normally be reached Monday thru Friday between 7-4 pm.

If attempts to reach the examiner by telephone are unsuccessful please contact

the SPE for 1635 Heather Calamita at 571-272-2876. The fax phone number for the

organization where this application or proceeding is assigned is 571-273-8300.

Patent applicants with problems or questions regarding electronic images that

can be viewed in the Patent Application Information Retrieval system (PAIR) can now

contact the USPTO's Patent Electronic Business Center (Patent EBC) for assistance.

Representatives are available to answer your questions daily from 6 am to midnight

Application/Control Number: 13/271,080                                        Page 10
Art Unit: 1635

(EST). The toll free number is (866) 217-9197. When calling please have your

application serial or patent number, the type of document you are having an image

problem with, the number of pages and the specific nature of the problem.  The Patent

Electronic Business Center will notify applicants of the resolution of the problem within

5-7 business days. Applicants can also check PAIR to confirm that the problem has

been corrected.  The USPTO's Patent Electronic Business Center is a complete service

center supporting all patent business on the Internet. The USPTO's PAIR system

provides Internet-based access to patent application status and history information. It

also enables applicants to view the scanned images of their own application file

folder(s) as well as general patent information available to the public. For more

information about the PAIR system, see http://pair-direct.uspto.gov.

        For all other customer support, please call the USPTO Call Center (UCC) at 800-

786-9199.


/Kimberly Chong/
Primary Examiner
Art Unit 1635

SRPT-VYDS-0003711

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/271,080 | 10/11/2011 | Stephen Donald Wilton | 40239-712.311 | 7347 |

21971          7590          03/14/2012
WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CA 94304-1050

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1635 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 03/14/2012 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

SRPT-VYDS-0003712

| **Office Action Summary** | Application No.<br>13/271,080 | Applicant(s)<br>WILTON ET AL. |
|---|---|---|
| | Examiner<br>KIMBERLY CHONG | Art Unit<br>1635 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>*1*</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1) ☒ Responsive to communication(s) filed on <u>*11 October 2011*</u>.

2a) ☐ This action is **FINAL**.   2b) ☒ This action is non-final.

3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims

5) ☒ Claim(s) <u>*15-44*</u> is/are pending in the application.

    5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6) ☐ Claim(s) _____ is/are allowed.

7) ☐ Claim(s) _____ is/are rejected.

8) ☐ Claim(s) _____ is/are objected to.

9) ☒ Claim(s) <u>*15-44*</u> are subject to restriction and/or election requirement.

## Application Papers

10) ☐ The specification is objected to by the Examiner.

11) ☐ The drawing(s) filed on _____ is/are: a) ☐ accepted or b) ☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

12) ☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

## Priority under 35 U.S.C. § 119

13) ☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

a) ☐ All  b) ☐ Some * c) ☐ None of:

    1. ☐ Certified copies of the priority documents have been received.

    2. ☐ Certified copies of the priority documents have been received in Application No. _____.

    3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

### Attachment(s)

1) ☐ Notice of References Cited (PTO-892)

2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3) ☐ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date _____.

4) ☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____.

5) ☐ Notice of Informal Patent Application

6) ☐ Other: _____.

SRPT-VYDS-0003713

Application/Control Number: 13/271,080                                        Page 2
Art Unit: 1635

## DETAILED ACTION

### *Election/Restrictions*

Restriction to one of the following inventions is required under 35 U.S.C. 121:

I.     Claims 15-24, drawn to an isolated antisense oligonucleotide comprising base positions 6-15 of SEQ ID No. 193 wherein the oligonucleotide specifically hybridizes to exon 53 target region, classifiable in class 536, subclass 24.5.

II.    Claims 25-34 and 37-44, drawn to a method of inducing exon-skipping of dystrophin exon 53 comprising introducing a nucleic acid molecule wherein the molecule is an isolated antisense oligonucleotide comprising base positions 6-15 of SEQ ID No. 193, classifiable in class 514, subclass 44.

III.   Claim 35, drawn to an isolated antisense oligonucleotide comprising base positions 7-16 of SEQ ID No. 194 wherein the oligonucleotide specifically hybridizes to exon 53 target region, classifiable in class 536, subclass 24.5

IV.    Claim 36, drawn to a method of inducing exon-skipping of dystrophin exon 53 comprising introducing a nucleic acid molecule wherein the molecule is an isolated antisense oligonucleotide comprising base positions 7-16 of SEQ ID No. 194, classifiable in class 514, subclass 44.

The inventions are distinct, each from the other because of the following reasons:

SRPT-VYDS-0003714

Application/Control Number: 13/271,080                                    Page 3
Art Unit: 1635

Inventions of Groups I and II are related as product and process of use.  The
inventions can be shown to be distinct if either or both of the following can be shown: (1)
the process for using the product as claimed can be practiced with another materially
different product or (2) the product as claimed can be used in a materially different
process of using that product. See MPEP § 806.05(h).  In the instant case, the product
antisense oligonucleotide can be used in a materially different process, such as a probe
in a hybridization assay. Furthermore restriction is proper because the subject matter is
divergent and non-coextensive and a search for one would not necessarily reveal art
against the other.  It is therefore a burden to search these inventions in a single
application.

Inventions of Groups I and III are unrelated.  Inventions are unrelated if it can be
shown that they are not disclosed as capable of use together and they have different
designs, modes of operation, and effects (MPEP § 802.01 and § 806.06).  In the instant
case, the different inventions have different designs as they are each unique
oligonucleotide sequences that bind to different regions of a target gene and thus have
different modes of operation and effects. Furthermore restriction is proper because the
subject matter is divergent and non-coextensive and a search for one would not
necessarily reveal art against the other.  It is therefore a burden to search these
inventions in a single application.

Inventions of Groups I and IV are directed to an unrelated product and process.
Product and process inventions are unrelated if it can be shown that the product cannot
be used in, or made by, the process.  See MPEP § 802.01 and § 806.06.  In the instant

Application/Control Number: 13/271,080                                    Page 4
Art Unit: 1635

case, the isolated antisense oligonucleotide of Group I is materially different product

than the oligonucleotide described in the method of Group IV and is not disclosed as

capable of use in the claimed method. Furthermore restriction is proper because the

subject matter is divergent and non-coextensive and a search for one would not

necessarily reveal art against the other.  It is therefore a burden to search these

inventions in a single application.


Inventions of Groups II and III are directed to an unrelated product and process.

Product and process inventions are unrelated if it can be shown that the product cannot

be used in, or made by, the process.  See MPEP § 802.01 and § 806.06.  In the instant

case, the isolated antisense oligonucleotide of Group III is materially different product

than the oligonucleotide described in the method of Group II and is not disclosed as

capable of use in the claimed method. Furthermore restriction is proper because the

subject matter is divergent and non-coextensive and a search for one would not

necessarily reveal art against the other.  It is therefore a burden to search these

inventions in a single application.

Inventions of Groups II and IV are unrelated.  Inventions are unrelated if it can be

shown that they are not disclosed as capable of use together and they have different

designs, modes of operation, and effects (MPEP § 802.01 and § 806.06).  In the instant

case, the different inventions have different designs as they each use a different and

unique oligonucleotide sequences that bind to different regions of a target gene and

thus have different modes of operation and effects. Furthermore restriction is proper

Application/Control Number: 13/271,080                                      Page 5
Art Unit: 1635

because the subject matter is divergent and non-coextensive and a search for one

would not necessarily reveal art against the other.  It is therefore a burden to search

these inventions in a single application.

Inventions of Groups III and IV are related as product and process of use.  The

inventions can be shown to be distinct if either or both of the following can be shown: (1)

the process for using the product as claimed can be practiced with another materially

different product or (2) the product as claimed can be used in a materially different

process of using that product. See MPEP § 806.05(h).  In the instant case, the product

antisense oligonucleotide can be used in a materially different process, such as a probe

in a hybridization assay. Furthermore restriction is proper because the subject matter is

divergent and non-coextensive and a search for one would not necessarily reveal art

against the other.  It is therefore a burden to search these inventions in a single

application.

Restriction for examination purposes as indicated is proper because all these

inventions listed in this action are independent or distinct for the reasons given above

and there would be a serious search and examination burden if restriction were not

required because one or more of the following reasons apply:

(a) the inventions have acquired a separate status in the art in view of their

different classification;

Application/Control Number: 13/271,080                                          Page 6
Art Unit: 1635

(b) the inventions have acquired a separate status in the art due to their

recognized divergent subject matter;

(c) the inventions require a different field of search (for example, searching

different classes/subclasses or electronic resources, or employing different

search queries);

(d) the prior art applicable to one invention would not likely be applicable to

another invention;

(e) the inventions are likely to raise different non-prior art issues under 35 U.S.C.

101 and/or 35 U.S.C. 112, first paragraph.

**Applicant is advised that the reply to this requirement to be complete <u>must</u>**

**include (i) an election of a invention to be examined** even though the requirement

may be traversed (37 CFR 1.143) **and (ii) <u>identification of the claims encompassing</u>**

**<u>the elected invention</u>**.

The election of an invention may be made with or without traverse. To reserve a

right to petition, the election must be made with traverse. If the reply does not distinctly

and specifically point out supposed errors in the restriction requirement, the election

shall be treated as an election without traverse. Traversal must be presented at the time

of election in order to be considered timely.  Failure to timely traverse the requirement

will result in the loss of right to petition under 37 CFR 1.144.

If claims are added after the election, applicant must indicate which of these

claims are readable upon the elected invention.

Application/Control Number: 13/271,080                                    Page 7
Art Unit: 1635

Should applicant traverse on the ground that the inventions are not patentably

distinct, applicant should submit evidence or identify such evidence now of record

showing the inventions to be obvious variants or clearly admit on the record that this is

the case. In either instance, if the examiner finds one of the inventions unpatentable

over the prior art, the evidence or admission may be used in a rejection under 35 U.S.C.

103(a) of the other invention.

Applicant is reminded that upon the cancellation of claims to a non-elected

invention, the inventorship must be amended in compliance with 37 CFR 1.48(b) if one

or more of the currently named inventors is no longer an inventor of at least one claim

remaining in the application. Any amendment of inventorship must be accompanied by

a request under 37 CFR 1.48(b) and by the fee required under 37 CFR 1.17(i).


The examiner has required restriction between product and process claims.
Where applicant elects claims directed to the product, and the product claims are
subsequently found allowable, withdrawn process claims that depend from or otherwise
require all the limitations of the allowable product claim will be considered for rejoinder.
All claims directed a nonelected process invention  must require all the limitations of an
allowable product claim for that process invention to be rejoined.
In the event of rejoinder, the requirement for restriction between the product
claims and the rejoined process claims will be withdrawn, and the rejoined process
claims will be fully examined for patentability in accordance with 37 CFR 1.104. Thus, to
be allowable, the rejoined claims must meet all criteria for patentability including the
requirements of 35 U.S.C. 101, 102, 103 and 112. Until all claims to the elected product
are found allowable, an otherwise proper restriction requirement between product
claims and process claims may be maintained. Withdrawn process claims that are not
commensurate in scope with an allowable product claim will not be rejoined. See MPEP
§ 821.04(b). Additionally, in order to retain the right to rejoinder in accordance with the
above policy, applicant is advised that the process claims should be amended during
prosecution to require the limitations of the product claims. **Failure to do so may result
in a loss of the right to rejoinder**. Further, note that the prohibition against double
patenting rejections of 35 U.S.C. 121 does not apply where the restriction requirement
is withdrawn by the examiner before the patent issues. See MPEP § 804.01.

Application/Control Number: 13/271,080                                                Page 8
Art Unit: 1635

### *Conclusion*

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Kimberly Chong whose telephone number is 571-272-3111.  The examiner can normally be reached Monday thru Friday between 7-4 pm.

If attempts to reach the examiner by telephone are unsuccessful please contact the Acting SPE for 1635 Heather Calamita at 571-272-2876.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Patent applicants with problems or questions regarding electronic images that can be viewed in the Patent Application Information Retrieval system (PAIR) can now contact the USPTO's Patent Electronic Business Center (Patent EBC) for assistance. Representatives are available to answer your questions daily from 6 am to midnight (EST). The toll free number is (866) 217-9197. When calling please have your application serial or patent number, the type of document you are having an image problem with, the number of pages and the specific nature of the problem.  The Patent Electronic Business Center will notify applicants of the resolution of the problem within 5-7 business days. Applicants can also check PAIR to confirm that the problem has been corrected.  The USPTO's Patent Electronic Business Center is a complete service center supporting all patent business on the Internet. The USPTO's PAIR system provides Internet-based access to patent application status and history information. It also enables applicants to view the scanned images of their own application file

Application/Control Number: 13/271,080                                      Page 9

Art Unit: 1635

folder(s) as well as general patent information available to the public. For more

information about the PAIR system, see http://pair-direct.uspto.gov.

