# EXHIBIT 1

*IN THE UNITED STATES DISTRICT COURT*

*IN AND FOR THE DISTRICT OF DELAWARE*

```
NIPPON SHINYAKU CO., LTD.,          )
              Plaintiff,            )
v.                                  )
                                    )
SAREPTA THERAPEUTICS, INC.,         )
              Defendant.            )   C.A. No.
                                    )   21-1015-GBW
_____)
SAREPTA THERAPEUTICS, INC.,         )
                                    )
Defendant/Counter-Plaintiff,        )
v.                                  )
                                    )
NIPPON SHINYAKU CO., LTD. and       )
NS PHARMA, INC.                     )
                                    )
Plaintiff and Counter-Defendants.
```

- - - -

Wilmington, Delaware
Wednesday, May 3, 2023
*Markman Transcript*

- - - -

BEFORE:   HONORABLE GREGORY B. WILLIAMS
          UNITED STATES DISTRICT COURT JUDGE

- - - -

Michele L. Rolfe, RPR, CRR

```
1    APPEARANCES:

2                    MORGAN, LEWIS & BOCKUS LLP
                     BY:  AMY M. DUDASH, ESQ.
3                         AMANDA S. WILLIAMSON, ESQ.
                          MICHAEL SIKERA, ESQ.
4                         ERIC KRAEUTLER, ESQ.
                          ZACHARY MILLER, ESQ.
5                         KRISTA VENEGAS, ESQ.

6                              Attorneys for Plaintiff

7

8

9                    MORRIS, NICHOLS, ARSHT & TUNNELL
                     BY: JACK B. BLUMENFELD, ESQ.
                         MEGAN E. DELLINGER, ESQ.
10

11                        -and-

12                   FINNEGAN, HENDERSON, FARABOW, GARRETT &
                     DUNNER LLP
                     BY:  WILLIAM RAICH, ESQ.
13                        YOONJIN LEE, ESQ.

14                             Attorneys for Defendant and
                               Counter-Plaintiff Sarepta
15                             Therapeutics, Inc.

16

17

18

19

20

21

22

23

24

25
```

## P R O C E E D I N G S

3    (REPORTER'S NOTE:  The following Markman was held in

4    Courtroom 6B, beginning at 10:00 a.m.)

5    THE COURT:  Good morning.  You may be seated.

6    All right.  Let's start by having counsel put appearances on

7    the record.

8    MS. DUDASH:  Good morning, Your Honor.  Amy

9    Dudash from Morgan Lewis for plaintiff, Nippon Shinyaku.

10   And with me here today is Amanda Williamson, Michael Sikera,

11   Eric Kraeutler, Zachary Miller, Krista Venegas, as well as

12   our client representative patent attorney from Nippon

13   Shinyaku.

14   THE COURT:  Good morning, all.

15   MS. DELLINGER:  Good morning, Your Honor.  Megan

16   Dellinger of Morris Nichols of behalf of Sarepta and the

17   University of Western Australia.  And I'm joined this

18   morning by my co-counsel from Finnegan Henderson, William

19   Raich and Yoonjin Lee.  And we also have with us this

20   morning Mr. Mark Evans, who is in-house counsel at Sarepta.

21   THE COURT:  All right.  So we have a number of

22   terms to construe today and we have two sets of briefs on

23   the issues.  We have -- we set aside three hours for this

24   hearing.  We'll start with the Wilton patents, so we'll

25   start.

1    of the claim terms.

2          Now, in contrast, Nippon Shinyaku's parsing of

3    Claim 1 into separate pieces leads its construction astray.

4    By focusing on just a few specific terms, "a base sequence,"

5    "a target region," "exon 53," if you don't look at them in

6    context, you lose the structural relationship between the

7    different parts of the term, which is why we believe that

8    term 1 should be construed together.

9          So, to the extent the construction is required,

10   Sarepta's construction construing the term in context should

11   be adopted.  It provides the ordinary meaning of the term,

12   in context, from the perspective of a skilled artisan, and

13   it accounts for all of the claim terms.

14          MS. WILLIAMSON:  Good morning, Your Honor.

15   Amanda Williamson on behalf of Nippon Shinyaku.

16          THE COURT:  Good morning.

17          MS. WILLIAMSON:  Sarepta proposes to

18   collectively construe the phrase "antisense oligonucleotide

19   of 20 to 31 bases comprising a base sequence that is

20   100 percent complementary to consecutive bases of a target

21   region of exon 53 of the human dystrophin pre-mRNA."

22          However, this would be improper.  As Sarepta

23   recognizes, the entirety of Claim 1 is not in dispute and

24   needs no construction.  As the Federal Circuit has

25   recognized in the *Vivid Tech* versus -- the *Vivid Tech* and

1   *02 Micron* cases, only those terms that need to be construed

2   that are in controversy. And District Courts need not and

3   should not be required to construe every term in the

4   asserted claim.

5         Here, as shown on slide 5, only three discrete

6   terms are in dispute; "the base sequence," "the target

7   region," and the "exon 53 of the human dystrophin pre-mRNA."

8         With its collective approach, Sarepta seeks to

9   distract from these actual disputes and actually avoid

10   construing term 1A, "a base sequence" by deleting it.

11         This Court should reject Sarepta's collective

12   approach and address each of these three terms individually,

13   as NS proposes.

14         To the extent the Court considers Sarepta's

15   collective construction, it should be rejected because it

16   rewrites the claim altogether. Sarepta attempts to justify

17   this rewrite to pointing to purported context, but that

18   makes no sense.

19         The best way to preserve context is to preserve

20   the language of the claim to the extent possible, and it is

21   certainly not to eliminate claim elements and rewrite the

22   claim.

23         Comparing Sarepta's collective construction to

24   the actual claim language and Sarepta's collective

25   construction of the individual terms demonstrates the flaws

1    not allow for this possibility of non-complimentary bases,

2    and the Federal Circuit has advised that a reading of the

3    claims that reads out preferred embodiments is highly

4    disfavored.

5              Also -- oops, sorry, I went the wrong way.

6              Also, the other example of an exclude embodiment

7    under this construction which requires the entire base

8    sequence be the oligonucleotide, and the entire

9    oligonucleotide be 100 percent complementary, is the weasel

10   oligonucleotide.  Kind of a strange name.

11             But a weasel is a single oligonucleotide, as we

12   can see from its description in the specification, it's not

13   multiple oligonucleotides, it is a single molecule joined

14   together.  And it's formed by two different base sequences

15   that are complementary to different regions or

16   nonconsecutive regions of the pre-mRNA.  And this is totally

17   read out if the Court were to adopt Sarepta's construction.

18             Here, these are one molecule, I don't think

19   Sarepta is going to try to argue to you that these are

20   separate molecules, they are one chemical structure.  And

21   they include different base sequences, as listed here in

22   table 1C.

23             THE COURT:  Understood.

24             MS. WILLIAMSON:  If I could turn back.  I think

25   Your Honor is fully aware of the issue that is really in

1    dispute here, and that's whether the base sequence must be a

2    portion or the entirety of the antisense oligonucleotide.

3             Just as a -- another matter, NS does not dispute

4    the term "a linear sequence of bases" as it believes the

5    term should be understood, and that is as a consecutive

6    number of bases on the antisense oligonucleotide.  But

7    Sarepta's construction is different even from the words on

8    the screen.  They're requiring the linear sequence of bases

9    to be the entirety, and that's what the parties are

10   disputing here.

11            We don't believe this is supported by the claim

12   language specification, prosecution history, or the Federal

13   Circuit precedent.  What the claim language says is that you

14   have a base sequence or an oligonucleotide comprising a base

15   sequence.

16            You know, that base sequence has twelve

17   consecutive bases.  And as we've seen depicted here a few

18   times now, it would be at least 12 recited bases that must

19   be 100 percent complementary, but could be more.  Under NS's

20   construction, the 100 percent complementary bases could be

21   up to the full oligonucleotide.

22            We don't dispute that an oligonucleotide can't

23   have a single base sequence, we dispute -- or we believe

24   it's improper to limit the range below that which is allowed

25   in the specification.

1    region.  It doesn't say the entire target region or all of

2    the target region.  It says consecutive bases.  And then it

3    says:  "The base sequence comprises at least 12 consecutive

4    bases."  There is no requirement in this claim that says the

5    antisense oligonucleotide itself is 100 percent

6    complementary to the target region.  And reading it in that

7    way completely reads out the base sequence and consecutive

8    bases terms.

