```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF DELAWARE


NIPPON SHINYAKU CO.,    )
LTD.,                   )
                        )
        Plaintiff,      )  C.A. No. 21-1015-JLH
                        )
v.                      )
                        )
SAREPTA THERAPEUTICS,   )
INC.,                   )
                        )
        Defendant.      )



               Thursday, May 9, 2024
               10:00 a.m.
               Teleconference


               844 King Street
               Wilmington, Delaware



BEFORE:  THE HONORABLE JENNIFER L. HALL
    United States District Court Judge




APPEARANCES:

        MORGAN LEWIS & BOCKIUS, LLP
        BY:  AMY M. DUDASH, ESQ.
        BY:  AMANDA S. WILLIAMSON, ESQ.
        BY:  WAN-SHON LO, ESQ.
        BY:  KRISTA VINK VENEGAS, ESQ.
        BY:  MICHAEL T. SIKORA, ESQ.

                        Counsel for the Plaintiff
```

```
 1   APPEARANCES CONTINUED:

 2
         MORRIS, NICHOLS, ARSHT & TUNNELL, LLP
 3       BY:  JACK BLUMENFELD, ESQ.

 4              -and-

 5       LATHAM & WATKINS,
         BY:  MICHAEL A. MORIN, ESQ.
 6
         -and-
 7
         FINNEGAN, HENDERSON, FARABOW,
 8       GARRET & DUNNER, LLP
         BY:  WILLIAM B. RAICH, ESQ.
 9       BY:  CHARLES LIPSEY, ESQ.

10                   Counsel for the Defendant

11

12            ----------------------------

13
```

09:59:39 14    THE COURT: Good morning, everyone. This is Jen
09:59:41 15 Hall. We're here on the phone for a teleconference hearing
09:59:44 16 in NS versus Sarepta. It's civil action number 21-1015. We
09:59:53 17 have a court reporter on the line today.
09:59:56 18    Could we have appearances, please, for the NS
09:59:58 19 parties?
10:00:00 20    MS. DUDASH: Good morning, Your Honor. This is
10:00:02 21 Amy Dudash from Morgan Lewis for Nippon Shinyaku and NS
10:00:08 22 Pharma and with me are my colleagues from Morgan Lewis,
10:00:11 23 Amanda Williamson, Krista Venegas, Shon Lo, Michael Sikora
10:00:19 24 and Jess Moriatsu.
10:00:20 25    THE COURT: Good morning to all of you. And can