     For all other customer support, please call the USPTO Call Center (UCC) at 800-

786-9199.

/Kimberly Chong/
Primary Examiner
Art Unit 1635



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| | | |
|---|---|---|
| 959    7590    09/16/2013 | | EXAMINER |
| NELSON MULLINS RILEY & SCARBOROUGH LLP | | VIVLEMORE, TRACY ANN |
| FLOOR 30, SUITE 3000 | | |
| ONE POST OFFICE SQUARE | ART UNIT | PAPER NUMBER |
| BOSTON, MA 02109 | 1635 | |

DATE MAILED: 09/16/2013

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/509,331 | 07/09/2012 | Stephen Donald Wilton | AVN-015US | 4484 |

TITLE OF INVENTION: ANTISENSE MOLECULES AND METHODS FOR TREATING PATHOLOGIES

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $1780 | $300 | $0 | $2080 | 12/16/2013 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED.  THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT.  SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN <u>THREE MONTHS</u> FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED.   <u>THIS STATUTORY PERIOD CANNOT BE EXTENDED.</u>   SEE 35 U.S.C. 151.  THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION.   IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

Page 1 of 4

PTOL-85 (Rev. 02/11)

SRPT-VYDS-0003722

**PART B - FEE(S) TRANSMITTAL**

**Complete and send this form, together with applicable fee(s), to:** <u>Mail</u>    Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
or <u>Fax</u>    (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

959        7590        09/16/2013
NELSON MULLINS RILEY & SCARBOROUGH LLP
FLOOR 30, SUITE 3000
ONE POST OFFICE SQUARE
BOSTON, MA 02109

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/509,331 | 07/09/2012 | Stephen Donald Wilton | AVN-015US | 4484 |

TITLE OF INVENTION: ANTISENSE MOLECULES AND METHODS FOR TREATING PATHOLOGIES

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $1780 | $300 | $0 | $2080 | 12/16/2013 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| VIVLEMORE, TRACY ANN | 1635 | 514-04400A |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).
☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.
☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list
(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE        (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual  ☐ Corporation or other private group entity  ☐ Government

4a. The following fee(s) are submitted:
☐ Issue Fee
☐ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): (**Please first reapply any previously paid issue fee shown above**)
☐ A check is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

Page 2 of 4

PTOL-85 (Rev. 02/11)

SRPT-VYDS-0003723

5. **Change in Entity Status** (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

NOTE: Absent a valid certification of Micro Entity Status (see form PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

☐ Applicant asserting small entity status. See 37 CFR 1.27

NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

☐ Applicant changing to regular undiscounted fee status.

NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____    Date _____

Typed or printed name _____    Registration No. _____

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 02/11) Approved for use through 08/31/2013.    OMB 0651-0033    U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

SRPT-VYDS-0003724



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/509,331 | 07/09/2012 | Stephen Donald Wilton | AVN-015US | 4484 |

959        7590        09/16/2013
NELSON MULLINS RILEY & SCARBOROUGH LLP
FLOOR 30, SUITE 3000
ONE POST OFFICE SQUARE
BOSTON, MA 02109

| EXAMINER |
|---|
| VIVLEMORE, TRACY ANN |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1635 | |

DATE MAILED: 09/16/2013

### Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment to date is 0 day(s). If the issue fee is paid on the date that is three months after the mailing date of this notice and the patent issues on the Tuesday before the date that is 28 weeks (six and a half months) after the mailing date of this notice, the Patent Term Adjustment will be 0 day(s).

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

SRPT-VYDS-0003725

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

SRPT-VYDS-0003726

| ***Notice of Allowability*** | Application No. 13/509,331 | Applicant(s) WILTON ET AL. | |
|---|---|---|---|
| | Examiner Tracy Vivlemore | Art Unit 1635 | AIA (First Inventor to File) Status No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *the supplemental response of 8/30/13*.

   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on_____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☒ The allowed claim(s) is/are *15-18 and 21-62*. As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov .

4. ☒ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

   **Certified copies:**

   a) ☒ All    b) ☐ Some    *c) ☐ None of the:

   1. ☒ Certified copies of the priority documents have been received.

   2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

   3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

   * Certified copies not received: _____.

   Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

   ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____.

   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)

2. ☒ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date *3 documents*

3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

4. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____ .

5. ☐ Examiner's Amendment/Comment

6. ☐ Examiner's Statement of Reasons for Allowance

7. ☐ Other _____ .

/Tracy Vivlemore/
Primary Examiner, Art Unit 1635

SRPT-VYDS-0003727

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/509,331 | 07/09/2012 | Stephen Donald Wilton | 25220US01 | 4484 |

23446          7590          01/28/2013
MCANDREWS HELD & MALLOY, LTD
500 WEST MADISON STREET
SUITE 3400
CHICAGO, IL 60661

| EXAMINER |
|---|
| VIVLEMORE, TRACY ANN |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1635 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 01/28/2013 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

mhmpto@mcandrews-ip.com

SRPT-VYDS-0003728

| *Office Action Summary* | Application No. | Applicant(s) |
|---|---|---|
| | 13/509,331 | WILTON ET AL. |
| | Examiner | Art Unit |
| | Tracy Vivlemore | 1635 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE *3* MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☒ Responsive to communication(s) filed on *11 May 2012*.

2a) ☐ This action is **FINAL**.    2b) ☒ This action is non-final.

3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

5) ☒ Claim(s) *1-3 and 13-21* is/are pending in the application.

  5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6) ☒ Claim(s) *15* is/are allowed.

7) ☒ Claim(s) *1-3,13,14 and 16-21* is/are rejected.

8) ☐ Claim(s) _____ is/are objected to.

9) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

\* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

**Application Papers**

10) ☐ The specification is objected to by the Examiner.

11) ☐ The drawing(s) filed on _____ is/are: a) ☐ accepted or b) ☐ objected to by the Examiner.

  Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

  Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

  a) ☐ All  b) ☐ Some * c) ☐ None of:

  1. ☐ Certified copies of the priority documents have been received.

  2. ☐ Certified copies of the priority documents have been received in Application No. _____.

  3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

  \* See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)

2) ☒ Information Disclosure Statement(s) (PTO/SB/08)
  Paper No(s)/Mail Date *2 documents*.

3) ☐ Interview Summary (PTO-413)
  Paper No(s)/Mail Date. _____ .

4) ☐ Other: _____.

SRPT-VYDS-0003729

Application/Control Number: 13/509,331                                          Page 2
Art Unit: 1635

## DETAILED ACTION

### *Claim Rejections - 35 USC § 112*

The following is a quotation of 35 U.S.C. 112(b):

(B)  CONCLUSION.—The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention.

The following is a quotation of 35 U.S.C. 112 (pre-AIA), second paragraph:

The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

The following is a quotation of the fourth paragraph of 35 U.S.C. 112:

Subject to the [fifth paragraph of 35 U.S.C. 112], a claim in dependent form shall contain a reference to a claim previously set forth and then specify a further limitation of the subject matter claimed. A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers.

Claim 2 is rejected under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-AIA), second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which the inventor or a joint inventor, or for pre-AIA the applicant regards as the invention. Claim 2 recites an antisense capable of inducing skipping in every one of many different exons, but the sequences of claim 1 are individually only complementary to a single one of these exons. For the purposes of applying prior art, this claim will be interpreted as if the claim is in the alternative (i.e., that the list of exons concludes with "or" rather than "and").

Claims 16 and 20 are rejected under 35 U.S.C. 112, 4th paragraph, as being of improper dependent form for failing to further limit the subject matter of the claim upon

SRPT-VYDS-0003730

Application/Control Number: 13/509,331                                                    Page 3
Art Unit: 1635

which it depends, or for failing to include all the limitations of the claim upon which it

depends.  Claim 16 recites that the claimed antisense sequences are capable of binding

to a target sequence, which does not further limit because it simply recites an inherent

property of these sequences. Claim 20 is not further limiting because it simply recites an

intended use of the claimed sequences. Applicant may cancel the claim(s), amend the

claim(s) to place the claim(s) in proper dependent form, rewrite the claim(s) in

independent form, or present a sufficient showing that the dependent claim(s) complies

with the statutory requirements.


### *Claim Rejections - 35 USC § 102*

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that

form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(e) the invention was described in (1) an application for patent, published under section 122(b), by another filed in the United States before the invention by the applicant for patent or (2) a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent, except that an international application filed under the treaty defined in section 351(a) shall have the effects for purposes of this subsection of an application filed in the United States only if the international application designated the United States and was published under Article 21(2) of such treaty in the English language.

Claims 1, 2 and 16-21 are rejected under 35 U.S.C. 102(e) as being anticipated

by Popplewell et al. (US 2010/0168212).

Popplewell et al. disclose oligomers capable of inducing exon skipping. At

paragraph 12 Popplewell et al. disclose SEQ ID NO: 3, capable of inducing skipping of

exon 44. In this sequence, X can be U or T, which makes it identical to instantly claimed

SEQ ID NO: 10. Popplewell et al. disclose at paragraph 48 that the compounds of their

invention can be used to treat DMD and further disclose at paragraph 42 that these

Application/Control Number: 13/509,331                                Page 4

Art Unit: 1635

oligomers can be used in combination with other oligomers targeted to the same or

different exons. Popplewell et al. disclose at paragraph 35 that the oligomers can be

formulated as pharmaceutical compositions and at paragraph 50 that the oligomer can

be present in a kit. A phosphorodiamidate morpholino oligomer having this sequence

(SEQ ID NO: 15, designated as H44B30/2) was found to induce exon skipping in 80%

of amplicons when administered at 500 nM, see table 1.


### *Claim Rejections - 35 USC § 103*

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

This application currently names joint inventors.  In considering patentability of

the claims under 35 U.S.C. 103(a), the examiner presumes that the subject matter of

the various claims was commonly owned at the time any inventions covered therein

were made absent any evidence to the contrary.  Applicant is advised of the obligation

under 37 CFR 1.56 to point out the inventor and invention dates of each claim that was

not commonly owned at the time a later invention was made in order for the examiner to

consider the applicability of 35 U.S.C. 103(c) and potential 35 U.S.C. 102(e), (f) or (g)

prior art under 35 U.S.C. 103(a).

Claims 1-3, 13 and 14 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Popplewell et al. (US 2010/0168212) and Wilton et al. (WO

2006/000057, cited on IDS).

Application/Control Number: 13/509,331                                                    Page 5
Art Unit: 1635

The teachings of Popplewell et al. are described in the previous rejection. Popplewell et al. teach that their oligomers can be used in combination with oligomers targeted to the same or different exons, but do not specifically teach a combination with one of the sequences listed in claim 14.

Wilton et al. teach a sequence, designated as H12A(+52+75), which is identical with instant SEQ ID NO: 2. At page 43 and figure 8, Wilton et al. teach that this sequence induces substantial skipping of exon 12 at a concentration of 5nM. Wilton et al. further teach a sequence, designated as H3A(+30+60), which is identical to instant SEQ ID NO: 31. At page 40 Wilton et al. teach that this sequence induces substantial skipping of exon 3 at concentrations ranging from 20-600 nM. At page 6 Wilton et al. teach that oligonucleotides can be combined to target more than one exon.

It would have been obvious to one of ordinary skill in the art at the time the invention was made to combine the sequences of Popplewell et al. and Wilton et al. into a single composition. One of ordinary skill would have reason to do so and would expect success because each of the sequence is taught individually to induce exon skipping. Furthermore, Section 2144.06 of the MPEP states the following:

"It is prima facie obvious to combine two compositions each of which is taught by the prior art to be useful for the same purpose, in order to form a third composition to be used for the very same purpose.... [T]he idea of combining them flows logically from their having been individually taught in the prior art." In re Kerkhoven, 626 F.2d 846, 850,205 USPQ 1069, 1072 (CCPA 1980) (citations omitted).

### *Allowable Subject Matter*

Claim 15 is allowed.