9              This is not permitted under Federal Circuit law.

10             Could you go to slide 28.  And then to 29.

11             If the claimed base sequence must be fully

12   commiserate with the claimed oligonucleotide, then as

13   Dr. Hastings, NS's expert who has extensive experience in

14   designing therapeutics AONs has said the claim reads the

15   same as if "comprising a base sequence" was deleted, and

16   that cannot be correct.

17             Sarepta, again, discussed with respect to

18   term -- with respect to this term its examples in the table

19   1A and references in -- in the extrinsic evidence, but those

20   really should not be read to limit what is available to the

21   claims under Sarepta's construction.  It is just

22   impermissibly too narrow.

23             It also reads these terms entirely out of the

24   case, which is highly disfavored, according to the Federal

25   Circuit's Wasica Finance and Continental Automotive case.

1   And is not saved, as I said, by these references to full

2   oligonucleotide base sequences.

3            NS's construction allows for these full

4   oligonucleotides.  It also allows for the range between 12

5   and the end to be nonconsecutive.  And that's fine.  Counsel

6   raised an issue and talked about, I think, nonconsecutive

7   binding or that the oligonucleotide may not work enough, but

8   that kind of statement is not sufficient, that vague

9   statement in the specification to limit the claims to a

10  specification percentage of 100 percent complementary

11  nucleobases.

12           The claims actually deal with that in an

13  entirely different way; they require the oligonucleotide to

14  work.  So this Court doesn't need to worry about setting a

15  limit of nonspecific binding, it does not need to limit the

16  claims to give meaning to that portion of the specification.

17  That's taken care of by the other claim -- by the other

18  elements in the claim.

19           For those reasons, NS respectfully requests that

20  you adopt its construction, it's supported by the claim

21  language, the specification, the prosecution, and the

22  Federal Circuit precedent while Sarepta's runs afoul of

23  each.

24           THE COURT:  All right.  Mr. Raich, a quick

25  question for you, again, on this term.  How do you respond

1    to NS's argument about -- made on page 29 of their

2    presentation, that under Sarepta's proposed construction,

3    the claim you would be reading out comprising a base

4    sequence, you make that superfluous, you know, what your

5    proposed construction does is construe the language the same

6    as it would be construed by deleting comprising a base

7    sequence.

8        MR. RAICH: I think that's simply not true, Your

9    Honor. Our construction requires a base sequence, it

10   requires a linear sequence of bases so it's not being read

11   out. Further, it's comprising a base sequence because

12   oligonucleotides contain both base sequences and other

13   portions, like the backbone, etc., so nothing is being read

14   out.

15       If -- could we have Wilton slide 21, please.

16       I think it's exactly the opposite in terms of

17   reading out a requirement from the claim. And that is that

18   NS's construction is reading out the requirement that the

19   antisense oligonucleotide be 100 percent complementary. The

20   claim doesn't say complementary, it says -- the claim says

21   100 percent complementary.

22       And if you look at that later language in the

23   claim, those 12 consecutive bases, that's already providing

24   for a part of the oligonucleotide that is 100 percent

25   complementary, so that's -- that is in the claim.

```
 1        So under their construction, the requirement for
 2   100 percent complementarity means nothing, there's no reason
 3   for those terms to be there.  So I think it's exactly the
 4   opposite.  We're not reading anything out of the claim,
 5   respectfully Nippon Shinyaku is reading things out of the
 6   claim.
 7        THE COURT:  But doesn't it say complementary to
 8   consecutive bases of a target region as opposed to
 9   complementary to the -- what you -- under your construction,
10   would be complementary to the whole.
11        MR. RAICH:  That the antisense oligonucleotide,
12   all of the antisense oligonucleotide is 100 percent
13   complementary to consecutive bases of the target region of
14   exon 53.  That would require -- the target region is the
15   entire region that the antisense oligonucleotide is intended
16   to bind.  And so it requires 100 percent complementarity to
17   the target region of exon 53 that is targeted by the
18   antisense oligonucleotide.
19        So, again, we're not reading anything into the
20   claim.  Respectfully, they are reading something out of the
21   claim, and they are doing it in the way where they've
22   pointed to no actual examples in the prior art supporting
23   this construction of base sequence.
24        Again, antisense oligonucleotides have multiple
25   different components; the base sequence, but also other
```

1    specification, that's improper.  And for those reasons, NS's

2    proposed construction should be adopted, Your Honor.

3              THE COURT:  All right.

4              MR. MILLER:  Thank you.

5              THE COURT:  Thank you.

6              All right.  The Court wants to thank counsel on

7    both sides for your presentations today.  The Court will

8    take these matters under advisement and issue a *Markman*

9    ruling as soon as it can.  We've been trying to get them out

10   within 60 days, so we will do our best in keep that up.

11             So with that, that's all I had on the agenda for

12   the day for these parties, so with that we are adjourned.

13             (Whereupon, the following proceeding concluded

14   at 1:13 p.m.)

15             I hereby certify the foregoing is a true

16   and accurate transcript from my stenographic notes in the

17   proceeding.

18                        /s/ Michele L. Rolfe, RPR, CRR
                          U.S. District Court

19

20

21

22

23

24

25

EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

- - -

NIPPON SHINYAKU CO., LTD.,

                        :        CIVIL ACTION

              Plaintiff,        :

v                              :

                              :

SAREPTA THERAPEUTICS, INC.,    :

                              :        NO. 21-1015-LPS

              Defendant.

- - -

Wilmington, Delaware
Monday, December 20, 2021
*Telephonic Oral Argument*

- - -

BEFORE:        HONORABLE LEONARD P. STARK, U.S.D.C.J.

- - -

APPEARANCES:

        MORGAN LEWIS & BOCKIUS
        BY:  AMY M. DUDASH, ESQ.

            and

        MORGAN LEWIS & BOCKIUS
        BY:  AMANDA S. WILLIAMSON, ESQ.
             CHRISTOPHER J. BETTI, ESQ.
             KRISTA V. VENEGAS, ESQ.
             MARIA E. DOUKAS, ESQ., and
             ZACHARY D. MILLER, ESQ.
             (Chicago, Illinois)

                Counsel for Plaintiff

                        Brian P. Gaffigan
                        Official Court Reporter

1    APPEARANCES:   (Continued)

2

3                   MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                    BY:  JACK B. BLUMENFELD, ESQ.

4

5                        and

6                   FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
                    BY:  CHARLES E. LIPSEY, ESQ., and
                         J. DEREK McCORQUINDALE, ESQ.

7                        (Reston, Virginia)

8                        and

9                   FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
                    BY:  MICHAEL J. FLIBBERT, ESQ., and

10                       AARON GLEATON CLAY, ESQ.
                         (Washington, District of Columbia)

11

12                       and

13                  FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
                    BY:  ALISSA K. LIPTON, ESQ.
                         (Boston Massachusetts)

14

15                            Counsel for Defendants

16

17

18

19

20

21

22                            - oOo -

23                    P R O C E E D I N G S

24             (REPORTER'S NOTE:  The following telephonic oral

25    argument was held in chambers, beginning at 4:15 p.m.)

```
 1              THE COURT:  Good afternoon, counsel.  This is
 2   Judge Stark.  Who is there for the plaintiff, please?
 3              MS. DUDASH:  Good afternoon, Your Honor.  This
 4   is Amy Dudash from Morgan Lewis, the plaintiff Nippon
 5   Shinyaku.  And with me on the line also from Morgan Lewis is
 6   Amanda Williamson, Krista Venegas, Chris Betti, Maria Ducas,
 7   and Zachary Miller.  And Ms. Williamson will be presenting
 8   argument on plaintiff's behalf today.
 9              THE COURT:  Okay.  Thank you.
10              And who is there for the defendant, please?
11              MR. BLUMENFELD:  Good afternoon, Your Honor.
12   It's Jack Blumenfeld from Morris Nichols for Sarepta.  We
13   have a number of people on from Finnegan Henderson firm.
14   Mike Flibbert who will be arguing for Sarepta, Charles
15   Lipsey, Aaron Clay, Derek McCorquindale, and Alissa Lipton.
16   And from Sarepta, we have Chris Burney and Jessica Driscoll.
17              THE COURT:  Okay.  Thank you, and good afternoon
18   to all of you.
19              Brian is here as my court reporter; and for the
20   record, it is our case of Nippon Shinyaku Company, Limited
21   versus Sarepta Therapeutics Inc.  It's our Civil Action No.
22   21-1015-LPS.  And we are here to hear argument on the
23   defendant's motion to dismiss and/or strike a couple of the
24   claims in the amended complaint.
25              We're going to move pretty quickly.  I have
```

1    complaint, might state a claim for a declaratory judgment

2    of noninfringement with respect to direct infringement, but

3    the cases that the plaintiff relies on to say that that

4    therefore would give me -- you know, that they have stated

5    adequately a claim that would give me jurisdiction to

6    resolve all infringement issues under all three patents and

7    all three claims -- in all of the claims of those patents

8    under direct and indirect theories, I don't think any of the

9    cases the plaintiff cited read that broadly.