| | | |
|---|---|---|
| 10:00:23 | 1 | I have appearances, please, for the Sarepta parties. |
| 10:00:25 | 2 | MR. BLUMENFELD:  Good morning, Your Honor.  It's |
| 10:00:27 | 3 | Jack Blumenfeld from Morris in this case for Sarepta and UWA |
| 10:00:32 | 4 | and with me here is Mike Morin from Latham and Watkins and |
| 10:00:36 | 5 | Charles Lipsey and Bill Raich from Finnegan Henderson. |
| 10:00:41 | 6 | THE COURT:  Good morning to all of you. |
| 10:00:44 | 7 | So we put out an oral order last night about the |
| 10:00:49 | 8 | topics that we wanted to discuss today.  We do have some |
| 10:00:52 | 9 | availability to put this case to the jury the week of August |
| 10:00:59 | 10 | 12th if the parties would be prepared to go forward then. |
| 10:01:03 | 11 | I've also spoken with Judge Burke and we could |
| 10:01:06 | 12 | have him do the jury selection the Friday before August 9th |
| 10:01:11 | 13 | if the parties consented to that, which would allow me to |
| 10:01:14 | 14 | give a little more time and to account for some of the |
| 10:01:18 | 15 | potential delays we might have with the translation issues. |
| 10:01:23 | 16 | So let me hear first from the NS side about that proposal. |
| 10:01:28 | 17 | MS. DUDASH:  Unfortunately, Your Honor, we've |
| 10:01:31 | 18 | reached out to our witnesses, our experts and our fact |
| 10:01:34 | 19 | witnesses and they're largely unavailable that week.  We |
| 10:01:39 | 20 | would of course consent to jury selection by Judge Burke at |
| 10:01:43 | 21 | any time and would appreciate the extra time in our case, |
| 10:01:46 | 22 | but August 12th does not work for multiple of our expert |
| 10:01:50 | 23 | witnesses and fact witnesses, so we're not able to move |
| 10:01:53 | 24 | forward on that date.  It would have been enough time |
| 10:01:56 | 25 | otherwise, it's just the issue with our witnesses. |

```
10:02:00   1              THE COURT:  Do you have a sense of what your
10:02:02   2   availability looks like?  For example, the week after I have
10:02:08   3   some other conferences that I could move to the August 12th
10:02:12   4   week and we could put you on for August 19th or is this more
10:02:17   5   an issue of just generally that time in August not working,
10:02:22   6   which I would understand?
10:02:22   7              MS. DUDASH:  August does not work for us.
10:02:24   8              THE COURT:  Okay.  Okay.
10:02:27   9              MS. DUDASH:  Unfortunately.  We're trying.
10:02:28  10              THE COURT:  No.  And I understand too, and I
10:02:31  11   want to try as well to accommodate as best I can.  So what I
10:02:35  12   can tell you is that for a five-day jury trial right now, if
10:02:40  13   we don't do August, I'm just looking at my calendar.  I
10:03:10  14   think, let me just touch base with my case manager, it's
10:03:18  15   possible September 23rd might work.  Just stand by for a
10:03:24  16   minute.
10:03:27  17              MS. DUDASH:  Oh.  Your Honor, September 23rd
10:03:31  18   doesn't work for us.  We inquired generally.  I can give you
10:03:34  19   three of our dates that we have found preliminarily if that
10:03:43  20   would be helpful and for you to double-check you are
10:03:46  21   schedule.
10:03:46  22              THE COURT:  That would be absolutely helpful.
10:03:46  23   Go ahead.
10:03:48  24              MS. DUDASH:  So we have full availability on
10:03:50  25   October 21st, November 4th --
```

10:03:53  1                THE COURT:  That week absolutely will not work,
10:03:56  2      unfortunately.
10:03:57  3                MS. DUDASH:  Okay.  November 4th and then all of
10:04:00  4      December.
10:04:02  5                THE COURT:  Okay.  So I could put it on for
10:04:05  6      November 4th.  You'd be second in line.
10:04:10  7                MS. DUDASH:  Okay.
10:04:10  8                THE COURT:  For December, the first week of
10:04:13  9      December you'd be third in line.  The second week of
10:04:17 10      December you'd be second in line.  I could do -- oh, wow --
10:04:29 11      I could do December 16th.
10:04:32 12                MS. DUDASH:  Okay.  That works for us.  Actually
10:04:35 13      that's the best date for all of our witnesses.
10:04:38 14                THE COURT:  Okay.  And we could potentially do a
10:04:42 15      jury selection the Friday before.  It might not be Judge
10:04:46 16      Burke, but I would would have to double-check with the other
10:04:48 17      magistrate judges.
10:04:50 18                Let me turn it over to Sarepta.  How does
         19      December 16th look for you?  And you may not know and that's
10:04:52 20      okay.
10:04:52 21                MR. MORIN:  Your Honor, I don't know for sure
10:04:55 22      quite yet.  We do have one potential issue, which is I'm
10:04:59 23      lead counsel in Abbott/Dextron, in your courthouse, Your
10:05:05 24      Honor, in front of Judge Jordan.  And that is one of the few
10:05:08 25      available dates that was already submitted to him for the

```
10:05:12  1    damages portion of the trial that we just recently had, Your
10:05:17  2    Honor.  And he's of course retiring, I just saw in mid
10:05:21  3    January, I just saw that this morning.
10:05:23  4              So I would say two things.  If you'd allow us to
10:05:27  5    talk to our witnesses and confirm their availability on that
10:05:32  6    week of December 16th and if we could do both that and maybe
10:05:40  7    give a day or two and see if he's got something in that
10:05:43  8    case, because its already been submitted as one of the few
10:05:47  9    dates.  But if you just give us a little bit of time, Your
10:05:51 10    Honor, and we'll get back to you as quickly as we can with
10:05:54 11    an update and we will lock down and confirm with the other
10:05:58 12    witnesses.
10:05:58 13              I also of a long plane trip to go out of the
10:06:01 14    country that Sunday and -- on a safari, but other people can
10:06:09 15    wait for the jury to come back if they take longer, of
10:06:13 16    course, and they'll be in good hands.
10:06:15 17              THE COURT:  Well, that's a reason to I think
10:06:17 18    potentially do the jury selection that Friday, December
10:06:19 19    13th, if we can get some help from one of the magistrate
10:06:25 20    judges.
10:06:25 21              Is there any objection that you know on
10:06:28 22    Sarepta's side by having Judge Burke or another one of the
10:06:31 23    magistrate judges select the jury?
10:06:34 24              MR. MORIN:  Absolutely not.  And I'm
10:06:40 25    acquaintances or friends with folks who had a recent jury
```