Application/Control Number: 13/509,331                                      Page 6
Art Unit: 1635

## *Conclusion*

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Tracy Vivlemore whose telephone number is 571-272-2914.  The examiner can normally be reached on Mon-Fri 8:30-5.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Heather Calamita, can be reached on 571-272-2876.  The central FAX Number is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system.  Status information for published applications may be obtained from either Private PAIR or Public PAIR.  Status information for unpublished applications is available through Private PAIR only.  For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


Tracy Vivlemore
Primary Examiner
Art Unit 1635


/Tracy Vivlemore/
Primary Examiner, Art Unit 1635

Uɴɪᴛᴇᴅ Sᴛᴀᴛᴇs Pᴀᴛᴇɴᴛ ᴀɴᴅ Tʀᴀᴅᴇᴍᴀʀᴋ Oꜰꜰɪᴄᴇ

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/727,415 | 12/26/2012 | Stephen Donald Wilton | AVN-008CN12 | 2823 |

959        7590        02/06/2013
NELSON MULLINS RILEY & SCARBOROUGH LLP
FLOOR 30, SUITE 3000
ONE POST OFFICE SQUARE
BOSTON, MA 02109

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1635 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 02/06/2013 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

SRPT-VYDS-0003735

|  | Application No. | Applicant(s) |  |
|---|---|---|---|
| **Office Action Summary** | 13/727,415 | WILTON ET AL. |  |
|  | **Examiner** | **Art Unit** |  |
|  | KIMBERLY CHONG | 1635 |  |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>1</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1)☒ Responsive to communication(s) filed on <u>26 December 2012</u>.

2a)☐ This action is **FINAL.**    2b)☒ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____ ; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims

5)☒ Claim(s) <u>1-24</u> is/are pending in the application.

    5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6)☐ Claim(s) _____ is/are allowed.

7)☐ Claim(s) _____ is/are rejected.

8)☐ Claim(s) _____ is/are objected to.

9)☒ Claim(s) <u>1-24</u> are subject to restriction and/or election requirement.

\* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

## Application Papers

10)☐ The specification is objected to by the Examiner.

11)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

## Priority under 35 U.S.C. § 119

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All  b)☐ Some * c)☐ None of:

      1.☐ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    \* See the attached detailed Office action for a list of the certified copies not received.

## Attachment(s)

1)☐ Notice of References Cited (PTO-892)

2)☐ Information Disclosure Statement(s) (PTO/SB/08) Paper No(s)/Mail Date _____.

3)☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____ .

4)☐ Other: _____.

SRPT-VYDS-0003736

Application/Control Number: 13/727,415                                             Page 2
Art Unit: 1635

## DETAILED ACTION

### *Election/Restrictions*

Restriction to one of the following inventions is required under 35 U.S.C. 121:

I.      Claims 1-7, 9-24, drawn to an antisense molecule or a combination of two
        or more antisense molecules capable of binding to a selected target site to
        induce exon skipping in the dystrophin gene set forth in SEQ ID Nos. 1-
        202, wherein the exons are as recited in claim 2, classifiable in class 536,
        subclass 24.5.  This group is subject to a further restriction of antisense
        sequences.

II.     Claims 8, drawn to a method of treating muscular dystrophy in a patient
        comprising administering a composition comprising an antisense molecule
        having SEQ ID Nos. 1 to 202, classifiable in class 514, subclass 44.  This
        group is subject to a further restriction of antisense sequences.


The inventions are distinct, each from the other because of the following reasons:.

        Inventions Group I and Group II are related as product and process of use.  The
inventions can be shown to be distinct if either or both of the following can be shown: (1)
the process for using the product as claimed can be practiced with another materially
different product or (2) the product as claimed can be used in a materially different
process of using that product. See MPEP § 806.05(h).  In the instant case the antisense
oligonucleotide can be used in a materially different process such as in situ
hybridization.  Furthermore restriction is proper because the subject matter is divergent

SRPT-VYDS-0003737

Application/Control Number: 13/727,415                                        Page 3
Art Unit: 1635

and non-coextensive and a search for one would not necessarily reveal art against the

other.  It is therefore a burden to search these inventions in a single application.


Restriction for examination purposes as indicated is proper because all these

inventions listed in this action are independent or distinct for the reasons given above

and there would be a serious search and examination burden if restriction were not

required because one or more of the following reasons apply:

(a) the inventions have acquired a separate status in the art in view of their

different classification;

(b) the inventions have acquired a separate status in the art due to their

recognized divergent subject matter;

(c) the inventions require a different field of search (for example, searching

different classes/subclasses or electronic resources, or employing different

search queries);

(d) the prior art applicable to one invention would not likely be applicable to

another invention;

(e) the inventions are likely to raise different non-prior art issues under 35 U.S.C.

101 and/or 35 U.S.C. 112, first paragraph.

**Applicant is advised that the reply to this requirement to be complete <u>must</u>**

**include (i) an election of a invention to be examined** even though the requirement

may be traversed (37 CFR 1.143) **and (ii) <u>identification of the claims encompassing</u>**

**<u>the elected invention</u>**.

Application/Control Number: 13/727,415                                    Page 4
Art Unit: 1635

     The election of an invention may be made with or without traverse. To reserve a right to petition, the election must be made with traverse. If the reply does not distinctly and specifically point out supposed errors in the restriction requirement, the election shall be treated as an election without traverse. Traversal must be presented at the time of election in order to be considered timely.  Failure to timely traverse the requirement will result in the loss of right to petition under 37 CFR 1.144.

     If claims are added after the election, applicant must indicate which of these claims are readable upon the elected invention.

     Should applicant traverse on the ground that the inventions are not patentably distinct, applicant should submit evidence or identify such evidence now of record showing the inventions to be obvious variants or clearly admit on the record that this is the case. In either instance, if the examiner finds one of the inventions unpatentable over the prior art, the evidence or admission may be used in a rejection under 35 U.S.C. 103(a) of the other invention.

     Applicant is reminded that upon the cancellation of claims to a non-elected invention, the inventorship must be amended in compliance with 37 CFR 1.48(b) if one or more of the currently named inventors is no longer an inventor of at least one claim remaining in the application. Any amendment of inventorship must be accompanied by a request under 37 CFR 1.48(b) and by the fee required under 37 CFR 1.17(i).

     Furthermore, should applicants elect to prosecute groups I and II, these groups are subject to further restriction as follows.  Claims 1, 2, 4, 6, 8, and 15 are subject to an

Application/Control Number: 13/727,415                                    Page 5
Art Unit: 1635

additional restriction since it is not considered to be a proper genus/Markush.  See

MPEP 803.02 – PRACTICE RE MARKUSH-TYPE CLAIMS – if the members of the

Markush group are sufficiently few in number or so closely related that a search and

examination of the entire claim can be made without serious burden, the examiner must

examine all the members of the Markush group in the claims on the merits, even though

they are directed to independent and distinct inventions.  In such a case, the examiner

will not follow the procedure described below and will not require restriction.  Since the

decisions in In re Weber, 580 F.2d 455, 198 USPQ 300 (CCPA 1980); and In re Haas,

580 F.2d 461, 198 USPQ 334 (CCPA 1978), it is improper for the Office to refuse to

examine that which applicants regard as their invention, unless the subject matter in a

claim lacks unity of invention.  In re Harnish, 631 F.2d 716, 206 USPQ 300 (CCPA

1980); and Ex parte Hozumi, 3 USPQ2d 1059 (Bd. Pat. App. & Int. 1984).  Broadly,

unity of invention exists where compounds included within a Markush group (1) share a

common utility, and (2) share a substantial structure feature disclosed as being

essential to that utility.

Claims 1, 4, 6, 8, and 15 specifically claim antisense oligonucleotides targeted to

different exons and different exon regions.  For example, SEQ ID Nos. 41-45 are

targeted to exon 10 whereas SEQ ID Nos. 46-49 are targeted to exon 11 (see table 1).

Each of the antisense sequence are considered to be unrelated, since each sequence

claimed is structurally and functionally independent and distinct and targeted to a

different exon and/or a different exon region.  Furthermore, a search of more than two

(2) of the antisense sequences claimed in claims 1, 2, 4, 6, 8, and 15 presents an

SRPT-VYDS-0003740

Application/Control Number: 13/727,415                                              Page 6
Art Unit: 1635

undue burden on the Patent and Trademark Office due to the complex nature of the

search and corresponding examination of more than two (2) of the claimed antisense

sequences.  In view of the foregoing, two (2) antisense sequences are considered to be

a reasonable number of sequences for examination.  Accordingly, applicants are

required to elect a total of two (2) antisense sequences from 1, 2, 4, 6, 8, and 15.

**Note that this is not a species election.**


Claim 2 specifically claim different exons.  Each exon is considered to be

unrelated, since each exon claimed is structurally and functionally independent and

distinct and is targeted and inhibited by a distinct antisense oligonucleotide.

Furthermore, a search of more than one (1) of the exons claimed in claim 2presents an

undue burden on the Patent and Trademark Office due to the complex nature of the

search and corresponding examination of more than one (1) of the claimed exons.  In

view of the foregoing, one (1) exon is considered to be a reasonable number of

sequences for examination.  Accordingly, applicants are required to elect a total of one

(1) exon from claim 2.  **Election of this exon must be commensurate in scope to the**

**antisense sequence elected above**.

       **Note that this is not a species election.**


The examiner has required restriction between product and process claims.
Where applicant elects claims directed to the product, and the product claims are
subsequently found allowable, withdrawn process claims that depend from or otherwise
require all the limitations of the allowable product claim will be considered for rejoinder.

SRPT-VYDS-0003741

Application/Control Number: 13/727,415                                          Page 7
Art Unit: 1635

All claims directed a nonelected process invention must require all the limitations of an allowable product claim for that process invention to be rejoined.

In the event of rejoinder, the requirement for restriction between the product claims and the rejoined process claims will be withdrawn, and the rejoined process claims will be fully examined for patentability in accordance with 37 CFR 1.104. Thus, to be allowable, the rejoined claims must meet all criteria for patentability including the requirements of 35 U.S.C. 101, 102, 103 and 112. Until all claims to the elected product are found allowable, an otherwise proper restriction requirement between product claims and process claims may be maintained. Withdrawn process claims that are not commensurate in scope with an allowable product claim will not be rejoined. See MPEP § 821.04(b). Additionally, in order to retain the right to rejoinder in accordance with the above policy, applicant is advised that the process claims should be amended during prosecution to require the limitations of the product claims. **Failure to do so may result in a loss of the right to rejoinder**. Further, note that the prohibition against double patenting rejections of 35 U.S.C. 121 does not apply where the restriction requirement is withdrawn by the examiner before the patent issues. See MPEP § 804.01.

### Conclusion

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Kimberly Chong whose telephone number is 571-272-3111.  The examiner can normally be reached Monday thru Friday between 9-5 pm.

If attempts to reach the examiner by telephone are unsuccessful please contact the Acting SPE for 1635 Heather Calamita at 571-272-2876.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Patent applicants with problems or questions regarding electronic images that can be viewed in the Patent Application Information Retrieval system (PAIR) can now contact the USPTO's Patent Electronic Business Center (Patent EBC) for assistance. Representatives are available to answer your questions daily from 6 am to midnight (EST). The toll free number is (866) 217-9197. When calling please have your application serial or patent number, the type of document you are having an image

SRPT-VYDS-0003742

Application/Control Number: 13/727,415                                    Page 8
Art Unit: 1635

problem with, the number of pages and the specific nature of the problem.  The Patent

Electronic Business Center will notify applicants of the resolution of the problem within

5-7 business days. Applicants can also check PAIR to confirm that the problem has

been corrected.  The USPTO's Patent Electronic Business Center is a complete service

center supporting all patent business on the Internet. The USPTO's PAIR system

provides Internet-based access to patent application status and history information. It

also enables applicants to view the scanned images of their own application file

folder(s) as well as general patent information available to the public. For more

information about the PAIR system, see http://pair-direct.uspto.gov.

        For all other customer support, please call the USPTO Call Center (UCC) at 800-

786-9199.