10           I will, however, subject to what I'm about to

11   say next on the rest of the motion, I will grant leave to

12   amend this Claim 2.  The plaintiff has asked for that leave.

13   It is early in this case, even though quite a lot has

14   happened for an early stage case like this one.

15           I don't think there is any real prejudice to the

16   defendant to giving the plaintiff what will be its third

17   chance, but giving them leave to amend.  I think that is

18   consistent with the liberal approach to amendments in the

19   Third Circuit as embodied in Federal Rule of Civil procedure

20   15.

21           Let me turn, though, to the motion to strike.

22   And there, I'm going to divide my analysis between the

23   so-called MCA paragraphs and the non-MCA paragraphs.

24           I'll start with the MCA paragraphs which I

25   understand to be the second sentence of paragraph 2 as well

1    as paragraphs 11, 78, and 91 of the amended complaint.

2          Here, the plaintiff NS argues that it may rely

3    on confidential communications made during the term of the

4    agreement because of the exception in Section 2.2.  And the

5    exception is excerpted in the briefing and it's in the

6    plaintiff's slides.  We talked about it.

7          Basically, I do not agree with NS's reading

8    of Section 2.2.  NS says it's a general prohibition against

9    mentioning confidential communications in legal actions but

10   does not apply here because this case is, in NS's view, an

11   action to enforce the terms of the agreement.

12         In my view, that reading would allow what is I

13   think intended to be and I think is on the language a narrow

14   exception, that is, a narrow exception to the prohibition on

15   use of confidential communications made during the effective

16   period of the MCA.  The plaintiff's interpretation of that

17   narrow exception would be so broad as to essentially swallow

18   all of it.

19         As Sarepta I think persuasively explains, NS's

20   interpretation would allow the parties' confidential

21   information to be used in any claim at all so long as it is

22   contained in the same complaint as a breach of contract

23   claim even if that breach of contract claim lacked merit.

24         And I agree with Sarepta that that is the import

25   of the plaintiff's interpretation.  And I think it's wrong.

1    it's not consistent with the plain language of 2.2, and it's

2    not consistent with the intent of the parties in entering

3    into the MCA.

4            Moreover, I think NS is wrong to view claims 2

5    and 3 as seeking to enforce the terms of the mutual

6    confidential agreement.  Instead, claims 2 and 3 seek

7    declaratory judgments of noninfringement and invalidity of

8    the defendant's UWA patents.  They have nothing to do with

9    legal obligations imposed by the mutual confidentiality

10   agreement.

11           In other words, and relatedly, NS is not seeking

12   by its declaratory judgment claims in claims 2 and 3 to

13   enforce the forum selection clause by pursuing claims 2 and

14   3.  It's merely I suppose arguably complying with its view

15   of the forum selection clause, but in my view, that is

16   quite different than being an action to enforce the forum

17   selection clause or an action more broadly to enforce the

18   MCA.

19           So I don't think -- so I'm granting this portion

20   of the motion.  Permitting NS to violate the confidentiality

21   agreement and use confidential communications between the

22   parties to support Claims 2 and 3 would unfairly prejudice

23   Sarepta which bargained for these communications not to be

24   used except in a cause of action seeking to enforce the

25   parties' agreement.

1    NS agreed not to hold the parties' confidential

2    communications against Sarepta in future litigation such

3    as litigation like a declaratory judgment claim of

4    noninfringement, but now NS is trying to do exactly that,

5    and that cannot be permitted under the terms of the MCA.

6    So the Court will strike the MCA paragraphs to

7    the -- so I will strike those.

8    Let me now turn to the non-MCA paragraphs.  And

9    by that, I mean paragraphs 15 to 21, 82 to 88, and 95 to 101.

10   Again, the relevant provision of the mutual

11   confidentiality agreement is Section 2.2 which applies to

12   all disclosures made in connection with this agreement and

13   the proposed transaction.

14   In Sarepta's view, statements made before the

15   MCA became effective and statements made after its term

16   expired still fall within Section 2.2 because they were

17   related to and, therefore, made in connection with the

18   agreement.

19   In my view, Sarepta is interpreting this aspect

20   of Section 2.2 too expansively.  All disclosures made in

21   connection with this agreement and the proposed transaction

22   in my view more naturally refers to disclosures of

23   confidential information as defined in the agreement.  The

24   agreement defines confidential information as certain

25   information disclosed during the term of the MCA.

1       THE COURT:  Okay.  Thank you all very much.

2    Happy holidays, stay safe, and we are in recess.  Thank you.

3    Bye-bye.

4              (Telephonic oral argument ends at 5:13 p.m.)

5

6       I hereby certify the foregoing is a true and accurate
     transcript from my stenographic notes in the proceeding.

7

8                              /s/ Brian P. Gaffigan
                              Official Court Reporter
9                              U.S. District Court

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

NIPPON SHINYAKU CO., LTD., )
Plaintiff, )
)
)
v. )          C.A. No. 21-1015 (GBW)
)
SAREPTA THERAPEUTICS, INC., )
Defendant. )
)
)
SAREPTA THERAPEUTICS, INC. and )
THE UNIVERSITY OF WESTERN )
AUSTRALIA, Defendant and Counter- )
Plaintiff )
)
v. )
)
NIPPON SHINYAKU CO., LTD. and )
NS PHARMA, INC., Plaintiff and )
Counter-Defendants. )

**EXPERT REBUTTAL REPORT OF DR. MATTHEW J.A. WOOD**

October 11, 2023

Matthew J.A. Wood, F. Med. Sci., MA, D.Phil

I.      INTRODUCTION AND ASSIGNMENT ........................................................... 1

II.     QUALIFICATIONS ......................................................................................... 2

III.    BACKGROUND OF ANALYSIS ..................................................................... 2

        A.      Person of Ordinary Skill in the Art ...................................................... 2

IV.     SCOPE AND CONTENT OF THE PRIOR ART AS OF AUGUST 2011 ...................... 3

        A.      There Were No Recognized "Hot Spots" Within Exon 53 As of August
                2011 ....................................................................................................... 3

        1.      State of the Art as of June 2005 ........................................................... 3

        2.      Wilton '057: January 2006 .................................................................... 6

        3.      Post-2006 Publications ........................................................................ 11

        4.      Sazani and Kole (Sarepta Therapeutics): April 2010 .......................... 22

        5.      Wilton PCT '350: May 2011 ................................................................ 27

        6.      Watanabe et al.: August 2011 ............................................................. 29

        B.      Designing An AON That Would Induce Exon Skipping Was
                Unpredictable As of August 2011 ....................................................... 29

        1.      There Were No Recognized "Hot Spots" as of August 2011. ............. 29

        2.      Sequence Does Not Predict Exon-Skipping Activity .......................... 31

        3.      Dr. Wilton and Sarepta Have Agreed That Exon Skipping Is
                Unpredictable ...................................................................................... 33

V.      RESERVATION OF RIGHTS AND TRIAL EXHIBITS ............................................. 34

## I.     INTRODUCTION AND ASSIGNMENT

1.     I was retained by counsel for Nippon Shinyaku Co. Ltd. ("Nippon Shinyaku") and NS Pharma, Inc. ("NS Pharma," collectively with Nippon Shinyaku "NS") in Nippon Shinyaku Co. Ltd. v. Sarepta Therapeutics, Inc. as an independent technical expert.  In connection with my engagement, I issued a report on September 8, 2023 in which I was asked to provide an opinion concerning the state of the art of exon skipping therapies for treatment of Duchenne muscular dystrophy ("DMD") and what a person of ordinary skill in the art ("POSA") would have understood the inventors of the asserted patents to have invented based on the Specification (the "Opening Report").