10:06:44  1   with you and my understanding in that case was one of the
10:06:47  2   your colleagues helped with the jury selection and they even
10:06:49  3   instructed the jury, I believe, and showed the video on that
10:06:52  4   Friday, so they were ready to go with Your Honor, from what
10:06:52  5   I understand, that Monday and we would be fine with that as
10:06:55  6   well.
10:06:55  7                  THE COURT:  Okay.  That's fantastic.  I do think
10:06:59  8   it works so much better and that would allow us to get
10:07:02  9   everybody out of here on December 20th so they could enjoy
10:07:08 10   their holidays and planned trips.
10:07:09 11                  All right.  Let's hear -- plan to hear back from
10:07:12 12   folks on that.
10:07:13 13                  And then the other thing I wanted to discuss
10:07:15 14   with you all was whether, since we may still have some folks
10:07:20 15   in town, whether we should pick a couple hours next week as
10:07:25 16   long as everyone's here and do the breach of contract claim.
10:07:26 17   I'm happy to accommodate that even if it later turns out to
10:07:32 18   be unnecessary because it is just a couple hours, that would
10:07:35 19   be fine.  And if folks are going to be here in the building,
10:07:38 20   whether we shouldn't try to get some of the business people
10:07:42 21   in a room together to talk.
10:07:43 22                  So let me hear about both of those proposals
10:07:47 23   from NS's side.
10:07:50 24                  MS. DUDASH:  Sure, Your Honor.  We appreciate
10:07:53 25   your hearing the breach of contract claim on Monday.  I

```
10:07:56   1    think the parties, since your order, we are extremely close
10:08:01   2    to settling.  We have an amount that we've agreed to and the
10:08:06   3    last piece in settling the claim would just be the execution
10:08:09   4    of a very simple settlement agreement which I sent over to
10:08:13   5    Mr. Morin this morning.  So I think that, you know, provided
10:08:19   6    we can get that executed over the weekend, we'll be in a
10:08:23   7    position to dismiss the claim and we won't need the hearing
10:08:26   8    date.  But the hearing date, it's helpful, it keeps everyone
10:08:29   9    on track and we'll make sure we get this resolved as
10:08:33  10    speedily as possible.
10:08:34  11                THE COURT:  Okay.
10:08:34  12                MS. DUDASH:  And then as to settlement, our
10:08:36  13    people from NS are still here, so, you know, we're happy to
10:08:42  14    come.  Monday would obviously be better for us, given that,
10:08:46  15    you know, after that date they would be able to go back
10:08:49  16    home.
10:08:51  17                THE COURT:  Outstanding.  And do you think --
10:08:54  18    okay.  That makes perfect sense.
10:08:56  19                Let me hear from Sarepta's side.
10:08:59  20                MR. MORIN:  Your Honor, we agree it's a simple
10:09:02  21    dollar payment.  We agreed on the amount yesterday.  Ms.
10:09:06  22    Williamson was kind enough to send the draft, but it was at
10:09:11  23    9:58, so literally after we were on the call with the Court,
          24    so I haven't looked at it yet.  But I think you can, in good
10:09:16  25    faith, and I'll give you the representation, as long as the
```