/Kimberly Chong/
Primary Examiner
Art Unit 1635



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| | | |
|---|---|---|
| 123147      7590      03/16/2015 | | EXAMINER |
| Nelson Mullins Riley & Scarborough LLP/Sarepta | | CHONG, KIMBERLY |
| One Post Office Square | | |
| Boston, MA 02109 | ART UNIT | PAPER NUMBER |
| | 1674 | |

DATE MAILED: 03/16/2015

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/741,150 | 01/14/2013 | Stephen Donald WILTON | AVN-008CN13RCE | 3931 |

TITLE OF INVENTION: ANTISENSE OLIGONUCLEOTIDES FOR INDUCING EXON SKIPPING AND METHODS OF USE THEREOF

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $480 | $0 | $0 | $480 | 06/16/2015 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED.** THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED.** SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

Page 1 of 3

PTOL-85 (Rev. 02/11)

SRPT-VYDS-0003744

## PART B - FEE(S) TRANSMITTAL

**Complete and send this form, together with applicable fee(s), to:** <u>Mail</u>    Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
**or** <u>Fax</u>    (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

| | | |
|---|---|---|
| 123147 | 7590 | 03/16/2015 |

Nelson Mullins Riley & Scarborough LLP/Sarepta
One Post Office Square
Boston, MA 02109

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

| |
|---|
| _____ (Depositor's name) |
| _____ (Signature) |
| _____ (Date) |

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/741,150 | 01/14/2013 | Stephen Donald WILTON | AVN-008CN13RCE | 3931 |

TITLE OF INVENTION: ANTISENSE OLIGONUCLEOTIDES FOR INDUCING EXON SKIPPING AND METHODS OF USE THEREOF

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $480 | $0 | $0 | $480 | 06/16/2015 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| CHONG, KIMBERLY | 1674 | 536-024500 |

**1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).**

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

**2. For printing on the patent front page, list**

(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____
2 _____
3 _____

**3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT** (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE        (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual ☐ Corporation or other private group entity ☐ Government

**4a. The following fee(s) are submitted:**
☐ Issue Fee
☐ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies _____

**4b. Payment of Fee(s): (Please first reapply any previously paid issue fee shown above)**
☐ A check is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☐ The director is hereby authorized to charge the required fee(s), any deficiency, or credits any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

**5. Change in Entity Status** (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

☐ Applicant asserting small entity status. See 37 CFR 1.27

☐ Applicant changing to regular undiscounted fee status.

<u>NOTE:</u> Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

<u>NOTE:</u> If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

<u>NOTE:</u> Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____        Date _____

Typed or printed name _____        Registration No. _____

Page 2 of 3

SRPT-VYDS-0003745



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/741,150 | 01/14/2013 | Stephen Donald WILTON | AVN-008CN13RCE | 3931 |

123147    7590    03/16/2015

Nelson Mullins Riley & Scarborough LLP/Sarepta
One Post Office Square
Boston, MA 02109

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1674 | |

DATE MAILED: 03/16/2015

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
### (Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

SRPT-VYDS-0003746

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

SRPT-VYDS-0003747

| *Notice of Allowability* | Application No. 13/741,150 | Applicant(s) WILTON ET AL. | |
|---|---|---|---|
| | Examiner KIMBERLY CHONG | Art Unit 1674 | AIA (First Inventor to File) Status No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to _12/18/2014_.

    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on_____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☒ The allowed claim(s) is/are _15,18-33,35-83 and 100-108_. As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov .

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    **Certified copies:**

    a) ☐ All    b) ☐ Some    *c) ☐ None of the:

      1. ☐ Certified copies of the priority documents have been received.

      2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

      3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    * Certified copies not received: _____ .

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

    ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____.

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)
2. ☒ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _12/18/14,1/20/15,02/26/15,03/02/15_
3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material
4. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____ .

5. ☐ Examiner's Amendment/Comment
6. ☐ Examiner's Statement of Reasons for Allowance
7. ☐ Other _____.

/KIMBERLY CHONG/
Primary Examiner, Art Unit 1674

SRPT-VYDS-0003748



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

123147     7590     09/18/2014

Nelson Mullins Riley & Scarborough LLP/Sarepta
One Post Office Square
Boston, MA 02109

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1674 | |

DATE MAILED: 09/18/2014

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/741,150 | 01/14/2013 | Stephen Donald WILTON | AVN-008CN13 | 3931 |

TITLE OF INVENTION: ANTISENSE OLIGONUCLEOTIDES FOR INDUCING EXON SKIPPING AND METHODS OF USE THEREOF

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $480 | $0 | $0 | $480 | 12/18/2014 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED.** THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED.** SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

Page 1 of 3

PTOL-85 (Rev. 02/11)

SRPT-VYDS-0003749

**PART B - FEE(S) TRANSMITTAL**

**Complete and send this form, together with applicable fee(s), to:** <u>**Mail**</u>   Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
**or** <u>**Fax**</u>   (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

123147   7590   09/18/2014
Nelson Mullins Riley & Scarborough LLP/Sarepta
One Post Office Square
Boston, MA 02109

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/741,150 | 01/14/2013 | Stephen Donald WILTON | AVN-008CN13 | 3931 |

TITLE OF INVENTION: ANTISENSE OLIGONUCLEOTIDES FOR INDUCING EXON SKIPPING AND METHODS OF USE THEREOF

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $480 | $0 | $0 | $480 | 12/18/2014 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| CHONG, KIMBERLY | 1674 | 514-044000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

❑ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

❑ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list

(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                                    (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) :   ❑ Individual   ❑ Corporation or other private group entity   ❑ Government

4a. The following fee(s) are submitted:

❑ Issue Fee
❑ Publication Fee (No small entity discount permitted)
❑ Advance Order - # of Copies _____

4b. Payment of Fee(s): (**Please first reapply any previously paid issue fee shown above**)

❑ A check is enclosed.
❑ Payment by credit card. Form PTO-2038 is attached.
❑ The Director is hereby authorized to charge the required fee(s), any deficiency, or credits any overpayment to Deposit Account Number _____ (enclose an extra copy of this form).

5. **Change in Entity Status** (from status indicated above)

❑ Applicant certifying micro entity status. See 37 CFR 1.29

❑ Applicant asserting small entity status. See 37 CFR 1.27

❑ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____   Date _____

Typed or printed name _____   Registration No. _____

Page 2 of 3

PTOL-85 Part B (10-13) Approved for use through 10/31/2013.      OMB 0651-0033      U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

SRPT-VYDS-0003750



### UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/741,150 | 01/14/2013 | Stephen Donald WILTON | AVN-008CN13 | 3931 |

123147          7590          09/18/2014

Nelson Mullins Riley & Scarborough LLP/Sarepta
One Post Office Square
Boston, MA 02109

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1674 | |

DATE MAILED: 09/18/2014

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
### (Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

SRPT-VYDS-0003751

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.

2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.

9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

SRPT-VYDS-0003752

| *Notice of Allowability* | Application No. 13/741,150 | Applicant(s) WILTON ET AL. | |
|---|---|---|---|
| | Examiner KIMBERLY CHONG | Art Unit 1674 | AIA (First Inventor to File) Status No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to _07/11/2014_.

    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on_____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☒ The allowed claim(s) is/are _15,18-33,35-83 and 100-108_. As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov .

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    **Certified copies:**

    a) ☐ All  b) ☐ Some  *c) ☐ None of the:

      1. ☐ Certified copies of the priority documents have been received.

      2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

      3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    * Certified copies not received: _____ .

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

    ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail No. _____.

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)

2. ☒ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _07/11/2014_

3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

4. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____ .

5. ☐ Examiner's Amendment/Comment

6. ☐ Examiner's Statement of Reasons for Allowance

7. ☐ Other _____ .

/KIMBERLY CHONG/
Primary Examiner, Art Unit 1674

SRPT-VYDS-0003753

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/741,150 | 01/14/2013 | Stephen Donald WILTON | AVN-008CN13 | 3931 |

959          7590          04/11/2014
NELSON MULLINS RILEY & SCARBOROUGH LLP
FLOOR 30, SUITE 3000
ONE POST OFFICE SQUARE
BOSTON, MA 02109

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1674 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 04/11/2014 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

SRPT-VYDS-0003754

| *Office Action Summary* | Application No. 13/741,150 | Applicant(s) WILTON ET AL. | |
|---|---|---|---|
| | Examiner KIMBERLY CHONG | Art Unit 1674 | AIA (First Inventor to File) Status No |

| -- The MAILING DATE of this communication appears on the cover sheet with the correspondence address -- |
|---|

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) months from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☒ Responsive to communication(s) filed on <u>01/22/2014</u>.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.
2a) ☐ This action is **FINAL**.   2b) ☒ This action is non-final.
3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.
4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5) ☒ Claim(s) <u>15 and 18-102</u> is/are pending in the application.
   5a) Of the above claim(s) _____ is/are withdrawn from consideration.
6) ☒ Claim(s) <u>15,18-33 and 35-102</u> is/are allowed.
7) ☒ Claim(s) <u>34</u> is/are rejected.
8) ☐ Claim(s) _____ is/are objected to.
9) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

**Application Papers**

10) ☐ The specification is objected to by the Examiner.
11) ☒ The drawing(s) filed on <u>01/14/2013</u> is/are: a) ☒ accepted or b) ☐ objected to by the Examiner.
   Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
   Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   **Certified copies:**
   a) ☐ All   b) ☐ Some**  c) ☐ None of the:
      1. ☐ Certified copies of the priority documents have been received.
      2. ☐ Certified copies of the priority documents have been received in Application No. _____.
      3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☐ Notice of References Cited (PTO-892)
2) ☒ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date _____.
3) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____ .
4) ☐ Other: _____.

SRPT-VYDS-0003755

Application/Control Number: 13/741,150                                      Page 2
Art Unit: 1674

The present application is being examined under the pre-AIA first to invent

provisions.

## DETAILED ACTION

### Election/Restrictions

Applicant's election without traverse of Group I in the reply filed on 01/22/2014 is

acknowledged.

### Status of the Application

Claims 15 and 18-102 are pending.  SEQ ID No. 163 as claimed is free of the

prior art searched.


Claims 15, 18-33 and 35-102 are directed to an allowable product. Pursuant to

the procedures set forth in MPEP § 821.04(B), claim 34, directed to the process of

making or using an allowable product, previously withdrawn from consideration as a

result of a restriction requirement, 09/24/2013 is hereby rejoined and fully examined for

patentability under 37 CFR 1.104.

Because all claims previously withdrawn from consideration under 37 CFR 1.142

have been rejoined, **the restriction requirement as set forth in the Office action**

**mailed on 09/24/2013 is hereby withdrawn**. In view of the withdrawal of the restriction

requirement as to the rejoined inventions, applicant(s) are advised that if any claim

presented in a continuation or divisional application is anticipated by, or includes all the

limitations of, a claim that is allowable in the present application, such claim may be

subject to provisional statutory and/or nonstatutory double patenting rejections over the

SRPT-VYDS-0003756

Application/Control Number: 13/741,150                                           Page 3
Art Unit: 1674

claims of the instant application. Once the restriction requirement is withdrawn, the

provisions of 35 U.S.C. 121 are no longer applicable. See *In re Ziegler*, 443 F.2d 1211,

1215, 170 USPQ 129, 131-32 (CCPA 1971). See also MEP § 804.01.

### Information Disclosure Statement

The submission of the Information Disclosure Statements on 06/07/2013 and

01/22/2014 is in compliance with 37 CFR 1.97. The information disclosure statements

have been considered by the examiner and signed copies have been placed in the file.

### Claim Rejections - 35 USC § 112, second paragraph

The following is a quotation of the second paragraph of 35 U.S.C. 112:

The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

Claims 34 is rejected under 35 U.S.C. 112, second paragraph, as being indefinite

for failing to particularly point out and distinctly claim the subject matter which applicant

regards as the invention.

Method claims require an active or positive step that accomplishes the goals for

the method which were stated in the method's preamble. The instant claims lack such a

step and are confusing because the additional method step(s) is not sufficiently set

forth. While minute details are not required in method claims, at least the basic steps

must be recited in a positive, active fashion. See Ex parte Erlich, 3 USPQ2d1011,

p.1011 (Bd. Pat. App. Int. 1986).

Application/Control Number: 13/741,150                                    Page 4
Art Unit: 1674

The instant claim lack such a step and are simply a method of treating Duchenne muscular dystrophy comprising administering the oligonucleotide to a patient in need thereof.  There is no requirement or active or positive step in the claims that the method results in treating (i.e., inducing exon skipping) or preventing or lessening the disease in the subject.  This is indefinite because it leaves the scope of the claim unclear as to whether it is required that the method has any effect at all on the subject.

Amending claim 34, such as by indicating that the administration results in inducing exon skipping or preventing or lessening the disease in the subject, would obviate this rejection.


### Conclusion

Any inquiry concerning this communication or earlier communications from the examiner should be directed to **Kimberly Chong** whose telephone number is **571-272-3111**.  The examiner can normally be reached Monday thru Friday between 9-5 pm.

If attempts to reach the examiner by telephone are unsuccessful please contact the SPE for 1674 Christopher Babic at 571-272-8507. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Patent applicants with problems or questions regarding electronic images that can be viewed in the Patent Application Information Retrieval system (PAIR) can now contact the USPTO's Patent Electronic Business Center (Patent EBC) for assistance. Representatives are available to answer your questions daily from 6 am to midnight (EST). The toll free number is (866) 217-9197. When calling please have your application serial or patent number, the type of document you are having an image problem with, the number of pages and the specific nature of the problem.  The Patent Electronic Business Center will notify applicants of the resolution of the problem within 5-7 business days. Applicants can also check PAIR to confirm that the problem has been corrected.  The USPTO's Patent Electronic Business Center is a complete service

Application/Control Number: 13/741,150                                                Page 5

Art Unit: 1674

center supporting all patent business on the Internet. The USPTO's PAIR system provides Internet-based access to patent application status and history information. It also enables applicants to view the scanned images of their own application file folder(s) as well as general patent information available to the public. For more information about the PAIR system, see http://pair-direct.uspto.gov.