2.     On September 8, 2023, counsel for Sarepta Therapeutics, Inc ("Sarepta") and the University of Western Australia ("UWA") served expert reports, including the expert report of Dr. Steve F. Dowdy, Ph.D. (the "Dowdy Report").  I was asked to prepare this rebuttal report to review and respond to the Dowdy Report.[1]  I have reviewed only publicly available information in doing so.

3.     I understand that NS alleges that Sarepta Therapeutics, Inc. ("Sarepta") infringes several of NS's patents and that Sarepta alleges that NS infringes three patents owned by the University of Western Australia ("UWA") and exclusively licensed by Sarepta.  More specifically, I understand NS has asserted claims 1-3 of U.S. Patent No. 10,385,092 ("the '092 patent"); claims 1-2 of U.S. Patent No. 10,407,461 ("the '461 patent"); claims 1-2 of U.S. Patent No. 10,487,106 ("the '106 patent"); claims 1-12 of U.S. Patent No. 10,647,741 ("the '741 patent"); claims 1-4 of

---

[1] I received a copy of the Dowdy Report in redacted form.  I understand the redactions covered Sarepta confidential information.

U.S. Patent No. 10,662,217 ("the '217 patent"); and claims 1-4 and 6-9 of U.S. Patent No. 10,683,322 ("the '322 patent") (collectively, the "NS Patents") against Sarepta and UWA.

4.    I understand from counsel for NS ("counsel") that I may be provided additional information as this case proceeds. Accordingly, I may need to change or augment my analysis and opinions in light of any new information or evidence that is presented after this Report. I expressly reserve the right to do so.

5.    My consulting rate for this case is £650 GBP per hour. My compensation is not related to the outcome of this action, and I have no financial interest in the outcome of this case.

## II.    QUALIFICATIONS

6.    A discussion of my qualifications to testify about my opinions herein, was provided in my Opening Report.

## III.    BACKGROUND OF ANALYSIS

7.    In considering and forming my opinion, I have reviewed and analyzed the information and materials identified in this Report. As stated, a list of the materials I reviewed in preparation of this report is attached as Exhibit 1.

8.    I am not an attorney and do not have formal training in the law regarding patents. This section presents my understanding of currently applicable legal principles, explained to me by counsel, which I have used in forming my opinions.

### A.    Person of Ordinary Skill in the Art

9.    I am informed that a POSA is a hypothetical person skilled in the relevant art, not a judge, not a layperson, not a person skilled in the remote arts, and not a genius in the relevant art. Relevant factors in determining the level of ordinary skill in the art include the educational level of the inventors of the patent in suit and of those working in the field at the relevant time.

2



# EXHIBIT 4

**Planet Depos**

We Make It *Happen*™

# Transcript of Michelle Hastings, Ph.D.

**Date:** November 17, 2023
**Case:** Nippon Shinyaku Co., Ltd. -v- Sarepta Therapeutics, Inc.

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

```
1              IN THE UNITED STATES DISTRICT COURT

2                 FOR THE DISTRICT OF DELAWARE

3        -----------------------------X

4      NIPPON SHINYAKU CO., LTD.,      :

5                    Plaintiff,        :

6           v.                         :

7      SAREPTA THERAPEUTICS,           :

8      INC.,                           :

9                    Defendant.        :

10       -------------------------  :  C.A. No. 21-1015 (GBW)

11     SAREPTA THERAPEUTICS, INC.,     :

12     and THE UNIVERSITY OF           :

13     WESTERN AUSTRALIA,              :

14     Defendant/Counter-Plaintiffs,  :

15          v.                         :

16     NIPPON SHINYAKU CO.,            :

17     LTD., and NS PHARMA, INC.,      :

18     Plaintiff/Counter-Defendants.  :

19       ----------------------------X

20      Videotaped Deposition of MICHELLE HASTINGS, PhD

21                  Chicago, Illinois

22          Friday, November 17, 2023-8:14 a.m. CST

23     Job No.:  512863

24     Pages:  1 - 269

25     Reported by:  THERESA A. VORKAPIC, CSR, RMR, CRR, RPR
```

Transcript of Michelle Hastings, Ph.D.
Conducted on November 17, 2023                    2

1       Videctaped deposition of Michelle Hastings,

2   PhD, held at the location of:

3

4           Morgan Lewis & Bockius LLP

5           110 North Wacker Drive

6           Chicago, Illinois 60601

7           312-324-1000

8

9       Pursuant to notice before Theresa A. Vorkapic,

10   a Certified Shorthand Reporter, Registered Merit

11   Reporter, Certified Realtime Reporter, Registered

12   Professional Reporter and a Notary Public in and

13   for the State of Illinois.

14

15

16

17

18

19

20

21

22

23

24

25

```
 1            A P P E A R A N C E S
 2   ON BEHALF OF THE PLAINTIFF/
 3   COUNTER-DEFENDANTS NIPPON SHINYAKU AND NS
 4   PHARMA:
 5       AMANDA S. WILLIAMSON, ESQUIRE
 6       GUYLAINE HACHÉ, PH.D., ESQUIRE
 7       CHRISTOPHER J. BETTI, Ph.D., ESQUIRE
 8       MORGAN LEWIS & BOCKIUS LLP
 9       110 North Wacker Drive
10       Chicago, Illinois 60606-1511
11       312-324-1450
12
13   ON BEHALF OF THE DEFENDANT/COUNTER-PLAINTIFF
14   SAREPTA THERAPEUTICS, INC:
15       WILLIAM B. RAICH, Ph.D., ESQUIRE
16       YOONJIN LEE, Ph.D., ESQUIRE
17       FINNEGAN HENDERSON FARABOW GARRETT &
18       DUNNER LLP
19       901 New York Avenue, NW
20       Washington, DC 20001-4413
21       202-408-4210
22
23   ALSO PRESENT:
24       Richard Figueroa , Videographer, Planet
25        Depos
```

Transcript of Michelle Hastings, Ph.D.
Conducted on November 17, 2023                    4

```
 1                  C O N T E N T S

 2   EXAMINATION OF MICHELLE HASTINGS         PAGE

 3        Examination By Mr. Raich              8

 4        Examination By Ms. Williamson       248

 5        Further Examination By Mr. Raich    256

 6        Further Exam By Ms. Williamson      267

 7

 8                  E X H I B I T S

 9             (Attached to transcript.)

10   HASTINGS DEPOSITION EXHIBITS             PAGE

11

12    Exhibit 1     Expert Report of Michelle L.   16

13                  Hastings

14    Exhibit 2     Responsive Expert Report of    16

15                  Michelle L. Hastings

16    Exhibit 3     Reply Expert Report of         16

17                  Michelle L. Hastings

18    Exhibit 4     Dowdy Rebuttal Expert Report   51

19    Exhibit 5     Wood Rebuttal Expert Report    53

20    Exhibit 6     Declaration of Michelle L.     71

21                  Hastings

22    Exhibit 7     Memorandum Opinion             86

23    Exhibit 9     Hinrich, et al.               216

24

25
```

```
1                    I N D E X (Continued)

2    Exhibit 10    Depreux, et al.                223

3    Exhibit 11    Chang, et al.                  224

4    Exhibit 12    Michaels/Bridges/Hastings

5                  article

6    Exhibit 13    Centa, et al.                  226

7    Exhibit 14    Open reading frame...          227

8                  Michaels, et al.

9    Exhibit 15    Journal of "Nucleic Acids      229

10                 Research" Michaels article

11   Exhibit 16    NS00153927                     106

12   Exhibit 17    NS00153963                     106

13   Exhibit 18    NS00102924                      42

14   Exhibit 19    NS00102988                     106

15   Exhibit 20    NS00103061                     106

16   Exhibit 21    US Patent No. 9,840,706        116

17   Exhibit 22    US Patent Publication          117

18                 2023/0097387

19   Exhibit 23    US Patent No. 10,144,931       118

20   Exhibit 25    US Patent No. 9,994,851         42

21   Exhibit 24    International Publication       119

22                 No. WO 2020/089325

23   Exhibit 28    SRPT-VYDS-0008510              176

24   Exhibit 29    Neuromuscular Disorders        201

25
```