10:09:18  1  terms of that are not unreasonable, the settlement for a
10:09:21  2  dollar amount of that claim, we are going to work that out
10:09:24  3  and there's no reason to leave even -- even for any
10:09:29  4  purposes, to leave a trial or a hearing on the calendar on
10:09:34  5  Monday when it's a lump sum payment to resolve the issue.
10:09:38  6  We'll look at it today.  I would take it off calendar.  Of
10:09:43  7  course, if it contains onerous terms, which I can't imagine
10:09:45  8  it would, or we can't work it out, I guess come back and do
10:09:49  9  it in the jury trial.  My point is that's not going to
10:09:51 10  happen and we're done.  We've agreed upon the amount and I
10:09:55 11  would say it's beyond an agreement in principle.  And you
10:09:58 12  can enforce the fact that we're paying the amount that we
10:10:01 13  have, I won't say it on the record, to resolve the breach of
10:10:03 14  contract claim with a dismissal.  So I don't see any reason
10:10:07 15  to leave it on.
10:10:09 16           With respect to the parties meeting, Sarepta is
10:10:13 17  ready and able to meet next week.  I had a couple of
10:10:16 18  thoughts, if Your Honor will hear from us on how that might
10:10:21 19  be most productive.
10:10:23 20           THE COURT:  Absolutely.
10:10:25 21           MR. MORIN:  So we think a couple of things.  We
10:10:27 22  think the litigators and our friends on the other side,
10:10:30 23  excellent lawyers and everyone is fighting away, but we
         24  think if there is going to be a meeting next week and our
10:10:33 25  folks will come and we'll bring fulsome decision-making

```
10:10:38   1    authority who are going to work in good faith to see if we
10:10:41   2    can resolve something, we think a couple things.  Number
10:10:44   3    one, that it will be important and helpful if we want to
10:10:48   4    make it the most productive to have a neutral involved,
10:10:53   5    whether it's one of your colleagues, I know it's very short
10:10:55   6    notice, or whether it's a respected mediator like Judge
10:11:00   7    Farnan or something like that, we think it's going to be
10:11:02   8    important to have a facilitator in the room.  That's my
10:11:06   9    first point.
10:11:07  10              Second point, while we're available any day next
10:11:09  11    week and our clients are coming all the way from Asia and I
10:11:13  12    appreciate that time, we were thinking something a little
10:11:16  13    later in the week might be helpful, because if we use a
10:11:19  14    neutral, whether it's one of your colleagues or Judge Farnan
10:11:22  15    or any other mediator, and we're open to whoever Your Honor
10:11:25  16    might suggest and we can pick anyone good, that we'd want to
10:11:29  17    get some mediation statements and let that person learn a
10:11:34  18    little bit about the case at least so they don't come in
10:11:37  19    completely cold and read some papers.  And that will take a
10:11:41  20    smidgeon of time to identify somebody and of course put the
10:11:45  21    statements together.  We have a massive team here and we can
10:11:47  22    get the statements together, but also the time for the
10:11:47  23    mediator to read and absorb the materials.  Our view is, I
10:11:52  24    don't know if it's going to settle, but our view is if we
10:11:53  25    come in good faith to do it, we should do everything we can
```

to weigh the scales towards making it as productive as possible and that means, A, a neutral, and B, a little more time so that neutral could consider the parties' positions and be a helpful facilitator.

THE COURT: So I think what I hear you saying is you're thinking that is both something that the attorneys would be involved in, more of a standard mediation rather than having the business people talking directly?