        For all other customer support, please call the USPTO Call Center (UCC) at 800-786-9199.

/Kimberly Chong/
Primary Examiner
Art Unit 1674

SRPT-VYDS-0003759

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/741,150 | 01/14/2013 | Stephen Donald WILTON | AVN-008CN13 | 3931 |

959        7590        09/24/2013
NELSON MULLINS RILEY & SCARBOROUGH LLP
FLOOR 30, SUITE 3000
ONE POST OFFICE SQUARE
BOSTON, MA 02109

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1635 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 09/24/2013 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A  (Rev. 04/07)

SRPT-VYDS-0003760

| *Office Action Summary* | Application No. 13/741,150 | Applicant(s) WILTON ET AL. | |
|---|---|---|---|
| | Examiner KIMBERLY CHONG | Art Unit 1635 | AIA (First Inventor to File) Status No |

| -- The MAILING DATE of this communication appears on the cover sheet with the correspondence address -- |
|---|

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>1</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>01/14/2013</u>.
☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a)☐ This action is **FINAL.**     2b)☒ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

5)☒ Claim(s) <u>1-15</u> is/are pending in the application.
　　5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6)☐ Claim(s) _____ is/are allowed.

7)☐ Claim(s) _____ is/are rejected.

8)☐ Claim(s) _____ is/are objected to.

9)☒ Claim(s) <u>1-15</u> are subject to restriction and/or election requirement.

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

**Application Papers**

10)☐ The specification is objected to by the Examiner.

11)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.
　　Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
　　Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

**Certified copies:**

　a)☐ All　b)☐ Some * c)☐ None of the:
　　1.☐ Certified copies of the priority documents have been received.
　　2.☐ Certified copies of the priority documents have been received in Application No. _____.
　　3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

　* See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☐ Notice of References Cited (PTO-892)

2) ☐ Information Disclosure Statement(s) (PTO/SB/08) Paper No(s)/Mail Date _____.

3) ☐ Interview Summary (PTO-413) Paper No(s)/Mail. Date _____ .

4) ☐ Other: _____.

SRPT-VYDS-0003761

Application/Control Number: 13/741,150                                    Page 2
Art Unit: 1635

The present application is being examined under the pre-AIA first to invent

provisions.

## DETAILED ACTION

### Election/Restrictions

Restriction to one of the following inventions is required under 35 U.S.C. 121:

I.      Claims 1-7, 9-14, drawn to an antisense oligonucleotide capable of

        binding to a selected target site to induce exon skipping as set for in SEQ

        ID Nos. 1-202, classifiable in class 536, subclass 24.5.  This group is

        subject to a further restriction of an exon and corresponding antisense

        molecule.

II.     Claim 8, drawn to a method of treating muscular dystrophy in a patient

        comprising administering a composition comprising an antisense

        oligonucleotide targeted to a site to induce exon skipping, classifiable in

        class 514, subclass 44. This group is subject to a further restriction of an

        exon and corresponding antisense molecule.


The inventions are distinct, each from the other because of the following reasons:

        Inventions of Groups I and II are related as product and process of use.  The

inventions can be shown to be distinct if either or both of the following can be shown: (1)

the process for using the product as claimed can be practiced with another materially

different product or (2) the product as claimed can be used in a materially different

process of using that product. See MPEP § 806.05(h).  In the instant case the antisense

SRPT-VYDS-0003762

Application/Control Number: 13/741,150                                    Page 3
Art Unit: 1635

molecule can be used in a materially different process such as in *in situ hybridization.*
Furthermore restriction is proper because the subject matter is divergent and non-
coextensive and a search for one would not necessarily reveal art against the other.  It
is therefore a burden to search these inventions in a single application.


Restriction for examination purposes as indicated is proper because all these
inventions listed in this action are independent or distinct for the reasons given above
and there would be a serious search and examination burden if restriction were not
required because one or more of the following reasons apply:

(a) the inventions have acquired a separate status in the art in view of their
different classification;

(b) the inventions have acquired a separate status in the art due to their
recognized divergent subject matter;

(c) the inventions require a different field of search (for example, searching
different classes/subclasses or electronic resources, or employing different
search queries);

(d) the prior art applicable to one invention would not likely be applicable to
another invention;

(e) the inventions are likely to raise different non-prior art issues under 35 U.S.C.
101 and/or 35 U.S.C. 112, first paragraph.

**Applicant is advised that the reply to this requirement to be complete <u>must</u>**
**include (i) an election of a invention to be examined** even though the requirement

Application/Control Number: 13/741,150                                                Page 4
Art Unit: 1635

may be traversed (37 CFR 1.143) **and (ii) <u>identification of the claims encompassing the elected invention</u>**.

The election of an invention may be made with or without traverse. To reserve a right to petition, the election must be made with traverse. If the reply does not distinctly and specifically point out supposed errors in the restriction requirement, the election shall be treated as an election without traverse. Traversal must be presented at the time of election in order to be considered timely.  Failure to timely traverse the requirement will result in the loss of right to petition under 37 CFR 1.144.

If claims are added after the election, applicant must indicate which of these claims are readable upon the elected invention.

Should applicant traverse on the ground that the inventions are not patentably distinct, applicant should submit evidence or identify such evidence now of record showing the inventions to be obvious variants or clearly admit on the record that this is the case. In either instance, if the examiner finds one of the inventions unpatentable over the prior art, the evidence or admission may be used in a rejection under 35 U.S.C. 103(a) of the other invention.

Applicant is reminded that upon the cancellation of claims to a non-elected invention, the inventorship must be amended in compliance with 37 CFR 1.48(b) if one or more of the currently named inventors is no longer an inventor of at least one claim remaining in the application. Any amendment of inventorship must be accompanied by a request under 37 CFR 1.48(b) and by the fee required under 37 CFR 1.17(i).

Application/Control Number: 13/741,150                                          Page 5
Art Unit: 1635

Furthermore, should applicants elect to prosecute groups I or II, these groups are subject to further restriction as follows. Claims 1 and 2 are subject to an additional restriction since it is not considered to be a proper genus/Markush. See MPEP 803.02 – PRACTICE RE MARKUSH-TYPE CLAIMS – if the members of the Markush group are sufficiently few in number or so closely related that a search and examination of the entire claim can be made without serious burden, the examiner must examine all the members of the Markush group in the claims on the merits, even though they are directed to independent and distinct inventions. In such a case, the examiner will not follow the procedure described below and will not require restriction. Since the decisions in In re Weber, 580 F.2d 455, 198 USPQ 300 (CCPA 1980); and In re Haas, 580 F.2d 461, 198 USPQ 334 (CCPA 1978), it is improper for the Office to refuse to examine that which applicants regard as their invention, unless the subject matter in a claim lacks unity of invention. In re Harnish, 631 F.2d 716, 206 USPQ 300 (CCPA 1980); and Ex parte Hozumi, 3 USPQ2d 1059 (Bd. Pat. App. & Int. 1984). Broadly, unity of invention exists where compounds included within a Markush group (1) share a common utility, and (2) share a substantial structure feature disclosed as being essential to that utility.

Claims 1 and 2 specifically claim groups of antisense oligonucleotides that target exons 3, 4, 8, 10 to 16, 19 to 40, 42 to 44, 46, 47, and 50 to 53. For example, antisense oligonucleotides targeting exon 3 are represented as SEQ ID Nos. 23-30 as shown in Table on page 11 of the instant specification. Each group of antisense sequences targeting different exons are considered to be unrelated as each is structurally and

SRPT-VYDS-0003765

Application/Control Number: 13/741,150                                    Page 6
Art Unit: 1635

functionally independent and distinct. Each group of antisense sequences target and modulate different exons.

Furthermore, a search of more than one (1) of the groups of exons targeting different exons claimed in claims 1 and 2 presents an undue burden on the Patent and Trademark Office due to the complex nature of the search and corresponding examination of more than one (1) of the exons and corresponding antisense sequences. In view of the foregoing, one (1) exon and antisense sequence are considered to be a reasonable number of sequences for examination.  Accordingly, applicants are required to elect a total of one (1) exon and antisense sequence from claims 1 and 2.  **Note the election of one exon and corresponding antisense sequences are not a species election.**

This application contains claims directed to the following patentably distinct species.

**Applicant is required to elect an exon above and corresponding antisense sequences from SEQ ID Nos. 1-202 and from that election, the group of antisense sequences are subject to a further species election below.**

Claims 1 and 2 are directed to patentably distinct antisense sequences. For example, SEQ ID Nos. 23-30 each target exon 3 and are patentably distinct.   . The species are independent or distinct because claims to the different species recite the mutually exclusive characteristics of such species.  In addition, these species are not

Application/Control Number: 13/741,150                                    Page 7
Art Unit: 1635

obvious variants of each other based on the current record and a search for one
sequence would not necessarily reveal art against any other sequence.

Applicant is required under 35 U.S.C. 121 to elect a single disclosed species for
prosecution on the merits to which the claims shall be restricted if no generic claim is
finally held to be allowable. Currently, claim 1 is generic.

There is an examination and search burden for these patentably distinct species
due to their mutually exclusive characteristics.  The species require a different field of
search (e.g., searching different classes/subclasses or electronic resources, or
employing different search queries); and/or the prior art applicable to one species would
not likely be applicable to another species; and/or the species are likely to raise different
non-prior art issues under 35 U.S.C. 101 and/or 35 U.S.C. 112, first paragraph.

**Applicant is advised that the reply to this requirement to be complete <u>must</u>
include (i) an election of a species to be examined** even though the requirement
may be traversed (37 CFR 1.143) **and (ii) identification of the claims encompassing
the elected species**, including any claims subsequently added.  An argument that a
claim is allowable or that all claims are generic is considered nonresponsive unless
accompanied by an election.

The election of the species may be made with or without traverse. To preserve a
right to petition, the election must be made with traverse. If the reply does not distinctly
and specifically point out supposed errors in the election of species requirement, the
election shall be treated as an election without traverse. Traversal must be presented at
the time of election in order to be considered timely. Failure to timely traverse the

SRPT-VYDS-0003767

Application/Control Number: 13/741,150                                                      Page 8

Art Unit: 1635

requirement will result in the loss of right to petition under 37 CFR 1.144. If claims are

added after the election, applicant must indicate which of these claims are readable on

the elected species.

Should applicant traverse on the ground that the species are not patentably

distinct, applicant should submit evidence or identify such evidence now of record

showing the species to be obvious variants or clearly admit on the record that this is the

case. In either instance, if the examiner finds one of the species unpatentable over the

prior art, the evidence or admission may be used in a rejection under 35 U.S.C. 103(a)

of the other species.

Upon the allowance of a generic claim, applicant will be entitled to consideration

of claims to additional species which depend from or otherwise require all the limitations

of an allowable generic claim as provided by 37 CFR 1.141.


The examiner has required restriction between product and process claims.
Where applicant elects claims directed to the product, and the product claims are
subsequently found allowable, withdrawn process claims that depend from or otherwise
require all the limitations of the allowable product claim will be considered for rejoinder.
All claims directed a nonelected process invention  must require all the limitations of an
allowable product claim for that process invention to be rejoined.
In the event of rejoinder, the requirement for restriction between the product
claims and the rejoined process claims will be withdrawn, and the rejoined process
claims will be fully examined for patentability in accordance with 37 CFR 1.104. Thus, to
be allowable, the rejoined claims must meet all criteria for patentability including the
requirements of 35 U.S.C. 101, 102, 103 and 112. Until all claims to the elected product
are found allowable, an otherwise proper restriction requirement between product
claims and process claims may be maintained. Withdrawn process claims that are not
commensurate in scope with an allowable product claim will not be rejoined. See MPEP
§ 821.04(b). Additionally, in order to retain the right to rejoinder in accordance with the
above policy, applicant is advised that the process claims should be amended during
prosecution to require the limitations of the product claims. **Failure to do so may result
in a loss of the right to rejoinder**. Further, note that the prohibition against double

SRPT-VYDS-0003768

Application/Control Number: 13/741,150                                    Page 9
Art Unit: 1635

patenting rejections of 35 U.S.C. 121 does not apply where the restriction requirement
is withdrawn by the examiner before the patent issues. See MPEP § 804.01.