Transcript of Michelle Hastings, Ph.D.
Conducted on November 17, 2023                          6

```
 1              I N D E X (Continued)

 2   Exhibit 37   SRPT-VYDS-0057510           204

 3   Exhibit 38   SRPT-VYDS-0072805           205

 4   Exhibit 39   SRPT-VYDS-0074084           206

 5   Exhibit 40   Amendment and Reply Under 37  208

 6                CFR 1.11

 7   Exhibit 43   Nippon Shinyaku Co. Ltd's    20

 8                Final Invalidity Contentions

 9   Exhibit 44   US Publication No.           57

10                2007/0082861

11   Exhibit 45   PCT WO 2004/083432           58

12   Exhibit 46   US Patent No. 9,353,371     242

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Transcript of Michelle Hastings, Ph.D.
Conducted on November 17, 2023                    7

| | | |
|---|---|---|
| 1 | P R O C E E D I N G S | 08:14:39 |
| 2 | THE VIDEOGRAPHER:  Here begins Media No. 1 | 08:14:40 |
| 3 | in the videotaped deposition of Michelle Hastings | 08:14:47 |
| 4 | in the matter of Nippon Shinyaku Co., Ltd versus | 08:14:51 |
| 5 | Sarepta Therapeutics, Inc. in the court of the | 08:14:58 |
| 6 | United States District Court for the District of | 08:14:58 |
| 7 | Delaware, Case No. 21-1015. | 08:15:00 |
| 8 | Today's date is November 17, 2023.  The | 08:15:03 |
| 9 | time on the video monitor is 8:14 a.m.  The | 08:15:07 |
| 10 | videographer today is Richard Figueroa | 08:15:12 |
| 11 | representing Planet Depos.  This deposition is | 08:15:14 |
| 12 | taking place at 110 North Wacker Drive, Chicago, | 08:15:16 |
| 13 | Illinois 60601. | 08:15:20 |
| 14 | Would counsel please voice-identify | 08:15:22 |
| 15 | themselves and state whom they represent. | 08:15:26 |
| 16 | MR. RAICH:  Bill Raich of Finnegan for | 08:15:28 |
| 17 | Sarepta and University of the Western Australia. | 08:15:31 |
| 18 | With me today is my colleague Yoonjin Lee, also of | 08:15:33 |
| 19 | Finnegan. | 08:15:37 |
| 20 | MS. WILLIAMSON:  Ananda Williamson from | 08:15:37 |
| 21 | Morgan Lewis representing NS Pharma and Nippon | 08:15:38 |
| 22 | Shinyaku.  I have with me Guylaine Haché and | 08:15:42 |
| 23 | Christopher Betti, also from Morgan Lewis. | 08:15:46 |
| 24 | THE VIDEOGRAPHER:  The court reporter | 08:15:49 |
| 25 | today is Theresa Vorkapic representing | 08:15:51 |

Transcript of Michelle Hastings, Ph.D.
Conducted on November 17, 2023                    8

```
1    Planet Depos.                                    08:15:53
2         The witness will now be sworn.              08:15:53
3         THE REPORTER: Would you raise your right
4    hand, please.
5         (The witness was duly sworn.)               08:16:02
6              MICHELLE HASTINGS, PhD,
7    called as a witness herein, having been first duly
8    sworn, was examined and testified as follows:
9                   EXAMINATION                       08:16:03
10   BY MR. RAICH:                                    08:16:03
11      Q  Good morning, Dr. Hastings.                08:16:08
12      A  Good morning.                              08:16:09
13      Q  Could you please state your full name and  08:16:11
14   address for the record.                          08:16:12
15      A  Michelle Laura Hastings, 3510 West         08:16:13
16   Windemere Court, Ann Arbor, Michigan 48105.      08:16:18
17      Q  And you understand that you're testifying  08:16:21
18   today as an expert on behalf of Nippon Shinyaku  08:16:23
19   and NS Pharma in a civil action before the       08:16:26
20   District Court of Delaware?                      08:16:28
21      A  Yes.                                        08:16:29
22      Q  For today's deposition, if I refer to      08:16:30
23   Nippon Shinyaku and NS Pharma as NS, you'll know 08:16:33
24   what I mean?                                     08:16:37
25      A  Yes.                                        08:16:38
```

Transcript of Michelle Hastings, Ph.D.
Conducted on November 17, 2023                    9

| | | |
|---|---|---|
| 1 | Q  You understand that the other parties | 08:16:39 |
| 2 | involved in this civil action are | 08:16:41 |
| 3 | Sarepta Therapeutics and the University of Western | 08:16:43 |
| 4 | Australia? | 08:16:46 |
| 5 | A  I do, yes. | 08:16:46 |
| 6 | Q  For today's deposition, if I refer to | 08:16:47 |
| 7 | Sarepta Therapeutics as Sarepta, you'll know what | 08:16:50 |
| 8 | I mean? | 08:16:54 |
| 9 | A  Yes. | 08:16:54 |
| 10 | Q  And if I refer to the University of | 08:16:55 |
| 11 | Western Australia as UWA, you'll know what I mean? | 08:16:57 |
| 12 | A  I will. | 08:16:59 |
| 13 | Q  Have you ever been deposed before? | 08:17:01 |
| 14 | A  I -- I have not. | 08:17:03 |
| 15 | Q  Have you ever testified at trial? | 08:17:05 |
| 16 | A  No. | 08:17:07 |
| 17 | Q  Have you ever testified at another | 08:17:09 |
| 18 | judicial proceeding? | 08:17:12 |
| 19 | A  No. | 08:17:13 |
| 20 | Q  Before we start, I'm going to go over a | 08:17:14 |
| 21 | few ground rules. | 08:17:18 |
| 22 | First of all, you understand that you are | 08:17:18 |
| 23 | under oath? | 08:17:19 |
| 24 | A  I do. | 08:17:20 |
| 25 | Q  Throughout the deposition, your counsel | 08:17:20 |

Transcript of Michelle Hastings, Ph.D.
Conducted on November 17, 2023                    10