MR. MORIN: I think that would be the most productive thing. Of course probably a great mediator, whether it's someone from the bench or a retired judge or whoever it might be, would probably do some shuttle diplomacy and it may be helpful to get the principles in the room without the lawyers a fair amount. But we would be around to give advice or whatever, but we could stay out of the way a little bit to the extent possible. What I see it as a more traditional mediation would be the most productive. And I know how busy your courthouse is, but if one of your colleagues could do it, I always feel like somebody wearing the robe can have a little more influence on both sides and I include our own client in terms of trying to facilitate a settlement. We could come -- again, I can't tell you whether we would work it out, we may not be able to, but we would come in good faith with every intention of giving it a try.

```
10:13:22   1              THE COURT:  Let me ask you this.  You mentioned
10:13:26   2   Judge Farnan a couple times.  I'm not familiar with what his
10:13:28   3   calendar looks like these days.  Is he sort of available on
10:13:33   4   call to show up?  I wouldn't expect that he would be, but
10:13:37   5   maybe you know better than I do.
10:13:37   6              MR. MORIN:  We don't.  We did not want to -- of
10:13:39   7   course this all happened very quickly, Your Honor.  We did
10:13:42   8   not call over, for example, this morning, because we wanted
10:13:45   9   to float those ideas by you and our friends on the other
10:13:49  10   side.  He is one example, but certainly we could get off the
10:13:53  11   call and see.  He may have a date because something settled
10:13:57  12   or didn't go forward or he may not have dates.  But he's not
10:13:58  13   the only game in town.  Of course there are a number of your
10:14:01  14   retired colleagues who are here and there's other mediators.
10:14:05  15   I will be open minded about whoever it is as long as it's
10:14:08  16   someone who, you know, is experienced at doing these things,
10:14:12  17   because it seems like there's no time like the present.
10:14:16  18   Again, who knows what will happen.  It seems like an
10:14:21  19   opportune time and NS os here from Japan when the issues are
          20   fresh in everybody's mind when some of the issues have been
10:14:24  21   crystallized a little bit, it seems like an opportunity, so
10:14:27  22   we just don't want to waste it.
10:14:29  23              THE COURT:  Yes.  So what I can tell you is
10:14:31  24   while you've been talking, I might be able to get you some
10:14:36  25   time with Judge Fallon on Tuesday.
```

10:14:39  1                    So let me turn it back over to NS.  A lot has
10:14:44  2     been said.  I know you had a preference for Monday and I
10:14:46  3     appreciate that, that folks of travel plans and they do want
10:14:50  4     to get home.  What do you think about what counsel has said
10:14:54  5     so far?
10:14:54  6                    MS. DUDASH:  We're amenable to Tuesday and to a
10:14:58  7     meeting.  We're not in a position and our client is not in a
10:15:02  8     position to prepare a full-blown mediation statement, but
10:15:06  9     we'd be happy to meet and discuss.  We do have the pretrial
10:15:07 10     order that sets out the claims at issue, so I'm sure Judge
10:15:13 11     Fallon could read that and get up to speed in the case and
10:15:16 12     we could see if, if those discussions bear fruit and we're
10:15:21 13     not able -- but we're not able to get a settlement across
10:15:25 14     the line, we can certainly think about a full-blown
10:15:29 15     mediation after that point.
10:15:30 16                    THE COURT:  Okay.  I do think -- I mean, you
10:15:32 17     know, we're so close to trial, everybody does understand the
10:15:37 18     issues and so I do think it's just -- at this point, you
10:15:41 19     know, we could get a mediator up to speed, but it's really
10:15:45 20     up to the parties whether or not they're ready to resolve
10:15:50 21     their differences.
10:15:52 22                    So let me think about what the best way might be
10:15:55 23     to proceed.  Should we reconvene on the phone later today
10:15:59 24     after the parties have had an opportunity to discuss who
10:16:03 25     they might like to select as a private mediator with the