### Conclusion

Any inquiry concerning this communication or earlier communications from the
examiner should be directed to **Kimberly Chong whose telephone number is 571-
272-3111**. The examiner can normally be reached Monday thru Friday between 9-5
pm.

If attempts to reach the examiner by telephone are unsuccessful please contact
the Acting SPE for 1635 Heather Calamita at 571-272-2876. The fax phone number for
the organization where this application or proceeding is assigned is 571-273-8300.

Patent applicants with problems or questions regarding electronic images that
can be viewed in the Patent Application Information Retrieval system (PAIR) can now
contact the USPTO's Patent Electronic Business Center (Patent EBC) for assistance.
Representatives are available to answer your questions daily from 6 am to midnight
(EST). The toll free number is (866) 217-9197. When calling please have your
application serial or patent number, the type of document you are having an image
problem with, the number of pages and the specific nature of the problem. The Patent
Electronic Business Center will notify applicants of the resolution of the problem within
5-7 business days. Applicants can also check PAIR to confirm that the problem has
been corrected. The USPTO's Patent Electronic Business Center is a complete service
center supporting all patent business on the Internet. The USPTO's PAIR system
provides Internet-based access to patent application status and history information. It
also enables applicants to view the scanned images of their own application file
folder(s) as well as general patent information available to the public. For more
information about the PAIR system, see http://pair-direct.uspto.gov.

For all other customer support, please call the USPTO Call Center (UCC) at 800-
786-9199.


/Kimberly Chong/
Primary Examiner
Art Unit 1635



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

123147    7590    07/22/2014
Nelson Mullins Riley & Scarborough LLP/Sarepta
One Post Office Square
Boston, MA 02109

| EXAMINER |
| --- |
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
| --- | --- |
| 1674 | |

DATE MAILED: 07/22/2014

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
| --- | --- | --- | --- | --- |
| 13/826,613 | 03/14/2013 | Stephen Donald WILTON | AVN-008CN14 | 7716 |

TITLE OF INVENTION: ANTISENSE OLIGONUCLEOTIDES FOR INDUCING EXON SKIPPING AND METHODS OF USE THEREOF

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
| --- | --- | --- | --- | --- | --- | --- |
| nonprovisional | SMALL | $480 | $0 | $0 | $480 | 10/22/2014 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN <u>THREE MONTHS</u> FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. <u>THIS STATUTORY PERIOD CANNOT BE EXTENDED.</u> SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

Page 1 of 3

PTOL-85 (Rev. 02/11)

SRPT-VYDS-0003770

**PART B - FEE(S) TRANSMITTAL**

**Complete and send this form, together with applicable fee(s), to:** <u>Mail</u>    Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
**or** <u>Fax</u>    (571)-273-2885

---

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

123147        7590        07/22/2014
Nelson Mullins Riley & Scarborough LLP/Sarepta
One Post Office Square
Boston, MA 02109

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

|  |
|---|
| (Depositor's name) |
| (Signature) |
| (Date) |

---

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/826,613 | 03/14/2013 | Stephen Donald WILTON | AVN-008CN14 | 7716 |

TITLE OF INVENTION: ANTISENSE OLIGONUCLEOTIDES FOR INDUCING EXON SKIPPING AND METHODS OF USE THEREOF

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $480 | $0 | $0 | $480 | 10/22/2014 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| CHONG, KIMBERLY | 1674 | 536-024500 |

| 1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).<br>☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.<br>☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.** | 2. For printing on the patent front page, list<br>(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,<br>(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed. | 1 _____<br><br>2 _____<br><br>3 _____ |
|---|---|---|

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) :    ☐ Individual    ☐ Corporation or other private group entity    ☐ Government

| 4a. The following fee(s) are submitted:<br>☐ Issue Fee<br>☐ Publication Fee (No small entity discount permitted)<br>☐ Advance Order - # of Copies _____ | 4b. Payment of Fee(s): **(Please first reapply any previously paid issue fee shown above)**<br>☐ A check is enclosed.<br>☐ Payment by credit card. Form PTO-2038 is attached.<br>☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credits any overpayment to Deposit Account Number _____ (enclose an extra copy of this form). |
|---|---|

| 5. **Change in Entity Status** (from status indicated above) | |
|---|---|
| ☐ Applicant certifying micro entity status. See 37 CFR 1.29 | NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment. |
| ☐ Applicant asserting small entity status. See 37 CFR 1.27 | NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status. |
| ☐ Applicant changing to regular undiscounted fee status. | NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable. |

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____    Date _____

Typed or printed name _____    Registration No. _____

PTOL-85 Part B (10-13) Approved for use through 10/31/2013.    OMB 0651-0033    U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

SRPT-VYDS-0003771



U NITED S TATES P ATENT AND T RADEMARK O FFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/826,613 | 03/14/2013 | Stephen Donald WILTON | AVN-008CN14 | 7716 |

123147        7590        07/22/2014
Nelson Mullins Riley & Scarborough LLP/Sarepta
One Post Office Square
Boston, MA 02109

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1674 | |

DATE MAILED: 07/22/2014

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

SRPT-VYDS-0003772

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:
1.  The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2.  A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3.  A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4.  A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5.  A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6.  A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7.  A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8.  A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9.  A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

SRPT-VYDS-0003773

| *Notice of Allowability* | Application No. 13/826,613 | Applicant(s) WILTON ET AL. | |
|---|---|---|---|
| | Examiner KIMBERLY CHONG | Art Unit 1674 | AIA (First Inventor to File) Status No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to <u>07/07/2014</u>.

     ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on_____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☒ The allowed claim(s) is/are <u>1,4-19,21-88</u>. As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see <u>http://www.uspto.gov/patents/init_events/pph/index.jsp</u> or send an inquiry to <u>PPHfeedback@uspto.gov</u> .

4. ☒ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    **Certified copies:**

    a) ☒ All   b) ☐ Some   *c) ☐ None of the:

      1. ☐ Certified copies of the priority documents have been received.

      2. ☒ Certified copies of the priority documents have been received in Application No. <u>11/570,691</u> .

      3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    * Certified copies not received: _____.

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
**THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

     ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____.

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

| | |
|---|---|
| 1. ☐ Notice of References Cited (PTO-892) | 5. ☐ Examiner's Amendment/Comment |
| 2. ☒ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date <u>07/07/2014</u> | 6. ☐ Examiner's Statement of Reasons for Allowance |
| 3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material | 7. ☐ Other _____. |
| 4. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____ . | |

/KIMBERLY CHONG/
Primary Examiner, Art Unit 1674

SRPT-VYDS-0003774

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/826,613 | 03/14/2013 | Stephen Donald WILTON | AVN-008CN14 | 7716 |

959        7590        01/07/2014
NELSON MULLINS RILEY & SCARBOROUGH LLP
FLOOR 30, SUITE 3000
ONE POST OFFICE SQUARE
BOSTON, MA 02109

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1674 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 01/07/2014 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

SRPT-VYDS-0003775

| **Office Action Summary** | **Application No.**<br>13/826,613 | **Applicant(s)**<br>WILTON ET AL. |
|---|---|---|
| | **Examiner**<br>KIMBERLY CHONG | **Art Unit**<br>1674 | **AIA (First Inventor to File) Status**<br>No |

| -- The MAILING DATE of this communication appears on the cover sheet with the correspondence address -- |

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) months from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1) ☒ Responsive to communication(s) filed on <u>12/17/2013</u>.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.
2a) ☐ This action is **FINAL**.    2b) ☒ This action is non-final.
3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.
4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims*

5) ☒ Claim(s) <u>1 and 4-88</u> is/are pending in the application.
   5a) Of the above claim(s) <u>20</u> is/are withdrawn from consideration.
6) ☐ Claim(s) _____ is/are allowed.
7) ☒ Claim(s) <u>1,4-18 and 21-88</u> is/are rejected.
8) ☐ Claim(s) _____ is/are objected to.
9) ☐ Claim(s) _____ are subject to restriction and/or election requirement.
* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

## Application Papers

10) ☐ The specification is objected to by the Examiner.
11) ☒ The drawing(s) filed on <u>5/2/13,3/14/13</u> is/are: a) ☒ accepted or b) ☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

## Priority under 35 U.S.C. § 119

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    **Certified copies:**
    a) ☐ All  b) ☐ Some**  c) ☐ None of the:
    1. ☐ Certified copies of the priority documents have been received.
    2. ☐ Certified copies of the priority documents have been received in Application No. _____.
    3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☐ Notice of References Cited (PTO-892)

2) ☒ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date <u>12/17/2013</u>.

3) ☐ Interview Summary (PTO-413)
   Paper No(s)/Mail Date. _____ .

4) ☐ Other: _____ .

SRPT-VYDS-0003776

Application/Control Number: 13/826,613                                      Page 2
Art Unit: 1674

The present application is being examined under the pre-AIA first to invent

provisions.

## DETAILED ACTION

### Election/Restrictions

Applicant's election without traverse of Group I, in the reply filed on 12/17/2013 is

acknowledged.

### Status of the Application

Claims 1 and 4-88 are pending.  Claims 1, 4-19 and 21-88 are currently under

examination.  Claim 20 is withdrawn as being drawn to a non-elected invention.

### Information Disclosure Statement

The submission of the Information Disclosure Statement on 12/17/2013 is in

compliance with 37 CFR 1.97.  The information disclosure statement has been

considered by the examiner and signed copies have been placed in the file.

### Double Patenting

The nonstatutory double patenting rejection is based on a judicially created
doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the
unjustified or improper timewise extension of the "right to exclude" granted by a patent
and to prevent possible harassment by multiple assignees.  See *In re Goodman*, 11
F.3d 1046, 29 USPQ2d 2010 (Fed. Cir. 1993); *In re Longi*, 759 F.2d 887, 225
USPQ 645 (Fed. Cir. 1985); *In re Van Ornum*, 686 F.2d 937, 214 USPQ 761 (CCPA
1982); *In re Vogel*, 422 F.2d 438, 164 USPQ 619 (CCPA 1970);and, *In re Thorington*,
418 F.2d 528, 163 USPQ 644 (CCPA 1969).
A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) may be
used to overcome an actual or provisional rejection based on a nonstatutory double

Application/Control Number: 13/826,613                                    Page 3

Art Unit: 1674

patenting ground provided the conflicting application or patent is shown to be commonly owned with this application.  See 37 CFR 1.130(b).

Effective January 1, 1994, a registered attorney or agent of record may sign a terminal disclaimer.  A terminal disclaimer signed by the assignee must fully comply with 37 CFR 3.73(b).

Claims 1, 4-19 and 21-88 are rejected under the judicially created doctrine of obviousness-type double patenting as being unpatentable over claims 1-48 of U.S. Patent No. 8,455,634.  Although the conflicting claims are not identical, they are not patentably distinct from each other because the instant claims and the claims of the patent are drawn to patently indistinguishable subject matter.

The instant claims are drawn to an isolated antisense oligonucleotide of 20 to 50 nucleotides in length comprising at least 17 nucleotides of SEQ ID No. 187 wherein the oligonucleotide specifically hybridizes to exon 52, specifically in the region H52(+17+37) which is within the region of the instant claims.  Thus the conflicting claims are not patentably distinct from each other.

Claims 1, 4-19 and 21-88 are provisionally rejected under the judicially created doctrine of double patenting over claims 15-34 of copending Application No. 13/741,150.  This is a provisional double patenting rejection since the conflicting claims have not yet been patented.  Although the conflicting claims are not identical, they are not patentably distinct from each other because the instant claims and the claims of the patent are drawn to patently indistinguishable subject matter.

.

Application/Control Number: 13/826,613                                    Page 4
Art Unit: 1674

### *Conclusion*

Any inquiry concerning this communication or earlier communications from the examiner should be directed to **Kimberly Chong** whose telephone number is **571-272-3111**.  The examiner can normally be reached Monday thru Friday between 9-5 pm.

If attempts to reach the examiner by telephone are unsuccessful please contact the SPE for 1674 Christopher Babic at 571-272-8507. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Patent applicants with problems or questions regarding electronic images that can be viewed in the Patent Application Information Retrieval system (PAIR) can now contact the USPTO's Patent Electronic Business Center (Patent EBC) for assistance. Representatives are available to answer your questions daily from 6 am to midnight (EST). The toll free number is (866) 217-9197. When calling please have your application serial or patent number, the type of document you are having an image problem with, the number of pages and the specific nature of the problem.  The Patent Electronic Business Center will notify applicants of the resolution of the problem within 5-7 business days. Applicants can also check PAIR to confirm that the problem has been corrected.  The USPTO's Patent Electronic Business Center is a complete service center supporting all patent business on the Internet. The USPTO's PAIR system provides Internet-based access to patent application status and history information. It also enables applicants to view the scanned images of their own application file folder(s) as well as general patent information available to the public. For more information about the PAIR system, see http://pair-direct.uspto.gov.