```
 1   may object to some of my questions, but unless        08:17:24
 2   you're instructed not to answer, you understand       08:17:26
 3   that you have to answer my questions?                  08:17:28
 4       A  Yes, I understand.                              08:17:30
 5       Q  If you don't understand any of my               08:17:32
 6   questions today, please let me know and I'll do my     08:17:34
 7   best to clarify them.  If you answer my question,      08:17:36
 8   I'm going to assume that you understood the            08:17:39
 9   question.                                              08:17:41
10       Is that fair?                                      08:17:41
11       A  Yes.                                            08:17:42
12       Q  We'll plan to take breaks approximately         08:17:43
13   every hour or so.  If you need to take a break at      08:17:46
14   any time, please let me know.  All I ask is if         08:17:49
15   there's a question pending, that you provide an        08:17:52
16   answer before we take a break, okay?                   08:17:54
17       A  Yes.                                            08:17:56
18       Q  We have a court reporter who needs to           08:17:57
19   transcribe your answers.  So you need to give          08:18:00
20   audible answers, understood?                           08:18:02
21       A  Yes.                                            08:18:03
22       Q  We can help the court reporter by not           08:18:04
23   talking over one another.  So if you let me finish     08:18:07
24   my questions before giving your answers, I'll          08:18:10
25   endeavor to let you give complete answers before       08:18:13
```

Transcript of Michelle Hastings, Ph.D.
Conducted on November 17, 2023

11

| | | |
|---|---|---|
| 1 | asking my next question.  Understood? | 08:18:15 |
| 2 | A  Yes. | 08:18:16 |
| 3 | Q  Is there any reason that you are unable to | 08:18:17 |
| 4 | answer any of my questions truthfully and | 08:18:20 |
| 5 | accurately today? | 08:18:22 |
| 6 | A  I don't think so. | 08:18:23 |
| 7 | Q  Were you aware of the work of Dr. Wilton | 08:18:26 |
| 8 | prior to this litigation? | 08:18:29 |
| 9 | A  I'm sorry, was I aware of him? | 08:18:32 |
| 10 | Q  Yes. | 08:18:34 |
| 11 | A  Prior to the beginning of the litigation. | 08:18:35 |
| 12 | Yes, I was familiar with some of the work. | 08:18:44 |
| 13 | Q  Is Dr. Wilton a respected scientist in the | 08:18:46 |
| 14 | field of antisense oligonucleotides? | 08:18:52 |
| 15 | A  He's in sort of a niche area in Duchenne's | 08:18:52 |
| 16 | muscular dystrophy. | 08:18:59 |
| 17 | Q  To your knowledge, is Dr. Wilton a | 08:18:59 |
| 18 | respected scientist in the field of antisense | |
| 19 | oligonucleotides for the treatment of Duchenne | 08:19:03 |
| 20 | muscular dystrophy? | 08:19:06 |
| 21 | A  I'm not -- I guess I'm not really able to | 08:19:06 |
| 22 | comment on how well he's respected. | 08:19:09 |
| 23 | Q  Is that because you don't work in the area | 08:19:11 |
| 24 | of antisense oligonucleotides for Duchenne's | 08:19:12 |
| 25 | muscular dystrophy? | 08:19:17 |

PLANET DEPOS
888.433.3767 | WWW.PLANETDEPOS.COM

Transcript of Michelle Hastings, Ph.D.
Conducted on November 17, 2023                    72

| | | |
|---|---|---|
| 1 | construction declaration, correct? | 10:38:36 |
| 2 | A  I haven't reviewed this in a while.  I | 10:38:37 |
| 3 | just can't -- I would have to -- I can't -- | 10:38:39 |
| 4 | MS. WILLIAMSON:  Take the time you need. | 10:38:45 |
| 5 | BY THE WITNESS: | 10:41:09 |
| 6 | A  In the document we discuss in several | 10:41:10 |
| 7 | places the -- we talk about antisense | 10:41:11 |
| 8 | oligonucleotides. | 10:41:20 |
| 9 | BY MR. RAICH: | 10:41:21 |
| 10 | Q  Okay.  And did you offer a definition of | 10:41:21 |
| 11 | antisense oligonucleotides? | 10:41:22 |
| 12 | A  I haven't found yet that we say "antisense | 10:41:30 |
| 13 | oligonucleotide is defined as."  There's many | 10:41:33 |
| 14 | sentences that talk about what an antisense | 10:41:36 |
| 15 | oligonucleotide is. | 10:41:37 |
| 16 | Q  Okay.  Can you direct me to the sentence | 10:41:47 |
| 17 | where you stated what an antisense oligonucleotide | 10:41:48 |
| 18 | is? | 10:41:51 |
| 19 | A  It's difficult to pick out because much of | 10:42:43 |
| 20 | the document is about the antisense. | 10:42:48 |
| 21 | Q  So sitting here today, you cannot point me | 10:42:49 |
| 22 | to a place in your claim construction declaration | 10:42:51 |
| 23 | where you offered a definition of what the term | 10:42:56 |
| 24 | "antisense oligonucleotide" means? | 10:42:59 |
| 25 | A  Where we say the definition of an | 10:43:02 |

Transcript of Michelle Hastings, Ph.D.
Conducted on November 17, 2023                          73

1    antisense oligonucleotide?                              10:43:06

2        Q   Yes.                                            10:43:07

3        A   I would have to read the entire thing to        10:43:08

4    feel comfortable saying that, or piece together,        10:43:10

5    again, where exactly we say it's complementary to       10:43:17

6    a target region.  I mean, there are things              10:43:20

7    throughout.  We are talking about the                   10:43:39

8    complementarity of the antisense oligonucleotide,       10:43:40

9    which is essentially how they are defined.              10:43:44

10       Q   Dr. Hastings, in practicing the claims of       10:43:46

11   the Wilton patents, would a person of skill in the      10:43:54

12   art make her best efforts to induce exon 53             10:43:56

13   skipping?                                               10:43:59

14       MS. WILLIAMSON:  Objection.  Form.                  10:44:00

15   BY THE WITNESS:                                         10:44:12

16       A   Can you repeat the question?                    10:44:13

17   BY MR. RAICH:                                           10:44:13

18       Q   Sure.                                           10:44:14

19       In practicing the claims of the Wilton             10:44:14

20   patents, would a person of skill in the art make        10:44:16

21   her best efforts to induce exon 53 skipping?            10:44:17

22       MS. WILLIAMSON:  Objection.  Incomplete             10:44:30

23   hypothetical.                                           10:44:31

24   BY THE WITNESS:                                         10:44:32

25       A   I'd have to just look at the claims again       10:44:32

Transcript of Michelle Hastings, Ph.D.
Conducted on November 17, 2023

96

| | | |
|---|---|---|
| 1 | A I'm not sure. I'm not sure what you mean | 11:24:38 |
| 2 | by that. | 11:24:40 |
| 3 | | 11:24:40 |
| 4 | | 11:24:42 |
| 5 | | 11:24:44 |
| 6 | | 11:24:48 |
| 7 | | 11:24:57 |
| 8 | | 11:25:08 |
| 9 | | 11:25:12 |
| 10 | | 11:25:13 |
| 11 | | 11:25:16 |
| 12 | | 11:25:20 |
| 13 | | 11:25:31 |
| 14 | | 11:25:32 |
| 15 | | 11:25:36 |