10:16:06  1   idea that if that doesn't bear fruit that we could have a
10:16:09  2   call with Judge Fallon to set a time for next Tuesday?
10:16:16  3              MS. DUDASH:  I don't think we'll be able to
10:16:18  4   schedule the private -- it will take us probably several
10:16:22  5   days to agree on a mediator between the parties, to be
10:16:26  6   honest, Your Honor.  And then to schedule some of the better
10:16:29  7   mediators I think will be impossible to get that done before
10:16:32  8   the end of the week next week, just as a practical matter,
10:16:36  9   but we are happy to go forward with Judge Fallon if she is
10:16:41 10   available.
10:16:43 11              MR. MORIN:  Your Honor.  I didn't mean to
10:16:47 12   interrupt, Your Honor.  Sarepta would be happy to go forward
10:16:52 13   Tuesday with Judge Fallon and we'd appreciate that.
10:16:58 14              And I might just ask our friends to reconsider a
10:17:01 15   little bit.  Eveyone is here and getting ready for opening
10:17:03 16   statements and the trial next week, so certainly we're going
10:17:06 17   to be working around the clock.  I think confidential five-
10:17:09 18   or 10-page statements would be incredibly helpful, I would
10:17:13 19   think, to Judge Fallon in terms of thinking about her.  They
10:17:14 20   would be confidential and the parties could put in what they
10:17:19 21   wanted in terms of those and would work in good faith, but
10:17:22 22   about I think that that background would be more helpful
10:17:24 23   than a pretrial order that says what time things are going
10:17:29 24   to be changed and some undisputed facts that don't have any
10:17:32 25   context.  But I leave it to your honor, but that seems

10:17:36  1   strange to me when they have there whole trial -- if we're
10:17:39  2   going to do this on Tuesday, if their folks are going to
10:17:42  3   stay here from Japan, if our folks are going to come down
10:17:43  4   from Boston, which they wouldn't otherwise do, why don't put
10:17:47  5   our best foot forward to the extent possible and give her
10:17:50  6   something by Monday noon or something that at least educates
10:17:53  7   her a little bit.
10:17:55  8            THE COURT:  Yep.  So at this point I'm going to
10:17:57  9   extricate myself from these discussions and leave it to her.
10:18:01 10   I will have a conversation with her and have briefly over
10:18:07 11   text just now about what's going on and so I'll have a
10:18:11 12   conversation with her about where I think things stand, but
10:18:15 13   it will be her decision about what she wants to hear from
10:18:17 14   the parties.  But of course what she wants to hear may
10:18:22 15   depend on whether she'll be able to get to lengthy
10:18:25 16   submissions on Monday.  But I would encourage the parties to
10:18:28 17   be as honest as they can and to keep it as short as possible
10:18:32 18   so she's best able to help you on Tuesday.  So I will talk
10:18:36 19   to her when we hang up and I think you can expect to see an
10:18:40 20   order from her forthcoming.
10:18:45 21            I'll tell you this, what I'm hearing today is
10:18:48 22   that we don't need to have a hearing on Monday, but I will
10:18:51 23   set one, I'm happy to do that, so why don't we just have a
10:18:56 24   letter from the parties by close of business tomorrow
10:19:00 25   letting us know and I can put something right on the

| | | |
|---|---|---|
| 10:19:03 | 1 | calendar this weekend.  I will be around and in chambers and |
| 10:19:06 | 2 | we can hear the contract claims.  So why don't you let me |
| 10:19:10 | 3 | know before the end of the day tomorrow.  If somebody says, |
| 10:19:12 | 4 | one or the other side says they want to go forward with the |
| 10:19:18 | 5 | bench trial on Monday, then that's what we'll do. |
| 10:19:19 | 6 | Does anybody have any questions about how we're |
| 10:19:22 | 7 | going to proceed? |
| 10:19:23 | 8 | MS. DUDASH:  No, Your Honor.  Thank you very |
| 10:19:25 | 9 | much. |
| 10:19:27 | 10 | MR. MORIN:  On behalf of Sarepta, no Your Honor. |
| 10:19:35 | 11 | THE COURT:  All right.  Thanks very much.  Bye |
| 10:19:38 | 12 | bye. |
| | 13 | (Court adjourned at 10:19 a.m.) |
| | 14 | |
| | 15 | |
| | 16 | --------------------------------- |
| | 17 | |
| | 18 | I hereby certify the foregoing is a true and accurate transcript from my stenographic notes in the proceedings. |
| | 19 | |
| | 20 | /s/ Stacy M. Ingram, RPR |
| | 21 | Official Court Reporter<br>U.S. District Court |