SRPT-VYDS-0003779

Application/Control Number: 13/826,613                                    Page 5
Art Unit: 1674

     For all other customer support, please call the USPTO Call Center (UCC) at 800-

786-9199.

/Kimberly Chong/
Primary Examiner
Art Unit 1674

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/826,613 | 03/14/2013 | Stephen Donald WILTON | AVN-008CN14 | 7716 |

959         7590         07/17/2013
NELSON MULLINS RILEY & SCARBOROUGH LLP
FLOOR 30, SUITE 3000
ONE POST OFFICE SQUARE
BOSTON, MA 02109

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1635 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 07/17/2013 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

SRPT-VYDS-0003781

| *Office Action Summary* | Application No. 13/826,613 | Applicant(s) WILTON ET AL. |
|---|---|---|
| | Examiner KIMBERLY CHONG | Art Unit 1635 | AIA (First Inventor to File) Status No |

| -- The MAILING DATE of this communication appears on the cover sheet with the correspondence address -- |
|---|

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE *1* MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>14 March 2013</u>.
☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a)☐ This action is **FINAL**.        2b)☒ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

5)☒ Claim(s) *1-20* is/are pending in the application.
    5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6)☐ Claim(s) _____ is/are allowed.

7)☐ Claim(s) _____ is/are rejected.

8)☐ Claim(s) _____ is/are objected to.

9)☒ Claim(s) *1-20* are subject to restriction and/or election requirement.

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

**Application Papers**

10)☐ The specification is objected to by the Examiner.

11)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

**Certified copies:**

a)☐ All   b)☐ Some *  c)☐ None of the:
    1.☐ Certified copies of the priority documents have been received.
    2.☐ Certified copies of the priority documents have been received in Application No. _____.
    3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
* See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☐ Notice of References Cited (PTO-892)

2)☐ Information Disclosure Statement(s) (PTO/SB/08) Paper No(s)/Mail Date _____.

3)☐ Interview Summary (PTO-413) Paper No(s)/Mail Date _____.

4)☐ Other: _____.

SRPT-VYDS-0003782

Application/Control Number: 13/826,613                                        Page 2

Art Unit: 1635

## DETAILED ACTION

### *Election/Restrictions*

Restriction to one of the following inventions is required under 35 U.S.C. 121:

I.      Claims 1-19, drawn to an antisense oligonucleotide of 20 to 50 nucleotides in length comprising at least 10 consecutive nucleotides of a sequence selected from SEQ ID Nos: 1-212, classifiable in class 536, subclass 24.5. **This group is subject to a further restriction of a nucleotide sequence.**

II.     Claim 21, drawn to a diagnostic method of treating Duchenne muscular dystrophy, classifiable in class 514, subclass 44. **This group is further subject to restriction to a single sequence per below.**

The inventions are distinct, each from the other because of the following reasons:

Inventions of groups I and II are related as product and process of use. The inventions can be shown to be distinct if either or both of the following can be shown: (1) the process for using the product as claimed can be practiced with another materially different product or (2) the product as claimed can be used in a materially different process of using that product. See MPEP § 806.05(h). In the instant case the product oligonucleotide can be used in a materially different process such as in *in situ* hybridization as a probe. Furthermore restriction is proper because the subject matter is divergent and non-coextensive and a search for one would not necessarily reveal art

SRPT-VYDS-0003783

Application/Control Number: 13/826,613                                           Page 3
Art Unit: 1635

against the other.  It is therefore a burden to search these inventions in a single

application.

Restriction for examination purposes as indicated is proper because all these

inventions listed in this action are independent or distinct for the reasons given above

and there would be a serious search and examination burden if restriction were not

required because one or more of the following reasons apply:

(a) the inventions have acquired a separate status in the art in view of their

different classification;

(b) the inventions have acquired a separate status in the art due to their

recognized divergent subject matter;

(c) the inventions require a different field of search (for example, searching

different classes/subclasses or electronic resources, or employing different

search queries);

(d) the prior art applicable to one invention would not likely be applicable to

another invention;

(e) the inventions are likely to raise different non-prior art issues under 35 U.S.C.

101 and/or 35 U.S.C. 112, first paragraph.

**Applicant is advised that the reply to this requirement to be complete <u>must</u>**

**include (i) an election of a invention to be examined** even though the requirement

may be traversed (37 CFR 1.143) **and (ii) <u>identification of the claims encompassing</u>**

**<u>the elected invention</u>.**

SRPT-VYDS-0003784

Application/Control Number: 13/826,613                                    Page 4
Art Unit: 1635

The election of an invention may be made with or without traverse. To reserve a

right to petition, the election must be made with traverse. If the reply does not distinctly

and specifically point out supposed errors in the restriction requirement, the election

shall be treated as an election without traverse. Traversal must be presented at the time

of election in order to be considered timely.  Failure to timely traverse the requirement

will result in the loss of right to petition under 37 CFR 1.144.

If claims are added after the election, applicant must indicate which of these

claims are readable upon the elected invention.

Should applicant traverse on the ground that the inventions are not patentably

distinct, applicant should submit evidence or identify such evidence now of record

showing the inventions to be obvious variants or clearly admit on the record that this is

the case. In either instance, if the examiner finds one of the inventions unpatentable

over the prior art, the evidence or admission may be used in a rejection under 35 U.S.C.

103(a) of the other invention.

Applicant is reminded that upon the cancellation of claims to a non-elected

invention, the inventorship must be amended in compliance with 37 CFR 1.48(b) if one

or more of the currently named inventors is no longer an inventor of at least one claim

remaining in the application. Any amendment of inventorship must be accompanied by

a request under 37 CFR 1.48(b) and by the fee required under 37 CFR 1.17(i).


Furthermore, should applicants elect to prosecute groups I or II, these groups are

subject to further restriction as follows.  Claim 1 is subject to an additional restriction

SRPT-VYDS-0003785

Application/Control Number: 13/826,613                                    Page 5
Art Unit: 1635

since it is not considered to be a proper genus/Markush. See MPEP 803.02 –

PRACTICE RE MARKUSH-TYPE CLAIMS – if the members of the Markush group are

sufficiently few in number or so closely related that a search and examination of the

entire claim can be made without serious burden, the examiner must examine all the

members of the Markush group in the claims on the merits, even though they are

directed to independent and distinct inventions. In such a case, the examiner will not

follow the procedure described below and will not require restriction. Since the

decisions in In re Weber, 580 F.2d 455, 198 USPQ 300 (CCPA 1980); and In re Haas,

580 F.2d 461, 198 USPQ 334 (CCPA 1978), it is improper for the Office to refuse to

examine that which applicants regard as their invention, unless the subject matter in a

claim lacks unity of invention. In re Harnish, 631 F.2d 716, 206 USPQ 300 (CCPA

1980); and Ex parte Hozumi, 3 USPQ2d 1059 (Bd. Pat. App. & Int. 1984). Broadly,

unity of invention exists where compounds included within a Markush group (1) share a

common utility, and (2) share a substantial structure feature disclosed as being

essential to that utility.

Claim 1 specifically claims antisense oligonucleotides having SEQ ID Nos. 1-212.

Each oligonucleotide sequence is considered to be unrelated, since each sequence

claimed is structurally and functionally independent and target different exons and/or

different regions of exons. Furthermore, a search of more than one (1) of the

oligonucleotide sequences claimed in claim 1 presents an undue burden on the Patent

and Trademark Office due to the complex nature of the search and corresponding

examination of more than one (1) of the claimed oligonucleotide sequences. In view of

SRPT-VYDS-0003786

Application/Control Number: 13/826,613                                          Page 6
Art Unit: 1635

the foregoing, one (1) oligonucleotide sequence is considered to be a reasonable

number of sequences for examination.  Accordingly, applicants are required to elect a

total of one (1) oligonucleotide sequence from claim 1.  **Note that this is not a species**

**election.**

 

 

 

The examiner has required restriction between product and process claims.
Where applicant elects claims directed to the product, and the product claims are
subsequently found allowable, withdrawn process claims that depend from or otherwise
require all the limitations of the allowable product claim will be considered for rejoinder.
All claims directed a nonelected process invention  must require all the limitations of an
allowable product claim for that process invention to be rejoined.

In the event of rejoinder, the requirement for restriction between the product
claims and the rejoined process claims will be withdrawn, and the rejoined process
claims will be fully examined for patentability in accordance with 37 CFR 1.104. Thus, to
be allowable, the rejoined claims must meet all criteria for patentability including the
requirements of 35 U.S.C. 101, 102, 103 and 112. Until all claims to the elected product
are found allowable, an otherwise proper restriction requirement between product
claims and process claims may be maintained. Withdrawn process claims that are not
commensurate in scope with an allowable product claim will not be rejoined. See MPEP
§ 821.04(b). Additionally, in order to retain the right to rejoinder in accordance with the
above policy, applicant is advised that the process claims should be amended during
prosecution to require the limitations of the product claims. **Failure to do so may result
in a loss of the right to rejoinder**. Further, note that the prohibition against double
patenting rejections of 35 U.S.C. 121 does not apply where the restriction requirement
is withdrawn by the examiner before the patent issues. See MPEP § 804.01.

 

 

### *Conclusion*

Any inquiry concerning this communication or earlier communications from the
examiner should be directed to Kimberly Chong whose telephone number is 571-272-
3111.  The examiner can normally be reached Monday thru Friday between 9-5 pm.
If attempts to reach the examiner by telephone are unsuccessful please contact
the Acting SPE for 1635 Heather Calamita at 571-272-2876.  The fax phone number for
the organization where this application or proceeding is assigned is 571-273-8300.
Patent applicants with problems or questions regarding electronic images that
can be viewed in the Patent Application Information Retrieval system (PAIR) can now

Application/Control Number: 13/826,613                                    Page 7
Art Unit: 1635

contact the USPTO's Patent Electronic Business Center (Patent EBC) for assistance. Representatives are available to answer your questions daily from 6 am to midnight (EST). The toll free number is (866) 217-9197. When calling please have your application serial or patent number, the type of document you are having an image problem with, the number of pages and the specific nature of the problem.  The Patent Electronic Business Center will notify applicants of the resolution of the problem within 5-7 business days. Applicants can also check PAIR to confirm that the problem has been corrected.  The USPTO's Patent Electronic Business Center is a complete service center supporting all patent business on the Internet. The USPTO's PAIR system provides Internet-based access to patent application status and history information. It also enables applicants to view the scanned images of their own application file folder(s) as well as general patent information available to the public. For more information about the PAIR system, see http://pair-direct.uspto.gov.

For all other customer support, please call the USPTO Call Center (UCC) at 800-786-9199.

/Kimberly Chong/
Primary Examiner
Art Unit 1635



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

123147    7590    06/22/2015

Nelson Mullins Riley & Scarborough LLP/Sarepta
One Post Office Square
Boston, MA 02109

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1674 | |

DATE MAILED: 06/22/2015

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/826,880 | 03/14/2013 | Stephen Donald WILTON | AVN-008CN15RCE | 2179 |

TITLE OF INVENTION: ANTISENSE OLIGONUCLEOTIDES FOR INDUCING EXON SKIPPING AND METHODS OF USE THEREOF

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $480 | $0 | $0 | $480 | 09/22/2015 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED.  THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT.  SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN <u>THREE MONTHS</u> FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED.  <u>THIS STATUTORY PERIOD CANNOT BE EXTENDED.</u>  SEE 35 U.S.C. 151.  THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION.  IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

Page 1 of 3

PTOL-85 (Rev. 02/11)

SRPT-VYDS-0003789

**PART B - FEE(S) TRANSMITTAL**

**Complete and send this form, together with applicable fee(s), to:** <u>Mail</u>  Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
**or** <u>Fax</u>  (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

123147    7590    06/22/2015
Nelson Mullins Riley & Scarborough LLP/Sarepta
One Post Office Square
Boston, MA 02109

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/826,880 | 03/14/2013 | Stephen Donald WILTON | AVN-008CN15RCE | 2179 |

TITLE OF INVENTION: ANTISENSE OLIGONUCLEOTIDES FOR INDUCING EXON SKIPPING AND METHODS OF USE THEREOF

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $480 | $0 | $0 | $480 | 09/22/2015 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| CHONG, KIMBERLY | 1674 | 536-024500 |

**1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).**
☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.
☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

**2. For printing on the patent front page, list**
(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

**3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT** (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) :  ☐ Individual  ☐ Corporation or other private group entity  ☐ Government

**4a. The following fee(s) are submitted:**
☐ Issue Fee
☐ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies _____

**4b. Payment of Fee(s):** (**Please first reapply any previously paid issue fee shown above**)
☐ A check is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☐ The director is hereby authorized to charge the required fee(s), any deficiency, or credits any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

**5. Change in Entity Status** (from status indicated above)
☐ Applicant certifying micro entity status. See 37 CFR 1.29
☐ Applicant asserting small entity status. See 37 CFR 1.27
☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.
NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.
NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____    Date _____

Typed or printed name _____    Registration No. _____

PTOL-85 Part B (10-13) Approved for use through 10/31/2013.    OMB 0651-0033    U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

SRPT-VYDS-0003790



U̲NITED S̲TATES P̲ATENT AND T̲RADEMARK O̲FFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/826,880 | 03/14/2013 | Stephen Donald WILTON | AVN-008CN15RCE | 2179 |

123147        7590        06/22/2015
Nelson Mullins Riley & Scarborough LLP/Sarepta
One Post Office Square
Boston, MA 02109

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1674 | |

DATE MAILED: 06/22/2015

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

SRPT-VYDS-0003791

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| *Notice of Allowability* | Application No. 13/826,880 | Applicant(s) WILTON ET AL. | |
|---|---|---|---|
| | Examiner KIMBERLY CHONG | Art Unit 1674 | AIA (First Inventor to File) Status No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *04/27/2015*.