| 16 | | 11:25:38 |
| 17 | | 11:25:43 |
| 18 | | 11:25:45 |
| 19 | | 11:25:54 |
| 20 | | 11:25:59 |
| 21 | | 11:26:01 |
| 22 | | 11:26:05 |
| 23 | | 11:26:09 |
| 24 | | 11:26:11 |
| 25 | | 11:26:17 |

Transcript of Michelle Hastings, Ph.D.
Conducted on November 17, 2023

97

| # | Time |
|---|------|
| 1 | 11:26:22 |
| 2 | 11:26:23 |
| 3 | 11:26:27 |
| 4 | 11:26:31 |
| 5 | 11:26:35 |
| 6 | 11:26:40 |
| 7 | 11:26:42 |
| 8 | 11:26:45 |
| 9 | 11:26:49 |
| 10 | 11:26:52 |
| 11 | 11:27:18 |
| 12 | 11:27:00 |
| 13 | 11:27:02 |
| 14 | 11:27:04 |
| 15 | 11:27:06 |
| 16 | 11:27:09 |
| 17 | 11:27:13 |
| 18 | 11:27:18 |
| 19 | 11:27:19 |
| 20 | 11:27:23 |
| 21 | 11:27:23 |
| 22 | 11:27:40 |
| 23 | 11:27:42 |
| 24 | 11:27:57 |
| 25 | 11:28:01 |

Transcript of Michelle Hastings, Ph.D.
Conducted on November 17, 2023

106

| | | |
|---|---|---|
| 1 | | 11:42:49 |
| 2 | MR. RAICH:  Okay.  Let's take a break. | 11:42:51 |
| 3 | THE VIDEOGRAPHER:  We're going off the | 11:42:55 |
| 4 | record.  The time is 11:42 a.m. | 11:42:56 |
| 5 | (A recess was had.) | 11:43:04 |
| 6 | THE VIDEOGRAPHER:  We are going back on | 12:01:50 |
| 7 | the record.  The time is 12:02 p.m. | 12:01:55 |
| 8 | MR. RAICH:  I'm going to mark four | 12:02:00 |
| 9 | additional exhibits.  Hastings Exhibit 16 is a | 12:02:01 |
| 10 | CERI report labeled with Bates Nos. NS153927 | 12:02:06 |
| 11 | through 962. | 12:02:18 |
| 12 | Hastings Exhibit 17 is a CERI report | 12:02:34 |
| 13 | bearing Bates Nos. NS153963 through 997. | 12:02:39 |
| 14 | Hastings Exhibit 19 is a CERI report | 12:02:51 |
| 15 | bearing Bates numbers NS102988 through 3060. | 12:02:55 |
| 16 | And Hastings Exhibit 20 is a CERI report | 12:03:18 |
| 17 | bearing Bates numbers NS103061 through 110. | 12:03:22 |
| 18 | (Certain documents were marked Hastings | 12:03:48 |
| 19 | Deposition Exhibits 16-20 for | |
| 20 | identification, as of 11/17/2023.) | 12:03:49 |
| 21 | BY MR. RAICH: | 12:03:49 |
| 22 | Q  Dr. Hastings, these are reports from | 12:03:49 |
| 23 | Chemicals Evaluation & Research Institute known as | 12:03:53 |
| 24 | CERI, correct? | 12:03:56 |
| 25 | A  Correct. | 12:04:03 |

Transcript of Michelle Hastings, Ph.D.
Conducted on November 17, 2023

107

| | | |
|---|---|---|
| 1 | Q   When did you first get involved with CERI? | 12:04:03 |
| 2 | MS. WILLIAMSON:  Objection.  Vague. | 12:04:13 |
| 3 | BY THE WITNESS: | 12:04:14 |
| 4 | A   Specifically with CERI or designing the | 12:04:15 |
| 5 | experiments? | 12:04:17 |
| 6 | BY MR. RAICH: | |
| 7 | Q   With CERI? | 12:04:20 |
| 8 | A   I can't remember. | 12:04:20 |
| 9 | Q   Do you know about when that would have | 12:04:22 |
| 10 | occurred? | 12:04:23 |
| 11 | A   Probably in 2021. | 12:04:39 |
| 12 | | 12:04:40 |
| 13 | | 12:04:44 |
| 14 | | 12:04:48 |
| 15 | | 12:04:56 |
| 16 | | 12:05:00 |
| 17 | | 12:05:04 |
| 18 | | 12:05:06 |
| 19 | | 12:05:08 |
| 20 | | 12:05:11 |
| 21 | | 12:05:14 |
| 22 | | 12:05:23 |
| 23 | | 12:05:25 |
| 24 | | 12:05:28 |
| 25 | | 12:05:29 |

Transcript of Michelle Hastings, Ph.D.
Conducted on November 17, 2023

108

|  |  |  |
|---|---|---|
| 1 | | 12:05:31 |
| 2 | | 12:05:40 |
| 3 | | 12:05:43 |
| 4 | | 12:05:44 |
| 5 | | 12:05:47 |
| 6 | | 12:05:48 |
| 7 | | 12:05:51 |
| 8 | | 12:05:51 |
| 9 | | 12:05:52 |
| 10 | | 12:05:58 |
| 11 | | 12:06:00 |
| 12 | MS. WILLIAMSON: Objection. | 12:06:01 |
| 13 | Mischaracterizes testimony. | 12:06:01 |
| 14 | You can -- you can identify attorneys, but | 12:06:07 |
| 15 | I think we're getting into work product and | 12:06:08 |
| 16 | attorney-client privilege at this point. So I | 12:06:11 |
| 17 | don't -- | 12:06:16 |
| 18 | THE WITNESS: So I can mention attorneys? | 12:06:16 |
| 19 | MS. WILLIAMSON: You can identify who on | 12:06:18 |
| 20 | the Morgan Lewis team you've worked with. | 12:06:19 |
| 21 | THE WITNESS: Okay. | 12:06:25 |
| 22 | BY THE WITNESS: | 12:06:25 |
| 23 | A  I primarily worked with Michael Sikora. | 12:06:26 |
| 24 | He and I had many discussions. | 12:06:30 |
| 25 | BY MR. RAICH: | 12:06:33 |

Transcript of Michelle Hastings, Ph.D.
Conducted on November 17, 2023                    124

| | | |
|---|---|---|
| 1 | you're asking about, we used those examples to | 12:30:21 |
| 2 | demonstrate that using one that was shorter would | 12:30:26 |
| 3 | have worked. | 12:30:31 |
| 4 | Q  Okay.  You would agree that -- well, | 12:30:35 |
| 5 | strike that. | 12:30:43 |
| 6 | I'd like to turn to the '851 patent which | 12:30:44 |
| 7 | was previously marked as Hastings Exhibit 25.  And | 12:30:57 |
| 8 | could you turn, please, to Table 39 of the '851 | 12:31:20 |
| 9 | patent, which is on Column 65. | 12:31:22 |
| 10 | A  I see that. | 12:31:36 |
| 11 | | 12:31:47 |
| 12 | | 12:31:50 |
| 13 | | 12:31:54 |
| 14 | | 12:32:12 |
| 15 | | 12:32:15 |
| 16 | | 12:32:18 |
| 17 | | 12:32:18 |
| 18 | | 12:32:25 |
| 19 | | 12:33:36 |
| 20 | | 12:33:44 |
| 21 | | 12:33:47 |
| 22 | | 12:33:48 |
| 23 | | 12:33:54 |
| 24 | | 12:33:55 |
| 25 | | 12:33:56 |

Transcript of Michelle Hastings, Ph.D.
Conducted on November 17, 2023

125

| 1 | | 12:34:01 |
| 2 | | 12:34:05 |
| 3 | | 12:34:06 |
| 4 | | 12:34:09 |
| 5 | | 12:34:10 |
| 6 | | 12:34:11 |
| 7 | | 12:34:15 |
| 8 | | 12:34:21 |
| 9 | | 12:34:21 |
| 10 | | 12:34:23 |
| 11 | | 12:34:24 |
| 12 | | 12:34:26 |
| 13 | | 12:34:32 |
| 14 | | 12:34:37 |
| 15 | | 12:34:38 |
| 16 | | 12:34:40 |
| 17 | | 12:34:41 |
| 18 | | 12:34:47 |
| 19 | | 12:34:50 |
| 20 | | 12:34:56 |
| 21 | | 12:35:01 |
| 22 | | 12:35:01 |
| 23 | Q  Could you turn to Table 1A of the '851 | 12:35:02 |
| 24 | patent which starts on Column 7. | 12:35:06 |
| 25 | A  Okay. | 12:35:28 |

Transcript of Michelle Hastings, Ph.D.
Conducted on November 17, 2023

126

| | | |
|---|---|---|
| 1 | Q  The antisense oligonucleotides listed in | 12:35:29 |
| 2 | Table 39 are also listed in Table 1A, correct? | 12:35:32 |
| 3 | A  I don't recall if they're all there, but | 12:35:57 |
| 4 | there's a lot of them there. | 12:35:59 |
| 5 | Q  You see that Table 65 includes SEQ ID | 12:36:03 |
| 6 | Nos. -- excuse me. | 12:36:11 |
| 7 | Table 39 includes SEQ ID Nos. 191 through | 12:36:12 |
| 8 | 202? | 12:36:17 |
| 9 | A  Table 1A? | 12:36:19 |
| 10 | Q  Table 39 at Column 65. | 12:36:21 |
| 11 | A  Oh, right.  Sorry. | 12:36:24 |
| 12 | Q  Includes SEQ ID Nos. 191 through 202, | 12:36:26 |
| 13 | correct? | 12:36:31 |
| 14 | A  Yes. | 12:36:31 |
| 15 | Q  And you would agree with me that Table 1A | 12:36:39 |
| 16 | also includes SEQ ID Nos. 191 through 202, | 12:36:43 |
| 17 | correct? | 12:36:48 |
| 18 | A  Yes. | 12:36:49 |
| 19 | Q  If you look at the heading of Table 1A, it | 12:36:56 |
| 20 | provides a description of 2'-C-methyl | 12:36:59 |
| 21 | phosphorothioate antisense oligonucleotides that | 12:37:05 |
| 22 | have been used to date to study induced exon | 12:37:07 |
| 23 | skipping, correct? | 12:37:10 |
| 24 | A  Yes. | 12:37:29 |
| 25 | Q  And the table that led you to Table 1A | 12:37:38 |

Transcript of Michelle Hastings, Ph.D.
Conducted on November 17, 2023

127