   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on_____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☒ The allowed claim(s) is/are *96-107,111-122*. As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov .

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

   **Certified copies:**

   a) ☐ All    b) ☐ Some    *c) ☐ None of the:

   　1. ☐ Certified copies of the priority documents have been received.

   　2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

   　3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

   * Certified copies not received: _____.

   Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
   **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

   ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____.

   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)
2. ☒ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date 04/27/2015
3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material
4. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____ .

5. ☐ Examiner's Amendment/Comment
6. ☐ Examiner's Statement of Reasons for Allowance
7. ☐ Other _____ .

/KIMBERLY CHONG/
Primary Examiner, Art Unit 1674

SRPT-VYDS-0003793



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| | | | |
|---|---|---|---|
| 123147 | 7590 | 01/26/2015 | |

Nelson Mullins Riley & Scarborough LLP/Sarepta
One Post Office Square
Boston, MA 02109

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1674 | |

DATE MAILED: 01/26/2015

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/826,880 | 03/14/2013 | Stephen Donald WILTON | AVN-008CN15 | 2179 |

TITLE OF INVENTION: ANTISENSE OLIGONUCLEOTIDES FOR INDUCING EXON SKIPPING AND METHODS OF USE THEREOF

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $480 | $0 | $0 | $480 | 04/27/2015 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED.** THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED.** SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

Page 1 of 3

PTOL-85 (Rev. 02/11)

SRPT-VYDS-0003794

**PART B - FEE(S) TRANSMITTAL**

**Complete and send this form, together with applicable fee(s), to:** <u>Mail</u>    Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
**or <u>Fax</u>**    (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

123147        7590        01/26/2015
Nelson Mullins Riley & Scarborough LLP/Sarepta
One Post Office Square
Boston, MA 02109

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/826,880 | 03/14/2013 | Stephen Donald WILTON | AVN-008CN15 | 2179 |

TITLE OF INVENTION: ANTISENSE OLIGONUCLEOTIDES FOR INDUCING EXON SKIPPING AND METHODS OF USE THEREOF

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $480 | $0 | $0 | $480 | 04/27/2015 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| CHONG, KIMBERLY | 1674 | 536-024500 |

**1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).**

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

**2. For printing on the patent front page, list**

(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

**3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT** (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) :    ☐ Individual    ☐ Corporation or other private group entity    ☐ Government

**4a. The following fee(s) are submitted:**
☐ Issue Fee
☐ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies _____

**4b. Payment of Fee(s): (Please first reapply any previously paid issue fee shown above)**
☐ A check is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☐ The director is hereby authorized to charge the required fee(s), any deficiency, or credits any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

**5. Change in Entity Status** (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

☐ Applicant asserting small entity status. See 37 CFR 1.27

☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____    Date _____

Typed or printed name _____    Registration No. _____

Page 2 of 3

SRPT-VYDS-0003795



U̲NITED S̲TATES P̲ATENT AND T̲RADEMARK O̲FFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/826,880 | 03/14/2013 | Stephen Donald WILTON | AVN-008CN15 | 2179 |

123147        7590        01/26/2015
Nelson Mullins Riley & Scarborough LLP/Sarepta
One Post Office Square
Boston, MA 02109

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1674 | |

DATE MAILED: 01/26/2015

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

SRPT-VYDS-0003796

### OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

### Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| *Notice of Allowability* | Application No.<br>13/826,880 | Applicant(s)<br>WILTON ET AL. | |
|---|---|---|---|
| | Examiner<br>KIMBERLY CHONG | Art Unit<br>1674 | AIA (First Inventor to File) Status<br>No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to <u>10/15/2014</u>.

    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on_____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☒ The allowed claim(s) is/are <u>1,15,44,61,63,64,68,69,86,89-122</u>. As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see <u>http://www.uspto.gov/patents/init_events/pph/index.jsp</u> or send an inquiry to <u>PPHfeedback@uspto.gov</u>.

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    **Certified copies:**

      a) ☐ All   b) ☐ Some   *c) ☐ None of the:

        1. ☐ Certified copies of the priority documents have been received.

        2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

        3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    * Certified copies not received: _____ .

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

    ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail _____.

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)

2. ☒ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date <u>11/12/2014</u>

3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

4. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____ .

5. ☐ Examiner's Amendment/Comment

6. ☐ Examiner's Statement of Reasons for Allowance

7. ☐ Other _____ .

/KIMBERLY CHONG/
Primary Examiner, Art Unit 1674

SRPT-VYDS-0003798

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/826,880 | 03/14/2013 | Stephen Donald WILTON | AVN-008CN15 | 2179 |

959          7590          04/15/2014
NELSON MULLINS RILEY & SCARBOROUGH LLP
FLOOR 30, SUITE 3000
ONE POST OFFICE SQUARE
BOSTON, MA 02109

| EXAMINER |
|---|
| CHONG, KIMBERLY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1674 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 04/15/2014 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A  (Rev. 04/07)

SRPT-VYDS-0003799

| **Office Action Summary** | Application No. 13/826,880 | Applicant(s) WILTON ET AL. |
|---|---|---|
| | Examiner KIMBERLY CHONG | Art Unit 1674 | AIA (First Inventor to File) Status No |

| -- The MAILING DATE of this communication appears on the cover sheet with the correspondence address -- |
|---|

### Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) months from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

### Status

1) ☒ Responsive to communication(s) filed on <u>01/24/2014</u>.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.
2a) ☐ This action is **FINAL**.   2b) ☒ This action is non-final.
3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.
4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

### Disposition of Claims*

5) ☒ Claim(s) <u>1 and 4-88</u> is/are pending in the application.
   5a) Of the above claim(s) _____ is/are withdrawn from consideration.
6) ☒ Claim(s) <u>1,4-19 and 21-88</u> is/are allowed.
7) ☒ Claim(s) <u>20</u> is/are rejected.
8) ☐ Claim(s) _____ is/are objected to.
9) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

### Application Papers

10) ☐ The specification is objected to by the Examiner.
11) ☒ The drawing(s) filed on <u>03/14/2013</u> is/are:  a) ☒ accepted or b) ☐ objected to by the Examiner.
   Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
   Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

### Priority under 35 U.S.C. § 119

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   **Certified copies:**
   a) ☐ All   b) ☐ Some**   c) ☐ None of the:
   1. ☐ Certified copies of the priority documents have been received.
   2. ☐ Certified copies of the priority documents have been received in Application No. _____.
   3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☐ Notice of References Cited (PTO-892)
2) ☒ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date <u>01/14/2014</u>.
3) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____ .
4) ☐ Other: _____.

SRPT-VYDS-0003800

Application/Control Number: 13/826,880                                                    Page 2
Art Unit: 1674

The present application is being examined under the pre-AIA first to invent

provisions.

## DETAILED ACTION

### Election/Restrictions

Applicant's election without traverse of Group I in the reply filed on 01/13/2014 is

acknowledged.

### Status of the Application

Claims 1 and 4-88 are pending.  SEQ ID No. 1 as claimed is free of the prior art

searched.


Claims 1, 4-19 and 21-88 are directed to an allowable product. Pursuant to the

procedures set forth in MPEP § 821.04(B), claim 20, directed to the process of making

or using an allowable product, previously withdrawn from consideration as a result of a

restriction requirement, 09/24/2013 is hereby rejoined and fully examined for

patentability under 37 CFR 1.104.

Because all claims previously withdrawn from consideration under 37 CFR 1.142

have been rejoined, **the restriction requirement as set forth in the Office action**

**mailed on 09/11/2013 is hereby withdrawn**. In view of the withdrawal of the restriction

requirement as to the rejoined inventions, applicant(s) are advised that if any claim

presented in a continuation or divisional application is anticipated by, or includes all the

limitations of, a claim that is allowable in the present application, such claim may be

subject to provisional statutory and/or nonstatutory double patenting rejections over the

SRPT-VYDS-0003801

Application/Control Number: 13/826,880                                              Page 3
Art Unit: 1674

claims of the instant application. Once the restriction requirement is withdrawn, the

provisions of 35 U.S.C. 121 are no longer applicable. See *In re Ziegler*, 443 F.2d 1211,

1215, 170 USPQ 129, 131-32 (CCPA 1971). See also MPEP § 804.01.

### Information Disclosure Statement

The submission of the Information Disclosure Statement on 01/14/2014 is in

compliance with 37 CFR 1.97.  The information disclosure statement has been

considered by the examiner and signed copies have been placed in the file.

### Claim Rejections - 35 USC § 112, second paragraph

The following is a quotation of the second paragraph of 35 U.S.C. 112:

> The specification shall conclude with one or more claims particularly pointing out and distinctly
> claiming the subject matter which the applicant regards as his invention.

Claims 20 is rejected under 35 U.S.C. 112, second paragraph, as being indefinite

for failing to particularly point out and distinctly claim the subject matter which applicant

regards as the invention.

Method claims require an active or positive step that accomplishes the goals for

the method which were stated in the method's preamble.  The instant claims lack such a

step and are confusing because the additional method step(s) is not sufficiently set

forth.  While minute details are not required in method claims, at least the basic steps

must be recited in a positive, active fashion.  See Ex parte Erlich, 3 USPQ2d1011,

p.1011 (Bd. Pat. App. Int. 1986).

Application/Control Number: 13/826,880                                    Page 4
Art Unit: 1674

The instant claim lacks such a step and are simply a method of treating

Duchenne muscular dystrophy comprising administering the oligonucleotide to a patient

in need thereof.  There is no requirement or active or positive step in the claims that the

method results in treating (i.e., inducing exon skipping) or preventing or lessening the

disease in the subject.  This is indefinite because it leaves the scope of the claim

unclear as to whether it is required that the method has any effect at all on the subject.

Amending claim 20, such as by indicating that the administration results in

inducing exon skipping or preventing or lessening the disease in the subject, would

obviate this rejection.


### *Conclusion*

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to **Kimberly Chong** whose telephone number is **571-272-**

**3111**.  The examiner can normally be reached Monday thru Friday between 9-5 pm.

If attempts to reach the examiner by telephone are unsuccessful please contact

the SPE for 1674 Christopher Babic at 571-272-8507. The fax phone number for the

organization where this application or proceeding is assigned is 571-273-8300.

Patent applicants with problems or questions regarding electronic images that
can be viewed in the Patent Application Information Retrieval system (PAIR) can now
contact the USPTO's Patent Electronic Business Center (Patent EBC) for assistance.
Representatives are available to answer your questions daily from 6 am to midnight
(EST). The toll free number is (866) 217-9197. When calling please have your
application serial or patent number, the type of document you are having an image
problem with, the number of pages and the specific nature of the problem.  The Patent
Electronic Business Center will notify applicants of the resolution of the problem within
5-7 business days. Applicants can also check PAIR to confirm that the problem has

Application/Control Number: 13/826,880                                      Page 5
Art Unit: 1674

been corrected.  The USPTO's Patent Electronic Business Center is a complete service center supporting all patent business on the Internet. The USPTO's PAIR system provides Internet-based access to patent application status and history information. It also enables applicants to view the scanned images of their own application file folder(s) as well as general patent information available to the public. For more information about the PAIR system, see http://pair-direct.uspto.gov.

        For all other customer support, please call the USPTO Call Center (UCC) at 800-786-9199.

/Kimberly Chong/
Primary Examiner
Art Unit 1674