```
1    says:  "Since these 2'-O-nethyl antisense        12:37:42

2    oligonucleotides are more RNA-like, U represents   12:37:46

3    uracil," correct?                                  12:37:48

4        A  That's right, that's what that says.        12:37:53

5        Q  And the table legend of Table 1A further    12:38:01

6    states:  "With other antisense chemistries such as 12:38:05

7    peptide nucleic acids morpholinos these U bases    12:38:09

8    may be shown as 'T,'" correct?                     12:38:16

9        A  That's what that says, yes.                 12:38:17

10       Q  And T in this context refers to thymine,    12:38:18

11   correct?                                           12:38:22

12       A  Correct.                                    12:38:22

13       Q  If you turn to the claims of the '851       12:38:23

14   patent, Columns 141 to 142.                        12:38:26

15       A  Yes.                                        12:38:35

16       Q  And if you look at Claim 1 of the '851      12:38:42

17   patent, you would agree that it does not require   12:38:48

18   any particular level of exon 53 skipping, correct? 12:38:51

19       A  In Claim 1?                                 12:38:56

20       Q  In Claim 1.                                 12:38:58

21       A  Right.  It only just says induces exon 53   12:39:07

22   skipping.                                          12:39:12

23       Q  And likewise, Claim 2 of the '851 patent    12:39:16

24   does not require any particular level of exon 53   12:39:22

25   skipping, correct?                                 12:39:26
```

Transcript of Michelle Hastings, Ph.D.
Conducted on November 17, 2023

128

| | | |
|---|---|---|
| 1 | A   Correct. | 12:39:35 |
| 2 | Q   The asserted claims of the Wilton patents | 12:39:41 |
| 3 | require that the antisense oligonucleotides that | 12:39:44 |
| 4 | are encompassed by the claims must induce exon 53 | 12:39:46 |
| 5 | skipping, correct? | 12:39:50 |
| 6 | A   As I read it, yes. | 12:40:02 |
| 7 | Q   And, Dr. Hastings, you understand that as | 12:40:12 |
| 8 | the patent challenger, Nippon Shinyaku bears the | 12:40:13 |
| 9 | burden of showing that the Wilton patents are | 12:40:19 |
| 10 | invalid, correct? | 12:40:20 |
| 11 | MS. WILLIAMSON:  Objection.  Calls for a | 12:40:22 |
| 12 | legal conclusion. | |
| 13 | MR. RAICH:  I'm just asking for her | 12:40:26 |
| 14 | understanding. | 12:40:27 |
| 15 | BY THE WITNESS: | 12:40:28 |
| 16 | A   Can you repeat that again? | 12:40:28 |
| 17 | BY MR. RAICH: | 12:40:29 |
| 18 | Q   You understand that as the patent | 12:40:30 |
| 19 | challenger, Nippon Shinyaku bears the burden of | 12:40:31 |
| 20 | showing that the Wilton patents are invalid, | 12:40:34 |
| 21 | correct? | 12:40:36 |
| 22 | A   I'm not a hundred percent confident in the | 12:40:45 |
| 23 | legal terms, but -- | 12:40:47 |
| 24 | Q   Why don't we look at your opening expert | 12:40:49 |
| 25 | report, Paragraph 33. | 12:40:52 |

Transcript of Michelle Hastings, Ph.D.
Conducted on November 17, 2023

130

1                                                    12:42:44
2                                                    12:42:50
3                                                    12:42:53
4                                                    12:42:55
5                                                    12:42:55
6                                                    12:43:05
7                                                    12:43:18
8                                                    12:43:21
9                                                    12:43:28
10                                                   12:43:29
11                                                   12:43:30
12                                                   12:43:34
13                                                   12:43:36
14                                                   12:43:42
15                                                   12:43:47
16                                                   12:43:51
17                                                   12:43:56
18                                                   12:43:56
19                                                   12:43:58
20                                                   12:44:00
21                                                   12:44:02
22                                                   12:44:10
23                                                   12:44:12
24                                                   12:44:13
25                                                   12:44:16

Transcript of Michelle Hastings, Ph.D.
Conducted on November 17, 2023

229

| | | |
|---|---|---|
| 1 | | 17:04:12 |
| 2 | | 17:04:15 |
| 3 | | 17:04:19 |
| 4 | | 17:04:26 |
| 5 | | 17:04:27 |
| 6 | | 17:04:29 |
| 7 | | 17:04:32 |
| 8 | | 17:04:34 |
| 9 | | 17:04:38 |
| 10 | | 17:04:42 |
| 11 | | 17:04:45 |
| 12 | | 17:04:48 |
| 13 | | 17:04:51 |
| 14 | | 17:04:51 |
| 15 | | 17:04:55 |
| 16 | | 17:04:58 |
| 17 | | 17:05:00 |
| 18 | Q  I am handing you what's been marked as | 17:05:09 |
| 19 | Hastings Exhibit 15, Michaels, et al. published in | 17:05:11 |
| 20 | the journal of "Nucleic Acids Research" in 2020. | 17:05:14 |
| 21 | (A certain document was marked Hastings | 17:05:25 |
| 22 | Deposition Exhibit 15 for identification, | |
| 23 | as of 11/17/2023.) | 17:05:26 |
| 24 | BY MR. RAICH: | 17:05:26 |
| 25 | Q  Dr. Hastings, you are the corresponding | 17:05:26 |

Transcript of Michelle Hastings, Ph.D.
Conducted on November 17, 2023

240

```
 1      A  All right.  I'll go back to the report,      17:22:06
 2   then, the rebuttal that's referred to in this --    17:22:09
 3   in this paragraph, I guess.                         17:22:15
 4   BY MR. RAICH:                                       17:22:16
 5      Q  Dr. Hastings, have you been able to find      17:27:09
 6   where you addressed it in your rebuttal report?     17:27:11
 7      A  I'm still looking through the numbers.        17:27:13
 8   Q  Okay.
 9      A  Thank you.                                    17:27:15
10      Q  I'd like to ask you another question.        17:27:15
11         Could you turn back to the Michaels 2020     17:27:19
12   paper that was Hastings Exhibit 15?                 17:27:21
13      A  Yes.                                          17:27:32
14      Q  And there on the first page, in the last     17:27:43
15   sentence -- do you have Michaels 2020 Exhibit 15?   17:27:45
16      A  Oh, yes.  This is 15?  18?  Yes, I have       17:27:53
17   that.                                               17:27:57
18      Q  And if you look on the first page in the     17:27:59
19   last sentence, you wrote:  "Antisense              17:28:01
20   oligonucleotides are short, chemically modified     17:28:05
21   oligonucleotides that bind to a target sequence     17:28:17
22   through complementary anti-parallel base-pairing,"  17:28:09
23   correct?                                            17:28:13
24      A  Correct.                                      17:28:13
25                                                       17:28:14
```

Transcript of Michelle Hastings, Ph.D.
Conducted on November 17, 2023                241



| | | |
|---|---|---|
| 1 | | 17:28:17 |
| 2 | | 17:28:31 |
| 3 | | 17:28:41 |
| 4 | | 17:28:45 |
| 5 | | 17:28:54 |
| 6 | | 17:28:56 |
| 7 | | 17:29:01 |
| 8 | | 17:29:06 |
| 9 | | 17:29:09 |
| 10 | | 17:29:12 |
| 11 | | 17:29:15 |
| 12 | | 17:29:19 |
| 13 | | 17:29:21 |
| 14 | | 17:29:25 |
| 15 | | 17:29:27 |
| 16 | | 17:29:28 |
| 17 | | 17:29:31 |
| 18 | Q  Could you turn, please, in Exhibit 4 to | 17:29:34 |
| 19 | Paragraph 486.  It's at Page 263. | 17:29:43 |
| 20 | A  Okay, I have that. | 17:29:56 |
| 21 | | 17:29:59 |
| 22 | | 17:30:03 |
| 23 | | 17:30:09 |
| 24 | | 17:30:12 |
| 25 | | 17:30:14 |

Transcript of Michelle Hastings, Ph.D.
Conducted on November 17, 2023                    269

```
 1          CERTIFICATE OF COURT REPORTER - NOTARY PUBLIC

 2

 3          I, Theresa A. Vorkapic, Certified

 4     Shorthand Reporter No. 084-2589, CSR, RMR, CRR,

 5     RPR, and a Notary Public in and for the County of

 6     Kane, State of Illinois, the officer before whom

 7     the foregoing deposition was taken, do hereby

 8     certify that the foregoing transcript is a true

 9     and correct record of the testimony given; that

10     said testimony was taken by me and thereafter

11     reduced to typewriting under my direction; that

12     reading and signing was not requested; and that I

13     am neither counsel for, related to, nor employed

14     by any of the parties to this case and have no

15     interest, financial or otherwise, in its outcome.

16          IN WITNESS WHEREOF, I have hereunto set my

17     hand and affixed my notarial seal this 1st day of

18     December, 2023.

19     My commission expires November 6, 2027.

20

21          Theresa A Vorkapic

22

23          THERESA A. VORKAPIC

24          NOTARY PUBLIC IN AND FOR ILLINOIS

25
```